## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant. | Adv. Proc. No. _____ in 17 BK 4780-LTS |

## COMPLAINT OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO IN RESPECT OF ACT 10-2024 AGAINST THE GOVERNOR OF <u>PUERTO RICO</u>

**To the Honorable United States District Judge Laura Taylor Swain:**

Plaintiff the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), for itself and as Title III representative of the Puerto Rico Electric Power Authority ("<u>PREPA</u>"), brings this complaint against defendant the Honorable Pedro Pierluisi, in his official capacity as Governor of the Commonwealth of Puerto Rico (the "<u>Governor</u>" or the "<u>Defendant</u>" or the "<u>Government</u>").

## <u>NATURE OF THE ACTION</u>

1. The Oversight Board brings this action to nullify Act 10-2024 ("<u>Act 10</u>"), a law which imposes requirements and restrictions on the Puerto Rico Energy Bureau (the "<u>Energy Bureau</u>") with respect to PREPA's net metering program. In so doing, Act 10 bars the Energy Bureau from independently regulating Puerto Rico's electric sector, and permits critical and complex energy policy to be dictated by politics and the desires of special interest groups.

2. The purpose of this action is to restore the Energy Bureau's ability to regulate net metering as it deems appropriate. Net metering is an important component of PREPA's critical renewable energy transformation called for in the 2023 PREPA Fiscal Plan (the "<u>PREPA Fiscal Plan</u>") certified by the Oversight Board, but one which must be managed carefully given its complexity and significant impact on PREPA's revenues and operations. In bringing this action, the Oversight Board does not seek to end net metering as Act 10's advocates have alleged. Nor does the Oversight Board seek to impose any particular change on the net metering program. Rather, this action seeks only to reinstate the Energy Bureau's ability to independently study, evaluate, and make changes (if any) to the net metering program it determines are necessary for PREPA to effectively operate and serve the people of Puerto Rico, and remove the corrosive and

dangerous politically-motivated restrictions on the Energy Bureau, which threaten to undermine the progress the Energy Bureau has made in recent years.

3. Act 10 reflects an effort to return to the practices that are a root cause of PREPA's current challenges. PREPA's challenges can partially be traced to decisions about the management of the utility that were historically subject to political influence and interference. Political interference in PREPA's management created instability, leading to high management turnover, discontinuity in capital investment plans, customer rates for electricity that were insufficient to cover operating and maintenance costs, and ever-increasing debt issued to cover the mounting costs, including then-current debt service and operating costs. As a result, PREPA has operated under a fiscal deficit since the early 2000s.

4. Further, this approach has created an electrical system vulnerable to disruption. PREPA's system is technologically outdated, operationally inefficient, and heavily reliant on an unreliable, high-cost, volatile, and polluting oil-fired generation fleet. Outdated generation and low operational efficiency across the system has forced Puerto Ricans to suffer among the highest electricity rates and the worst service in the United States.

5. In 2014, the Government enacted Act 57-2014 ("Act 57"), which created the Energy Bureau to be an "independent government entity" overseeing implementation of electric power service on the Island, insulating the Energy Bureau from most political influences.[1]

6. The certified 2023 and 2024 Commonwealth Fiscal Plans (the "2023 Commonwealth Fiscal Plan" and "2024 Commonwealth Fiscal Plan," together the "Commonwealth Fiscal Plans") and the PREPA Fiscal Plan (together with the "Commonwealth

_____

[1] See Act 57 § 6.3(a) and Statement of Motives at 9, a certified translation of which is attached hereto as Exhibit 1.

Fiscal Plans," the "Fiscal Plans") recognize PREPA's transformation requires the Energy Bureau to serve as a strong, independent third-party regulator, free from any direct or indirect political influence or interference.[2]

7.      Earlier this year, the Energy Bureau was in the process of finalizing a study of PREPA's net metering program and its costs to PREPA.  This study was initiated in accordance with Act 17-2019's ("Act 17") amendments to Act 114-2007 ("Act 114").  The net metering program, established in 2007 by Act 114, permits customers with distributed energy generation systems (such as rooftop solar panels) to export electricity to PREPA, which is credited against the cost of the electricity they purchase from PREPA.  As such, these customers only pay for the net electricity they consume from PREPA (after deducting what they export) in addition to a standard monthly service fee.  Seventeen years after the enactment of Act 114, PREPA is still required to provide, on a monthly basis, a credit equal to 100% of its retail rate for every kilowatt-hour (kWh) exported by net metering customers up to their total consumption of electricity from PREPA.  Net metering customers enter into contracts that guarantee these terms for a period of 20 years.[3]

8.      Net metering programs raise many important and complex considerations, including the costs of energy generation, capacity value, transmission and distribution costs, system losses prevented, and environmental issues.  Based on the results of its study, the Energy Bureau would be able to make (or not to make) changes to the seventeen-year-old net metering program it deemed appropriate.

---

[2] 2023 Commonwealth Fiscal Plan, a true and correct copy of which is attached hereto as Exhibit 2, vol 2 at 42; 2024 Commonwealth Fiscal Plan, a true and correct copy of which is attached hereto as Exhibit 3, at 76; PREPA Fiscal Plan, a true and correct copy of which is attached hereto as Exhibit 4, at 74.

[3] Certified translations of Act 114 and Act 17 are attached hereto as Exhibit 5 and Exhibit 6, respectively.

9.      The PREPA Fiscal Plan recognizes the importance of the net metering study and the Energy Bureau's ability to periodically update the net metering program.  It requires the Energy Bureau to "finalize the net metering and distributed generation study" commenced pursuant to Act 17, and "initiate a process for implementing recommendations and conclusions of the study and updating a net metering compensation and crediting structure, if it deems appropriate," by April 11, 2024.  Ex. 4 at 58.

10.     On January 10, 2024, just months before the Energy Bureau was to complete its study and decide on any changes to the net metering program, the Government enacted Act 10.

11.     In enacting Act 10,[4] the Government blocked the Energy Bureau's ability to complete the net metering study required to make any changes to the Island's net metering program, thus resurrecting the dangerous practice of political actors interfering in the regulation of PREPA.

12.     Specifically, Act 10 prohibits the Energy Bureau from making any changes to the net metering program for years—and extends protections for certain net metering customers far beyond the 20 years provided in their current net metering contracts and under prior law.  Under Act 10, the Energy Bureau is required to conduct a new net metering study to analyze net metering, but it is prohibited from initiating that study until January 2030.  Only after this new study is completed is the Energy Bureau permitted to make changes to the net metering program.  As such, Act 10 blocks the Energy Bureau from commencing a net metering study of consequence for more than five years.

_____

[4] A certified translation of Act 10 is attached hereto as Exhibit 7.

13.     Further, Act 10 prevents the Energy Bureau from implementing any changes to the net metering program based on the delayed study for 12 months after the changes are announced, meaning the Energy Bureau is prohibited from making changes to the net metering program until 2031 at the earliest.  To the extent the Energy Bureau announces changes based on the study, Act 10 requires that the Energy Bureau honor the existing net metering program's terms for an additional 20 years for then-existing net metering customers and certain other potential net metering customers.  Therefore, under Act 10, many customers (new and old) will continue under the current net metering program until at least 2051—far longer than the timeline envisioned by Act 17 and the 20-year term of their net metering contracts.

14.     The Government failed to act in a prudent and fiscally responsible manner in enacting Act 10.  The Fiscal Plans dictate that policy decisions impacting the electric utility should be entrusted to independent expert regulators, particularly when they relate to complex regulatory matters (such as PREPA's net metering program) which implicate numerous policy and operational considerations.  The Government did not merely bypass the Energy Bureau in enacting Act 10, it *disabled* the Energy Bureau's ability to study, evaluate, and potentially adjust the economic terms of the net metering program as it sees fit.  Further, the Government enacted Act 10 without obtaining a budgetary, financial, and economic analysis from the Puerto Rico Legislative Assembly Budget Office ("OPAL," by its Spanish acronym).

15.     Accordingly, the Government, through Act 10, has effectively barred the Energy Bureau from making any changes to the net metering program for at least six years (and up to twenty-six years, depending on the customer), and impermissibly injected political influence into the Energy Bureau's regulation of PREPA's net metering program in violation of the Fiscal Plans.

16.    Pursuant to PROMESA §§ 104(k), 108, and 204, the Oversight Board is entitled to an order nullifying Act 10 and enjoining enforcement and implementation of the law, among other relief, on multiple grounds.

17.    The Oversight Board has determined, pursuant to PROMESA § 108(a)(2), that Act 10 impairs or defeats the purposes of PROMESA for several independent reasons, including by contradicting and interfering with the terms of the Fiscal Plans.  That interference, in turn, undermines or eliminates the economic improvements the Fiscal Plans are designed to promote. As a result of this determination, the Government has been prohibited by PROMESA § 108(a)(2) from enacting, implementing, and enforcing Act 10.

18.    In addition, the Governor's submission pursuant to PROMESA § 204(a) regarding Act 10 failed to comply with PROMESA's requirements.  Among other things, the Governor: (i) failed to provide a complete formal estimate of the law's impact on expenditures and revenues; and (ii) failed to provide a compliant certification regarding Act 10's consistency with the applicable fiscal plans prepared by an agency that prepares the formal estimate.  Despite receiving notification and a direction to correct those defects, the Governor did not comply with the Oversight Board's direction.  As such, pursuant to PROMESA § 204(a)(5), the Oversight Board is authorized to take such action as it considers necessary to ensure Act 10 does not adversely affect compliance with the Fiscal Plans.  The Oversight Board seeks nullification of Act 10, as it is the only way to ensure Act 10 does not adversely affect compliance with the Fiscal Plans.

## PARTIES

19.    Plaintiff, the Oversight Board, is an entity within the government of Puerto Rico established pursuant to PROMESA § 101.

20.     Defendant, the Honorable Pedro Pierluisi, is the Governor of Puerto Rico, vested with the executive power and the obligation to execute the laws.  P.R. Const. art. IV §§ 1, 4.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to PROMESA § 306(a)(2) because "'related to' proceedings are those 'which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'"  *Fin. Oversight & Mgmt. Bd. for P.R. v. Hernández-Montañez (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 77 F.4th 49, 60 (1st Cir. 2023) (citation omitted).  Claims challenging new laws based on violations of PROMESA are "related – in a fundamental sense – to" applicable Title III proceedings.  *Id.* at 62 (internal quotation marks omitted).  The terms of net metering impact PREPA's revenues and its expenses and, in turn, may impact the feasibility of its proposed Title III plan of adjustment.  Challenges to the Energy Bureau's independence threaten its ability to effectively regulate PREPA and ensure PREPA is a fiscally viable utility.  Act 10 affects the proposed PREPA plan of adjustment (the "Modified Fourth Amended Plan")—or any proposed plan—which is or will be predicated upon, among other things, the Energy Bureau's ability to independently regulate PREPA to ensure it has sufficient revenues to cover its costs, including costs associated with net metering.  Additionally, the terms of net metering will impact future demand for PREPA's service, as higher net metering rates will likely incentivize more customers to switch to distributed generation.  Because the net metering program affects PREPA's future load, it also directly affects PREPA's revenues, which are PREPA's property, and the Court has exclusive jurisdiction over the action pursuant to PROMESA § 306(b).

22.     This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under PROMESA, a federal statute, and pursuant to PROMESA § 106(a), which provides "any action otherwise arising out of this chapter, in whole or in part, shall be brought in a United States district court for the covered territory . . . ."

23.     This Court has personal jurisdiction over the Defendant pursuant to PROMESA § 306(c) and because the Governor is an officer of the Government of Puerto Rico, is located in Puerto Rico, and has performed acts in Puerto Rico giving rise to the claims in this action.

24.     Venue is proper in this District pursuant to PROMESA §§ 106(a) and 307.  Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because the Defendant resides in the District and because a substantial part of the events or omissions giving rise to the action occurred in the District.

**FACTUAL BACKGROUND**

**A.      HISTORY OF PREPA AND THE ENERGY BUREAU**

25.     Created in 1941, PREPA is the sole electric utility provider for Puerto Rico.

26.     Currently, PREPA's customers pay substantially more for electricity than the average ratepayer in the mainland United States.  Despite imposing among the highest rates on its customers, PREPA provides among the least reliable, most volatile, and most fossil-fuel dependent electricity service among its peers.  The average PREPA customer loses power once every 5 or 6 weeks, as compared to once or twice per year in the mainland United States.  PREPA's equipment and electricity-generation and distribution facilities are severely outdated, with an average age of 40 years compared to the national average of 18 years.  Its rates are highly volatile because they fluctuate based on the price of oil.  PREPA requires rehabilitation of both its financial position and its operations.

27.     As noted in the PREPA Fiscal Plan, "Puerto Rico's energy infrastructure lags national standards due to decades of operational and financial mismanagement." Ex. 4 at 21.  The Oversight Board has concluded that one cause of that mismanagement is that before the Energy Bureau's establishment, PREPA's management decisions were "subject to political influence and instability, leading to high management turnover, discontinuity in capital investment plans, electric customer rates that were insufficient to cover operating and maintenance costs and the mounting costs of debt service."  *Id.* at 36.  Additional consequences of PREPA's politicized decision-making identified by the Oversight Board include:  PREPA repeatedly issuing debt to cover payments for existing debt, rather than setting rates sufficient to support its costs; operating under a fiscal deficit since the early 2000s; and underinvesting in its electrical grid, resulting in reliability metrics that were "drastically lower" than other U.S. jurisdictions.  *Id.* at 36, 100.

28.     In 2014, the Government enacted Act 57, also known as the Puerto Rico Energy Transformation and RELIEF Act.  *See* Ex. 1.

29.     Act 57 created the Energy Bureau (then known as the Puerto Rico Energy Commission) as an "independent government entity" to take actions to "oversee and ensure execution and implementation of the public policy on the electric power service of the Commonwealth of Puerto Rico."  *See id.* § 6.3(a) and Statement of Motives at 9.  The Energy Bureau is also tasked with implementing regulations and pursuing regulatory actions to "guarantee the capacity, reliability, safety, efficiency, and reasonability of electricity rates of Puerto Rico[.]"  *See id.* § 6.3(c); Ex. 3 at 140.

30.     In PROMESA § 201, Congress charged the Oversight Board with the responsibility to develop, approve, and certify fiscal plans for Puerto Rico and its covered instrumentalities,

9

including PREPA, that provide a method to achieve fiscal responsibility and access to capital markets at reasonable rates.

31.     The Oversight Board has certified fiscal plans for the Commonwealth and PREPA since 2017.

32.     The PREPA and Commonwealth Fiscal Plans have consistently recognized the importance of PREPA being regulated by an independent, professional, experienced regulator insulated from political interference.  PREPA's first fiscal plan repeatedly stressed the importance of PREPA operating free from political influence in all areas, including in setting rates, Public-Private Partnership ("P3") initiatives, and procurement.  Certified 2017 PREPA Fiscal Plan, a true and correct copy of which is attached hereto as Exhibit 8, at 58, 92, 95.

33.     The current Fiscal Plans continue to emphasize the requirement for independent regulation of PREPA.  Ex. 3 at 76; Ex. 4 at 74.

34.     The Commonwealth Fiscal Plans require PREPA to have a "strong and independent energy sector regulator" to achieve the energy-sector transformation Puerto Rico needs.  Ex. 3 at 76; Ex. 2, vol. 2 at 42–43.  Similarly, the PREPA Fiscal Plan requires the Energy Bureau to "remain financially and operationally independent from the Commonwealth Government and its determinations must be free from any direct or indirect political influence or interference."  Ex. 4 at 74.

**B.     THE COMMONWEALTH'S NET METERING PROGRAM UNDER ACT 114 AND ACT 17**

35.     Puerto Rico's net metering program was established by Act 114, prior to the creation of the Energy Bureau.  *See* Ex. 5.

36.     In general, net metering programs provide customers who invest in distributed energy generation systems (such as rooftop solar panels) that produce electricity to power their

own homes or businesses with the opportunity to export surplus electricity to the electric utility in exchange for electricity credits. Net metering customers remain connected to the electrical grid, not only to export their surplus electricity, but also to draw electricity to meet their own electricity needs (*e.g.*, during non-sunny days, at night, or when their demand exceeds their production). Typically, net metering customers' electric use charges (known as volumetric charges) are materially offset with credits earned from the electricity they export to the grid. *See id.* at Statement of Motives.

37.     Under the net metering program established in 2007 by Act 114, which remains in effect today, net metering program participants receive a full kilowatt-hour credit on their electricity bills for every kilowatt-hour they export to PREPA (the "1:1 net metering rate") up to their monthly kilowatt-hour consumption from PREPA. Customers who export the same or more electricity to the grid than they consume from PREPA are charged only the monthly service fee (*i.e.*, their consumption or volumetric charges are zero). *Id.* § 5(c).

38.     Under the program, most if not all net metering customers receive some credits that reduce their monthly PREPA bills and thereby reduce PREPA's revenues. The majority of PREPA's costs are recovered through a volumetric charge, which, along with a relatively low fixed monthly customer charge, are designed to recover the costs of producing electricity as well as the costs associated with operating and maintaining PREPA's transmission and distribution system. The cost of producing electricity is offset in part or in whole when electricity from solar photovoltaics ("Solar PV") is injected into PREPA's grid, depending on the power generation units used at the specific time of day when a customer's excess solar power is produced. Thus, the extent of an offset may be lower than, equal to, or even higher than the average cost of producing electricity included in PREPA's retail rates. In contrast, self-generation from Solar PV has a lesser

cost offset, if any, on the operation and maintenance of PREPA's transmission and distribution system.  Any cost offset in this area would be associated with the relief of strain on the system at times of high demand.

39.     In addition, net metering may offer benefits not reflected in PREPA's cost of operation, including reducing pollutants and greenhouse gases emitted from PREPA's fossil based generating units, as well as positive contributions to achievement of Puerto Rico's renewable energy goals.  Determining the extent that electricity injected into the grid by Solar PV offsets PREPA's costs involves determining inputs and assumptions and analyzing data.  Furthermore, determining whether to maintain or modify the current net metering program in Puerto Rico requires experienced judgment taking into account many factors, including those described above.

40.     Recognizing the net metering program could require changes, on April 11, 2019, the Government enacted Act 17, known as the Puerto Rico Energy Public Policy Act of 2019.  *See* Ex. 6.  Act 17 directed the Energy Bureau to "conduct a study, through an independent formal process and with participation of interested parties and the general public, to evaluate and consider the costs and benefits associated with . . . the net metering program . . . ."  *Id.* § 3.4(a).  The study was to be completed within five years of the passage of Act 17 (*i.e.*, April 11, 2024).  *Id.*

41.     Act 17 empowered the Energy Bureau, following completion of the five-year study period, to make determinations regarding the net metering program, including establishing "appropriate values for distributed energy and energy storage systems in accordance with the study," and making changes to the 1:1 net metering rate.  *Id.* § 3.4(a–b).  However, the existing 1:1 net metering rate would remain in effect until the Energy Bureau completed the study and authorized new rates.  *Id.* § 3.4(b).

42.     Distributed generation (and specifically net metering) has long been accounted for and included in PREPA's fiscal plans.  Accelerating trends in distributed generation (such as solar panels) were incorporated into PREPA's forecast and encouraged by the Oversight Board in PREPA's very first fiscal plan.  Ex. 6 at 27, 59.  After Act 17 was enacted, its net metering study requirements were incorporated into the certified 2019 PREPA Fiscal Plan.  Certified 2019 PREPA Fiscal Plan, a true and correct copy of which is attached hereto as Exhibit 9, at 48.

43.     The current PREPA Fiscal Plan notes the importance of the Energy Bureau's review of the net metering program.  The PREPA Fiscal Plan recognizes that a sub-optimal net metering program may have "unintended detrimental effects," including "an unequitable distribution of costs throughout the system."  Ex. 4 at 58.  It provides that, because LUMA Energy, LLC ("LUMA"), the private company established in 2020 and responsible for operating PREPA's electricity transmission and distribution infrastructure, is required under Act 17 "to purchase the excess energy produced by net metering customers at the prevailing energy rate, the effective cost to ratepayers of the renewable energy generated by net metering customers may be higher than the cost of purchasing that same quantity of electricity from other resources."  *Id.*

44.     As such, the PREPA Fiscal Plan recognizes, as does Act 17, that the net metering program has consequences that must be evaluated and balanced against its benefits.  This is particularly so given that LUMA has reported "rapid uptake in rooftop solar over the last four years."  Declaration of Glenn R. George, Case No. 17-04780-LTS, ECF No. 4633, ¶ 44.  As of March 31, 2024, a total of 117,573 distributed generation photovoltaic systems have been interconnected, with 3,290 average monthly interconnections between April 1, 2023 and

March 31, 2024. *See* Submission of Quarterly Report on System Data for January through March 2024, PREB Case No. NEPR-MI-2019-0007 (submitted April 22, 2024).[5]

45.     Accordingly, the PREPA Fiscal Plan calls for the Energy Bureau to "finalize the net metering and distributed generation study" commenced pursuant to Act 17, and "initiate a process for implementing recommendations and conclusions of the study and updating a net metering compensation and crediting structure, if it deems appropriate," by April 11, 2024.  Ex. 4 at 58; *see also id.* at 52 (listing study as a regulatory milestone).

### C.     THE GOVERNMENT ENACTS ACT 10

46.     Senate Bill 1064 was introduced in the Puerto Rico Senate on October 21, 2022. After pending for nearly 15 months, Senate Bill 1064 was passed by the Legislature on January 8, 2024.  The Governor signed the bill into law as Act 10 two days later, on January 10, 2024, just months before the Energy Bureau was to complete its net metering study and potentially announce changes to the program.  *See* Ex. 7.

47.     Act 10 interferes with the Energy Bureau's regulation of the net metering program in a number of ways.  Act 10:

- Bars the Energy Bureau from making any changes to the current net metering program (*i.e.*, the 1:1 net metering rate) until a new net metering study is completed, which Act 10 turn prohibits the Energy Bureau from commencing before January 2030.  This, in effect, prohibits the Energy Bureau from undertaking any net metering study of consequence for over five years;

---

[5] These materials can be found at https://energia.pr.gov/en/dockets/?docket=nepr-mi-2019-0007.

- Provides any changes to the net metering program, including rates, can only take effect 12 months after the Energy Bureau finishes the study and decides to make any such changes (*i.e.*, not before 2031 at the earliest); and

- Provides any customer with a net metering contract or a distributed generator installed and certified by a licensed professional at the time the Energy Bureau issues any final determination changing the net metering program (which, as noted above, cannot be before 2031), shall be entitled to enjoy the pre-change net metering terms (*i.e.*, the 1:1 net metering rate) for at least an additional 20 years (or until at least 2051).  Ex. 7 § 1.

### D. THE GOVERNOR'S SECTION 204(a) SUBMISSION AND THE OVERSIGHT BOARD'S ASSESSMENT OF THAT SUBMISSION

48.     PROMESA § 204(a)(1) requires the Governor to submit to the Oversight Board certain materials for every new law the Government enacts.  On February 12, 2024, the Oversight Board received the Governor's Section 204(a) submission for Act 10 (the "Submission").  A true and correct copy of the Submission, including certified translations of the attachments thereto, are attached hereto as Exhibits 10, 11, and 12, respectively.

49.     The Oversight Board reviewed the Submission and determined it did not meet PROMESA § 204(a)'s requirements.

50.     First, the Submission did not contain a compliant formal estimate of the impact Act 10 would have on expenditures and revenues, as required by PROMESA § 204(a)(2)(A).  The assessments prepared by the Office of Management and Budget ("OMB") and the Department of the Treasury (the "Treasury") (Exhibits 11 and 12, respectively; hereinafter the "OMB Attachment" and the "Treasury Attachment") included in the Submission concluded Act 10 would not have a fiscal impact, but neither contained any detail or explanation to support their

conclusions, as required by PROMESA.[6]  For example, the OMB Attachment and the Treasury

Attachment fail to address the risk that PREPA's revenues might materially decrease over a period

of years under Act 10 because of the costs of net metering and the Energy Bureau's inability to

take steps to suspend or modify net metering.

51.    Second, the Submission failed to include a compliant certification, prepared by the

entity that prepared the formal estimate, that Act 10 is or is not significantly inconsistent with the

applicable fiscal plans, as required by PROMESA § 204(a)(2)(B–C).  Neither of the estimating

agencies—OMB and Treasury—provided the necessary certification; in fact, neither entity

addressed Act 10's consistency with the PREPA or Commonwealth Fiscal Plans.  *See* Exs. 11

and 12.

52.    The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF")

provided a report with the Submission that included the statement "the Government has determined

that Act 10 is not significantly inconsistent with the [2023] Certified [Commonwealth] Fiscal

Plan."  Ex. 10 at 6.  That statement, however, does not satisfy the requirements of PROMESA

§ 204(a)(2)(B–C), because PROMESA requires the certification be prepared by the entity that

prepared the formal estimate and AAFAF did not prepare a formal estimate regarding Act 10.[7]

PROMESA § 204(a).

---

[6] *See Vázquez Garced v. Fin. Oversight & Mgmt. Bd. for P.R.* (*In re Fin. Oversight and Mgmt. Bd. for P.R.*), 511 F. Supp. 3d 90, 126, 128–29 (D.P.R. 2020), *aff'd*, 37 F.4th 746 (1st Cir. 2022) (finding the Government's fiscal estimates, which did not "provide[] the requisite analytical support," failed to satisfy PROMESA § 204(a)'s formal estimate requirement).

[7] Pursuant to Executive Order 2019-057, the Director of the OMB is the "sole official authorized to issue certifications of availability of public funds" and only OMB and the Department of Treasury are charged with undertaking analyses of new laws to certify their estimated impacts on revenues and spending, as required under PROMESA § 204(a).  Executive Order 2019-057 § 2, a certified translation of which is attached hereto as Exhibit 13.  AAFAF has confirmed that it is not the agency responsible for preparing formal estimates.  *See* June 16, 2023 Letter from AAFAF, a true and correct copy of which is attached

53.     AAFAF's "certification" was also deficient for other reasons: (i) AAFAF's statement was limited to the 2023 Commonwealth Fiscal Plan, and did not address Act 10's consistency or inconsistency with the PREPA Fiscal Plan; and (ii) contrary to AAFAF's conclusion, Act 10 is significantly inconsistent with the Commonwealth Fiscal Plans' requirement that the Energy Bureau be able to operate independently and "free from any direct or indirect political influence or interference," and the PREPA Fiscal Plan's requirements regarding completion of the net metering study and implementation of any changes to the net metering program.  Ex. 4 at 58, 74.

54.     The Oversight Board informed AAFAF, the Governor, and the Legislature of its assessment of the Submission, as well as other concerns about Act 10, in a letter dated April 10, 2024.[8]  A true and correct copy of that correspondence (the "April 10 Letter") is attached hereto as Exhibit 15.

55.     In the April 10 Letter, pursuant to PROMESA § 204(a)(3)(A–B), the Oversight Board notified the Governor and the Legislature that the Governor had not provided the required formal estimate and certification and, pursuant to PROMESA § 204(a)(4)(A), directed the Governor to submit a revised submission, including a formal estimate and a certification that complied with the requirements of PROMESA § 204(a)(2), by April 19, 2024.  *Id.* at 6.

---

hereto as Exhibit 14 (noting that Treasury and OMB prepare formal estimates as "those entities (not AAFAF) have the best information and expertise to determine a new law's effects on Government expenditures and revenues.").

[8] The Oversight Board issued a letter responding to the Submission on April 8, 2024, and issued a corrected version of that correspondence on April 10, 2024.

56.     The Oversight Board also requested that the Government confirm by April 15, 2024 that it would repeal or amend Act 10 to allow the Energy Bureau to complete its study and further requested that the Government submit its "concrete plan and timeline for doing so." *Id.*

57.     AAFAF responded on April 15, 2024 (the "April 15 AAFAF Letter").  A true and correct copy of that letter is attached hereto as Exhibit 16.

58.     In the April 15 AAFAF Letter, AAFAF stated the "Government understands the Oversight Board's concerns expressed in the [April 10] Letter" and would "assess[] any potential changes to the 204 Submission, or to Act 10, (if any) that may be warranted in order to implement the Act in a manner not significantly inconsistent with PREPA's Certified Fiscal Plan." *Id.* at 2. The Government requested the Oversight Board provide an unspecified amount of "additional time" to conduct that assessment.[9]  *Id.*

59.     The Oversight Board responded to the April 15 AAFAF Letter with a letter dated May 2, 2024 (the "May 2 Letter"), addressed to the Governor, Senate President José Luis Dalmau Santiago, and Speaker of the House of Representatives Rafael Hernández Montañez.  A true and correct copy of the Oversight Board's May 2 Letter is attached hereto as Exhibit 17.

60.     In the May 2 Letter, the Oversight Board reiterated its concerns regarding Act 10. *Id.* at 1.  Because of Act 10's multiple issues—including its inconsistency with the then-current Fiscal Plans—the Oversight Board once again stated that Act 10 needed to be repealed or amended. *Id.* at 2.  To that end, the Oversight Board requested legislation to repeal or amend the provisions of Act 10 be introduced in the Legislature no later than May 7, 2024—the last day to introduce

---

[9] AAFAF did convey that the Government would not implement Act 10 during the assessment, Ex. 16 at 2, but given that Act 10 restricts the Energy Bureau's ability to make changes to the net metering program, that offer did not resolve the issues with Act 10.

legislation for consideration in the then-current legislative session—and enacted no later than June 30, 2024, the last day of the then-current legislative session.  *Id.*

61.     On May 7, 2024, AAFAF issued a letter to the Oversight Board (the "May 7 Letter").  A true and correct copy of the May 7 Letter is attached hereto as Exhibit 18.

62.     In the May 7 Letter, AAFAF requested the Oversight Board "give the Legislative Assembly additional time within the current legislative session that ends on June 30, [2024] to consider the Oversight Board's objections, engage in discussions and address potential amendments to Act 10 through the legislative process" and "gather industry feedback" in order to make an "informed decision regarding Act 10."  *Id.* at 1–2.

63.     On June 14, 2024, the Energy Bureau approved a resolution authorizing the publication of a draft study on net metering and distributed energy (the "Draft Study").  A true and correct copy of the Draft Study and a certified translation of its accompanying Resolution are attached hereto as Exhibit 19 and Exhibit 20, respectively.  The Draft Study noted that "Puerto Rico will find [net metering] uns[us]tainable in the long-run" and that "[n]ew methods need to be explored and adopted," and recommended that the Energy Bureau "commence regulatory processes that will provide the answers to questions raised in this report" which "should begin with a public vetting of th[e] report."  Ex. 19 at 82.

64.     To date, the provisions of Act 10 have not been repealed or amended.

65.     To date, the Governor has not complied with the Oversight Board's directive that he provide a compliant formal estimate and certification for Act 10, even though the Oversight Board's direction required such materials to be submitted by April 19, 2024.

## E.     THE OVERSIGHT BOARD DETERMINED ACT 10 IMPAIRS OR DEFEATS THE PURPOSES OF PROMESA

66.     As noted above, Act 10 interferes with the Energy Bureau's independence, by:  (i) preventing it from conducting any net metering study of consequence before 2030; (ii) barring it from making any changes (if appropriate) to the current net metering program until at least 2031, and likely longer; and (iii) requiring it to keep in place the current 1:1 net metering rate for all then-existing net metering program participants (or those with qualifying installed net metering equipment as of the date of any change) for another 20 years from the date of any change (*i.e.*, until at least 2051).

67.     After the Oversight Board learned Act 10 had been enacted, the Oversight Board and its advisors examined Act 10.  On April 5, 2024, based on its review and analysis, the Oversight Board determined Act 10 impairs or defeats PROMESA's purposes of achieving fiscal responsibility and access to capital markets for multiple independent reasons, including:

a.  Act 10 violates the express terms of the 2023 Commonwealth Fiscal Plan and PREPA Fiscal Plan by politically interfering with the Energy Bureau's regulation of PREPA's net metering program;

b.  Act 10 violates the express terms of the PREPA Fiscal Plan, which requires the Energy Bureau to conduct and complete its net metering study and implement any changes to PREPA's net metering program it deems appropriate by April 11, 2024; and

c.  Act 10 impairs the Oversight Board's ability to carry out its statutory duties under PROMESA § 201(b)(1)(B), (G), (H), and (J) to ensure funding of the essential public service of reliable electricity, to enable the achievement of fiscal targets, to

create independent revenue forecasts, and to provide for capital expenditures and investments necessary to promote economic growth.

68.     The Oversight Board informed the Governor, Senate President, and Speaker of its determination and concerns regarding Act 10 on April 8, 2024.  A true and correct copy of the April 5, 2024 Oversight Board resolution regarding Act 10 (the "April Resolution") is attached hereto as Exhibit 21.

69.     On June 5, 2024, the Oversight Board certified the 2024 Commonwealth Fiscal Plan, which includes similar provisions regarding the need for the Energy Bureau to operate independently and without political interference.  Ex. 3 at 76, 140.  On June 21, 2024, the Oversight Board again determined that Act 10 impairs or defeats the purposes of PROMESA for the same reasons as set forth in the April Resolution but taking into account the new Commonwealth Fiscal Plan.  A true and correct copy of the June 21, 2024 Oversight Board resolution regarding Act 10 (the "June Resolution") is attached hereto as Exhibit 22.

## COUNT I

**NULLIFICATION OF ACT 10 AND INJUNCTION BARRING IMPLEMENTATION
AND ENFORCEMENT OF ACT 10
(PROMESA §§ 108(a)(2) AND 104(k))**

70.     The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 69 above as if set forth in full herein.

71.     PROMESA § 108(a)(2) bars the Governor from enacting, implementing, or enforcing any law the Oversight Board determines would impair or defeat the purposes of PROMESA as determined by the Oversight Board.

72.     PROMESA's purposes include providing a method for the Commonwealth and its agencies and instrumentalities to achieve fiscal responsibility and access to capital markets. *See* PROMESA §§ 101(a), 201.

73.     The Oversight Board determined Act 10 impairs or defeats PROMESA's purposes of achieving fiscal responsibility and access to capital markets for multiple independent reasons, including:

a. Act 10 directly contravenes the express terms of the Fiscal Plans by interfering with the Energy Bureau's independence with respect to regulating PREPA's net metering program;

b. Act 10 directly contravenes the express terms of the PREPA Fiscal Plan, which requires the Energy Bureau to complete its net metering study and implement any changes to PREPA's net metering program it deems appropriate by April 11, 2024; and

c. Act 10 impairs the Oversight Board's ability to carry out its statutory duties under PROMESA §§ 201(b)(1)(B), (G), (H), and (J) to ensure funding of the essential public service of reliable electricity, to enable the achievement of fiscal targets, to create independent revenue forecasts, and to provide for capital expenditures and investments necessary to promote economic growth.

74.     Because Act 10 impairs or defeats PROMESA's purposes, as determined by the Oversight Board, PROMESA § 108(a)(2) bars the Government from enacting, implementing, and/or enforcing Act 10.  The Oversight Board's determination served to prevent Act 10 from taking effect. *See La Liga de Ciudades de P.R v. Fin. Oversight & Mgmt. Bd. for P.R.*, No. 22-1062, 2024 WL 3533427, at *20 (1st Cir. July 25, 2024) ("We find persuasive these multiple

sources of statutory authority," including PROMESA § 108(a)(2), "confirming the Board's power to prevent laws inconsistent with PROMESA from taking effect, as well as the Title III court's concomitant authority to enforce the Board's mandates by nullifying such a law from its inception.").

75.     Notwithstanding the Oversight Board's determinations and directives, the provisions of Act 10 have not been amended or repealed.

76.     The Oversight Board is thus entitled to an order pursuant to PROMESA §§ 104(k) and 108(a)(2) nullifying Act 10 and permanently enjoining and nullifying any action to implement or enforce Act 10.

## COUNT II

## NULLIFICATION OF ACT 10 AND INJUNCTION BARRING IMPLEMENTATION OR ENFORCEMENT OF ACT 10
### (PROMESA § 204(a)(5))

77.     The Oversight Board repeats and realleges every allegation set forth in paragraphs 1 to 76 above as if set forth in full herein.

78.     PROMESA § 204(a)(1) requires the Governor to submit to the Oversight Board new laws within seven business days of enactment, and PROMESA § 204(a)(2) requires the Governor to include with the submission: (i) a formal estimate of the law's impact on the expenditures and revenues of the "territorial government"—which includes PREPA—prepared by an "appropriate entity" with expertise in budgets and financial management; and (ii) a certification by that entity as to whether the law is or is not "significantly inconsistent" with the applicable certified fiscal plan(s).

79.     The Governor's Submission lacked both a formal estimate and certification that met the requirements of PROMESA for the reasons stated above, *supra* ¶¶ 50–52.

80.     On April 10, 2024, the Oversight Board informed the Governor and Legislature pursuant to PROMESA § 204(a)(3)(B) that the Submission did not include a proper formal estimate and certification.  *See* Ex. 15 at 6.

81.     On April 10, 2024, pursuant to PROMESA § 204(a)(4)(A), the Oversight Board directed the Governor to provide the missing estimate and certification by April 19, 2024.  *See id.*

82.     On April 15, 2024, AAFAF requested an unspecified amount of "additional time" to "assess[] any potential changes to the 204 Submission, or to Act 10, (if any) that may be warranted in order to implement the Act in a manner not significantly inconsistent with PREPA's Certified Fiscal Plan."  *Id.*

83.     To date, the Governor has failed to comply with the Oversight Board's PROMESA § 204(a)(4) directive.

84.     PROMESA § 204(a)(5) provides that if "the territorial government fails to comply with a direction given by the Oversight Board" pursuant to PROMESA § 204(a)(4), "the Oversight Board may take such actions as it considers necessary, consistent with [PROMESA], to ensure that the enactment or enforcement of the law will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing the enforcement or application of the law."

85.     Act 10 prohibits the Energy Bureau from making changes it deems appropriate with respect to Puerto Rico's net metering program for at least six years.  In so doing, it impermissibly interferes with the Energy Bureau's regulation of PREPA and adversely affects compliance with the Fiscal Plans.  The only way to prevent such adverse impact is for Act 10 to be nullified.

86.     The Oversight Board is entitled to an order pursuant to PROMESA §§ 104(k) and 204(a)(5) nullifying Act 10 to ensure the law will not adversely affect compliance with

the 2024 Commonwealth Fiscal Plan and PREPA Fiscal Plan and an order permanently enjoining and nullifying any action taken to implement or enforce Act 10.

## **PRAYER FOR RELIEF**

WHEREFORE the Oversight Board prays that judgment be entered for it and against the Defendant, and for the following relief:

A. Counts I and II be sustained;

B. Judgment be entered on Counts I and II, in their entirety, in favor of Plaintiff and against Defendant;

C. Act 10 be nullified;

D. Any and all actions taken to implement or enforce Act 10 be enjoined and nullified;

E. The Governor be permanently enjoined from enacting, implementing, and enforcing laws that restrict or compel action by the Energy Bureau;

F. Such other and further relief as the Court finds just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: July 26, 2024
San Juan, Puerto Rico

/s/ Miguel E. Gierbolini
Miguel E. Gierbolini
U.S.D.C. – P.R. No. 211,901
**GIERBOLINI & CARROLL LAW OFFICES, PSC**
P.O. Box 9022936
San Juan, P.R. 00902-2936
Tel:  (787) 620-0685
Email:  miguelgierbolini@gmail.com

/s/ Martin J. Bienenstock
Martin J. Bienenstock (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email:  mbienenstock@proskauer.com
            tmungovan@proskauer.com

/s/ Guy Brenner
Guy Brenner (*pro hac vice*)
**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Tel:      (202) 416-6800
Fax:      (202) 416-6899
Email:  gbrenner@proskauer.com

*Attorneys for the Financial Oversight and Management Board in its own right and as representative of the Puerto Rico Electric Power Authority*