# EXHIBIT 6

(S. B. 1121)
(Conference)

**(No. 17-2019)**

(Approved April 11, 2019)

# AN ACT

To    create the "Puerto Rico Energy Public Policy Act" for the purposes of
establishing the Puerto Rico public policy on energy in order to set the
parameters for a resilient, reliable, and robust energy system with just and
reasonable rates for all class of customers; make it feasible for energy system
users to produce and participate in energy generation; facilitate the
interconnection of distributed generation systems and microgrids, and
unbundle and transform the electrical power system into an open system;
amend Sections 2, 3, and 4, renumber Section 5 as Section 4A, renumber
Section 5A as Section 4B, add a new Section 5, repeal Section 5B, and
substitute the contents of Sections 6 and 6B of Act No. 83 of May 2, 1941, as
amended, known as the "Puerto Rico Electric Power Authority Act," in order
to restructure the Governing Board of the Electric Power Authority, establish
the powers, authorities, duties, and responsibilities of the entities responsible
for administering, operating, and maintaining the Electrical System of Puerto
Rico, provide for the requirements of the Integrated Resource Plan, and
establish penalties for noncompliance therewith; amend Sections 1, 2, 3, 4, 5,
6, 7, 8, 9, and 10, repeal Section 11, and renumber Sections 12 and 13 as
Sections 11 and 12, respectively, in Act No. 114-2007, as amended, in order
to increase the kilowatts for the interconnection of distributed generation
systems to the transmission and distribution network; establish a shorter term
for the interconnection determination; amend Sections 1.4, 2.3, 2.4, and 2.5,
repeal Section 2.6, renumber Sections 2.7 and 2.8 as Sections 2.6 and 2.7,
renumber Section 2.9 as Section 2.8 and amend it, renumber Section 2.10 as
Section 2.9, renumber Section 2.11 as Section 2.10 and amend it, add new
Sections 2.12 and 2.13, renumber Sections 2.12 and 2.13 as Sections 2.14 and
2.15 of Act No. 82-2010, as amended, known as the "Public Policy on Energy
Diversification by Means of Sustainable and Alternative Renewable Energy
in Puerto Rico Act," to increase the Renewable Portfolio Standard until
achieving, by 2050, 100% energy production from renewable sources; clarify
that all Renewable Energy Certificates, including those for renewable energy
and for net metering customers, may be acquired by a retail electricity

supplier; direct the Energy Bureau to conduct a study to set specific goals with regards to energy storage systems and eliminate the use of coal as an energy source as of 2028; amend Section 1.4, renumber Chapter III as Chapter IV, renumber Sections 3.1, 3.2, 3.3, 3.4, 3.5, and 3.6 as 4.1, 4.2, 4.3, 4.4, and 4.5, respectively, in Act No. 83-2010, as amended, and add a new Chapter III to create the Green Energy Trust; amend Section 4030.17 of Chapter 3 of Subtitle D of Act No. 1-2011, as amended, to clarify that solar energy storage equipment is exempt from the Sales and Use Tax; substitute the contents of Section 1.2, amend Sections 1.3, 1.4, 3.4, 4.1, 4.2, and 4.3, Chapter VI, eliminate the contents of Subchapter A of Chapter VI and its Sections 6.1 and 6.2, and reserve them; amend Sections 6.3, 6.4, 6.6, 6.7, 6.8, 6.11, 6.16, 6.22, 6.23, 6.24, and 6.25; add a new Section 6.25B, amend Sections 6.27 and 6.29, add new Sections 6.29A and 6.29B, amend Sections 6.30, 6.31, 6.32, 6.33, 6.34, 6.35, 6.36, and 6.37, eliminate the contents of Section 6.39 and reserve it, amend Sections 6.40, 6.41, 6.42, and 6.43 of Act No. 57-2014, as amended, known as the "Puerto Rico Energy Transformation and RELIEF Act," to eliminate the Puerto Rico Energy Administration, establish demand response and energy efficiency programs, increase the budget of the Energy Bureau and grant it more powers and authorities, implement incentive and penalty mechanisms based on performance metrics, broaden the authority of the Independent Consumer Protection Office; amend Sections 2, 5, 6, 7, and 15 of Act No. 120-2018, known as the "Puerto Rico Electric Power System Transformation Act," to extend the term for the Energy Bureau to issue the Energy Compliance Certificate and to require the authorization thereof for the inapplicability of Section 1.9 of this Act; amend Section 7 of Act No. 211-2018, known as the "Act for the Implementation of the Puerto Rico Public Service Regulatory Board Reorganization Plan," to clarify that the budget allocated to the Energy Bureau shall not be required to be submitted to the Office of Management and Budget; and for other related purposes.

## STATEMENT OF MOTIVES

The electric power system should be reliable and accessible, promote industrial, commercial, and community development, improve the quality of life at just and reasonable cost, and promote the economic development of the Island.

Electric power services in Puerto Rico are inefficient, unreliable, and provided at an unreasonable cost to residential, commercial, and industrial customers despite the existence of a vertically integrated monopolistic structure. This is mainly due to a lack of infrastructure maintenance, the inadequate distribution of generation vis-à-vis demand, the absence of the necessary modernization of the electrical system to adjust it to new technologies, energy theft, and the reduction of the Electric Power Authority's personnel. Likewise, the electrical system of the Island is highly polluting as a result of poor energy diversification, the hindering of the integration of distributed generation and renewable energy sources, and high fossil fuel dependency. Consequently, the power plants of the Electric Power Authority have become the main polluters of our environment given their high greenhouse gas emissions.

The pollution generated by the Authority worsens the effects of climate change. According to the report published by the United Nations Intergovernmental Panel on Climate Change on October 8, 2018, if definite and comprehensive actions are not taken to reduce greenhouse gas emissions, temperatures shall keep rising thus leading to stronger and more frequent extreme weather such as sea level rises, hurricanes, and droughts. The effects of climate change are a cause for concern. Recently, reports have shown that the temperature has increased one degree Celsius (1˚C) and a catastrophic rise of one point five degrees Celsius (1.5˚C) is expected between 2030 and 2052; therefore, greater changes are warranted. For such purposes, scientists have indicated that we need to achieve net zero carbon emissions by 2050 in order to have an opportunity to stop this increase. Otherwise, temperatures could rise a devastating three degrees Celsius (3˚C). Moreover, the pollution generated by the Authority constitutes a violation of the Mercury and Air Toxics Standards (MATS), which compel electric power generation companies to establish strict controls for the purpose of reducing the air pollution generated by

their power plants. Noncompliance with such standards can entail daily penalties of up to thirty-seven thousand five hundred dollars ($37,500) by virtue of the Clean Air Act.

The aforementioned factors require a change in the Island's energy public policy. Each of these factors contributes to unreasonable rates and a deficient and unreliable electric power service which makes Puerto Rico lose its competitive value as an investment destination, thus adversely affecting our economic development and reducing job creation and retention, among other evils.

The Electric Power Authority (PREPA or the Authority) holds hostage approximately 1.5 million customers which represent close to $3.45 billion in total revenue. The electric power generation system is approximately thirty (30) years older than the electric power industry average in the United States. Our electric power system includes two thousand seven hundred and forty-eight (2,748) miles of transmission lines, thirty-one thousand four hundred and eighty-five (31,485) miles of distribution lines, and three hundred and thirty-four (334) substations. The transmission lines include 230 kV, 115 kV, and 38 kV circuits that transmit energy from the power plants to the distribution substations to be delivered to consumers through lower voltage distribution lines. The Authority generates two-thirds of the Island's power and purchases the rest. Energy demand has decreased from a peak of three thousand six hundred and eighty-five megawatts (3,685 MW) in Fiscal Year 2006 to three thousand one hundred and fifty-nine megawatts (3,159 MW) in Fiscal Year 2014, and three thousand sixty megawatts (3,060 MW) by August 2017, which shows a clear tendency towards lower energy demand. Despite the foregoing, the Authority has a generation capacity of five thousand eight hundred and thirty-nine megawatts (5,839 MW) which includes the nine hundred and sixty-one megawatts (961 MW) provided by the EcoEléctrica Power Plant and AES through twenty (20)-year power purchase agreements. In addition, the main generating units are located

in the south area of the Island while the highest energy demand is in the north. See*,
Build Back Better: Reimagining and Strengthening the Power Grid of Puerto Rico*,
December 2017.

Even though the Authority controls the Island's energy supply, its financial statements as of June 30, 2014, show debts totaling over $11.7 billion. The Authority's bankruptcy conditions have been known for years and have transformed this public corporation into an unsustainable burden for the people of Puerto Rico. Its fragile fiscal situation forced the Authority to undergo a bankruptcy process under Title III of the 2016 Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA).

Given the budgetary and financial uncertainties that have accumulated over the last decade, neither PREPA nor the Government have the necessary financial resources to carry out its operational restructuring, achieve financial recovery, and make the substantial infrastructures changes that the electric power system warrants to provide a service that is essential to our citizens.

According to the Federal Emergency Management Agency (FEMA), due to the onslaught of hurricanes Irma and Maria in September 2017, Puerto Rico suffered "the worst natural disaster in the history of the United States." The damage caused by these weather events exacerbated and eroded the already deteriorated electric power system. The electric power system was devastated after eighty percent (80%) of the transmission and distribution network collapsed. The United States Government federalized the electric power system's recovery process and delegated it to the U.S. Army Corps of Engineers, to the extent that it had the final say in all decisions regarding the procurement and distribution of equipment, materials, and supplies, as well as in the assignment of tasks and zones to  reconstruction brigades.

It has been a slow process that has not only caused our people great suffering and entailed great sacrifices, but has also deteriorated our economy and the state's revenues.

Maintaining the electric power service in the hands of the Government entails an environment subject to the ebb and flow of politics which does not promote stability for this service. In addition to the foregoing, the Government of Puerto Rico was forced to seek alternative measures for the benefit of the citizenry due to the high cost of fuel in a very volatile and speculative market; an old and deteriorated electric power infrastructure reliant on the costliest, less efficient, and most polluting fuels; the ongoing million-dollar demands of the Environmental Protection Agency (EPA); administrative and operational dysfunction caused by excessive government bureaucracy and politicization; certain labor-related conflicts; failed and costly attempts to modernize its infrastructure; a multimillion-dollar debt; the need to disburse millions of dollars for operational restructuring; and bondholder negotiations.

As a result, on January 22, 2018, the Governor of Puerto Rico, the Hon. Ricardo Rosselló-Nevares, announced the transformation of our electric power system. After the required process, Act No. 120-2018, known as the "Puerto Rico Electric Power System Transformation Act," was approved on June 20, 2018.

Act No. 120-2018 set forth the process whereby the electric power system shall be transformed into one that is modern, sustainable, reliable, efficient, cost-effective, and resilient to the ravages of nature. The aforementioned Act established the process for the sale of power generation assets to private entities and for the concession of the transmission and distribution network through the modified Public-Private Partnership mechanism.

During the legislative process of Act No. 120-2018, numerous sectors voiced their concerns with regards to the need for a complete, viable, and reliable regulatory framework that guides the transformation of our Island's electric power system and takes into consideration our vulnerability in the aftermath of hurricanes Irma and Maria. Likewise, such process revealed the need to maintain a regulatory entity to oversee the attainment of the objectives established by this public policy, and the importance of having an updated Integrated Resource Plan to regulate the market and a Public Policy that continues until 2050. For such reason, the enacted legislation recognized the need to approve a new regulatory framework and a cutting-edge public policy on energy that encourages the use of new technology, alternative energy methods, distributed generation and renewable energy sources, the integration of microgrids, and the flexibility of a competitive market. To achieve this, the Legislative Assembly was granted a term of one hundred eighty (180) days to develop the regulatory framework and the energy public policy.

Such a transformation is imminent and necessary in the face of an energy demand that has been dropping for the past ten (10) years. The performance metrics of Puerto Rico's electric power system show that we are far below the United States in the System Average Interruption Duration Index (SAIDI), the System Average Interruption Frequency Index (SAIFI), and the Customer Average Interruption Duration Index (CAIDI). These indexes are used as reliability indicators by electric power utilities to show the average outage duration for each customer served; the average number of interruptions that a customer experiences; and the average outage duration time that any given customer experiences with the average restoration time, respectively.

Puerto Rico's electric power system lacks an orderly planning to identify the needs for modernizing or retiring facilities, and providing maintenance to infrastructure and prioritizing the installation of underground electrical wiring in areas with facilities for essential services and urban centers. The system also lacks the integration of distributed generation and renewable energy sources that make it flexible, reliable, resilient, and efficient.

The Legislative Assembly took on the task of revising the existing legislation on Puerto Rico's current regulatory framework and energy public policy including, but not limited to, the following: (1) Act No. 83 of May 2, 1941, as amended, known as the "Puerto Rico Electric Power Authority Act"; (2) Act No. 114-2007, as amended, known as the "Electric Power Authority Net Metering Program"; (3) Act No. 83-2010, as amended, known as the "Green Energy Incentives Act of Puerto Rico"; (4) Act No. 82-2010, as amended, known as the "Public Policy on Energy Diversification by Means of Sustainable and Alternative Renewable Energy in Puerto Rico Act"; (5) Act No. 57-2014, as amended, known as the "Puerto Rico Energy Transformation and RELIEF Act"; and (6) Act No. 120-2018, known as the "Puerto Rico Electric Power System Transformation Act." In turn, it incorporated the input and recommendations from various sectors with specialized knowledge in this field, the population in general, the market, and the Government of Puerto Rico to set the parameters that shall guide Puerto Rico towards a future where the energy system is resilient, reliable, and robust, and allows for consumers to be active agents, the modernization of the transmission and distribution network, the transition from fossil fuels to renewable energy sources, the integration of distributed generation, microgrids, and state of art technology that benefits consumers and results in rates below twenty cents ($0.20) per kilowatt-hour. Among the reports considered were: the *Development of the Regulatory Framework and Public Policy for the Puerto Rico Energy Transformation* by the Senate of Puerto Rico Advisory Committee on

Energy Transformation, October 2018; the *Public Collaborative for Puerto Rico's Energy Transformation* by the Rocky Mountain Institute and the Institute for Competitiveness and Sustainable Economy, October 2018; the *Energy Resilience Solutions for the Puerto Rico Grid* by the United States Department of Energy, June 2018; *Reimagina Puerto Rico Energy Sector Report*, June 2018; and *Build Back Better: Reimagining and Strengthening the Power Grid of Puerto Rico*, December 2017.

Moreover, in view of the urgency to transform the Island's electric power system, different interest sectors have expressed the need to depoliticize the Electric Power Authority. During a congressional hearing on the public corporation, held in 2018, the Chair of the U.S. House Committee on Natural Resources stated the need to enact legislation allowing for the depoliticization of the Electric Power Authority. Unbundling the Electrical System and incorporating the private sector in the operation of assets and the rendering of electric power services will allow for the elimination of interventions fueled by party politics.

To attain these objectives, this Act provides the means to establish an effective programming that allows for the setting of clear parameters and goals for energy efficiency, the Renewable Portfolio Standard, the interconnection of distributed generators and microgrids, wheeling, and the management of electricity demand. In doing so, it imposes, among other measures, responsibility for lack of diligence in or noncompliance with the implementation of the energy public policy of Puerto Rico, and it adopts incentive mechanisms that make the enforcement thereof feasible. Furthermore, pertaining to the Puerto Rico Energy Bureau, its powers and duties are broadened and its budget is increased. It is also provided for the implementation of alternative mechanisms that aid in the enforcement of the public policy and for the inclusion of the Bureau, with greater powers, in the Partnership Contracts and Sales Contracts processes established in Act No. 120-2018.

A new and better Puerto Rico is built with the will of those who are not discouraged in the face of adversity. We rise up with the capacity to innovate and make the necessary changes to benefit our People. The transformation herein initiated shall exchange inefficiency for operational excellence. With this step, Puerto Rico shall make progress and move towards the future.

***BE IT ENACTED BY THE LEGISLATIVE ASSEMBLY OF PUERTO RICO:***

Chapter I.- General Provisions

Section 1.1.- Title.

This Act shall be known and may be cited as the "Puerto Rico Energy Public Policy Act."

Section 1.2.- Definitions.

The following words or terms shall have the meaning stated below, except as otherwise provided or where the context clearly indicates otherwise. Words importing the singular number shall include the plural and vice versa:

(a)     Legacy Power Generation Assets: Shall mean those PREPA Assets, as such term is defined in Act No. 120-2018, related to power generation that the Authority does not sell as part of the transformation process authorized under Act No. 120-2018. The operation of these assets shall be transferred to one or more electric power companies with sole purpose of being operated during their useful life pursuant to the Integrated Resource Plan.

(b)     Authority or PREPA: Shall mean the Puerto Rico Electric Power Authority, created by Act No. 83 of May 2, 1941, as amended, and any of its subsidiaries and activities whether or not commercial.

(c)     Electric Power Service Company or Electric Power Company: Shall mean any natural or juridical person or entity, including energy cooperatives, engaged in the rendering of energy generation, transmission, and distribution

services, billing, wheeling, grid services, energy storage, the resale of electric power, as well as any other electric power service as defined by the Bureau. For purposes of this Act, the Electric Power Authority or its successor, as well as any electric power transmission and distribution network operator, shall be deemed to be an Electric Power Service Company.

(d)     Contractor: Shall have the meaning given to such term in Act No. 29-2009, provided, that for the purposes of this Act it refers to those natural or juridical persons that execute Partnership Contracts in relation to PREPA Transactions.

(e)     Partnership Contract: Shall have the meaning given thereto in Act No. 29-2009. Provided, that the Energy Compliance Certificate provided in Act No. 120-2018 shall be required in the case of a PREPA Transaction.

(f)     Renewable Energy: Includes the terms "sustainable renewable energy," "alternative renewable energy," and "distributed renewable energy," jointly, as such terms are defined in Act No. 82-2010, as amended, known as the "Public Policy on Energy Diversification by Means of Sustainable and Alternative Renewable Energy in Puerto Rico Act."

(g)     Distributed Generation: Means the electric power delivered to the distribution grid that is generated from an energy source in a facility near where it will be used.

(h)     Essential Service Facilities: Shall mean health facilities, police and armed forces stations, fire stations, emergency management offices, emergency shelters, prisons, ports, airports, telecommunications facilities, water supply and waste water treatment facilities, educational institutions, and any other facility designated by the Energy Bureau as an "Essential Service Facility" through regulations.

(i)     Act No. 29-2009: Shall mean Act No. 29-2009, as amended, known as the "Public-Private Partnership Act."

(j)     Act No. 57-2014: Shall mean Act No. 57-2014, as amended, known as the "Puerto Rico Energy Transformation and RELIEF Act."

(k)     Act No. 82-2010: Shall mean Act No. 82-2010, as amended, known as the "Public Policy on Energy Diversification by Means of Sustainable and Alternative Renewable Energy in Puerto Rico Act."

(l)     Act No. 83:  Shall mean Act No. 83 of May 2, 1941, as amended, known as the "Puerto Rico Electric Power Authority Act."

(m)     Act No. 120-2018:  Shall mean Act No. 120-2018, as amended, known as the "Puerto Rico Electric Power System Transformation Act."

(n)     Microgrids:  Shall have the meaning established in Section 1.4 of Act No. 82-2010.

(o)     Bureau: Shall mean the Puerto Rico Energy Bureau established by virtue of the Reorganization Plan of the Puerto Rico Public Service Regulatory Board, and Act No. 211-2018, formerly the Puerto Rico Energy Commission created under Act No. 57-2014, as amended, which is a specialized independent entity in charge of regulating, overseeing, and enforcing the public policy on energy of the Government of Puerto Rico.

(p)     Integrated Resource Plan or "IRP": Shall mean a plan that considers all reasonable resources to satisfy the demand for electric power services during a specific period of time, including those related to energy supply, whether existing, traditional, and/or new resources, and those related to energy demand, such as energy conservation and efficiency, demand response, and distributed generation by industrial, commercial, or residential customers. Every integrated resource plan (IRP) shall be subject to the provisions of this Act and the rules established by the Bureau which shall approve the same. Every plan shall be devised with broad participation from citizens and all interested groups.

(q)    Energy Public Policy Program: Shall mean the Energy Public Policy Program of the Department of Economic Development and Commerce of Puerto Rico, formerly known as the Commonwealth Energy Public Policy Office, created by virtue of Reorganization Plan of the Puerto Rico Public Service Regulatory Board and Act No. 211-2018, in charge of developing and promulgating the public policy on energy of the Government of Puerto Rico.

(r)    Prosumer: Shall mean any users or customers of the Electrical System who have the capacity to generate electric power for self-consumption that, in turn, have the capacity to supply any energy surplus through the electric power grid.

(s)    Electric Power Service: Means the group of activities that make up the electrical system and allow customers to receive and u6se electric power. The term electricity power service includes, but is not limited to, those activities related to electric power generation, transmission, distribution, commercialization, billing storage, and wheeling.

(t)    PREPA Transaction(s): Any and all transactions carried out in accordance with the provisions of Act No. 29-2009 and Act No. 120-2018, whereby PREPA or the Government of Puerto Rico establish one or more Partnerships in connection with any of PREPA's functions, services, or facilities, or a Sales Contract for PREPA assets related to electric power generation.

Section 1.3.- The Puerto Rico Electrical System.

Puerto Rico's Electric Power System comprises the functions of electric power generation, transmission, distribution, and commercialization as well as system planning and control. The electric power service is one of the basic and essential services that lay the foundation for the sustainable development of the people of Puerto Rico; therefore, all of the functions of the Electrical System are in the public interest and of strategic importance for private and government

operations. However, as of the approval of this Act, the Authority shall not have exclusive rights to generate, transmit, distribute, and commercialize the electric power supply. The Puerto Rico Electrical System shall operate openly rather than in a discriminatory manner and be subject to the regulations of the Puerto Rico Energy Bureau.

Section 1.4.-  Guiding Principles of the Puerto Rico Electrical System.

The activities or functions related to the electric power service shall be governed by the principles of efficiency, quality, continuity, adaptability, impartiality, solidarity, and equality.

i)      The efficiency principle compels the correct allocation and use of resources to guarantee that services are rendered at the lowest possible cost and that resources which compose the Electrical System are developed according to the best industry practices;

ii)      By virtue of the quality principle, electric power services rendered must meet the technical requirements and the reliability and quality standards established therefor;

iii)      The continuity principle implies that services shall be rendered without interruptions, other than those programmed due to technical reasons, force majeure, or fortuitous events, or as a penalty when a customer fails to fulfill his obligations, and even in the event of bankruptcy, liquidation, audit, or substitution or termination of contracts entered into with the companies responsible for rendering such services;

iv)      The adaptability principle leads to the incorporation of scientific and technological advances that improve the quality and efficiency of services rendered at the lowest possible cost;

v)      The impartiality principle requires that, under the same conditions, consumers are treated equally regardless of their social condition and purchasing power, or the technical conditions or characteristics of the service rendered;

vi)    The solidarity principle establishes that the design of the rate structure shall take into account the goal of providing affordable electricity prices to all consumers, particularly to low-income consumers.

vii)    The equity principle promotes the attainment of a balanced and appropriate energy service coverage in the various regions and sectors of the Island in order ensure that the basic needs of the entire population are met.

Section 1.5.-  2050 Energy Public Policy.

It is hereby declared as public policy of the Government of Puerto Rico:

1)    Universal Access to Electric Power Service

(a)    To guarantee that the cost of the electric power service in Puerto Rico be affordable, just, reasonable, and nondiscriminatory for all consumers in Puerto Rico. When reviewing and approving the fees, rents, rates, and any other type of charge that an electric power company seeks to impose, the Energy Bureau shall evaluate the efforts made by the electric power company to maintain such fees, rents, rates, and any other type of charge as close as possible to the twenty cent ($0.20) per kilowatt-hour goal established in the Certified Fiscal Plan for the Puerto Rico Electric Power Authority. The Bureau shall be ultimately responsible for ensuring that the fees, rents, rates, and any other type of charge collected by the electric power company are just and reasonable, as well as consistent with sound fiscal and operational practices which result in a reliable service at the lowest reasonable cost;

(b)    To guarantee the availability of energy materials and supply to the people of Puerto Rico;

2)    Electric Power Service Model

(a)    To promote the necessary changes in order to transform the Electric Power System into one that satisfies the energy needs of the 21st century-Puerto Rico;

(b)     To oversee the implementation of strategies geared toward achieving efficiency in the generation, transmission, and distribution of electric power so as to guarantee the availability and supply thereof at an affordable, just, and reasonable cost;

(c)     To properly use all electric power service contributions, subsidies, or direct or indirect payments in accordance with the objectives for which they were created;

(d)     To establish criminal penalties, both at the personal and corporate levels, for the noncompliance with legal mandates by electric power service companies or by any natural or juridical person that directly or indirectly intervenes in the rendering of electric power services;

(e)     To establish an Electrical System model that maximizes the use of the energy resources available and that empowers the consumer to be part of the energy resources portfolio through the adoption of energy efficiency strategies, demand response, the installation of distributed generators, among others;

(f)     To design an electric power grid that takes into account the development and integration of community solar, wheeling, the creation of microgrids, and electric cooperatives or energy cooperatives as alternatives and tools to improve the access to renewable energy and the electric power grid's resilience to natural disasters;

(g)     To ensure that the establishment and implementation of the public policy on energy is an ongoing planning, consultation, execution, evaluation, and improvement process in all energy-related matters;

3)     Energy Regulatory Entity and Performance-based Regulations

(a)     The Energy Bureau shall be the independent entity in charge of regulating the energy market in Puerto Rico. The Bureau shall have broad powers and duties as well as the necessary financial and technical resources and trained

personnel as necessary to ensure compliance with the energy public policy, the provisions and mandates of this Act, and to ensure that energy costs are just and reasonable, affordable, easy to understand and clearly comparable, and transparent through oversight and rate reviewing;

(b)     The Bureau shall thoroughly scrutinize the electric power grid maintenance as well as require periodic reports on the maintenance status of the electric power grid as well as the plans developed to satisfy such needs;

(c)     The Bureau shall use mechanisms other than cost-based regulation when deemed necessary in order to comply with and implement the metrics and goals set forth in this Act;

(d)     When deemed appropriate, during ratemaking processes, the Bureau shall establish performance-based incentives and penalty mechanisms for electric power service companies as well as mechanisms that ensure strict compliance with the orders of the Bureau;

4)     Energy Culture, Education, Research, and Development.

(a)     To promote the responsible and effective use of energy resources in Puerto Rico by residential, commercial, and industrial customers;

(b)     To make efforts to educate citizens and electric power service customers on energy efficiency consumption reduction, distributed generation strategies, and other available tools to empower consumers to have more control over their energy consumption;

(c)     To strengthen the research and development of solar, hydroelectric, wind, and ocean power, among other sustainable power generation technologies to maximize their use;

5)      Energy Generation, Efficiency, and Demand Response Programs.

(a)      To reduce our reliance on energy sources derived from fossil fuels and to develop short-, medium-, and long-term plans that allow us to establish a well-balanced and optimum portfolio standard based on the development of renewable energy for Puerto Rico's Electrical System;

(b)      To require existing and future units that generate power from fossil fuels to be capable of operating with at least two (2) types of fossil fuels, one of which shall be natural gas, to reduce greenhouse gas emissions and to increase the capacity of the electric power grid to integrate distributed generation and renewable energy;

(c)      To ensure that the purchase of fuel for energy generation and the purchases of power for the transmission and distribution network are made at a reasonable price that takes advantage of the reductions in the costs of supplies according to the market, the geographical realities, and the realities of Puerto Rico's electrical power infrastructure, among other factors;

(d)      To ensure that power purchase agreements do not hinder the development of a modern system that integrates renewable resources and power from distributed generation sources, while always taking into account current and future energy demands and the provisions of the Integrated Resource Plan;

(e)      To promote and oversee that prices are based on the actual cost of the service provided, efficiency standards, or any other parameters recognized by the electric power service industry;

(f)      To establish demand response, demand-side management, and energy efficiency programs and strategies that take into account short-, medium-, and long-term goals and incentivize customers to become more energy efficient, with a focus that results in a reduction in costs and energy consumption, as well as greater stability and reliability;

6)      Environmental Responsibility.

(a)      The Government of Puerto Rico, its agencies, municipalities, and public corporations, as well as all natural or juridical persons shall comply with every applicable environmental law and regulation in order to preserve the ecosystems of Puerto Rico, and improve the quality of life of all Puerto Ricans;

(b)      To aggressively reduce the use of fossil fuels, minimizing greenhouse gas emissions, and supporting initiatives in Puerto Rico that focus on the issue of climate change, specifically on mitigation, adaptation, and resilience;

7)      Energy Use in the Public Sector.

(a)      The Government of Puerto Rico, its agencies, municipalities, and public corporations shall become efficient and responsible energy consumers, and shall promote energy conservation and efficiency among all the branches and instrumentalities of the Government of Puerto Rico as well as the population in general;

(b)      The Government of Puerto Rico shall achieve a swift conversion of all public lighting to light emitting diodes (LEDs) or renewable energy in order to reduce the general cost of illumination at a municipal and state level;

8)      Distributed Energy, Energy Storage, and Technology Integration.

(a)      To ensure the integration of renewable energy into the Electrical System in a safe and reliable manner and at a reasonable cost, as well as identify the appropriate technologies and sites, such as closed sanitary landfills and previously contaminated lands, that shall make such integration feasible in accordance with the best interests of Puerto Rico; and ensure the improvements necessary to achieve the metrics of the Renewable Portfolio Standard pursuant to Act No. 82-2010 are made;

(b)      The Authority and any other electric power service company, shall comply with the rules established for the interconnection of distributed generation and microgrids, including the expedited processes under the regulations

for the interconnection of generators to the distribution system, and the processes to interconnect microgrids and, in addition, shall establish an effective process to reduce the interconnection time;

(c)     To promote the development of microgrids, particularly in essential service facilities as these are defined in Act No. 57-2014, and in remote areas, as a mechanism to promote the resilience and modernization of the distribution networks;

(d)     To require that every electric power service company design mitigation options adapted to their information technology networks and operations, which shall include the adoption of specific cyber security measures to effectively prevent and manage cyber-attacks;

(e)     To conduct studies as appropriate to set forth the specific energy storage goals that best suit the needs of Puerto Rico;

9)     Infrastructure Design, Resilience, Maintenance, and Security.

(a)     To ensure the security and reliability of our electric power infrastructure by using modern technologies that promote inexpensive and efficient operations and allow for the integration and dissemination of renewable sources;

(b)     To design the infrastructure of the Electrical System to be more robust and resistant to weather events and other disasters, so as to apply and adopt design codes that meet the National standards in effect, as well as security requirements for the utility poles that carry power distribution lines and telecommunication lines, among others:

(c)     To plan the Electrical System while addressing the interdependency between the electric power system and other essential service facilities to counteract the effects of power outages;

(d)     To conduct the appropriate planning studies on the operating voltages of the transmission and distribution system in order to ensure the reliable operation thereof; specify and keep an inventory of the Electrical System components that meet the standards in effect of the continental United States electric power industry, which facilitates the replacement of such components as part of the regular maintenance or as a result of damage caused by force majeure, such as storms and hurricanes; provided, that this shall not exclude the possible use of Volt-Var Optimization as an efficiency technology;

(e)     To maintain the electric power infrastructure in optimal conditions to ensure the reliability, resilience, and safety of the electric power service; electric power service providers shall be required to submit annual energy assurance plans, asset standardization plans, spare part inventories, and the best system maintenance practices plans;

(f)     To ensure continuous improvements for the electric power grid, in order to promote its resilience and diversification, by combining the generation capacity with the demand by region, thus facilitating the effective transition to new technologies and renewable energy sources;

(g)     To provide incentives for grid modernization incorporating technology as appropriate to attain the transformation goals without entailing excessive spending;

(h)     To install underground power distribution lines in urban centers, to the maximum extent possible, and upon conducting the pertinent analysis, in order to increase the resilience, rehabilitation, and repopulation of such urban centers, giving special attention to essential service facilities;

10)     Customer Service, Participation, and Transparency.

(a)     To guarantee every consumer's right to receive a reliable, stable, and excellent electric power service at a cost that is accessible, just, and reasonable, a transparent and easy to understand bill, and a fast service response;

(b)     To resolve electricity bill or service disputes equitably and diligently;

(c)     To promote transparency and citizen participation in every process related to electric power service in Puerto Rico.

Section 1.6.- Initial Objectives.

The goal of the energy public policy is to achieve, among others, the following initial objectives:

1)     To promote the fastest and most efficient reconstruction, modernization, and revamping of the transmission and distribution system for the purpose of developing a robust and flexible system that can integrate new technologies, distributed generation, renewable energy sources, and energy efficiency mechanisms as well as provide consumers with alternatives in the energy sector, thereby maximizing available state and federal resources.

2)     To promote the use of small-scale electric power plants with capacity to operate with a diversified fuel mix, one of which shall be natural gas, that reduce greenhouse gas emissions, with more modern technology and associated infrastructure and high efficiency capacity, as defined by the Energy Bureau and capable of integrating distributed generation and renewable energy into the electric power grid.

3)     To eliminate the use of coal as an energy source not later than January 1, 2028.

4)      To make it feasible for energy service consumers to become prosumers through programs such as the net metering program, the adoption of behind-the-meter generation systems, among other mechanisms currently available or to be available in the future.

5)      To set priorities for the maintenance of the Electrical System infrastructure and create vegetation management programs.

6)      To require electric power service companies to adopt cybersecurity measures to effectively prevent and manage cyberattacks that may affect information technology networks and operations.

7)      To reduce and eventually eliminate electric power generation from fossil fuels by integrating orderly and gradually alternative renewable energy while safeguarding the stability of the Electrical System and maximizing renewable energy resources in the short-, medium-, and long-term. For such purpose, a Renewable Portfolio Standard is established in order to achieve a minimum of forty percent (40%) on or before 2025; sixty percent (60%) on or before 2040; and one hundred percent (100%) on or before 2050.

8)      To facilitate the interconnection of distributed generation to the electric power grid through any available mechanism including, but not limited to, distributed generation, renewable energy sources, net metering, and the use of microgrids by implementing the mechanisms, strategies, and technologies available in the electric power industry for such purposes.

9)      To encourage the use of energy storage technology for consumers at all levels to facilitate and accelerate the integration of renewable energy sources and capitalize on their capacity as a distributed generation mechanism.

10)     To promote demand response and energy efficiency programs with a defined timetable and incentives in order to make short-, medium- and long-term programs feasible, while stressing the benefits that such programs provide to consumers and the Electrical System.

11)     To attain the thirty percent (30%) energy efficiency goal by 2040, as provided in Act No. 57-2014.

12)     To replace one hundred percent (100%) of public lighting with light emitting diode (LED) lighting or renewable energy by 2030.

13)     To make the equipment and design consistent with the USDA Rural Utilities Service (RUS) parameters whenever possible and appropriate to facilitate their replacements in ordinary and emergency situations.

14)     To strengthen the authority and functions of the Puerto Rico Energy Bureau by broadening its budget autonomy as well as its power to investigate, incentivize, oversee, and impose penalties on any natural or juridical person under its jurisdiction, in order to make feasible and enforce Puerto Rico's energy public policy.

15)     To require every electric power service company in Puerto Rico to comply with the Integrated Resource Plan approved by the Energy Bureau.

16)     To establish the elements necessary for the People of Puerto Rico to attain their goal of having a new Electrical System with rates below twenty cents per kilowatt-hour ($0.20/kWh) and clean, modern, and reliable energy which shall serve as the basis for the Island's sustainable economic development.

Section 1.7.- Electrical System Planning and Operation.

Electrical System planning, regulation, and operation as well as electric power generation, transmission, and distribution are the strategic functions in which the State has a legitimate interest. Therefore, the Government of Puerto Rico, by itself or through the Authority or another public corporation affiliated to the Authority,

shall maintain ownership of the transmission and distribution assets and may maintain ownership of the legacy power generation assets. The Authority shall delegate or transfer the operating, administrative, and/or maintenance functions for the electric power generation, transmission and distribution, commercialization, and operation of the Electrical System through contracts awarded and executed pursuant to the provisions of this Act, Act No. 120-2018, and Act No. 29-2009. The Electrical System planning and regulatory function shall be entrusted to the Government of Puerto Rico by means of the Energy Bureau and the Energy Public Policy Program, within the scope of their jurisdictions, and consistent with the Integrated Resource Plan.

The Energy Bureau may, subject to the provisions of this Act, pursuant to the planning parameters established in the Integrated Resource Plan, adopt the rules that shall govern the process through which large scale industrial and commercial consumers, energy cooperatives, or other demand aggregator structure may enter into power purchase agreements directly with an independent power producer. Likewise, the Bureau shall prescribe the rules that shall apply to the wheeling of such power through the Electrical System, and the rates applicable to consumers and independent power producers for such services.

The Authority or its successor in interest shall maintain the primary responsibility for acting as provider of last resort (POLR) for any of the generation, transmission, distribution, commercialization, and operating functions of the Electrical System that have been delegated or transferred pursuant to this Act.

Section 1.8.- Unbundling and Transformation of the Electric Power System.

(a)     Open System. Puerto Rico's Electrical System shall not be a vertical monopoly. A horizontal monopoly with regards to power generation may not be established either. No electric power service company, by itself, through or jointly with any subsidiary or affiliate thereof, may control fifty percent (50%) or more of

the power generation assets' capacity, except for the Authority and only in the case of the legacy power generation assets. However, the Authority shall transfer the operating, administrative, and/or maintenance functions in connection with the Authority's legacy power generation assets on or before December 31, 2020. The Bureau may revise the maximum percentage of the power generation assets' capacity that an electric power service company or any subsidiary or affiliate thereof may control to prevent the establishment of a monopoly on power generation; however, under no circumstance may it be fifty percent (50%) or more of the power generation assets' capacity. Electric power service companies, distributed generators, and microgrids that so request it shall be entitled to demand interconnection to the transmission and distribution network under nondiscriminatory conditions, when technically possible, and consistent with the Integrated Resource Plan and when the regulations of the Bureau thus allow it.

(b)    Concession of the Transmission, Distribution, and Sale of Electric Power as well as of System Operations. By December 31, 2019 or the closest date thereto, the Authority shall execute one or various Partnership Contracts, in accordance with the provisions of this Act, Act No. 120-2018, Act No. 29-2009 and the regulations thereunder, through which it shall transfer the transmission and distribution functions, the sale of electric power, the operation of the Energy Control Center, and all those activities related to such functions. None of the provisions herein shall prevent the transfer of the different functions from being carried out separately and on different dates. The Authority shall retain personnel as are necessary to fulfill its responsibility as a Partnering Government Entity, as such term is defined in Act No. 29-2009, of assisting the Public-Private Partnership Authority in overseeing the Contractor's performance of the Partnership Contract and compliance with the performance-based metrics set forth therein.

The Partnership Committee designated to conduct PREPA Transactions shall ensure that the Partnership Contract allows for the maximization of federal funds to modernize the electric power grid. Furthermore, it shall ensure that the Partnership Contract compels the transmission and distribution network Contractor, regardless of the source of funding, to make capital investments as are necessary to modernize and/or maintain in optimum conditions the Island's electric power grid in order to render it more reliable, resilient, and efficient, and to allow for the integration of renewable energy sources needed to achieve the Renewable Portfolio Standard established in Act No. 82-2010.

One year prior to the expiration of the Partnership Contract executed for the operation of the transmission and distribution network, and upon evaluation the Contractor's performance, the Public-Private Partnership Authority and the Bureau shall each submit a report to the Governor and the Legislative Assembly with their evaluations of the results and the performance of such Partnership Contract in addition to their recommendations on the convenience of executing a new contract delegating the same or only a few of the functions delegated under the original Partnership Contract or establishing a new model for the Electrical System.

None of the provisions of Section 1.8 shall be deemed or construed as a limitation to the authorization to conduct PREPA Transactions under Act No. 120-2018 or as the expiration of the effective term of such authorization or statute.

Section 1.9.- Long-term Electrical System Planning.

(1)    General. Long-term Electrical System planning is critical for implementing the Energy Public Policy set forth in this Act and furthering the sustainable development of the people of Puerto Rico through the Electrical System. Such planning shall consist of an Integrated Resource Plan consistent with the provisions of this Act, Act No. 57-2014, and Act No. 83. The Integrated Resource Plan shall be devised by the electric power company responsible for the operations

of the Electrical System and shall be approved by the Bureau. The IRP must be drafted with the input of the companies that operate the power plants. Any amendment or modification to the Integrated Resource Plan shall be approved by the Bureau prior to its implementation. The Bureau shall evaluate and approve the Integrated Resource Plan and any amendments or modifications thereto in conformity with the legislative intent and the declaration of public policy adopted by the Legislative Assembly in Section 3 of Act No. 120-2018, Section 13 of Act No. 29-2009 with regards to the protections and considerations applicable to Partnership Contracts, and the public policy declared herein. The Bureau may grant dispensations to or waivers for the Integrated Resource Plan for just cause.

(2)    Term and Continuous Revision. The planning horizon of the Integrated Resource Plan shall be of at least twenty (20) years. The Integrated Resource Plan shall describe the combination of energy supply resources and conservation that satisfies, in the short-, medium-, and long-term, the current and future needs of Puerto Rico's energy system and of its customers at the lowest reasonable cost. The Integrated Resource Plan shall be revised every three (3) years from the date in which the Integrated Resource Plan in effect is approved by the Bureau to show changes in energy market conditions, environmental regulations, fuel prices, capital costs, and other factors; provided, that should there be a substantial change in the energy demand or group of resources, such revision process shall be carried out before the three (3) years provided herein to respond to and/or mitigate such changes. Any amendment to the Integrated Resource Plan shall also be filed with the Bureau for review and approval. The Integrated Resource Plan shall be consistent with all the mandates of this Act and with the Energy Public Policy, and shall follow the best practices in electric power industry integrated resource planning.

(3)     Integrated Resource Plan Content. Every integrated resource plan shall include, but not be limited to:

(A)     A range of future demand forecasts established by using methods that examine the effect of economic factors on electricity consumption as well as the effect of the use of lands under the Land Use Plan for Puerto Rico in effect, and the changes in the direction, type, and efficiency of electricity, and its end-use.

(B)     An evaluation of the conservation resources available in the market, including the electricity demand management, and an evaluation of the programs in effect and the necessary programs to improve energy conservation.

(C)     An evaluation of the range of conventional and non-conventional generation technologies available in the market.

(D)     An evaluation of the system's transmission capacity and reliability.

(E)     A comparative evaluation of the energy supply resources, including transmission and distribution.

(F)     An evaluation of the combination of resources designated to promote diversification of energy sources; stabilize energy costs; and improve the reliability and stability of the electric power grid.

(G)     An evaluation of the existing electric power plants or facilities of the Authority and those in private hands or granted through concessions, that takes into account the improvements in the infrastructure and operational efficiency of the power plants, their useful life, and the retirement date and decommissioning costs thereof, if applicable.

(H)     PREPA and electric power service companies' environmental impact assessments related to air emissions and water consumption, solid waste, and other factors such as climate change.

(I)     An evaluation of the interconnection of distributed generation and renewable energy projects and other independent power producers to the electric power grid, to comply with Act No. 82-2010, as amended.

(J)     Projections with regards to the integration of distributed generation into the electric power grid.

(K)     Identification of essential service facilities across the Island and the measures to be implemented to render the electric power service delivered to such facilities more resilient, such as the establishment of microgrids, distributed generation, and underground distribution lines.

(L)     An evaluation of the necessary actions to achieve the energy storage system goals established at all levels by the Energy Bureau, as provided in Section 2.12 of Act No. 82-2010.

(M)     Any other requirement established by the Bureau through regulations or order.

(4)     Approval of the Integrated Resource Plan.- The integrated resource plan shall be evaluated and approved by the Bureau and may not be eliminated or altered under any circumstances until a plan review process is thus carried out before the Bureau and evidence thereof is furnished. The Bureau shall issue all the necessary rules to be followed when devising its integrated resource plan, which shall include an evaluation plan for attaining the goals set.

(5)     Measurements and Parameters.- The plan shall include the typical performance measurements of the electric power industry including, but not limited to, revenue per kilowatt-hour (kWh), operating and maintenance expenses per kilowatt-hour, operating and maintenance expenses of the distribution system per customer, customer service expenses per customer, general and administrative expenses per customer, energy sustainability, emissions, total annual amount of energy used in Puerto Rico, total annual amount of energy used per capita, total

annual amount of energy used per capita in urban areas, total annual amount of energy used per capita in non-urban areas, total energy cost per capita, total energy cost per capita in urban areas, and total energy cost per capita in non-urban areas. These measurements shall also measure the performance of PREPA, the Contractor, and electric power service companies in complying with the mandates of this Act. To achieve this, a comparative analysis of other electric power companies similar in size and operations may be conducted, and shall be considered and adjusted taking into account the differences and geographic challenges of our electric power infrastructure.

Section 1.10.- Duties and Responsibilities of Electric Power Service Companies.

Electric power service companies that render any service in Puerto Rico shall have the following duties and responsibilities:

(a)     To provide and allow for the provision of reliable, clean, efficient, resilient, and affordable electric power, contributing to the general wellbeing and sustainable development of the people of Puerto Rico;

(b)     To promote the provision of a universal electric power service;

(c)     To rise to energy and environmental challenges by using scientific and technological advances available and incorporating the best practices in the electric power industries of other jurisdictions;

(d)     To facilitate and not hinder the interconnection of distributed renewable energy producers, distributed generators, and independent power producers to the electric power grid;

(e)     To ensure the continuity and reliability of the electrical system, by facilitating and promoting the construction of efficient and resilient infrastructure;

(f)     To fully comply with the rules, regulations, orders, mandates, requests and penalties issued by the Bureau when performing its duties to regulate and oversee the Island's electrical system, and to refrain from any action that may deny, stay, interfere, delay, or hinder the orders issued by the Bureau;

(g)     To fully comply with all applicable environmental legislation and regulations including, but not limited to, the Mercury and Air Toxic Standards (M.A.T.S.), which are monitored by the U.S. Environmental Protection Agency (EPA).

(h)     To create, with the approval of the Bureau, an electricity bill for each customer class, which itemizes, clearly and in detail, the categories of the different charges and credits assessed to the consumer, as established by the Bureau. The bill shall be completely transparent and approved by the Bureau.

(i)     To provide documents and information as requested by the customers, except for: (i) confidential information in accordance with the Rules of Evidence of Puerto Rico; (ii) information related to collective bargaining, labor-related disputes, or issues related to personnel such as appointments, evaluation, disciplinary actions, and dismissals; (iii) ideas with regard to the negotiation of potential Authority contracts or to a determination to rescind or terminate contracts in effect; (iv) information of strategies regarding lawsuits; (v) information of internal investigations while these are being conducted; (vi) aspects regarding the intellectual property of third parties; (vii) trade secrets of third parties; (viii) issues that should be maintained confidential in accordance with any confidentiality agreement, provided, that such agreement is not contrary to the public interest; or (ix) matters of public security involving threats against PREPA, its property or employees. To fulfil this duty, in addition  to the original text of any document where such

information is contained, documents where such information is organized and shown so that it may be more easily handled and understood by persons without expertise in the disciplines addressed shall be published and made available to customers;

(j)      Keep and maintain a website with free access that provides, at least, the following:

(i)      A platform to pay bills, examine the consumption history, verify the usage pattern, and obtain information related to their bill, such as the reading of the meter at the beginning and at the end of the billing cycle, dates and number of days in the billing cycle, and meter constant, the rates, the date of the next reading as well as any other information that enables the verification of the reading;

(ii)      Real-time data related to the energy generation capacity and reserve margin;

(iii)      Status of the internal procedures to implement the changes required by means of legislation to reform Puerto Rico's electrical system;

(iv)      Access to a platform through which customers may request information and public documents not available on the website;

(k)      Notify the public, within at least forty-eight (48) hours in advance, of any scheduled service interruption through its website, social media, and any other communications media.

(l)      Comply with an integrated resource plan according to the parameters and requirements established by the Bureau pursuant to the energy public policy.

(m)      When charges contained in a bill include three (3) or more past due invoices for services that, by error or mistake of the electric power company, were not previously billed, the electric power company shall offer a reasonable payment plan to the customer according to his financial capacity. Notwithstanding the foregoing, electric power companies shall have a maximum term of one hundred eighty (180) days to bill any service provided. Once the aforementioned term has

elapsed, the electric power company may not charge for a service provided but not billed. Electric power companies shall have a maximum term of one hundred twenty (120) days from the date of issue of the electricity bill to notify customers of billing errors. Once said term elapses, electric power companies may not claim retroactive charges for said errors, such as those of an administrative or operational nature, or for an erroneous reading of electric power service consumption meters. This shall only apply to residential customers; it shall not apply to commercial, industrial, institutional customers, or otherwise, and shall also not be applicable to periodic charges or adjustments provided in the rate approved by the Bureau. In those cases in which customers keep the meters out of the readers' visual reach, or in the event of force majeure, such as hurricanes, among others, that prevents the reading of meters, this measure shall not apply to electricity bills issued based on consumption estimates. Likewise, it is hereby prohibited to report delinquent accounts of residential customers to credit bureaus as a debt collection and demand for payment practice, except in the case of undisputed accounts from customers whose amount and recurrence of nonpayment, after more than two demands for payment have been made and every ordinary collection mechanism has been exhausted, imply that there is an intent to defraud.

(n)     All bills sent by electric power companies to their customers shall advise them of their right to dispute a bill and request electric power companies to conduct an investigation. Electric power companies shall provide, on their website and at the offices designated thereto, information about the procedures, terms, and requirements to dispute a bill and request an investigation, and subsequently resort to the Bureau seeking review of a decision. Likewise, on their website and at every office, electric power companies shall provide information about the procedures, terms, and requirements to request the Bureau to review any decision regarding customer bills.

(o)     To promote or guarantee the storage of the fuels used to generate electric power and the supply thereof to the generating units through the use of efficient, safe, and resilient technology and infrastructure.

Section 1.11.- Electric Power Generation.

(a)     High Efficiency Electric Power Generation from Fossil and Diversified Fuel Mix. Every new or existing electric power plant, as of the date of approval of this Act, other than those operating exclusively on renewable energy sources shall have the capacity to generate power from two (2) or more fuels, one of which shall be natural gas, taking into account that, as of the approval of this Act, the issuance of new permits and/or the award of new contracts to establish coal-fired power plants shall be prohibited, and no permit or amendment to an existing contract as of the approval of this Act may authorize or consider coal burning as an energy source after January 1, 2028. At least sixty percent (60%) of the electric power generated from fossil fuels (gas or oil byproducts) shall be high efficiency, pursuant to Section 6.29 of Act No. 57-2014. Contractors that acquire or operate PREPA assets related to generation shall modernize the electric power plants or replace them with high efficiency electric power plants within a period not to exceed five (5) years after the execution of the Partnership or Sales Contract. After this initial period, the contractor that opted for modernizing the electric power plants shall replace them with high efficiency power plants within a period not to exceed five (5) years after the initial period has ended. However, this shall not apply to the operators of legacy power generation assets.

(b)     Power Purchase Agreements. Any power purchase agreement, or any amendment to or extension of a power purchase agreement awarded prior to the approval of Act No. 57-2014, between the Authority, or the transmission and distribution network Contractor and any independent power producer shall be executed pursuant to the provisions of Section 6.32 of Act No. 57-2014 and the

regulations adopted thereunder by the Bureau. However, when a power purchase agreement is part of a PREPA Transaction, the Energy Compliance Certificate issued pursuant to Act No. 120-2018 shall suffice.

The Bureau shall set clear parameters for the pricing, adjustments, price escalators, and profit margins of power purchase agreements. Such parameters shall be consistent with price escalators or adjustments normally used by the industry for such purposes, as well as any other parameter or method used to regulate gains attributable to power purchase agreements in order to ensure that such agreements have an appropriate and reasonable price. No Electric Power Company shall realize gains attributable to fuel. The profit margin of independent generators under power purchase agreements shall be consistent with the parameters established by the Bureau.

No contract for the establishment of new electric power plants may preclude compliance with the renewable portfolio standard and the integration of distributed generation, microgrids, or energy cooperatives.

Power Purchase Agreements shall be awarded taking into account the goals and mandates established in the Renewable Portfolio Standards which compel the transition from energy generation from fossil fuels to an aggressive integration of renewable energy as provided in Act No. 82-2010.

(c)     Reserve Margin. PREPA or the transmission and distribution network Contractor shall fix, from time to time and subject to the Bureau's review and approval, the optimal reserve margin for Puerto Rico, taking into account the best industry practices as well as the geographic and electricity infrastructure realities of Puerto Rico, and shall work to maintain such reserve, thus ensuring the continuity and reliability of the electric power service in Puerto Rico.

(d)     Renewable Energy. The Authority or the transmission and distribution network Contractor shall maximize the use of renewable energy, in accordance with the applicable local and federal laws, ensuring its integration into the electric power grid in a safe and reliable manner and guaranteeing the stability of the Island's energy transmission and distribution network, for example, by allowing the installation of the necessary equipment and technology to ensure the connection of renewable energy sources to the electric power grid, or establishing alternate modes of operation for the electric power grid that mitigate the instability that this type of energy may cause to such grid. Said installation shall be completed and incorporated into the Integrated Resource Plan so that other long-term planning options are not excluded. The Authority or the transmission and distribution network Contractor shall oversee that the integration of renewable energy meets the requirements set forth in Act No. 82-2010, as amended, and take the necessary measures to ensure compliance therewith. Furthermore, it shall promote the direct use of renewable energy by its customers, particularly by expediting and simplifying transactions, processes, and requirements in connection with small residential and commercial rooftop solar projects of less than twenty-five kilowatts (25 kW) in accordance with Section 9 of Act No. 114-2007, as amended. The Bureau shall oversee that the Authority, or the transmission and distribution network Contractor comply with those simplified transactions, processes, and requirements. If practicable, the Authority, the transmission and distribution network Contractor, or the Department of Economic Development and Commerce shall establish a financing mechanism to contribute to its development.

(e)     Distributed Generation. Distributed generation shall have open and nondiscriminatory access to the distribution network subject to the regulations established by the Bureau. The Authority or the transmission and distribution network Contractor shall identify the most effective and economical ways to make

the electric power infrastructure of Puerto Rico more distributed, intelligent, resilient, and reliable, and to promote the use and strategic integration of sustainable energy technologies and practices, in accordance with the regulations of the Bureau. In carrying out this duty, the Authority or the transmission and distribution network Contractor shall plan, build, and update distribution systems to ensure the adequate and orderly deployment of distributed generation resources and technologies such as microgrids.

      (f)     Renewable Energy Projects:

      (1)     To facilitate the development of renewable energy projects and comply with the Renewable Energy Portfolio established in Act No. 82-2010, as amended herein, all permits, consultations, variations, endorsements, certifications, concessions, and/or authorizations for the renewable energy projects including, but not limited to, any transaction required to comply with Act No. 416-2004, as amended, known as the "Environmental Public Policy Act," shall be processed by the Permit Management Office and all other agencies concerned following the expedited processes available under a state of emergency pursuant to Act No. 76-2000, as amended, and the administrative orders and regulations of the agencies concerned that apply in such cases. The expedited process for the processing of permits, consultations, variations, endorsements, certifications, concessions, and/or authorizations for the renewable energy projects provided under this Act, is without prejudice to the sponsor of a renewable energy project, the expedited permitting process benefit that may be obtained from the designation of his project as project a critical project pursuant to Title V of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA).

(2)      The Permit Management Office and the agencies concerned may process applications for permits, consultations, variations, endorsements, certifications, concessions, and/or authorizations for renewable energy projects using the expedited processes referred to above for a period of sixty (60) months as of the effective date of this Act. After such term has expired, such projects shall be considered through the regular processes prescribed by the regulations in effect, without prejudice to the powers of the Governor to declare a state of emergency pursuant to Act No. 76-2000, as amended, whenever necessary.

Section 1.12.- Interconnection of Microgrids.

The development of microgrids is an essential component for the development of a reliable, robust, and decentralized system that promotes resilience, integrates new technology and renewable energy sources, prevents loss of power in essential service facilities, and provides alternatives to consumers. For such purpose, it is necessary to ensure that the processes to interconnect microgrids into the transmission and distribution system are swift, uniform in all regions, and cost and time efficient in order to promote the development of these projects.

A professional engineer, who is a member of the college of engineers, shall certify that the microgrid meets the specifications established through regulations by the Bureau for these projects and that the same was completed according to the laws, regulations, and rules applicable to the interconnection of microgrids into the distribution and transmission system.

The microgrid interconnection process shall allow for microgrids with a generation capacity of less than one (1) MW to connect to the power distribution network; provided, that the technical features of the microgrid to be interconnected and the existing conditions of the electric power grid thus allow. Provided, further, that reliability studies, which shall be conducted promptly, may be required as appropriate for the interconnection of microgrids with a generation capacity of more

than five hundred megawatts (500MW), but less than one megawatt (1MW). Moreover, the interconnection process shall provide for the interconnection of microgrids with a maximum capacity of five megawatts (5MW) connected to subtransmission or transmission voltages (38kV or 115kV). The interconnection of microgrids in excess of five megawatts (5MW) must be approved by the Bureau in a process that includes citizen participation.

The Authority, its successor, or the transmission and distribution network Contractor shall evaluate the interconnection request in accordance with the regulations adopted therefor in accordance with Section 1.13 of this Act. In the event that the microgrid interconnection is denied or it is deemed necessary to implement additional technical requirements and improvements to the electric power distribution system, the petitioner shall be entitled to challenge said determination or finding before the Bureau, within a term of thirty days (30) days after the date of the notice of determination for the interconnection request.

Section 1.13.- Microgrid Interconnection Regulations.

The Authority or the transmission and distribution network Contractor is hereby directed to adopt microgrid interconnection regulations pursuant to the public policy on microgrid interconnection established in Section 1.12 of this Act. Such microgrids interconnection regulations shall be promulgated within the term established by the Energy Bureau through order or regulations. If no microgrids interconnection regulations are adopted within the term provided herein, the Bureau shall adopt the microgrids interconnection regulations.

Any process to adopt, repeal or amend microgrid interconnection regulations shall be subject to the process established in this Section. The regulations proposed by the Authority or the transmission and distribution network Contractor, and any future amendment to or proposal for the mircrogrid interconnection regulations shall be submitted to the Energy Bureau for the latter to hold public hearings, which shall

not be held within less than thirty (30) days after the publication of the public notice of the proposed microgrid regulations. Thirty (30) days after the conclusion of the public hearings, the Bureau shall make a determination as to whether the amendment to the microgrids interconnection regulations shall be introduced or rejected, or if the proposed language should be modified. In the case of the latter, the Bureau shall adopt the language deemed necessary to comply with the principles, objectives, and public policy established in this Act. Once the decision of the Bureau becomes final and binding, the Bureau shall amend and publish the microgrid interconnection regulations in accordance with the amendments adopted through its decision.

Section 1.14.- Penalties for Noncompliance with the Interconnection of Distributed Generators or Microgrids.

The Authority, its successor, or the transmission and distribution network Contractor's noncompliance with the public policy on the interconnection of distributed generators or microgrids to the distribution network shall entail a fine of one thousand dollars ($1,000) per day to be imposed by the Bureau and that shall be deposited into the Green Energy Fund of Puerto Rico created by virtue of Act No. 83-2010, as amended, known as the 'Green Energy Incentives Act of Puerto Rico,' or similar provisions of incentives laws, to subsidize photovoltaic and energy storage systems. The fine herein imposed shall not be deemed to limit the power of the Bureau to impose any other applicable fine or administrative penalty to enforce its orders and the public policy on energy.

Section 1.15.- Electrical System Infrastructure.

In order to maximize the resources available for the reconstruction and modernization of the Electrical System, the Authority or the transmission and distribution network Contractor shall ensure the specific improvements to the Electrical System are carried out to render it robust, resilient, and stable in

accordance with the modernization and reconstruction priorities established hereunder:

(a)     Replacing the transmission towers installed temporarily with monopoles and poles designed and made with materials that can withstand sustained winds of one hundred and fifty-five miles per hour (150mph), and avoid overload.

(b)     Replacing and maintaining the anchors of the transmission infrastructure in order to maintain system resilience.

(c)     Implementing programs to mitigate the corrosion of electric power grid infrastructure.

(d)     Strengthening substation assets, including transformers, circuit breakers, switchgear and, specifically, control equipment such as relays and communications equipment.

(e)     Maintaining voltage standards as well as voltage compatibility with the transmission and distribution infrastructure of the states of the United States.

(f)     Carrying out a synchronized segmentation and selective planning for the transmission system that includes generation diversification, black-start capable units, and taking into account the load in order to maintain minimum power generation in case any event arises.

(g)     Evaluating the benefits of replacing transmission and distribution lines in urban centers and essential service facilities, as they are defined in Act No. 57-2014, with underground power distribution systems.

(h)     Modernizing the main generation assets and the fuel storage and supply infrastructure in order to make them highly efficient and capable of operating safely and reliably with at least two (2) types of fossil fuels, excluding coal and one of which shall be natural gas, that reduce greenhouse gas emissions and to integrate distributed generation, including renewable energy sources to significantly reduce generation costs and fossil fuel dependence.

(i)     Integrating the use of microgrids, as a means to render the Electrical System more resilient to events of force majeure such as storms and hurricanes, thereby allowing for the continuity or quick reestablishment of the service in essential service facilities, industrial sectors, and remote areas to facilitate the integration of distributed generation, make the system more robust, and prevent interdependence between services.

(j)     Evaluating the feasibility of replacing our current power generation system with smarter and more versatile small scale microgeneration assets that can generate power more efficiently at a lower cost and that reduce and respond effectively to critical system failures.

(k)     Evaluating the feasibility of relocating transmission lines to make the access thereto easier and faster in order to facilitate the repair and maintenance thereof.

(l)     Performing the works necessary for waterproofing, relocation, and elevation of substations, located in flood zones, to +3.0 feet above Base Flood Elevation (BFE) or .02% of the flood elevation, whichever is greater.

(m)    Determining the safe load of transmission poles.

(n)     Making the equipment and design consistent with the parameters of the USDA Rural Utilities Service (RUS) when possible and appropriate to help with replacements in both normal and emergency situations.

(o)     Adopting technologies, in coordination with the Energy Bureau, such as the Distributed Energy Resources Management System (DERMS); the Advanced Distribution Management System (ADMS); the Fault Location Isolation and Service Restoration (FLISR); the Volt/VAR Optimization (VVO); and other technologies that improve the stability, resilience, and efficiency of the system as well as its capacity to integrate distributed generation and renewable energy, insofar as the use of resources inure to greater public benefits.

(p)     Adopting technologies that improve customer service including, but not limited to, smart meters, internet access, and minimizing the necessary wait time to receive any customer service.

Section 1.16.- Vegetation Management Program.

The Authority or the transmission and distribution network Contractor shall submit to the Energy Bureau a comprehensive vegetation management program that is consistent with the best practices of the industry within one hundred twenty (120) days in order to protect the integrity of network assets. The vegetation management program shall direct, among other things, the following:

(a)     Maintaining a distance of at least ten (10) feet between trees and the easements for the transmission lines in accordance with the National Electrical Safety Code Standard (NESC);

(b)     Regularly patrolling and trimming any vegetation or materials that are next to the power lines;

(c)     Adopting the tree pruning recommendations established by accepted industry standards, such as the American National Standard Institute (ANSI);

(d)     Drafting of periodic and detailed reports on the compliance with the vegetation program; and

(e)     Establishing an appropriate and independent fund for the vegetation management program.

The Bureau shall oversee that the comprehensive vegetation management program meets the standards of the industry and the enforcement thereof.

Section 1.17.- Joint Study on Utility Pole Load Capacity.

The Public Service Regulatory Board is hereby directed to conduct a joint study between the Puerto Rico Telecommunications Bureau and the Energy Bureau, within a term of one hundred eighty (180) days, to determine, implement, and ensure

the safe load of utility poles to support the distribution of the telecommunications and electric power infrastructure.

Section 1.18.- Study on the Contribution in Lieu of Taxes and Other Subsidies.

In view of this new model for an Electrical System, on or before December 31, 2019, the Energy Bureau shall conduct a study on the implementation, effectiveness, cost-benefit, reasonableness, and economic impact of the contribution in lieu of taxes (CILT) to determine the need and convenience, if any, of reforming this mechanism and the subsidies. The results of such study shall be submitted to both Houses of the Legislative Assembly so they may analyze them and enact the necessary legislation.

Section 1.19.- Future Establishment of an Electricity Market.

The Energy Bureau shall conduct a study on the viability and convenience of establishing an electricity market governed by free competition in Puerto Rico and shall submit a report with the results of such study to the Legislative Assembly and the Governor on or before June 30, 2025.

Chapter II.- Amendments to Act No. 83 of May 2, 1941.

Section 2.1.- Section 2 of Act No. 83 of May 2, 1941, as amended, is hereby amended to read as follows:

"Section 2.- Definitions.

The following terms, wherever used or referred to in this Act, shall have the meaning stated below, except where the context clearly indicates otherwise:

(a)     Creditors' Agreement.- Shall mean any agreement executed (including annexes, exhibits, and schedules attached thereto) by and among the Authority and various of the principal creditors, as amended or supplemented, whereby certain terms and conditions of the current debt are modified and the Authority may commit to (i) implementing certain administrative, operational, and governance reform

measures; (ii) modernizing electric power generation; (iii) optimizing electric power transmission and distribution; and (iv) achieving operational savings. Neither the Agreement nor any future amendment thereto or supplement thereof shall be inconsistent with the provisions of the 'Puerto Rico Electric Power Authority Revitalization Act.'

> ...

(e)      Commission or Bureau.- Shall mean the Puerto Rico Energy Bureau established by virtue of the Reorganization Plan of the Puerto Rico Public Service Regulatory Board and Act No. 211-2018, which is a specialized independent entity in charge of regulating, overseeing, and enforcing the public policy on energy of the Government of Puerto Rico, formerly the Energy Commission created under Act No. 57-2014, as amended. Any reference in this Act to the 'Commission or Energy Commission' shall be deemed to refer to the Puerto Rico Energy Bureau.

> ...

(g)      Energy Efficiency.- Shall mean the reduction in energy use attributable to substituting appliances and equipment, the updating of technology or the most efficient operation of existing materials, equipment, or any other program developed and implemented to reduce electric power consumption.

> ...

(m)      Modernization.- Shall mean projects for the development of new generation plants or the replacement of existing plants pursuant to the most recent Integrated Resource Plan approved by the Bureau.

(n)      ...

(o)      Integrated Resource Plan or IRP.- Shall mean a plan that considers all reasonable resources to satisfy the demand for electric power services during a specific period of time, including those related to the offering of electric power, whether existing, traditional, and/or new resources, and those related to energy

demand, such as energy conservation and efficiency, demand response, and distributed generation by an industrial, commercial, or residential customer. Every integrated resource plan shall be subject to the rules established by the Bureau and shall be approved by the same. Every plan shall be devised with broad citizen participation and all other interested groups.

> ...

> (q)    ...

Words importing the singular number shall include the plural number and vice versa, and words referring to persons shall include firms, partnerships of all kinds, and corporations."

Section 2.2.- Section 3 of Act No. 83 of May 2, 1941, as amended, is hereby amended to read as follows:

"Section 3.- Creation and Organization of the Authority.

(a)    There is hereby created a body corporate and politic constituting an autonomous public corporation and governmental instrumentality of the Government of Puerto Rico by the name of the 'Puerto Rico Electric Power Authority.'

(b)    The Authority herein created is and shall be a government instrumentality subject to the control of its Governing Board, but it is a corporation having legal existence and personality separate and independent from that of the Government of Puerto Rico. The Authority and its Governing Board shall be regulated by the Bureau and shall submit all the information required and requested in the form and manner prescribed by the Bureau. The debts, obligations, contracts, bonds, notes, debentures, receipts, expenditures, accounts, funds, undertakings, and assets of the Authority, its officials, agents, or employees shall be deemed to be those

of said corporation and not of the Government of Puerto Rico or any office, bureau, department, commission, instrumentality, municipality, branch, agent, official, or employee thereof."

Section 2.3.- Section 4 of Act No. 83 of May 2, 1941, as amended, is hereby amended to read as follows:

"Section 4.- Governing Board.

The powers of the Authority shall be exercised and its general policy and strategic management shall be determined by a Governing Board, hereinafter the Board, which shall be its governing body.

(a)    Appointment and Composition of the Board.- The Governing Board shall be composed of seven (7) members. The Governor of Puerto Rico shall appoint, with the advice and consent of the Senate, three (3) of the seven (7) members who shall compose the Board. The members appointed by the Governor with the advice and consent of the Senate shall be selected from a list of at least ten (10) candidates to be prepared and submitted to the Governor by a recognized executive search firm for board of director recruitment for institutions of similar size, complexity, and risks as the Authority. The identification of candidates shall be based on objective criteria such as educational and professional background. The educational and professional background criteria shall include, at least, the following fields: electrical or mechanical engineering, business administration, economics and finance, or law, and not less than ten (10) years of experience in their field. They shall also have expertise in energy affairs and shall not be public employees, except for professors at the University of Puerto Rico. The list shall include, to the extent possible, at least five (5) Puerto Rico residents. The Governor shall evaluate the list of recommended candidates and shall choose three (3) persons from the list. If the Governor rejects any or all the recommended persons, the talent search firm shall be required to submit another list within the next thirty (30) calendar days. The Governor may use

the latest candidate list submitted for his consideration whenever it is necessary to fill a vacancy arising as a result of the resignation, death, disability, dismissals, or substitution within the original term of the member being substituted.

Three (3) of the seven (7) members shall be elected by the Governor at his sole discretion, and shall include one (1) independent member. The independent member shall have expertise in energy affairs and shall not be an employee of the Government of Puerto Rico. Said member shall be appointed for a five (5)-year term.

The remaining member shall represent customer interests and shall be selected at an election supervised by the Office of the Ombudsman to be held in accordance with the procedure established in subsection (c) of this Section. The Authority shall provide the facilities and financial resources needed for such purpose. However, the processes initiated by the Department of Consumer Affairs (DACO, Spanish acronym) to elect the customer interests' representative to the Board before the approval of Act No. 207-2018, shall continue under DACO's jurisdiction, until the customer interests' representative is elected. The customer interests' representative shall have an educational and professional background of not less than ten (10) years of experience in his field, among other requirements. The educational and professional background criteria shall include at least the following fields: electrical or mechanical engineering, business administration, or economics and finance. The candidate shall also have expertise in energy affairs and may not be a public employee, except as professor of the University of Puerto Rico System.

The members appointed by the Governor with the advice and consent of the Senate shall serve staggered terms. One (1) of the members shall hold office for five (5) years and two (2) members for six (6) years. The member elected as a representative of customer interests shall be appointed for a five (5)-year term. However, the two (2) remaining members appointed by the Governor, at his sole

discretion, shall be at-will employees, shall hold office for the term established by the Governor, and may be substituted by him at any time.

None of the members of the Governing Board shall be appointed or elected to such office for more than three (3) consecutive terms. The provisions of Section 5.1 of Act No. 1-2012, as amended, shall not apply to Board members.

Any vacancy in the office of the members appointed by the Governor shall be filled by their appointment for the remainder of the term of the original appointment, in the same manner in which they were originally selected. A substitute shall be designated within six (6) months after the vacancy occurs. However, any vacancy in the office of the members elected to represent customers shall be filled in accordance with the election process regulated by the Ombudsman, within one hundred twenty (120) days from the date on which the vacancy occurred, and a new five (5)-year term shall begin to run.

The independent member and the elected member shall be subject to the independence requirements under the New York Stock Exchange (NYSE) Corporate Governance Standards. No person may become a member of the Board, including the members representing customer interests, if he: (i) is an employee, retiree, or has any direct or indirect substantial economic interest in any private company with which the Authority has entered into contracts, or with whom it engages in transactions of any kind, including borrowing money or providing raw material; (ii) within three (3) years before holding office, has had a business relationship with or any commercial interest in any private company with which the Authority has entered into any contracts or with whom it engages in transactions of any kind; (iii) is an employee, member, advisor, or contractor of any of the Authority's labor unions; or (iv) has been a member of a local or central directing body of a political party registered in Puerto Rico during the year immediately preceding his appointment; (v) has failed to provide a certification of having filed income tax

returns during the five (5) preceding taxable years, a certification of having no outstanding debt issued by the Department of the Treasury, a certification of having no outstanding debts with the Authority, a Certificate of Criminal Record issued by the Puerto Rico Police Department, as well as negative certifications of the Child Support Administration (ASUME, Spanish acronym) and the Municipal Revenues Collections Center (CRIM, Spanish acronym) or has failed to meet all other requirements applicable to any person interested in becoming a public official; or (vi) no member appointed by the Governor may be an official of PREPA or an official or director of the 'Puerto Rico Electric Power Authority Revitalization Corporation.' Provided, that being a customer of the Authority shall not prevent a person from becoming a member of the Board.

Board members shall receive for their services...

Notwithstanding the foregoing, the members of the Board who are employees of the Government of Puerto Rico...

The Board's compliance with the industry's governance standards...

(b)     ...

(c)     ...

(d)     ...

(e)     ...

(f)     Performance and conduct. Without limiting the general provisions regarding conduct, and the ethical and fiduciary duties provided for in this Act, including the confidentiality duty provided in subsection (b) of this Section, no member of the Board shall:

(i)     ...

...

(v)      solicit while on duty, or coerce, obligate, or require other Board members, officials, or employees to vote or further the interests of his party or candidate of preference.

Without it being construed as a limitation...

Board members may also be removed from office due to physical or intellectual disability which prevents them from performing their duties, in which case it shall not be considered a dismissal.

(g)      Responsibility of Board members and officials. Without impairment to any rights granted under Act No. 104 of June 29, 1955, as amended, known as the 'Act on Claims and Lawsuits Against the Commonwealth,' no present or future member of the Board, official, agent, or employee of the Authority shall be held civilly liable for any action taken in good faith while discharging his duties and responsibilities under this Act, unless it is established that he engaged in conduct constituting an offense, deceit, or gross negligence, nor shall be liable for any costs incurred in relation to any claim for which they enjoy immunity as provided herein. The Board, any of its individual directors, as well as any official, agent, or employee of the Authority shall also be indemnified for any civil liability adjudicated under the laws of the United States of America, unless it is established that he engaged in conduct constituting an offense, deceit, or gross negligence. Any fine imposed for engaging in conduct that constitutes an offense, deceit, or gross negligence shall be deposited in the Green Energy Fund of Puerto Rico created by virtue of Act No. 83-2010, as amended, known as the 'Green Energy Incentives Act of Puerto Rico,' or similar provisions in incentive laws.

(h)      ..."

Section 2.4.- Section 5 of Act No. 83 of May 2, 1941, as amended, is hereby renumbered as Section 4A.

Section 2.5.- Section 5A of Act No. 83 of May 2, 1941, as amended, is hereby renumbered as Section 4B.

Section 2.6.- A new Section 5 is hereby added to Act No. 83 of May 2, 1941, as amended, to read as follows:

"Section 5.- Powers and Authorities.

The Authority is hereby conferred, and shall have and exercise, the rights and powers necessary or convenient to achieve the aforementioned purposes, including the following:

(a)     To have perpetual existence as a corporation.

(b)     To adopt, alter, and use a corporate seal, of which judicial notice shall be taken.

(c)     To prescribe, adopt, amend, and repeal bylaws and regulations: (1) to govern the manner in which its general business shall be conducted, and to exercise and perform the powers and duties granted to and imposed on it by law; (2) to guarantee the safety of persons or property, to regulate the use and enjoyment of its property and of such other property under its administration; (3) to use and consume electric power; and (4) to inspect and manipulate equipment, enterprises, facilities, devices, instruments, wires, meters, transformers, and any other similar objects owned by PREPA used in connection with the production, transmission, distribution, and use and consumption of electric power. The regulations so adopted shall have the force of law once the provisions of Act No. 38-2017, the 'Government of Puerto Rico Uniform Administrative Procedure Act,' are complied with.

(d)      To have full control over and intervene in any venture undertaken or acquired, including the power to determine the nature of and the need to incur all expenditures and the manner in which such expenditures shall be incurred, authorized, and defrayed, but subject to the regulations of the Bureau; provided, that all actions taken by PREPA's management, employees, and Governing Board shall be subject to the provisions of the Government Ethics Act, and to the highest fiduciary duties to the people of Puerto Rico.

(e)      To sue and be sued in all courts of justice subject to the limitations established herein.

(f)      To enter into contracts and execute any instruments as are necessary or convenient in the exercise of any of its powers.

(g)      To prepare, or cause to be prepared plans, projects, and expense budgets for the construction, reconstruction, extension, improvement, expansion, or repair of any undertaking or any part or parts thereof, and from time to time modify such plans, projects, and budgets.

(h)      To acquire in any lawful manner including, but not limited to acquisition by purchase, whether by agreement or eminent domain, lease, bequest, devise, or gift, and to hold, maintain, use, and operate any undertaking or parts thereof.

(i)      To acquire in the manner stated in the preceding subsection, produce, impound, develop, manufacture, treat, hold, conserve, use, transmit, distribute, deliver, exchange, sell, lease, and otherwise dispose of, water, electric power, equipment, and such other things, supplies, and services as the Authority deems necessary, proper, incidental, or convenient in connection with its activities;

(j)      To acquire, hold, and use any property, real, personal, or mixed-use, tangible or intangible, or any interest therein, it deems necessary or convenient for carrying out the purposes of the Authority, and (subject to the limitations set forth

in this Act) to lease as lessor, or exchange any property or interest therein at any time acquired by it;

(k)     To construct or reconstruct any undertaking or any part or parts thereof, and any additions, improvements, and extensions to any undertaking of the Authority by contract or contracts, or under through, or by means of its own officials, agents, and employees.

(l)     To propose and collect just, reasonable, nondiscriminatory rates that do not exceed twenty cents ($0.20) per kilowatt-hour, as provided in the Puerto Rico Energy Public Policy Act, as well as fees, rents, and other charges approved by the Bureau, for the use of the facilities of the Authority, or for electric power services, or other commodities sold, loaned, or provided by the Authority, that are sufficient to cover reasonable expenses incurred by the Authority in the development, improvement, extension, repair, conservation, and operation of its facilities and properties, for the payment of the principal of and interest on its bonds, and for fulfilling the terms and provisions of the agreements entered into with or for the benefit of purchasers or holders of any bonds of the Authority and other creditors;

(m)     To provide citizen participation mechanisms and establish a continuing education program for its employees and the general community to promote energy conservation and efficiency, subject to the rules established by the Bureau. For such purposes, the Authority may enter into collaboration agreements with other public and civic entities, nongovernmental organizations, and other institutions interested in facilitating the coordination and reducing the costs of the continuing education programs and the mechanisms to allow and promote citizen participation.

(n)     To appoint executive officers and those officials, agents, and employees and vest in them such powers and duties, and to fix, change, and pay such compensation for their services as the Authority may determine.

(o)     To borrow money, make and issue bonds for any of its corporate purposes, and to secure payment of its bonds and of any and all other obligations by pledging or placing a lien on all or any of its contracts, revenues, and income; provided, however, that the Authority may place liens on real or personal property as necessary to comply with federal regulations that allow for United States Government funding or guarantees through any of the agencies thereof to be able to participate in federal programs. No lien whatsoever may be placed on the assets of the Authority insofar as the agreement or agreements entered into with the bondholders or other agreements entered into with the creditors of the Authority do not allow under PROMESA, Public Law No. 114-187. Except for the bonds and other financing instruments related to the Authority's restructuring pursuant to the agreements entered into with the creditors of the Authority, whose debt parameters shall be governed by the provisions of Chapter IV of Act No. 4-2016, and the Creditors' Agreement, before borrowing any money or issuing bonds for any of its corporate purposes, the Authority shall require the Bureau's approval showing that the proposed financing shall be used to fund projects and defray the costs associated therewith in accordance with the Integrated Resource Plan.

(p)     To make and issue bonds for the purpose of consolidating, refunding, purchasing, paying, or redeeming any of the outstanding bonds or obligations issued or assumed by it or any bonds or obligations the principal or interest of which is payable in whole or in part from its revenues.

(q)     To accept grants from, and enter into contracts, leases, agreements, or other transactions with, any federal agency, the Government of Puerto Rico, or political subdivisions of the Government of Puerto Rico, and to expend the proceeds of any such grants for any corporate purposes.

(r)   To sell, or otherwise dispose of, any real, personal, or mixed-use property, or any interest therein, that in the judgment of the Board is no longer necessary for carrying on the business of the Authority or for effectuating the purposes of this Act; provided, that any of the conditions established in the applicable laws, regulations, and rules are complied with.

(s)   To enter into any lands, bodies of water, or property, to make surveys, soundings, and studies to effectively carry out its duties under this Act, when there is no other alternative, upon written notice within, at least, five (5) days in advance to the owners or holders thereof. Such entry shall be made at a time most convenient to the owner or holder of the premises in question, and must be made within the shortest time possible so that the use and enjoyment thereof by its owner or holder is not unduly affected.

(t)   To assign and transfer surplus personal property, free of charge, to other government entities or municipalities, provided, that any of the conditions established in the applicable rules and regulations are complied with.

(u)   Upon the prior approval of the Bureau, to create, whether in Puerto Rico or in a different jurisdiction, or contract with companies, partnerships, or subsidiary corporations, whether for profit or nonprofit, affiliated or associated, in order to, among others:

i.   Separate or divide into one or more subsidiaries the Authority's generation, transmission, and distribution functions,

ii.   Participate in Public-Private Partnerships in accordance with Act No. 29-2009, as amended, and Act No. 120-2018, as amended,

iii.   Develop, finance, build, and operate industrial projects and other infrastructure directly related to the maximization of the Authority's electricity infrastructure (to have a stable electrical system with the latest technology, clean, reliable, and highly efficient),

iv. Acquire, hold, and dispose of securities and shares, contracts, bonds, or other interests in other companies, entities, or corporations, and exercise any and all powers and rights that such interest allows; provided, that in the Board's judgment, such action is necessary, appropriate, or convenient to attain the Authority's purposes or to exercise its powers, and

v. Sell, lease, assign, or otherwise convey any property of the Authority or to delegate or transfer any of its rights, powers, functions, or duties, to any such companies, entities, or corporations that are subject to its total or partial control, except for the power of eminent domain.

(v) Formulate, adopt, amend, and repeal rules and regulations as are necessary or convenient to exercise and carry out its powers and duties.

(w) Conduct competitive request for proposals processes or execute Partnership contracts, in accordance with Act No. 120-2018, as amended, known as the 'Puerto Rico Electric Power System Transformation Act,' and Act No. 29-2009, as amended, known as the 'Public-Private Partnership Act,' and the parameters required by the "Puerto Rico Energy Public Policy Act" and this Act to develop, finance, build, operate, and provide maintenance, in whole or in part, to the electric power grid and the power plants, and other facilities and infrastructure thereof, as well as to promote new generation, transmission, distribution, customer service optimization projects, and any other necessary project consistent with the Integrated Resource Plan.

(x) Any sum owed by the Authority to any agency, instrumentality, or public corporation of the Government of Puerto Rico may be credited to any outstanding debt of such agency, instrumentality, or public corporation with the Authority; provided, that such credit does not violate the trust agreements entered into with the bondholders.

(y)    To take any actions or measures as are necessary or convenient to exercise the powers granted thereto under this Act or by any other law.

The powers and authorities of the Electric Power Authority may be delegated and transferred as part of a Partnership Agreement under the provisions of Act No. 29-2019[sic] and Act No. 120-2018."

Section 2.7. Section 5B of Act No. 83 of May 2, 1941, as amended, is hereby repealed.

Section 2.8.- The content of Section 6 of Act No. 83 of May 2, 1941, as amended, is hereby eliminated and substituted for a new Section 6 to read as follows:

"Section 6.- Duties and Responsibilities.

(a)    To provide and allow electric power to be provided in a reliable, clean, efficient, resilient, and affordable manner thus contributing to the general wellbeing and the sustainable development of the people of Puerto Rico;

(b)    To guarantee that a universal electric power service is provided;

(c)    To conduct business responsibly and efficiently, and applying sound fiscal and operating practices;

(d)    To rise to energy and environmental challenges by using available scientific and technological advances, and incorporate the best practices in the electric power industries of other jurisdictions;

(e)    To facilitate the interconnection of distributed renewable energy producers to the electric power grid;

(f)    To ensure the continuity and reliability of the electric power service;

(g)    To fully comply with the rules, regulations, orders, mandates, requests, and penalties as established by the Bureau, in the discharge of its duties to regulate and oversee the electrical system of the Island, and refrain from taking any action that may deny, suspend, impair, delay, or hinder the orders of the Bureau;

(h)    To comply with all applicable environmental legislation and regulations including, but not limited to, the Mercury and Air Toxic Standards (M.A.T.S.), which are monitored by the U.S. Environmental Protection Agency (EPA).

(i)    To establish, with the approval of the Bureau, an electricity bill for each customer class of the Authority or successor thereof. Such bill shall itemize clearly the categories of the different charges and credits assessed to the customer, including but not limited to, fuel purchase adjustment and adjustment for energy purchase from energy producers, net metering credit, the contribution in lieu of tax and subsidies created under special laws, the Transition Charges (as such term is defined in Chapter IV of Act No. 4-2016) and the Base Rate Charge, which shall include the account service and management fee, energy consumption charge, operating expenses, energy theft, electricity loss, debt payment not included in the Transition Charge, accounts receivables from the public sector, accounts receivables from the private sector, and any other charge that has an impact on the customers' bill. Any other detail in connection with rates and charges that the Bureau deems should not be included in the bill shall be published and explained on the websites of the Authority and the Bureau. The bill shall be totally transparent and shall be approved by the Bureau; provided, that it complies with the rules established by this Act. The bill shall not include or encompass any other charge or fee under the fuel purchase and energy purchase items other than that approved by the Bureau in accordance with the mandates of this Act and the Puerto Rico Energy Transformation and RELIEF Act, Act No. 57-2014, as amended.

(j)    Provide documents and information of the Authority as requested by the customers, except: (i) confidential information in accordance with the Rules of Evidence of Puerto Rico; (ii) information related to collective bargaining agreements, labor-related disputes, or personnel-related issues such as appointments,

evaluation, disciplinary actions, and dismissals; (iii) ideas relating to the negotiation of potential Authority contracts or a determination to rescind or terminate contracts in effect; (iv) information of strategies regarding lawsuits of the Authority; (v) information of internal investigations of the Authority while these are still being conducted; (vi) aspects regarding the intellectual property of third parties; (vii) trade secrets of third parties; (viii) issues that the Authority should keep confidential in accordance with any confidentiality agreement, insofar as such agreement is not inconsistent with the public interest; or (ix) matters of public safety of the Authority, its assets, or employees, or involving threats against the aforementioned. In compliance with this duty, in addition to the original copy of the documents where such information appears, the Authority shall publish and make available to customers the documents that organize and provide such information in a manner that facilitates the handling thereof by persons without expertise in the disciplines addressed therein so that they may understand them. The Authority's public information shall include, but not be limited to, its monthly financial report, including data per customer class, the price per type of fuel as well as the average, the cost per kilowatt-hour of each customer class during the three (3) preceding months, the production cost per kilowatt-hour, and per generation plant, PREPA's operating expenses for the last month, and the generation distribution per type of technology and fuel;

(k)      To keep and maintain a website with free access, whereby the Authority shall provide at least the following:

i.      A platform to pay bills, examine the consumption history, verify the usage pattern, and obtain information related to their bill, such as the reading of the meter at the beginning and at the end of the billing cycle, dates and number of days in the billing cycle, and meter constant, the rates, the date of the next reading, as well as any other information that enables the verification of the reading;

ii.     Information of the electric power infrastructure, including information regarding public and private generators, so that customers may be able to evaluate the status of the electric power infrastructure and the Authority as public instrumentality;

iii.    A copy of all the contracts and resolutions of the Governing Board;

iv.    Any document related to the revenues, sales, expenses, disbursements, assets, liabilities, accounts receivable, and any other financial information of the Authority;

v.     The price per barrel, or its equivalent, per type of fuel, the average rate per kilowatt-hour for each customer sector, the cost of generation per kilowatt-hour and per power plant, all operating costs and expenses, an itemization of the operating costs related to electric power generation, transmission, and distribution, the service cost to each customer class, generation per type of technology, and any other information about the operations of the Authority;

vi.    A breakdown of the electricity demand projected and determined by the Energy Control Center of PREPA;

vii.   The data related to the energy generation capacity and reserve margin;

viii.  The status of the internal procedures of the Authority to implement the changes required by means of legislation to reform Puerto Rico's electrical system;

ix.    Access to a platform where customers may request any information and public documents of the Authority that are not available through the website;

x.     A copy of the agreement or agreements entered into with the bondholders by virtue of PROMESA; and

xi.     The monthly financial reports that shall be published on the website on or before thirty (30) days after the month covered in the report concludes.

The information described in the aforementioned paragraphs v, vi, and vii shall be posted in real-time.

(l)     To notify the public, at least forty-eight (48) hours in advance, of any scheduled service interruption through its website, social media, and any other communications media.

(m)     To submit a report to the Governor, the Bureau, and both Houses of the Legislative Assembly, not later than May 31 of every year, stating the measures taken during the preceding calendar year to address the emergencies that may arise with respect to the upcoming hurricane season and other atmospheric disturbances, including floods that may affect the electrical system of the Island. Likewise, said report shall present the adopted plans or protocols to be followed in case of fires in facilities and establishments of the Authority. It shall also include any preventive measure identified for the conservation of the power lines in the event of an earthquake. The report shall include, but not be limited to, the following information:

i.     Improvements to the Electric Power Authority's Revised Operating Plan for Emergencies due to Atmospheric Disturbances;

ii.     Development of an emergency plan to face a possible earthquake;

iii.     Adopted plans or protocols to be followed in case of fire in the authority's facilities and establishments;

iv.     Status of the tree trimming program in order to protect power transmission lines, while protecting our trees and preventing them from being damaged;

v.     Decision-making protocol to enforce the shutting down of the electrical system;

vi.     Trainings offered to the Authority's essential personnel to qualify it on the procedure to be followed in case of emergencies arising from atmospheric disturbances, fire in the Authority's facilities or establishments, or earthquakes, as well as a certification attesting that all the personnel performing supervisory functions in the operating areas has been duly advised on the norms of the operating emergency plan in effect; and

vii.    Contingency plans to address the situation after a storm, a hurricane, a fire in the Authority's facilities or establishments, or an earthquake, directed to normalizing or reestablishing the electrical system as soon as possible.

(n)     To develop and comply with an integrated resource plan in accordance with the parameters and requirements established by the Bureau in accordance with the energy public policy.

(o)     When charges contained in a bill include three (3) or more past due invoices for services that, due to error or omission of the Authority, were not previously billed, the Authority shall offer a reasonable payment plan to the customer according to his financial capacity. The foregoing notwithstanding, the Authority shall have a maximum term of one hundred eighty (180) days to bill for any service rendered. Once such term elapses, the Authority may not charge for services rendered but not billed. The Authority shall have a maximum term of one hundred twenty (120) days from the date of issue of the electricity bill to notify customers of billing errors. Once said term elapses, the Authority may not claim retroactive charges for said billing errors, such as those of an administrative or operational nature, or for an erroneous reading of electric power service consumption meters. This shall only apply to residential customers; it shall not apply to commercial, industrial, or institutional customers, or any other class of customer, or to periodic charges or adjustments included in the rate approved by the Bureau or the Transition Charges of the securitization structure. In those cases where customers

keep the meters out of the readers' visual reach, or in an event of force majeure, such as hurricanes, among others, which prevent the reading of meters, this measure shall not apply to electricity bills issued based on consumption estimates. Likewise, it is hereby prohibited to report delinquent accounts of residential customers to credit bureaus as a collection or payment demand, except in the case of undisputed accounts from customers whose balance and recurrence of nonpayment, after more than two demands for payment have been made, and after all the collection mechanisms usually employed by any business when their customers fail to pay for services have been exhausted, show their intent not to meet their payment obligations with the Authority or otherwise imply their intent to defraud the Authority.

(p)     Every bill sent by the Authority to its customers shall advise them of their right to dispute a bill (except for the Transition Charges of the securitization structure) and request the Authority to conduct an investigation. The Authority shall provide, on its website and at every regional and commercial office, information about the procedure, terms, and requirements to dispute a bill and request the Authority to conduct an investigation, and subsequently resort to the Bureau to request review of the Authority's decision. Likewise, on its website and at every regional and commercial office, the Authority shall provide information about the procedure, terms, and requirements to request the Bureau to review any of the Authority's decisions regarding customer bills."

Section 2.9.- The content of Section 6B of Act No. 83 of May 2, 1941, as amended, is hereby eliminated and substituted for a new Section 6B to read as follows:

"Section 6B.- Integrated Resource Plan.

In accordance with Section 1.9 of the Puerto Rico Energy Public Policy Act, when the Authority is the entity responsible for the operation of the Electrical

System, it shall be required to draft and submit an Integrated Resource Plan (IRP) to the PREB. In such cases, the Authority shall be required to comply with the provisions of Section 1.9 of the Puerto Rico Energy Public Policy Act, as well as with any rules, regulations, or orders issued by the Bureau."

Chapter III.- Amendments to Act No. 114-2007

Section 3.1.- Section 1 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 1.- Mandate.

The Electric Power Authority, its successor, or the transmission and distribution network Contractor are hereby directed and authorized to establish and maintain a net metering program allowing the interconnection to the electric power grid in order to allow electricity feedback for customers who have installed a solar electric equipment, windmill, or any other renewable energy source capable of producing electric power using a meter that registers the flow of energy in two directions, in accordance with the applicable provisions of the federal legislation and regulations, such as the Energy Policy Act, Pub. L. 102-486, Oct. 24, 1992, 106 Stat. 2776, as amended, and the Standards for Electric Utilities, Pub. L. 95-617, Title I, Sec. 111, Nov. 9, 1978, 92 Stat. 3121, as amended, among others, and the regulations to be adopted thereunder. In the event that the Electric Power Authority, its successor, or the transmission and distribution network Contractor fails to comply with the mandate provided herein, the Puerto Rico Energy Bureau may use, motu propio or at the request of a party, any judicial or administrative mechanism deemed appropriate in order to allow and make feasible the interconnection to the electric power transmission and distribution system, and the feedback chargeable to the Electric Power Authority, its successor, or the transmission and distribution network Contractor."

Section 3.2.- Section 2 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 2.- Eligibility.

To be eligible for this benefit, the solar electric equipment, windmill, or other source of sustainable or alternative renewable energy, as such terms are defined in Act No. 83-2010, known as the 'Green Energy Incentives Act of Puerto Rico,' must meet all the requirements established in the federal legislation and regulations applicable to net metering programs that allow the interconnection to the electric power grid. Unless otherwise provided, or unless another requirement is specifically imposed through the applicable federal legislation or regulations to expressly prevent state legislation, every solar electric equipment, windmill, or other source of sustainable or alternative renewable energy, as defined in Act No. 83, *supra*, must meet the following requirements:

a)      ...

...

i)      All installations shall meet the interconnection and operation requirements set forth in the appropriate regulations. Failure to meet these requirements may result in a suspension from the Net Metering Program. However, the Electric Power Authority or the transmission and distribution network Contractor shall not suspend or cancel any Net Metering Program agreement in a capricious manner, or suspend or cancel any Net Metering Program agreement for installations that at all times meet the interconnection and operation requirements set forth in the regulations at the time of the execution of the Net Metering agreement, nor impair contractual obligations.

j)      No renewable energy system shall be installed if it invades an existing easement of the Authority, its successor, or the transmission and distribution network Contractor. However, a preexisting occupation of easement on the real

property that is not related to the development of renewable energy shall not constitute an obstacle to prohibit or hinder the interconnection of the renewable energy source and the participation in the Net Metering Program. The foregoing, however, shall not hinder the application of the provisions of Section 5 of Act No. 143 of July 20, 1979, as amended."

Section 3.3.- Section 3 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 3.- Meter.

In the case of renewable energy systems interconnected to PREPA's electric power grid, the Meter shall be installed in the existing meter socket by the Authority or the Contractor upon the interconnection request. The Electric Power Authority or the Contractor may not establish additional requirements, reject requests, deny endorsements, or request the relocation of an existing meter socket, through regulations, technical order, directors' orders, or otherwise except in such cases when the location of the existing meter socket fails to meet the safety standards set forth in the current National Electrical Code. However, the meter must be installed in an accessible location or if not, the customer shall be required, upon prior coordination, to grant the necessary access to PREPA's personnel or the Contractor, as so required. The Electric Power Authority shall adjust any regulations to the provisions of this Act.

Every installation of this sort shall include an automatic distribution line flow disconnection mechanism, in the event of an interruption of service."

Section 3.4.- Section 4 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 4.- Applicable Rate.

a)      Study on Net Metering and distributed energy.- The Energy Bureau is hereby directed to conduct a study, through an independent formal process and with

participation of interested parties and the general public, to evaluate and consider the costs and benefits associated with: (1) the net metering program, (2) distributed generation technologies, (3) small scale solar energy projects, (4) energy storage systems. Said study must be completed within five (5) years as of the effective date of the Puerto Rico Energy Public Policy Act, shall be subject to public comment, and shall take into account the following factors: the costs of energy generation, the capacity value, the transmission and distribution costs, system losses prevented, and environmental compliance costs avoided, among other factors deemed relevant and appropriate by the Bureau.

Five (5) years after the approval of the Puerto Rico Energy Public Policy Act, the Bureau may issue any determination concerning the net metering program while taking into account the results of such study. Once the results of the study have been integrated into the program or the net metering rate, the study shall remain in effect for no less than three (3) years and until the Bureau, *motu propio* or at the request of a party, determines it is appropriate to initiate a formal study review process.

b)      Determination on applicable rate.- During the aforementioned five (5)-year period, and until the Energy Bureau establishes the appropriate values for distributed energy and energy storage systems in accordance with the study described in the preceding subsection, the credit for energy exported by net metering customers shall be equal to the value of such energy according to the customer's applicable rate, and any charges applicable to net metering customers shall be based on their net consumption.

Once the aforementioned five (5)-year term has elapsed, the rate applicable to net metering customers, including the rate or mechanisms through which customers shall be compensated for the energy they supply to the electric power grid, shall be determined exclusively by the Energy Bureau as part of the

electric power service rate review process provided in Act No. 57-2014, or through a separate administrative process when deemed necessary or convenient. Any determination regarding the net metering program shall take effect within the term provided by the Bureau.

Any customer that, on the date in which the Bureau issues its final determination, has a net metering contract or has notified the Bureau about the certification of the distributed generator installed by a professional engineer or expert electrician, both members of their professional associations and admitted to the practice of their profession, shall be automatically grandfathered as a net metering customer under the rate in effect before the Bureau's final determination.

In such cases, the net metering customer shall have the right to the rate or compensation mechanism in effect at the time for a term of not less than twenty (20) years as of the execution of the net metering contract. However, the net metering customer shall be entitled and may opt to avail himself of the new rate or compensation mechanism approved by the Bureau.

c)      Prohibited charges.- The Electric Power Authority or the transmission and distribution network Contractor shall not impose any charge or modify the monthly electric power usage consumption rate of its net metering customers, or customers who interconnect any distributed generation system, without prior authorization from the Bureau as provided above. Likewise, the rate approved by the Bureau for net metering customers shall not be discriminatory or discourage entering into net metering agreements. No direct or indirect charge shall be imposed on the generation of renewable energy by prosumers.

d)      Contracts in effect as of the date of approval of the Energy Public Policy Act.- Pursuant to the provisions of subsection (b) of this Section regarding grandfathered customers, the Authority or transmission and distribution network

Contractor shall honor net metering contracts in effect as of the date of approval of this Act in accordance with the agreed-upon terms."

Section 3.5.- Section 5 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 5.- Energy Metering.

Except for those cases where the applicable federal laws or regulations in effect expressly and specifically direct otherwise, the metering and accreditation process shall be as follows:

a)      The Electric Power Authority or the transmission and distribution network Contractor shall meter the electricity consumed by the customer during a billing cycle in accordance with standard metering practices in effect, as provided in and pursuant to the net metering regulations and standards established by the Bureau.

b)      The Electric Power Authority or the transmission and distribution network Contractor shall bill a customer for the electricity supplied by applying the rate or compensation mechanism approved by the Energy Bureau in accordance with Section 4 of this Act.

c)      Every net metering customer shall be entitled to receive a credit per each kilowatt-hour of energy supplied to the electric power grid, in accordance with the rate or compensation mechanism authorized by the Bureau.  For the purposes of this Act, the term 'kilowatt-hour' shall be understood to be the unit of electric power equivalent to the electricity yielded by the power of one kilowatt acting for one hour.

d)      For the billing cycle closing in June of each year, any excess kilowatt-hour credit accumulated by the feedback customer during the previous year and which remains unused shall be compensated as follows:

1)      Seventy-five percent (75%) of the excess shall be purchased by the Electric Power Authority or the transmission and distribution network Contractor as provided by the Energy Bureau; and

2)     ...

f)[sic] PREPA or the Contractor shall credit every participant of the Net Metering Program promptly and expeditiously. Such credit shall be clearly shown in the monthly bill for the next billing cycle not later than thirty (30) days after having notified the certification of the distributed generator installed by an electrical engineer or expert electrician, both members of their professional associations and admitted to the practice of their profession.

g)[sic] If an agreement in accordance with this Act is not reached between the parties thereto within a non-extendable term of one hundred twenty (120) days counted from the date on which a net metering application was submitted to the Electric Power Authority or the transmission and distribution network Contractor, or in those cases where a renewable energy source under the Net Metering Program must be disconnected due to technical or security reasons, or in the event of a dispute related to bills or credits, the Puerto Rico Energy Bureau shall have jurisdiction to settle such disputes as provided in Act No. 57-2014, as amended."

Section 3.6.- Section 6 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 6.- Liability.

The Electric Power Authority or the transmission and distribution network Contractor shall not be directly or indirectly liable for allowing or continuing to allow solar electric equipment, a windmill, or other source of renewable energy to be connected to its transmission and distribution system, or for acts or omissions of the feedback customer that cause losses or injuries, including death, to any third party."

Section 3.7.- Section 7 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 7.- Regulations and Education.

The Energy Public Policy Program shall develop and implement educational campaigns on a regular basis directed to advising consumers on the benefits of net metering, energy efficiency, energy conservation, demand response, energy consumption, and the different technologies available in the market for energy generation from renewable sources.

The following message shall be included in every bill sent to customers:

'The installation of equipment to generate energy from renewable sources may help to reduce your electricity bill and PREPA, through its commercial office or the Internet, or the transmission and distribution network Contractor shall provide you with information on how you may qualify to enroll in the net metering program. Furthermore, tax benefits are available to incentivize the purchase of this equipment. Additional information about this equipment is available at the Energy Public Policy Program.'

The electricity bill shall include this message at least two inches from where the total amount of the bill appears, and shall be written in a font which is the same size as the largest font used in any text appearing on the bill."

Section 3.8.- Section 8 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 8.- Reports.

The Electric Power Authority, its successor, or the transmission and distribution network Contractor shall file with the Energy Bureau and the Legislative Assembly semiannual progress reports on the interconnection of renewable systems to the grid including, but not limited to the average interconnection times of the distributed generation systems, the number of backlogged cases pending approval,

and the percentage of compliance with the Renewable Portfolio Standard corresponding to the distributed renewable energy. The reports may include recommendations on additional legislation needed to achieve the objectives of the program."

Section 3.9.- Section 9 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 9- Public Policy on Interconnection.

It shall be the public policy of the Government of Puerto Rico to ensure that the procedures for the interconnection of distributed generators to the electric power system are effective in terms of costs and processing time, in order to promote the development of these types of projects and incentivize economic activity through the reduction of energy costs in the residential, commercial, and industrial sectors. For such reason, it is hereby established that the procedures for the interconnection of distributed generators with a generating capacity of up to five (5) megawatts (MW) which shall participate in the Net Metering Program, shall use as a model the Small Generator Interconnection Procedures (SGIP) and the Small Generator Interconnection Agreement (SGIA), provided in Order No. 2006 of the Federal Energy Regulatory Commission (FERC), as amended, and any other future amendments thereto that are adopted by the Energy Bureau. The interconnection procedures shall be uniform in all regions.

Using the provisions of the SGIP as a model, the Electric Power Authority or the transmission and distribution network Contractor shall approve expedited processes so that distributed generators with a generating capacity of less than one megawatt (1MW) may connect to the grid, provided, that the technical features of the distributed generator to be interconnected and the existing conditions of the electric power grid thus allow. Provided, that for the interconnection of generators

with a generating capacity of more than five hundred kilowatts (500KW) but less than one megawatt (1MW), the Bureau may require the necessary reliability studies.

An engineer or an expert electrician, both members of their professional associations and admitted to the practice of their profession, shall certify that the electrical installation of the distributed generation system meets the specifications required by the interconnection regulations, and that the same was completed in accordance with the laws, regulations, and rules applicable to the interconnection of distributed generation to the transmission and distribution system. Once said certification is submitted to the Authority, its successor, or the transmission and distribution network Contractor, the proponent shall interconnect and operate his distributed generation system with the electrical system provided that the generation capacity of said system does not exceed 25 kilowatts.

The Authority, its successor, or the transmission and distribution network Contractor shall evaluate the application for interconnection as established in the interconnection regulations. Such evaluation, however, shall not exceed ninety (90) days from the filing thereof as established in the regulations approved by the Energy Bureau. In the event of noncompliance with the term provided, the application for interconnection shall be automatically approved until the Authority, its successor, or the transmission and distribution network Contractor, as appropriate, provides the grounds for denying the interconnection or deems necessary to implement additional technical requirements and/or improvements to the electric power distribution system. In these cases, the applicant shall be entitled to challenge such a determination or findings through any of the processes provided through regulations on review resources or procedures relating to the interconnection of a distributed generator approved by the Energy Bureau.

Nothing prevents the subsequent review of the correction of the certification issued by an electrical engineer or an expert electrician, both members of their professional associations and admitted to the practice of their profession.

However, in the case of interconnected photovoltaic or renewable energy generation systems whose generation capacity does not exceed 25 kilowatts, the following shall apply:

(a)     Photovoltaic or renewable energy generation systems registered in the renewables registry of Act No. 82-2010, whose generation capacity does not exceed 25 kilowatts shall be interconnected automatically to the transmission and distribution network. The systems shall begin operating automatically once an electrical engineer or an expert electrician, both members of their professional associations and admitted to the practice of their profession and who are certified photovoltaic or renewable energy system installers, certifies the compliance thereof with the regulatory technical requirements for interconnection to the distribution network. It shall not be necessary to submit an application for interconnection in order for the systems identified herein to be deemed interconnected and to activate net metering.

(b)     The net metering for these generation systems shall be reflected in the customer's monthly bill not later than thirty (30) days after the receipt of notice of the certification of the distributed generator installed by an engineer or an expert electrician, both members of their professional associations and admitted to the practice of their profession.

(c)     The fact that the feeder exceeds its capacity shall not constitute an obstacle for the interconnection of photovoltaic or renewable energy systems with a generation capacity that does not exceed 25 kilowatts. In such cases, the necessary improvements and/or changes to be made to the feeder shall be defrayed by the requesting company.

(d)     None of the provisions of this Section prevent the subsequent review of the correction of the certification of the distributed generator.

However, photovoltaic generation systems established in accordance with the parameters of EO-2017-064, 'to provide electric power to homes through photovoltaic generation systems and batteries, and accelerate the recovery of the Puerto Rico electric power system after Hurricane Maria,' shall be deemed to be automatically approved to operate and participate in the Net Metering Program, provided that the provisions of EO-2017-064 are complied with during the effectiveness thereof. However, residential photovoltaic energy storage systems built pursuant to the aforementioned Executive Order do not have to meet the remote operation and battery status monitoring requirements to be deemed automatically approved to operate and participate in the Net Metering Program.

Residential customers that hold an Interconnection Agreement prior to February 2017 shall not have to renew it, and such agreement shall remain in effect provided that the electric power service contract for the property where the distributed generation system is located remains in effect."

Section 3.10.- Section 10 of Act No. 114-2007, as amended, is hereby amended to read as follows:

"Section 10.- Rulemaking Authority.

The Electric Power Authority is hereby directed to adopt or modify regulations as needed for the faithful compliance with this Act in accordance with the standards and technical requirements established by the Energy Bureau. Said regulations shall be promulgated within a term not to exceed one hundred eighty (180) days after the approval of this Act.

The Electric Power Authority shall be required to promulgate regulations for the interconnection of distributed generators with a generating capacity of less than one megawatt (1MW), as well as regulations for the interconnection of distributed

generators with a generating capacity between one megawatt (1MW) and five megawatts (5MW) to be connected to sub-transmission facilities. Such regulations shall be consistent with the public policy on interconnection set forth in Section 9 of this Act and shall ensure the reliability and safety of the electric power system. Said regulations for the interconnection of distributed generators shall be promulgated within a non-extendable term of one hundred eighty (180) days after the effective date of this Act. Furthermore, PREPA shall amend any other regulations in effect that govern or are related to the Net Metering Program to conform it to the provisions of this Act and the terms and procedures to be included in the regulations for the interconnection of distributed generators.

In the event that the Electric Power Authority fails to promulgate or modify the regulations for the interconnection of distributed generators on or before one hundred eighty (180) days after the approval of this Act, the evaluation and approval process of applications for interconnection of distributed generators shall be established by the Energy Bureau, following the best practices of the industry. Such process shall have the purpose of reducing administrative steps while safeguarding the reliability and safety of Puerto Rico's electric power grid, and ensuring compliance with the public policy on energy of the Government of Puerto Rico.

Any amendment proposed by the Authority, its successor, or the transmission and distribution network Contractor to the regulations for the interconnection of distributed generators must be submitted to the Energy Bureau in order to hold public hearings as established in this Act. Any amendment proposed by the Bureau to the regulations for the interconnection of distributed generators shall follow the process established in this Section.

The Bureau shall be required to hold public hearings prior to the approval of any amendment to the regulations for the interconnection of distributed generators. Such public hearings shall not be held within less than thirty (30) days after the

publication of the public notice of the proposed amendment to the regulations for the interconnection of distributed generators. Thirty (30) days after the public hearing process has concluded, the Bureau shall issue its determination about whether or not the amendment to the regulations for interconnection shall be accepted. Once the decision of the Bureau becomes final and binding, the Bureau shall amend the regulations for the interconnection of distributed generators in accordance with those amendments adopted pursuant to such decision."

Section 3.11.- Section 11 of Act No. 114-2007, as amended, is hereby repealed.

Section 3.12.- Sections 12 and 13 of Act No. 114-2007, as amended, are hereby renumbered as Sections 11 and 12, respectively.

Chapter IV.- Amendments to Act No. 82-2010 and Act No. 83-2010.

Section 4.1.- Section 1.4 of Act No. 82-2010, as amended, is hereby amended to read as follows:

"Section 1.4.- Definitions.

For purposes of this Act, the following terms or phrases shall have the meaning stated below, except where the context clearly indicates otherwise, and the terms importing the singular number shall be deemed to include the plural and vice versa:

1)      ...

2)      'Administration or Program'.- Means the Energy Public Policy Program of the Puerto Rico Department of Economic Development and Commerce, in charge of developing and disseminating the energy public policy of the Government of Puerto Rico. Any reference made in this Act to the Energy Affairs Administration or the Commonwealth Energy Public Policy Office or CEPPO shall be deemed to refer to the Energy Public Policy Program of the Department of Economic Development and Commerce.

...

5)     'Authority'.- Means the Puerto Rico Electric Power Authority, its subsidiary, or the transmission and distribution network Contractors. Contractor refers to those persons who enter into Partnership Contracts in relation to PREPA Transactions, as such term is defined in Act No. 29-2009.

...

8)     'Renewable Energy Certificate or REC'.- means a personal property that constitutes a tradeable and negotiable asset or commodity that may be purchased, sold, assigned, and transferred between persons for any lawful purpose, which is integrally and inseparably equal to one (1) megawatt-hour (mwh) of electricity generated from a sustainable renewable energy source or alternative renewable energy source in Puerto Rico (issued and registered pursuant to this Act) and, in turn,  represents all environmental and social attributes, as defined in this Act.

9)     'Commission or Bureau'.- Means Puerto Rico Energy Bureau, as established by virtue of the Reorganization Plan of the Puerto Rico Public Service Regulatory Board and Act No. 211-2018, which is a specialized independent entity in charge of regulating, supervising, and enforcing the energy public policy of the Government of Puerto Rico, formerly the Puerto Rico Energy Commission, created under Act No. 57-2014, as amended. Any reference made in this Act to the 'Commission or Energy Commission' shall be deemed to refer to the Puerto Rico Energy Bureau.

...

13)     'Alternative Renewable Energy' – means the energy derived from the following sources:

    (a)     Landfill gas combustion;

    (b)     Anaerobic digestion;

        (c)    Fuel cells.

14)    'Distributed Renewable Energy'.- Means sustainable renewable energy or alternative renewable energy supplying electric power to an electric power service company or generated for self-consumption or for sale to third-parties. Community solar projects are considered distributed renewable energy at the residential level and their maximum capacity shall be determined by the Puerto Rico Energy Bureau with the advice of the Electric Power Authority or the transmission and distribution network Contractor, as applicable.

…

15)    'Sustainable Renewable Energy': means the energy derived from the following sources:

        a.    Solar energy;

        b.    Wind energy;

        c.    Geothermal energy;

        d.    Renewable Biomass Combustion;

        e.    Renewable Biomass Gas Combustion;

        f.    Combustion of biofuel derived solely from renewable biomass;

        g.    Hydropower;

        h.    Marine and hydrokinetic renewable energy, as defined in Section 632 of the 'Energy Independence and Security Act of 2007' (Public Law 110-140, 42 U.S.C. § 17211);

        i.    Ocean thermal energy;

...

21)    'Microgrid'.- Means a group of interconnected loads and distributed energy resources within electrical boundaries clearly defined by the Bureau that acts as a single controllable entity with respect to the transmission and distribution system of the electric power grid. Microgrids shall have the capacity to connect to

and disconnect from the Authority's transmission and distribution system in order for them to be able to operate connected to the grid as well as off the grid. The goal of microgrids is to enhance the resilience of the electric power grid, promote distributed generation mostly based on renewable energy and promote strategies to reduce energy consumption.

…

29)   'Prosumer'.- Shall mean any users or customers of the Electrical System who have the capacity to generate electric power for self-consumption that, in turn, have the capacity to supply any energy surplus through the electric power grid.

30)

31)   ..."

Section 4.2.- Section 2.3 of Act No. 82-2010, as amended, is hereby amended to read as follows:

"Section 2.3.- Renewable Portfolio Standard.

(a)    For each calendar year between 2015 and 2050, each retail electricity supplier shall submit to the Bureau proof of compliance with the Renewable Portfolio Standard applicable under subsection (b) of this Section.

(b)    For each calendar year between 2015 and 2050, the Renewable Portfolio Standard applicable to each retail electricity supplier shall be at least the following minimum percentage:

| Year | Required Renewable Energy Percentage (%) |
|---|---|
| 2015 to 2022 | 20.0% |
| 2023 to 2025 | 40.0% |
| 2026 to 2040 | 60.0% |
| 2041 to 2050 | 100.0% |

(c)    For each calendar year between 2015 and 2050, the percentage of sustainable renewable energy or alternative renewable energy applicable to each retail electricity supplier shall be, at least, the percentage corresponding to such calendar year, as provided in subsection (b) of this Section. The required amount of sustainable renewable energy or alternative renewable energy applicable to a retail electricity supplier in a specific year shall be obtained by multiplying the percentage corresponding to said year, as provided in subsection (b) of this Section, by the total amount of electric power, expressed in megawatt-hours (MWh), sold by the retail electricity supplier during the same calendar year.

(d)    As necessary to comply with the renewable portfolio standard imposed by means of federal legislation and/or regulation, the Bureau may limit, through regulations, the percentage of alternative renewable energy and the number of RECs that may be used by a retail electricity supplier to prove compliance with the Renewable Portfolio Standard applicable thereto during each calendar year.

(e)    For purposes of attesting compliance with this Section, the amount of distributed renewable energy generated by prosumers shall be measured and there shall be access to the Registry of Renewable Energy Certificates in accordance with the provisions of this Act, the Puerto Rico Energy Public Policy Act, and the regulations adopted by the Energy Bureau for such purposes.

(f)    ...

(g)    ...”

Section 4.3.- Section 2.4 of Act No. 82-2010, as amended, is hereby amended to read as follows:

“Section 2.4.- Powers and Duties of the Bureau.-

The Bureau shall be charged with the implementation of this Act; to achieve this, it may resort to the Program's resources and staff. The Bureau shall have any

powers as are necessary and convenient to fully attain the purposes of this Act, specifically including, without it being limited to the following:

(a)      ...

(j)      The Bureau shall prescribe by regulations the creation of a Renewable Energy Certificates (RECs) market system, including auction mechanisms or competitive bidding therefor, taking into account the vested rights, if any, of energy producers who have RECs. Said regulations shall include mechanisms to ensure compliance by the Puerto Rico Electric Power Authority or its successor, the transmission and distribution network contractor and retail electricity suppliers.

(k)      ...

(l)      ...

(m)      ...

(n)      ...”

Section 4.4.- Section 2.5 of Act No. 82-2010, as amended, is hereby amended to read as follows”

“Section 2.5.- Powers and Duties of the Department of Economic Development and Commerce

In addition to the authorities delegated to the Program under other laws, the Secretary of the Department of Economic Development and Commerce shall have the following powers and duties to fully comply with the purposes of this Act:

(a)      To develop and provide financing alternatives and special incentives for the development of sustainable renewable energy sources and alternative renewable energy sources.

(b)      To develop and provide financing alternatives and special incentives that allow for the applicable Renewable Portfolio Standard to be exceeded in less time than that scheduled under this Act.

(c)     To prepare systematic analyses of the sustainable renewable energy programs and evaluate the analyses conducted by other government agencies, and recommend programs designed to fulfill the purposes of this Act.

(d)     To design and recommend specific electricity conservation proposals.

(e)     To assist in the implementation of energy efficiency and conservation programs by individuals, agencies, or public and/or private corporations under its jurisdiction.

(f)     To request any information related to the energy conservation measures designed, implemented, used or proposed by any retail electricity supplier so as to achieve energy conservation.

(g)     To promulgate, amend, or repeal regulations pursuant to the provisions of this Act and the procedures established in Act No. 38-2017, known as the 'Government of Puerto Rico Uniform Administrative Procedure Act.'

(h)     To implement any decision, determination, order, resolution, and regulation of the Energy Bureau.

(i)     To enter into agreements and covenants with entities that have similar interests, experience, human resources, technicians, and laboratories specialized in the energy field, in order to facilitate and advise the Program in the performance of its functions."

Section 4.5.- Section 2.6 of Act No. 82-2010, as amended, is hereby repealed.

Section 4.6.- Sections 2.7 and 2.8 of Act No. 82-2010, as amended, are hereby renumbered as Sections 2.6 and 2.7, respectively.

Section 4.7.- Section 2.9 of Act No. 82-2010, as amended, is hereby renumbered as Section 2.8 and amended to read as follows:

"Section 2.8.- RECs Processing by the Bureau.

For each REC processed, the Bureau may establish a reasonable processing fee to be paid by a REC holder. The processing fee may be included in the value of

each REC processed. Any revenues from the processing fees imposed shall be used to carry out all proper and necessary actions that guarantee the attainment of the ends and purposes of this Act.

The minimum value of each REC shall be the value established by the Bureau when conducting any legal business with the same, without impairment to any vested right held by the parties prior to the approval of the Puerto Rico Energy Public Policy Act."

Section 4.8.- Section 2.10 of Act No. 82-2010, as amended, is hereby renumbered as Section 2.9.

Section 4.9.- Section 2.11 of Act No. 82-2010, as amended, is hereby renumbered as Section 2.10 and amended to read as follows:

"Section 2.10.- Renewable Portfolio Standard Compliance.

(a)    Any retail electricity supplier shall comply with the Renewable Portfolio Standard herein created, upon filing with the Bureau any of the following or combination thereof:

(i)    A REC issued and registered in the renewables registry in favor of the retail electricity supplier for each megawatt-hour (MWh) of electric power generated from sustainable renewable energy sources or alternative renewable energy sources in Puerto Rico, and/or

(ii)    In the case of a retail electricity supplier, that quantifies the electricity generated by or purchased from distributed renewable energy producers located in Puerto Rico through a net metering program, and whenever it is not feasible to obtain RECs that represent such electricity, a report evidencing that the retail electricity supplier has complied with the Renewable Portfolio Standard through the purchase of renewable energy together with all environmental and social attributes related to the production of such energy, pursuant to subsection (e) of this Section.

(iii)    All RECs including distributed renewable energy and those of net metering customers, may be acquired by a retail electricity supplier for purposes of complying with the Renewable Portfolio Standard, or by other buyers for any legal purpose.

(b)    ...

...

(f)    Transmission and Distribution Network Contractor.- The transmission and distribution network Contractor shall make all the necessary and convenient improvements to make feasible and facilitate compliance with the Renewable Portfolio Standard."

Section 4.10.- A new Section 2.12 is hereby added to Act No. 82-2010, as amended, to read as follows:

"Section 2.12.- Energy Storage Systems.

On or before December 31, 2019, the Puerto Rico Energy Bureau with the assistance of the Program, shall conduct a study to determine the specific goals of the energy storage systems at all levels, as a mechanism to facilitate the integration of sustainable and alternative renewable energy sources into the grid and achieve compliance with the Renewable Portfolio Standard. To conduct this study, the Bureau and the Program shall consider, without limitation, the following:

a)    the associated costs and long-term benefits,

b)    the stability and resilience of the grid resulting from energy storage,

c)    the type, useful life, and flexibility of the technology available to withstand changes in the grid's infrastructure;

d)    the capacity to be used as a generation resource by eliminating the need to build new infrastructure; and

e)    the efficiency in the use thereof to facilitate demand response programs.

After completing the study, the Bureau shall submit the same to both Houses of the Legislative Assembly and prescribe by regulations the specific goals to be reached by regulated entities regarding minimum energy storage and compliance schedule. The Bureau shall take into account existing energy storage systems that are operating or approved at the time of determining the acquisitions needed to attain storage goals. The Bureau may consider incentive programs that promote the profitable development of energy storage systems to comply with the Renewable portfolio standard. The Bureau shall evaluate these determinations at least once every three years and as part of the Integrated Resource Plan."

Section 4.11.- A new Section 2.13 is hereby added to Act No. 82-2010, as amended, to read as follows:

"Section 2.13.- Prohibition Against the Use of Coal

As part of the public policy of the Government of Puerto Rico to eliminate our reliance on fossil fuels, the award of new contracts and/or the granting of permits to establish power plants that generate energy from coal and its derivatives is hereby prohibited. Likewise, no permits or amendments to contracts existing as of the approval of the Puerto Rico Energy Public Policy Act may authorize or consider coal burning as a power generation source after January 1, 2028.

However, for purposes of eliminating the use of coal by January 1, 2028, the existing coal-fired power capacity may be replaced by power generation capacity from other sources that are compliant with Puerto Rico Energy Public Policy Act by extending contracts and/or renewing existing permits based on the new generation source. The replacement of the generating capacity from other energy sources shall be authorized by the Bureau and result in the total elimination of coal use after January 1, 2028."

Section 4.12.- Sections 2.12 and 2.13 of Act No. 82-2010, as amended, are hereby renumbered as Section 2.14 and 2.15, respectively.

Section 4.13.- Section 1.4 of Act No. 83-2010, as amended, is hereby amended to read as follows:

"Section 1.4.- Definitions.

For the purposes of this Act, the following terms and phrases shall have the meaning stated hereinbelow, except where the context clearly indicates otherwise, and the terms importing the singular number shall be deemed to include the plural and vice versa:

1)      …

19)    'Alternative Renewable Energy' – means energy derived from the following sources:

    a.     Landfill gas combustion;

    b.     Anaerobic digestion;

    c.     Fuel cells; and

20)    …

47)    …"

Section 4.14.- Former Chapter III of Act No. 83-2010, as amended, is hereby renumbered as Chapter IV.

Section 4.15.- A new Chapter III is hereby added to Act No. 83-2010, as amended, to read as follows:

"CHAPTER III.- GREEN ENERGY TRUST

Section 3.1.- Green Energy Trust.

The Secretary of Economic Development and Commerce is hereby authorized, as trustor, to execute a public instrument whereby a trust to be known as the 'Green Energy Trust,' shall be created with separate legal personality, private character, perpetual existence, irrevocable and nonprofit, (hereinafter, the 'Trust'). The Corpus of the Trust shall be composed of the financial resources it receives through allocations or donations from public or private entities. The Trust may

submit competitive proposals or grants for which the Government of Puerto Rico is eligible, in accordance with the requirements of the public or private entities that offer such grants.

The Department of Economic Development and Commerce shall execute a public instrument to create the 'Green Energy Trust' within a term not to exceed thirty (30) days after the approval of the Puerto Rico Energy Public Policy Act.

Section 3.2.- Bylaws.-

The operations of the Trust shall be governed by the provisions of the trust instrument as well as the Bylaws adopted by the Board of Trustees of the Trust. Said Bylaws shall specify the form and manner in which the financial resources of the Trust shall be used. In addition, it shall specify the manner in which the members of the Board of Trustees shall be appointed. These Bylaws shall be promulgated within sixty (60) days after the constitution of the Board of Directors of the Trust.

The Board of Trustees of the Trust shall serve as the fiduciary of the Trust. The foregoing does not preclude the custody of the trust property from being transferred to a trust incorporated under the laws of the Government of Puerto Rico that shall act as the custodian of such property and the credits thereof under terms that are consistent with the objectives and provisions of this Act.

Section 3.3.- Objectives

The Trust shall have the following objectives:

(1)     Those objectives defined in Section 2.2 of this Act;

(2)     To encourage energy consumers in Puerto Rico to become prosumers, as such term is defined in Section 1.2 of the Puerto Rico Energy Public Policy Act;

(3)     To establish program or financially support projects that provide residents of low- and moderate-income communities with access to green energy;

(4)     To support municipal energy, community solar, microgrid businesses in isolated and low- and moderate-income communities;

(5)    To facilitate the financing of green energy projects in small- and medium-sized businesses (SMBs), or microbusinesses.

Section 3.4.- Powers of the Trust

The Trust shall have and may exercise all rights and powers that are necessary or convenient to achieve its purposes, including the following:

(a)    To have perpetual succession.

(b)    To adopt an official seal, which may be altered at its convenience.

(c)    To sue and be sued in its own name and to file complaints and have complaints brought against it.

(d)    To formulate, adopt, amend, and repeal bylaws for the conduct of its business as well as standards, rules, and regulations as are necessary or pertinent to exercise and discharge its functions, powers, and duties.

(e)    To acquire real and personal property by any lawful means, including grants, gift, purchase, bequest, or donation, and to hold and exercise all property rights thereon, as well as dispose of the same.

(f)    To borrow money and issue bonds of the Trust for the purpose of providing funds to defray the cost of acquiring any property for the Trust or to achieve any of its purposes or to refinance, pay, or redeem any of its outstanding bonds or obligations and to guarantee the payment of its bonds and any and all obligations thereof by assignment, pledge, mortgage, or any other encumbrance on all or any of its contracts, rents, income or properties.

(g)    To grant financing, by delegation of funds, service contracts, or donations of any kind to individuals or juridical persons that provide management, support, and technical assistance services for the development of works and projects consistent with the purposes of the Trust, as prescribed by regulations.

(h)    To create incentive, subsidy, fund matching, loan guarantee programs, among others to achieve the purposes of the Trust.

(i)     To negotiate and execute, with any person, including any federal or state government agency, any type of contracts and all such instruments and agreements as are necessary or convenient to exercise the powers and functions vested in the Trust under this Act.

(j)     To exercise all powers inherent to the functions, prerogatives, and responsibilities entrusted thereto under this Act, exercise such other powers granted thereto under any other applicable law, as well as take any action or engage in any activity as necessary or convenient to achieve its purposes.

Section 3.5.- Capitalization of the Trust; Trust Fund; Investment of Funds.

The Trust shall be funded by:

(i)     the contributions and investments of private or public persons and entities;

(ii)     contributions and any other type of grant or allocations from the Government of Puerto Rico and the Government of the United States of America to which it qualifies;

(iii)     Investments, reinvestments, and contributions from the private banks, including mortgage banks, whether through loans, investments, or services; and in the case of commercial banks, such priority loans, investments, or services to comply with the Community Reinvestment Act, in accordance with the requirements and authorization provided for in said Act.

Section 3.6.- Debts and Obligations.

The debts, obligations, contracts, bonds, notes, receipts, expenditures, accounts, funds, enterprises, and properties of the Trust, its officials, agents or employees, shall be deemed to be of the Trust and not of the Government of Puerto Rico or any other office, bureau, department, commission instrumentality, branch, agent, official, or employee thereof.

Section 3.7.- Exemptions.

The Trust shall be exempt exclusively from payment of all taxes, fees, charges or licenses imposed by the Government of Puerto Rico or its municipalities.

The Trust shall also be exempt from payment of any type of internal revenue fees, stamps, vouchers, duties, taxes or imposts whatsoever required by law for instituting judicial proceedings, the issuance of certificates by any office or agency of the Government of Puerto Rico, as well as from executing and recording public documents in any public registry of the Government of Puerto.

Section 3.8.- Immunity; Limitation of Civil Liability

Neither the Trust, the Board as fiduciary, or its directors, severally, shall be held liable in their personal capacity for monetary claims for damages resulting from their actions or breach of fiduciary duties as members of the Board of Trustees, except for acts or omissions not in good faith, or intentional misconduct or the knowing violation of law or for any transaction from which a member derives an improper personal benefit. The Trust may indemnify any person who is or has been a trustee, official, employee, or agent of the Trust under the same parameters that a corporation would indemnify its directors, officers, employees, or agents under Act No. 164-2009, as amended, known as the 'General Corporations Act.'

Section 3.9.- Tax Treatment of Donations.

For purposes of Sections 1033.10 and 1033.15(a)(3) of the Puerto Rico Internal Revenue Code of 2011, Act No. 1-2011, as amended, similar provisions of any substitute law, the donations made to the Trust shall be treated as donations made to an entity described in Section 1101.01(a)(2) of the Code that has been duly qualified as such by the Secretary of the Treasury of Puerto Rico.

Section 3.10.- Annual Report

Every year, within one hundred and twenty (120) days after the close of the fiscal year, the Trust shall submit a report to the Governor, as well as to the Clerk of the House and the Secretary of the Senate.

Said report shall include the following:

(a) an audited financial statement by recognized certified public accountants, and a full report on the activities of the Trust for the preceding fiscal year;

(b) a full and thorough account of all of its contracts and transactions during the fiscal year included in the report;

(c) full information on the situation and progress of its activities, until the date of its last report, and

(d) the work plan of the Trust for the following fiscal year."

Section 4.16.- Sections 3.1, 3.2, 3.3, 3.4, 3.5, and 3.6 of Act No. 83-2010, are hereby renumbered as Sections 4.1, 4.2, 4.3, 4.4, 4.5, and 4.6, respectively.

Sections to read as follows: [sic]

"Chapter V – Amendments to Act No. 57-2014

Section 5.1.- The content of Section 1.2 of Act No. 57-2014, as amended, is hereby eliminated and substituted for a new Section 1.2, to read as follows:

'Section 1.2.- Declaration of the Public Policy on Electric Power.

The transformation and restructuring of our electric power system is essential to achieve the competitiveness and economic development of Puerto Rico.

It is hereby declared as the public policy of the Government of Puerto Rico that an independent electric power regulatory entity with broad powers and duties shall be created to ensure compliance with the public policy on energy, the provisions of this Act, and to ensure that energy costs are just and reasonable by overseeing and reviewing the rates of electric power service companies. The

regulatory entity shall thoroughly scrutinize the power grid's maintenance and establish performance-based incentive and penalty mechanisms.

The Government of Puerto Rico, its agencies, municipalities, and public corporations shall become efficient and responsible energy consumers and shall promote energy conservation and efficiency in all branches and instrumentalities, as well as among the people in general. Moreover, it shall promote transparency and citizen participation in energy service-related processes."

Section 5.2.- Section 1.3 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 1.3.- Definitions.

The following terms, wherever they are used or referred to in this Act, shall have the meaning stated below, except where the context clearly indicates otherwise:

(a)     'Creditors' Agreement'. - Shall mean any agreement executed (including annexes, exhibits, and schedules attached thereto), by and among the Authority and various of the principal creditors thereof, as amended or supplemented, whereby certain terms and conditions of the current debt are modified and the Authority may commit to (i) implement certain administrative, operational, and governance reform measures; (ii) optimize electric power transmission and distribution; (iii) modernize electric power generation; and (iv) achieve operational savings. Neither the Agreement nor any future amendment thereto or supplement thereof shall be inconsistent with the provisions of the 'Puerto Rico Electric Power Authority Revitalization Act.'

(b)     ...

(c)     ...

(f)     'Interconnection Charge'. - Shall mean the fair and reasonable amount of money that a person shall pay for the right to connect such person's facility to Puerto Rico's electric power grid.

(g)     ...

(h)     ...

(l)     'Electric Power Company' or 'Electric Power Service Company'. - Shall mean any natural or juridical person or entity, energy cooperative, engaged in the provision of generation services, transmission and distribution services, billing, wheeling, grid services, energy storage, resale of electric power as well as any other electric power service as defined by the Bureau. The Electric Power Authority or its successor as well as any Contractor under a Partnership or Sales Contract executed in relation to PREPA Transactions conducted by virtue of Act No. 120-2018 shall be deemed Electric Power Service Companies for purposes of this Act.

(m)     'Electric Power Generation Company' or 'Independent Power Producer'. - Shall mean any natural or juridical person engaged in the production or generation of electric power in Puerto Rico to be sold through Power Purchase Agreements or any other legal transaction authorized by the Bureau. This term shall include cogenerators already established in Puerto Rico that supply energy to the Authority through a Power Purchase Agreement, energy or electric cooperatives and renewable energy producers.

(n)     'Conservation'. - Shall mean any reduction in electric power consumption resulting from changes in the consumers' energy consumption patterns.

(o)     ...

(p)     ...

(u)     'Energy Efficiency'. - Shall mean reduction in energy use attributable to appliances and equipment replacement, technology modernization, or a more efficient operation of existing equipment and materials, as well as any other program developed by the Bureau for the purpose of reducing electric power consumption.

(v)     ...

(aa)  'Distributed Generator'. - Shall mean any natural or juridical person that owns an electric power generation facility in Puerto Rico for use primarily by such person and that may provide any electric power generated in excess to the electric power grid.

(bb)  'Essential Service Facilities'. - Shall mean health facilities, police and armed forces stations, fire stations, emergency management offices, emergency management shelters, prisons, ports, airports, telecommunications facilities, waste water supply and treatment facilities, educational institutions and any other facility designated by the Energy Bureau as an 'Essential Service Facility' through regulations.

(cc)  'Interconnection' or 'Electric Interconnection'. - Shall mean the connection of power plants, electric power generation companies, independent power producers, natural or juridical persons, energy or electric cooperatives, microgrids or community solar into the same transmission and distribution grid in order for them to be electrically connected.

(dd)  ...

(ee)  ...

(hh)  'Commonwealth Energy Public Policy Office' or 'CEPPO' or the 'Energy Public Policy Program', - Shall mean the Energy Public Policy Program of the Department of Economic Development and Commerce of Puerto Rico, created by virtue of this Act, in charge of developing and disseminating the public policy on energy of the Government of Puerto Rico. Any reference made in this Act to the 'Commonwealth Energy Public Policy Office' or 'CEPPO' shall be construed as a reference to the Energy Public Policy Program of the Department of Economic Development and Commerce.

(ii)    'Independent Consumer Protection Office'. - Shall mean the entity created by virtue of this Act to assist and represent customers of services under the jurisdiction of the Public Service Regulatory Board attached to the Public Service Regulatory Board by virtue of the Reorganization Plan of the Puerto Rico Public Service Regulatory Board.

(jj)    ...

(kk)    ...

(ll)    'Integrated Resource Plan' or 'IRP'. - Shall mean a plan that considers all reasonable resources to satisfy the demand for electric power services during a period of twenty (20) years, including those related to the offering of electric power, whether existing, traditional, and/or new resources, and those related to energy demand, such as energy conservation and efficiency or demand response and localized energy generation by the customer. Every integrated resource plan shall be subject to the rules established by PREB and approved by the same. Every plan shall be devised with broad participation from citizens and other interested groups.

(mm) 'Power Plant'. - …

(nn)    'Electric Power Grid'. - Shall mean the electric power transmission and distribution infrastructure of the Government of Puerto Rico which is operated, supported, and administered by the Authority or Electric Service Company.

(oo)    ...

(pp)    ...

(qq)    ...

(rr)    'Wheeling Rate'. - Shall mean a just and reasonable amount of money that shall be charged to a power producer for using the Authority's transmission and distribution facilities for wheeling and for the right to interconnect the electrical power generation facility of such power producer to the electric power grid of Puerto Rico.

(ss)    ...

(tt) 'Energy Transmission'. - Shall mean moving electric power from one power plant or facility, microgrid, energy or electric cooperative, or any other system to a power substation through networks, lines, transformers, and any other infrastructure necessary to transport the same at voltage levels higher than 13.2 kV throughout Puerto Rico.

(uu)   'Wheeling'. - Shall mean the transmission of electricity from an independent power producer to the end consumer through Puerto Rico's electric power grid and which does not constitute distributed generation through any net metering mechanism.

(vv)   ..."

Section 5.3.- Section 1.4 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 1.4.- Principles of Transparency and Accountability.

(a)     In accordance with the public policy established in Section 1.2 of this Act, every information, data, delivered demand, statistics, reports, plans, and documents received and/or disclosed by any of the entities created under this Act, the Authority, its successor, the transmission and distribution network Contractor, and every electric power company shall be subject to the following principles:

(1)    ...

 (b)    ..."

Section 5.4.- Section 3.4 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 3.4.- Duties and Powers of the Department of Economics Development and Commerce.

Through the Secretary, the Department of Economics Development and Commerce shall have the following duties and powers:

(a)     Implement and develop the public policy on energy of the Government of Puerto Rico through regulations, in all areas that are not in conflict with the regulatory jurisdiction of the Energy Bureau attached to the Public Service Regulatory Board. These regulations shall be consistent with the public policy on energy established by legislation;

(b)     Shall be the spokesperson and advisor of the Governor of Puerto Rico in any issue related to the public policy on energy, including all matters related to emergencies as established in Section 3.6 of this Act;

(c)     Shall advise the Governor of Puerto Rico, the agencies, public instrumentalities, and political subdivisions of the Government, institutions, and the general public on the technological, scientific, socioeconomic, and legal aspects germane to the generation, distribution, transmission, use, and consumption of energy in Puerto Rico;

(d)     Make recommendations to the Energy Bureau about the rules that shall regulate every company under its jurisdiction, as well as any transaction, action, or omission that has an impact on the electric power grid and infrastructure of Puerto Rico;

(e)     ...

(f)     Develop, establish, and require public and private entities to implement and comply with the policies related to energy resources planning;

(g)     Collaborate with the Energy Bureau in developing short-, medium-, and long-term energy conservation plans for Puerto Rico, and oversee the development and implementation thereof;

(h)     ...

(i)     ...

(j)     Establish through regulations the minimum efficiency requirements that the equipment and materials acquired by the Government of Puerto Rico and all its instrumentalities must meet;

(k)     ...

(l)     ...

(m)     Gather and present to the Energy Bureau all information from the agencies, instrumentalities, and public corporations, from the Judicial Branch and its respective offices and from the municipal governments of Puerto Rico, on the implementation of energy efficiency measures, compliance with the energy conservation standards established by law, and the results of the implementation of said measures and standards;

(n)     ...

(o)     Assist in identifying the appropriate technologies and the sites that shall make the integration of renewable energy into the power grid feasible in accordance with the best interests of Puerto Rico, and submit its conclusions to the Energy Bureau;

(p)     ...

(q)     Conduct and carry out investigations about electric power companies as requested by the Energy Bureau through resolution;

(r)     ...

(s)     File complaints with the Energy Bureau against natural or juridical persons or entities when it believes any action or omission inconsistent with the public policy on energy of the Commonwealth of Puerto Rico has been taken;

(t)     Appear before the Energy Bureau as a friend of the court or amicus curiae in adjudicative cases pending before it. At its discretion, the Department of Economic Development and Commerce may appear before the Energy Bureau motu proprio or upon a party's petition.

(u)     ...

(v)     ...

(w)     ...

(x)     ...

(y)     Promote collaboration agreements with academia for the creation and development of university programs and highly specialized fields aimed at providing training on regulatory and energy-related issues including, but not limited to, agreements with universities, research centers, or organizations with expertise in the energy field within and outside Puerto Rico, as well as to promote collaboration alliances with these institutions and entities for the development of projects and innovative initiatives on energy-related issues;

(z)     ...

(aa)    ...

(bb)    ...

(cc)    ...

(dd)    ...

(ee)    ...

(ff)    Request the aid of the Energy Bureau and/or the General Court of Justice in the event that any person or entity fails to comply with its regulations or orders;

(gg)    ...

(hh)    ...

(ii)    To formulate strategies and make recommendations to the Energy Bureau to improve the electric power service in low-income communities through the study, promotion, and development of Community Solar Projects, using as guidelines the recommendations made by organizations such as the Interstate Renewable Energy council (IREC) and the National Renewable Energy Laboratory

(NREL), adapted to Puerto Rico, and seeking the input of the electric power company in charge of operating electrical system and the representatives of community organizations as well as relevant professional, and academic organizations.

(jj) The Department of Economic Development and Commerce shall collaborate with the Energy Bureau and energy companies to study the best practices of the electric power industry and establish a plan for the development of microgrids in Puerto Rico. To minimize costs and broaden access to greater physical and human resources, the Department of Economics Development and Commerce may form partnerships with local or federal agencies, or recognized universities or institutes engaged in electric power research, inside and outside of Puerto Rico, to carry out this task. Initially, this option shall be made available to low-income communities, universities, healthcare centers, and public institutions;

(kk) The Department of Economic Development and Commerce shall advise the Energy Bureau on the format and specific information to be shared by each microgrid.

(ll) Before each hurricane season, the Department of Economic Development and Commerce through the Energy Public Policy Program shall coordinate with the agencies and instrumentalities of the Government of Puerto Rico a revised Energy Assurance Plan providing for the establishment of a standardized Incident Command System (ICS) and Incident Management Team (IMT). This function may be assumed by a Contractor under a Partnership Contract awarded pursuant to Act No. 120-2018, as amended."

Section 5.5.- Section 4.1 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 4.1.- Energy Savings in the Instrumentalities of the Executive Branch and the Offices of the Judicial Branch.

(a)    ...

(b)    It shall be the duty and responsibility of all agencies, public corporations, and instrumentalities of the Executive Branch and of the offices of the Judicial Branch to implement strategies directed to reduce the consumption of electric power in the instrumentalities and facilities under their jurisdiction. For such purposes, the agencies, public corporations, and instrumentalities of the Executive Branch and the offices of the Judicial Branch shall execute and implement those measures and initiatives that reduce the total annual electric power consumption in accordance with the annual per-sector compliance goals established by the Energy Bureau for the purpose of achieving the goal established in Section 6.29B of this Act.

(c)    Agencies, instrumentalities, and public corporations, as well as the offices of the Judicial Branch, in coordination with the Energy Public Policy Program, academia, professional associations with expertise in the energy field, and universities shall be entrusted with the planning and implementation of initiatives related to the use of energy in public or leased buildings, as well as with the establishment of a program to maximize the efficient use of energy in all buildings, which shall include, but shall not be limited to, one or several of the following measures:

(1)    ...

(7)    ...

(d)    Within one hundred eighty (180) days after the approval of the rules and guidelines established by the Energy Public Policy Program for such purposes, the agencies, instrumentalities, and public corporations of the Executive Branch as well as the offices of the Judicial Branch shall submit to the Energy Public Policy Program, an action plan stating in detail its annual energy consumption reduction goals, in percentage, using the baseline energy consumption, based on kilowatt-

hours consumed. The Energy Public Policy Program shall oversee the energy consumption reduction goals of the Government of Puerto Rico; advise the agencies, public corporations, and instrumentalities of the Executive Branch and the offices of the Judicial Branch in drafting and reviewing of plans in order to comply with the operating standards adopted hereunder, and oversee the use of energy and costs by agencies, instrumentalities, and public corporations and offices. Each quarter, PREPA shall produce and submit to the Energy Public Policy Program the information regarding the electric power consumption of every agency, instrumentality, and public corporation of the Executive Branch and offices of the Judicial Branch.

(e)     Energy Savings Performance Contracts.- In order to comply with the purposes of this Act, the Judicial Branch and every agency, instrumentality, or public corporation of the Executive Branch shall, as a strategy, enter into Energy Savings Performance Contracts (ESPCs), with a qualified energy service provider, as the first alternative to achieve savings in energy, or operating and maintenance costs, as established in Act No. 19-2012, as amended, known as the 'Energy Savings Performance Contracts Act.' If, after a cost-effective analysis regarding the composition and features of the buildings that house facilities of public entities, the entity determines that it is extremely onerous to comply with this provision, it may request an exemption to such effect to PREB. If an agency deems that it is onerous, or that the implementation of a strategy involving an energy savings performance contract is not cost-effective, it shall certify said fact to the Department of Economic Development and Commerce of Puerto Rico and shall notify the measures it shall adopt to ensure compliance with the provisions of this Act. Any energy savings measure implemented under an energy savings performance contract shall comply with local building codes and the appropriate regulations of the Energy Public Policy Program of the Department of Economic Development and Commerce of Puerto

Rico. The Department of Economic Development and Commerce of Puerto Rico, through the Energy Public Policy Program, shall be in charge of approving the regulations needed for the adoption of these types of agreements, in coordination with the pertinent agencies.

(f)    ...

(g)    ...

(h)    ...

(i)    Noncompliance with the energy savings plan: Every agency, instrumentality, or public corporation of the Executive Branch that fails to comply with its annual energy consumption reduction goals, as established in the action plan required by virtue of subsection (c) of this Section, shall have, as penalty, a budgetary cut on the following fiscal year. Thus, the Public Policy Program shall notify any noncompliance with the energy consumption reduction goals to the Office of Management and Budget before preparing the budget for the fiscal year. The budget cut shall be equal to the amount used, measured in kilowatt-hours, in excess of the goal established in the plan submitted to the Department of Economic Development and Commerce of Puerto Rico for that particular year, multiplied by the electricity rate charged by the Authority, its successor, or the transmission and distribution network Contractor as of July of the previous year. The budget cut shall be deposited in the Green Energy Fund of Puerto Rico created by virtue of Act No. 83-2010, as amended, known as the 'Green Energy Incentives Act of Puerto Rico' or similar provisions in incentive laws.

The Department of Economic Development and Commerce of Puerto Rico, through the Energy Public Policy Program, shall be the entity responsible for overseeing compliance with the government energy efficiency standards and, as such, shall bring any action before PREB, or before the Courts to achieve the purposes established herein, as the case may be.

(1)　...

(2)　...”

Section 5.6.- Section 4.2 of Act No. 57-2014, as amended, is hereby amended to read as follows:

“Section 4.2.- Energy Savings in the Legislative Assembly.

(a)　It shall be the duty and responsibility of the Legislative Assembly to implement strategies aimed at reducing electric power consumption in offices and facilities under its jurisdiction. To such ends, the Legislative Assembly shall take any actions and measures geared toward reducing the annual consumption of electric power, taking into account the savings percentage stated below:

(1)　...

(7)　For the seventh year of effectiveness of this Act, savings shall be twelve percent (12%) of the baseline energy consumption which shall be the energy usage corresponding to fiscal year 2012-13, based on kilowatt-hours consumed, according to PREPA’s records.

(8)　From the eighth year and every year thereafter after the effective date of this Act, the Legislative Assembly shall continue efforts and initiatives to reduce electric power consumption in accordance with the annual consumption goals established by the Energy Bureau for the Legislative Assembly in order to achieve the goal established in Section 6.29B of this Act.

(b)　Noncompliance with the Energy Savings Plan.- Within a term that shall not exceed one hundred eighty (180) days after the date of approval of this Act, the Legislative Assembly shall complete an inventory of all connections to the electric power system serving it and the offices serviced by each electrical connection. The Legislative Assembly shall establish, through an executive order issued by the presiding officers of both Houses, the offices which shall be responsible for each connection. The offices thus charged with each connection shall be responsible for

meeting the savings goals established in this Section. The inventory of connections shall be published on the websites of the House of Representatives and the Senate of Puerto Rico. Any office of the Legislative Assembly that fails to comply with the savings percentage rate established in subsection (a) of this Section shall have, as penalty, a budgetary cut on the following fiscal year. Thus, the Energy Public Policy Program shall notify any noncompliance with the energy consumption reduction goals to the Office of Management and Budget before preparing the budget for the fiscal year. The budget cut shall be equal to the amount of the usage, measured in kilowatt-hours, in excess of the savings percentage rate established in subsection (a) for that particular year, multiplied by the electricity rate charged by the electric power supplier for July of the previous year. The budget cut shall be deposited in the Green Energy Fund of Puerto Rico created by virtue of Act No. 83-2010, as amended, known as the 'Green Energy Incentives Act of Puerto Rico' or similar provisions in incentive laws.

(c)    Every six (6) months, the offices of the Legislative Assembly shall publish an itemization of their energy consumption and how the same compares with the savings projections required under subsection (a) of this Section. At the beginning of each fiscal year, it shall also publish a comparative chart on energy consumption for the previous three (3) years, as well as a list of the initiatives that were implemented to comply with the energy savings mandate set forth in this Section. This information shall be published on the website of each office of the Legislative Assembly and shall also be submitted to the Bureau.

(d)    ..."

Section 5.7.- Section 4.3 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 4.3.-  Energy Savings in the Municipal Governments.

(a)     PREPA shall bill and charge municipalities for the electric power service, in accordance with the provisions of Section 22 of Act No. 83 of May 2, 1941, as amended. It shall be the duty of every municipal government to implement strategies aimed at reducing electric power consumption in the offices and facilities under its jurisdiction, as well as to promote the greatest energy efficiency possible, in accordance with the annual compliance goals established by the Energy Bureau for the purpose of achieving the goal established in Section 6.29B of this Act.

(b)     Every municipality, whose electric power consumption provided by the Authority exceeds the baseline energy consumption established in accordance with Section 2.10 of this Act, shall be responsible for paying PREPA the amount corresponding to the excess. The consumption excess shall be billed to the corresponding municipality by PREPA and such bill shall be paid following the regular debt collection process established by law.

(c)     The Energy Bureau shall have primary and exclusive jurisdiction to address any case and dispute involving noncompliance by any municipality with the duties and obligations established in Section 22 of Act No. 83 of May 2, 1941, as amended.

(d)     ..."

Section 5.8.- Chapter VI of Act No. 57-2014, as amended, is hereby amended to read as follows:

"CHAPTER VI.-   Creation, Structure, Operation, Budget, and General Powers of the Energy Bureau."

Section 5.9.- The content of Subchapter A of Chapter VI and Sections 6.1 and 6.2 of Act No. 57-2014, as amended, are hereby eliminated and reserved.

Subchapter A.- Reserved

Section 6.1.-  Reserved

Section 6.2.- Reserved.

Section 5.10.- Section 6.3 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.3.-  Powers and Duties of the Energy Bureau.

The Energy Bureau shall have the following powers and duties:

(a)     Oversee and ensure the execution and implementation of the public policy on the electric power service in Puerto Rico;

(b)     Establish by regulations the public policy rules regarding electric power service companies, as well as any transaction, action or omission in connection with the electric power grid and the electric power infrastructure of Puerto Rico, and implement such public policy rules. These regulations shall be consistent with the public policy on energy set forth through legislation;

(c)     Establish and implement regulations and the necessary regulatory actions to guarantee the capacity, reliability, safety, efficiency, and reasonability of the rates of Puerto Rico's electrical system, and establish the guidelines, standards, practices, and processes to be followed to purchase power, modernize power plants or electric power generation facilities; provided, that every power purchase agreement shall meet the standards, terms, and conditions established by PREB in accordance with the provisions of the Energy Public Policy Act and this Act;

(d)     Oversee the quality, efficiency, and reliability of the electric power services provided by any electric power company certified in Puerto Rico to ensure a robust network that addresses the needs of the Island;

(e)     Guarantee universal access to electric power service and ensure nondiscrimination in the offering or provision of electric power service by reason of race, color, sex, sexual orientation, gender identity, birth, origin, social status,

physical or mental disability, political or religious beliefs, military or veteran status, or for being a victim or being perceived as a victim of domestic violence, sexual assault, or stalking;

(f)      Formulate and implement strategies to achieve the objectives of this Act including, but not limited to, attaining the goal of reducing and stabilizing energy costs permanently, controlling volatility in the price of electricity in Puerto Rico, establishing demand response programs, Renewable portfolio standard and energy efficiency standards, and promoting the storage of energy and integration of distributed generation, among others. In exercising its powers and authorities, the Energy Bureau shall require that the prices included in any power purchase agreement, any wheeling rate, and interconnection charge are just and reasonable, consistent with the public interest, and compliant with the parameters established by the Bureau through regulations;

(g)      Regulate the wheeling mechanism in Puerto Rico in accordance with the applicable laws;

(h)      Establish short-, medium-, and long term demand response programs through effective incentive mechanisms for consumers that facilitate a change in their behavior.

(i)      Establish energy efficiency mechanisms and programs to gradually reach reasonable goals that ensure compliance with the energy public policy.

(j)      Establish performance-based incentives and penalty mechanisms.

(k)      ...

(l)      ...

(m)      ...

(n)     Review and approve and, if applicable, modify the rates or fees charged by electric power service companies or the transmission and distribution network Contractor in Puerto Rico in connection with any matter directly or indirectly related to the provision of electric power services;

(o)     ...

(p)     Ensure that the powers and authorities exercised by PREB over the Authority, its successor, or the transmission and distribution network Contractor, energy companies and any natural or juridical person that has benefited or may benefit from Puerto Rico's electrical system, including those related to rate review or approval, guarantee that the Authority meets its obligations to bondholders;

(q)     Promote that the Authority's or its successor's debt issues be in the public interest. Have the prior written approval of the Energy Bureau for any public debt issue by the Authority and the proposed use for such financing. The Authority or the Puerto Rico Fiscal Agency and Financial Advisory Authority (FAFAA) shall notify PREB of any proposed debt issue at least ten (10) days before the publication date of the preliminary official statement. PREB shall evaluate and approve that the use to be given to the proceeds of the proposed debt issue is consistent with the Integrated Resource Plan. Said approval shall be issued in writing not later than ten (10) days as of the Authority's or the Puerto Rico Fiscal Agency and Financial Advisory Authority's notification to PREB of the proposed debt issue. Within said ten (10)-day period, PREB shall submit a report of its evaluation to both Houses of the Legislative Assembly. If, upon conclusion of said ten-day period, PREB fails to notify its approval or rejection to the proposed debt issue, the Puerto Rico Fiscal Agency and Financial Advisory Authority may continue with the bond issue process. None of these provisions shall apply to bond issues that[sic] promulgated in accordance with Chapter IV of the 'Electric Power Authority Revitalization Act' or

subject to authorization under Title III or Title VI of PROMESA, Public Law No. 114-87.

(r)     Appoint and hire specialized personnel to exercise its powers and duties;

(s)     ...

(t)     Determine and require the type of statistical and numerical information that the electric power company responsible for operating the electrical system shall post every day on its website to keep citizens constantly informed of energy affairs including, but not limited to, the daily peak demand in Puerto Rico, the daily delivery of energy per energy company or electric power generation facility or plant, the percentage of distributed generation, the cost of electricity generation per kWh, and any other necessary information or data in connection with the administration of the electric power grid and the operations of electric power transmission and distribution in Puerto Rico;

(u)     Oversee compliance with any mandatory standard or goal under the Renewable portfolio standard imposed by legislation or regulations;

(v)     ...

(w)     Review and approve proposals to the interconnection regulations and minimum technical requirements (MTRs), additional technical requirements (ATRs), and any other type of requirement established for the interconnection of distributed generators and microgrids to the electric power grid, and oversee compliance therewith;

(x)     Establish efficiency parameters or standards for the facilities or plants of any electric power generation company, microgrids or energy cooperatives to guarantee the efficiency and reliability of the electric power service, or any other efficiency parameter that is consistent with the best practices in the electric power industry, as deemed necessary by the Energy Bureau and recognized by

governmental and nongovernmental organizations specialized in electric power service, and oversee compliance therewith;

(y)     ...

(z)     ...

(aa)    ...

(bb)    ...

(cc)    ...

(dd)    Review and approve the optimum energy reserve margin needed for Puerto Rico and ensure compliance therewith;

(ee)    ...

(ff)    ...

(gg)    ...

(hh)    ...

(ii)    ...

(jj)     Identify and form partnerships with international organizations or associations specialized in energy affairs and regulations that are willing to collaborate and provide the Energy Bureau with assistance in the execution of its powers and functions; including, but not limited to, using the personnel of the Public Service Commission or similar entities of other jurisdictions in the United States or abroad through the National Association of Regulatory Utility Commissioners (NARUC) or any other similar entity.

(kk)    Appear before any private entity, public organization, court, board, committee, administrative organization, department, office or agency of the Governments of Puerto Rico or the United States in any hearing, proceeding, or matter that affects or could affect the objectives, powers, or duties of the Energy Bureau, the regulations it promulgates or the interests of electric power service customers;

(ll)     ...

(mm) Enter into contracts and subcontracts for any lawful purpose in order to comply with the energy public policy, and to carry out specialized tasks without forgoing its government function and responsibility, which includes contracting the professional services of consultants, economists, and lawyers, among other professional services, to assist it in its regulatory and oversight function;

(nn)  Sue and be sued in complaints or causes of action in its own name against any natural or juridical person that fails to meet or interferes with the requirements, purposes, and objectives of this Act before the Court of First Instance of the Government of Puerto Rico or any other administrative forum of the Government of Puerto Rico. For such purposes, the Bureau shall have legal standing to bring the necessary action including, but not limited to, requesting a contempt order against any natural or juridical person that fails to comply with the mandates contained under the jurisdiction of the Energy Bureau, before a judicial forum to ensure full compliance with the public policy set forth in this Act;

(oo)  Adopt the rules, orders, and regulations needed to carry out its duties, issue orders, and impose fines to comply with the powers granted by law, as well as for the implementation of this Act. These regulations shall be adopted in accordance with Act No. 38-2017, as amended, known as the 'Government of Puerto Rico Uniform Administrative Procedure Act';

(pp)  File any recourse, issue orders, and seek and grant any legal remedies that may be necessary to enforce the provisions of this Act, as well as its rules, regulations, orders, and determinations. For instance, among the actions and remedies that PREB may take and grant are the following:

(1)     ...

(4)     ...

(5)    Contract or subcontract, chargeable to the responsible natural or juridical person, to perform any act under the provisions of this Act, the regulations of PREB, the Authority or its successor, or the transmission and distribution network Contractor; or any order to an energy company; or any other provision of law the interpretation and enforcement of which are under the jurisdiction of the Energy Bureau and that has not been performed as provided by law, regulation, or order;

(6)    ...

(7)    To require the production and inspection of records, inventories, documents, and physical facilities of any persons, juridical entities, and energy cooperatives subject to the jurisdiction of PREB or the Energy Public Policy Program of the Department of Economic Development and Commerce;

(qq)   ...

(rr)   Review the final determinations of electric power companies with regard to complaints and requests for investigations submitted by its customers. All PREB orders shall be issued on behalf of the Puerto Rico Energy Bureau and the Puerto Rico Public Service Regulatory Board. All actions, regulations, and determinations of PREB shall be governed by the applicable laws, the public interest, and the interest of protecting the rights of customers or consumers. The provisions of this Act shall be construed liberally in order to achieve its purposes, and whenever a specific power or authority is granted to PREB, the same shall not be construed as to exclude or impair any other power or authority otherwise conferred thereto. PREB, created herein shall have, in addition to the powers specified in this Act, all those additional, implicit, and incidental powers that are pertinent and necessary to enforce and carry out, perform, and exercise all the aforementioned powers, and to achieve the purposes of this Act.

(ss)    PREB, in conjunction with the Energy Public Policy Program of the Department of Economic Development and Commerce and electric power companies, shall evaluate and make determinations regarding the interconnection of distributed renewable energy and large-scale renewable energy to the transmission and distribution system in order to ensure access thereto justly and equitably.

(tt)    PREB, in conjunction with the Energy Public Policy Program of the Department of Economic Development and Commerce and the Independent Consumer Protection Office, as well as the comments of interested persons and organizations shall establish the regulatory framework that shall guide the development of regulations for community solar projects and microgrids.

(uu)    PREB, with the advice of electric power companies shall determine the maximum capacity and other requirements for community solar projects, using as guidelines the recommendations of organizations such as IREC and NREL adapted to Puerto Rico.

(vv)    PREB shall conduct a study to determine, establish, and regulate specific energy storage goals that address Puerto Rico's needs.

(ww) Oversee compliance with vegetation management programs to be implemented by the Authority or its successor, or the transmission and distribution network Contractor, in accordance with the best practices of the industry to protect the network.

(xx)    Oversee that electric power companies adopt cybersecurity measures to effectively prevent and manage cyberattacks that may affect information technology networks and operations in accordance with the industry recognized practices."

Section 5.11.- Section 6.4 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.4.-  Jurisdiction of the Energy Bureau.

(a)     The Energy Bureau shall have primary and exclusive jurisdiction over the following affairs:

(1)     The approval of rates and charges charged by energy companies or independent power producers in connection with any electric power service, in accordance with the provisions of Section 6.25 of this Act, as well as in cases and disputes related to the rates that the energy companies charge to its residential, commercial, or industrial customers, and any case or dispute related to the rates or charges imposed by any independent power producer.

(2)     Cases and disputes related to the review of the electricity bills sent by electric power companies to its customers for electric power services.

(3)     Cases and disputes regarding noncompliance with the public policy on energy of the Government of Puerto Rico as set forth in the "Puerto Rico Energy Public Policy Act" and the code of laws in effect.

(4)     Cases and controversies claiming noncompliance with the mandates of Act No. 83 of May 2, 1941, as amended, known as the 'Puerto Rico Electric Power Authority Act,' and any of the mandates of the 'Puerto Rico Energy Public Policy Act,' with regard to the electric power service or energy-related matters.

(5)     Cases and disputes regarding wheeling or electric power interconnection with the transmission and distribution network, and any person that is connected, or wishes to connect to the electric power grid in Puerto Rico or any person with a direct or indirect interest in these electric power services.

(6)     Cases and disputes regarding agreements between the Authority, its successor, or the transmission and distribution network Contractor, independent power producers, and energy companies as well as cases and disputes between independent power producers. This includes, but shall not be limited to, power purchase agreements whereby an independent power producer agrees to provide electric power to an energy company to be distributed, and cases in which the reasonableness of the interconnection charges or of the terms and conditions of a power purchase agreement are questioned.

(b)     The Energy Bureau shall have general jurisdiction over the following matters:

(1)     ...

(5)     ...

(c)     Complaints for noncompliance with the public policy on energy.

(1)     At the request of any affected party with legal standing, and as provided in this Act, PREB, may address complaints alleging or claiming that an electric power service company is not complying with the public policy on energy of the Government of Puerto Rico set forth in the "Puerto Rico Energy Public Policy Act" and the current rule of law. Likewise, PREB may address those complaints regarding legal transactions or acts related to the purchase of energy or fuel; agreements between the Authority or its successor, the transmission and distribution network Contractor, independent power producers, and energy companies; cases and controversies among them; wheeling rates and interconnection charges; and cases and controversies regarding wheeling or electric power interconnection between the Authority, its successor or its subsidiaries or the transmission and distribution network Contractor, and any person that is connected, or wishes to connect, to the electric power grid within the Government of Puerto Rico, or any person with a direct or indirect interest in these electric power services.

(2)  …

(3)  ...

(d)  ...”

Section 5.12.- Section 6.6 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.6.- Commissioners.

(a)  ...

(b)  ...

(c)  No commissioner may participate in any matter or dispute in which a party to such matter or dispute is a natural or juridical person with whom he has had a contractual, professional, work, or fiduciary relation within two (2) years before his appointment. Furthermore, no commissioner shall represent, after ceasing his functions, any person or entity before the Energy Bureau within two (2) years following his separation from office. Any actions taken by a commissioner in discharging his duties shall be subject to the restrictions provided in Act No. 1-2012, known as the 'Puerto Rico Government Ethics Act of 2011,' as amended.

(d)  Commissioners shall refrain from participating in political activities or in activities related to political parties, without impairment of their right to vote. Without excluding any other activities that, due to their political nature, are prohibited to them, Commissioners shall not:

i.  Participate in political campaigns of any kind or in meetings, gatherings, assemblies, conventions, primaries or other events of a political-partisan nature.

ii.  Hold office in political bodies or parties.

iii.  Make monetary contributions, directly or indirectly, to political candidates, entities or parties.

iv.     Endorse candidates for elective offices or government appointments, or political leaders.

v.     Make public expressions, comments, or statements on matters or acts of a political-partisan nature.

(e)     ...

(f)     ...

(g)     Each commissioner may hire and appoint one (1) administrative assistant and one (1) trusted advisor."

Section 5.13.- Section 6.7 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.7.- Powers and Duties of Commissioners.

The Commissioners shall have the following powers and duties:

(a)     To act as the governing body of PREB;

(b)     ...

(j)     Hire and appoint personnel to career and trust positions as necessary for the operations and functioning of PREB, which shall be governed by the rules and regulations promulgated by PREB in accordance with Act No. 8-2017, as amended, known as the 'Government of Puerto Rico Human Resources Transformation Act.' However, the mobility principle established in Section 6.4(4) of Act No. 8-2017, as amended, shall not apply to PREB personnel. The recruitment and appointment of personnel shall not be subject to approval by any Executive Branch agency. In the qualification and the description of the duties of the positions, the personnel system shall be organized so as to promote the recruitment of skilled and trained staff through a competitive process that enables compliance with the purposes of this Act. Any recruitment process shall be carried out with the support of the Executive Director of the Bureau;

(k)     Hire trust employees, the number of which shall not be greater than twenty-five percent (25%) of the total number of positions in PREB. This limitation shall not apply to commissioners who, in accordance with this Act, are authorized to hire one (1) administrative assistant and one (1) trust employee per commissioner as expert advisor. Employees holding positions of trust shall be selected taking into consideration the capability, education, and professional experience required to ensure an effective performance of the duties of the position. No employee of PREB, be it of trust or career, may have any relationship within the degrees provided in Act No. 1-2012, known as the 'Government Ethics Act of 2011,' as amended, with the Chair, associate members, or Executive Director of the PSRB, or with PREB Commissioners. Any recruitment process shall be carried out with the support of the Executive Director of the Bureau."

Section 5.14.- Section 6.8 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.8.- Executive Director of the Energy Bureau.

(a)     A majority of the commissioners shall select the Executive Director of the Bureau based on his proven education and professional experience in energy-related matters or public administration.

(b)     The Executive Director and the members of his family unit, as defined in Act No. 1-2012, as amended, known as the 'Government Ethics Act of 2011,' shall not have any direct or indirect interest in, nor contractual relation whatsoever with the Authority or its successor, subsidiaries, the transmission and distribution network Contractor and/or any other certified electric power company subject to the jurisdiction of the Energy Bureau, nor in entities within or without Puerto Rico affiliated to or with interest in the Authority or its successor, subsidiaries, the transmission and distribution network Contractor, or said companies. Once his functions have ceased, the Executive Director shall not represent any person or entity

before said Bureau in relation to any issue in which he participated while serving on the Bureau, or with respect to any other issue within two (2) years after separation from office. Any action taken by the Executive Director in discharging his duties shall be subject to the restrictions provided in Act No. 1-2012, as amended, known as the 'Government Ethics Act of 2011.'

(c)     The Executive Director shall have the following duties:

(1)     Coordinate with the President of the Energy Bureau all that pertains to administrative and clerical support in areas such as finance, procurement, accounting, and in any administrative task other than formulating or implementing public policy;

(2)     ..."

Section 5.15.- Section 6.11 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.11.-  Delegation of Powers.

(a)     ...

(b)     Hearing Officers.-

PREB shall have the authority to refer or delegate any adjudicative matter to hearing officers. PREB shall assign and distribute among its hearing officers the tasks and matters to be delegated by PREB, after which the hearing officers shall be responsible for issuing recommendations regarding the adjudication of the case or a procedural incident subject to PREB's assignment, referral, or delegation. In issuing a decision, PREB shall have full discretion to accept or reject the recommendations of hearing officers. Any hearing officer appointed to preside over a hearing or investigation shall have the powers expressly delegated to him by PREB in the designation order. Hearing officers shall be designated and shall carry out their duties as provided in Act No. 38-2017, as amended, known as the 'Government of Puerto Rico Uniform Administrative Procedure Act.'

(c)     Administrative Judges.-

As provided in this subsection, PREB shall be empowered to delegate to administrative judges, with full decision-making powers, the adjudication of any matter, case, and dispute on behalf of PREB, as these may be delegated in accordance with the provisions of this subsection. Administrative judges may be trust employees or contractors of PREB. PREB shall be empowered to assign and distribute among the administrative judges the issues, cases, or disputes delegated in accordance with the provisions of this subsection. In exercising its discretion, the Energy Bureau may delegate to administrative judges cases and disputes related to the review of customers' electricity bills; cases and disputes alleging noncompliance by an electric power service company with the regulations of the Energy Bureau in connection with the quality of the services provided to its customers; cases and disputes alleging noncompliance by the Authority, its successor, subsidiaries, the transmission and distribution network Contractor or an electric power service company or customer with its obligations in connection with the interconnection of distributed generation systems or any other matter that PREB may provide. The Energy Bureau may delegate to its administrative judges any case or dispute in which the total value or cost of the remedies sought is twenty-five thousand dollars ($25,000.00) or less. Administrative judges shall be appointed and shall carry out their duties as provided in Act No. 38-2017, known as the 'Government of Puerto Rico Uniform Administrative Procedure Act.'"

Section 5.16.- Section 6.16 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.16.- Budget and Regulatory Fees.

(a)     The Energy Bureau shall impose and collect fees pursuant to the provisions of this Section in order to generate sufficient income to defray the operating and administrative expenses of the Bureau.

(b)     The annual fee shall be fixed by the Energy Bureau proportionally on the basis of the gross income generated by any person under its jurisdiction from the provision of electric power services, or electric power transmission services, as determined by the Energy Bureau. These fees shall be paid to the Energy Bureau on a quarterly basis, pursuant to the regulations promulgated by the same. The Energy Bureau shall review annually the fee to be imposed on persons under its jurisdiction, in accordance with this Section.

(c)     Every year, the Electric Power Authority shall set aside five million eight hundred thousand dollars ($5,800,000) from its income to be transferred to a special account created in the Department of the Treasury to defray the operating expenses of the Energy Bureau. The Authority shall annually remit from these resources the sum of two million nine hundred thousand dollars ($2,900,000) to the Department of the Treasury by July 15. The balance of the two million nine hundred thousand dollars ($2,900,000) shall be remitted to the Department of the Treasury by December 15 of each year. However, on Fiscal Year 2014-2015, the Authority shall pay the first installment of the annual fee, in the amount of two million nine hundred thousand dollars ($2,900,000) within ten (10) days after the approval of this Act. In addition, the Bureau shall charge the Authority or the Corporation for any services provided in relation to any request of the Corporation in connection with the evaluation and enforcement of a Restructuring Order or Creditors' Agreement, as well as any verifications made to ascertain compliance with the calculation of the Transition Charge and the Adjustment Mechanism approved under the Restructuring Order or Creditors' Agreement. To that effect, not later than sixty (60) days after receiving the Energy Bureau invoice, the Authority or its successor shall remit to the Energy Bureau, a sum that shall not exceed five hundred thousand dollars ($500,000) for the Energy Bureau's review of the Corporation's petition. Every year thereafter and not later than sixty (60) days after receiving the Energy Bureau's invoice, the

Authority shall remit to the Energy Bureau, a sum that shall not exceed one hundred thousand dollars ($100,000) for the verifications made by the Energy Bureau to ascertain compliance with the calculation of the Transition Charges and the Adjustment Mechanisms approved under the Restructuring Order or Creditors' Agreement. The Authority shall obtain the necessary funds to pay the Energy Bureau from the revenues arising from the subsidies item on its rate.

(d)     Any other person or electric power service company that earns profit from the rendering of electric power services as defined in this Act or as defined by the Energy Bureau shall pay a fee to the Bureau that shall not exceed point twenty-five percent (.25%) of its annual gross income earned from the provision of such services in Puerto Rico. No electric power service company that has entered into a power purchase agreement, an interconnection agreement, a wheeling agreement, or any other agreement for rendering electric power services with the Authority or its successor may claim a refund for or include the expenses incurred in connection with the annual fee paid to the Energy Bureau in the computation of rates, the capacity fee, energy fee or any other fee or sum of money that such electric power service company collects from the Authority or its successor under such power purchase agreement, interconnection agreement, or wheeling agreement or an agreement for rendering electric power services. This provision shall apply to any electric power company under the jurisdiction of the Energy Bureau; provided that the contractual obligations with existing cogenerators arising from any agreements that are in effect as of the approval of this Act are not impaired.

(e)     Beginning Fiscal Year 2019-2020, the annual budget of the Energy Bureau shall be twenty million dollars ($20,000,000) which shall be computed on the basis of a regulatory fee to be determined by the Bureau, from the annual gross income of the Electric Power Authority created by virtue of Act No. 83 of May 2, 1941, and electric power service Companies in Puerto Rico. The Electric Power

Authority or any electric power service company that operates the transmission and distribution network shall be required to collect from other electric power companies, pay and transfer the regulatory fee to the Energy Bureau as follows: a first payment of ten million dollars ($10,000,000) on or before July 1st of each year and a second payment of ten million dollars ($10,000,000) on or before January 1st of each year. Any delay in the payment of the regulatory fee shall entail a penalty equal to the interest rate applicable to private obligations as established by the Office of the Commissioner of Financial Institutions. The provisions of this Section shall apply to every electric power service Company under the jurisdiction of the Energy Bureau; provided that the contractual obligations to existing cogenerators under agreements in effect as of the effective date of this Act are not impaired. No agreement entered into under Act No. 120-2018, shall exempt contracting companies from the payment of the regulatory fee described in this Section.

(f)     The Secretary of the Treasury shall deposit in a special account denominated as the 'Special Energy Bureau Reserve Fund,' the moneys collected by virtue of this Act, which shall be used solely and exclusively to defray the operating expenses of the Energy Bureau and shall be deemed to be de jure allocated for such purposes. Beginning Fiscal Year 2019-2020, the funds collected by virtue of this Act shall be deposited in an account of the Energy Bureau.

(g)     Any person under the jurisdiction of the Energy Bureau shall submit the information required by the Energy Bureau in the manner and on the forms that the Energy Bureau prescribes so that it can identify the amount of the fees established under this Section.

(h)     Persons under the jurisdiction of the Energy Bureau shall comply with and satisfy the payment of the fees imposed within a term that shall not exceed thirty (30) days after notice to such purposes. Any delay in the payment of said fees shall be subject to the payment of interest and penalties as determined by the Energy

Bureau through regulations. The payment of such fees shall be made in the manner that the Energy Bureau specifies in any notice of fees.

(i)  The budget of the Energy Bureau shall be independent from the General Budget of the Government of Puerto Rico, the budget of any other entity, agency, instrumentality, or public corporation of the Government of Puerto Rico and shall not be subject to approval by the Executive/Governor or the Legislative Assembly. However, the Bureau shall be required to answer and furnish any information requested by any Executive agency with relevant authority or to any request of the Legislative Assembly, and shall ensure that its budget and expenditures are published in its webpage and that it readily accessible to the general public."

Section 5.17.- Section 6.22 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.22.- Information to be Filed with the Energy Bureau.

(a)  Every electric power service company and every transmission and distribution network Contractor shall submit the following information to the Energy Bureau, subject to the terms provided by the latter:

(1)  Plans that establish the parameters and goals of the company to meet the electricity and public policy needs of the Government of Puerto Rico within a specific time period;

(2)  Future operating budgets during the period of time determined by PREB through regulations;

(3)  ...

(4)  ...

(5)  ...

(6)     Reports describing applications for wheeling filed with the Authority or its successor and/or the transmission and distribution network Contractor and the results of the applications including the term and the percentage of approval;

(7)     Annual reports describing the conditions and maintenance of the transmission and distribution network; and

(8)     Any other specific information, data, document, or report that PREB may deem necessary in the exercise of its duties, as applicable to the electric power company."

Section 5.18.- Section 6.23 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.23.- Integrated Resource Plan.

(a)     The electric power company responsible for operating the Electrical System shall submit to PREB an Integrated Resource Plan (IRP) consistent with Section 1.9 of the Puerto Rico Energy Public Policy Act. The electric power company shall devise the IRP with the input of the companies that operate the power plants.

(b)     ...

(c)     ...

(d)     Upon the approval of the Integrated Resource Plan, the PREB shall supervise and oversee compliance therewith. The Integrated Resource Plan shall be reviewed and updated every three (3) years, in which case the electric power company responsible for operating the Electrical System shall submit to the PREB a proposal to modify and update the Integrated Resource Plan. The Bureau shall review and issue a final determination in accordance with the process established in Section 1.9 of the Energy Public Policy Act and the regulations adopted by the Bureau for such purposes. After issuing a final determination on the matter, the

Bureau shall post on its website a detailed report on compliance with the Integrated Resource Plan and the modifications made thereto after the review process. Provided, that in the event of a substantial change in energy demand or group of resources, the aforementioned review process shall be carried out before the three (3)-year period provided herein in order to address and/or mitigate the changes in energy demand or group of resources that are needed to supply energy demand. The Integrated Resource Plan review shall show the changes in the energy market conditions, changes in technology, environmental regulations, fuel costs, capital costs, the incorporation of generation based on renewable energy sources and the components of the electric power grid to comply with the Renewable portfolio standard, distributed generation, energy efficiency and other factors. "

Section 5.19.- Section 6.24 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.24.- Power to Investigate.

(a)    The Energy Bureau shall, from time to time, visit the facilities of certified electric power companies and investigate the necessary documents to verify compliance with the orders, rules, and regulations established by the Energy Bureau. The Energy Bureau may enter said facilities during reasonable hours to conduct tests and audits, and may install and use in said facilities any device needed to carry out its duties, as well as to take the necessary measures to ensure compliance with the established rules.

(b)    The Bureau may, at any time or place, (i) examine under oath, whether through a formal interview or summons, all officials and employees of a certified electric power company as well as the Puerto Rico Electric Power Authority Revitalization Corporation; (ii) require certified electric power companies, and the transmission and distribution network Contractor, as well as the Puerto Rico Electric Power Authority Revitalization Corporation, to produce any copies of any records,

documents, information, or data deemed necessary by the Energy Bureau to fulfill the responsibilities thereof under this Act, subject to any constitutional or statutory right, or applicable privilege; and (iii) issue summons requiring the appearance and testimony of witnesses to obtain the information needed to enforce the provisions of this Act. If any person refuses to comply with a summons of the Energy Bureau, the Bureau may resort to the Court of First Instance and request a court order compelling any person to appear before the Energy Bureau to give testimony, produce evidence, or both, in connection with the matters before its consideration. Summons may be served in the same manner as these are served under the applicable rules of civil procedure.

(c)    ...

(e)    ...”

Section 5.20.- Section 6.25 of Act No. 57-2014, as amended, is hereby amended to read as follows:

“Section 6.25.- Review of Electricity Rates.

(a)    In General.- The Energy Bureau shall be in charge of following the process established herein to review and approve the electric power service companies’ proposed rate reviews. The Energy Bureau shall ensure that all rates are just and reasonable and consistent with sound fiscal and operational practices that provide for a reliable and adequate service at the lowest reasonable cost. The regulations of the Energy Bureau for the rate review process shall comply with such principles.

(b)    Rate Review Process.

In the case of the Authority, its successor, or the transmission and distribution network Contractor, the rates in effect as of the approval of the Energy Transformation and RELIEF Act shall continue in effect until the same are reviewed

by the Energy Bureau in accordance with the provisions of the Energy Transformation and RELIEF Act.

The first rate review process shall begin no later than one hundred eighty (180) days after the date on which the Energy Bureau determines through resolution that the request of the Authority is complete. The provisions of this Section that, due to their nature, only apply to the Authority shall not apply to rate review requests submitted by certified companies. During any rate review process, the burden of proof shall lie on the requesting electric power service company to show that the proposed rate is just and reasonable, consistent with sound fiscal and operational practices that provide for a safe and adequate service at the lowest reasonable cost. The requesting electric power service company shall submit all the information requested by the Energy Bureau including, as applicable, but not limited to evidence and documents related to:

(1)    ...

(2)    direct and indirect costs related to the generation, transmission and distribution of energy, including marginal costs, stranded costs and costs attributable to the loss of energy due to theft or inefficiency;

(3)    ...

(4)    ...

(5)    the requesting electric power service company's capacity to improve the service provided and its facilities;

(6)    the conservation of energy and the efficient use of alternative energy resources and compliance with the Renewable portfolio standard;

(7)    ...

(8)    any other data or information that the Energy Bureau deems to be necessary to evaluate and approve rates.

(9)    citizen participation in the rate review process.

In the case of retail electricity suppliers, the approved rate shall be itemized in the electricity bill sent to the consumer so as to show each one of the charges that constitute such bill, in accordance with transparent bill requirements prescribed by the Bureau through regulations, which shall comply with the principles provided in Section 1.10 of the Puerto Rico Energy Public Policy Act and Section 6 of Act No. 83 of May 2, 1941, as amended. The Bureau shall approve a rate that: (i) allows electric power service companies to recover all operating and maintenance costs, capital investments, financing costs, statutory costs, as well as any other cost lawfully incurred in the provision of electric power services and that, except for statutory costs, have been determined by the Bureau to be prudent, reasonable, and consistent with the sound fiscal and operating practices which help provide a reliable service at the lowest possible cost; (ii) covers the costs of the contribution in lieu of taxes and other contributions and statutory subsidies; (iii) allows electric power companies to perform maintenance works and prudent capital investments as are necessary to provide electric power service in accordance with the parameters and quality standards established by the Energy Bureau; and (v)[sic] remains in effect for, at least, three (3)-year cycles, unless the Energy Bureau *motu proprio* decides to conduct a rate review.

In cases in which the rate includes fuel purchase adjustment and energy purchase adjustment clause, such clauses shall only include the portion of the charges directly related to fluctuations due to changes in the price of fuel and the purchase of energy, respectively, or that variable portion of the fuel and energy price that is not included in the base rate, as the case may be. No other expense or charge may be included under the fuel adjustment or energy purchase adjustment clause.

Every rate modification request approved by the Energy Bureau shall comply with subsection (c) of said Section.

...

(c)     Rate Modification.- Every rate modification request previously approved by the Energy Bureau shall be filed with the Energy Bureau. The request shall state the grounds for the modification, the effect of such modification on the revenues and expenditures of the requestor, and any other information requested by the Energy Bureau through regulations or resolution. The Energy Bureau may initiate, *motu proprio*, or at the request of the Independent Consumer Protection Office or any other interested party, the rate review process when it is in the best interest of customers. Any modification to a rate proposed, whether to increase or decrease the same, shall undergo a discovery and a public hearing process to be held by the Energy Bureau to determine whether the proposed change is just and reasonable and consistent with sound fiscal and operational practices that provide for a reliable and adequate service, at the lowest reasonable cost. The Energy Bureau shall provide an opportunity to allow the participation of ICPO, the Energy Public Policy Program, the citizens, and interested parties in the process. The review and the order issuance processes shall not exceed one hundred eighty (180) days from the Energy Bureau's determination by resolution that the rate review request is complete; provided, however, that the Energy Bureau may extend the review process for an additional term that shall not exceed sixty (60) days.

(d)     Temporary Rate Adjustment.- At the request of an electric power company, the Bureau may authorize an electric power service rate adjustment due to emergency or temporary events. Such request must be accompanied by all the documentation and information available that, in the judgment of the electric power company requesting it, warrants the temporary rate adjustment. The Bureau's preliminary determination authorizing or rejecting the proposed temporary rate adjustment shall be duly grounded, and issued and published not later than ten (10) days after the adjustment has been requested. If a temporary rate adjustment is approved, the Energy Bureau shall direct the requesting electric power company to

issue a public notice informing the change and explaining, in general terms, the reasons that led to such temporary rate adjustment. If it is determined that a temporary rate adjustment is warranted, the Bureau shall hold public hearings within a term that shall not exceed thirty (30) days from the effective date of the temporary rate adjustment, where the requesting company and the general public shall have the opportunity to present evidence or expert testimony and documentary evidence supporting their respective positions. The Bureau shall issue a final determination as to whether a temporary rate adjustment is warranted within a term not to exceed sixty (60) days after the hearing process ends. If it is determined that the temporary rate adjustment is warranted, the Bureau shall fix the duration and amount thereof. If the temporary rate adjustment is rejected, the Bureau shall determine whether the rates shall be adjusted for consumers to offset any difference resulting from the period in which the preliminary temporary rate adjustment was in effect. Failure to hold the public hearings shall render the temporary rate adjustment void. The effective term of temporary rate adjustment shall not exceed one hundred eighty (180) days as of the authorization thereof by the Bureau. The temporary rate adjustment herein established herein shall not be considered as a temporary rate.

(e)     Temporary Rate.- Within thirty (30) days after the filing of the rate modification request, the Energy Bureau may make, motu proprio, or at the request of a requesting certified company, a preliminary evaluation to determine whether a temporary rate should be established. The Energy Bureau shall exercise its discretion in establishing the temporary rate, unless the requestor contests the establishment of the temporary rate or the amount thereof, in which case the Energy Bureau shall decide whether it shall revise the amount of the temporary rate or desist from establishing the same. If the Energy Bureau establishes a temporary rate, such rate shall take effect sixty (60) days after the date of approval of the temporary rate, unless the Energy Bureau determines, at the request of the requestor, that the

temporary rate should take effect earlier, but never within less than thirty (30) days after the approval of the temporary rate. Said temporary rate shall remain in effect during the period of time needed by the Energy Bureau to evaluate the rate modification request proposed by the requestor and up to the date on which the new bill is implemented, which shall not exceed sixty (60) days after the approval thereof.

(f)  Final Determination of the Bureau.- Upon concluding the public hearing process, the Energy Bureau shall issue its final determination with regards to the rate review request and establish the electricity rate it deems just and reasonable. Such a determination shall be duly grounded and comply with all the safeguards of the due process of law applicable to the final determinations of administrative agencies. The Bureau shall publish and notify its determination on its webpage, together with the authorized rate duly itemized pursuant to the transparent bill requirements. The newly approved rate shall take effect sixty (60) days after the effective date of the Bureau's order. The Energy Bureau may extend or reduce such term at the request of the rate change requestor, but it shall never be less than thirty (30) days after the effective date of the Bureau's order. Upon issuing a final order after the rate review process, the Energy Bureau shall direct the requesting company to adjust customers' bills so as to credit or charge any discrepancy between the temporary rate established by the Bureau and the permanent rate approved by the Energy Bureau.

(g)  Inaction of the Energy Bureau.- If the Energy Bureau fails to act on a rate review request within thirty (30) days after the filing thereof, the modified rate object of the request shall take effect immediately as a temporary rate, unless the requestor requests that a temporary rate should not be established due to the reasons stated in its request. The Energy Bureau shall continue the review process and shall issue the corresponding order within the term specified in this Section. If the Energy Bureau fails to approve or reject within the term of one hundred eighty (180) days

after the date on which the Energy Bureau notifies its determination by resolution that the request is complete, the rate proposed shall become final. If the Bureau extends said one hundred eighty (180)-day period, in accordance with the provisions of this Section, and does not approve or denies the proposed rate before the additional term expires, the proposed rate shall become final.

(h)    The Energy Bureau shall publish every month on its website an itemization of all rates or changes approved or modified."

Section 5.21.- Section 6.25B is hereby added to Act No. 57-2014, as amended, to read as follows:

"Section 6.25B.- Performance-Based Incentives and Penalty Mechanisms."

It is necessary to encourage energy companies to invest, in a cost effective manner, in infrastructure, technology, the incorporation of distributed generation, renewable energy sources, and services that inure to the benefit of the electrical system and consumers. Thus, the Energy Bureau shall prescribe by regulations, on or before December 31, 2019, such incentive and penalty mechanisms that take into account electric power companies' performance and compliance with the performance metrics set forth in the energy public policy.

In developing such performance-based incentives and penalties, the Energy Bureau shall take into account the following criteria, among others:

(a)    the volatility and affordability of the electric power service rates;

(b)    the economic incentives and investment payback;

(c)    the reliability of the electric power service; customer service and commitment, including options to manage electric power costs available to customers;

(d)     customers' access to the electric power companies' information systems including, but not limited to, public access to information about the aggregated customer energy and individual consumers' access to the information about their electric power consumption;

(e)     compliance with the Renewable portfolio standard and rapid integration of renewable energy sources, including the quality of the interconnection of resources located in consumers' properties;

(f)     compliance with metrics to achieve the energy efficiency standards established in this Act;

(g)     infrastructure maintenance.

Among the mechanisms to be used, the Bureau may consider using, but not limited to, the following:

        i.      Decoupling mechanisms:

        ii.     Performance-Based Regulation or PBR;

        iii.    Time of Use Rates;

        iv.     Prepaid Rates.

        v.      Unbundled Rates;

        vi.     Formula Ratemaking and rate review mechanism;

        vii.    Reconciliation Mechanisms.

Electric power service companies, as determined by the Bureau through regulations, including those organized as energy cooperatives or those other entities determined by the Bureau shall be exempt from this provision."

Section 5.22.- Section 6.27 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.27.-  Review of Electricity Bills and Rules for Service Suspension.

(a)     Before resorting to the Energy Bureau to request review of an electricity bill, every person shall exhaust, before the certified electric power service company

issuing the same, the informal administrative procedure established in this Section and the regulations adopted by the Energy Bureau. The provisions of Chapter III of Act No. 38-2017, as amended, known as the 'Government of Puerto Rico Uniform Administrative Procedure Act,' shall not apply to this informal administrative procedure.

   (1) ...

   (5) ...

 (b) ...

 (g) …"

Section 5.23.- Section 6.29 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.29.-  Efficiency in Electric Power Generation.

(a) Highly Efficient Fossil Generation.-  Within a term that shall not exceed five (5) years, from the date of enactment of the 'Puerto Rico Energy Public Policy Act,'  the Energy Bureau shall ensure that at least sixty percent (60%) of the electric power generated in Puerto Rico based on fossil fuels (gas, oil byproducts, oil, and others) is high efficiency, as such term is defined by the Energy Bureau. The term 'high efficiency' shall include as essential factors the electric power plant or the facility's thermal efficiency by the type of fuel used, the cost of fuel, technology, the capacity to reduce the costs of producing one (1) kilowatt-hour (kWh) of the proposed technology, and/or any other industry parameter that guarantees efficiency in energy generation, and in accordance with the Integrated Resource Plan. The percentage required under this Section includes energy generated from fossil fuels sold to the Authority, its successor, or the transmission and distribution network Contractor under power purchase agreements entered into as of the effective date of this Act. Contractors who acquire or operate PREPA generation assets shall modernize the plants or substitute such plants for highly efficient plans, as this term

is defined by the Bureau, within a period not to exceed five (5) years after the execution of the Partnership or Sales Contract. After this initial period, Contractors who chose to modernize the plants shall substitute them for highly efficient plants within a period not to exceed five (5) years after the initial period ends. Every newly-built or existing generation plant, other than a plant operating exclusively with renewable energy sources shall have capacity to operate with two (2) or more fuels, one of which shall be natural gas, taking into account that as of the approval of the Puerto Rico Energy Public Policy Act, the award of new contracts and/or the granting of new permits and the extension of existing contracts and/or permits to establish or to continue generating carbon-based energy in Puerto Rico shall be prohibited.

(b)    Every electric power generation facility of a certified electric power company in Puerto Rico must meet the efficiency standards established by the Energy Bureau and/or any other standard of the industry that guarantees efficiency in the generation of electric power.

(c)    ...

(1)    ...

(5)    ...

(d)    The Energy Bureau shall review periodically and, if necessary, modify the established efficiency standards and publish them on its website together with the technical analysis that justifies them;

(e)    The Energy Bureau shall approve the strategic plans developed by certified electric power companies to meet these standards, oversee and adopt by regulations the necessary measures to comply therewith."

Section 5.24.- Section 6.29A is hereby added to Act No. 57-2014, as amended, to read as follows:

"Section 6.29A.- Demand Response

(a)      Demand Response – Within one hundred and eighty (180) days, the Energy Bureau shall develop guidelines for electric power service companies to develop Demand Response or Demand-Side Management Programs. Once PREB establishes the guidelines, electric power service companies shall submit to the Energy Bureau within six (6) months, a proposal for the plan on demand response in accordance with the established guidelines. These shall include a defined schedule and incentives to make short-, medium-, and long-term programs feasible, focusing on the benefits that residential and commercial customers may receive from the reduction of energy consumption during peak hours."

Section 5.25.- Section 6.29B is hereby added to Act No. 57-2014, as amended, to read as follows:

"Section 6.29B. Energy Efficiency.

a.      Energy Efficiency.- The Energy Bureau shall ensure that Puerto Rico achieves the thirty percent (30%) energy efficiency goals by 2040. To achieve this, within one hundred and eighty (180) days, the Energy Bureau shall adopt regulations to establish the energy efficiency mechanisms to be used including, but not limited to, replacing one hundred percent (100%) of public lighting with light emitting diode (LED) lighting or renewable energy; and to establish the annual compliance goals per-sector that are necessary to attain the goal set in this Act. The Energy Bureau may establish energy efficiency programs aimed at achieving the goal set in this Section. To such ends, the Energy Bureau may use the services of a third party to manage energy efficiency programs and assist the Bureau in overseeing compliance with the annual goals established through regulations."

Section 5.26.- Section 6.30 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.30.- Wheeling.

PREB shall regulate the wheeling mechanism in Puerto Rico at both the transmission and the distribution levels. In doing so, PREB shall establish the rules and conditions to ensure that wheeling does not affect in any way whatsoever (including technical problems and rate increases) nonsubscribers of wheeling services. PREB shall establish the necessary rules for the implementation of a system that allows exempt businesses described in Section 2(d)(1)(H) of Article 1 of Act No. 73-2008, as amended, known as the 'Economic Incentives Act for the Development of Puerto Rico,' or similar provisions in other incentive laws, as well as electric power service companies, migrogrids, energy cooperatives, municipal ventures, and community solar, to purchase electric power from other entities through wheeling services. Likewise, PREB shall consider, among others, the following factors when regulating the wheeling service:

(a)    ...

(e)    ..."

Section 5.27.- Section 6.31 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.31.-  Extension.

In exercising its regulatory duties and technical knowledge in the energy field, the Energy Bureau may extend the period to modernize the plants or to substitute them for highly efficient plants, established in Section 6.29 of this Act, for an additional term not to exceed one (1) year so that at least sixty percent (60%) of the electric power generated in Puerto Rico from fossil fuels (natural gas, oil, or oil byproducts, and others) is high efficiency; provided, that the Bureau  determines it is necessary to fully implement high efficiency generation based on different fuels."

Section 5.28.- Section 6.32 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.32.- Agreements Between Electric Power Service Companies.

(a)    The Energy Bureau shall evaluate and approve all agreements between electric power service companies, including independent power producers, prior to the execution thereof. This includes, but shall not be limited to, the evaluation and approval of power purchase agreements whereby an independent power producer shall provide energy to the electric power service company responsible for operating the Electrical System. However, when a power purchase agreement is part of a PREPA Transaction, the Energy Compliance Certificate shall suffice in accordance with the provisions of Act No. 120-2018, as amended.

(b)    The provisions of this Section shall not apply to power purchase agreements that have been entered into by the Authority prior to the approval of this Act. However, any extension of or amendment to a power purchase agreement executed prior to the approval of Act No. 57-2014 shall comply with the Puerto Rico Energy Public Policy Act and shall be subject to the approval of the Energy Bureau.

(c)    The Energy Bureau shall adopt and promulgate regulations that establish the guidelines and standards to which the agreements of the electric power service companies, including the agreements between the Authority, its successor, or the transmission and distribution network Contractor and any electric power service company or independent power producer shall adhere; and the terms and conditions that shall be included in every power purchase and interconnection agreement, including a reasonable cost per kilowatt-hour (kWh) according to the type of generation technology. During the process of analyzing and drafting these regulations, the Energy Bureau shall request and consider the comments and feedback of the electric power companies, the Energy Public Policy Program, electric power companies, independent power producers, and the public in general.

The guidelines and standards established by the Energy Bureau through regulations shall have the purpose of ensuring compliance with the principles of this Act; the Puerto Rico Energy Public Policy Act; Act No. 83 of May 2, 1941, as amended, known as the 'Puerto Rico Electric Power Authority Act,' and the public policy of the Government of Puerto Rico.

(d)     In evaluating every proposal for an agreement between electric power service companies, the Energy Bureau shall take into account the provisions of the integrated resource plan. The Energy Bureau shall not approve an agreement that is inconsistent with the Integrated Resource Plan, particularly in all that pertains to renewable energy, distributed generation, conservation and efficiency goals established in the integrated resource plan as well as in the Energy Public Policy.

(e)     ...

(f)     In evaluating every proposal for an agreement between electric power service companies, the Energy Bureau shall verify whether or not the interconnection jeopardizes the reliability and safety of the electric power grid and require the elimination of any term or condition under the agreement's proposal that is contrary to or jeopardizes the safe and reliable operations of the electric power grid. The Energy Bureau shall not approve any agreement when technical evidence shows that the project in question or the contractual conditions thereof would jeopardize the reliability and safety of the electric power grid of Puerto Rico.

(g)     The Energy Bureau shall ensure that the rates, fees, rents, or charges paid to independent power producers are just and reasonable, and protect the public interest and the treasury. The Energy Bureau shall also oversee that the charge to be paid for interconnecting to the transmission and distribution network, including construction fees and wheeling rates, as well as any other requirement applicable to independent power producers or other electric power service companies that wish to interconnect to the transmission and distribution system is just and reasonable.

During this process, the Energy Bureau shall ensure that the charges allow for an interconnection that does not affect the reliability of the electric power service and that promotes the protection of the environment, compliance with the mandates of the Act, and does not adversely affect customers.

(h)     In evaluating power purchase agreement proposals, the Bureau shall require the electric power service company responsible for operating the Electrical System to submit the 'Supplementary Study' for the project subject of the proposed agreement or the pertinent technical analysis supporting the agreement. If a project does not require a 'Supplementary Study,' the electric power service company responsible for operating the Electrical System shall issue a certification to the Energy Bureau stating the reasons for which the circumstances and characteristics of the project do not warrant a 'Supplementary Study' or technical evaluation.

(i)     The electric power service company responsible for operating the Electrical System shall issue any 'Supplementary Study' within ninety (90) days after the date on which the electric power service company or independent power producer filed a request for an interconnection evaluation. If the electric power service company responsible for operating the Electrical System believes that a 'Supplementary Study' or any other technical analysis is unnecessary, it shall issue a certification stating the reasons for which the circumstances and characteristics of the project do not warrant a 'Supplementary Study' or other technical evaluation, within forty-five (45) days as of the date on which the electric power service company or independent power producer filed the request for an interconnection evaluation with the electric power service company responsible for operating the Electrical System. If the electric power service company responsible for operating the Electrical System fails to submit to the Energy Bureau the 'Supplementary Study' or certification, as the case may be, for the project along with the agreement's proposal, the Energy Bureau shall impose the sanctions and remedies it deems

pertinent on the electric power service company responsible for operating the Electrical System and request the Energy Public Policy Program to submit to the Energy Bureau a memorandum evaluating the project and the proposed agreement and to issue a duly substantiated recommendation.

(j)     All power purchase agreements approved by or under which the Energy Bureau issues an Energy Compliance Certificate pursuant to Act No. 120-2018 shall be published on the Energy Bureau's website."

Section 5.29.- Section 6.33 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.33.- Mediation and Arbitration of Energy Issues.

(a)     Mediation - Any person negotiating an agreement with the electric power service company responsible for operating the Electrical System, or an independent power producer regarding wheeling, capacity rates, interconnection, power purchase, or any other matter established by the Energy Bureau through regulations may, at any point during the negotiation, request the Energy Bureau to intervene as a mediator and assist in the resolution of any differences arising in the course of the negotiation. This Section shall not apply to the negotiation processes for PREPA Transactions authorized under Act No. 120-2018.

(b)     ..

(1)     ...

(2)     ...

(d)     ..."

Section 5.30.- Section 6.34 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.34.- Construction and Expansion of Electric Power Facilities.

(a)     In General.- Any certified electric power company that wishes to build or expand its facilities shall comply with the Energy Public Policy Act and file with

the Bureau a notice of intent to carry out such project in accordance with the Bureau's rules and regulations. The Bureau shall reply to a notice of intent within one hundred eighty (180) days after the filing thereof.

(b)      Evaluation Criteria.- The Bureau shall evaluate the notices of intent to build an electric power generation facility in accordance with the regulations to be established and promulgated by the Bureau for such purposes. In evaluating the notices of intent, the Bureau shall evaluate whether such construction work meets any of the objectives previously established in the integrated resource plan or if it satisfies any actual urgent need for electricity infrastructure in Puerto Rico, in which case the procedure established to amend the Integrated Resource Plan shall be followed. The Bureau shall issue a resolution stating whether such construction work is necessary, adequate, and consistent with the public interest and the energy public policy. The Bureau may not deny a notice of intent based on arbitrary or discriminatory reasons.

(c)      ...”

Section 5.31.- Section 6.35 of Act No. 57-2014, as amended, is hereby amended to read as follows:

“Section 6.35.- Transfer, Acquisition, Merger, and Consolidation of Certified Electric Power Companies.

(a)      In General.- No sale, acquisition, merger, or consolidation of electric power companies or the facilities thereof shall be completed if the Energy Bureau does not issue a certification stating that such transaction is consistent with the integrated resource plan, and the best interests of Puerto Rico, and does not involve the capture or control of electric power services by an electric power service company or the creation of a monopoly over electric power services by a private electric power service company. No electric power service company or the subsidiary or affiliate thereof may control fifty percent (50%) or more of the power

generation assets' capacity, except for the Electric Power Authority in the case of legacy power generation assets. The maximum percentage of the power generation assets' capacity that an electric power Service Company, or the subsidiary or affiliate thereof may control may be revised by the Bureau to prevent the establishment of a monopoly in generation, but in no event it may reach (50%) or more of the power generation assets' capacity.

...

(d)     ..."

Section 5.32.- Section 6.36 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.36.- Penalties for Noncompliance.

(a)     The Energy Bureau shall impose administrative fines for violations of this Act, or the regulations and orders issued thereunder, committed by any person or electric power company subject to its jurisdiction, of up to a maximum of twenty-five thousand dollars ($25,000) per day. Said fines shall never exceed five percent (5%) of the gross sales, fifteen percent (15%) of the net income, or ten percent (10%) of the net worth of the sanctioned person or the electric power company. The greater of the aforementioned amounts corresponding to the most recent taxable year shall be the amount of the fine.

(b)     ...

(c)     ...

(d)     Any person who intentionally violates any provision of this Act, omits, disregards, or refuses to obey, observe, and comply with any rule or decision of the Energy Bureau shall commit a misdemeanor and upon conviction shall be punished by imprisonment for a term not to exceed six (6) months, or by a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000), at the discretion of the Energy Bureau. In the event of recurrence, the established penalty

shall increase to a fine of not less than ten thousand dollars ($10,000) nor more than twenty thousand dollars ($20,000), at the discretion of the Energy Bureau.

(e)     The Energy Bureau may resort to the pertinent forums to seek any remedy, including account garnishment, to ensure compliance with the penalties imposed."

Section 5.33.- Section 6.37 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.37.- Annual Reports.

Before March 1 of each year, PREB shall publish and submit to the Governor and the Legislative Assembly of the Government of Puerto Rico the annual report required under Section 6.3 of this Act. Such report shall contain the following information:

(a)     …

(b)     …

(c)     the percentage of distributed generation, Renewable Portfolio Standard, and energy efficiency metrics achieved, among others, and the recommendations to achieve the metrics set forth in the Act;

(d)     ...

(e)     ...

(f)     ...

(g)     ..."

Section 5.34.- The content of Section 6.39 of Act No. 57-2014, as amended, is hereby eliminated and reserved.

"Section 6.39.- Reserved."

Section 5.35.- Section 6.40 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.40.- Creation of the Independent Consumer Protection Office.

(a)     The Independent Consumer Protection Office, hereinafter the 'Office' or 'ICPO,' is hereby created to educate, advise, assist, and represent customers of the services under the jurisdiction of the Puerto Rico Public Service Regulatory Board. Pursuant to the Reorganization Plan of the Puerto Rico Public Service Regulatory Board and Act No. 211-2018, the Independent Consumer Protection Office is hereby merged with the Public Service Regulatory Board. The personnel designated to the Independent Consumer Protection Office by virtue of the 'Puerto Rico Energy Transformation and RELIEF Act' shall be transferred to the Public Service Regulatory Board created by virtue of the Reorganization Plan of the Puerto Rico Public Service Regulatory Board. Any transfer of personnel shall be made in accordance with the provisions of Act No. 8-2017, as amended.

(b)     The Office shall have the administrative support of the Public Service Regulatory Board, and shall operate as an entity independent from PREB, the Authority, any other electric power company certified in Puerto Rico, the Telecommunications Bureau, the Transport and other Public Services Bureau, and any other entity regulated by any of the latter.

(c)     ...

(d)     The Office shall have a website containing information regarding the electric power industry, telecommunications, transport, other public services and any other pertinent information regarding matters under its consideration, which shall be shown in a manner that the average consumer is able to understand. The Office shall share and post all data and information to keep interested persons informed about their rights."

Section 5.36.- Section 6.41 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.41.- Organization of the Independent Consumer Protection Office.

(a)    ...

(b)    No employee of the Office, whether a career or trust employee, may be related within the fourth degree of consanguinity and second of affinity to the Chair, associate members, or the Executive Director of the PSRB, or the Commissioners of the Energy Bureau, the Telecommunications Bureau, and the Transport and other Public Services Bureau.

(c)    No career or trust employee of the ICPO or the members of his family unit, as defined in Act No. 1-2012, as amended, known as the 'Organic Act of the Government Ethics Office,' may have a direct or indirect interest in, or a contractual relationship with the Authority and/or any certified electric power company in Puerto Rico, or in entities in or outside of Puerto Rico affiliated to and with interest in the Authority or such companies, or any other related company or under the jurisdiction of the Telecommunications Bureau, and the Transport and other Public Services Bureau.

(d)    ...

(e)    ..."

Section 5.37.- Section 6.42 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.42.- Powers and Duties of the ICPO.

The Office shall have the following powers and duties:

(a)    Educate, inform, and provide orientation and assistance to customers on their rights and responsibilities with regard to the electric power service and the public policy on savings, conservation, and efficiency, telecommunication services, and those under the jurisdiction of the Transport and other Public Services Bureau;

(b)     Evaluate the impact that the rates, public policy, and any other issue may have on electric power, telecommunications, and transport services customers in Puerto Rico;

(c)     Defend and advocate for the interests of customers in all matters brought before the Energy Bureau, the Telecommunications Bureau, the Transport and other Public Services Bureau or being addressed by the Energy Public Policy Program of the Department of Economic Development with regard to electric power rates and charges, the quality of the electric power service, services provided by electric power service companies to their customers, resource planning, public policy, and any other matter of interest for customers;

(d)     File complaints or legal recourses with the Energy Bureau, the Puerto Rico Telecommunications Bureau, and the Puerto Rico Transport and other Public Services Bureau on behalf and in representation of customers who have no other legal representation, with regard to disputes in connection with any issue affecting the service, the rate, or any other matter that may affect the interests or rights of electric power, telecommunications, and transport services' customers. Prior to filing complaints in representation of customers, it shall verify that said customer has complied with the pertinent administrative provisions to make the claim. In the event of a conflict of interests between the different classes of customers with regard to any cause of action or dispute, the priority of the ICPO shall be to represent and defend residential and small-business commercial customers;

(e)     Participate in the rate adoption or modification process for issues affecting electric power, telecommunications, and transport services' customers;

(f)     Make independent recommendations to the Bureaus regarding rates, bills, public policy, and any other issue that may affect services' customers in Puerto Rico;

(g)     Request and advocate for just and reasonable rates for the consumers represented by the Office;

(h)     Participate or appear as intervenor in any action brought before a government agency of the Government of Puerto Rico or the Federal Government with jurisdiction, in connection with rates, bills, public policy, and any other issue that may affect electric power, telecommunications, and transport services' consumers and/or customers;

(i)     Participate or appear as petitioner or intervenor in any action brought before the General Courts of Justice or a Federal court in connection with the rates, bills, public policy, and any other issue that may affect electric power, telecommunications, and transport services' customers;

(j)     ...

(k)     Have access to documents, records, and information to which the Energy Bureau, the Puerto Rico Telecommunications Bureau, the Puerto Rico Transport and other Public Services Bureau, and the Energy Public Policy Program attached to the Department of Economic Development and Commerce of Puerto Rico have access, except for privileged documents, records and information, as provided in the Rules of Evidence;

(l)     Conduct, on its own motion or through contract, studies, surveys, or investigations, or hear expert testimonies in connection with matters that affect the interests of electric power, telecommunications, and transport services' customers;

(m)     Review and issue comments on any proposed legislation or regulations that affect electric power, telecommunications, and transport services' customers;

(n)     ...

(o)     ...

(p)     Assist, advise, and cooperate with state and federal agencies to protect and promote the interests of electric power, telecommunications, and transport services' customers;

(q)     Evaluate the operation and laws that affect the electric power, telecommunications, and transport services' customers, including small businesses, in order to make recommendations for amendments and to propose new bills to the Governor and the Legislative Assembly that are in the best interests of customers.

(r)     Organize and hold conferences or activities related to the problems that affect electric power, telecommunications, and transport services' customers; and

(s)     ..."

Section 5.38.- Section 6.43 of Act No. 57-2014, as amended, is hereby amended to read as follows:

"Section 6.43.- Budget of the Office.

The Office shall receive an annual appropriation of one million two hundred thousand dollars ($1,200,000), which shall originate proportionally from the amount appropriated to the Energy Bureau, the Puerto Rico Telecommunications Bureau, and the Puerto Rico Transport and other Public Services Bureau."

Chapter VI.- Amendments to Act No. 120-2018

Section 6.1.- Section 2 of Act No. 120-2018, as amended, is hereby amended to read as follows:

"Section 2.- Definitions.

For purposes of this Act, the words or terms used herein shall have the meaning provided in Act No. 29-2009, except when a word or term is expressly defined in this Act or when the context clearly indicates otherwise. Likewise, when the words or terms defined in this Section are used in Act No. 29-2009 with regards to PREPA Transactions, they shall be interpreted with the meaning provided in this Act. The words used in the singular shall include the plural and vice versa. However,

the following words or terms shall have the meaning stated below, except as otherwise provided or when the context clearly indicates otherwise:

(a)    ...

...

(d)    Energy Compliance Certificate: The Certificate issued by the Commission in any PREPA Transaction certifying that the Preliminary Contract complies with the regulatory framework, the 'Puerto Rico Energy Public Policy Act,' and the Code of laws in effect.

(e)    Commission or Bureau: Means the Puerto Rico Energy Bureau established by virtue of the Reorganization Plan of the Puerto Rico Public Service Regulatory Board and Act No. 211-2018, which is a specialized and independent entity in charge of regulating, overseeing, and enforcing the energy public policy of the Government of Puerto Rico. Any reference in this Act to the 'Commission or the Energy Commission' shall be understood to refer to the Puerto Rico Energy Bureau.

...

...

(i)    Regular Employee or Employee in a Regular Position: Includes, but is not limited to, any regular employee, special regular employee, and career-conditional employee, as such terms are defined and used in PREPA's applicable employee regulations.

(j)    Facility(ies): …

(k)    Act No. 29-2009: …

(l)    Act No. 83: …

(m)    PREPA Transaction(s): …"

Section 6.2.- Section 5 of Act No. 120-2018, is hereby amended to read as follows:

"Section 5.- Authorization for PREPA Transactions.

(a)      ...

…

(g)      Any contract related to a PREPA Transaction shall require an Energy Compliance Certificate, as defined in this Act. The Partnership Committee shall submit to the Bureau the Report drafted pursuant to Section 9(g) of Act No. 29-2009 before submitting it to the Boards of Directors of the Authority and PREPA. The Bureau shall evaluate the Report, the information furnished, and the Preliminary Contract and issue an Energy Compliance Certificate if they comply with the energy public policy and the regulatory framework. The Energy Compliance Certificate or the resolution denying the issuance thereof shall state the basis for such determination. The Bureau shall have thirty (30) days from the date on which the Preliminary Contract was submitted to issue a Certificate of Compliance or a resolution to deny the issuance thereof. When more than one Preliminary Contract are under consideration by the Energy Bureau, the thirty (30) day term shall run consecutively, taking into account the order in which they were submitted. If a Certificate of Compliance or the resolution to deny the issuance thereof is not issued within the aforementioned term, the PREPA Transaction shall be deemed to be approved by the Bureau and it shall be understood that an Energy Compliance Certificate has been issued for such PREPA Transaction. Once the Energy Compliance Certificate has been issued, any amendments made to the Preliminary Contract shall require the issuance of a new Energy Compliance Certificate. The mere issuance of an Energy Compliance Certificate shall not constitute grounds for claiming any compensation, reimbursement, or payment on account of any expectations arising in any of the stages, or for the expenses incurred during the

qualification process or the submission of proposals. Reviews in connection with the Energy Compliance Certificate issued by the Bureau shall be filed with the Court of Appeals within a term of fifteen (15) days from the notice thereof."

Section 6.3.- Section 6 of Act No. 120-2018, as amended, is hereby amended to read as follows:

"Section 6.- Inapplicability of Certain Provisions of Law.

(a)     ...

...

(d)     Contracts executed in connection with any PREPA Transaction may provide exemptions or alternative procedures to the following statutory provisions (and any regulatory provision or related action), deemed reasonable by the Partnership Committee under the circumstances, to ensure the feasibility of the PREPA Transaction:

(i)     Act No. 109 of June 28, 1962, as amended, known as the 'Puerto Rico Public Service Act';

(ii)     Any requirement of (A) the Integrated Resource Plan as such term is defined in Act No. 57-2014, as amended; and (B) any statutory provision applicable to PREPA including, among others, those imposed by virtue of Act No. 83; insofar as the Partnership Committee has been authorized by the Energy Bureau through a Certificate of Compliance."

Section 6.4.- Section 7 of Act No. 120-2018 is hereby amended to read as follows:

"Section 7.-  Use of Payments Received from PREPA Transactions.

In addition to the provisions of Section 9(g)(ix) and 17 of Act No. 29-2009, all efforts shall be made to set aside from any payment received in connection with a PREPA Transaction an amount to contribute with the early retirement of qualified employees and with PREPA's Retirement System so as to improve the capitalization

ratio thereof by means of a contribution consistent with the provisions of subsection (e) of Section 17 of Act No. 29-2009. Said system shall not be suspended by this Act or any other transaction authorized thereunder. PREPA's Retirement System may be defined in subsequent legislation."

Section 6.5.- Section 15 of Act No. 120-2018 is hereby amended to read as follows:

"Section 15.- Provisions on the Employees of the Electric Power Authority

PREPA's personnel have been critical in restoring the electric power service in the wake of hurricane Maria. Their knowledge of the system is essential to ensure the success of its transformation.

The provisions of this Act and of any Partnership or privatization Contract entered into in connection with PREPA pursuant to this Act, shall not be used by the Government of Puerto Rico as grounds for the dismissal of any regular employee. Any PREPA personnel who opt to remain in the Government of Puerto Rico shall be assigned according to the statutes, regulations, and administrative rules applicable thereto. Likewise, PREPA and the Government of Puerto Rico may devise and offer transition or incentivized voluntary resignation plans.

All regulations adopted shall strictly comply with the provisions of Section 5.2 of Act No. 8-2017, as amended, known as the 'Government of Puerto Rico Human Resources Administration and Transformation Act.' Moreover, the concept of mobility and the mechanism established by the Government of Puerto Rico Human Resources Administration and Transformation Office (HRATO) to implement the movement of public employees, as established in Act No. 8-2017, shall apply to PREPA in accordance with said Act. Regular PREPA employees who are not selected to work for the Contractors shall retain their positions, or be transferred to another position within PREPA or other Government Entities. To such effect, and in conjunction with HRATO, PREPA shall conduct a study to identify

the positions that are compatible with the training of PREPA's employees or, in lieu thereof, shall establish retraining plans in order to assign employees who are not selected to work for the Contractors pursuant to the provisions of Act No. 8-2017.

Employees who, as a result of this Act, are transferred under the concept of mobility to another government entity or who become employees of a PREPA Transaction Contractor shall keep all of their vested rights in accordance with the laws, rules, collective bargaining agreements, and regulations applicable to them, as well as the privileges, obligations, and status with respect to any existing pension or retirement plan, or savings and loan fund established by law in which such employees were enrolled before the approval of this Act and that are compatible with the provisions of Act No. 26-2017, known as the 'Fiscal Plan Compliance Act.' No regular PREPA employee shall be left unemployed nor lose benefits as a result of any PREPA Transactions."

Chapter VII.-  Amendments to Act No. 211-2018

Section 7.1.- Section 7 of Act No. 211-2018 is hereby amended to read as follows:

"Section 7.-  Budget and Other Funds.

The Chair of the PSRB, in conjunction with the Commissioners of the Bureaus, shall prepare, administer, request, process, receive, and draw up the budgets of the Bureaus, as well as determine the use and control of the equipment, materials, and any transferred property, respecting the operational and functional independence of the Bureaus at all times.

All funds available, regardless of their nature, originating from the budgets, powers, and/or functions of the Bureaus which are transferred herein to the Board for the administration thereof shall be used to defray the operating expenses of the Board and each one of the Bureaus, in accordance with the purposes for which they were allocated, subject to the terms, restrictions, limitations, and/or requirements

imposed thereon by the applicable state or federal laws. Except for the budget of the Energy Bureau, beginning Fiscal Year 2018-2019, and thereafter, the Chair, in conjunction with the Executive Director and the Commissioners of each Bureau shall draw up the annual budget of the Bureaus. The Executive Director shall submit the budget of the Puerto Rico Telecommunications and the Puerto Rico Transport and Other Public Services Bureaus to the Office of Management and Budget and the Legislative Assembly for the inclusion and approval of their budget appropriations."

Chapter VIII.- Additional Amendments and Other Provisions.

Section 8.1.- Section 4030.17 of Chapter 3 of Subtitle D of Act No. 1-2011, as amended, is hereby amended to read as follows:

"Section 4030.17.-  Exemption on Solar Power Equipment.

Solar powered equipment used to produce and/or store electric power, including any parts and accessories thereof, provided that they are necessary for the solar powered equipment to meet its purposes, and the lease thereof, as defined in Section 3(B), (C), (D), (E), (F), and (G) of Act No. 76-1994, as amended, known as the 'Act to Regulate Personal Property Lease Contracts', shall be exempt from the Sales and Use Tax. In order to qualify for this exemption, the dealer or manufacturer shall submit a certification to the Department indicating that the solar powered equipment, or the parts and accessories thereof, comply with the standards and specifications established by the Energy Affairs Administration, as well as a certification indicating that the solar powered equipment is guaranteed for five (5) years or more."

Section 8.2.- Transitory Provision PREPA's Governing Board.

The current members of the Governing Board of the Electric Power Authority, including those whose appointments are pending Senate confirmation at the time of the approval of this Act shall continue to hold office until the expiration of their terms of appointment or until a vacancy occurs as a result of resignation, death,

disability or dismissal. Any process initiated by the Department of Consumer Affairs (DACO, Spanish acronym) prior to the approval of Act No. 207-2018, to elect a representative of customer interests to the Board shall continue under DACO's jurisdiction until the representative of customers' interest is elected.

Section 8.3.- Rules of Construction.

Through this Act, the Legislative Assembly reaffirms the Government of Puerto Rico's agreement under Section 13 of Act No. 29-2009, regarding Partnership Contracts executed in a PREPA Transaction. Likewise, through this Act, the Legislative Assembly reaffirms the legislative intent and the public policy of the Government of Puerto Rico pursuant to Section 3 of Act No. 120-2018, which provides that Partnership Contracts or Sales Contract executed in a PREPA Transaction under Act No. 120-2018 shall be fully covered and protected by our constitutional framework pertaining to the enjoyment of property, the due process of law, and the non-enactment of laws impairing contractual obligations legally agreed upon. It is herein provided that none of the provisions of this Act or of any other law, regulations, or administrative provision of the Government of Puerto Rico shall be construed or applied so as to diminish, limit, restrict, or otherwise modify the contractual rights of a Contractor, and the terms and conditions of a Partnership Contract or Sales Contract executed as part of a PREPA Transaction in accordance with this Act and Act No. 120-2018. The Bureau shall implement the public policy and the governing principles set forth in this Act to prevent its actions from being capricious and arbitrary and to be consistent with the rules, guidelines, standards, criteria, and intelligible principles already established or delegated by its organic act and the applicable special laws. Moreover, the public policy provisions and governing principles promulgated by this Act shall not provide legal standing, cause of action or administrative action in an entity of the Government of Puerto Rico other than the Energy Bureau.

Section 8.4.- Severability.

This Act shall be construed to be valid to the extent allowed in accordance with the Constitutions of Puerto Rico and the United States. If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect, impair, or invalidate the remainder of this Act. The effect of said holding shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act thus held to be null or unconstitutional. If the application to a person or a circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act were held to be null or unconstitutional, the ruling, holding, or judgment to such effect shall not affect or invalidate the application of the remainder of this Act to such persons or circumstances where it may be validly applied. It is the express and unequivocal will of this Legislative Assembly that the courts enforce the provisions and application thereof to the greatest extent possible, even if it renders ineffective, nullifies, invalidates, impairs, or holds to be unconstitutional any part thereof, or even if it renders ineffective, invalidates, or holds to be unconstitutional the application thereof to any person or circumstance. This Legislative Assembly would have approved this Act regardless of any determination of severability that the Court may make.

Section 8.5.- Supremacy.

The provisions of this Act and the regulations or rules adopted thereunder shall prevail over any other general or specific provision of a law or regulation of the Government of Puerto Rico that is inconsistent with this Act.

Section 8.6.- Effectiveness.

This Act shall take effect immediately after its approval.

# CERTIFICATION

I hereby certify to the Secretary of State that the following **Act No. 17-2019 (S. B. 1121)**

**(Conference)** of the **5th Regular Session** of the **18th Legislative Assembly of Puerto Rico:**

**AN ACT** to create the "Puerto Rico Energy Public Policy Act" for the purposes of
establishing the Puerto Rico public policy on energy in order to set the
parameters for a resilient, reliable, and robust energy system with just and
reasonable rates for all class of customers; make it feasible for energy
system users to produce and participate in energy generation; facilitate the
interconnection of distributed generation systems and microgrids, and
unbundle and transform the electrical power system into an open system;
amend Sections 2, 3, and 4, renumber Section 5 as Section 4A, renumber
Section 5A as Section 4B, add a new Section 5, repeal Section 5B, and
substitute the contents of Sections 6 and 6B of Act No. 83 of May 2, 1941, as
amended, known as the "Puerto Rico Electric Power Authority Act," […]

has been translated from Spanish to English and that the English version is correct.

In San Juan, Puerto Rico, on this 1st day of May, 2019.


Orlando Pagán-Ramírez
Director