IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>As representative of the<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>Plaintiff,<br>         v.<br><br>HON. PEDRO PIERLUISI URRUTIA, in his official capacity as Governor of Puerto Rico<br>*Defendants.* | CASE NO. 17-BK-4780<br>Jointly Administered<br><br><br>PETITION UNDER TITLE III OF THE PUERTO RICO OVERSIGHT, MANAGEMENT AND ECONOMICSTABILITY ACT<br><br><br>CASE NO. 24-00062-LTS<br><br>NULLIFICATION OF ACT 10 AND INJUNCTION BARRING IMPLEMENTATION AND ENFORCEMENT OF ACT 10 |

**INTERVENOR'S ANSWER TO THE COMPLAINT**

**TO THE HONORABLE COURT**:

   **COMES NOW** proposed intervenor Hon. José Luis Dalmau, in his official capacity as President of the Senate of Puerto Rico, through the undersigned counsels and very respectfully **SETS FORTH** and **PRAY**:

## I.     FACTUAL PLEADINGS

1. Paragraph 1 is partially admitted only to the extent that "the Oversight Board brings this action to nullify Act 10-2024 (hereinafter referred to as "Act 10"), a law which imposes requirements and restrictions on the Puerto Rico Energy Bureau (hereinafter referred to as the "Energy Bureau")" with respect to the Puerto Rico Electric Power Authority's (hereinafter "PREPA") net metering program." The remaining content is denied as net metering has been since 2007 a policy created by the Puerto Rico legislature.

2. Paragraph 2 is denied as stated. The Financial Oversight and Management Board for Puerto Rico (hereinafter referred to as "FOMB" or "the Board") has not presented any data regarding any "significant impact on PREPA's revenues and operations" caused by net metering. Furthermore, FOMB has via past actions, including the PREPA Fiscal Plan, signaled its intent that an updated net metering policy was adopted as early as April 2024.

3. Paragraph 3 is denied. Act 10 is a law adopted by the Commonwealth of Puerto Rico's Legislative Assembly with unanimous participation of all 5 represented political delegations in Legislature. Act 10 simply orders extending up to the year 2031 current net metering policy, which has been approved by law in Puerto Rico since 2007.

4. Paragraph 4 is partially admitted to the effect that "PREPA's system is technologically outdated, operationally inefficient, and heavily reliant on an unreliable, high-cost, volatile, and polluting oil-fired generation fleet. Outdated generation and low operational efficiency across the system has forced Puerto Ricans to suffer among the highest electricity rates and the worst service in the United States." The remaining content is denied since none of those characteristics are attributable to net metering policy as legislated since 2007.

5. Paragraph 5 is partially admitted. In 2014, the Government enacted Puerto Rico Act 57-2014 ("Act 57"), which created the Energy Bureau to be an "independent government entity" overseeing implementation of electric power service in Puerto Rico. However such fact does not and cannot remove the Energy Bureau from legislative oversight, as it is a creature of the Puerto Rico legislature.

6. Paragraph 6 is denied to the extent that "political influence or interference" is meant as immunity for the Energy Bureau, from legislation enacted by the Legislative Assembly of the Commonwealth of Puerto Rico.

7. Paragraph 7 is admitted in regards to the characterization of what net metering is, yet denied in regards to the specific status of a study commissioned by the Energy Bureau on PREPA's net metering program and its costs to PREPA which was allegedly in the process of being finalized. The lack of availability of public information on the matter is insufficient to ascertain the specific status of any study in early 2024.

8. Paragraph 8 is denied as stated. Net metering is a very simple, straightforward, and effective policy, that creates great value to the grid. Admitted only to the extent that under law prior to Act 10, the Energy Bureau would be able to make changes to the seventeen-year-old net metering program it deemed appropriate, after a study.

9. As to Paragraph 9, it is partially admitted to the extent that the PREPA Fiscal Plan requires the Energy Bureau to "finalize the net metering and distributed generation study" and "initiate a process for implementing recommendations and conclusions of the study and updating a net metering compensation and crediting structure" by April 11, 2024. That language simply reflects the statutory language of Puerto Rico Act 114 of 2007 as amended

3

by Puerto Rico Act 17 of 2019. Act 10 shifted the potential sunset date of net metering from April 2024 to the year 2030.

10. Paragraph 10 is denied as stated. Act 10's legislative process initiated when Puerto Rico Senate Bill 1064 was filed in the Senate of Puerto Rico in October of 2022. The bill was signed into laws as Act 10 two years later after going through a bicameral legislative process, where it received comments from multiple stakeholders, including the Puerto Rico Energy Bureau, and after receiving substantial amendments. The approval of SB 1064 was in no way influenced or impacted by the pending approval of a study on the matter by the Energy Bureau.

11. Paragraph 11 is partially admitted to the extent that by "enacting Act 10 the Government blocked the Energy Bureau's ability to complete the net metering study required to make any changes to the Island's net metering program". However, it is denied as acts of legislation over administrative bodies are, by definition, legitimate activities under both the US and Puerto Rico constitutions.

12. Paragraph 12 is admitted.

13. Paragraph 13 is partially admitted. Legislated net metering policy is enshrined by Act 114 of 2007 and has been improved by Act 17 of 2019 as also Act 10. Aproving laws to amend prior laws is a matter of elemental statutory construction and the constitutional powers and prerogatives of the Legislature.

14. Paragraph 14 is denied. Act 10 was the product of a responsible two (2) year legislative process with substantial input from expert stakeholders, including, among others, the Energy Bureau, the Puerto Rico Fiscal Agency & Financial Advisory Authority (AAFAF) and administrator of Puerto Rico transmission and distribution system, LUMA Energy. In

terms of the legislative dependency known as OPAL, an office of recent creation, its input towards the legislative process is in any case not a requirement for the valid adoption of Puerto Rico law.

15. Paragraph 15 is partially admitted and partially denied. Act 10 does bar the Energy Bureau from making changes to net metering until 2030 (plus a 1 year transition period into any new rate or credit structure), and it also grants grandfathering for 20 years form the date of adoption of Act 10 to current and future net metering customers. But creation of such policy is not only a permissible action by the Legislature, it is its constitutional prerogative. In terms of the allegation that Act 10 is somehow a violation of the PREPA Fiscal Plan, the FOMB cannot bar the constitutional authority of the Legislature to legislate, to create and amend laws through the fiscal plan. Such action by the FOMB is a overreach of its authority under PROMESA.

16. Paragraph 16 is denied. The FOMB can state its case, and request such an order, but is not entitled to any such order. It is this Honorable Court who, under current law and judicial precedent, must weigh the factual and legal arguments of all participating process to determine favorability in the case.

17. Paragraph 17 is denied, as these allegations are the untested view and opinion of the FOMB. Its allegations are not sustained by fiscal nor economic data.

18. Paragraph 18 is denied, as these allegations are the untested view and opinion of the FOMB. In terms of the allegation that Act 10 is somehow a violation of the PREPA Fiscal Plan, the FOMB cannot bar the constitutional authority of the Legislature to legislate, to create and amend laws through the fiscal plan. Such action by the FOMB is a overreach of its authority under PROMESA.

19. Paragraph 19 is partially admitted and partially denied. The FOMB is an entity created by federal legislation (PROMESA), which actions intend to supersede the actions and powers of the constitutional government of the Commonwealth of Puerto Rico.

20. Paragraph 20 is admitted.

21. Paragraph 21 is admitted as this Honorable Court has jurisdiction in this case.

22. Paragraph 22 is admitted.

23. Paragraph 23 is admitted.

24. Paragraph 24 is admitted.

25. Paragraph 25 is admitted.

26. Paragraph 26 is admitted.

27. As to Paragraph 27, the fiscal plan speaks for itself. We deny any editorial commentary offered by the FOMB regarding that content.

28. Paragraph 28 is admitted to the extent that "the Government" means the Puerto Rico Legislative Assembly and the Governor of Puerto Rico.

29. Paragraph 29 is admitted.

30. Paragraph 30 is admitted.

31. Paragraph 31 is admitted.

32. As to Paragraph 32, the fiscal plans speak for themselves We deny any editorial commentary offered by the FOMB regarding that content.

33. As to Paragraph 33, the fiscal plans speak for themselves We deny any editorial commentary offered by the FOMB regarding that content.

34. As to Paragraph 34, the fiscal plans speak for themselves We deny any editorial commentary offered by the FOMB regarding that content.

35. Paragraph 31 is admitted.

36. As to Paragraph 36, Act114 of 2007 speaks for itself. We deny any editorial commentary offered by the FOMB regarding that content. Regarding volumetric charges, these can be offset by factors such as the size of a solar system in kilowatts and the electricity consumption patterns of the specific customer. The electricity demand of said customer can increase, thus also increasing his or her volumetric charges.

37. Paragraph 37 is admitted. With respect to volumetric charges, see above paragraph 36.

38. Paragraph 38 is partially admitted and partially denied. Customers with sufficient solar generation to offset their consumption from the grid will incur in low or zero volumetric charges, with an impact on PREPA kilowatt hour sales. However, that allegation is missing the other half of the economic equation: the myriad direct and indirect economic and socioeconomic benefits caused by privately financed energy generation by solar customers which is transferred to the grid and to all other ratepayers,. These are benefits that substantially surpass any 'costs' caused by net metering to PREPA revenues.

39. Paragraph 39 is partially admitted. However, legislative approval and the enactment into law of Act 10 and a public policy decision as to whether to maintain or modify the current net metering program in Puerto Rico. is a valid legislative and public policy prerogative, as it was the enacted Act 114 of 2007.

40. As to Paragraph 40, Act 114 of 2007 as amended by Act 17 of 2019 speaks for itself.

41. As to Paragraph 41, Law 114 of 2007 as amended by Act 17 of 2019 speaks for itself.

42. As to Paragraph 42, the fiscal plans speak for themselves. We deny any editorial commentary offered by the FOMB regarding that content. The allegation that the FOMB "encouraged" distributed generation and specifically net metering in any of its fiscal plan

is an editorial opinion by the FOMB that clashes with some of its actual proposals and actions.

43. As to Paragraph 43, the fiscal plan speaks for itself. We deny any editorial commentary offered by the FOMB regarding that content. It is admitted however that the FOMB has injected in its documents a narrative of alleged high costs of net metered power, a supposed "unequitable distribution of costs throughout the system", and so called "cost shift." These allegations lack factual basis that tend to show the FOMB's actual objective in regards net metering.

44. As to Paragraph 44, the fiscal plan speaks for itself. We deny any editorial commentary offered by the FOMB regarding that content. However, it is admitted that rooftop solar has displayed rapid uptick. This is simply evidence of the success of the legislated net metering policy in place since 2007.

45. As to Paragraph 45, the fiscal plan speaks for itself. The FOMB's fiscal plan for PREPA requires the Energy Bureau to "finalize the net metering and distributed generation study" and "initiate a process for implementing recommendations and conclusions of the study and updating a net metering compensation and crediting structure" by April 11, 2024. Such language generally, though not exactly, reflects the statutory language of Act 114 of 2007. Act 10 of 2024 shifted the potential sunset date of net metering from April 2024 to the year 2030.

46. Paragraph 46 is partially admitted and partially denied. . Act 10's legislative process initiated when Puerto Rico Senate Bill 1064 was filed in the Senate of Puerto Rico in October of 2022. The bill was signed into laws as Act 10 two years later after going through a bicameral legislative process, where it received comments from multiple stakeholders,

8

including the Puerto Rico Energy Bureau, and after receiving substantial amendments. The approval of SB 1064 was in no way influenced or impacted by the pending approval of a study on the matter by the Energy Bureau.

47. Paragraph 47 is denied to the extent it describes or infers that valid Puerto Rico legislation is "interference". Act 10 is a valid, constitutional exercise of legislative prerogatives. The Energy Bureau is the administrative agency that is charged by law to implement Puerto Rico legislated energy policy.

48. Paragraph 48 is admitted to the extent PROMESA speaks for itself.

49. Paragraph 49 is denied as it only describes the judicially untested view and opinion of the FOMB.

50. Paragraph 50 is denied. That is the judicially untested view and opinion of the FOMB.

51. Paragraph 51 is denied. That is the judicially untested view and opinion of the FOMB.

52. Paragraph 52 is partially admitted to the extent that AAFAF certified that Act 10 is not significantly inconsistent with the fiscal plan. However, it is partially denied to the extent that non-compliance or non-satisfaction of PROMESA requirements is the judicially untested view and opinion of the FOMB.

53. Paragraph 53 is denied. That is the judicially untested view and opinion of the FOMB.

54. Paragraph 54 is admitted.

55. Paragraph 55 is admitted. However, any legal conclusion expressed is just the judicially untested view and opinion of the FOMB.

56. Paragraph 56 is admitted.

57. Paragraph 57 is admitted.

58. Paragraph 58 is admitted.

59. Paragraph 59 is admitted.

60. Paragraph 60 is partially admitted and partially denied to the extent that any non-compliance or inconsistency with the fiscal plans is the judicially untested view and opinion of the FOMB.

61. Paragraph 61 is admitted.

62. As per Paragraph 62, the referenced letter speaks for itself.

63. Paragraph is 63 is admitted the extent that the Energy Bureau published a draft study. However such draft cannot be legally considered the specific the study as required by law as it failed to follow the due process strictures required by prior law.

64. Paragraph 64 is admitted.

65. Paragraph 65 is denied as any allegation of non-compliance or inconsistency is the judicially untested view and opinion of the FOMB.

66. Paragraph 66 is denied to the extent it describes or infers that valid Puerto Rico legislation is "interference". Act 10 is a valid, constitutional exercise of legislative prerogatives. The Energy Bureau is the administrative agency that is charged by law to implement Puerto Rico legislated energy policy.

67. Paragraph 67 is denied to the extent that any allegation of non-compliance or inconsistency from Act 10 with the fiscal plans and/or PROMESA are the judicially untested views and opinions of the FOMB. Also, the cited fiscal plan language regarding timing of a net metering study and timing to implement changes to the net metering program by April 11, 2024, simply refer to or interpret the statutory language of Act 114 of 2007 as amended by Law 17 of 2019, not the currently applicable legal framework created by Act 10.

10

68. Paragraph 68 is denied to the extent that any "determination" by the Overs regarding Law 10 is simply the judicially untested view and opinion of the Oversight Board and not a final "determination".

69. Paragraph 69 is denied to the extent that any "determination" by the Overs regarding Law 10 is simply the judicially untested view and opinion of the Oversight Board and not a final "determination". Likewise, Paragraph 69 is denied since any allegation of non-compliance or inconsistency from Act 10 with the fiscal plans and/or PROMESA are the judicially untested views and opinions of the FOMB. Paragraph 69 is also denied to the extent it describes or infers that valid Puerto Rico legislation is "interference". Act 10 is a valid, constitutional exercise of legislative prerogatives. The Energy Bureau is the administrative agency that is charged by law to implement Puerto Rico legislated energy policy.

70. Paragraph 70 requires no response.

71. Paragraph 71 is admitted to be reflective of PROMESA's statutory text.

72. Paragraph 72 is admitted to be reflective of PROMESA's statutory text.

73. Paragraph 73 is denied to the extent that any "determination" by the FOMB regarding Act 10 is simply the judicially untested view and opinion of the FOMB and not a final "determination". Likewise, paragraph is denied since any allegation of non-compliance or inconsistency from Act 10 with fiscal plans and/or PROMESA are the judicially untested views and opinions of the FOMB.

74. Paragraph 74 is denied as Act 10, which is in full effect, has not breached PROMESA. Any "determination" by the FOMB regarding Act 10 is simply the judicially untested view and opinion of the FOMB and not a final "determination". Likewise, Paragraph 74 is denied

11

since any allegation of non-compliance or inconsistency from Act 10 with fiscal plans and/or PROMESA are the judicially untested views and opinions of the FOMB.

75. Paragraph 75 is admitted to the extent that it is a fact that Act 10 has not been amended or repealed, despite the FOMB's determinations and directives, which in any case, constitute judicially untested views and opinions of the FOMB and not final "determinations."

76. Paragraph 76 is denied as Act 10, which is in full effect, has not breached PROMESA. The FOMB can present its allegations and claims before this Honorable Court, but is not entitled to any such order. It is this Honorable Court who, under current law and judicial precedent, must weigh the factual and legal arguments of all participating process to determine favorability in the case. The SCOTUS further states through *Loper Bright Enterprises v. Raimondo*, 603 U.S. ____ (2024), that "courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority […]".

77. Paragraph 77 requires no response.

78. Paragraph 78 is admitted to be reflective of PROMESA's statutory text.

79. Paragraph 79 is denied since any allegation of breach of PROMESA by the Governor of Puerto Rico is the judicially untested view and opinion of the FOMB.

80. Paragraph 80 is admitted as what is alleged in the paragraph stating the judicially untested views and opinions of the FOMB.

81. Paragraph 81 is admitted as stating the judicially untested views and opinions of the FOMB.

82. Paragraph 82 is admitted.

83. Paragraph 83 is denied since any allegation of breach of PROMESA by the Governor is the judicially untested view and opinion of the FOMB.

84. Paragraph 84 is admitted to be reflective of PROMESA's statutory text.

85. Paragraph 85 is partially admitted to the extent that Act 10, which is in full effect, does prohibit the Energy Bureau from making changes with respect to Puerto Rico's net metering program for at least the next six (6) years. However, Paragraph 85 is partially denied since any allegation that Act 10 must be nullified because it adversely affects and/or impacts compliance with fiscal plans is a judicially untested view and opinion of the FOMB. Paragraph 85 is also denied as it describes or infers that valid Puerto Rico legislation, in this case the approval of Act 10, constitutes "interference with the Energy Bureau". Act 10 is a valid, constitutional exercise of legislative prerogatives. The Energy Bureau is the administrative agency that is charged by law to implement Puerto Rico legislated energy policy.

86. Paragraph 86 is denied as Act 10, which is in full effect, has not breached PROMESA nor any fiscal plan. The FOMB can present its allegations and claims before this Honorable Court, but is not entitled to any such order. It is this Honorable Court who, under current law and judicial precedent, must weigh the factual and legal arguments of all participating process to determine favorability in the case. The SCOTUS further states through *Loper Bright Enterprises v. Raimondo*, 603 U.S. \_\_\_\_ (2024), that "courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority […]".

## II. AFFIRMATIVE DEFENSES

87. The complaint fails to state a claim upon which relief may be granted.

13

88. Act 10 is a valid exercise of Puerto Rico's authority to legislate and establish the net metering policies to be implemented by the pertinent administrative agency created by the Legislature for those ends, namely the Energy Bureau.

89. The FOMB's conclusions that Act 10 defeats the purposes of PROMESA and/or fiscal plans are factually baseless.

90. The intervenor reserves the right to raise any further affirmative defenses that, not being apparent at this time, may be revealed during the discovery process.

**WHEREFORE** it is very respectfully requested from this Honorable Court that the instant action be hereby **DISMISSED**.

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record to their registered e-mail addresses. Any non-registered attorneys and/or parties will be served via regular mail.

In San Juan, Puerto Rico this 22nd day of August, 2024.

**RESPECTFULLY SUBMITTED.**

**QUIÑONES & ARBONA, PSC**
PO Box 10906
San Juan, Puerto Rico 00922
✆ Tel.787-620-6776
📠 Fax. 787-620-6777

**S/ EDWIN QUIÑONES-RIVERA**
USDC-PR No. 124305
E-mail: equinones@qaclaw.com

*Attorneys for* intervenor*, Senate of Puerto Rico and its President, Hon. Jose Luis Dalmau Santiago, in his official capacity as President of the Senate of Puerto Rico.*

14