# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA Title III<br><br>No. 17 BK 4780-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    Plaintiff,<br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico<br><br>    Defendants. | Adv. Proc. No. 24-00062 in 17 BK 3283-LTS |

**RESPONSE OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO THE MOTION TO REQUEST INTERVENTION ON BEHALF OF THE SENATE OF PUERTO RICO AND THE HONORABLE JOSÉ LUIS DALMAU**

**To the Honorable United States District Judge Laura Taylor Swain and the Honorable United States Magistrate Judge Judith Gail Dein:**

Plaintiff Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") respectfully submits this response to the Motion to Request Intervention on Behalf of the Senate of Puerto Rico and the Honorable José Luis Dalmau (the "Motion"). The Oversight Board respectfully states as follows:

1. Currently pending before the Court is the Oversight Board's complaint (the "Complaint") raising claims against the Honorable Pedro Pierluisi (the "Governor" or the "Defendant"), in his official capacity as Governor and defender and enforcer of the Commonwealth's laws, related to Act 10-2024 ("Act 10").

2. Act 10, by its terms, interferes with and obstructs the Puerto Rico Energy Bureau's ("Energy Bureau") regulation of the Puerto Rico Electric Power Authority ("PREPA"). Specifically, Act 10 prevents the Energy Bureau from regulating PREPA's net metering program by: (i) barring the Energy Bureau from making any changes to the current net metering program until a new net metering study is completed, which Act 10 prohibits the Energy Bureau from commencing before January 2030; (ii) providing that any changes to the net metering program, including rates, can only take effect 12 months after the Energy Bureau finishes the study and decides to make any such changes (i.e., no earlier than January 2031); and (iii) requiring any customer with a net metering contract or a distributed generator installed and certified by a licensed professional at the time the Energy Bureau issues any final determination changing the net metering program be entitled to enjoy the pre-change net metering terms for at least an additional 20 years.

3. As detailed in the Complaint, Act 10 is inconsistent with both the Commonwealth and PREPA Fiscal Plans, which require the Energy Bureau to be able to regulate PREPA free from

2

political interference, and impairs and defeats the purposes of PROMESA as determined by the Oversight Board. As such, the Oversight Board brought claims against the Governor, pursuant to PROMESA §§ 108(a)(2) and 204(a)(5), to have the law nullified. ECF No. 1.

4. On August 9, 2024, upon joint motion by the parties, the Court entered an order setting an expedited schedule for the resolution of this matter, including requiring any motions to intervene be filed no later than September 4, 2024, and setting a summary judgment briefing schedule commencing on September 25, 2024. ECF No. 6 at 3.

5. On August 22, 2024, the Honorable José Luis Dalmau (the "Senate President"), in his official capacity as President of the Senate of Puerto Rico (the "Senate"), filed the Motion, seeking intervention in this adversary proceeding as a matter of right pursuant to Federal Rule of Civil Procedure 24(a). ECF No. 8. Notably, he does not seek permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). *See id.*

6. For reasons discussed below, the Senate President has not established the requirements to intervene in this proceeding as a matter of right. Indeed, his brief largely copies from an intervention motion filed by the Speaker of the Puerto Rico House of Representatives (the "House Speaker") in a prior case brought by the Oversight Board against the Governor, where this Court declined to grant intervention as a matter of right but granted permissive intervention. *See Fin. Oversight & Mgmt Bd. For P.R. Pierluisi*, Adv. Proc. No. 22-0063 ("Act 41 Litigation"), ECF No. 3; *id.*, ECF No. 42.

7. Accordingly, the Senate President's Motion should not be granted. However, if the Court, as it was in the Act 41 Litigation, is inclined to grant the Senate President permissive intervention (although he did not request it), the Oversight Board does not oppose such permissive intervention, subject to certain limitations set forth below, and provided the Oversight Board's

3

lack of opposition is not interpreted as an acknowledgement the Senate President has constitutional or prudential standing to request or defend against any relief in this adversary proceeding.

### *The Senate President Has Not Established The Requirements For Intervention As Of Right*

8.      Federal Rule of Civil Procedure 24(a)(2) governs intervention as of right.[1]  To be granted intervention pursuant to this Rule, the Senate President must meet four requirements: "(1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (4) a satisfactory showing that existing parties inadequately represent its interest." *Public Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998).  All four conditions must be met to permit intervention as of right.  *See Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 560-61 (1st Cir. 2021) ("Failure to satisfy any single requirement for intervention as of right under Rule 24(a)—such as showing inadequate representation by existing parties—is sufficient grounds to deny a request for 'intervention as of right.'"), *cert. denied*, 142 S. Ct. 754 (2022).  The Senate President has failed to establish at least two of these requirements.

9.      First, the Senate President does not have a protectable interest in the litigation that will be impaired absent his intervention.  In the Motion, the Senate President alleges his interest in the litigation is demonstrated by "many particularized allegations" in the Complaint "on the inadequacy of the legislative process therefore impacting actions taken by the Senate of Puerto Rico." Mot. at 4.  The Senate President, however, is mistaken; the Oversight Board's Complaint makes *no* allegations (particularized or otherwise) regarding the "inadequacy of the legislative

---

[1] Federal Rule of Civil Procedure 24 is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7024.

4

process," nor does it "directly question[]" the "Legislature's adherence to PROMESA," as he contends.² The Senate President is also mistaken in asserting the prayer for relief "directly impacts" the Senate. *Id.*³

10.     Instead, the Oversight Board's allegations and claims in this case are directed solely at the Governor's actions. Specifically, the Governor signed Act 10 into law in violation of PROMESA § 108(a)(2) and the Governor failed to submit a compliant formal estimate and certification for Act 10 as required by PROMESA § 204(a). Further, the Governor failed to comply with the Oversight Board's PROMESA § 204(a)(4) directive, forcing the Oversight Board to bring this adversary proceeding pursuant to PROMESA § 204(a)(5) to ensure Act 10 will not adversely affect compliance with the applicable fiscal plans. It is the Governor's actions—not actions or processes of the Senate President, the Senate, or the Puerto Rico Legislative Assembly (the "Legislature")—that are at issue in the Complaint.⁴

---

² The Complaint notes that then-Senate Bill 1064 was passed by the Legislature on January 8, 2024, Compl. at ¶ 46, and references letters sent to the Governor, along with the Senate and the House, *id.* at ¶¶ 54-55, 59, 68. Other than these background facts, the Complaint does not address legislative activity. Indeed, contrary to the arguments made in the Motion, nowhere in the Complaint does the Oversight Board make allegations regarding "inadequacy of the legislative process," "actions taken" by the Legislature, or its adherence to PROMESA, let alone raise claims challenging such matters. *See* Mot. at 4.

³ Indeed, in support of this allegation, the Senate President quotes a portion of the Complaint that expressly seeks relief as to the "Governor," and makes no mention of the Senate or Legislature. Mot. at 4; Compl. at 25, ¶ E (requesting that the "***the Governor*** be permanently enjoined from enacting, implementing and enforcing laws that restrict or compel action by the Energy Bureau.") (emphasis added). Accordingly, the Senate President is incorrect when he contends the Senate is "one of the government entities directly impacted by the [Oversight Board]'s prayer for relief." Mot. at 4.

⁴ To the extent the Senate President intends to argue the Senate or the Legislature has an inherent interest in defending laws from challenge, that is not the case for the reasons explained in the Oversight Board's opposition to the House Speaker's motion for intervention in the Act 41 Litigation. The Oversight Board incorporates by reference its arguments on that issue here. *Act 41 Litigation*, ECF No. 21.

5

11. Second, even if the Senate President had a protectable interest in this matter, he has not shown—and cannot show—his intervention is necessary to protect such interest because an existing party—the Governor—"adequately represent[s] that interest." Fed. R. Civ. P. 24(a)(1)(2). Indeed, the Senate President's and the Governor's interests are fully aligned because the Governor seeks to defend Act 10 against the Oversight Board's challenge and prevent its nullification, which is precisely the result the Senate President seeks. The Senate President does not provide any basis as to why the Governor cannot or will not adequately represent his interests or those of the Senate. In fact, that argument would be difficult to assert given the Governor has repeatedly mounted vigorous defenses in prior litigation with the Oversight Board concerning enacted laws.[5]

12. The best the Senate President can muster is the conclusory statement that "by its very nature, the Executive Branch cannot take up the defense of the prerogatives belonging to the Legislative Branch and vice versa, as such restraint is demanded by basic separation of powers considerations." Mot. at 5. In reality, the Senate President is encroaching on the powers of the Executive branch, by seeking to defend Act 10.

13. Further, the Oversight Board's claims do not implicate separation of powers concerns. Here, the Oversight Board seeks an order nullifying Act 10 because Act 10 impairs or defeats PROMESA in violation of PROMESA § 108(a)(2) and the Governor failed to comply with PROMESA § 204(a). Additionally, to the extent the Senate President has any legally protectable interest, it is identical to the Governor's interest and there is no reason why the Governor will be unable to protect that interest. Indeed, courts routinely deny legislators' interventions as of right

---

[5] Notably, the Senate President does not contend the Governor is not capable of mounting an adequate defense, or that he (the Senate President) has independent claims or defenses the Governor does not share.

6

where their rights can be adequately represented by the executive branch. *See, e.g., Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 799-802 (7th Cir. 2019); *One Wis. Inst., Inc. v. Thomsen*, 2020 WL 4883000, at *2-3 (W.D. Wis. Aug. 20, 2020); *Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 275 (D. Ariz. 2020); *Democratic Nat'l Comm. v. Bostelman*, 2020 WL 1505640, at *2-3 (W.D. Wis. Mar. 28, 2020); *Miracle v. Hobbs*, 333 F.R.D. 151, 155-56 (D. Ariz. 2019); *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 398-99 (W.D. Wis. 2015). Accordingly, the Senate President has failed to make "a satisfactory showing that existing parties inadequately represent its interest." *Patch*, 136 F.3d at 204.[6]

### *Permissive Intervention*

14. Although the Senate President failed to meet his burden of establishing that he is entitled to intervention as of right, the Oversight Board recognizes, based on prior rulings by this Court, the Court may be inclined to grant the Senate President permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). *Act 41 Litigation*, ECF No. 42 at 6 (declining to address the Rule 24(a) arguments and granting Rule 24(b) intervention).

15. Federal Rule of Civil Procedure 24(b) grants the Court discretion to permit "anyone to intervene who: […] has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Critically, in deciding whether to permit

---

[6] It is important to note that while the Senate President cites to cases indicating he need only make a "minimal showing" with respect to this requirement, where, as here, the intervenor's ultimate objective matches that of a named party, the intervenor must show why he is not sufficiently represented by that party. *See, e.g., T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 ("presumption of adequate representation attaches" when "would-be intervenor's objective aligns seamlessly with that of an existing party"); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.)*, 807 F.3d 472, 475 (1st Cir. 2015) (where there is "a congruence in goals," court "presumes adequate representation"); *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979) ("Where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation."). As discussed above, the Senate President has not made the requisite showing.

intervention under Rule 24(b), the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* at 24(b)(3).

16. If the Court is inclined to grant the Senate President permissive intervention, the Oversight Board does not oppose such intervention, provided it is limited in several ways.[7]

17. As noted above, the Oversight Board and the Governor seek expeditiously to resolve this matter, and negotiated a schedule to achieve that goal which this Court has approved. *See* ECF No. 6. Should the Senate President be permitted to intervene, he should be required to (i) fully comply with the current case schedule (ECF No. 6); and (ii) coordinate with the Governor to avoid duplicative arguments and filings.[8] This is consistent with the Court's ruling in the Act 41 Litigation, where it granted the House Speaker permissive intervention, but did so in reliance on his representations that he would adhere to the established deadlines in the matter and "avoid[] duplicative filings and proceedings." *Act 41 Litigation*, ECF No. 42 at 6.[9]

---

[7] In not opposing such intervention, the Oversight Board does not concede the requirements of Rule 24(b) are met, neither admits nor agrees the Senate President has standing to assert any claims or defenses affecting the Oversight Board's rights to remedies, and reserves its rights to challenge his standing.

[8] Despite this direction to the House Speaker upon the Court's permitting him to intervene in the Act 41 Litigation, the Oversight Board was forced to address duplicative arguments from the Governor and the House Speaker during summary judgment briefing in that case. *See e.g., Act 41 Litigation*, ECF No. 78 at 4-5, 9; ECF No. 79 at 9, 10. The Oversight Board urges the Court to fashion an order (if the Court is inclined to grant any relief) to avoid this result.

[9] Further, although the Oversight Board anticipates this case will be resolved via the scheduled expedited summary judgment process, should this case not be disposed at summary judgment, the Oversight Board should be permitted to request additional limitations regarding discovery and other related matters to avoid unnecessary burdens and prejudice. *See, e.g., Cortland Capital Market Servs., et al. v. Fin. Oversight & Mgm't Bd. for P.R.*, Adv. Proc. No. 19-ap-00396, ECF No. 34 (limiting intervenors' ability to propound discovery requests or examine witnesses during depositions, and requiring coordination with counsel with respect to hearings and trial).

| | |
|---|---|
| Dated: August 29, 2024<br>San Juan, Puerto Rico | */s/ Miguel E. Gierbolini*<br>Miguel E. Gierbolini<br>U.S.D.C. – P.R. No. 212211<br>**GIERBOLINI & CARROLL LAW OFFICES, PSC**<br>P.O. Box 9022936<br>San Juan, P.R. 00902-2936<br>Tel: (787) 620-0685<br>Email: miguelgierbolini@gmail.com<br><br>*/s/ Timothy W. Mungovan*<br>Martin J. Bienenstock (*pro hac vice*)<br>Timothy W. Mungovan (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>tmungovan@proskauer.com<br><br>*/s/ Guy Brenner*<br>Guy Brenner (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>1001 Pennsylvania Ave., NW<br>Suite 600 South<br>Washington, DC 20004<br>Tel: (202) 416-6800<br>Fax: (202) 416-6899<br>Email: gbrenner@proskauer.com<br><br>*Attorneys for the Financial Oversight and Management Board for Puerto Rico in its own right and as representative of the Puerto Rico Electric Power Authority* |

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Miguel E. Gierbolini*
Miguel E. Gierbolini