**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>　　as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>　　　　　　　　　　　　Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>　　　　　　　　　　　　Defendant. | Adv. Proc. No. 24-00062-LTS in 17 BK 4780-LTS |

**PETITION FOR INTERVENTION**

**TO THE HONORABLE DISTRICT COURT:**

**COMES NOW** Solar United Neighbors ("SUN") and Sierra Club's Puerto Rico Chapter ("Sierra Club") duly represented by the undersigned counsel and respectfully state as follows:

### I.　　PRELIMINARY STATEMENT

1. After months of lobbying and concerted community engagement for the approval of Act No. 10-2024, the appearing parties are disappointed to find that their efforts may reach a dead end in this Court where so many other laws have perished at the hands of the Oversight Board. This time, clearly, as a means to appease the Puerto Rico Electric Power Authority's ("PREPA") creditors by promising increased revenues, however speculative and unsustainable that promise may be.

2. The current net metering policies are determined by Puerto Rico's democratically elected representatives and supported by grassroots organizations such as SUN and Sierra Club.

They have the feedback of the Puerto Rico Energy Bureau and align with Puerto Rico's existing laws and policies. They exist for the benefit of the people of Puerto Rico, to foster environmentally sound practices and promote a level of energy resilience that PREPA is unfortunately unable to provide, and which increased revenues for bondholders will not achieve.

3. Under the guise of procedural noncompliance, the Oversight Board is attempting to apply pressure against current net metering policies without concern for the effects that will have on third parties or the populace. As will be argued below, the Oversight Board's shortsighted actions will have negative effects on the mission and execution of SUN and Sierra Club, not to mention their members and constituents.

4. Moreover, the Oversight Board's actions border the most absurd form of micromanagement, where a simple date change is the object of a litigation to annul a revenue neutral law that has been approved by Puerto Rico's government and celebrated by so many because time will allow Puerto Rico to meet those renewable energy goals contained in the laws and fiscal plans, and benefit so many people who even now are suffering from unnecessary blackouts weeks after a tropical storm impacted limited sectors of Puerto Rico.

5. All of this will be the subject of the appearing parties' pleading. For the purposes of this *Petition for Intervention*, SUN and Sierra Club request that this Court consider the contributions they can make to this case, as the organizations that are on the ground with these issues.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

6. On January 10, 2024, Act No. 10-2024 ("Act 10"), formerly Senate Bill 1064, was signed into law.

2

7. On July 26, 2024, the Financial Oversight and Management Board for Puerto Rico ("Oversight Board" or "Plaintiff") filed the captioned *Complaint* against Pedro Pierluisi, in his official capacity as Governor of Puerto Rico ("Defendant"). **Case No. 3:24-AP-00062 (LTS), ECF No. 1.**

8. On August 8, 2024, the Oversight Board and the Defendant filed a joint motion with a proposed schedule. **ECF No. 5, corrected at 7.** On August 9, 2024, the Court issued its *Order setting expedited schedule* ("Expedited Schedule"). **ECF No. 6.**

9. Pursuant to the *Expedited Schedule*, the Defendant had until August 16, 2024, to file a Motion to Dismiss. Because this deadline passed with no filing, the Defendant is scheduled to file his response to the *Complaint* by September 11, 2024. Additionally, the Court set the deadline for intervenors at September 4, 2024.

### III.   INTEREST IN THE CASE

10. SUN is a non-profit organization dedicated to creating a clean, equitable, resilient energy system that benefits everyone. It helps people go solar, join together, and fight for their energy rights. SUN's vision is a clean, equitable energy system that directs control and benefits back to local communities, with solar on every roof and money in every pocket. Nationally, SUN has helped more than 10,000 homes, businesses, and organizations add 90 MW of solar. It provides national education, programming, and support. However, it is also a community of people building a new energy system with rooftop solar as the cornerstone.

11. In Puerto Rico, SUN helps communities go solar by organizing bulk purchases or "co-ops" of individually owned solar systems. SUN also invests in the development of Resilience Hubs in vulnerable communities. These Resilience Hubs play a critical role in the resiliency of a community during climate and natural events. Currently, SUN has two Resilience Hubs in Cataño and Guaynabo. Finally, SUN is also a lead grantee in a Department of Energy's

3

("DOE") Puerto Rico Resiliency Fund ERF Topic 2 grant for the creation of low-cost rooftop solar in Salinas for vulnerable communities. All told, SUN has helped more than forty people add 10 MW of solar and storage to their homes and businesses and represents more than 50,000 solar owners and supporters across the island. It has also engaged at the federal government level to help get $1 billion in funding for low-income solar and storage systems in Puerto Rico.

12. SUN's Puerto Rico program is only a few years old. As such, most of its policy work has been centered on supporting net metering and Act 10. SUN supported Act 10 as it was moving through the legislature in 2023 and encouraged the Governor to sign it in 2024.

13. Sierra Club is a national nonprofit organization of approximately 645,000 members nationwide, and approximately 2,440 members in Puerto Rico. It is dedicated to exploring, enjoying, and protecting nature; to practicing and promoting the responsible use of Earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.

14. Sierra Club's environmental concerns encompass a broad range of issues related to pollution that destabilizes the climate and deteriorates air quality. Sierra Club is a leader in the effort to end Puerto Rico's and the nation's dependence on fossil fuels through the equitable decarbonization of the energy supply, including through increased deployment of distributed generation, and electrification of the construction and transportation sectors. Sierra Club has a significant interest in the sustainable growth of rooftop solar in Puerto Rico.

15. Sierra Club was a founding member of *Queremos Sol*, a diverse alliance of nonprofit, community, utility, and academic groups that showed how feasible it would be to apply funds to rooftop solar installations across Puerto Rico. In 2021, *Queremos Sol* published a

4

report showing that transitioning to 75% distributed generation over 15 years would drastically cut the imports of fossil fuels while supplying enough energy and scrapping the need for new fossil fuel generation.

16. Sierra Club has a strong interest in increased distribution of renewable generation in Puerto Rico. Its Puerto Rico chapter has campaigned to transition Puerto Rico away from fossil fuels and towards a renewable energy system that provides reliable power through a distributed solar system that does not unnecessarily harm scarce agricultural land. It was a key advocate lobbying the Governor to enact Act 10.

17. Also, Sierra Club has members who would like to install rooftop solar and any instability in the net metering compensation policy would cause them harm. Additionally, Sierra Club has members that live near dirty fossil fueled plants in Puerto Rico and are harmed by those emissions. Increased rooftop solar will reduce the operational hours and operational life of those facilities, which would in turn benefit Sierra Club members.

18. SUN's interest in this case relates directly to Act 10 and the consequences of its annulment, which would likely include a climate of uncertainty which will disincentivize the adoption of roof-top solar and investment in these projects, as well as an abrupt and haphazardly approved increase to the costs of electricity for solar owners and potential solar owners, in addition to the costs of their solar installations. SUN's co-ops will see an immediate decline. This will also affect the Resilience Hubs in Cataño and Guaynabo, so there will be fewer resources for the communities during natural and climate disasters.

19. It also impacts the affordability of the rooftop solar program in Salinas, for which the DOE federal grant project's success is critical. The DOE requires a financial model that supports the program for twenty years. Annulling Act 10 will destabilize NEM policy and have a negative effect on the financial sustainability of the project. The DOE grant under the

5

Puerto Rico Resiliency Fund ERF, Topic 2, requires that there be a model that sustains or supports the solar project.

20. As such, the annulment of Act 10 affects SUN's mission and ability to provide services; its capacity to disburse the DOE's funds; and the solar owners and potential owners that SUN represents. If Act 10 is annulled the mounting pressures on the PREB will undoubtedly result in instability in the market for solar power, as well as hesitance from federal grantors and investors who would have otherwise aided the transition to renewables.

21. Additionally, Act 10 is a key protection for Puerto Rico residents who have little recourse to high electricity costs. This law is key to reducing energy inequality and bolstering the reliability and resilience of the electric system. Its annulment would be to the detriment of Sierra Club's mission and goals, and to their individual members who want to install solar, and who live near dirty fossil fueled power plants and breathe in the harmful pollution they emit.

22. Moreover, Act 10's annulment will inevitably affect Puerto Rico's transition to renewables. In 2019, Puerto Rico had 1.5% renewable energy integration. Six years later, in 2024, the renewable energy integration into the grid is at 6%, while Act 17 states that Puerto Rico should be at 40% renewable energy integration by 2025. Given the slow integration of renewables, even at the rate of 3,500 solar installations a month, it is hard to see PR complying with Act 17 by 2040, not to mention 2025. Disrupting the current landscape for solar adoption can only hinder these efforts. Act 10 is critical to the continued growth of solar in Puerto Rico, integration to the grid, an increase in solar jobs, overall electrical stability, and compliance with Act 17. Annulling Act 10 will require the PREB to meet an expired deadline to and hastily make changes to net metering in response to the Oversight Board's pressure. Keeping Act 10 intact is essential to both SUN and Sierra Club's missions.

## IV. APPLICABLE STANDARD FOR INTERVENTION

23. Rule 7024 of Bankruptcy Procedure establishes that Rule 24 of Civil Procedure applies to adversary proceedings. Fed. R. Bankr. P. 7024. "It is common ground that there are two strands of intervention: Intervention as of right, Fed. R. Civ. P. 24(a), and permissive intervention, Fed. R. Civ. P. 24(b)". Candelario-Del Moral v. UBS Fin. Servs., 290 F.R.D. 336, 340 (D.P.R. 2013). See,also, T-Mobile Northeast LLC v. Town of Barnstable, 969 F.3d 33, 37 (1st Cir. 2020). A motion of this type "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

### A. Intervention as of Right

24. Intervention as of right **must** be granted to a party that:

> (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a).

25. Regarding Rule 24(a), the Courts have established:

> To prevail on a motion for intervention as of right, a putative intervenor must demonstrate (1) the timeliness of her motion; (2) a concrete interest in the pending action; (3) "a realistic threat" that resolution of the pending action will hinder her ability to effectuate that interest; and (4) the absence of adequate representation by any existing party. T-Mobile, 969 F.3d at 39 (citations omitted).

26. In this analysis, "courts must apply a holistic, rather than a reductionist, approach, and keep in mind a commonsense view of the overall litigation." Candelario-Del Moral, 290 F.R.D. at 340 (citation omitted).

### B. Permissible Intervention

27. On the other hand, permissive intervention **may** be granted to anyone who "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Because

7

it is an exercise of discretion, the court should consider whether the intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Relatedly, a district court mulling permissive intervention is free to consider whether the applicants may be helpful in fully developing the case." T-Mobile, 969 F.3d at 41 (citation omitted).

## V. GROUNDS FOR INTERVENTION

28. In this case SUN and Sierra Club meet the requirements for intervention as of right. In the alternative, SUN and Sierra Club should be granted permissive intervention. Additionally, SUN and Sierra Club's pleading is attached as **Exhibit 1**, in compliance with Rule 24(c).

**A. Intervention is warranted under Rule 24(a)(2) as of right.**

29. As previously stated, the Court must grant intervention to a party that claims an interest in the transaction that is the subject of the case, where the disposition of the case will as a practical matter impair or impede their ability to protect its interest. Fed. R. Civ. P. 24(a)(2).

30. As narrated in Section III, SUN and Sierra Clun have a vested interest in the outcome of this case. Should this Court annul Act 10 according to the Oversight Board's wishes, SUN and Sierra Club, and their respective members, would suffer direct consequences and see its interests affected.

31. SUN and Sierra Club, and their respective members' interest in this is not merely a political or ideological issue but a pragmatic one. The disruption of Puerto Rico's net metering policy via the annulment of Act 10 will have a direct impact on solar owners and potential solar owners, which SUN represents and some of which are Sierra Club members. Additionally, SUN's co-ops will see an immediate decline. This will also affect SUN's Resilience Hubs in Cataño and Guaynabo, and the DOE project in Salinas. As such, the annulment of Act 10 affects SUN's mission and ability to provide services; its capacity to disburse the DOE's funds; and the solar owners and potential owners that SUN represents.

8

As such, SUN and Sierra Club, and their respective members' interest in the case is clear and present, rising to the level of an intervenor as of right.

32. Moreover, SUN and Sierra Club meet the requirements for the petition to be granted. SUN and Sierra Club's *Petition for Intervention* is timely as it has complied with the deadline set forth by the Court in its *Expedited schedule*. Moreover, the *Petition for Intervention* is filed prior to the Defendant's response in this case. Thus, SUN and Sierra Club have demonstrated the first factor for intervention as of right.

33. Additionally, SUN and Sierra Club have a concrete interest in the pending action. As previously discussed, as an organization, SUN works tirelessly to provide accessible solar power to low-income communities. This task is greatly dependent on the stability and favorability of net metering policies. Moreover, SUN represents solar owners and potential solar owners who rely on net metering. Moreover, Sierra Club's members are also potential solar owners and Sierra Club's mission is directly aligned with Act 10. Therefore, Act 10's annulment will directly impact them. Thus, the impact of the annulment of Act 10 and its consequences would be more direct upon them than it would on the Defendant himself.

34. Furthermore, there is a very realistic threat that the resolution of the pending action will hinder SUN and Sierra Club's ability to protect that interest to the extent that annulling Act 10 will require the PREB to meet an expired deadline to and hastily make changes to net metering in response to the Oversight Board's pressure. Bullying the PREB into revising net metering before it is ready will result in changes that will impact SUN and Sierra Club immediately leaving little time and room for advocacy to the contrary.

35. Lastly, while the Defendant's official position is the defense of Act 10, his interests are different from those of SUN and Sierra Club. While the Defendant is defending his prerogatives as a political actor, SUN and Sierra Club are defending their own interests and those of solar owners and potential solar owners. The scope of representation the Defendant

must cover includes many interests and constituents that water down the interests that are aligned between the Defendant and SUN and Sierra Club. The Defendant is not in the same position as SUN and Sierra Club, nor does he respond to those interests.

**B. Permissive intervention is warranted under Rule 24(b)(2).**

36. In the alternative, intervention is warranted under Rule 24(b)(2) and this Court should exercise its discretion in favor of SUN and Sierra Club's participation.

37. As demonstrated by the discussion above, SUN and Sierra Club has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). Moreover, the factors to consider in a permissive intervention weigh in SUN and Sierra Club's favor.

38. Firstly, SUN and Sierra Club's intervention will cause absolutely no undue delay or prejudice to the original parties. SUN and Sierra Club are in compliance with this Court's calendar and will continue to be.

39. Secondly, SUN and Sierra Clun are parties whose participation can only be helpful to develop the case and ensure that this Court has all the information it needs to adjudicate. It has information directly related to solar power in Puerto Rico and other jurisdictions, as well as access to experts in this area to aid the Court. Additionally, SUN and Sierra Club have direct access to the individuals and communities that will be impacted by the annulment of Act 10.

40. Moreover, because of the work SUN and Sierra Club are doing in Puerto Rico, they can address issues related to Act 10's compliance with PREPA's Fiscal Plan in terms of the renewable energy goals and the net metering review requirements that stem from those goals. Lastly, SUN and Sierra Club can demonstrate why forcing PREB to review net metering in a tight timeframe to appease the bondholders is a counterproductive, arbitrary, and capricious course of action on behalf of the Oversight Board, which will in turn cause

10

instability and affect the movement to solar power that Puerto Rico and PREPA so desperately need.

## VI. REQUEST FOR RELIEF

41. In view of the foregoing, SUN and Sierra Club respectfully request that this Court grant intervention under Rule 24 of Civil Procedure.

In Ponce, Puerto Rico.

Date: September 3rd, 2024



P.O. Box 10779
Ponce, Puerto Rico 00732
Tel.: 787-848-0666
Fax: 787-841-1435
notificaciones@bufete-emmanuelli.com

*s/ Rolando Emmanuelli Jiménez*
**Lcdo. Rolando Emmanuelli Jiménez**
**USDC:** 214105
rolando@emmanuelli.law

*s/ Zoé C. Negrón Comas*
**Lcda. Zoé C. Negrón Comas**
**USDC:** 308702
zoe@emmanuelli.law

*Counsel for Solar United Neighbors and Sierra Club PR*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties. A courtesy copy of this Motion will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in *Third Amended Standing Order*.

*s/ Zoé C. Negrón Comas*
**Lcda. Zoé C. Negrón Comas**
**USDC:** 308702
zoe@emmanuelli.law