**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                Debtor. | PROMESA<br>Title III<br><br><br>Case No. 17 BK 4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>                Defendant. | <br><br><br><br>Adv. Proc. No. 24-00062-LTS in 17 BK 4780-LTS |

**SOLAR UNITED NEIGHBORS AND SIERRA CLUB'S**
**INTERVENOR-DEFENDANT PLEADING**

**TO THE HONORABLE DISTRICT COURT:**

**COMES NOW** Solar United Neighbors ("SUN") and Sierra Club's Puerto Rico Chapter ("Sierra Club") as Intervenor-Defendants duly represented by the undersigned counsel and respectfully state as follows:

**RESPONSE TO THE COMPLAINT**

1. In satisfaction of the pleading requirement of Rule 24(c) of Civil Procedure, SUN and Sierra Club hereby answers the Complaint filed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board") in accordance with Rule 5 of Civil Procedure.

**NATURE OF THE ACTION**

2. ¶ 1 of the Complaint is accepted only to the extent that the Oversight Board brings this action to nullify Act No. 10-2024 ("Act 10"), the rest is denied. Act 10 does not impose

any new requirements or restrictions on the Puerto Rico Energy Bureau ("PREB"). The only amendment Act 10 makes to the net metering program is a date change.

3. ¶ 2 of the Complaint is accepted only to the extent that net metering is an important component of PREPA's critical renewable energy transformation, the rest is denied. There is no need to restore the PREB's ability to regulate net metering as it deems appropriate because Act 10 does not deprive the PREB of that ability. The only amendment Act 10 makes to the net metering program is a date change. Moreover, it is affirmatively alleged that PREB participated in the legislative process for the amendment and approval of Act 10 and did not express any opposition to the project. In fact, the PREB made suggestions that were ultimately adopted. **Exhibit 2: Positive Report on Senate Project 1064 at 7-10 (Informe Positivo P. del S. 1064).**

4. ¶ 3 of the Complaint is accepted except for the allegation that Act 10 reflects an effort to return to the practices that are a root cause of PREPA's current challenges. The only amendment Act 10 makes to the net metering program is a date change.

5. ¶ 4 of the Complaint is accepted. However, it is affirmatively alleged that Act 10 is unrelated to this problem. The only amendment Act 10 makes to the net metering program is a date change. **Exhibit 3: Act No. 114-2007 with amendments up to 2021**.

6. ¶ 5 of the Complaint is accepted. However, it is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

7. ¶ 6 of the Complaint is accepted. However, it is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

8. The first sentence of ¶ 7 of the Complaint is denied, the rest is accepted. It is affirmatively alleged that the PREB was not on course to complete the net metering study by the April 11, 2024, due date.

9. ¶ 8 of the Complaint is accepted. However, it is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

10. ¶ 9 of the Complaint is accepted. However, it is affirmatively alleged that the only reason that the Fiscal Plan requires that the PREB finalize its study by April 11, 2024, is based on Act No. 17-2024 ("Act 17") amendments to Act No. 114-2007 ("Act 114"). This date was originally based on the assumption that, five years after the enactment of Act 17, Puerto Rico would surpass the 25% renewable energy goal. However, this goal was not achieved by that date. The only amendment Act 10 makes to the net metering program is a date change, to reflect the reality of the renewable energy goals. **Exhibit 1: First Report with Amendments subscribed by Hon. Javier A. Aponte Dalmau, President of the Senate Commission for Strategic Projects and Energy (Primer informe con enmiendas).**

11. ¶ 10 of the Complaint is denied to the extent that it supposes that PREB was set to complete its study and decide on changes. It is affirmatively alleged that the PREB was not on course to complete the net metering study by the April 11, 2024, due date in compliance with the requirements of Act 114. The date of Act 10's enactment is accepted.

12. ¶ 11 of the Complaint is denied. It is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

13. ¶ 12 of the Complaint is denied. It is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

14. ¶ 13 of the Complaint is denied. It is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

15. ¶ 14 of the Complaint is not directed at the Intervenor and requires no response. To the extent that a response is warranted, it is denied. It is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

16. ¶ 15 of the Complaint is denied. It is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

17. ¶ 16 of the Complaint is a legal argument that requires no response. To the extent that a response is warranted, it is denied.

18. ¶ 17 of the Complaint is a legal argument that requires no response. To the extent that a response is warranted, it is denied.

19. ¶ 18 of the Complaint is a legal argument that requires no response. To the extent that a response is warranted, it is denied.

## PARTIES

20. ¶ 19 of the Complaint requires no response.

21. ¶ 20 of the Complaint requires no response.

## JURISDICTION AND VENUE

22. ¶ 21 of the Complaint is a legal conclusion that requires no response. To the extent that a response is warranted, it is denied.

23. ¶ 22 of the Complaint is a legal conclusion that requires no response.

24. ¶ 23 of the Complaint is a legal conclusion that requires no response.

25. ¶ 24 of the Complaint is a legal conclusion that requires no response.

## FACTUAL BACKGROUND

### A.  HISTORY OF PREPA AND THE ENERGY BUREAU

26. ¶ 25 of the Complaint is accepted.

27. ¶ 26 of the Complaint is accepted.

28. ¶ 27 of the Complaint is accepted.

29. ¶ 28 of the Complaint is accepted.

30. ¶ 29 of the Complaint is accepted.

31. ¶ 30 of the Complaint is accepted.

32. ¶ 31 of the Complaint is accepted.

33. ¶ 32 of the Complaint is accepted.

34. ¶ 33 of the Complaint is accepted.

35. ¶ 34 of the Complaint is accepted.

## B. THE COMMONWEALTH'S NET METERING PROGRAM UNDER ACT 114 AND ACT 17

36. ¶ 35 of the Complaint is accepted.

37. ¶ 36 of the Complaint is accepted.

38. ¶ 37 of the Complaint is accepted.

39. ¶ 38 of the Complaint is denied. It is affirmatively alleged that there should only be a revenue shortfall as a result of net metering if PREPA failed to reasonably forecast sales. Additionally, the benefits of net metering are not considered in ¶38 which include but are not limited to avoided capacity costs, avoided energy costs, increased grid reliability, and avoided transmission and distribution costs.

40. ¶ 39 of the Complaint is accepted.

41. ¶ 40 of the Complaint is accepted to the extent that it describes Act 17, the rest is denied. It is affirmatively alleged that Act 17 required that the PREB finalize its study by April 11, 2024, based on the expected achievement of 25% renewable energy goal. This goal was not achieved by that date. The only amendment Act 10 makes to the net metering program is a date change, to reflect the reality of the renewable energy goals. **See Exhibit 1.**

42. ¶ 41 of the Complaint is accepted.

43. ¶ 42 of the Complaint is accepted.

44. ¶ 43 of the Complaint is accepted to the extent that it describes de content of the Fiscal Plan.

45. ¶ 44 of the Complaint is accepted to the extent that it describes de content of official documents.

46. ¶ 45 of the Complaint is accepted. However, it is affirmatively alleged that the only reason that the Fiscal Plan requires that the PREB finalize its study by April 11, 2024, is based on Act 17 amendments to Act 114. This date was originally based on the achievement of 25% renewable energy goal. This goal was not achieved by that date. The only amendment Act 10 makes to the net metering program is a date change, to reflect the reality of the renewable energy goals. **See Exhibit 1.**

### C. THE GOVERNMENT ENACTS ACT 10

47. ¶ 46 of the Complaint is denied to the extent that it supposes that PREB was set to complete its study and decide on changes. It is affirmatively alleged that the PREB was not on course to complete the net metering study by the April 11, 2024, due date in compliance with the legal requirements of Act 114. The timeline of Act 10's enactment is accepted.

48. ¶ 47 of the Complaint is denied. It is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

### D. THE GOVERNOR'S SECTION 204(A) SUBMISSION AND THE OVERSIGHT BOARD'S ASSESSMENT OF THAT SUBMISSION

49. ¶ 48 of the Complaint is accepted.

50. ¶ 49 of the Complaint is accepted to the extent that it describes the Oversight Board's determination.

51. ¶ 50 of the Complaint is accepted to the extent that the submission did not contain a formal estimate, the rest is denied. Whether a formal estimate was required is a legal conclusion and requires no response. To the extent that a response is required, it is denied.

52. ¶ 51 of the Complaint is denied.

53. ¶ 52 of the Complaint is accepted to the extent that the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AFFAF") provided the submission. The rest is a legal conclusion and requires no response. To the extent that a response is required, it is denied.

54. ¶ 53 of the Complaint is accepted to the extent that the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AFFAF") provided the submission. The rest is a legal conclusion and requires no response. To the extent that a response is required, it is denied.

55. ¶ 54 of the Complaint is accepted to the extent that it describes the content of the Oversight Board's letter.

56. ¶ 55 of the Complaint is accepted to the extent that it describes the content of the Oversight Board's letter.

57. ¶ 56 of the Complaint is accepted to the extent that it describes the content of the Oversight Board's letter.

58. ¶ 57 of the Complaint is accepted.

59. ¶ 58 of the Complaint is accepted.

60. ¶ 59 of the Complaint is accepted.

61. ¶ 60 of the Complaint is accepted to the extent that it describes the content of the Oversight Board's letter.

62. ¶ 61 of the Complaint is accepted.

63. ¶ 62 of the Complaint is accepted.

64. ¶ 63 of the Complaint is accepted. It is affirmatively alleged that this draft study does not reach any conclusions, nor does it contradict Act 10.

65. ¶ 64 of the Complaint is accepted.

66. ¶ 65 of the Complaint is accepted to the extent that the Governor has not provided the Oversight Board what it requested. Whether he was required to is a legal conclusion that requires no response. To the extent that a response is required, it is denied.

### E. THE OVERSIGHT BOARD DETERMINED ACT 10 IMPAIRS OR DEFEATS THE PURPOSE OF PROMESA

67. ¶ 66 of the Complaint is a legal conclusion that requires no response.

68. ¶ 67 of the Complaint is accepted to the extent that it describes the content of the Oversight Board's position. The individual points are a legal argument that requires no response. To the extent that a response is warranted, it is denied.

69. ¶ 68 of the Complaint is accepted.

70. ¶ 69 of the Complaint is accepted to the extent that it describes the content of the Commonwealth Fiscal Plan and the Oversight Board's position. However, it is affirmatively alleged that the certification is after the enactment of Act 10 and cannot be considered for the purpose of this case.

## COUNT I
### NULIFICATION OF ACT 10 AND INJUNCTION BARRING IMPLEMENTATION AND ENFORCEMENT OF ACT 10 (PROMESA §§ 108(A)(2) AND 104(K))

71. ¶ 70 of the Complaint requires no response.

72. ¶ 71 of the Complaint is a legal conclusion that requires no response. To the extent that a response is required, it is denied.

73. ¶ 72 of the Complaint is accepted.

74. ¶ 73 of the Complaint is accepted to the extent that it describes the Oversight Board's position.

75. ¶ 74 of the Complaint is a legal conclusion that requires no response. To the extent that a response is required, it is denied.

76. ¶ 75 of the Complaint is accepted.

77. ¶ 76 of the Complaint is a legal conclusion that requires no response. To the extent that a response is required, it is denied.

## COUNT II
### NULIFICATION OF ACT 10 AND INJUNCTION BARRING IMPLEMENTATION AND ENFORCEMENT OF ACT 10 (PROMESA § 204(A)(5))

78. ¶ 77 of the Complaint requires no response.

79. ¶ 78 of the Complaint is a legal conclusion that requires no response. To the extent that a response is required, it is denied to the extent that the requirement of a formal estimate is not absolute.

80. ¶ 79 of the Complaint is accepted to the extent that the submission did not contain a formal estimate, the rest is denied. Whether a formal estimate was required is a legal conclusion and requires no response. To the extent that a response is required, it is denied.

81. ¶ 80 of the Complaint is accepted to the extent that it describes the Oversight Board's communication.

82. ¶ 81 of the Complaint is accepted to the extent that it describes the Oversight Board's communication.

83.  ¶ 82 of the Complaint is accepted.

84. ¶ 83 of the Complaint is accepted to the extent that the Governor has not provided the Oversight Board what it requested. Whether he was required to is a legal conclusion that requires no response. To the extent that a response is required, it is denied.

85. ¶ 84 of the Complaint is accepted to the extent that it transcribes the sections of PROMESA.

86. ¶ 85 of the Complaint is denied. It is affirmatively alleged that the only amendment Act 10 makes to the net metering program is a date change.

87. ¶ 86 of the Complaint is a legal conclusion that requires no response. To the extent that a response is required, it is denied.

## DEFENSES

### RULE 12(b)(7)

88. The Complaint should be dismissed for failure to join an indispensable party. Fed. R. Civ. P. 12(b)(7).

89. Under Rule 19, necessary parties must be joined if feasible. Fed. R. Civ. P. 19(a)(1). A necessary party includes one with an interest in the action and "disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to

protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

90. Should the Oversight Board be victorious in this case, Act 10 will be deemed never to have existed and PREB will be in violation of Act 114 as amended by Act 17. While PREB produced a draft study in June of this year, it did not undergo the formal process required by Act 17 which includes public comments among other requirements. As such, the disposition of this case may have negative repercussions on the PREB and its ability to remain in compliance with its mission. Thus, PREB is an indispensable party.

## RULE 12(b)(6)

91. In the alternative, the Complaint should be dismissed for failing to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).

### A.  THE OVERSIGHT BOARD'S ARGUMENTS UNDER COUNT I ARE ARBITRARY AND CAPRICIOUS BECAUSE ACT 10 DOES NOT IMPAIR OR DEFEAT THE PURPOSES OF PROMESA.

92. In order to justify a Section 108 claim, the Oversight Board misstates the effect, content and scope of Act 10's amendment to Act 114. Additionally, the Oversight Board claims interference with PREB's independence, whereas PREB itself does not.

### i.  Applicable Law

93. Section 108 of PROMESA establishes that "[n]either the Governor nor the Legislature may . . . enact, implement, or enforce any statute . . .that would impair or defeat the purposes of [PROMESA], as determined by the Oversight Board." 48 U.S.C. § 2128(a)(1). However, this power is not absolute. Those "determinations that Commonwealth laws impair or defeat the purposes of PROMESA are reviewed under the 'arbitrary and capricious' standard typically used to review federal agency decisions." Pierluisi v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 37 F.4th 746, 752 (1st Cir. 2022)(citation omitted). Under this standard, the Court "must decide whether the Oversight

Board's determinations were supported by a rational basis and must affirm its decisions if they are reasoned and supported by substantial evidence in the record." Id. (citation omitted).

### ii. Legislative History of Act 114 and Act 10

94. Act 114 was enacted on August 16, 2007. **See Complaint Ex. 5.** Its purpose was to stimulate energy production through renewable resources, a solution to Puerto Rico's energy problems that was adjusted to its geographic and climate realities. **See Complaint Ex. 5 at 1.** Act 17 was enacted on April 11, 2019. **See Complaint Ex. 6.** Among other things, Act 17 established the Renewable Portfolio Standard for each calendar year between 2015 and 2050. **See Complaint Ex. 6 at 83.** According to this, by 2022 the Required Renewable Energy Percentage was 20%. Between 2023 and 2025, it was 40%. **See Complaint Ex. 6 at 83.** This standard was accompanied by amendments to Act 114 which included adding the following language:

> The Energy Bureau is hereby directed to conduct a study, **through an independent formal process and with participation of interested parties and the general public**, to evaluate and consider the costs and benefits associated with: (1) the net metering program, (2) distributed generation technologies, (3) small scale solar energy projects, (4) energy storage systems. Said study must be **completed within five (5) years as of the effective date of the Puerto Rico Energy Public Policy Act**, **shall be subject to public comment,** . . . **Five (5) years after the approval** of the Puerto Rico Energy Public Policy Act, the Bureau **may** issue any determination concerning the net metering program while taking into account the results of such study. . . . **Ex. 6 at 69-70** (emphasis added).
>
> . . . . . . . .
>
> Once the aforementioned five (5)-year term has elapsed, the rate applicable to net metering customers, including the rate or mechanisms through which customers shall be compensated for the energy they supply to the electric power grid, shall be determined exclusively by the Energy Bureau as part of the electric power service rate review process provided in Act No. 57-2014, or through a separate administrative process when deemed necessary or convenient. Any determination regarding the net metering program shall take effect within the term provided by the Bureau.
>
> **Any customer that, on the date in which the Bureau issues its final determination, has a net metering contract or has notified the Bureau about the certification** of the distributed generator installed by a professional engineer or expert electrician, both members of their professional associations

11

and admitted to the practice of their profession, **shall be automatically grandfathered as a net metering customer under the rate in effect before the Bureau's final determination.**

In such cases, the net metering customer shall have the right to the rate or compensation mechanism in effect at the **time for a term of not less than twenty (20) years as of the execution of the net metering contract**. However, the net metering customer shall be entitled and may opt to avail himself of the new rate or compensation mechanism approved by the Bureau. **Ex. 6 at 70-71** (emphasis added).

95. As seen above at the time that Act 17 was enacted, the five-year mark would have fallen in the period of time where Puerto Rico would have to meet at least a 25% Renewable Energy Percentage.

96. Pursuant to its legislative history, Act 10 recognized that the five-year period included in Act 17 when it amended Act 114 was based on those proposed renewable energy goals. In fact, the PREB participated in that process and its insight was instrumental.

> The NEPR suggests: "reaching a consensus on the date for conducting the study, based on the various contributions, suggestions, and recommendations from all sectors, including the industry and the Puerto Rican people."

> The report concludes as follows:

> In order not to weaken the net metering program, it is necessary to amend Article 4 of Law 114-2007. The study mandated by this Article is supposed to be conducted in April 2024, which would be 5 years since the approval of Law 114-2007. **When this deadline was established, it was anticipated that, after these 5 years, Puerto Rico would exceed 25% of distributed renewable energy generation. We are far from that goal. As of today, we have barely surpassed 3% of distributed solar energy generation.**

> Therefore, by amending Article 4 of Law 114-2007 as proposed in the revised text, **we would extend the deadline to the year 2030 to prevent changes to the net metering rate. According to the information from the Regulatory Agency, the interconnection rate of distributed solar systems by 2030 is projected to reach about 2500 MW of distributed renewable energy generation, which would correspond to 25% of Puerto Rico's energy consumption**. **Exhibit 1 (our translation)(emphasis added).**[1]

---

[1] On this same date, the appearing parties have requested leave to file official translations and an extension to do so. However, the original Spanish document is attached as Exhibit 1 for the parties to compare.

97. The amendment, without the PREB's objection and incorporating its suggestion, modified the date to 2030 because of the expected energy goals. This is not a substantive change, nor a policy change. This is a recognition of the reality of how behind Puerto Rico is to meet the Required Renewable Energy Standards in Act 17, which the Fiscal Plan is based on. Every other provision that the Oversight Board challenges regarding the time limits and grandfathered contracts was already a part of Act 114 as amended by Act 17 and not properly before this Court to annul under the Oversight Board's powers.

### iii. Argument

98. Act 10 does nothing more than to change a date and extend the period for the PREB to do its study, in order to comply with the original goals and expectations of Act 114 and Act 17. It does not deprive the PREB of any powers or abilities, it merely provides the PREB space and time to do the work as Act 17 intended, when the renewable energy goals were on track. Furthermore, if PREB thought Act 10 infringed upon its independence, it could have said so in its participation. However, instead, PREB guided the legislatures in the process.

99. The Fiscal Plan required that PREB complete study and implement changes by April 11, 2024, only because Act 17 said so. Act 17 adopted this date based on tangible factors, not arbitrarily. Thus, the Oversight Board cannot arbitrarily claim a date established by law in the Fiscal Plan to defeat the purpose of the law itself.[2] Moreover, it should be noted that Act 10 promotes the renewable energy policy that is also part of the Fiscal Plan.

100.  In truth, Act 10 does not impair the Oversight Board's ability to do anything. The Oversight Board's challenge can only be described by the appearing parties as seeming to be a tantrum resulting from not getting its way immediately. The Oversight Board

---

[2] It should be noted that this is not the first time the Oversight Board plays with the Fiscal Plan to interfere with existing laws. See, for example, the removal of the 20 cent per kilowatt hour threshold in the 2018 PREPA Fiscal Plan which was removed after it was adopted in Act 17, so as to justify the preemption of that provision in the Plan of Adjustment.

speculates that PREB is going to immediately change net metering in a way that would increase revenues to be promised to PREPA's creditors and is unwilling to wait. Clearly it is the Oversight Board that is attempting to use this case as a subterfuge to pressure PREB into action whether or not the agency is ready to take such actions.

101.    As such, there is no true rationale for why the Oversight Board is dead set against a date change that aligns with Act 17 and the realities of renewable energy adoption. Its objection is arbitrary and capricious. Perhaps it is from the Oversight Board that PREB truly needs protection so it may work independently, without outside pressures.

102.    It is the Oversight Board that is improperly intervening in the solar market and energy public policy. Act 10 is only the Legislature's attempt to maintain the status quo while the PREB is able to responsibly carry out its duties and comply with that public policy.

## B.  THE OVERSIGHT BOARD'S ARGUMENTS UNDER COUNT II ARE ARBITRARY AND CAPRICIOUS BECAUSE THE GOVERNMENT MET THE REQUIREMENTS OF PROMESA.

103.    The Oversight Board is using Section 204 to say that any effort by the government that they disagree with substantively is procedurally non-compliant. This interpretation cannot be allowed. One thing is the procedural compliance, and another is the substantive content. As such, the Oversight Board has not made the case that the Government failed to comply with Section 204 and, therefore, this case should be dismissed.

104.    In the alternative, the Court should stay the proceedings and allow the Defendant time to submit corrections with clear instructions.

### i.  Applicable Law

105.     Under Section 204, "[t]he Governor shall include with each law submitted to the Oversight Board . . . [a] formal estimate prepared by an appropriate entity of the territorial government with expertise in budgets and financial management **of** the impact, **if any**, that the law will have on expenditures and revenues." 48 U.S.C. § 2144(a)(2)(A)(emphasis

added). If that entity "finds that the law is not significantly inconsistent with the Fiscal Plan

for the fiscal year, it shall issue a certification of such finding." Id. § 2144(a)(2)(B).

### ii. A formal estimate was not required and, therefore, Section 204(a)(2) was complied with.

106.    Section 204(a)(2)(A) states that the Defendant needs to prepare a formal estimate of the

impact **if there is any**. Because the agencies involved determined that there would be no

impact, a formal estimate of that impact is unnecessary.

107.    Because Act 10 only delays a process, there are no new expenditures attached to it. The

impact is neutral or so minimal that a formal estimate is unnecessary. The Treasury

Department and the Budget Office attested to that.

108.    The law requires the Defendant to submit a formal estimate if there is a fiscal impact.

The Defendant did not submit a formal estimate because there is no fiscal impact. This

meets the procedural requirement. If the Oversight Board disagrees with the declaration

made by the Defendant and believes that there is in fact a fiscal impact, that does not mean

that the Defendant did not comply with the process. Disagreement with content is not equal

to substantive disagreement.

109.    Moreover, to the extent that Section 204(a)(2)(B) requires that the entity that submits

the formal estimate should certify, but there was no need for a formal estimate. AFFAF, in

conjunction with both agencies, created the certification. This is a gap in the law, not a non-

compliance. In the alternative, this Court could stay the case and order the Department of

Treasury and the Budget Office to provide the certification under their own seal rather than

through AFFAF. This is a matter of formality that is easily rectified and should not result

in the annulment of a law.

### iii. AFFAF did address whether Act 10 is inconsistent with the PREPA Fiscal Plan.

110. The certification says that "the implementation of Act 10 – as compared to PREPA's Certified Fiscal Plan revenue and cost projections is expected to be neutral and will help reach Renewable Portfolio Standard of 100% by 2050." **Complaint, Ex. 10 at 6.**

111. Moreover, it states that "PREPA's Certified Fiscal Plan load forecast fully deducts expected DG production from load to calculate Net Utility Sales . . . and there are no projected revenues from DG customers." **Complaint, Ex. 10 at 6. "**Thus, PREPA's Certified Fiscal Plan assumes that the existing net metering policy and bill credit structure remains in place." **Complaint, Ex. 10 at 6.**

112. Evidently, AFFAF **did** address compliance with the Fiscal Plan in its certification and the Oversight Board's arguments to the contrary are arbitrary and capricious. The Oversight Board may disagree with AFAFF's conclusion, but it cannot equate that with noncompliance of the procedural requirement.

### REQUEST FOR RELIEF

113. The Oversight Board's determination that the Defendant did not comply with the procedural requirements of PROMESA is false, arbitrary, and capricious. The Oversight Board's determination that Act 10 impairs or defeats the purpose of PROMESA is, also, arbitrary, and capricious. Moreover, the Oversight Board failed to include a necessary party.

114. In view of the foregoing, the Intervenor-Defendants request that this Court deny the relief requested in the Complaint. As such, the Complaint should be dismissed. In the alternative, that the Court stay the case and allow the Defendant an additional period of time to comply with any procedural requirements that the Court esteems lacking.

In Ponce, Puerto Rico.

Date: September 3rd, 2024.

*[SIGNATURES ON THE NEXT PAGE]*



P.O. Box 10779
Ponce, Puerto Rico 00732
Tel.: 787-848-0666
Fax: 787-841-1435
notificaciones@bufete-emmanuelli.com

*s/ Rolando Emmanuelli Jiménez*
**Lcdo. Rolando Emmanuelli Jiménez**
**USDC:** 214105
rolando@emmanuelli.law

*s/ Zoé C. Negrón Comas*
**Lcda. Zoé C. Negrón Comas**
**USDC:** 308702
zoe@emmanuelli.law
*Counsel for Solar United Neighbors and*
*Sierra Club PR*

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties. A courtesy copy of this Motion will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in *Third Amended Standing Order*.

*s/ Zoé C. Negrón Comas*
**Lcda. Zoé C. Negrón Comas**
**USDC:** 308702
zoe@emmanuelli.law
