**(P. del S. 1121)**
**(Conferencia)**

# LEY NÚM. 17
# 11 DE ABRIL DE 2019

Para crear la "Ley de Política Pública Energética de Puerto Rico"; a los fines de establecer la política pública energética de Puerto Rico para crear los parámetros que guiarán a un sistema energético resiliente, confiable y robusto, con tarifas justas y razonables para todas las clases de consumidores, viabilizar que el usuario del servicio de energía produzca y participe en la generación de energía, facilitar la interconexión de la generación distribuida y microredes, y desagregar y transformar el sistema eléctrico en uno abierto; enmendar las Secciones 2, 3 y 4, reenumerar la Sección 5 como Sección 4A, reenumerar la Sección 5A como Sección 4B, añadir una nueva Sección 5, derogar la Sección 5B, sustituir el contenido de la Sección 6 y Sección 6B de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como "Ley de la Autoridad de Energía Eléctrica de Puerto Rico", para reestructurar la Junta de Gobierno de la Autoridad de Energía Eléctrica, establecer los poderes, facultades, deberes y responsabilidades de las entidades responsables de administrar, operar y mantener el Sistema Eléctrico de Puerto Rico, disponer los requisitos del Plan Integrado de Recursos y establecer penalidades por incumplimiento; enmendar los Artículos 1, 2, 3, 4, 5, 6, 7, 8, 9 y 10, derogar el Artículo 11, reenumerar los Artículos 12 y 13 como Artículos 11 y 12, respectivamente, de la Ley 114-2007, según enmendada, a los fines de aumentar los kilovatios para la interconexión de sistemas de generación distribuida a la red de transmisión y distribución, establecer un término menor para la determinación de interconexión; enmendar los Artículos 1.4, 2.3, 2.4, 2.5, derogar el Artículo 2.6, reenumerar los Artículos 2.7 y 2.8 como Artículos 2.6 y 2.7, reenumerar el Artículo 2.9 como Artículo 2.8 y enmendarlo, reenumerar el Artículo 2.10 como Artículo 2.9, reenumerar el Artículo 2.11 como Artículos 2.10 y enmendarlo, añadir nuevos Artículos 2.12 y 2.13, reenumerar los Artículos 2.12 y 2.13 como Artículos 2.14 y 2.15 de la Ley 82-2010, según enmendada, conocida como "Ley de Política Pública de Diversificación Energética por Medio de la Energía Renovable Sostenible y Alterna en Puerto Rico" para incrementar la Cartera de Energía Renovable hasta alcanzar al 2050 un 100% de energía provenientes de fuentes renovables; aclarar que todos los Certificados de Energía Renovable, incluyendo los de energía renovable y los de abonados con medición neta pueden adquirirse por un proveedor de energía al detal, requerir al Negociado de Energía un estudio para determinar metas específicas de sistemas de almacenamiento de energía, y erradicar el uso de carbón como fuente de energía a partir del 2028; enmendar el Artículo 1.4, reenumerar el Capítulo III como Capítulo IV, reenumerar los Artículos 3.1, 3.2, 3.3, 3.4, 3.5 y 3.6 como 4.1, 4.2, 4.3, 4.4 y 4.5, respectivamente, de la Ley 83-2010, según enmendada, y

añadir un nuevo Capítulo III para crear el Fideicomiso de Energía Verde; enmendar la Sección 4030.17 del Capítulo 3 del Subtítulo D de la Ley 1-2011, según enmendada para aclarar que los equipos solares eléctricos para almacenamiento están exentos del Impuesto sobre Ventas y Uso; sustituir el contenido del Artículo 1.2, enmendar los Artículos 1.3, 1.4, 3.4, 4.1, 4.2, 4.3, el Capítulo VI, eliminar el contenido del Subcapítulo A del Capítulo VI y sus Artículos 6.1 y 6.2 y reservarlos; enmendar los Artículos 6.3, 6.4, 6.6, 6.7, 6.8, 6.11, 6.16, 6.22, 6.23, 6.24 y 6.25, añadir un nuevo Artículo 6.25B, enmendar los Artículos 6.27 y 6.29, añadir nuevos Artículos 6.29A y 6.29B, enmendar los Artículos 6.30, 6.31, 6.32, 6.33, 6.34, 6.35, 6.36 y 6.37, eliminar el contenido del Artículo 6.39 y reservarlo, enmendar los Artículos 6.40, 6.41, 6.42 y 6.43 de la Ley 57-2014, según enmendada, conocida como "Ley de Transformación y ALIVIO Energético de Puerto Rico", para eliminar la Administración de Energía de Puerto Rico, establecer programas de respuesta a la demanda y eficiencia energética, aumentar el presupuesto del Negociado de Energía, otorgarle mayores poderes y facultades, implementar mecanismos de incentivos y penalización basados en métricas de desempeño, ampliar las facultades de la Oficina Independiente de Protección al Consumidor; enmendar las Secciones 2, 5, 6, 7 y 15 de la Ley 120-2018, conocida como "Ley para Transformar el Sistema Eléctrico de Puerto Rico" para extender el término para que el Negociado de Energía emita el Certificado de Cumplimiento de Energía y requerir su autorización para la inaplicabilidad del Artículo 1.9 de esta Ley; enmendar la Sección 7 de la Ley 211-2018 conocida como "Ley de Ejecución del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico", para aclarar que el presupuesto asignado al Negociado de Energía no tendrá que someterse a la Oficina de Gerencia y Presupuesto; y para otros fines relacionados.

# EXPOSICIÓN DE MOTIVOS

El sistema de servicio eléctrico debe ser uno confiable y accesible que promueva el desarrollo industrial, comercial, comunitario y el mejoramiento de la calidad de vida a un costo justo y razonable y que permita el crecimiento económico de la Isla.

En Puerto Rico, a pesar de contar con una estructura monopolística verticalmente integrada, el servicio eléctrico es ineficiente, poco confiable y a un costo irrazonable para los consumidores residenciales, comerciales e industriales. Esto se ha debido principalmente a la falta de mantenimiento de la infraestructura, la inadecuada distribución entre la demanda y generación, la ausencia de modernización necesaria para atemperar el sistema eléctrico a las nuevas tecnologías, el hurto de energía y la disminución de la empleomanía de la Autoridad de Energía Eléctrica. Asimismo, el sistema eléctrico de la isla es altamente contaminante, como resultado de la pobre diversificación de las fuentes de energía, la obstaculización en la integración de generación distribuida y fuentes de energía renovable, así como la alta dependencia de combustibles fósiles. Esto, a su vez, ha conllevado que las centrales generatrices de la

Autoridad de Energía Eléctrica sean fuentes principales de contaminación de nuestro medioambiente con sus altas emisiones de gases de efecto invernadero.

La contaminación provocada por la Autoridad contribuye a incrementar los efectos del cambio climático. Según el Informe del Grupo Intergubernamental de Expertos sobre el Cambio Climático de las Naciones Unidas, publicado el 8 de octubre de 2018, si no se toman acciones concretas y abarcadoras para reducir la emisión de gases de efecto invernadero, las temperaturas continuarán aumentando, provocando el desarrollo de mayores y más frecuentes fenómenos atmosféricos tales como aumentos en el nivel del mar, huracanes y sequías. Los efectos del cambio climático son alarmantes. Recientemente, los informes demuestran que la temperatura ha incrementado un grado Celsius y se espera que alcance un incremento catastrófico de 1.5 grados Celsius entre el 2030 y el 2052, por lo que es imperativo hacer cambios mayores. A estos efectos, los científicos señalan que para lograr tener la oportunidad de atender este incremento resulta necesario ser neutral en las emisiones de dióxido de carbono para el 2050, o de lo contrario las temperaturas podrían reflejar un alza devastadora de tres grados Celsius. Además, la contaminación que genera la Autoridad resulta en el incumplimiento de esta con los Estándares de Emisión de Mercurio y Tóxicos de Aire (MATS, por sus siglas en inglés), los cuales obligan a los generadores de energía a establecer controles estrictos para evitar la contaminación atmosférica con sus unidades generatrices. Las sanciones diarias que estos incumplimientos podrían conllevar ascienden a aproximadamente $37,500 por día en virtud de la Ley Federal de Aire Limpio.

Los mencionados factores imponen la necesidad de un cambio en la política pública energética de la isla. Cada uno de estos factores aportan a tarifas irrazonables, un servicio deficiente y no confiable que provocan la pérdida de valor competitivo de la isla como destino de inversión, afectando adversamente nuestro desarrollo económico, reduciendo la retención y la creación de empleos, entre otros males.

La Autoridad de Energía Eléctrica (AEE o Autoridad) mantiene cautivo a aproximadamente 1.5 millones de consumidores que le representan cerca de $3.45 billones en ingresos totales. El sistema de generación es aproximadamente treinta (30) años más antiguo que el promedio en la industria de energía eléctrica en los Estados Unidos. El sistema eléctrico incluye 2,748 millas de líneas de transmisión, 31,485 millas de líneas de distribución y 334 subestaciones. Las líneas de transmisión incluyen circuitos de 230 kV, 115 kV y 38 kV, que transmiten la energía de las plantas de generación a las subestaciones de distribución para ser enviada a los consumidores por líneas de distribución de menor voltaje. La Autoridad genera dos terceras partes de la electricidad de la isla y el resto lo adquiere por compra. La demanda eléctrica disminuyó de un pico de 3,685 MW en el año fiscal 2006 a 3,159 MW en el año fiscal 2014 y 3,060 MW para agosto de 2017, lo que demuestra una clara tendencia a la disminución de la demanda. A pesar de ello, la Autoridad tiene una capacidad de generación de 5,839 MW, incluyendo los 961 MW provistos por Ecoeléctrica y AES a través de acuerdos de compra de energía de 20 años. Por otra parte, las principales

unidades de generación se encuentran en el área sur de la isla, mientras la mayor demanda energética se encuentra en el norte de la isla. Véase, Build Back Better: Reimagining and Strengthening the Power Grid of Puerto Rico, December 2017.

A pesar de que la Autoridad controla el suplido de energía de la isla, sus estados financieros al 30 de junio de 2014 reflejan deudas que ascienden a sobre $11.7 mil millones. Las condiciones de quiebra de la Autoridad son conocidas desde hace años, tornando a esta corporación pública en una carga insostenible para el pueblo de Puerto Rico. Su frágil situación fiscal, obligó a la Autoridad a refugiarse en un proceso de quiebra bajo el Título III de la Ley Federal de 2016, Puerto Rico Oversight, Management and Economic Stability Act (PROMESA, por sus siglas en inglés).

Debido a las precariedades presupuestarias y financieras acumuladas durante la última década, la AEE y el Gobierno carecen de los recursos económicos necesarios para su reestructuración operacional, su recuperación financiera y los enormes cambios infraestructurales necesarios al sistema eléctrico con el fin de suplir un servicio esencial a nuestros ciudadanos.

Tras el embate de los huracanes Irma y María en septiembre de 2017, Puerto Rico sufrió "el peor desastre natural en la historia de los Estados Unidos", según el Federal Emergency Management Agency (FEMA, por sus siglas en inglés). Los daños causados por los efectos atmosféricos exacerbaron y socavaron aún más la deteriorada condición del sistema eléctrico. El sistema eléctrico quedó devastado con el colapso del 80% de la red de transmisión y distribución. El Gobierno de los Estados Unidos federalizó el proceso de recuperación del sistema eléctrico y lo delegó al Cuerpo de Ingenieros del Ejército de los Estados Unidos, al extremo de ser la voz determinante en la compra y distribución de equipos, materiales y suministros; y también en la asignación de las tareas y zonas a las brigadas de reconstrucción. Ha sido un proceso lento que ha ocasionado grandes sufrimientos y sacrificios a nuestra población, deterioro en nuestra economía y en los ingresos del Estado.

El mantener el servicio eléctrico en manos del Gobierno conlleva un ambiente sujeto a los vaivenes políticos que no promueven la estabilidad de ese servicio. Ello, unido al alto costo de los combustibles en un mercado ampliamente variable y especulativo; una anticuada y deteriorada infraestructura eléctrica dependiente de los combustibles más costosos, menos eficientes y a la misma vez más contaminantes; las continuas exigencias con costos millonarios por parte de la Environmental Protection Agency (EPA); disfunciones administrativas y operacionales relacionadas con la excesiva burocracia gubernamental y la politización; ciertos conflictos laborales, frustrados y costosos intentos para modernizar la infraestructura; un endeudamiento multimillonario; la necesidad del desembolso millonario para una reestructuración operacional; y las negociaciones de los bonistas; requirieron que el Gobierno de Puerto Rico auscultara medidas alternas a las existentes en beneficio de la ciudadanía.

Como consecuencia, el 22 de enero de 2018, el Gobernador de Puerto Rico, Hon. Ricardo Rosselló Nevares, anunció la transformación de nuestro sistema eléctrico.

Luego del proceso de rigor, el 20 de junio de 2018, se aprobó la Ley 120-2018, conocida como "Ley para Transformar el Sistema Eléctrico de Puerto Rico".

Mediante la Ley 120-2018 se delimitó el proceso mediante el cual se transformará el sistema energético en uno moderno, sostenible, confiable, eficiente, costo-efectivo y resiliente ante los embates de la naturaleza. En esta se estableció el proceso mediante el cual se venderían los activos de generación a entidades privadas y la concesión del sistema de transmisión y distribución mediante el mecanismo modificado de Alianzas Público Privadas.

Durante el proceso legislativo relacionado surgió la preocupación de un gran sinnúmero de sectores con relación a la necesidad de tener un marco regulatorio completo, viable, confiable que dirija hacia dónde se encamina el sistema eléctrico de la isla y considere nuestra vulnerabilidad tras la experiencia acaecida tras el paso de los huracanes Irma y María. Asimismo, surgió la necesidad de mantener un ente regulador que fiscalice el que se alcancen los objetivos establecidos mediante esa política pública y la importancia de contar con un Plan Integrado de Recursos actualizado que regule el mercado y una Política Pública Energética al 2050. Por ello, la legislación aprobada reconoció la necesidad de aprobar un nuevo marco regulatorio y atemperar la política pública energética a una de vanguardia que estimule el uso de nueva tecnología, métodos alternos de generación, la generación distribuida, las fuentes de energía renovable, la integración de microredes y la flexibilidad de un mercado competitivo. Para esta labor, concedió un término a la Asamblea Legislativa de ciento ochenta (180) días para el desarrollo del marco regulatorio y la política pública energética.

Tal transformación resulta inminente y necesaria ante la disminución de la demanda por los pasados 10 años. Las métricas del rendimiento del sistema eléctrico de Puerto Rico demuestran que estamos muy por debajo de la de los Estados Unidos en todos los renglones del System Average Interruption Duration Index (SAIDI, por sus siglas en inglés), el System Average Interruption Frequency Index (SAIFI, por sus siglas en inglés) y el Customer Average Interruption Duration Index (CAIDI, por sus siglas en inglés). Estos índices son usados como indicadores de confiabilidad por las empresas de energía eléctrica para reflejar la duración promedio de interrupción para cada cliente atendido, el número promedio de interrupciones que un cliente experimentaría y la duración promedio de la interrupción que experimentaría cualquier cliente con el tiempo promedio de restauración, respectivamente.

El sistema eléctrico de Puerto Rico carece de una planificación ordenada que identifique las necesidades de modernización o retiro de instalaciones, el mantenimiento de infraestructura, prioricen sistemas soterrados en áreas de instalaciones de servicios indispensables y cascos urbanos. Tampoco existe una integración de generación distribuida y fuentes de energía renovable que le provean flexibilidad, confiabilidad, resiliencia y eficiencia al sistema eléctrico.

La Asamblea Legislativa se dio a la tarea de revisar la legislación existente relacionada con el marco regulatorio y la política pública energética actual en Puerto

Rico, incluyendo y sin limitarse a las siguientes: (1) Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como "Ley de la Autoridad de Energía Eléctrica de Puerto Rico"; (2) Ley 114-2007, según enmendada, conocida como "Programa de Medición Neta en la Autoridad de Energía Eléctrica"; (3) Ley 83-2010, según enmendada, conocida como "Ley de Incentivos de Energía Verde de Puerto Rico"; (4) Ley Núm. 82-2010, según enmendada, conocida como "Ley de la Política Pública de Diversificación Energética por Medio de la Energía Renovable Sostenible y Alterna en Puerto Rico"; (5) Ley. 57-2014, según enmendada, conocida como "Ley de Transformación y ALIVIO Energético"; y (6) Ley 120-2018, conocida como "Ley para Transformar el Sistema Eléctrico de Puerto Rico".   A su vez, integró el insumo y recomendaciones de varios sectores con conocimiento especializado en el área, de la población en general, el mercado y el Gobierno de Puerto Rico, para establecer los parámetros que guiarán a Puerto Rico a una visión de futuro en la que haya un sistema energético resiliente, confiable y robusto que permita al consumidor ser un agente activo, la modernización de la red de transmisión y distribución, la transición del uso de combustibles fósiles a fuentes de energía renovable, la integración de generación distribuida, microredes y tecnologías de avanzada que beneficien a los consumidores  y resulten en tarifas que no alcancen los 20 centavos por kilovatio hora. Entre estos informes están: el Development of the Regulatory Framework and Public Policy for the Puerto Rico Energy Transformation, Comité de Asesoramiento del Senado de Puerto Rico para la Transformación Energética, Octubre 2018; el Public Collaborative for Puerto Rico's Energy Transformation del Rocky Mountain Institute y el Instituto de Competitividad y Sostenibilidad Económica, Octubre 2018; el Energy Resilience Solutions for the Puerto Rico Grid del Departamento de Energía de Estados Unidos, Junio 2018; Reimagina Puerto Rico Energy  Sector Report, Junio 2018; Build Back Better: Reimagining and Strengthening the Power Grid of Puerto Rico, December 2017.

Por otro lado, ante la urgencia de transformar el sistema eléctrico de la isla, diversos sectores de interés han señalado sobre la necesidad de despolitizar la Autoridad de Energía Eléctrica. Durante una audiencia congresional sobre la corporación pública, celebrada en el 2018, el Presidente del Comité de Recursos Naturales de la Cámara EE. UU., manifestó la necesidad de buscar legislación que permita despolitizar la Autoridad de Energía Eléctrica.  La desagregación del Sistema Eléctrico y la incorporación del sector privado en la operación de activos y en la prestación del servicio de energía eléctrica permitirán erradicar la intervención político partidista.

Para alcanzar estos objetivos, esta Ley establece los medios para establecer una programación efectiva que permita lograr los parámetros y metas claras con relación a eficiencia energética, la Cartera de Energía Renovable, interconexión de generación distribuida y microredes, el trasbordo de energía y el manejo de la demanda. Al así hacerlo, entre otras medidas, impone responsabilidad por la falta de diligencia y cumplimiento en la implementación de la política pública energética de Puerto Rico y adopta mecanismos de incentivos que viabilicen la ejecución de la misma.  Igualmente,

en cuanto al Negociado de Energía de Puerto Rico, se robustecen sus facultades y deberes, aumenta su presupuesto, se le provee para la implementación de mecanismos alternos que logren la ejecución de la política pública, se incorpora con mayores poderes en el proceso de los Contratos de Alianza o Contratos de Venta establecidos en la Ley 120-2018.

Un nuevo y mejor Puerto Rico se construye con la voluntad de los que no se amilanan ante la adversidad. Nos levantamos teniendo la capacidad para innovar y hacer realidad los cambios necesarios que beneficien a nuestro Pueblo. La transformación que iniciamos cambiará la ineficiencia por la excelencia operacional. Con este paso damos un impulso hacia el futuro y el progreso de Puerto Rico.

**DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:**

Capítulo I.- Disposiciones Generales

Artículo 1.1.- Título.

Esta Ley se conocerá y podrá ser citada como la "Ley de Política Pública Energética de Puerto Rico".

Artículo 1.2.- Definiciones.

Las siguientes palabras o términos tendrán los significados que se indican a continuación, excepto disposición en contrario o donde el contexto claramente indique otra cosa. Las palabras usadas en el singular incluirán el plural y viceversa:

(a) Activos de Generación Legados: Significará aquellos Activos de la Autoridad de Energía Eléctrica, según dicho término es definido en la Ley 120-2018, que estén relacionados con la generación de energía y que la Autoridad no venda como parte del proceso de transformación autorizado bajo la Ley 120-2018. La operación de estos activos será transferida a una o más compañías de energía con el único propósito de que sean operados por el término de su vida útil, según este sea dispuesto en el Plan Integrado de Recursos.

(b) Autoridad o la AEE: La Autoridad de Energía Eléctrica de Puerto Rico creada por la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, y cualquiera de sus subsidiarias y sus actividades, sean o no comerciales.

(c) Compañías de Servicio Eléctrico o Compañía de Energía: Significará cualquier persona o entidad, natural o jurídica, incluyendo las cooperativas de energía, dedicada a ofrecer servicios de generación, servicios de transmisión y distribución, facturación, trasbordo de energía, servicios de red ("grid services"), almacenamiento de energía, reventa de energía eléctrica, así como cualquier otro servicio eléctrico según definido por el Negociado. La Autoridad de Energía Eléctrica o su sucesora, así como cualquier operador de la red de transmisión y distribución eléctrica, se considerarán como Compañías de servicio eléctrico para los propósitos de esta Ley.

(d) Contratante: Tiene el significado otorgado a dicho término en la Ley 29-2009, disponiéndose que para propósitos de esta Ley se refiere a aquellas personas naturales o jurídicas que otorguen Contratos de Alianza con respecto a las Transacciones de la AEE.

(e) Contrato de Alianza: Tiene el significado otorgado a dicho término en la Ley 29-2009, disponiéndose que en el caso de una Transacción de la Autoridad, requerirá el Certificado de Cumplimiento de Energía dispuesto en la Ley 120-2018.

(f) Energía renovable: Incluye conjuntamente los términos "energía renovable sostenible", "energía renovable alterna" y "energía renovable distribuida" según estos términos son definidos en la Ley 82-2010, según enmendada, conocida como "Ley de Política Pública de Diversificación Energética por Medio de la Energía Renovable Sostenible y Alterna en Puerto Rico".

(g) Generación distribuida: Se refiere a la generación de energía que alimenta la red de distribución desde una instalación de una fuente de energía cercana al lugar en el que será consumida.

(h) Instalaciones de Servicios Indispensables: Significará las instalaciones de salud, estaciones de policía y fuerzas armadas, estaciones de bomberos, oficinas de manejo de emergencias, refugios para manejo de emergencias, prisiones, puertos, aeropuertos, instalaciones utilizadas para proveer servicios de telecomunicaciones, instalaciones para el suministro y tratamiento de agua y tratamiento de aguas residuales e instalaciones educativas y cualquier otra instalación que se designe por el Negociado de Energía como una "Instalación de Servicios Indispensables" mediante reglamento.

(i) Ley 29-2009: Significará la Ley 29-2009, según enmendada, conocida como "Ley de Alianzas Público Privadas".

(j) Ley 57-2014: Significará la Ley 57-2014, según enmendada, conocida como "Ley de Transformación y ALIVIO Energético de Puerto Rico".

(k) Ley 82-2010: Significará la Ley Núm. 82-2010, según enmendada conocida como "Ley de Política Pública de Diversificación Energética por Medio de la Energía Renovable Sostenible y Alterna en Puerto Rico".

(l) Ley 83: Significará la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como "Ley de la Autoridad de Energía Eléctrica de Puerto Rico".

(m) Ley 120-2018: Significará la Ley 120-2018, según enmendada, conocida como "Ley para Transformar el Sistema Eléctrico de Puerto Rico".

(n) Microredes: Tiene el significado otorgado a dicho término en el Artículo 1.4 de la Ley 82-2010.

(o) Negociado: Significará el Negociado de Energía de Puerto Rico establecido en virtud del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico y de la Ley 211-2018, antes Comisión de Energía de Puerto Rico creada

por la Ley 57-2014, según enmendada, que es un ente independiente especializado encargado de reglamentar, supervisar y hacer cumplir la política pública energética del Gobierno de Puerto Rico.

(p) Plan integrado de recursos o "PIR": Significará un plan que considere todos los recursos razonables para satisfacer la demanda de los servicios eléctricos durante determinado período de tiempo, incluyendo aquéllos relacionados a la oferta energética, ya sean los recursos existentes, tradicionales y/o nuevos, y aquellos relacionados a la demanda energética, tales como conservación y eficiencia energética, respuesta a la demanda o "demand response", y la generación distribuida por parte del cliente industrial, comercial o residencial. Todo plan integrado de recursos (PIR) estará sujeto a las disposiciones de esta Ley y a las reglas establecidas por el Negociado, que deberá aprobar el mismo. Todo plan deberá hacerse con amplia participación ciudadana y de todos los grupos de interés.

(q) Programa de Política Pública Energética: Significará el Programa de Política Pública Energética del Departamento de Desarrollo Económico y Comercio de Puerto Rico, en virtud del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico y la Ley 211-2018, antes conocido como la Oficina Estatal de Política Pública Energética, encargado de desarrollar y difundir la política pública energética del Gobierno de Puerto Rico.

(r) Prosumidor: Se refiere a todo usuario o consumidor del Sistema Eléctrico que cuente con la capacidad de generar energía eléctrica para su propio consumo y, a su vez, con la capacidad de suplir cualquier excedente de energía a través de la red eléctrica.

(s) Servicio Eléctrico: Se refiere al conjunto de actividades que comprenden un sistema eléctrico y que permiten a un cliente recibir y consumir energía eléctrica. El término servicio eléctrico incluye, pero no se limita a, todas aquellas actividades relacionadas a la generación, transmisión, distribución, comercialización, facturación, almacenamiento y trasbordo de energía eléctrica.

(t) Transacción(es) de la AEE: Cualquiera y toda transacción mediante la cual la AEE o el Gobierno de Puerto Rico establezca una o más Alianzas con respecto a cualquier función, servicio o instalación de la AEE o un Contrato de Venta de los activos de la AEE relacionados a la generación de energía, y que se lleve a cabo conforme a las disposiciones de la Ley 29-2009, y la Ley 120-2018.

Artículo 1.3.- El Sistema Eléctrico de Puerto Rico.

El Sistema Eléctrico de Puerto Rico se compone de las funciones de generación, transmisión, distribución y comercialización de la energía eléctrica, así como la planificación y el control del sistema. El servicio de energía eléctrica es uno de los servicios básicos y esenciales sobre los cuales se fundamenta el desarrollo sostenible del pueblo puertorriqueño, por lo que todas las funciones del Sistema Eléctrico son de interés público e importancia estratégica para toda función privada o gubernamental.

Sin embargo, a partir de la aprobación de esta Ley, la Autoridad no poseerá el derecho exclusivo de producir, transmitir, distribuir y comercializar el suministro de energía eléctrica. El Sistema Eléctrico de Puerto Rico funcionará de manera abierta y no discriminatoria, pero sujeto a la regulación del Negociado de Energía de Puerto Rico.

Artículo 1.4.- Principios rectores del Sistema Eléctrico de Puerto Rico.

Las actividades o funciones relacionadas con el servicio de electricidad se regirán por principios de eficiencia, calidad, continuidad, adaptabilidad, imparcialidad, solidaridad y equidad.

i) El principio de eficiencia obliga a la correcta asignación y utilización de los recursos de tal forma que se garantice la prestación del servicio al menor costo económico posible y a que las inversiones en el desarrollo de los recursos que componen el Sistema Eléctrico respondan a las mejores prácticas de la industria;

ii) En virtud del principio de calidad, el servicio eléctrico debe cumplir con los requisitos técnicos y los estándares de confiabilidad y calidad que se establezcan para él;

iii) El principio de continuidad implica que el servicio se deberá prestar aun en casos de quiebra, liquidación, intervención, sustitución o terminación de contratos de las empresas responsables del mismo, sin interrupciones diferentes a las programadas por razones técnicas, fuerza mayor, caso fortuito, o por las sanciones impuestas al consumidor por el incumplimiento de sus obligaciones;

iv) El principio de adaptabilidad conduce a la incorporación de los avances de la ciencia y de la tecnología que aporten mayor calidad y eficiencia en la prestación del servicio al menor costo económico;

v) El principio de imparcialidad exige, dentro de las mismas condiciones, un tratamiento igual para los consumidores, independientemente de su condición social y poder adquisitivo o de las condiciones y características técnicas de la prestación del servicio;

vi) El principio de solidaridad entiende que al diseñar el régimen tarifario se tendrá en cuenta el objetivo de que los precios del servicio eléctrico sean asequibles para todos los consumidores, en especial aquellos de menores ingresos;

vii) El principio de equidad promueve que se alcance una cobertura equilibrada y adecuada en los servicios de energía en las diferentes regiones y sectores de la isla, para garantizar la satisfacción de las necesidades básicas de toda la población.

Artículo 1.5.- Política Pública Energética 2050.

Se declara como política pública del Gobierno de Puerto Rico:

1) Acceso Universal a Servicio Eléctrico

(a) Garantizar un costo asequible, justo, razonable, y no discriminatorio para todos los consumidores de servicio eléctrico en Puerto Rico. Al revisar y aprobar los derechos, rentas, tarifas y cualquier otro tipo de cargo que una compañía de energía procure cobrar, el Negociado de Energía evaluará los esfuerzos de la respectiva compañía de energía para que dichos derechos, rentas, tarifas y cualquier otro tipo de cargo se acerquen lo más posible a la meta aspiracional de veinte (20) centavos el kilovatio hora incluido en el Plan Fiscal Certificado para la Autoridad de Energía Eléctrica de Puerto Rico. En última instancia, el Negociado será responsable de asegurar que los derechos, rentas, tarifas y cualquier otro tipo de cargo cobrados por una compañía de energía sean justos y razonables y consistentes con prácticas fiscales y operacionales acertadas que proporcionen un servicio confiable, al menor costo razonable;

(b) Asegurar al pueblo de Puerto Rico la disponibilidad de abastos e insumos energéticos;

2) Modelo de Servicio Eléctrico

(a) Promover los cambios necesarios para transformar al Sistema Eléctrico en uno que responda a las necesidades energéticas de Puerto Rico en el Siglo XXI;

(b) Velar por la implantación de estrategias para lograr eficiencia en la generación, transmisión y distribución de la energía eléctrica, de manera que se asegure su disponibilidad y su suministro a un costo asequible, justo y razonable;

(c) Utilizar adecuadamente todas las aportaciones, subsidios o contribuciones directas o indirectas de servicio eléctrico conforme a los objetivos para los cuales fueron creadas;

(d) Establecer las consecuencias penales, tanto a nivel personal como a nivel corporativo, por el incumplimiento con los mandatos legales por parte de las compañías de servicio eléctrico o por parte de cualquier persona, natural o jurídica, que directa o indirectamente intervenga en la prestación del servicio eléctrico;

(e) Establecer un modelo de Sistema Eléctrico en el que se maximice el aprovechamiento de los recursos energéticos disponibles y se empodere al consumidor a que forme parte de la cartera de recursos energéticos mediante la adopción de estrategias de eficiencia energética, respuesta a la demanda, la instalación de generadores distribuidos, entre otras;

(f) Diseñar una red eléctrica que contemple el desarrollo e integración de comunidades solares, el trasbordo de energía y la creación de microredes, cooperativas eléctricas o cooperativas de energía, como alternativas y herramientas para aumentar el acceso a energía renovable, y para contribuir a su resiliencia ante desastres naturales;

(g) Asegurar que el establecimiento e implementación de la política pública energética sea un proceso continuo de planificación, consulta, ejecución, evaluación y mejoramiento en todos los asuntos energéticos;

3) Regulador de Energía y Regulación Basada en el Rendimiento

(a) El Negociado de Energía será la entidad independiente encargada de regular el mercado de energía en Puerto Rico. El Negociado contará con amplios poderes y deberes, así como con los recursos financieros y técnicos y el personal capacitado necesario para asegurar el cumplimiento con la política pública energética, las disposiciones y mandatos de esta Ley, y para asegurar costos justos y razonables, asequibles, fácil de comprender y claramente comparables y transparentes mediante la fiscalización y revisión de las tarifas;

(b) El Negociado deberá ejercer un alto escrutinio sobre el mantenimiento de la red eléctrica y requerir informes periódicos que describan el estado del mantenimiento de la red eléctrica, así como los planes elaborados para satisfacer dichas necesidades;

(c) El Negociado deberá utilizar, cuando así se amerite, mecanismos alternos a la regulación tarifaria a base de los costos del servicio ("cost-based regulation") para el cumplimiento y la implementación de las métricas y los objetivos establecidos en esta Ley;

(d) Cuando así lo estime apropiado, en los procesos de regulación tarifaria, el Negociado establecerá mecanismos de incentivos y penalización basados en métricas de desempeño a las compañías de servicio eléctrico y de cumplimiento fiel con las órdenes del Negociado;

4) Cultura Energética, Educación, Investigación y Desarrollo

(a) Fomentar el uso responsable y eficaz de los recursos energéticos en Puerto Rico entre los clientes residenciales, comerciales e industriales;

(b) Promover esfuerzos educativos para concientizar a la ciudadanía y los clientes de servicio eléctrico sobre estrategias de eficiencia energética, reducción de consumo, generación distribuida y otras herramientas disponibles para empoderar al consumidor y lograr que este tome mayor control sobre sus hábitos de consumo energético;

(c) Reforzar la investigación y el desarrollo de la energía solar, hidroeléctrica, eólica y oceánica, entre otras tecnologías de generación sustentables para maximizar su uso;

5) Programas de Generación de Energía, Eficiencia y Respuesta a la Demanda

(a) Reducir nuestra dependencia en fuentes de energía derivadas de combustibles fósiles, y desarrollar planes a corto, mediano y largo plazo que

permitan establecer una cartera de energía balanceada y óptima basada en el desarrollo de energía renovable para el Sistema Eléctrico de Puerto Rico;

(b) Requerir que las unidades de generación a base de combustibles fósiles, tanto existentes como futuras, tengan la capacidad de operar con al menos dos tipos de combustibles fósiles, de los cuales uno debe ser gas natural, que minimicen las emisiones de gases de efectos de invernadero, y aumenten la capacidad de la red eléctrica para integrar generación distribuida y energía renovable;

(c) Asegurar que la compra de combustibles para la generación de energía y la compra de energía para la red de transmisión y distribución, sea a precios razonables cuyos precios tengan un componente que aproveche las reducciones de precio en los insumos según el mercado, las realidades geográficas y las realidades de la infraestructura eléctrica de Puerto Rico, entre otros factores;

(d) Asegurar que los acuerdos de compra de energía no obstaculicen el desarrollo de un sistema moderno que integre los recursos renovables y la energía de fuentes de generación distribuida, evaluando siempre las condiciones existentes y futuras de la demanda energética y lo dispuesto en el Plan Integrado de Recursos;

(e) Promover y velar que los precios estén basados en el costo real de los servicios prestados, en parámetros de eficiencia, o en cualesquiera otros parámetros reconocidos en la industria de servicio eléctrico;

(f) Establecer programas y estrategias de respuesta o manejo de demanda y de eficiencia energética que contemplen metas a corto, mediano y largo plazo e incentiven a los clientes a consumir de manera eficiente con un enfoque que resulte en una reducción de costos, reducción en el consumo eléctrico, mayor estabilidad y confiabilidad;

6) Responsabilidad Ambiental

(a) El Gobierno de Puerto Rico, sus agencias, municipios y corporaciones públicas, así como de toda persona natural o jurídica, cumplirán con todas las leyes y reglamentos ambientales aplicables, en aras de mejorar la calidad de vida de todos los puertorriqueños y de los ecosistemas de Puerto Rico;

(b) Reducir agresivamente el uso de combustibles fósiles, minimizar las emisiones de gases de efecto de invernadero y apoyar las iniciativas de Puerto Rico con respecto a la problemática del cambio climático en las vertientes de mitigación, adaptación y resiliencia;

7) Uso de la Energía en el Sector Público

(a) El Gobierno de Puerto Rico, sus agencias, municipios y corporaciones públicas serán un consumidor eficiente y responsable y promoverá la conservación y la eficiencia energética en todas las ramas e instrumentalidades del Gobierno de Puerto Rico, así como en la ciudadanía en general;

(b) El Gobierno de Puerto Rico deberá lograr la conversión rápida del alumbrado público a luces electroluminiscentes ("light emitting diode", LED, por sus siglas en inglés) o renovables, a fin de reducir el costo general de la iluminación a nivel municipal y estatal;

8) Energía Distribuida, Almacenamiento de Energía e Integración de Tecnología

(a) Asegurar la integración de energía renovable al Sistema Eléctrico de forma segura, confiable, a un costo razonable, e identificar las tecnologías y los lugares aptos para viabilizar la integración en atención a los mejores intereses de Puerto Rico, tales como sistemas de relleno sanitario no operacionales y aquellos terrenos previamente contaminados; procurar que se lleven a cabo las mejoras necesarias para cumplir con las métricas de la Cartera de Energía Renovable, según la Ley 82-2010;

(b) La Autoridad y cualquier otra compañía de servicio eléctrico deberán cumplir con las normas de interconexión de generación distribuida y microredes, incluidos los procedimientos acelerados bajo la regulación para interconectar generadores al sistema de distribución, con los procesos para la interconexión de microredes y deberán proveer un proceso efectivo para minimizar el tiempo de interconexión.

(c) Fomentar el desarrollo de microredes, especialmente en instalaciones de servicios indispensables según definido en la Ley 57-2014 y áreas remotas, como mecanismo  para promover la resiliencia y la modernización de las redes de distribución.

(d) Requerir a cada compañía de servicio eléctrico diseñar opciones de mitigación adaptadas a sus redes de tecnología de la información y operativa, lo que incluirá la adopción de medidas concretas de seguridad cibernética de manera que puedan prevenir y manejar efectivamente los ataques cibernéticos;

(e) Realizar los estudios correspondientes para establecer los objetivos específicos de almacenamiento de energía que mejor se adapten a las necesidades de Puerto Rico;

9) Diseño de la infraestructura, resiliencia, mantenimiento y seguridad

(a) Garantizar la seguridad y confiabilidad de la infraestructura eléctrica mediante la utilización de herramientas tecnológicas modernas que propulsen una operación económica y eficiente y permitan la integración y despliegue de fuentes renovables;

(b) Diseñar la infraestructura del Sistema Eléctrico para que sea robusta y resistente a los fenómenos atmosféricos y otros desastres, procurando aplicar y adoptar códigos de diseño que cumplan con las normas vigentes reconocidas a

nivel Nacional, así como los requisitos de seguridad en los postes de distribución que tengan infraestructura eléctrica, de telecomunicaciones, y otros;

(c) Planificar el Sistema Eléctrico abordando las interdependencias entre el sistema de energía eléctrica y otras instalaciones de servicios indispensables, para contrarrestar los efectos de la pérdida de energía;

(d) Realizar los estudios de planificación pertinentes a los voltajes operacionales del sistema de transmisión y distribución, de manera que se pueda asegurar una operación confiable del mismo; especificar y mantener un inventario de componentes del Sistema Eléctrico que cumpla con los estándares vigentes de la industria eléctrica de los Estados Unidos Continentales, que facilite el reemplazo de los mismos por mantenimiento regular o por daños ocasionados por eventos mayores, tales como tormentas y huracanes; disponiéndose, que no se excluye el posible uso de Volt-Var Optimization de voltaje como una tecnología de eficiencia.

(e) Mantener la infraestructura eléctrica en condiciones óptimas para asegurar la confiabilidad, resiliencia y seguridad del servicio eléctrico; se requerirá que los proveedores de servicio eléctrico presenten anualmente planes de aseguramiento energético, planes para la estandarización de activos, inventarios de partes de reemplazos, y planes de las mejores prácticas en mantenimiento del sistema;

(f) Asegurar la continua mejora de la red eléctrica para promover la resiliencia y la diversificación combinando la capacidad de generación con la demanda por región y facilitando una transición efectiva a nuevas tecnologías y fuentes de energía renovables;

(g) Proporcionar incentivos para la modernización de la red que incorpore tecnología adecuada para cumplir con los objetivos de transformación que no implique costos excesivos;

(h) Realizar, luego del análisis correspondiente y en la mayor medida posible, el soterrado del servicio eléctrico a nivel de distribución en los centros urbanos para aumentar la resiliencia y la rehabilitación y repoblación de estos, con especial atención en las instalaciones de servicios indispensables;

10) Servicio al Consumidor, Participación y Transparencia

(a) Garantizar a todo consumidor el derecho a un servicio eléctrico confiable, estable y de excelencia, a precios asequibles, justos y razonables, a una factura transparente y fácil de entender y a una respuesta de servicio rápido;

(b) Tramitar las disputas sobre facturas o servicios de electricidad de forma equitativa y diligente;

(c) Promover la transparencia y la participación ciudadana en todos los procesos relacionados al servicio de energía en Puerto Rico.

Artículo 1.6.- Objetivos iniciales

La política pública energética tiene como misión alcanzar, entre otros, los siguientes objetivos iniciales:

1) Promover la más rápida y efectiva reconstrucción, modernización y actualización del sistema de transmisión y distribución de la red para desarrollar un sistema robusto, flexible que pueda integrar nuevas tecnologías, generación distribuida, fuentes de energía renovable, mecanismos de eficiencia energética y provea a los consumidores alternativas en el sector energético maximizando los recursos estatales y federales disponibles.

2) Promover el uso de centrales eléctricas de menor escala, que tengan la capacidad de operar con múltiples combustibles ("diversified fuel mix"), de los cuales uno debe ser gas natural, que minimicen las emisiones de gases de efectos de invernadero, con tecnología e infraestructura asociada moderna y de alta eficiencia ("high efficiency capacity"), según definido por el Negociado de Energía, y con capacidad para integrar generación distribuida y energía renovable a la red eléctrica.

3) Eliminar el uso de carbón como fuente de generación de energía no más tarde del 1 de enero de 2028.

4) Viabilizar que el consumidor del servicio de energía pueda convertirse en prosumidor mediante programas como medición neta, la adopción de diseños tarifarios que promuevan la generación detrás del contador ("behind-the-meter"), entre otros mecanismos disponibles o que estén disponibles en un futuro.

5) Establecer prioridades en el mantenimiento de la infraestructura del Sistema Eléctrico y crear programas de manejo de vegetación.

6) Requerir a las compañías de servicio eléctrico adoptar medidas de seguridad cibernética para prevenir y manejar efectivamente los ataques cibernéticos que puedan afectar las redes de tecnología de la información y operativa.

7) Reducir, hasta eventualmente eliminar, el uso de combustibles fósiles para la generación de energía, mediante la integración de energía renovable de forma ordenada y progresiva, garantizando la estabilidad del Sistema Eléctrico mientras se maximizan los recursos de energía renovable a corto, mediano y largo plazo. Para ello, se establece una Cartera de Energía Renovable con el fin de alcanzar un mínimo de 40% para en o antes del 2025; 60% para en o antes del 2040; y 100% para en o antes del 2050.

8) Facilitar la interconexión de generación distribuida a la red eléctrica por cualquier mecanismo disponible, incluyendo, pero sin limitarse a la generación distribuida, fuentes de energía renovable, medición neta y el uso de microredes mediante la implementación de los mecanismos, estrategias y tecnologías disponibles en la industria eléctrica para estos propósitos.

9) Impulsar el uso de tecnología para almacenamiento de energía en todos los niveles de consumidores para facilitar y acelerar la integración de fuentes de energía renovable y capitalizar su capacidad como mecanismo de energía distribuida.

10) Promover programas de respuesta a la demanda y eficiencia energética con un calendario definido e incentivos para viabilizar los programas a corto, mediano y largo plazo enfocándose en los beneficios que tales programas proveen a los consumidores y al Sistema Eléctrico.

11) Alcanzar una meta de treinta por ciento (30%) de eficiencia energética para el 2040, según lo dispuesto en la Ley 57-2014.

12) Reemplazar el cien por ciento (100%) del alumbrado público por luces electroluminiscentes ("light emitting diode", o LED, por sus siglas en inglés) o renovables para el 2030.

13) Uniformar el equipo y el diseño con los parámetros del USDA Rural Utilities Service (RUS), cuando sea factible y apropiado, para ayudar con el reemplazo en situaciones regulares y de emergencia;

14) Robustecer las facultades y funciones del Negociado de Energía de Puerto Rico para viabilizar y ejecutar la implementación de la política pública energética de Puerto Rico concediéndole mayor autonomía presupuestaria, ampliando sus poderes para investigar, incentivar, fiscalizar y penalizar cualquier persona natural o jurídica bajo su jurisdicción.

15) Requerir que toda compañía de servicio eléctrico en Puerto Rico cumpla con el Plan Integrado de Recursos aprobado por el Negociado de Energía.

16) Establecer los elementos necesarios para alcanzar la aspiración del Pueblo de Puerto Rico de contar con un nuevo Sistema Eléctrico con tarifas menores a los veinte centavos por kilovatio/hora (20¢/kWh), y energía limpia, moderna y confiable que sea la base del desarrollo económico sostenible de la isla.

Artículo 1.7.- Planificación y operación del Sistema Eléctrico.

La planificación, reglamentación y operación del Sistema Eléctrico, así como la generación, la transmisión y distribución de la energía eléctrica, son funciones estratégicas en las cuales el Estado tiene un interés legítimo. Por tal razón, el Gobierno de Puerto Rico, por sí o a través de la Autoridad u otra corporación pública afiliada a la Autoridad, mantendrá la titularidad sobre los activos relacionados a la transmisión y distribución y podrá retener la titularidad sobre los activos de generación legados. La Autoridad delegará o transferirá la operación, administración y/o mantenimiento de las funciones de , generación, transmisión y distribución, comercialización y operación del Sistema Eléctrico mediante contratos otorgados y perfeccionados según lo dispuesto en la presente Ley, la Ley 120-2018 y la Ley 29-2009. La función de planificación y reglamentación del Sistema Eléctrico

será responsabilidad del Gobierno de Puerto Rico, por medio del Negociado de Energía y del Programa de Política Pública Energética, en el ámbito de sus competencias, y a través del Plan Integrado de Recursos.

El Negociado de Energía podrá, sujeto a lo dispuesto en esta Ley de conformidad con los parámetros de planificación contemplados en el Plan Integrado de Recursos, adoptar las normas que regirán el proceso mediante el cual consumidores comerciales e industriales de mayor escala, cooperativas de energía u otras estructuras de agregación de demanda, puedan contratar la compra de energía directamente de un productor de energía independiente. De igual forma, el Negociado regulará las normas que aplicarán al servicio de trasbordo de dicha energía a través del Sistema Eléctrico, y las tarifas aplicables a los consumidores y los productores de energía independiente por dichos servicios.

La Autoridad, o su sucesora en derecho, retendrá la responsabilidad primaria de ejercer como proveedor de último recurso (POLR, por sus siglas en inglés), de cualquiera de las funciones de generación, transmisión, distribución, comercialización y operación del Sistema Eléctrico que hayan sido delegadas o transferidas conforme a lo dispuesto en esta Ley.

Artículo 1.8.- Desagregación y Transformación del Sistema Eléctrico

(a) Sistema abierto. El Sistema Eléctrico de Puerto Rico no podrá ser un monopolio verticalmente integrado. Tampoco podrá establecerse un monopolio horizontal en la función de generación. Ninguna compañía de servicio eléctrico, por sí, a través de, o en conjunto con  una subsidiaria o afiliada, podrá controlar el cincuenta por ciento (50%) o más de la capacidad de los activos de generación, con excepción de la Autoridad, y solo cuando se trate de activos de generación legados. No obstante, la Autoridad deberá transferir su función de operación, administración y/o mantenimiento de activos de generación legados en o antes del 31 de diciembre de 2020. El porcentaje máximo que una compañía de servicio eléctrico, su subsidiaria o afiliada podrá controlar de la capacidad de activos de generación podrá ser revisado por el Negociado para impedir el establecimiento de un monopolio en la generación, pero en ningún caso podrá alcanzar el cincuenta por ciento (50%) o más de la capacidad de los activos de generación. Las compañías de servicio eléctrico, los generadores distribuidos y las microredes que así lo soliciten, tendrán el derecho de exigir la interconexión a la red de transmisión y/o distribución en condiciones no discriminatorias, cuando ello sea técnicamente factible, consistente con el Plan Integrado de Recursos y la reglamentación del Negociado así lo permita.

(b) Concesión de la transmisión, distribución y venta de energía, así como de la operación del sistema. Al 31 de diciembre de 2019 o a la fecha más próxima a esta, la Autoridad deberá, al amparo de lo dispuesto en esta Ley, la Ley 120-2018, la Ley 29-2009, y los reglamentos correspondientes, perfeccionar uno o varios Contratos de Alianza, mediante los cuales se transfieren las funciones de

transmisión, distribución, así como la venta de la energía eléctrica, la operación del Centro de Control Energético y todas aquellas actividades relacionadas a estas funciones. Lo aquí dispuesto no impide que las concesiones de las diferentes funciones se lleven a cabo de manera separada y en fechas distintas. La Autoridad retendrá el personal que fuere necesario para cumplir con su responsabilidad como Entidad Gubernamental Participante, según dicho término es definido en la Ley 29-2009 de asistir a la Autoridad para las Alianzas Público Privadas en la supervisión del cumplimiento por el Contratante con el Contrato de Alianza y las métricas de desempeño que se incluyan en el mismo.

El Comité de Alianza designado para llevar a cabo las Transacciones de la AEE deberá asegurar que el Contrato de Alianza permita maximizar el uso de fondos federales para la modernización de la red eléctrica. Además, procurará que el Contratante de la red de transmisión y distribución se obligue en el Contrato de Alianza, independientemente cual fuera la fuente de financiamiento, a realizar las inversiones de capital que fueren necesarias para modernizar y/o mantener en óptimas condiciones la red eléctrica de la isla, de modo que esta sea más confiable, resiliente, eficiente, y permita la integración de energía de fuentes renovables necesaria para cumplir con la cartera de energía renovable dispuesta en la Ley 82-2010.

Un año antes de finalizar el Contrato de Alianza perfeccionado en relación a la operación de la red de transmisión y distribución, previa evaluación de los resultados del desempeño del Contratante, la Autoridad para las Alianzas Público Privadas y el Negociado rendirán sendos informes al Gobernador y a la Asamblea Legislativa, los cuales presentarán sus evaluaciones de los resultados y desempeño de dicho Contrato de Alianza junto a sus recomendaciones sobre la conveniencia de establecer una nueva contratación que delegue las mismas o solamente algunas funciones delegadas en el Contrato de Alianza original, o establecer un nuevo modelo para el Sistema Eléctrico.

Nada de lo dispuesto en este Artículo 1.8 será considerado o interpretado como limitación de la autorización para llevar a cabo cualquier Transacción de la AEE al amparo de la Ley 120-2018 o como una expiración de la vigencia de dicha autorización o estatuto.

Artículo 1.9.- Planificación a largo plazo del Sistema Eléctrico

(1) General. La planificación a largo plazo del Sistema Eléctrico es un elemento indispensable para implementar la Política Pública Energética adoptada en esta Ley y facilitar que el Sistema Eléctrico permita el desarrollo sostenible del pueblo de Puerto Rico. Dicha planificación consistirá de un Plan Integrado de Recursos, de conformidad con lo dispuesto en esta Ley, la Ley 57-2014 y la Ley 83. El Plan Integrado de Recursos será elaborado por la compañía de energía responsable de la operación del Sistema Eléctrico y será aprobado por el Negociado. En la elaboración del PIR, dicha compañía deberá contar con el insumo

de las compañías que operen plantas generadoras. Cualquier enmienda o modificación del Plan Integrado de Recursos deberá ser aprobada por el Negociado antes de su implementación. El Negociado evaluará y aprobará el Plan Integrado de Recursos, al igual que sus enmiendas o modificaciones, de forma consistente con la intención legislativa y declaración de política pública adoptada por la Asamblea Legislativa en la Sección 3 de la Ley 120-2018 , el Artículo 13 de la Ley 29-2009 en cuanto a las protecciones y consideraciones aplicables a los Contratos de Alianza, y la política pública enunciada en esta Ley. El Negociado podrá otorgar dispensas o exenciones al Plan Integrado de Recursos por justa causa.

(2) Término y revisión continua. El Plan Integrado de Recursos contemplará un horizonte de planificación de hasta veinte (20) años. El Plan Integrado de Recursos describirá la combinación de recursos de suministro de energía y de conservación que satisfaga a corto, mediano y largo plazo las necesidades actuales y futuras del sistema energético de Puerto Rico y de sus clientes al menor costo razonable. El Plan Integrado de Recursos deberá ser revisado cada tres (3) años, contados a partir de la fecha en que el Plan Integrado de Recursos vigente haya sido aprobado por el Negociado, para reflejar cambios en las condiciones del mercado energético, reglamentaciones ambientales, precios de combustibles, costos de capital, y otros factores, disponiéndose que si hubiese un cambio sustancial en la demanda de energía o en el conjunto de recursos, dicho proceso de revisión deberá ejecutarse antes de los tres (3) años aquí dispuestos para responder y/o mitigar dichos cambios. Toda enmienda al Plan Integrado de Recursos también deberá ser presentada al Negociado para su revisión y aprobación. El Plan Integrado de Recursos tendrá que ser consistente con todos los mandatos de esta Ley, la Política Pública Energética y seguirá las mejores prácticas de planificación integrada de recursos en la industria eléctrica.

(3) Contenido del Plan Integrado de Recursos. Todo plan integrado de recursos incluirá, pero no se limitará a:

(A) Una gama de pronósticos de la demanda futura establecidos mediante el uso de métodos que examinen el efecto de las fuerzas económicas en el consumo de electricidad, así como el efecto del uso de los terrenos al amparo del Plan de Uso de Terrenos para Puerto Rico vigente, y de los cambios de dirección, el tipo y la eficiencia de la electricidad y sus usos finales.

(B) Una evaluación de los recursos de conservación disponibles en el mercado, incluyendo el manejo de demanda eléctrica, así como una evaluación de los programas vigentes y de los programas necesarios para obtener las mejoras en la conservación.

(C) Una evaluación de la gama de tecnologías de generación convencionales y no convencionales que estén disponibles en el mercado.

(D) Una evaluación de la capacidad de transmisión y confiabilidad del sistema.

(E) Una evaluación comparativa de los recursos de suministro de energía, y de transmisión y distribución.

(F) Una evaluación de la combinación de recursos que se designan para promover diversificación de fuentes de energía; estabilizar los costos energéticos; y mejorar la confiabilidad y estabilidad de la red eléctrica.

(G) Una evaluación de las plantas o instalaciones eléctricas existentes de la Autoridad y privadas o concesionadas, que estime las mejoras en la infraestructura y en la eficiencia operacional de las plantas generatrices, su vida útil y la fecha de retiro y costos de decomiso de las mismas, si fuere aplicable.

(H) Evaluación de impactos ambientales de la Autoridad y las compañías de servicio eléctrico relacionados a emisiones al aire y consumo de agua, desperdicios sólidos, y otros factores ambientales como el cambio climático.

(I) Evaluación de la interconexión de proyectos de generación distribuida y energía renovable a la red eléctrica para cumplir con la Ley 82-2010, según enmendada, y de otros productores independientes.

(J) Proyecciones sobre integración de recursos de generación distribuida a la red eléctrica.

(K) Identificación de instalaciones de servicios indispensables en toda la isla y medidas a implementarse para que el servicio eléctrico a dichas instalaciones sea más resiliente tales como el establecimiento de microredes, generación distribuida y soterrado de líneas de distribución.

(L) Una evaluación de las acciones necesarias para implementar las metas sobre sistemas de almacenamiento de energía a todos los niveles, establecidas por el Negociado de Energía, según dispuesto en el Artículo 2.12 de la Ley 82-2010.

(M) Cualquier otro requerimiento dispuesto por el Negociado mediante reglamento u orden.

(4) Aprobación del Plan Integrado de Recursos.- El Plan Integrado de Recursos será evaluado y aprobado por el Negociado y no podrá ser eliminado o alterado bajo ninguna circunstancia, sin que antes se lleve a cabo, y así se evidencie, un proceso de revisión ante el Negociado. El Negociado emitirá todas las reglas necesarias que se deberán seguir para la preparación de su plan integrado de recursos, que deberán incluir un plan de evaluación sobre las metas trazadas.

(5) Métricas y parámetros.- El plan incluirá métricas de desempeño típicas de la industria eléctrica, tales como, pero sin limitarse al, ingreso por kilovatio hora (kWh), gastos en operación y mantenimiento por kilovatio hora (kWh), gastos de operación y mantenimiento del sistema de distribución por cliente, gastos en servicio al cliente por cliente, gastos generales y administrativos por cliente, sostenibilidad energética, emisiones, la cantidad total de uso de energía al año en Puerto Rico, la cantidad total de uso de energía al año per cápita, la cantidad total de uso de energía al año per cápita en áreas urbanas, la cantidad total de uso de energía al año per cápita en áreas no urbanas, el costo total de energía per cápita, el costo total de energía per cápita en áreas urbanas, y el costo total de energía per cápita en áreas no urbanas. Las métricas también deberán medir el desempeño de la Autoridad, el Contratante y las compañías de servicio eléctrico en cumplir con los mandatos de esta Ley. Para esto, se podrá llevar a cabo un análisis comparativo con otras compañías eléctricas similares en tamaño y operación, y se considerará y se ajustará en atención a las diferencias y retos geográficos de nuestra infraestructura eléctrica.

Artículo 1.10.- Deberes y responsabilidades de las compañías de servicio eléctrico.

Las compañías de servicio eléctrico que provean algún servicio en Puerto Rico deberán cumplir con los siguientes deberes y responsabilidades:

(a) Proveer y permitir que se provea energía eléctrica de forma confiable, limpia, eficiente, resiliente y asequible aportando al bienestar general y al desarrollo sostenible del pueblo de Puerto Rico;

(b) Promover que se provea un servicio universal de energía eléctrica;

(c) Enfrentar los retos energéticos y ambientales mediante la utilización de adelantos científicos y tecnológicos disponibles e incorporar las mejores prácticas en las industrias energéticas de otras jurisdicciones;

(d) Facilitar y no obstaculizar la interconexión de productores de energía renovable, generadores distribuidos y productores de energía independiente a la red eléctrica;

(e) Asegurar la continuidad y confiabilidad del servicio eléctrico, facilitando y promoviendo la construcción de infraestructura eficiente y resiliente;

(f) Cumplir cabalmente con las normas, reglamentos, órdenes, mandatos, solicitudes y penalidades emitidas por el Negociado en el ejercicio de sus deberes de regular y fiscalizar el sistema eléctrico de la isla, y abstenerse de toda acción que pueda negar, paralizar, entorpecer, retrasar u obstaculizar las órdenes del Negociado;

(g) Cumplir con toda legislación y regulación ambiental aplicable, incluyendo, pero sin limitarse a, los Estándares de Mercurio y Tóxicos de Aire

(conocido en inglés como los "Mercury and Air Toxic Standards" o M.A.T.S.), fiscalizados por la Agencia de Protección Ambiental de Estados Unidos (EPA, por sus siglas en inglés).

(h) Establecer, con la aprobación del Negociado, una factura de energía eléctrica para cada tipo de cliente que identifique de manera clara y detallada las categorías de los diferentes cargos y créditos al consumidor conforme lo establezca el Negociado. La factura deberá ser totalmente transparente y deberá ser aprobada por el Negociado.

(i)  Proveer documentos e información que sean solicitados por los clientes, con excepción de: (i) información que sea privilegiada a tenor con lo dispuesto en las Reglas de Evidencia de Puerto Rico; (ii) información relacionada con la negociación de convenios colectivos, con disputas laborales o con asuntos de personal, tales como nombramientos, evaluaciones, disciplina y despido; (iii) ideas en relación con la negociación de potenciales contratos de la Autoridad o con la determinación de resolver o rescindir contratos vigentes; (iv) información sobre estrategias en asuntos litigiosos; (v) información sobre investigaciones internas mientras estas estén en curso; (vi) aspectos sobre la propiedad intelectual de terceras personas; (vii) secretos de negocios de terceras personas; (viii) asuntos que deba mantener en confidencia al amparo de algún acuerdo de confidencialidad, siempre y cuando dicho acuerdo no sea contrario al interés público; o (ix) asuntos de seguridad pública relacionados con amenazas contra esta, sus bienes o sus empleados. En cumplimiento con este deber, además de la versión original de los documentos donde aparezca dicha información, publicará y pondrá a disposición de los clientes documentos que organicen y provean la información de manera que facilite su manejo y de manera que las personas sin conocimiento especializado en disciplinas particulares puedan entenderla;

(j)  Tener y mantener un portal de Internet con acceso libre de costo, a través del cual se provea, como mínimo, lo siguiente:

(i) Una plataforma para pagar las facturas, examinar el historial del consumo, verificar el patrón de uso, y obtener información relacionada con la factura tal como la lectura del contador al iniciarse y terminar el período de facturación, las fechas y los días comprendidos en el período, la constante del contador, la tarifa, la fecha de la próxima lectura, así como cualquier otro dato que facilite la verificación de la lectura;

(ii) datos en tiempo real relacionados con la capacidad y el margen de reserva de energía;

(iii) estatus de los procesos internos para implantar los cambios requeridos con legislación para reformar el sistema energético de Puerto Rico;

(iv) Acceso a una plataforma mediante la cual los clientes puedan solicitar información y documentos públicos que no se encuentren disponibles en el portal;

(k) Notificar al público, con por lo menos cuarenta y ocho (48) horas de antelación, sobre interrupciones del servicio programadas, a través de su portal de Internet, por las redes sociales, y cualquier otro medio de comunicación.

(l) Cumplir con un plan integrado de recursos de acuerdo a los parámetros y requisitos establecidos por el Negociado de conformidad con la política pública energética.

(m) Cuando los cargos contenidos en una factura incluyan tres (3) o más mensualidades vencidas por servicios que, por error u omisión de la compañía de energía, no fueron previamente facturados, esta deberá ofrecerle al cliente un plan de pago razonable en atención a su capacidad económica. No obstante lo anterior, las compañías de energía tendrán un máximo de ciento ochenta (180) días para facturar por cualquier servicio provisto. Transcurrido dicho término la compañía de energía no podrá cobrar por el servicio provisto y no facturado. La compañía de energía contará con un término máximo de ciento veinte (120) días a partir de la expedición de las facturas por concepto de consumo de energía eléctrica para notificar a los clientes de errores de cálculo de los cargos. Una vez concluido dicho término, estas no podrán reclamar cargos retroactivos por concepto de errores en el cálculo de los cargos, tales como aquéllos de índole administrativo, operacional o de la lectura errónea de los contadores de consumo de electricidad. Esto aplicará solo a clientes residenciales; no aplicará a clientes comerciales, industriales, institucionales o de otra índole y tampoco aplicará a cargos o ajustes periódicos provistos en la tarifa aprobada por el Negociado. En aquellos casos en que los clientes mantienen sus contadores fuera del alcance visual de los lectores, o cuando ocurren eventos de fuerza mayor que impidan las lecturas de los contadores, tales como huracanes, entre otros, la medida no aplicará a facturas que se emitan a base de estimados. Asimismo, se prohíbe como práctica de cobro y apremio de pago, informar a las agencias de crédito ("credit bureaus") las cuentas en atraso de sus clientes residenciales, excepto cuando se trate de una cuenta no objetada de un cliente cuyo monto y recurrencia de falta de pago, tras haberse realizado más de dos requerimientos de pago y agotado los mecanismos de cobro típicos de los negocios cuando sus clientes no pagan por servicios, denotando así la intención de no cumplir con sus obligaciones de pago o que de otro modo implique la intención de defraudar.

(n) Toda factura que las compañías de energía envíen a sus clientes deberá advertir sobre su derecho a objetar la factura y solicitar una investigación por parte de la compañía de energía. En su portal de Internet y en las oficinas designadas para ello, deberá además proveer la información sobre los procesos, términos y requisitos para objetar una factura y solicitar una investigación y para luego acudir

ante el Negociado para solicitar la revisión de la decisión. De igual forma, en su portal de Internet y en cada una de sus oficinas deberá proveer la información sobre los procesos, términos y requisitos para solicitar la revisión ante el Negociado de cualquier decisión sobre la factura al cliente.

(o) Promover o garantizar el almacenamiento y suministro a las unidades generatrices de los combustibles utilizados para la producción de energía eléctrica, mediante tecnología e infraestructura eficiente, segura y resiliente.

Artículo 1.11- Generación de energía

(a) Generación fósil altamente eficiente y a base de diversos combustibles. Toda planta de generación, de nueva construcción o existente, a la fecha de aprobación de esta Ley, que no sea una que opere exclusivamente con fuentes de energía renovable, deberá tener la capacidad de operar a base de dos (2) o más combustibles, donde uno de estos debe ser gas natural, considerando que a partir de la aprobación de esta Ley, se prohíbe la concesión de nuevos contratos y/o permisos para el establecimiento de plantas de generación de energía a base de carbón, y que ningún permiso o enmienda a contrato existente a la fecha de aprobación de esta Ley podrá autorizar o contemplar la quema de carbón como fuente para la generación de energía a partir del 1 de enero de 2028. La energía eléctrica generada a base de combustibles fósiles (gas o derivados del petróleo) será generada en un mínimo de sesenta por ciento (60%) de forma altamente eficiente, de conformidad con lo dispuesto en el Artículo 6.29 de la Ley 57-2014. Los Contratantes que adquieran u operen los activos de generación de la AEE deberán modernizar las plantas o sustituirlas por plantas altamente eficientes en un periodo no mayor a cinco (5) años a partir de la firma del Contrato de Alianza o de Venta. Luego de este periodo inicial aquellos Contratantes que optaron por modernizar las plantas deberán sustituirlas por plantas altamente eficientes en un periodo que no excederá de cinco (5) años a partir de culminado el periodo inicial. No obstante, esto no aplicará a los operadores de los activos de generación legados.

(b) Contratos de Compra de Energía. Todo contrato de compra de energía o toda enmienda o extensión a un contrato de compra de energía otorgado previo a la aprobación de la Ley 57-2014, entre la Autoridad, o el Contratante de la red de transmisión y distribución, y cualquier productor independiente de energía se otorgará de conformidad con lo establecido en el Artículo 6.32 de la Ley 57-2014 y la reglamentación adoptada por el Negociado al amparo de dicho Artículo. No obstante, cuando un contrato de compra de energía forme parte de una Transacción de la AEE, bastará el Certificado de Cumplimiento de Energía conforme a lo dispuesto en la Ley 120-2018.

El Negociado deberá establecer parámetros claros sobre precios, ajustes, escaladores y margen de ganancia para los contratos de compra de energía. Dichos parámetros serán conforme con los escaladores o ajustes de precios utilizados normalmente por la industria para estos fines, así como con cualquier otro

parámetro o metodología para regular la ganancia atribuible al contrato de compra de energía para asegurar que dicho contrato sea por un precio adecuado y razonable. Ninguna Compañía de Energía realizará ganancia alguna atribuible al combustible. El margen de ganancia de los generadores independientes en los acuerdos de compra de energía cumplirá con los parámetros establecidos por el Negociado.

Ningún contrato para el establecimiento de nuevas plantas de generación podrá constituir un impedimento para el cumplimiento con la cartera de energía renovable y la integración de generación distribuida, microredes o cooperativas de energía.

Los contratos de compra de energía se otorgarán considerando las metas y mandatos establecidos en la Cartera de Energía Renovable, que obligan a una transición de la generación de energía anclada en combustibles fósiles, a la integración agresiva de energía renovable, según dispone la Ley 82-2010.

(c) Margen de reserva. La AEE, o el Contratante de la red de transmisión y distribución, fijará, de tiempo en tiempo y sujeto a la revisión y aprobación del Negociado, el margen de reserva óptimo para Puerto Rico, considerando las mejores prácticas de la industria, las realidades geográficas y las realidades de la infraestructura eléctrica de Puerto Rico, y trabajará para mantener dicha reserva, asegurando la continuidad y confiabilidad del servicio eléctrico en Puerto Rico.

(d) Energía Renovable. La Autoridad, o el Contratante de la red de transmisión y distribución, deberá maximizar el uso de energía renovable, en cumplimento con las leyes locales y federales aplicables, asegurando su integración a la red eléctrica de forma segura y confiable, y garantizando la estabilidad de la red de transmisión y distribución de energía, por ejemplo, permitiendo la instalación del equipo y tecnología necesaria para asegurar la conexión a la red eléctrica de fuentes de energía renovable, o estableciendo maneras alternas de operación de la red eléctrica que mitiguen la inestabilidad que dicha energía puede causar en la red eléctrica. Dichas instalaciones deberán hacerse y estar incorporadas al Plan Integrado de Recursos de tal manera que no se limiten otras opciones de planificación a largo plazo . La Autoridad, o el Contratante de la red de transmisión y distribución deberá asegurar que la integración de energía renovable cumpla con los requisitos establecidos en la Ley 82-2010, según enmendada, y tomar todas las medidas necesarias para asegurar tal cumplimiento. Además, facilitará el uso de energía renovable en forma directa por parte de sus clientes, particularmente agilizando y simplificando los trámites, procesos y requisitos relacionados con proyectos solares residenciales y comerciales pequeños que sean menores de veinticinco kilovatios (25 kW) conforme lo establecido en el Artículo 9 de la Ley 114-2007, según enmendada. El Negociado se asegurará que estos trámites, procesos y requisitos simplificados sean seguidos por la Autoridad, o el Contratante de la red de transmisión y distribución. De ser viable, la Autoridad, el

Contratante de la red de transmisión y distribución o el Departamento de Desarrollo Económico y de Comercio establecerán un mecanismo de financiamiento para ayudar a su desarrollo.

(e) Generación Distribuida. La generación distribuida contará con acceso abierto y no discriminatorio a las redes de distribución, sujeto a la reglamentación que establezca el Negociado. La Autoridad, o el Contratante de la red de transmisión y distribución, identificarán las maneras más efectivas y económicas de hacer que la infraestructura eléctrica de Puerto Rico sea más distribuida, inteligente, resiliente, confiable, y que se fomente el uso y la integración estratégica de tecnologías y prácticas energéticas sostenibles, de conformidad con la reglamentación del Negociado. En el cumplimiento de este deber, la Autoridad o el Contratante de la red de transmisión y distribución, llevará a cabo la planificación, construcción y actualización de los sistemas de distribución para asegurar el despliegue adecuado y ordenado de recursos de generación distribuida y tecnologías como las microredes.

(f) Proyectos de energía renovable:

(1) Para facilitar el desarrollo de proyectos de energía renovable y cumplir con la Cartera de Energía Renovable establecida en la Ley 82-2010, según enmendada por esta Ley, todos los permisos, consultas, variaciones, endosos, certificaciones, concesiones y/o autorizaciones para los proyectos de energía renovable, incluyendo, pero sin limitarse a, los trámites relativos al cumplimiento con la Ley 416-2004, según enmendada, conocida como Ley sobre Política Pública Ambiental, deberán ser tramitados por la Oficina de Gerencia de Permisos y demás agencias concernidas siguiendo los procedimientos expeditos para estados de emergencia establecidos al amparo de la Ley 76-2000, según enmendada,  y las órdenes administrativas y reglamentación aplicable a estos casos de las agencias concernidas. El trámite expedito para la tramitación de permisos, consultas, variaciones, endosos, certificaciones, concesiones y/o autorizaciones para los proyectos de energía renovable provisto bajo esta Ley, es sin perjuicio para el proponente de un proyecto de energía renovable, del beneficio del trámite expedito de permisos que pueda obtener mediante la designación de su proyecto como un proyecto crítico a tenor con lo dispuesto en el Artículo V del Puerto Rico Oversight, Management, and Economic Stability Act  (PROMESA).

(2) La Oficina de Gerencia de Permisos y las agencias concernidas podrán atender solicitudes de permisos, consultas, variaciones, endosos, certificaciones, concesiones y/o autorizaciones para proyectos de energía renovable utilizando los procesos expeditos a los que hace

referencia el inciso anterior por un periodo de sesenta (60) meses, contados a partir de la fecha de efectividad de esta Ley. Luego de expirado dicho término, dichos proyectos serán considerados a través de los procesos ordinarios dispuestos en la reglamentación vigente, sin perjuicio de las facultades del Gobernador de decretar un estado de emergencia al amparo de la Ley 76-2000, según enmendada, cuando ello fuere necesario.

Artículo 1.12.-  Interconexión de Microredes

El desarrollo de microredes es un componente esencial para el desarrollo de un sistema confiable, robusto y descentralizado que promueva la resiliencia, integre nueva tecnología, fuentes de energía renovable, evite la pérdida de energía en instalaciones de servicio indispensable y provea alternativas a los consumidores. Para ello es necesario garantizar que los procedimientos de interconexión de microredes al sistema de transmisión y distribución sean expeditos, uniformes en todas sus regiones y efectivos en términos de costo y tiempo de procesamiento para promover el desarrollo de estos proyectos.

Un ingeniero colegiado y licenciado deberá certificar que la microred cumple con las especificaciones requeridas por la reglamentación del Negociado para estos proyectos, y que la misma fue completada de acuerdo con las leyes, reglamentos y normas aplicables a la interconexión de microredes del sistema de distribución y transmisión.

Los procedimientos de interconexión para microredes deben proveer para que una microred de una capacidad menor de un (1) MW puedan conectarse a la red de distribución, siempre y cuando las características técnicas de la microred a interconectarse y las condiciones de la red eléctrica así lo permitan. Disponiéndose, que para la interconexión de microredes de más de quinientos (500) kilovatios pero menores de un (1) megavatio (MW), se podrán requerir los estudios de confiabilidad necesarios, los cuales deberán realizarse de manera expedita. Además, los procedimientos de interconexión deben proveer para la interconexión de microredes con una capacidad máxima de cinco megavatios (5MW) conectados a voltajes de sub-transmisión o transmisión (38 kV o 115 kV). La interconexión de microredes en exceso de 5MW tendrá que ser aprobadas por el Negociado en un proceso que incluya la participación pública.

La Autoridad, su sucesora o el Contratante de la red de transmisión y distribución deberán evaluar la solicitud de interconexión conforme a la reglamentación adoptada para ello de conformidad al Artículo 1.13 de esta Ley. En aquellos casos en que se deniegue la interconexión de la microred o determine que resulta necesario el que se implementen requisitos técnicos adicionales y mejoras al sistema eléctrico de distribución, el solicitante tendrá derecho a cuestionar dicha determinación o hallazgos ante el Negociado, dentro del término de treinta (30)

días, contados a partir de la fecha de notificación de la determinación sobre la solicitud de interconexión.

Artículo 1.13.- Reglamentación para la Interconexión de Microredes

Se ordena a la Autoridad, o al Contratante de la red de transmisión y distribución, a adoptar un reglamento de interconexión de microredes conforme a la política pública de interconexión de microredes establecidas en el Artículo 1.12 de esta Ley. Dicho reglamento de interconexión de microredes será promulgado en el término que el Negociado de Energía establezca mediante orden o reglamento. Transcurrido el término aquí dispuesto para adoptar el reglamento de interconexión de microredes, sin que el mismo haya sido adoptado, el Negociado adoptará el reglamento de interconexión de microredes.

Todo proceso de adopción, derogación o enmienda de un reglamento de interconexión de microredes estará sujeto al proceso establecido en este Artículo. La reglamentación propuesta por la Autoridad o el Contratante de la red de transmisión y distribución, y toda enmienda o propuesta subsiguiente al reglamento de interconexión de microredes será presentada al Negociado de Energía para la celebración de vistas públicas, las cuales no podrán ser celebradas con menos de treinta (30) días luego de publicarse el aviso público anunciando la propuesta de reglamentación de microredes. En el término de treinta (30) días de culminadas las vistas públicas, el Negociado emitirá su decisión en cuanto a si procede la enmienda al reglamento de interconexión de microredes, si debe rechazarse o si el lenguaje propuesto debe modificarse. En este último caso, el Negociado podrá adoptar el lenguaje que entienda necesario para cumplir con los principios, objetivos y la política pública enunciada en esta Ley. Una vez advenga final y firme la decisión del Negociado, este deberá enmendar y publicar el reglamento de interconexión de microredes de conformidad con aquellas enmiendas adoptadas mediante su decisión.

Artículo 1.14.- Penalidades incumplimiento con interconexión de generadores distribuidos o microredes

El incumplimiento de la Autoridad, su sucesora o el Contratante de la red de transmisión y distribución con la política pública de interconexión de generadores distribuidos o microredes a la red de distribución conllevará una multa de mil (1,000) dólares diarios, a ser impuesta por el Negociado, que ingresarán al Fondo de Energía Verde de Puerto Rico creado en virtud de la Ley 83-2010, según enmendada, conocida como "Ley de Incentivos de Energía Verde de Puerto Rico" o disposiciones análogas en leyes de incentivos para subsidiar sistemas fotovoltaicos y de almacenamiento de energía. La multa aquí dispuesta no se entenderá como un menoscabo a los poderes del Negociado de imponer cualquier otra multa o sanción administrativa que proceda para asegurar el cumplimiento de sus órdenes y la política pública energética.

Artículo 1.15.- Infraestructura del Sistema Eléctrico

Con el fin de maximizar los recursos disponibles para la reconstrucción y modernización del Sistema Eléctrico, la Autoridad o el Contratante de la red de transmisión y distribución procurará que se lleven a cabo las mejoras específicas al Sistema Eléctrico para que este sea robusto, resiliente y estable, conforme a las prioridades de modernización y reconstrucción que se establecen a continuación:

(a) Reemplazar las torres de transmisión eléctrica temporalmente instaladas por monopostes y los postes con un material y diseño resistente a vientos sostenidos de 150 mph y evitar su sobrecarga.

(b) Reemplazar y mantener los sistemas de anclaje de la infraestructura de transmisión para mantener la resiliencia del sistema.

(c) Implementar programas para mitigar la corrosión de la infraestructura de la red eléctrica.

(d) Reforzar los activos de las subestaciones, incluyendo los transformadores, interruptores de circuito, aparatos y accesorios electrónicos ("switch gear") y, especialmente, el equipo de control tales como los interruptores de protección ("relays") y los equipos de comunicación.

(e) Mantener la estandarización y compatibilidad del voltaje de la infraestructura de transmisión y distribución con los estados de la Nación.

(f) Realizar una segmentación sincronizada y planificación selectiva del sistema de transmisión que incluya una diversificación de generación, unidades de respuesta de arranque ("black-start capable units") y se considere la carga, de forma que en se pueda mantener una generación mínima de energía en la eventualidad de cualquier evento.

(g) Evaluar los beneficios de sustituir las líneas de transmisión y distribución en las áreas de los cascos urbanos e instalaciones de servicios indispensables según definido en la Ley 57-2014, por sistemas soterrados de distribución.

(h) Modernizar los principales activos de generación e infraestructura de almacenamiento y suministro de combustible para que tengan capacidad de operar de manera segura, confiable y altamente eficiente y con al menos dos (2) combustibles fósiles, donde al menos uno de estos debe ser gas natural, que minimicen los gases de efecto de invernadero excluyendo el uso de carbón y que integren generación distribuida, incluyendo fuentes de energía renovable para reducir significativamente los costos de producción y la dependencia en combustibles fósiles.

(i) Integrar el uso de microredes como medio para hacer el Sistema Eléctrico más resiliente ante eventos mayores, tales como tormentas y huracanes, permitiendo la continuidad del servicio o un rápido

restablecimiento del mismo a instalaciones de servicios indispensables, sectores industriales y áreas remotas para facilitar la integración de generación distribuida, robustecer el sistema y evitar la interdependencia de servicios.

(j)   Evaluar la viabilidad de sustituir la generación existente mediante la integración de activos de generación de menor escala, más flexibles e inteligentes que puedan producir energía más eficientemente, a un costo menor, y que reduzcan y respondan efectivamente a las fallas críticas del sistema.

(k)   Evaluar la viabilidad de reubicar las líneas de transmisión donde se facilite su fácil y pronto acceso para su reparación y mantenimiento.

(l)   Realizar las obras necesarias para la reubicación, elevación e impermeabilización de las subestaciones ubicadas en zonas inundables por encima del que sea mayor entre el "Base Flood Elevation" (BFE, por sus siglas en inglés) +3.0 pies o .02% del nivel de inundación ("flood elevation").

(m) Determinar la carga segura ("safe load") que los postes de transmisión pueden sostener.

(n)   Uniformar el equipo y el diseño con los parámetros del USDA Rural Utilities Service (RUS), cuando sea factible y apropiado, para ayudar con el reemplazo en situaciones regulares y de emergencia.

(o)   Adoptar tecnologías, en coordinación con el Negociado de Energía, que puedan mejorar la estabilidad del sistema, su resiliencia, eficiencia y habilidad para integrar generación distribuida y energía renovable a la red, siempre y cuando la utilización de los recursos redunden en un mayor beneficio público, tales como el "Distributed Energy Resources Management System" (DERMS, por sus siglas en inglés), el "Advanced Distribution Management System" (ADMS, por sus siglas en inglés); "Fault Location Isolation and Service Restoration" (FLISR, por sus siglas en inglés); el "Volt-Var Optimization" (VVO, por sus siglas en inglés); y otras tecnologías.

(p)   Adoptar tecnologías que mejoren los servicios al cliente, incluyendo y sin limitarse, al uso de contadores inteligentes, acceso a través del internet y minimizar el tiempo de espera necesario para obtener algún servicio de atención al cliente.

Artículo 1.16.- Programa de Manejo de Vegetación

La Autoridad o el Contratante de la red de transmisión y distribución presentará ante el Negociado de Energía, en el término de ciento veinte (120) días, un programa comprensivo para el manejo de la vegetación ("vegetation management") conforme a las mejores prácticas de la industria para proteger la

integridad de los activos de la red.  El programa de manejo de vegetación deberá ordenar, entre otros, lo siguiente:

(a)    Mantener al menos diez (10) pies de distancia entre los árboles y las servidumbres para líneas de transmisión conforme al National Electrical Safety Code Standard (NESC, por sus siglas en inglés);

(b)    Patrullar y desenganchar rutinariamente cualquier vegetación o material que esté próximo al tendido eléctrico;

(c)    Adoptar las recomendaciones para la poda de árboles establecidas por estándares de la industria aceptados, tal como los establecidos por el American National Standard (ANSI, por sus siglas en inglés);

(d)    Producir informes periódicos y detallados del cumplimiento con el programa de vegetación; y

(e)    Establecer un fondo adecuado e independiente para el programa de manejo de vegetación.

El Negociado revisará que el programa comprensivo para el manejo de vegetación cumpla con los requisitos de la industria y por su implementación.

Artículo 1.17.-  Estudio conjunto sobre capacidad de carga de los postes

Se ordena a la Junta Reglamentadora de Servicios Públicos realizar un estudio conjunto, en un término de ciento ochenta (180) días, entre el Negociado de Telecomunicaciones de Puerto Rico y el Negociado de Energía para determinar, implementar y asegurar la carga segura ("safe load") que los postes pueden sostener para la distribución de la infraestructura de telecomunicaciones y eléctrica.

Artículo 1.18.- Estudio sobre la contribución en lugar de impuestos y otros subsidios

En o antes del 31 de diciembre de 2019, el Negociado de Energía deberá realizar un estudio respecto a la implementación, efectividad, costo-beneficio, razonabilidad e impacto económico de la contribución en lugar de impuestos (CELI) para auscultar la necesidad y conveniencia, si alguna, de reformar este mecanismo y los subsidios ante el nuevo modelo del Sistema Eléctrico. El resultado de dicho estudio deberá ser presentado ante ambos Cuerpos de la Asamblea Legislativa con el fin de analizar el mismo y de promover aquella legislación que sea necesaria.

Artículo 1.19.- Futuro establecimiento de un mercado eléctrico.

El Negociado de Energía deberá realizar un estudio sobre la viabilidad y conveniencia de establecer en Puerto Rico un mercado eléctrico basado en la libre competencia y presentará un informe con los resultados de dicho estudio ante la Asamblea Legislativa y al Gobernador en o antes del 30 de junio de 2025.

Capítulo II – Enmiendas a la Ley Núm. 83 de 2 de mayo de 1941

Artículo 2.1.- Se enmienda la Sección 2 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, para que lea como sigue:

"Sección 2.- Definiciones

Los siguientes términos, dondequiera que aparecen usados o aludidos en esta Ley, tendrán los significados que a continuación se expresan, excepto donde el contexto claramente indique otra cosa:

(a) Acuerdo de Acreedores.- Significará cualquier acuerdo firmado (incluyendo sus apéndices, anejos y documentos suplementarios) entre la Autoridad y varios de sus acreedores principales, según enmendado o suplementado, mediante el cual ciertos términos y condiciones de la deuda actual se modifican y la Autoridad pudiera comprometerse a (i) implantar ciertas medidas de reforma administrativa, operacional y de gobernanza; (ii) modernizar la generación de electricidad; (iii) optimizar la transmisión y distribución de electricidad; y (iv) obtener ahorros operacionales. Ni el Acuerdo ni enmienda o suplemento futuro alguno podrán ser contrarios a las disposiciones de la "Ley para la Revitalización de la Autoridad de Energía Eléctrica".

...

(e) Comisión o Negociado.- Significará el Negociado de Energía de Puerto Rico, según establecido en virtud del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico y la Ley 211-2018, que es un ente independiente especializado encargado de reglamentar, supervisar y hacer cumplir la política pública energética del Gobierno de Puerto Rico, anterior Comisión de Energía creada por la Ley 57-2014, según enmendada. Toda referencia que esta Ley haga a "la Comisión o Comisión de Energía", se entenderá que se refiere al Negociado de Energía de Puerto Rico.

...

(g) Eficiencia energética.- Significará la disminución en el uso de energía atribuibles al reemplazo de enseres y equipo, modernización de tecnología o a una mejor operación de materiales y equipos existentes, o cualquier otro programa desarrollado e implementado a los fines de reducir el consumo de energía.

…

(m) Modernización.- Significará el desarrollo de proyectos para nuevas plantas generatrices o para reemplazar plantas existentes de conformidad con el más reciente plan integrado de recursos aprobado por el Negociado.

(n) …

(o) Plan Integrado de Recursos o "PIR".- Significará un plan que considere todos los recursos razonables para satisfacer la demanda de los servicios eléctricos durante determinado período de tiempo, incluyendo aquellos relacionados a la oferta energética, ya sean los recursos existentes, tradicionales y/o nuevos, y aquellos relacionados a la demanda energética, tales como conservación y eficiencia energética, respuesta a la demanda o "demand response", y la generación distribuida por parte del cliente industrial, comercial o residencial. Todo plan integrado de recursos estará sujeto a las reglas establecidas por el Negociado y deberá ser aprobado por el mismo. Todo plan deberá hacerse con amplia participación ciudadana y todos los grupos de interés.

…

(q) …

Las palabras usadas en el número singular incluirán el número plural y viceversa y las palabras que se refieren a personas incluirán firmas, sociedades de todas clases y corporaciones."

Artículo 2.2.– Se enmienda la Sección 3 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, para que lea como sigue:

"Sección 3.- Creación y organización de la Autoridad

(a) Por la presente se crea un cuerpo corporativo y político que constituirá una corporación pública e instrumentalidad gubernamental autónoma del Gobierno de Puerto Rico con el nombre de "Autoridad de Energía Eléctrica de Puerto Rico".

(b) La Autoridad creada por la presente es y deberá ser una instrumentalidad gubernamental, sujeta al control de su Junta de Gobierno, pero es una corporación con existencia y personalidad legales separadas y aparte de la del Gobierno de Puerto Rico. La Autoridad y su Junta de Gobierno serán reguladas por el Negociado y deberán someter, en la forma y manera dispuesta por el Negociado, toda la información requerida y solicitada por el mismo. Las deudas, obligaciones, contratos, bonos, notas, pagarés, recibos, gastos, cuentas, fondos, empresas y propiedades de la Autoridad, sus funcionarios, agentes o empleados, debe entenderse que son de la mencionada corporación y no del Gobierno de Puerto Rico ni de ninguna de sus oficinas, negociado, departamento, comisión, dependencia, municipalidad, rama, agente, funcionario o empleado. "

Artículo 2.3.- Se enmienda la Sección 4 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, para que lea como sigue:

"Sección 4.- Junta de Gobierno.

Los poderes de la Autoridad se ejercerán y su política general y dirección estratégica se determinará por una Junta de Gobierno, que será su ente rector, en adelante llamada la ("Junta").

(a) Nombramiento y composición de la Junta.- La Junta de Gobierno estará compuesta por siete (7) miembros. El Gobernador de Puerto Rico nombrará, con el consejo y consentimiento del Senado tres (3) de los siete (7) miembros que compondrán la Junta. Dichos miembros nombrados por el Gobernador con el consejo y consentimiento del Senado serán seleccionados de una lista de, por lo menos, diez (10) candidatos presentada al Gobernador y preparada por una firma reconocida para la búsqueda de talento ejecutivo para juntas directivas en instituciones de tamaño, complejidad y riesgos similares a la Autoridad. La identificación de candidatos se realizará de acuerdo a criterios objetivos de trasfondo educativo y profesional. Los criterios de trasfondo educativo y profesional deberán incluir, como mínimo, el campo de la ingeniería eléctrica o mecánica, la administración de empresas, economía y finanzas o legal, con no menos de diez (10) años de experiencia en su campo laboral. Además, estos deberán tener pericia en asuntos de energía y no podrán ser empleados públicos, excepto el ser profesor de la Universidad de Puerto Rico. Esta lista incluirá, en la medida en que estén disponibles, al menos cinco (5) residentes de Puerto Rico. El Gobernador evaluará la lista de candidatos recomendados y escogerá tres (3) personas de la lista. Si el Gobernador rechazare alguna o todas las personas recomendadas, la referida firma de búsqueda de talentos estará obligada a someter una nueva lista dentro de los siguientes treinta (30) días calendario. El Gobernador podrá utilizar la lista más reciente previamente presentada para su consideración de candidatos de ser necesario llenar una vacante causada por renuncia, muerte, incapacidad, destitución o reemplazo ocurrido dentro del término original del miembro que se sustituye.

Tres (3) de los siete (7) miembros serán elegidos por el Gobernador a su sola discreción, entre los cuales se incluirá un (1) miembro que será independiente. Este miembro independiente deberá tener pericia en asuntos energéticos y no podrá ser empleado del Gobierno de Puerto Rico; el término de su nombramiento será de cinco (5) años.

El miembro restante será un representante del interés de clientes, quien se elegirá mediante una elección que será supervisada por la Oficina del Procurador del Ciudadano (Ombudsman) y que se celebrará bajo el procedimiento dispuesto en el inciso (c) de esta Sección, debiendo proveer la Autoridad las instalaciones y todos los recursos económicos necesarios a tal fin. No obstante, los procesos iniciados para elegir al representante del interés de clientes en la Junta realizados por el Departamento de Asuntos del Consumidor (DACO) previo a la aprobación de la Ley 207-2018, continuarán su trámite bajo la jurisdicción del DACO, hasta la elección del representante

del interés de clientes.  El candidato a representante de los clientes, entre otros requisitos, deberá contar con un trasfondo educativo y profesional, de no menos de diez (10) años de experiencia en su campo profesional. Los criterios de trasfondo educativo y profesional deberán incluir, como mínimo, el campo de la ingeniería eléctrica o mecánica, la administración de empresas, o economía y finanzas. Además, este deberá tener pericia en asuntos de energía y no podrá ser empleado público, excepto de ser profesor del Sistema de la Universidad de Puerto Rico.

Los miembros nombrados por el Gobernador con el consejo y consentimiento del Senado tendrán términos escalonados.  Uno (1) de los miembros ocupará el cargo por cinco (5) años y dos (2) por seis (6) años. El miembro electo como representante del interés de los clientes ocupará su cargo por el término de cinco (5) años.  No obstante, los dos (2) miembros restantes nombrados por el Gobernador a su sola discreción serán de libre remoción, ocuparán su cargo por el término establecido por el Gobernador, y podrán ser sustituidos por este en cualquier momento.

Ningún miembro de la Junta de Gobierno podrá ser designado o electo para dicho cargo por más de tres (3) términos consecutivos. A los miembros de la Junta no les aplicarán las disposiciones del Artículo 5.1 de la Ley 1-2012, según enmendada.

Toda vacante en los cargos de los miembros que nombra el Gobernador se cubrirá por nombramiento de éstos por el término que falte para la expiración del nombramiento original del mismo modo en que se seleccionaron. La designación del sustituto deberá realizarse dentro de los seis (6) meses de ocurrida la vacante.  No obstante, de ocurrir una vacante en el cargo del miembro electo como representante de los clientes, la misma se cubrirá mediante el proceso de elección reglamentado por el Ombudsman, dentro de un período de ciento veinte (120) días a partir de la fecha de ocurrir dicha vacante, y comenzará a transcurrir un nuevo término de cinco (5) años.

El miembro independiente y el miembro electo estarán sujetos a los requisitos de independencia bajo las Reglas Finales de Gobierno Corporativo de la Bolsa de Valores de Nueva York (NYSE). No podrá ser miembro de la Junta persona alguna, incluido el miembro que representa el interés de los clientes,  que: (i) sea empleado, empleado jubilado o tenga interés económico sustancial, directo o indirecto, en alguna empresa privada con la cual la Autoridad otorgue contratos o con quien haga transacciones de cualquier índole, incluyendo el tomar dinero a préstamo o proveer materia prima; (ii) en los tres (3) años anteriores a su cargo haya tenido una relación o interés comercial en alguna empresa privada con la cual la Autoridad otorgue contratos o haga transacciones de cualquier índole; (iii) sea empleado,

miembro, asesor o contratista de cualquiera de los sindicatos de trabajadores de la Autoridad; (iv) haya sido miembro de un organismo directivo a nivel central o local de un partido político inscrito en Puerto Rico durante el año previo a la fecha de su designación; (v) no haya provisto la certificación de radicación de planillas correspondientes a los últimos cinco (5) años contributivos, la certificación negativa de deuda emitida por el Departamento de Hacienda, la certificación negativa de deuda con la Autoridad, el Certificado de Antecedentes Penales de la Policía de Puerto Rico, así como las certificaciones negativas de deuda de la Administración para el Sustento de Menores (ASUME) y del Centro de Recaudación de Impuestos Municipales (CRIM) o cumplido con los demás requisitos aplicables a toda persona que desee ser funcionario público; o (vi) ningún miembro nombrado por el Gobernador podrá ser un oficial de la AEE ni oficial o director de la "Corporación para la Revitalización de la Autoridad de Energía Eléctrica de Puerto Rico". Disponiéndose que el solo hecho de ser abonado de la Autoridad no constituirá impedimento para ser miembro de la Junta.

Los miembros de la Junta recibirán por sus servicios …

No obstante a lo anterior, los miembros de la Junta que sean empleados del Gobierno de Puerto Rico…

El cumplimiento por parte de la Junta con estándares de gobernanza …

(b) …

(c) …

(d) …

(e) …

(f)    Desempeño y conducta. Sin limitar las disposiciones generales de conducta y deberes éticos y de fiducia que dispone esta Ley, incluyendo el deber de confidencialidad que se dispone en el inciso (b) de esta Sección, ningún miembro de la Junta podrá:

(i)  ...

…

(v) solicitar mientras se encuentra en funciones de su trabajo o, intimidar, obligar, exigir que otros miembros de la Junta, funcionarios o empleados voten o promuevan los intereses electorales del partido o candidato político de su preferencia.

Sin que se pueda interpretar como una limitación …

También podrán ser separados de sus cargos por causa de incapacidad física o mental para ejercer sus funciones, en cuyo caso no se considerará una destitución.

(g)  Responsabilidad de miembros de la Junta y oficiales. Sin incidir en los derechos que les confieren las disposiciones de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, conocida como la "Ley de Pleitos contra el Estado", ningún miembro presente o futuro de la Junta, oficial, agente o empleado de la Autoridad incurrirá en responsabilidad civil por cualquier acción de buena fe en el desempeño de sus funciones y responsabilidades en virtud de las disposiciones de esta Ley, sujeto a que en la conducta por la que se le indemniza no haya incurrido en delito, dolo o negligencia crasa, y serán indemnizados por los costos incurridos relacionados a cualquier reclamación por la que disfrutan de inmunidad según aquí dispuesto. La Junta y sus directores individuales, y los oficiales, agentes o empleados de la Autoridad también serán indemnizados por cualquier responsabilidad civil adjudicada bajo las leyes de los Estados Unidos de América sujeto a que en la conducta por la que se le indemniza no hayan incurrido en delito, dolo o negligencia crasa. Toda multa impuesta por incurrido en conducta constitutiva de delito, dolo o negligencia crasa ingresará al Fondo de Energía Verde de Puerto Rico creado en virtud de la Ley 83-2010, según enmendada, conocida como "Ley de Incentivos de Energía Verde de Puerto Rico" o disposiciones análogas en leyes de incentivos.

(h) …"

Artículo 2.4.-  Se reenumera la Sección 5 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, como Sección 4A.

Artículo 2.5.- Se reenumera la Sección 5A como Sección 4B de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada.

Artículo 2.6.- Se añade una nueva Sección 5 a la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, para que lea como sigue:

"Sección 5.- Poderes y Facultades.

A la Autoridad se le confieren, y esta tendrá y podrá ejercer, los derechos y poderes que sean necesarios o convenientes para llevar a efectos los propósitos mencionados, incluyendo los siguientes:

(a) Tener sucesión perpetua como corporación;

(b) Adoptar, alterar y usar un sello corporativo del cual se tomará conocimiento judicial;

(c) Formular, adoptar, enmendar y derogar estatutos y reglamentos para: (1) regir las normas de sus negocios en general y ejercitar y desempeñar los poderes y deberes que por ley se le conceden e imponen; (2) garantizar la seguridad de las

personas o la propiedad, reglamentar el uso y disfrute de sus propiedades y de aquellas otras bajo su administración; (3) el uso y consumo de la energía eléctrica; y (4) la intervención con y manipulación de equipos, empresas, facilidades, aparatos, instrumentos, alambres, contadores, transformadores y objetos de cualesquiera naturaleza análoga propiedad de la Autoridad que se utilicen en relación con la producción, transmisión, distribución y uso y consumo de energía eléctrica. Los reglamentos así adoptados tendrán fuerza de ley, una vez se cumpla con las disposiciones de la Ley 38-2017, "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico";

(d) Tener completo dominio e intervención sobre cualquier empresa que adquiera o construya, incluyendo el poder de determinar el carácter y la necesidad de todos los gastos y el modo como los mismos deberán incurrirse, autorizarse y pagarse, pero sujeto a las regulaciones del Negociado, disponiéndose que todas las acciones de los empleados y gerenciales de la Autoridad y su Junta de Gobierno están sujetos a las disposiciones de la Ley de Ética Gubernamental, y a los más altos deberes de fiducia para con el pueblo de Puerto Rico;

(e) Demandar y ser demandada en todos los tribunales sujeto a los límites aquí establecidos;

(f) Hacer contratos y formalizar todos los instrumentos que fueren necesarios o convenientes en el ejercicio de cualquiera de sus facultades;

(g) Preparar o contratar la preparación de planos, proyectos y presupuestos de gastos para la construcción, reconstrucción, extensión, mejora, ampliación o reparación de cualquiera empresa o parte o partes de ésta, y de tiempo en tiempo modificar tales planos, proyectos y presupuestos;

(h) Adquirir, en cualquier forma legal, incluyendo, sin limitación, adquisición por compra bien sea por convenio o mediante el ejercicio del poder de expropiación forzosa, arrendamiento, manda, legado o donación, y poseer, conservar, usar y explotar cualquiera empresa o partes de esta;

(i) Adquirir por los procedimientos indicados en el inciso anterior, producir, embalsar, desarrollar, manufacturar, someter a tratamiento, poseer, conservar, usar, transmitir, distribuir, entregar, permutar, vender, arrendar y disponer de cualquier otro modo de agua, energía eléctrica, equipos y aquellas otras cosas, suministros y servicios que la Autoridad estime necesarios, propios, incidentales o convenientes, en conexión con sus actividades;

(j) Adquirir, poseer y usar, cualesquiera bienes raíces, personales o mixtos, corpóreos o incorpóreos, o cualquier interés sobre los mismos, que considere necesarios o convenientes para realizar los fines de la Autoridad y (con sujeción a las limitaciones de esta Ley) arrendar en carácter de arrendadora, o permutar cualquiera propiedad o interés sobre la misma, adquirido por ésta en cualquier tiempo;

(k) Construir o reconstruir cualquier empresa o parte o partes de esta, y cualesquiera adiciones, mejoras y ampliaciones a cualquier empresa de la Autoridad, mediante contrato o contratos, o bajo la dirección de sus propios funcionarios, agentes y empleados, o por conducto o mediación de los mismos;

(l) Proponer y cobrar tarifas justas, razonables, no mayores a los veinte (20) centavos el kilovatio hora, según establecido en la Ley de Política Pública Energética de Puerto Rico y no discriminatorias, derechos, rentas y otros cargos aprobados por el Negociado, por el uso de las instalaciones de la Autoridad o por los servicios de energía eléctrica u otros artículos vendidos, prestados o suministrados por la Autoridad, que sean suficientes para cubrir los gastos razonables incurridos por la Autoridad en el desarrollo, mejoras, extensión, reparación, conservación y funcionamiento de sus instalaciones y propiedades, para el pago de principal e intereses de sus bonos, y para cumplir con los términos y disposiciones de los convenios que se hicieren con o a beneficio de los compradores o tenedores de cualesquiera bonos de la Autoridad y otros acreedores;

(m) Proveer mecanismos de participación ciudadana y establecer un programa continuo de educación a sus empleados y a la comunidad en general, que fomente la conservación y eficiencia energética, sujeto a las reglas establecidas por el Negociado. A esos fines, la Autoridad podrá establecer acuerdos de colaboración con otras entidades públicas, entidades cívicas, organizaciones no gubernamentales y otras instituciones interesadas en facilitar la coordinación y reducir los costos de los programas de educación y de los mecanismos para permitir y fomentar la participación ciudadana;

(n) Nombrar oficiales ejecutivos y aquellos funcionarios, agentes y empleados y conferirles aquellas facultades, imponerles aquellos deberes y fijarles, cambiarles y pagarles aquella compensación por sus servicios que la Autoridad determine;

(o) Tomar dinero a préstamo, hacer y emitir bonos para cualquiera de sus fines corporativos, y garantizar el pago de sus bonos y de todas y cualesquiera de sus otras obligaciones mediante gravamen o pignoración de todos o cualesquiera de sus contratos, rentas, e ingresos; disponiéndose, no obstante, que la Autoridad podrá otorgar gravámenes sobre activos muebles e inmuebles según sea necesario para cumplir con la reglamentación federal que permite financiamiento o garantías del Gobierno de los Estados Unidos a través de cualquiera de sus agencias para poder participar de programas federales. No podrá imponerse gravamen alguno sobre activos de la Autoridad en la medida en que no lo permita el o los acuerdos con los bonistas u otros acuerdos con acreedores de la Autoridad al amparo de la Ley PROMESA, Public Law No. 114-187. Excepto en lo referente a bonos y otros instrumentos de financiamiento relacionados con la reestructuración de la Autoridad de conformidad con los acuerdos alcanzados con acreedores de la

Autoridad, cuyos parámetros de deuda se regirán por las disposiciones del Capítulo IV de la Ley 4-2016 y el Acuerdo de Acreedores, antes de tomar dinero a préstamo o emitir bonos para cualquiera de sus fines corporativos, la Autoridad requerirá la aprobación del Negociado demostrando que el propuesto financiamiento se utilizará para proyectos y los costos asociados al mismo que sean consistentes con el Plan Integrado de Recursos;

(p) Hacer y emitir bonos con el propósito de consolidar, reembolsar, comprar, pagar o redimir cualesquiera bonos u obligaciones, emitidos o subrogados por ella, que estén en circulación; o cualesquiera bonos u obligaciones cuyo principal e intereses sean pagaderos en total o en parte de sus rentas;

(q) Aceptar donaciones y hacer contratos, arrendamientos, convenios u otras transacciones, con cualquier agencia federal, el Gobierno de Puerto Rico o subdivisiones políticas del Gobierno de Puerto Rico, e invertir el producto de cualesquiera de dichas donaciones para cualquier fin corporativo;

(r) Vender o de otro modo disponer de cualquiera propiedad real, personal o mixta o de cualquier interés sobre las mismas, que a juicio de la Junta no sea ya necesaria para el negocio de la Autoridad o para efectuar los propósitos de esta Ley, sujeto al cumplimiento de cualesquiera condiciones establecidas en las leyes, reglamentos y normas aplicables;

(s) Entrar, cuando no hubiese otra manera de hacerlo, previa notificación escrita con al menos cinco (5) días laborables de anticipación a sus dueños o poseedores en cualesquiera terrenos, cuerpos de agua, o propiedad con el fin de hacer mensuras, sondeos y estudios para ejercer específicamente las facultades dispuestas en esta Ley. La entrada debe ser a la hora de conveniencia del dueño o poseedor del predio en cuestión, y debe hacerse de la menor duración posible para no afectar indebidamente el uso y disfrute del dueño o poseedor del predio;

(t) Ceder y transferir propiedad mueble excedente, libre de costo, en favor de otras entidades gubernamentales o municipios, sujeto al cumplimiento de cualesquiera condiciones establecidas en los reglamentos y normas aplicables;

(u) Con la previa aprobación del Negociado, crear, ya sea en Puerto Rico o en cualquier otra jurisdicción, o contratar con, compañías, sociedades, o corporaciones subsidiarias, con fines pecuniarios o no pecuniarios, afiliadas o asociadas, para fines, entre otros, de:

    i. escindir y separar en una o más subsidiarias, las funciones de generación, transmisión y distribución de la Autoridad,

    ii. participar en Alianzas Público Privadas de acuerdo a la Ley 29-2009, según enmendada y Ley 120-2018, según enmendada,

    iii. desarrollar, financiar, construir y operar proyectos industriales y otras infraestructuras directamente relacionadas con la maximización de la

infraestructura eléctrica de la Autoridad (para tener un sistema eléctrico estable, de la más alta tecnología, sostenible, confiable y altamente eficiente),

iv.  adquirir, tener y disponer de valores y participaciones, contratos, bonos u otros intereses en otras compañías, entidades o corporaciones, y ejercer todos y cada uno de los poderes y derechos que tal interés le conceda, siempre que, a juicio de la Junta, dicha gestión sea necesaria, apropiada o conveniente para alcanzar los propósitos de la Autoridad o para ejercer sus poderes, y

v.  vender, arrendar, ceder o de otra forma traspasar cualquier propiedad de la Autoridad o delegar o transferir cualesquiera de sus derechos, poderes, funciones o deberes, a cualesquiera de dichas compañías, entidades o corporaciones que estén sujetas a su dominio total o parcial, excepto el derecho a instar procedimientos de expropiación.

(v) Formular, adoptar, enmendar y derogar aquellas reglas y reglamentos que fueren necesarios o pertinentes para ejercitar y desempeñar sus poderes y deberes.

(w) Realizar procesos competitivos de solicitud de propuesta o contratos de Alianzas Público Privadas, de conformidad con la Ley 120-2018, según enmendada, conocida como la "Ley para Transformar el Sistema Eléctrico de Puerto Rico", y la Ley 29-2009, según enmendada, conocida como la "Ley de Alianzas Público Privadas"; y con los parámetros requeridos por la "Ley de Política Pública Energética" y en esta Ley, para desarrollar, financiar, construir, operar y dar mantenimiento, en todo o en parte, a la red eléctrica, a sus plantas generatrices y demás instalaciones e infraestructura, así como para fomentar nuevos proyectos de generación, transmisión, distribución, optimización de servicios a los consumidores y cualquier otro proyecto necesario cónsono con el Plan Integrado de Recursos.

(x) Cualquier cantidad que la Autoridad adeude a cualquier agencia, instrumentalidad o corporación pública del Gobierno de Puerto Rico podrá ser compensada contra cualquier deuda que dicha agencia, instrumentalidad o corporación pública adeude a la Autoridad, siempre que tal compensación no violente acuerdos de fideicomiso con bonistas.

(y) Realizar todos los actos necesarios o convenientes para llevar a efecto los poderes que se le confieren por esta o por cualquiera otra ley.

Los poderes y facultades de la Autoridad de Energía Eléctrica podrán ser delegados y transferidos como parte de un Contrato de Alianza bajo las disposiciones de la Ley 29-2019 y la Ley 120-2018."

Artículo 2.7.- Se deroga la Sección 5B de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada.

Artículo 2.8.- Se elimina el contenido de la Sección 6 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, y se sustituye por una nueva Sección 6, para que lea como sigue:

"Sección 6.- Deberes y responsabilidades.

(a) Proveer y permitir que se provea energía eléctrica de forma confiable, limpia, eficiente, resiliente y asequible aportando al bienestar general y al desarrollo sostenible del pueblo de Puerto Rico;

(b) Garantizar que se provea un servicio universal de energía eléctrica;

(c) Conducir sus negocios de manera responsable, eficiente, y con prácticas fiscales y operacionales acertadas;

(d) Enfrentar los retos energéticos y ambientales mediante la utilización de adelantos científicos y tecnológicos disponibles e incorporar las mejores prácticas en las industrias energéticas de otras jurisdicciones;

(e) Facilitar la interconexión de productores de energía renovable distribuida a la red eléctrica;

(f) Asegurar la continuidad y confiabilidad del servicio eléctrico;

(g) Cumplir cabalmente con las normas, reglamentos, órdenes, mandatos, solicitudes y penalidades emitidas por el Negociado en el ejercicio de sus deberes de regular y fiscalizar el sistema eléctrico de la isla, y abstenerse de toda acción que pueda negar, paralizar, entorpecer, retrasar u obstaculizar las órdenes del Negociado;

(h) Cumplir con toda legislación y regulación ambiental aplicable, incluyendo, pero sin limitarse a, los Estándares de Mercurio y Tóxicos de Aire (conocido en inglés como los "Mercury and Air Toxic Standards" o M.A.T.S.), fiscalizados por la Agencia de Protección Ambiental de Estados Unidos (EPA, por sus siglas en inglés);

(i) Establecer, con la aprobación del Negociado, una factura de energía eléctrica para cada tipo de cliente de la Autoridad o su sucesora, que identifique de manera clara y detallada las categorías de los diferentes cargos y créditos al consumidor, incluyendo, pero sin limitarse a,  el ajuste por compra de combustible y el ajuste por compra de energía a los  productores de energía, el crédito por medición neta, la contribución en lugar de impuestos y subsidios creados por leyes especiales, el Cargo de Transición (según este término es definido en el Capítulo IV de la Ley 4-2016) y el Cargo Base, que incluirá el cargo de manejo y servicio de la cuenta, el cargo por consumo, los gastos operacionales, energía hurtada, pérdida de electricidad, pago de deuda no incluida en el Cargo de Transición, deudas por cobrar del sector público, deudas por cobrar del sector privado, y cualquier otro cargo que incida en la factura de los abonados. Cualquier otro detalle sobre las tarifas y cargos que el Negociado determine no sea viable incluir en la factura se

publicará y explicará en las páginas web de la Autoridad y del Negociado. La factura deberá ser totalmente transparente y deberá ser aprobada por el Negociado sujeto al cumplimiento con las reglas establecidas por esta Ley. La factura no incluirá ni englobará ningún otro costo o cargo bajo las cláusulas de compra de combustible y compra de energía que no sea aquel aprobado por el Negociado conforme a los mandatos de esta Ley y de la Ley de Transformación y ALIVIO Energético de Puerto Rico, Ley 57-2014, según enmendada;

(j) Proveer documentos e información de la Autoridad que sean solicitados por los clientes, con excepción de: (i) información que sea privilegiada a tenor con lo dispuesto en las Reglas de Evidencia de Puerto Rico; (ii) información relacionada con la negociación de convenios colectivos, con disputas laborales o con asuntos de personal, tales como nombramientos, evaluaciones, disciplina y despido; (iii) ideas en relación con la negociación de potenciales contratos de la Autoridad o con la determinación de resolver o rescindir contratos vigentes; (iv) información sobre estrategias en asuntos litigiosos de la Autoridad; (v) información sobre investigaciones internas de la Autoridad mientras estas estén en curso; (vi) aspectos sobre la propiedad intelectual de terceras personas; (vii) secretos de negocios de terceras personas; (viii) asuntos que la Autoridad deba mantener en confidencia al amparo de algún acuerdo de confidencialidad, siempre y cuando dicho acuerdo no sea contrario al interés público; o (ix) asuntos de seguridad pública relacionados con amenazas contra la Autoridad, sus bienes o sus empleados. En cumplimiento con este deber, además de la versión original de los documentos donde aparezca dicha información, la Autoridad publicará y pondrá a disposición de los clientes documentos que organicen y provean la información de manera que facilite su manejo y de manera que las personas sin conocimiento especializado en disciplinas particulares puedan entenderla. La información que la Autoridad deberá hacer pública incluye, pero no se limita a, el informe financiero mensual de la Autoridad, incluidos los datos por categoría de cliente, el precio por tipo de combustible y el promedio, el costo del kilovatio hora de cada categoría de cliente durante los tres (3) meses anteriores, el costo de producción por kilovatio hora y por planta de generación, los gastos operacionales de la Autoridad del último mes, y la distribución de generación por tipo de tecnología y tipo de combustible;

(k) Tener y mantener un portal de Internet con acceso libre de costo, a través del cual la Autoridad provea, como mínimo, lo siguiente:

    i. Una plataforma para pagar las facturas, examinar el historial del consumo, verificar el patrón de uso, y obtener información relacionada con la factura tal como la lectura del contador al iniciarse y terminar el período de facturación, las fechas y los días comprendidos en el período, la constante del contador, la tarifa, la fecha de la próxima lectura, así como cualquier otro dato que facilite la verificación de la lectura;

ii.  Información sobre la infraestructura eléctrica, incluyendo la información sobre los generadores públicos y privados, para que los clientes puedan evaluar la situación de la infraestructura eléctrica y de la Autoridad como instrumentalidad pública;

iii. Copia de todos sus contratos y de las resoluciones de la Junta de Gobierno;

iv.  Toda la documentación relacionada a los ingresos, ventas, gastos, desembolsos, activos, deudas, cuentas por cobrar, y cualquier otra información financiera de la Autoridad;

v.  El precio por barril, o su equivalente, por tipo de combustible, el promedio del costo por kilovatio hora para cada sector de clientes, el costo de producción por kilovatio hora, y por central eléctrica todos los gastos y costos operacionales, el desglose de costos operacionales en relación con la generación, la transmisión y la distribución del servicio eléctrico, el costo de servicio a cada tipo de cliente, la división de generación por tipo de tecnología, y cualquier otra información operacional de la Autoridad;

vi.  El desglose de la demanda de energía que proyecta y determina el Centro de Control Energético de la AEE;

vii.  Datos relacionados con la capacidad y el margen de reserva de energía;

viii.  Estatus de los procesos internos de la Autoridad para implantar los cambios requeridos con legislación para reformar el sistema energético de Puerto Rico;

ix.  Acceso a una plataforma mediante la cual los clientes puedan solicitar información y documentos públicos de la Autoridad que no se encuentren disponibles en el portal;

x.  Copia del o los acuerdos que se alcancen con los bonistas en virtud de la Ley PROMESA; y

xi.  Los informes financieros mensuales, los cuales deberán publicarse en el portal en o antes del término de treinta (30) días luego de concluir el mes al que corresponda cada informe.

La información con relación a los incisos v, vi y vii aquí dispuestos deberá ser publicada en tiempo real.

(l) Notificar al público, con por lo menos cuarenta y ocho (48) horas de antelación, sobre interrupciones del servicio programadas. La Autoridad deberá hacer dicha notificación a través de su portal de Internet, por las redes sociales, y cualquier otro medio de comunicación.

(m) Someter un informe al Gobernador, al Negociado y a ambos Cuerpos de la Asamblea Legislativa, no más tarde del 31 de mayo de cada año, donde indique las medidas que se hayan tomado en el año natural anterior para atender las emergencias que se puedan suscitar relacionadas con la temporada de huracanes venidera y de otros disturbios atmosféricos, incluyendo las inundaciones que puedan afectar el sistema eléctrico de la isla. Asimismo, en dicho informe se presentarán los planes o protocolos adoptados para casos de incendio en las facilidades e instalaciones de la Autoridad. Deberá incluir, además, cualquier medida que ya hayan identificado como prevención y conservación de las líneas eléctricas en caso de un temblor de tierra. El informe incluirá, sin que se entienda como una limitación, la siguiente información:

i. Mejoras al Plan de Operación para Emergencias por Disturbios Atmosféricos Revisado de la Autoridad de Energía Eléctrica;

ii. Desarrollo de un plan de emergencias para enfrentarse a un posible temblor de tierra o terremoto;

iii. Los planes o protocolos adoptados para casos de incendio en las facilidades e instalaciones de la Autoridad;

iv. Situación del programa de desganche de árboles con el propósito de proteger las líneas de transmisión eléctricas mientras se protegen nuestros árboles y evitar daños a estos;

v. Protocolo para tomar la decisión y poner en vigor la desconexión del sistema eléctrico;

vi. Adiestramientos que se hayan ofrecido para capacitar al personal operacional esencial de la Autoridad sobre los procedimientos en caso de emergencias por disturbios atmosféricos, incendios en facilidades o instalaciones de la Autoridad o terremotos, así como una certificación acreditando que todo personal que ejerce funciones de supervisión en áreas operacionales, ha sido debidamente orientado sobre las normas del plan operacional de emergencia vigente; y

vii. Planes de contingencia para atender situaciones con posterioridad al paso de una tormenta, huracán, incendio en facilidades o instalaciones de la Autoridad o terremoto, dirigidos a normalizar o restablecer el sistema eléctrico a la mayor brevedad posible.

(n) Desarrollar y cumplir con un plan integrado de recursos de acuerdo a los parámetros y requisitos establecidos por el Negociado de conformidad con la política pública energética.

(o) Cuando los cargos contenidos en una factura incluyan tres (3) o más mensualidades vencidas por servicios que, por error u omisión de la Autoridad, no fueron previamente facturados, la Autoridad deberá ofrecerle al cliente un plan de

pago razonable en atención a su capacidad económica. No obstante lo anterior, la Autoridad tendrá un máximo de ciento ochenta (180) días para facturar por cualquier servicio provisto. Transcurrido dicho término la Autoridad no podrá cobrar por el servicio provisto y no facturado. La Autoridad contará con un término máximo de ciento veinte (120) días a partir de la expedición de las facturas por concepto de consumo de energía eléctrica para notificar a los clientes de errores de cálculo de los cargos. Una vez concluido dicho término, la Autoridad no podrá reclamar cargos retroactivos por concepto de errores en el cálculo de los cargos, tales como aquellos de índole administrativo, operacional o de la lectura errónea de los contadores de consumo de electricidad. Esto aplicará solo a clientes residenciales; no aplicará a clientes comerciales, industriales, institucionales o de otra índole y tampoco aplicará a cargos o ajustes periódicos provistos en la tarifa aprobada por el Negociado o a los Cargos de Transición de la estructura de titulización ("securitization"). En aquellos casos en que los clientes mantienen sus contadores fuera del alcance visual de los lectores, o cuando ocurren eventos de fuerza mayor que impidan las lecturas de los contadores, tales como huracanes, entre otros, la medida no aplicará a facturas que se emitan a base de estimados. Asimismo, se prohíbe como práctica de cobro y apremio de pago, informar a las agencias de crédito ("credit bureaus") las cuentas en atraso de sus clientes residenciales, excepto cuando se trate de una cuenta no objetada de un cliente cuyo monto y recurrencia de falta de pago, tras haberse realizado más de dos requerimientos de pago y agotado los mecanismos de cobro típicos de los negocios cuando sus clientes no pagan por servicios, denotando así la intención de no cumplir con sus obligaciones de pago con la Autoridad o que de otro modo implique la intención de defraudar a la Autoridad.

(p) Toda factura que la Autoridad envíe a sus clientes deberá advertir sobre su derecho a objetar la factura (excepto los Cargos de Transición de la estructura de titulización "securitization") y solicitar una investigación por parte de la Autoridad. En su portal de Internet y en cada una de sus oficinas regionales y comerciales, la Autoridad deberá además proveer la información sobre los procesos, términos y requisitos para objetar una factura y solicitar una investigación a la Autoridad, y para luego acudir ante el Negociado para solicitar la revisión de la decisión de la Autoridad. De igual forma, en su portal de Internet y en cada una de sus oficinas regionales y comerciales, la Autoridad deberá proveer la información sobre los procesos, términos y requisitos para solicitar la revisión ante el Negociado de cualquier decisión de la Autoridad sobre la factura al cliente."

Artículo 2.9.- Se elimina el contenido de la Sección 6B de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, y se sustituye por una nueva Sección 6B, para que lea como sigue:

"Sección 6B.- Plan Integrado de Recursos.

Conforme al Artículo 1.9 de la Ley de Política Pública Energética de Puerto Rico, cuando la Autoridad sea la entidad responsable por la operación del Sistema Eléctrico, esta tendrá la obligación de elaborar y someter al NEPR un plan integrado de recursos (PIR). En tales casos, la Autoridad estará obligada a cumplir con las disposiciones del Artículo 1.9 de la Ley de Política Pública Energética, al igual que con cualquier regla, reglamento u orden emitida por el Negociado. "

Capítulo III - Enmiendas a la Ley 114-2007

Artículo 3.1.- Se enmienda el Artículo 1 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 1.- Mandato

Se ordena y autoriza a la Autoridad de Energía Eléctrica, su sucesora o el Contratante de la red de transmisión y distribución a establecer y mantener un programa de medición neta (net metering) que permita la interconexión a la red eléctrica para permitir la retroalimentación de electricidad a los clientes que hayan instalado un equipo solar eléctrico, molino de viento o cualquier otra fuente de energía renovable capaz de producir energía eléctrica, utilizando un contador que mida el flujo de electricidad en dos direcciones, cónsono con lo dispuesto en la legislación y reglamentación federal aplicable, tales como el "Energy Policy Act, Pub. L. 102-486, Oct. 24, 1992, 106 Stat. 2776", según enmendado, y "Standards for Electric Utilities, Pub. L. 95-617, Title I, Sec. 111, Nov. 9, 1978, 92 Stat. 3121", según enmendado, entre otros, y la reglamentación que se adopte al amparo de los mismos.  En caso de que la Autoridad de Energía Eléctrica, su sucesora o el Contratante de la red de transmisión y distribución incumplan con el mandato aquí dispuesto, el Negociado de Energía de Puerto Rico podrá motu proprio o a petición de parte utilizar cualquier mecanismo judicial o administrativo que considere apropiado para permitir y viabilizar la interconexión en el sistema de transmisión y distribución eléctrica y la retroalimentación con cargo a la Autoridad de Energía Eléctrica, su sucesora o el Contratante de la red de transmisión y distribución."

Artículo 3.2.- Se enmienda el Artículo 2 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 2.- Elegibilidad.-

Para ser elegible a este beneficio, el equipo solar eléctrico, aerogenerador, u otra fuente de energía renovable sostenible o alterna, según se definen en la Ley 83-2010, conocida como "Ley de Incentivos de Energía Verde de Puerto Rico", dichos términos deberán cumplir con todos los requisitos dispuestos en la legislación y reglamentación federal aplicables a programas de medición neta ("net metering") que permitan la interconexión a la red eléctrica. De no haber sido dispuesto lo contrario o impuesto otro requisito de modo específico, con disposición expresa de prevenir legislación estatal, en una legislación o reglamentación federal aplicable,

todo equipo solar eléctrico, aerogenerador, u otra fuente de energía renovable sostenible o alterna, según definido en la Ley 83, *supra*, cumplirá con lo siguiente:

a)  ...

…

i) Toda instalación cumplirá con los requisitos de interconexión y operación establecidos en los reglamentos correspondientes. Incumplir con estos requisitos podrá conllevar la suspensión del Programa de Medición Neta. No obstante, la Autoridad de Energía Eléctrica o el Contratante de la red de transmisión y distribución no suspenderá o cancelará ningún acuerdo del Programa de Medición Neta de forma caprichosa, ni suspenderá o cancelará ningún acuerdo del Programa de Medición Neta de instalaciones que en todo momento cumplan con los requisitos de interconexión y operación establecidos en los reglamentos al momento de la firma del acuerdo de Medición Neta, ni en menoscabo de obligaciones contractuales.

 j) No se instalarán sistemas de energía renovable que invadan una servidumbre existente de la Autoridad, su sucesora o el Contratante de la red de transmisión y distribución. Sin embargo, de existir una ocupación de servidumbre preexistente en el inmueble, no relacionada al desarrollo de energía renovable, ello no constituirá un obstáculo para prohibir o entorpecer la interconexión de la fuente de energía renovable y participar del Programa de Medición Neta. No obstante, ello no constituye un impedimento para que se apliquen las disposiciones contenidas en la Sección 5 de la Ley Núm. 143 de 20 de julio de 1979, según enmendada."

Artículo 3.3.- Se enmienda el Artículo 3 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 3.- Medidor.-

En los casos de sistemas de energía renovable interconectados a la red de la AEE, la instalación del Medidor deberá ser realizada por la Autoridad o el Contratante en la base del contador ya existente al momento de la solicitud de interconexión. La Autoridad de Energía Eléctrica o el Contratante no podrá, mediante reglamento, orden técnica, directriz del directorado o por cualquier otro medio, disponer requerimientos adicionales, rechazar la solicitud, negar el endoso, ni solicitar la relocalización de la ubicación de la base del contador ya existente, con la excepción de aquellos casos donde la ubicación actual del medidor no cumpla con los estándares de seguridad establecidos por el Código Eléctrico Nacional vigente. Sin embargo, el contador tiene que estar en un lugar accesible y, de no estarlo, el cliente estará obligado, previa coordinación, a permitir el acceso necesario al personal de AEE o del Contratante, según requerido por este. La Autoridad de Energía Eléctrica deberá atemperar cualquier reglamento de conformidad con las disposiciones de esta Ley.

Toda instalación de este tipo, deberá incluir un mecanismo de desconexión automática del flujo hacia las líneas de distribución, en caso de una interrupción del servicio eléctrico."

Artículo 3.4.- Se enmienda el Artículo 4 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 4.- Tarifa aplicable.

a) Estudio sobre Medición Neta y energía distribuida.- Se ordena al Negociado de Energía a realizar un estudio mediante un procedimiento formal independiente, con participación de partes interesadas y el público en general, en el cual evaluará y considerará los costos y beneficios asociados a: (1) el programa de medición neta, (2) las tecnologías de generación distribuida, (3) la energía solar a menor escala, y (4) los sistemas de almacenamiento de energía. Dicho estudio deberá concluirse no más tarde de cinco (5) años después de la entrada en vigor de la Ley de Política Pública Energética, estará sujeto a comentario público y tomará en consideración los siguientes factores: los costos de generación de energía, el valor de la capacidad, los costos de transmisión y distribución, las pérdidas evitadas en el sistema, y los costos evitados de cumplimiento ambiental, entre otros factores que el Negociado determine relevantes y apropiados.

Luego de un periodo de cinco (5) años a partir de la aprobación de la Ley de Política Pública Energética, el Negociado podrá tomar cualquier determinación relacionada con el programa de medición neta tomando en consideración los resultados de dicho estudio. Una vez que los resultados de dicho estudio sean integrados al programa o tarifa de medición neta, el estudio permanecerá en efecto por no menos de tres (3) años y hasta que el Negociado, *motu proprio* o a petición de parte, determine que procede iniciar un procedimiento formal de revisión de este estudio.

b) Determinación sobre tarifa aplicable.- Durante el mencionado periodo de cinco (5) años, y hasta que el Negociado de Energía no establezca los valores correspondientes de la energía distribuida y de los sistemas de almacenaje de energía conforme al estudio descrito en el inciso anterior, el crédito por energía exportada por clientes de medición neta será igual al valor de dicha energía conforme a la tarifa aplicable al cliente, y cualquier cargo aplicable a clientes de medición neta estará basado en su consumo neto.

Una vez transcurrido el término de cinco (5) años antes dispuesto, la tarifa aplicable a los clientes de medición neta, incluyendo la tarifa o mecanismo mediante el cual se compensará al cliente por la energía suplida a la red eléctrica, será determinado exclusivamente por el Negociado de Energía como parte del procedimiento de revisión de tarifas por servicio eléctrico dispuesto en la Ley 57-2014, o mediante un procedimiento administrativo separado, cuando así lo entienda necesario o conveniente. Cualquier determinación con relación al

programa de medición neta entrará en vigor en el término dispuesto por el Negociado.

Todo cliente que, en la fecha en la que el Negociado emita su determinación final, posea contrato de medición neta o que haya notificado al Negociado de la certificación del generador distribuido instalado por el ingeniero licenciado y colegiado o por el perito electricista licenciado y colegiado, será automáticamente considerado como cliente de medición neta con derecho adquirido ("grandfathered") bajo la tarifa en efecto antes de la determinación final del Negociado.

En tales casos, el cliente de medición neta tendrá derecho a la tarifa o mecanismo de compensación en efecto en aquel momento por un término que no será menor de veinte (20) años, contados a partir de la fecha de la firma del contrato de medición neta.  No obstante, el cliente de medición neta tendrá el derecho y la opción de elegir acogerse a la nueva tarifa o mecanismo de compensación aprobado por el Negociado.

c) Cargos prohibidos.- La Autoridad de Energía Eléctrica o el Contratante de la red de transmisión y distribución no podrá imponer cargo alguno o modificar la tarifa mensual de consumo de energía eléctrica de los clientes de medición neta o que interconecten algún sistema de generación distribuida, sin la previa autorización del Negociado conforme a lo antes dispuesto.  De igual forma, la tarifa aplicable a clientes de medición neta aprobada por el Negociado de Energía no podrá tener el efecto de discriminar o desincentivar la adopción de acuerdos de medición neta.  No se impondrá cargo directo o indirecto alguno a la autogeneración de energía renovable por los prosumidores.

d) Contratos existentes a la fecha de aprobación de la Ley de Política Pública Energética.- Conforme a lo dispuesto en el inciso (b) de este Artículo sobre clientes con derecho adquirido, la Autoridad o el Contratante de la red de transmisión y distribución honrarán los contratos de medición neta existentes a la fecha de aprobación de esta Ley conforme a los términos pactados."

Artículo 3.5.- Se enmienda el Artículo 5 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 5.- Medición de Energía

Salvo en aquellos casos en que la ley o reglamentación federal vigentes y aplicables ordenen, de modo expreso y específico lo contrario, la medición y acreditación se llevarán a cabo del siguiente modo:

a) La Autoridad de Energía Eléctrica o el Contratante de la red de transmisión y distribución medirá la electricidad  consumida por el cliente durante un periodo de facturación de acuerdo a las prácticas normales de lectura en vigor según se establezca al amparo de los reglamentos sobre medición neta y los estándares establecidos por el Negociado.

b)   La Autoridad de Energía Eléctrica o el Contratante de la red de transmisión y distribución facturará al cliente la electricidad que le suministró aplicando la tarifa o mecanismo de compensación aprobado por el Negociado de Energía  de conformidad con el Artículo 4 de esta Ley.

c)   Todo cliente de medición neta tendrá derecho a recibir un crédito por cada kilovatio-hora de energía suministrado a la red eléctrica, conforme a la tarifa o mecanismo de compensación autorizado por el Negociado. Para fines de esta Ley el término "kilovatio-hora" se entenderá como la unidad de medida de electricidad equivalente a la electricidad desarrollada por una potencia de un kilovatio durante una hora.

d) Para el periodo de facturación que cierra en junio de cada año, cualquier sobrante de los créditos por kilovatios-horas acumuladas por el cliente retroalimentante, durante el año previo que no se haya utilizado hasta ese momento, se compensará como sigue:

1)   Setenta y cinco (75) por ciento del sobrante será comprado por la Autoridad de Energía Eléctrica o el Contratante de la red de transmisión y distribución de conformidad con lo que establezca el Negociado de Energía; y

2)  ...

f) La Autoridad o el Contratante deberá acreditar a todo participante del Programa de Medición Neta de manera pronta y expedita. Dicho crédito deberá reflejarse claramente en la factura mensual, a partir del próximo ciclo de facturación no más tarde de treinta (30) días de haberse notificado la certificación del generador distribuido instalado por el ingeniero eléctrico licenciado y colegiado o por el perito electricista licenciado y colegiado.

g) De no alcanzarse un acuerdo entre las partes, de conformidad con esta Ley, dentro del término improrrogable de ciento veinte (120) días contados a partir de la radicación de la solicitud de medición neta ante la Autoridad de Energía Eléctrica o el Contratante de la red de transmisión y distribución, o en aquellos casos que se deba desconectar una fuente de energía renovable bajo el Programa de Medición Neta por razones técnicas o de seguridad, o en caso de controversias sobre la facturación o acreditación, el Negociado de Energía de Puerto Rico tendrá jurisdicción para dirimir dichas controversias, según se dispone en la Ley 57-2014, según enmendada."

Artículo 3.6.- Se enmienda el Artículo 6 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 6.- Responsabilidad.-

La Autoridad de Energía Eléctrica o el Contratante de la red de transmisión y distribución no será responsable, directa o indirectamente, por permitir que

equipos solares eléctricos, molinos de viento u otra fuente de energía renovable se conecten o continúen conectados a su sistema de transmisión y distribución, o por los actos u omisiones del cliente retroalimentante que causen daños o pérdidas, incluyendo muerte a cualquier tercero."

Artículo 3.7.- Se enmienda el Artículo 7 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 7.- Reglamentación y Educación

El Programa de Política Pública Energética regularmente desarrollarán e implantarán campañas educativas dirigidas a informar a los consumidores de los beneficios de la medición neta ("net metering"), eficiencia energética, conservación de energía, respuesta de la demanda, consumo energético y de las diferentes tecnologías disponibles en el mercado para generar energía de fuentes renovables.

Cada factura enviada a un cliente contendrá el siguiente mensaje:

"La instalación de un equipo para generar energía de fuentes renovables puede ayudarle a reducir su factura de electricidad y la Autoridad, mediante sus oficinas comerciales o por Internet, o el Contratante de la red de transmisión y distribución le suministrará información sobre cómo puede cualificar para ingresar al programa de medición neta. Además, existen beneficios contributivos para incentivar la compra de esos equipos sobre los que puede obtener más información en el Programa de Política Pública Energética."

Ese mensaje aparecerá en la factura a por lo menos dos pulgadas de distancia del lugar en que aparece el monto total de la factura y el tipo de letra ("font") en que se escriba el mismo debe ser de un tamaño igual al tamaño más grande en que aparezca texto alguno en el resto de la factura."

Artículo 3.8.- Se enmienda el Artículo 8 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 8.- Informes.

La Autoridad de Energía Eléctrica, su sucesora o el Contratante de la red de transmisión y distribución rendirá al Negociado de Energía y a la Asamblea Legislativa informes semestrales de progreso sobre la interconexión de sistemas renovables a la red, incluyendo, pero sin limitarse a, tiempos promedio de interconexión de los sistemas de generación distribuida, cantidad de casos pendientes de aprobación ("backlog") y el porciento de cumplimiento con la Cartera de Energía Renovable correspondiente a la energía renovable distribuida. Los informes podrán incluir recomendaciones sobre legislación adicional necesaria para lograr los objetivos del Programa."

Artículo 3.9.- Se enmienda el Artículo 9 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 9.- Política Pública de Interconexión

Será la política pública del Gobierno de Puerto Rico el garantizar que los procedimientos de interconexión de generadores distribuidos al sistema eléctrico sean efectivos en términos de costos y tiempo de procesamiento, de manera que se promueva el desarrollo de estos tipos de proyectos y se incentive la actividad económica mediante la reducción de los costos energéticos en los sectores residenciales, comerciales e industriales. Por ende, se establece que los procedimientos de interconexión para generadores distribuidos, con capacidad generatriz de hasta 5 megavatios (MW) a participar del Programa de Medición Neta, deberán usar como modelos los "Small Generator Interconnection Procedures" ("SGIP") y al "Small Generator Interconnection Agreement" (SGIA) contenidos en la Orden Núm. 2006 de la Federal Energy Regulatory Commission (FERC), según enmendada, y cualquier otra enmienda a estos procedimientos que sean adoptados por el Negociado de Energía. Los procedimientos de interconexión deberán ser de forma uniforme en todas las regiones.

Usando como modelo lo establecido en el SGIP, la Autoridad de Energía Eléctrica o el Contratante de la red de transmisión y distribución deberá aprobar procesos expeditos para que aquellos generadores distribuidos que cuenten con una capacidad generatriz menor de un (1) megavatio (MW) puedan conectarse a la red, siempre y cuando las características técnicas del generador distribuido a interconectarse y las condiciones existentes de la red eléctrica así lo permitan. Disponiéndose, que para la interconexión de generadores de más de quinientos (500) kilovatios pero menores de un (1) megavatio (MW), el Negociado podrá requerir los estudios de confiabilidad necesarios.

Un ingeniero o un perito electricista, ambos colegiados y licenciados, deberá certificar que la instalación eléctrica del sistema de generación distribuida cumple con las especificaciones requeridas por la reglamentación de interconexión, y que la misma fue completada de acuerdo con las leyes, reglamentos y normas aplicables a la interconexión de generación distribuida al sistema de transmisión y distribución. Una vez sometida dicha certificación a la Autoridad, su sucesora o el Contratante de la red de transmisión y distribución, el proponente podrá interconectar y operar su sistema de generación distribuida con el sistema eléctrico, siempre y cuando el mismo no sobrepase la capacidad de generación de 25 kilovatios.

La Autoridad, su sucesora o el Contratante de la red de transmisión y distribución deberá evaluar la solicitud de interconexión conforme se establece mediante el reglamento de interconexión. No obstante, dicha evaluación no excederá de noventa (90) días desde radicada la solicitud de interconexión conforme se establezca por el reglamento aprobado por el Negociado de Energía.

De no cumplirse con el término dispuesto, la solicitud de interconexión se aprobará automáticamente hasta que la Autoridad, su sucesora o el Contratante de la red de transmisión y distribución, según corresponda, fundamente las razones para denegar la interconexión o determine que resulte necesario la implementación de requisitos técnicos adicionales y/o mejoras al sistema eléctrico de distribución. En estos casos, el solicitante tendrá derecho a cuestionar dicha determinación o hallazgos mediante cualquiera de los procesos provistos mediante el reglamento sobre los recursos o procesos de revisión sobre la interconexión de un generador distribuido aprobado por el Negociado de Energía.

Nada impide que se revise posteriormente la corrección de la certificación realizada por el ingeniero o un perito electricista, ambos colegiados y licenciados.

No obstante, en aquellos casos en que la interconexión de sistemas de generación fotovoltaica o renovable no sobrepase la capacidad de generación de 25 kilovatios aplicará lo siguiente:

(a) Los sistemas de generación fotovoltaica o renovable que se inscriban en el registro de renovables de la Ley 82-2010 y que no sobrepasen la capacidad de generación de 25 kilovatios se interconectarán automáticamente a la red de transmisión y distribución y operarán automáticamente tan pronto un ingeniero eléctrico licenciado y colegiado o un perito electricista licenciado y colegiado que posea un certificado válido de instalador de sistema fotovoltaico o de energía renovable, certifique el cumplimiento con los requisitos técnicos reglamentarios para la interconexión con la red de distribución. No será necesaria la presentación de una solicitud de interconexión para que los sistemas aquí identificados se entiendan interconectados y la medición neta se active.

(b) La medición neta de estos sistemas de generación se reflejará en la factura mensual del abonado no más tarde de treinta (30) días de haberse notificado la certificación del generador distribuido instalado por el ingeniero licenciado y colegiado o por el perito electricista licenciado y colegiado.

(c) Que el alimentador ("feeder") sobrepase su capacidad, no constituirá un impedimento para la interconexión de sistemas fotovoltaicos o de energía renovable con capacidad de generación que no sobrepase los 25 kilovatios. En estos casos, las mejoras y/o cambios necesarios al alimentador serán por cuenta de la compañía solicitante.

(d) Nada de lo dispuesto en este Artículo, impide que se revise posteriormente la corrección de la certificación del generador distribuido.

No obstante, se entenderán automáticamente aprobados para operar y participar del Programa de Medición Neta aquellos sistemas de generación fotovoltaica establecidos conforme a los parámetros de la Orden Ejecutiva OE-2017-064, "Para energizar residencias con sistemas de generación fotovoltaica y

baterías, y acelerar la recuperación del sistema de energía eléctrica de Puerto Rico luego del paso del huracán María", siempre y cuando cumplan con las disposiciones contenidas durante la vigencia de la Orden Ejecutiva OE-2017-064. Sin embargo, aquellos sistemas de almacenamiento fotovoltaicos residenciales construidos al amparo de la referida Orden Ejecutiva no tendrán que cumplir con el requisito de operación remota y monitoreo de estado de carga de los sistemas de almacenamiento para entenderse automáticamente aprobados para operar y participar del Programa de Medición Neta.

Aquellos clientes residenciales que posean un Acuerdo de Interconexión antes de febrero de 2017, no tendrán que renovar el mismo, ya que este permanecerá vigente, siempre y cuando mantenga activo el contrato de servicio de energía eléctrica en el predio donde ubica el sistema de generación distribuida."

Artículo 3.10.- Se enmienda el Artículo 10 de la Ley 114-2007, según enmendada, para que lea como sigue:

"Artículo 10.- Reglamentación.

Se ordena a la Autoridad de Energía Eléctrica a adoptar o modificar los reglamentos necesarios para el fiel cumplimiento de esta Ley de conformidad con los estándares y requisitos técnicos que establezca el Negociado de Energía. Dichos reglamentos serán promulgados dentro de un período no mayor de ciento ochenta (180) días contados a partir de la aprobación de esta Ley.

La Autoridad de Energía Eléctrica vendrá obligada a promulgar un reglamento de interconexión de generadores distribuidos con capacidad generatriz de menos de un (1) megavatio (MW), así como un reglamento de interconexión de generadores distribuidos con capacidad generatriz de entre un (1) megavatio (MW) a cinco (5) megavatios (MW) que se conecten a sub-transmisión cuyas disposiciones estén conformes con la política pública de interconexión establecida por el Artículo 9 de esta Ley y aseguren la confiabilidad y la seguridad del sistema eléctrico. Los reglamentos de interconexión de generadores distribuidos serán promulgados en el término improrrogable de ciento ochenta (180) días a partir de la vigencia de esta Ley. Además, la AEE deberá enmendar cualquier otro reglamento vigente que rija o esté relacionado con el Programa de Medición Neta, de manera que se logre consistencia con lo dispuesto en esta Ley y con los términos y procedimientos a incluirse en los reglamentos de interconexión de generadores distribuidos.

Si la Autoridad de Energía Eléctrica no promulga o modifica los reglamentos de interconexión de generadores distribuidos en o antes de ciento ochenta (180) días a partir de la aprobación de esta Ley, el proceso de evaluación y aprobación de solicitudes de interconexión de generadores distribuidos será el establecido por el Negociado de Energía, siguiendo las mejores prácticas de la industria eléctrica. Dicho proceso tendrá como objetivo reducir los trámites

administrativos mientras se salvaguarda la confiabilidad y seguridad de la red eléctrica de Puerto Rico, y asegurar que se cumpla con la política pública energética del Gobierno de Puerto Rico.

Toda propuesta de enmienda de la Autoridad, su sucesora o el Contratante de la red de transmisión y distribución a los reglamentos de interconexión de generadores distribuidos deberá ser presentada al Negociado de Energía para la celebración de vistas públicas que se establece en esta Ley. Toda propuesta de enmienda del Negociado a los reglamentos de interconexión de generadores distribuidos seguirá el proceso establecido en este Artículo.

Será necesario que el Negociado celebre vistas públicas antes de aprobar cualquier enmienda a los reglamentos de interconexión de generadores distribuidos. Las vistas públicas para este propósito no podrán ser celebradas con menos de treinta (30) días luego de publicarse el aviso público anunciando la propuesta de enmienda al reglamento de interconexión de generadores distribuidos. A los treinta (30) días luego de transcurrido el proceso de vistas públicas, el Negociado deberá emitir su decisión en cuanto a si procede la enmienda o no al reglamento de interconexión. Una vez advenga final y firme la decisión del Negociado, este deberá enmendar el reglamento de interconexión de generadores distribuidos de conformidad con aquellas enmiendas adoptadas mediante su decisión."

Artículo 3.11.- Se deroga el Artículo 11 de la Ley 114-2007, según enmendada.

Artículo 3.12.- Se reenumeran los Artículos 12 y 13 de la Ley 114-2007, según enmendada, como Artículos 11 y 12, respectivamente.

Capítulo IV - Enmiendas a la Ley 82-2010 y a la Ley 83-2010

Artículo 4.1.- Se enmienda el Artículo 1.4 de la Ley 82-2010, según enmendada, para que lea como sigue:

"Artículo 1.4.- Definiciones.

Para los fines de esta Ley, los siguientes términos o frases tendrán el significado que a continuación se expresan, excepto donde claramente indique lo contrario, y los términos utilizados en singular incluirán el plural y viceversa:

1) …

2) "Administración o Programa".- significa el Programa de Política Pública Energética del Departamento de Desarrollo Económico y Comercio de Puerto Rico, encargado de desarrollar y difundir la política pública energética del Gobierno de Puerto Rico. Toda referencia en esta Ley a la Administración de Asuntos Energéticos o la Oficina Estatal de Política Pública Energética u OEPPE, se entenderá que se refiere al Programa de

Política Pública Energética del Departamento de Desarrollo Económico y Comercio.

…

5) "Autoridad".- significa la Autoridad de Energía Eléctrica de Puerto Rico, su subsidiaria o los Contratantes de la red de transmisión y distribución. El Contratante se refiere a aquellas personas que otorguen Contratos de Alianza con respecto a las Transacciones de la AEE conforme se define dicho término en la Ley 29-2009.

...

8) "Certificado de Energía Renovable" o "CER".- es un bien mueble que constituye un activo o valor económico mercadeable y negociable, que puede ser comprado, vendido, cedido y transferido entre personas para cualquier fin lícito, y que de forma íntegra e inseparable representa el equivalente de un (1) megavatio-hora (MWh) de electricidad generada por una fuente de energía renovable sostenible o energía renovable alterna en Puerto Rico (emitido e inscrito conforme a esta Ley) y, a su vez, comprende todos los atributos ambientales y sociales, según definidos en esta Ley.

9) "Comisión o Negociado ".- significa el Negociado de Energía de Puerto Rico, según establecido en virtud del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico y la Ley 211-2018, que es un ente independiente especializado encargado de reglamentar, supervisar y hacer cumplir la política pública energética del Gobierno de Puerto Rico, anterior Comisión de Energía de Puerto Rico, creada por la Ley 57-2014, según enmendada. Toda referencia que esta Ley haga a "la Comisión o Comisión de Energía", se entenderá que se refiere al Negociado de Energía de Puerto Rico.

…

13) "Energía renovable alterna".- significa la energía derivada de las siguientes fuentes:

a. combustión de gas derivado de un sistema de relleno sanitario;

b. digestión anaeróbica;

c. pilas de combustible ("fuel cells", en inglés)

14) "Energía renovable distribuida".- significa energía renovable sostenible o energía renovable alterna que le suministre energía eléctrica a una compañía de servicio eléctrico o que genere para su propio consumo o venta a un tercero. Los sistemas comunitarios se consideran energía renovable distribuida a nivel residencial y su capacidad máxima será determinada por el Negociado de Energía de Puerto Rico, con el insumo

de la Autoridad de Energía Eléctrica o del Contratante de la red de transmisión y distribución, según aplique.

...

15) "Energía renovable sostenible".- significa la energía derivada de las siguientes fuentes:

a. energía solar;

b. energía eólica;

c. energía geotérmica;

d. combustión de biomasa renovable;

e. combustión de gas derivado de biomasa renovable;

f. combustión de biocombustibles derivados exclusivamente de biomasa renovable;

g. energía hidroeléctrica;

h. energía hidrocinética y marina renovable ("marine and hydrokinetic renewable energy"), según definido en la Sección 632 de la Ley de Seguridad e Independencia Energética de 2007 de los Estados Unidos de América (The Energy Independence and Security Act of 2007, Pub. L. 110-140, 42 U.S.C. § 17211);

i. energía océano termal;

21) "Microred".- significa un grupo de cargas interconectadas y recursos de energía distribuida dentro de parámetros eléctricos claramente definidos por el Negociado, que actúa como una entidad única controlable con respecto al sistema de transmisión y distribución de la red eléctrica. Las microredes tendrán la capacidad de conectarse y desconectarse del sistema de transmisión y distribución de la Autoridad, de manera que puedan operarse tanto interconectadas como "off the grid". El objetivo de las microredes es fortalecer la resiliencia de la red eléctrica, promover la generación distribuida a base de energía mayormente renovable y promover estrategias de reducción de consumo eléctrico.

...

29) "Prosumidor": Se refiere a todo usuario o consumidor del Sistema Eléctrico que cuente con la capacidad de generar energía eléctrica para su propio consumo, y que, a su vez, cuente con la capacidad de distribuir o suplir cualquier excedente de energía a la red eléctrica o a otros usuarios.

30)

31) ..."

Artículo 4.2.- Se enmienda el Artículo 2.3 de la Ley 82-2010, según enmendada, para que lea como sigue:

"Artículo 2.3.- Cartera de Energía Renovable.

(a) Para cada año natural entre 2015 y 2050, cada proveedor de energía al detal deberá someter al Negociado evidencia de cumplimiento con la Cartera de Energía Renovable aplicable bajo el inciso (b) de este Artículo.

(b) Para cada año natural entre 2015 y 2050, la Cartera de Energía Renovable aplicable a cada proveedor de energía al detal será como mínimo el siguiente por ciento:

| Año | Porciento (%) requerido de energía renovable |
|---|---|
| 2015 hasta el 2022 | 20.0% |
| 2023 hasta el 2025 | 40.0% |
| 2026 hasta el 2040 | 60.0% |
| 2041 hasta el 2050 | 100.0% |

(c) Para cada año natural entre los años 2015 y 2050, el porciento de energía renovable sostenible o renovable alterna aplicable a cada proveedor de energía al detal será, como mínimo, el porciento correspondiente a ese año natural, según expresado en el inciso (b) de este Artículo. La cantidad requerida de energía renovable sostenible o energía renovable alterna aplicable a un proveedor de energía al detal en determinado año se obtiene multiplicando el porciento correspondiente al año, según aparecen en el inciso (b) de este Artículo, por el total de energía eléctrica, expresado en megavatio-horas (MWh), vendida por el proveedor de energía al detal en el mismo año natural.

(d) Según sea necesario para cumplir con una cartera de energía renovable impuesta por medio de legislación y/o reglamentación federal, el Negociado podrá limitar, mediante reglamentación, el porciento de energía renovable alterna y la cantidad de CERs que podrán ser utilizados por un proveedor de energía al detal para demostrar cumplimiento con la Cartera de Energía Renovable aplicable en cada año natural.

(e) Para propósitos de demostrar cumplimiento con este Artículo, la cantidad de energía renovable distribuida generada por los prosumidores se contabilizará y tendrá acceso al registro de Certificados de Energía Renovable de acuerdo con las disposiciones de esta Ley, la Ley de Política Pública Energética de Puerto Rico y los reglamentos que para esos fines apruebe el Negociado de Energía.

(f)...

(g) ..."

Artículo 4.3.- Se enmienda el Artículo 2.4 de la Ley 82-2010, según enmendada, para que lea como sigue:

"Artículo 2.4.- Poderes y Deberes del Negociado.

El Negociado tendrá a su cargo la implantación de esta Ley, para lo cual podrá valerse de los recursos y personal del Programa. El Negociado tendrá todos los poderes necesarios y convenientes para cumplir cabalmente con los propósitos de esta Ley, específicamente incluyendo, pero sin limitarse a, los siguientes:

(a)   ...

(j) El Negociado establecerá mediante reglamentación la creación de un sistema de mercado de Certificados de Energía Renovable (CERs), incluyendo mecanismos de subastas o trámites competitivos para estos, considerando los derechos adquiridos, si alguno, de productores de energía que cuenten con CERs. Dicha reglamentación deberá incluir mecanismos para asegurar el cumplimiento de la Autoridad de Energía Eléctrica o su sucesora, el contratante de la red de transmisión y distribución y los proveedores de energía al detal.

(k)   ...

(l)   ...

(m)   ...

(n)   …"

Artículo 4.4.- Se enmienda el Artículo 2.5 de la Ley 82-2010, según enmendada, para que lea como sigue:

"Artículo 2.5.- Poderes y Deberes del Departamento de Desarrollo Económico y Comercio

Además de las facultades delegadas al Programa mediante otras leyes, el Secretario del Departamento de Desarrollo Económico y Comercio tendrá los siguientes poderes y deberes para cumplir cabalmente con los propósitos de esta Ley:

(a) Desarrollar y ofrecer alternativas de financiamiento e incentivos especiales para el desarrollo de fuentes de energía renovable sostenible y fuentes de energía renovable alternas.

(b) Desarrollar y ofrecer alternativas de financiamiento e incentivos especiales que permitan exceder la Cartera de Energía Renovable aplicable antes del tiempo calendarizado por esta Ley.

(c) Preparar análisis sistemáticos de los programas de energía renovable sostenible y evaluar los análisis completados por otras agencias gubernamentales, y recomendar programas diseñados para lograr los objetivos de esta Ley.

(d) Diseñar y recomendar propuestas específicas para la conservación de electricidad.

(e) Asistir con la implantación de programas de eficiencia y conservación de electricidad de personas, agencias o corporaciones públicas y/o privadas bajo su jurisdicción.

(f) Solicitar cualquier información relacionada con las medidas de conservación de electricidad diseñadas, implantadas, utilizadas o propuestas por un proveedor de energía al detal para lograr la conservación de electricidad.

(g) Promulgar, enmendar o derogar reglamentos, conforme a las disposiciones de esta Ley y los procedimientos establecidos en la Ley 38-2017 conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

(h) Implantar las decisiones, determinaciones, órdenes, resoluciones y reglamentos del Negociado de Energía.

(i) Suscribir acuerdos y convenios con entidades con propósitos afines que cuenten con experiencia y recursos humanos, técnicos y laboratorios especializados en materia energética con el propósito de facilitar y asesorar al Programa en el cumplimiento de sus funciones."

Artículo 4.5.- Se deroga el Artículo 2.6 de la Ley 82-2010, según enmendada.

Artículo 4.6.- Se reenumeran los Artículos 2.7 y 2.8 de la Ley 82-2010, según enmendada, como Artículos 2.6 y 2.7, respectivamente.

Artículo 4.7.- Se reenumera el Artículo 2.9 como Artículo 2.8 de la Ley 82-2010, según enmendada, y se enmienda, para que lea como sigue:

"Artículo 2.8.- Tramitación de CERs por el Negociado. —

El Negociado podrá establecer, para cada CER tramitado, un costo razonable de tramitación que el titular de un CER deberá pagar. El costo de tramitación podrá ser incluido en el valor de cada CER tramitado. Cualquier ingreso obtenido mediante los costos de tramitación impuestos será utilizado para la realización de todas las acciones propias y necesarias que garanticen el logro de los fines y objetivos de esta Ley.

El valor mínimo de cada CERs será el valor que establezca el Negociado al momento de realizarse cualquier negocio jurídico con los mismos, sin menoscabo de cualquier derecho adquirido por las partes antes de la aprobación de la Ley de Política Pública Energética de Puerto Rico."

Artículo 4.8.- Se reenumera el Artículo 2.10 como Artículo 2.9 de la Ley 82-2010, según enmendada.

Artículo 4.9.- Se reenumera el Artículo 2.11 de la Ley 82-2010, según enmendada, como Artículo 2.10 y se enmienda para que lea como sigue:

"Artículo 2.10.- Cumplimiento con la Cartera de Energía Renovable.

(a) Un proveedor de energía al detal podrá cumplir con la Cartera de Energía Renovable creada bajo esta Ley, presentándole al Negociado cualquiera de los siguientes o una combinación de los mismos:

(i) un CER, emitido e inscrito en el registro de renovables a nombre del proveedor de energía al detal, para cada megavatio-hora (MWh) de electricidad generado de fuentes de energía renovable sostenible o energía renovable alterna en Puerto Rico, y/o

(ii) en el caso de un proveedor de energía al detal que contabilice la electricidad generada por y comprada de productores de energía renovable distribuida localizados en Puerto Rico mediante un programa de medición neta, y cuando no sea viable obtener CERs que representen dicha electricidad, un informe que demuestre que el proveedor de energía al detal ha cumplido con la Cartera de Energía Renovable mediante la compra de energía renovable, junto con todos los atributos ambientales y sociales relacionados con la producción de dicha energía, conforme lo dispuesto en el inciso (e) de este Artículo.

(iii) Todos los CER's, incluyendo los de energía renovable distribuida y los de abonados que tienen medición neta, podrán ser adquiridos por un proveedor de energía al detal para fines de cumplimiento con la Cartera de Energía Renovable, o por otros compradores para cualquier fin legítimo.

(b) …

…

(f) Contratante de la red de transmisión y distribución.- El Contratante de la red de transmisión y distribución deberá realizar todas las mejoras necesarias y convenientes para viabilizar y facilitar el cumplimiento con la Cartera de Energía Renovable."

Artículo 4.10.- Se añade un nuevo Artículo 2.12 a la Ley 82-2010, según enmendada, para que lea como sigue:

"Artículo 2.12.- Sistemas de Almacenamiento de Energía.

En o antes del 31 de diciembre de 2019, el Negociado de Energía de Puerto Rico, con la asistencia del Programa, deberá realizar un estudio para determinar las metas específicas de sistemas de almacenamiento de energía a todos los niveles, como mecanismo para facilitar la integración de fuentes de energía renovable sostenible y energía renovable alterna a la red y lograr el cumplimiento con la Cartera de Energía Renovable. Para este estudio, el Negociado y el Programa deberán considerar, sin que se entienda como una limitación, lo siguiente:

a) los costos asociados y beneficios a largo plazo;

b) la estabilidad y resiliencia de la red derivada del almacenamiento;

c) los tipos de tecnologías disponibles, vida útil y flexibilidad ante los cambios en la infraestructura de la red;

d) la capacidad para ser utilizada como recurso de generación al eliminar la necesidad de construir infraestructura nueva; y

e) la eficiencia en su utilización para facilitar programas de respuesta a la demanda.

Luego de completar el estudio, el Negociado deberá presentar el mismo a ambos Cuerpos de la Asamblea Legislativa y establecerá mediante reglamento las metas específicas de almacenamiento mínimo y el calendario de cumplimiento con los cuales tendrán que cumplir los entes regulados sujetos a estos requisitos. El Negociado tomará en consideración los sistemas de almacenamientos de energía existentes y en uso o aprobados al momento de determinar las adquisiciones necesarias para alcanzar las metas de almacenamiento. El Negociado podrá considerar programas de incentivos que promuevan el desarrollo rentable de los sistemas de almacenamiento de energía para cumplir con la Cartera de Energía Renovable. El Negociado deberá reevaluar estas determinaciones por lo menos una vez cada tres (3) años y como parte del Plan Integrado de Recursos."

Artículo 4.11.- Se añade un nuevo Artículo 2.13 a la Ley 82-2010, según enmendada, para que lea como sigue:

"Artículo 2.13.- Prohibición de uso de combustión de carbón

Como parte de la política pública del Gobierno de Puerto Rico de eliminar nuestra dependencia de fuentes de energía derivadas de combustibles fósiles, se prohíbe la concesión de nuevos contratos y/o permisos para el establecimiento de plantas de generación de energía a base de carbón y sus derivados. Asimismo, ningún permiso o enmienda a contrato existente a la fecha de aprobación de la Ley de Política Pública Energética podrá autorizar o contemplar la quema de carbón como fuente para la generación de energía a partir del 1 de enero de 2028.

No obstante, a los fines de eliminar el uso del carbón antes del 1 de enero de 2028, se podrá sustituir la capacidad de generación existente a base de carbón por capacidad de generación de energía utilizando otras fuentes que cumplan con la Ley de Política Pública Energética de Puerto Rico, mediante la extensión de contratos y/o renovación de permisos existentes basados en la nueva fuente de generación. Dicha sustitución de la capacidad de generación mediante otras fuentes de energía deberá ser autorizado por el Negociado y resultar en la eliminación total del uso de carbón a partir del 1 de enero de 2028."

Artículo 4.12.- Se reenumeran los Artículos 2.12 y 2.13 de la Ley 82-2010, según enmendada, como Artículos 2.14 y 2.15, respectivamente.

Artículo 4.13.- Se enmienda el Artículo 1.4 de la Ley 83-2010, según enmendada, para que lea como sigue:

"Artículo 1.4.- Definiciones.

Para los fines de esta Ley, los siguientes términos o frases tendrán el significado que a continuación se expresa, excepto donde claramente indique lo contrario, y los términos utilizados en singular incluirán el plural y viceversa:

1) …

19) "Energía renovable alterna" — significa la energía derivada de las siguientes fuentes:

a) combustión de gas derivado de un sistema de relleno sanitario;

b) digestión anaeróbica;

c) pilas o celdas de combustible ("fuel cells", en inglés).

20) …

47) …"

Artículo 4.14.- Se reenumera el anterior Capítulo III como Capítulo IV de la Ley 83-2010 según enmendada.

Artículo 4.15.- Se añade un nuevo Capítulo III a la Ley 83-2010, según enmendada para que lea como sigue:

"CAPITULO III.-FIDEICOMISO DE ENERGÍA VERDE

Artículo 3.1. — Fideicomiso de Energía Verde.

Se autoriza al Secretario del Departamento de Desarrollo Económico y Comercio, actuando como fideicomitente, a otorgar la escritura pública mediante la cual se establecerá un fideicomiso que se conocerá como "Fideicomiso de Energía Verde", con personalidad jurídica independiente, de carácter privado y perpetuo, irrevocable, y con fines no pecuniarios ("el Fideicomiso"). El Corpus del Fideicomiso estará comprendido por los recursos económicos que reciba mediante asignaciones o donaciones de entidades públicas o privadas. El Fideicomiso podrá someter propuestas o subvenciones competitivas a las que el Gobierno de Puerto Rico sea elegible, y según los requisitos de las entidades públicas o privadas que proveerán dichas subvenciones.

El Departamento de Desarrollo Económico y Comercio otorgará la escritura pública para crear el "Fideicomiso de Energía Verde" en un término que no excederá de treinta (30) días luego de la aprobación de la Ley de Política Pública Energética de Puerto Rico.

Artículo 3.2.- Reglamento.

El funcionamiento del Fideicomiso se regirá por lo dispuesto en la escritura pública de constitución, así como por el Reglamento que apruebe la Junta de Fiduciarios del Fideicomiso. Dicho reglamento especificará la forma y manera en que se utilizarán los recursos económicos que reciba el Fideicomiso. Además, especificará el mecanismo de nombramiento de los(as) miembros de la Junta de Fiduciarios del Fideicomiso. El Reglamento deberá ser promulgado dentro de los sesenta (60) días de constituida la Junta de Directores del Fideicomiso.

La Junta de Fiduciarios del Fideicomiso fungirá de agente fiduciario del Fideicomiso. Ello no impide que la custodia de los bienes fideicomitidos pueda ser transferida a alguna institución de fideicomiso incorporada bajo las leyes del Gobierno de Puerto Rico, que actúe como custodio de dichos bienes y de sus créditos, bajo términos compatibles con los objetivos y disposiciones de esta Ley.

Artículo 3.3.- Objetivos.

El Fideicomiso tendrá los siguientes objetivos:

(1) Aquellos objetivos definidos en el Artículo 2.2 de esta Ley;

(2) Promover que los consumidores de energía en Puerto Rico puedan convertirse en prosumidores, según definido el término en el Artículo 1.2 de la Ley de Política Pública Energética de Puerto Rico;

(3) Establecer programas o apoyar financieramente proyectos que provean acceso a energía verde a residentes en comunidades de bajos y medianos ingresos;

(4) Apoyar empresas municipales de energía, comunidades solares, microredes en comunidades aisladas, y aquellas comunidades de bajos y medianos ingresos;

(5) Facilitar el financiamiento de proyectos de energía verde en empresas pequeñas y medianas (PYME's), o microempresas.

Artículo 3.4.- Poderes del Fideicomiso.

El Fideicomiso tendrá y podrá ejercer todos los derechos y poderes que sean necesarios o convenientes para llevar a cabo su propósito, incluyendo los siguientes:

(a) Tener sucesión perpetua.

(b) Adoptar un sello oficial y alterar el mismo a su conveniencia.

(c) Demandar y ser demandado bajo su propio nombre y querellarse y ser querellado.

(d) Formular, adoptar, enmendar y derogar estatutos para la administración de sus asuntos y aquellas normas, reglas y reglamentos que

fueren necesarios o pertinentes para ejercitar y desempeñar sus funciones, poderes y deberes.

(e) Adquirir bienes muebles e inmuebles por cualquier forma legítima, incluyendo concesión, regalo, compra, legado o donación y poseer y ejercer todos los derechos de propiedad sobre los mismos, así como disponer de ellos.

(f) Tomar dinero a préstamo y emitir bonos del Fideicomiso con el propósito de proveer fondos para pagar el costo de adquisición de cualquier propiedad para el Fideicomiso o para llevar a cabo cualquiera de sus fines o para el propósito de refinanciar, pagar o redimir cualesquiera de sus bonos u obligaciones en circulación y podrá garantizar el pago de sus bonos y de todas y cualesquiera de sus obligaciones mediante cesión, pignoración, hipoteca o cualquier otro gravamen sobre todos o cualesquiera de sus contratos, rentas, ingresos o propiedades.

(g) Otorgar financiamiento, mediante delegación de fondos, contratos de servicios o donativos de otra índole a personas individuales o jurídicas que provean servicios de gestión, apoyo y asistencia técnica para desarrollo de obras y proyectos consistentes con los propósitos del Fideicomiso, según establecido por reglamento.

(h) Crear aquellos programas de incentivos, subsidios, pareo de fondos, garantías a préstamos, entre otros, para lograr los propósitos de este Fideicomiso.

(i) Negociar y otorgar, con cualquier persona, incluyendo cualquier agencia gubernamental, federal o estatal, todo tipo de contrato y todos aquellos instrumentos y acuerdos necesarios o convenientes para ejercer los poderes y funciones conferidos al Fideicomiso por esta Ley.

(j) Ejercer todos los poderes inherentes a las funciones, prerrogativas y responsabilidades que le confiere esta Ley, ejercer aquellos otros poderes que le confiera cualquier otra ley aplicable, así como realizar cualquier acción o actividad necesaria o conveniente para llevar a cabo sus propósitos.

Artículo 3.5.- Capitalización del Fideicomiso; Fondo del Fideicomiso; Inversión de Fondos.

El Fideicomiso se nutrirá de:

(i) aportaciones e inversiones de personas y entidades privadas o públicas;

(ii) aportaciones y cualquier otro tipo de asistencia o asignaciones del Gobierno de Puerto Rico y del Gobierno de Estados Unidos de América para las que cualifique;

(iii) inversiones, reinversiones y aportaciones de la banca privada, incluyendo la banca hipotecaria, ya sea, mediante préstamos, inversiones o servicios, y en el caso de la banca comercial aquellos préstamos, inversiones o servicios que se otorguen prioritariamente para cumplir con el Community Reinvestment Act, de conformidad con los requisitos y autorizaciones que dicha ley disponga.

Artículo 3.6.- Deudas y obligaciones.

Las deudas, obligaciones, contratos, bonos, pagarés, recibos, gastos, cuentas, fondos, empresas y propiedades del Fideicomiso, sus funcionarios, agentes o empleados, debe entenderse que son de la mencionada entidad y no del Gobierno de Puerto Rico ni de alguna oficina, negociado, departamento, comisión, dependencia, rama, agente, funcionario o empleado de este.

Artículo 3.7.- Exenciones.

El Fideicomiso, exclusivamente, estará exento del pago de todas las contribuciones, patentes, cargos o licencias impuestas por el Gobierno de Puerto Rico o sus municipios.

El Fideicomiso estará también exento del pago de todo tipo de cargos, sellos y comprobantes de rentas internas, aranceles, contribuciones o impuestos de toda naturaleza requeridos por ley para la tramitación de procedimientos judiciales, la producción de certificados en toda oficina o dependencia del Gobierno de Puerto Rico, y el otorgamiento de documentos públicos y su inscripción en cualquier registro público del Gobierno de Puerto Rico.

Artículo 3.8.- Inmunidad; límite de responsabilidad civil

Ni el Fideicomiso, ni la Junta como agente fiduciario, ni sus directores individualmente, incurrirán en responsabilidad económica en su carácter personal en casos de reclamaciones monetarias por daños derivados de sus actuaciones, o del incumplimiento de sus obligaciones fiduciarias, como integrantes de la Junta de Síndicos, excepto por actos u omisiones que no son de buena fe o que consistan de conducta impropia intencional o de violaciones a la ley con conocimiento de ello, o por cualquier transacción donde el integrante reciba un beneficio personal indebido. El Fideicomiso podrá indemnizar a cualquier persona que sea o haya sido fiduciario, oficial, empleado o agente del Fideicomiso bajo los mismos parámetros que una corporación puede indemnizar a sus directores, oficiales, empleados o agentes bajo la Ley 164-2009, según enmendada, conocida como "Ley General de Corporaciones".

Artículo 3.9.- Tratamiento Contributivo de Donativos.

Para propósitos de las Secciones 1033.10 y 1033.15(a)(3) del Código de Rentas Internas de Puerto Rico de 2011, Ley 1-2011, según enmendada, disposiciones análogas de cualquier ley que le sustituya, los donativos hechos al Fideicomiso se tratarán

como donativos hechos a una entidad descrita en la Sección 1101.01(a)(2) del Código que ha sido debidamente cualificada como tal por el Secretario de Hacienda de Puerto Rico.

Artículo 3.10.- Informe anual

Cada año, dentro de los ciento veinte (120) días después del cierre del año fiscal, el Fideicomiso presentará un informe al Gobernador, así como a las Secretarías de ambos Cuerpos Legislativos.

Dicho informe deberá incluir lo siguiente:

(a) un estado financiero auditado por contadores públicos autorizados reconocidos, y un informe completo de las actividades del Fideicomiso para el año fiscal anterior;

(b) una relación completa y detallada de todos sus contratos y transacciones durante el año fiscal a que corresponda el informe;

(c) información completa de la situación y progreso de sus actividades, hasta la fecha de su último informe, y

(d) el plan de trabajo del Fideicomiso para el año fiscal siguiente.

Artículo 4.16.- Se reenumeran los Artículos 3.1, 3.2, 3.3, 3.4, 3.5 y 3.6 de la Ley 83-2010 como Artículos 4.1, 4.2, 4.3, 4.4, 4.5 y 4.6, respectivamente.

Capítulo V - Enmiendas a la Ley 57-2014

Artículo 5.1.- Se elimina el contenido del Artículo 1.2 de la Ley 57-2014, según enmendada, y se sustituye por un nuevo Artículo 1.2, para que lea como sigue:

"Artículo 1.2.- Declaración de Política Pública sobre Energía Eléctrica.

Como elemento esencial para la competitividad y el desarrollo económico de Puerto Rico, es necesaria una transformación y restructuración de nuestro sector eléctrico.

Se declara como política pública del Gobierno de Puerto Rico que habrá un ente independiente regulador de energía, con amplios poderes y deberes para asegurar el cumplimiento con la política pública energética, los mandatos de esta Ley, y para asegurar costos energéticos justos y razonables mediante la fiscalización y revisión de las tarifas de las compañías de servicio eléctrico. El regulador ejercerá un alto escrutinio sobre el mantenimiento de la red eléctrica y deberá establecer mecanismos de incentivos y penalidades basados en el desempeño.

El Gobierno de Puerto Rico, sus agencias, municipios y corporaciones públicas serán un consumidor eficiente y responsable de energía, y promoverá la conservación y la eficiencia energética en todas sus ramas e instrumentalidades, así

como en la ciudadanía en general.  A su vez, se promoverá la transparencia y la participación ciudadana en los procesos relacionados al servicio de energía."

Artículo 5.2.- Se enmienda el Artículo 1.3 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 1.3.- Definiciones.

Los siguientes términos, dondequiera que aparecen usados o aludidos en esta Ley, tendrán los significados que a continuación se expresan, excepto donde el contexto claramente indique otra cosa:

(a) "Acuerdo de Acreedores".- Significará  cualquier acuerdo firmado (incluyendo sus apéndices, anejos y documentos suplementarios) entre la Autoridad y varios de sus acreedores principales, según enmendado o suplementado, mediante el cual ciertos términos y condiciones de la deuda actual se modifican y la Autoridad pudiera comprometerse a (i) implantar ciertas medidas de reforma administrativa, operacional y de gobernanza, (ii) optimizar la transmisión y distribución de electricidad, (iii) modernizar la generación de electricidad y (iv) obtener ahorros operacionales. Ni el Acuerdo, ni enmienda o suplemento futuro alguno podrán ser contrarios a las disposiciones de la "Ley para la Revitalización de la Autoridad de Energía Eléctrica".

(b) ...

(c) ...

(f) "Cargo de interconexión eléctrica".- Significará la cantidad de dinero justa y razonable que una persona deberá pagar por el derecho a interconectar su facilidad a la red eléctrica de Puerto Rico.

(g) ...

(h)  ...

(l) "Compañía de energía" o "Compañía de servicio eléctrico".- Significará cualquier persona o entidad, natural o jurídica, cooperativa de energía, dedicada a ofrecer servicios de generación, servicios de transmisión y distribución, facturación, trasbordo de energía, servicios de red ("grid services"), almacenamiento de energía, reventa de energía eléctrica, así como cualquier otro servicio eléctrico según definido por el Negociado. La Autoridad de Energía Eléctrica o su sucesora, así como cualquier Contratante bajo un Contrato de Alianza o Contrato de Venta otorgado en relación con las Transacciones de la AEE celebradas por virtud de la Ley 120-2018 se considerarán como Compañías de servicio eléctrico para los propósitos de esta Ley.

(m) "Compañía generadora de energía" o "Productor independiente de energía".- Significará toda persona, natural o jurídica, dedicada a la producción o generación de potencia eléctrica en Puerto Rico, para su venta mediante Contratos de Compraventa de Energía o cualquier otro negocio jurídico que

autorice el Negocio. Este término incluirá las cogeneradoras ya establecidas en Puerto Rico, que le suplen energía a la Autoridad a través de un Contrato de Compraventa de Energía, las cooperativas de energía o eléctricas y los productores de energía renovable.

(n) "Conservación".- Significará cualquier reducción en el consumo de energía eléctrica que resulte de cambios en los patrones de consumo de energía de los consumidores.

(o)   ...

(p)   ...

(u) "Eficiencia energética".- Significará la disminución en el uso de energía atribuibles al reemplazo de enseres y equipos, modernización de tecnología o a una mejor operación de materiales y equipos existentes, así como cualquier otro programa desarrollado por el Negociado con el propósito de reducir el consumo de energía eléctrica.

(v) ...

(aa) "Generador distribuido".- Significará cualquier persona natural o jurídica, que tenga una instalación de generación eléctrica en Puerto Rico primordialmente para su propio consumo y que puede proveer electricidad generada en exceso de su consumo a la red eléctrica.

(bb) "Instalaciones de Servicios Indispensables".- Significará las instalaciones de salud, estaciones de policía y fuerzas armadas, estaciones de bomberos, oficinas de manejo de emergencias, refugios para manejo de emergencias, prisiones, puertos, aeropuertos, instalaciones utilizadas para proveer servicios de telecomunicaciones, instalaciones para el suministro y tratamiento de agua y tratamiento de aguas residuales e instalaciones educativas y cualquier otra instalación que se designe por el Negociado de Energía como una "Instalación de Servicios Indispensables" mediante reglamento .

(cc) "Interconexión" o "Interconexión eléctrica".- Significará la conexión de centrales, empresas generadoras, productores independientes de energía, personas naturales o jurídicas, cooperativas de energía o eléctrica, microredes o comunidades solares a una misma red de transmisión y distribución de forma tal que estén eléctricamente conectadas.

(dd) ...

(ee) ...

(hh) "Oficina Estatal de Política Pública Energética" u "OEPPE" o el "Programa de Política Pública Energética".- Significará el Programa de Política Pública Energética del Departamento de Desarrollo Económico y Comercio de Puerto Rico, creado por virtud de esta Ley, encargado de desarrollar y difundir la política pública energética del Gobierno de Puerto Rico. Toda referencia en esta

"Ley a la Oficina Estatal de Política Pública Energética" u OEPPE, se entenderá que se refiere al Programa de Política Pública Energética del Departamento de Desarrollo Económico y Comercio.

(ii) "Oficina Independiente de Protección al Consumidor".- Significará la entidad creada por virtud de esta Ley para asistir y representar a los clientes de los servicios bajo la jurisdicción de la Junta Reglamentadora de Servicio Público y la cual está adscrita a la Junta Reglamentadora de Servicio Público en virtud del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico.

(jj)...

(kk) ...

(ll) "Plan integrado de recursos" o "PIR".- Significará un plan que considere todos los recursos razonables para satisfacer la demanda de los servicios eléctricos durante un período de veinte (20) años, incluyendo aquellos relacionados a la oferta energética, ya sean los recursos existentes, tradicionales y/o nuevos, y aquellos relacionados a la demanda energética, tales como conservación y eficiencia energética, respuesta a la demanda o "demand response", y la generación localizada por parte del cliente. Todo plan integrado de recursos estará sujeto a las reglas establecidas por el NEPR y deberá ser aprobado por el mismo. Todo plan deberá hacerse con amplia participación ciudadana y de todos los grupos de interés.

(mm) "Planta generatriz"...

(nn) "Red eléctrica".- Significará la infraestructura de transmisión y distribución de energía del Gobierno de Puerto Rico que es operada, mantenida y administrada por la Autoridad o una Compañía de servicio eléctrico.

(oo) ...

(pp) ...

(qq) …

(rr) "Tarifa de trasbordo".- Significará la cantidad de dinero justa y razonable que se deberá cobrar a un productor de energía por el uso de las facilidades de transmisión y distribución de la Autoridad para el trasbordo de energía eléctrica ("wheeling") y por el derecho a interconectar la facilidad de generación de energía eléctrica de dicho productor de energía a la red eléctrica de Puerto Rico.

(ss) ...

(tt) "Transmisión de energía".- Significará el traspaso de la energía eléctrica de una planta o instalación eléctrica, microred, cooperativa de energía o eléctrica o de cualquier otro sistema a una subestación de energía a través de

redes, cables, transformadores y toda otra infraestructura necesaria para transportar la misma a niveles de voltajes mayores de 13.2 kV a través de todo Puerto Rico.

(uu) "Trasbordo de energía" o "Wheeling".- Significará el movimiento de electricidad desde un generador independiente hasta el consumidor final de dicha energía a través de la red eléctrica de Puerto Rico y que no constituya generación distribuida a través de cualquier modalidad de medición neta.

(vv) ... "

Artículo 5.3.- Se enmienda el Artículo 1.4 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 1.4.- Principios de Transparencia y Rendición de Cuentas.

(a) Conforme a la política pública establecida en el Artículo 1.2 de esta Ley, toda información, datos, demanda suministrada, estadísticas, informes, planes, reportes y documentos recibidos y/o divulgados por cualquiera de los organismos que por la presente Ley se crean, por la Autoridad, su sucesora, el Contratante de la red de transmisión y distribución, y por toda compañía de energía estarán sujetos a los siguientes principios:

(1) ...

(b)…"

Artículo 5.4.- Se enmienda el Artículo 3.4 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 3.4.- Deberes y Facultades del Departamento de Desarrollo Económico y Comercio.

El Departamento de Desarrollo Económico y Comercio tendrá, a través del Secretario, los siguientes deberes y facultades:

(a) Poner en vigor mediante reglamentos y desarrollar la política pública energética del Gobierno de Puerto Rico, en todas aquellas áreas que no estén en conflicto con la jurisdicción reglamentaria del Negociado de Energía adscrito a la Junta Reglamentadora de Servicio Público. Estos reglamentos deben ser cónsonos con la política pública energética declarada mediante legislación;

(b) Ser el portavoz y asesor del Gobernador de Puerto Rico en todo asunto de política pública energética incluyendo todo aquello relacionado con emergencias, según se establece en el Artículo 3.6 de esta Ley;

(c) Asesorar al Gobernador de Puerto Rico, a las agencias, instrumentalidades públicas y subdivisiones políticas del Gobierno, a instituciones y al público en general sobre aspectos tecnológicos, científicos, socioeconómicos y legales relacionados con la generación, distribución, transmisión, utilización y consumo de energía en Puerto Rico;

(d) Hacer recomendaciones al Negociado de Energía sobre normas para reglamentar a todas las compañías que estén bajo la jurisdicción de esta, así como para reglamentar cualquier transacción, acción u omisión que incida sobre la red eléctrica y la infraestructura eléctrica en Puerto Rico;

(e) ...

(f) Desarrollar, establecer y requerir a entidades públicas y privadas la implementación de, y el cumplimiento con políticas relacionadas con la planificación de los recursos energéticos;

(g) Colaborar con el Negociado de Energía en desarrollar planes de corto, mediano y largo plazo de conservación de energía para Puerto Rico y fiscalizar su desarrollo e implementación;

(h) …

(i) …

(j) Establecer mediante reglamento los requisitos mínimos de eficiencia con los que deberán cumplir los equipos y materiales que adquiera el Gobierno de Puerto Rico y todas sus entidades gubernamentales;

(k) …

(l) …

(m) Recopilar y presentar ante el Negociado de Energía toda información de las agencias, instrumentalidades y corporaciones públicas, de la Rama Judicial y sus respectivas oficinas y de los gobiernos municipales de Puerto Rico sobre la implementación de medidas de eficiencia energética, el cumplimiento con estándares de conservación energética establecidos por ley y los resultados de la implementación de dichas medidas y estándares;

(n) …

(o) Asistir en la identificación de las tecnologías y los lugares aptos para viabilizar la integración de energía renovable a la red eléctrica en atención a los mejores intereses de Puerto Rico, y someter sus conclusiones al Negociado de Energía;

(p) …

(q) Conducir y llevar a cabo las investigaciones que el Negociado de Energía le solicite mediante resolución sobre compañías de servicio eléctrico;

(r) ...

(s) Presentar querellas ante el Negociado de Energía en contra de entidades y personas naturales o jurídicas, cuando entienda que estas han incurrido en acciones u omisiones contrarias a la política pública energética del Gobierno de Puerto Rico;

(t) Comparecer en calidad de amigo del foro o *amicus curiae* en los casos adjudicativos que estén pendientes ante el Negociado de Energía. A su discreción, estas comparecencias del Departamento de Desarrollo Económico y Comercio ante el Negociado de Energía podrán ser *motu proprio* o a petición de parte;

(u) …

(v) …

(w) …

(x) …

(y) Fomentar acuerdos colaborativos con la academia para la creación y el desarrollo de programas universitarios y de campos de alta especialización relacionados con adiestramiento en asuntos regulatorios y energéticos, incluyendo, pero sin limitarse a, acuerdos con universidades, centros de investigación u organizaciones con peritaje en energía dentro y fuera de Puerto Rico, así como promover alianzas colaborativas con estas instituciones y entidades para el desarrollo de proyectos e iniciativas innovadoras en asuntos energéticos;

(z) …

(aa) …

(bb) …

(cc) …

(dd) …

(ee) …

(ff) Solicitar el auxilio del Negociado de Energía y/o del Tribunal General de Justicia ante el incumplimiento de cualquier persona o entidad con cualquiera de sus reglamentos u órdenes;

(gg) …

(hh) …

(ii) Formular estrategias y hacer recomendaciones al Negociado de Energía para mejorar el servicio eléctrico en comunidades de escasos recursos, mediante el estudio, promoción y desarrollo de Comunidades Solares, usando como guía las recomendaciones de organizaciones tales como el Interstate Renewable Energy Council (IREC) y el National Renewable Energy Laboratory (NREL), adaptadas al contexto de Puerto Rico, y procurando el insumo de la compañía de energía a cargo de la operación del sistema eléctrico y de representantes de organizaciones comunitarias, profesionales y académicas relevantes;

(jj) El Departamento de Desarrollo Económico y Comercio, colaborará con el Negociado de Energía y las compañías de energía, para estudiar las mejores prácticas de la industria eléctrica y establece un plan para el desarrollo de microredes en Puerto Rico. Para minimizar costos y ampliar el acceso a mayores recursos físicos y humanos, el Departamento de Desarrollo Económico y Comercio podrá establecer lianzas con agencias locales o federales, universidades o institutos reconocidos de investigación eléctrica, dentro y fuera de Puerto Rico, para llevar a cabo esta tarea. Inicialmente, se abrirá esta opción a comunidades de escasos recursos, universidades, centros de salud e instituciones públicas;

(kk) El Departamento de Desarrollo Económico y Comercio asesorará al Negociado de Energía, en cuanto al formato e información específica que cada microred debe compartir.

(ll) El Departamento de Desarrollo Económico y Comercio, a través del Programa de Política Pública Energética, deberá coordinar antes de cada temporada de huracanes con las agencias e instrumentalidades del Gobierno de Puerto Rico un Plan de Aseguramiento Energético (Energy Assurance Plan) revisado que provea, entre otros, el establecimiento estandarizado del Sistema de Comando de Incidentes (por sus siglas en inglés, ICS) y el establecimiento de Equipo de Gestión de Incidentes (por sus siglas en inglés, IMT)." Esta función podrá ser asumida por un Contratante bajo un contrato de Alianza otorgado al amparo de la Ley Núm. 120-2018, según enmendada.

Artículo 5.5.- Se enmienda el Artículo 4.1 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 4.1.- Ahorro energético en las instrumentalidades de la Rama Ejecutiva y en las dependencias de la Rama Judicial.

(a) ...

(b) Será deber y responsabilidad de todas las agencias, corporaciones públicas e instrumentalidades de la Rama Ejecutiva y de todas las dependencias de la Rama Judicial implementar estrategias dirigidas a reducir el consumo de energía eléctrica de las dependencias e instalaciones bajo su jurisdicción. A tales fines las agencias, corporaciones públicas e instrumentalidades de la Rama Ejecutiva y las dependencias de la Rama Judicial deberán ejecutar e implementar aquellas gestiones e iniciativas que reduzcan anualmente el consumo total de energía eléctrica, conforme las metas de cumplimiento anual por sector establecidas por el Negociado de Energía, con el fin de alcanzar la meta establecida en el Artículo 6.29B de esta Ley.

(c)  Las agencias, instrumentalidades y corporaciones públicas así como las dependencias de la Rama Judicial, en coordinación con el Programa de Política Pública Energética, la academia, asociaciones profesionales con peritaje en el tema energético y las universidades, se encargarán de la planificación e

implantación de iniciativas relacionadas con el uso de energía en los edificios de propiedad pública o arrendados así como establecerán un programa para maximizar la eficiencia de la utilización energética en todos los edificios, que incluirá, pero no se limitará, a una o varias de las siguientes gestiones:

(1) …

(7) …

(d) Las agencias, instrumentalidades y corporaciones públicas de la Rama Ejecutiva así como las dependencias de la Rama Judicial someterán al Programa de Política Pública Energética dentro de los ciento ochenta (180) días de la aprobación de las normas o guías que el Programa de Política Pública Energética establezca para tales fines, un plan de acción que detalle sus metas de reducción de consumo energético anual en términos porcentuales partiendo del consumo base de energía, en función de kilovatio hora consumido. El Programa de Política Pública Energética supervisará las metas para reducir el consumo de energía del Gobierno de Puerto Rico; asesorará a las agencias, corporaciones públicas e instrumentalidades de la Rama Ejecutiva y las dependencias de la Rama Judicial en la confección y revisión de los planes para cumplir con las normas de funcionamiento adoptadas en virtud de esta Ley y fiscalizará el uso de la energía y los costos por las agencias, instrumentalidades, corporaciones públicas y dependencias. Cada trimestre, la Autoridad deberá producir y entregar al Programa de Política Pública Energética la información sobre el consumo de energía eléctrica de cada agencia, instrumentalidad y corporación pública de la Rama Ejecutiva, y de cada dependencia de la Rama Judicial.

(e) Contratos de Rendimiento Energético.- Para cumplir con los propósitos de esta Ley, la Rama Judicial y toda agencia, instrumentalidad o corporación pública de la Rama Ejecutiva deberá promover como estrategia la contratación de un servicio de rendimiento energético (conocidos en inglés como "Energy Savings Performance Contracts" (ESPCs), con un proveedor de servicios de energía calificado, como primera alternativa para producir ahorros de costos energéticos, o de operación y mantenimiento, según lo establecido en la Ley 19-2012, según enmendada, conocida como la "Ley de Contratos de Rendimiento Energético". Si luego de un análisis de costo- efectividad en relación a la composición y características de los edificios que albergan instalaciones de las entidades públicas, la entidad determina que resulta muy oneroso el cumplimiento con esta disposición, podrá solicitar una exención de la misma al NEPR. En el caso en que una agencia determine que resulta oneroso o que no es costo-efectivo implantar la estrategia de un contrato de rendimiento energético, deberá certificar tal hecho al Departamento de Desarrollo Económico y Comercio de Puerto Rico y notificar las medidas que adoptará para asegurar el cumplimiento con lo dispuesto en esta Ley. Cualquier medida de ahorro de energía, implementado bajo un contrato de rendimiento energético deberá

cumplir con los códigos de construcción locales y con los reglamentos pertinentes del Programa de Política Pública Energética del Departamento de Desarrollo Económico y Comercio de Puerto Rico. El Departamento de Desarrollo Económico y Comercio de Puerto Rico, a través del Programa de Política Pública Energética, estará a cargo de aprobar la reglamentación necesaria para la adopción de este tipo de acuerdos, en coordinación con las agencias pertinentes.

(f) …

(g) …

(h) …

(i) Incumplimiento con el plan de ahorro energético: Toda agencia, instrumentalidad o corporación pública de la Rama Ejecutiva que no cumpla con sus metas de reducción de consumo energético anual, según establecidas en el plan de acción requerido por virtud del inciso (c) de este Artículo, tendrá como penalidad una disminución presupuestaria en el año fiscal siguiente. A estos fines, el Programa de Política Pública tendrá, previo a la preparación del presupuesto del año fiscal, que notificar a la Oficina de Gerencia y Presupuesto el incumplimiento con las metas de reducción de consumo energético. La disminución presupuestaria será equivalente a la cuantía por el gasto, medido en kilovatios horas, en exceso a la meta establecida en el plan sometido al Departamento de Desarrollo Económico y Comercio de Puerto Rico para el año en particular, multiplicado por la tarifa de energía cobrada por la Autoridad, su sucesora o el Contratante de la red de transmisión y distribución al mes de julio del año anterior. La disminución presupuestaria ingresará al Fondo de Energía Verde de Puerto Rico creado en virtud de la Ley 83-2010, según enmendada, conocida como "Ley de Incentivos de Energía Verde de Puerto Rico" o disposiciones análogas en leyes de incentivos.

El Departamento de Desarrollo Económico y Comercio de Puerto Rico, a través del Programa de Política Pública Energética, será la entidad fiscalizadora del cumplimiento de las normas de eficiencia energética gubernamental y como tal deberá instar cualquier acción ante el NEPR o ante los tribunales según sea el caso para cumplir con los fines aquí establecidos.

(1)  …

(2) … "

Artículo 5.6.- Se enmienda el Artículo 4.2 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 4.2.- Ahorro energético en la Asamblea Legislativa.

(a)  Será deber y responsabilidad de la Asamblea Legislativa implementar estrategias dirigidas a reducir el consumo de energía eléctrica de las dependencias e instalaciones bajo su jurisdicción. A tales fines la Asamblea

Legislativa deberá realizar aquellas gestiones e iniciativas que reduzcan anualmente el consumo de energía eléctrica, partiendo de la tasa porcentual de ahorro que a continuación se detalla:

(1)    ...

(7) Para el séptimo año de la vigencia de esta Ley será de un doce por ciento (12%) del consumo energético base que será el gasto de energía correspondiente al año fiscal 2012-13, en función de los kilovatios horas consumidos, según consta en los registros de la Autoridad.

(8) Desde el octavo año en adelante de la vigencia de esta Ley, la Asamblea Legislativa deberá continuar realizando gestiones e iniciativas que reduzcan el consumo de energía eléctrica, conforme las metas de cumplimiento anual establecidas por el Negociado de Energía para la Asamblea Legislativa, con el fin de alcanzar la meta establecida en el Artículo 6.29B de esta Ley.

(b)  Incumplimiento con el plan de ahorro energético.- En un periodo que no excederá de ciento ochenta (180) días luego de la fecha de aprobación de esta Ley, la Asamblea Legislativa completará un inventario de todas las conexiones al servicio eléctrico que le sirven, y las dependencias a las que sirve cada conexión eléctrica. La Asamblea Legislativa, mediante orden ejecutiva de los presidentes de ambos Cuerpos, establecerá cuáles dependencias serán responsables por cada conexión. Las dependencias asignadas a cada conexión serán responsables del cumplimiento de las metas de reducción establecidas en este Artículo. El inventario de conexiones será publicado en los portales cibernéticos de la Cámara de Representantes y del Senado de Puerto Rico. Toda dependencia de la Asamblea Legislativa que no cumpla con la tasa porcentual de ahorro establecida en el inciso (a) de este Artículo, tendrá como penalidad una disminución presupuestaria en el año fiscal siguiente. A estos fines, el Programa de Política Pública Energética tendrá, previo a la preparación del presupuesto del año fiscal, que notificar a la Oficina de Gerencia y Presupuesto el incumplimiento con las metas de reducción de consumo energético. La disminución presupuestaria será equivalente a la cuantía por el gasto, medido en kilovatios horas, en exceso de la tasa porcentual de ahorro establecida en el inciso (a) para el año en particular, multiplicado por la tarifa de energía cobrada por el suplidor de energía eléctrica al mes de julio del año anterior. La disminución presupuestaria ingresará al Fondo de Energía Verde de Puerto Rico creado en virtud de la Ley 83-2010, según enmendada, conocida como "Ley de Incentivos de Energía Verde de Puerto Rico" o disposiciones análogas en leyes de incentivos.

(c)  Las dependencias de la Asamblea Legislativa publicarán, cada seis (6) meses, una relación de su consumo de energía y cómo compara con la proyección de ahorro requerida por el inciso (a) de este Artículo. Al principio de cada año

fiscal también publicarán una tabla comparativa del consumo de energía de los tres (3) años anteriores así como una relación de las iniciativas que fueron implantadas para cumplir con el mandato de ahorro energético dispuesto en este Artículo. Esta información será publicada en el portal cibernético de cada dependencia de la Asamblea Legislativa y también será remitida al Negociado.

(d) ...″

Artículo 5.7.- Se enmienda el Artículo 4.3 de la Ley 57-2014, según enmendada, para que lea como sigue:

″Artículo 4.3.- Ahorro energético en los gobiernos municipales.

(a)   La Autoridad facturará y cobrará el servicio eléctrico a los municipios de conformidad con lo establecido en la Sección 22 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada. Será deber de todo gobierno municipal implementar estrategias dirigidas a reducir el consumo de energía eléctrica de las dependencias e instalaciones bajo su jurisdicción, así como promover la mayor eficiencia energética posible, conforme las metas de cumplimiento anual establecidas por el Negociado de Energía para los municipios, con el fin de alcanzar la meta establecida en el Artículo 6.29B de esta Ley.

(b) Todo municipio cuyo gasto de energía eléctrica provisto por la Autoridad se exceda del consumo energético base establecido en el Artículo 2.10 de esta Ley, será responsable del pago a la Autoridad de la cuantía que corresponda por el exceso de consumo. El exceso de consumo será facturado por la Autoridad al municipio correspondiente y dicha factura será pagada siguiendo el trámite ordinario establecido por la ley para el cobro de dinero.

(c)   El Negociado de Energía tendrá jurisdicción primaria exclusiva para atender casos y controversias en los que se plantee el incumplimiento de cualquier municipio con los deberes y obligaciones establecidas en este Artículo o en la Sección 22 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada.

(d) …″

Artículo 5.8.- Se enmienda el Capítulo VI de la Ley 57-2014, según enmendada, para que lea como sigue:

″Capítulo VI.- Creación, Estructura, Operación, Presupuesto y Poderes Generales del Negociado de Energía″

Artículo 5.9.- Se elimina el contenido del Subcapítulo A del Capítulo VI y sus Artículos 6.1 y 6.2 de la Ley 57-2014, según enmendada, y se deja reservado.

″Subcapítulo A- Reservado

Artículo 6.1 - Reservado

Artículo 6.2- Reservado.″

Artículo 5.10.- Se enmienda el Artículo 6.3 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.3.- Poderes y Deberes del Negociado de Energía.

El Negociado de Energía tendrá los poderes y deberes que se establecen a continuación:

(a) Fiscalizar y asegurar la cabal ejecución e implementación de la política pública sobre el servicio eléctrico en Puerto Rico;

(b) Establecer mediante reglamento las normas de política pública en relación con las compañías de servicio eléctrico, así como toda transacción, acción u omisión que incida sobre la red eléctrica y la infraestructura eléctrica en Puerto Rico, e implementar dichas normas de política pública. Estos reglamentos deberán ser cónsonos con la política pública energética declarada por vía de legislación;

(c) Establecer e implementar los reglamentos y las acciones regulatorias necesarias para garantizar la capacidad, confiabilidad, seguridad, eficiencia y razonabilidad en tarifas del sistema eléctrico de Puerto Rico y establecer las guías, estándares, prácticas y procesos a seguir para los procesos para la compra de energía, la modernización de plantas o instalaciones generadoras de energía, disponiéndose que todo contrato de compraventa de energía deberá cumplir con los estándares, términos y condiciones establecidos por el NEPR de conformidad con lo dispuesto en la Ley de Política Pública Energética y esta Ley.

(d) Fiscalizar la calidad, eficiencia y confiabilidad del servicio eléctrico provisto por cualquier compañía de energía certificada en Puerto Rico para garantizar una red robusta que atienda las necesidades de la isla;

(e) Garantizar el acceso universal al servicio eléctrico y velar que no se discrimine en la oferta o prestación del servicio eléctrico por razón de raza, color, sexo, orientación sexual, identidad de género, nacimiento, origen, condición social, impedimento físico o mental, ideas políticas o religiosas, ser militar u ostentar la condición de veterano, o por ser víctima o ser percibido como víctima de violencia doméstica, agresión sexual o acecho;

(f) Formular e implementar estrategias para lograr los objetivos de esta Ley, incluyendo, pero sin limitarse a, lograr la meta de reducir y estabilizar los costos energéticos permanentemente, controlar la volatilidad del precio de la electricidad en Puerto Rico, el establecimiento de programas de respuesta a la demanda, los estándares de la Cartera de Energía Renovable y eficiencia energética, promover el almacenamiento de energía e integración de generación distribuida, entre otros. En el ejercicio de sus poderes y facultades, el Negociado de Energía, requerirá que los precios en todo contrato de compraventa de energía, toda tarifa de trasbordo y todo cargo de interconexión eléctrica sean justos y razonables, cónsonos con el interés público y cumplan con los parámetros que establezca el Negociado vía reglamento;

(g) Regular el mecanismo de trasbordo de energía en Puerto Rico conforme a las leyes aplicables;

(h) Establecer programas de respuesta a la demanda a corto, mediano y largo plazo mediante incentivos efectivos a los consumidores que faciliten el cambio de conducta de estos;

(i) Establecer mecanismos y programas de eficiencia energética para alcanzar progresivamente metas razonables que aseguren el cumplimiento con la política pública energética;

(j) Instaurar mecanismos de incentivos y penalidades basados en desempeño.

(k) …

(l) …

(m) …

(n) Aprobar, revisar y, según fuere aplicable, modificar las tarifas o cargos que cobren las compañías de servicio eléctrico o el Contratante de la red de transmisión y distribución en Puerto Rico por cualquier asunto directa o indirectamente relacionado con la prestación del servicio eléctrico;

(o) …

(p) Asegurar que los poderes y facultades que ejerza el NEPR sobre la Autoridad, su sucesora, el Contratante de la red de transmisión y distribución, las compañías de energía y cualquier persona natural o jurídica que se haya beneficiado o pueda beneficiarse del sistema eléctrico de Puerto Rico, incluyendo lo relacionado con la aprobación o revisión de las tarifas garanticen el pago de la deuda de la Autoridad con los bonistas;

(q) Promover que las emisiones de deuda de la Autoridad o su sucesora obedezcan al interés público. Previo a toda emisión de deuda pública de la Autoridad y el uso que se proponga para ese financiamiento, deberá tener la aprobación por escrito del Negociado de Energía. La Autoridad o la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico (AAFAF) le notificarán al NEPR sobre cualquier emisión propuesta al menos diez (10) días antes de la fecha de publicación de la oferta preliminar. El NEPR evaluará y aprobará que el uso de los fondos de la emisión propuesta sea cónsono con el Plan Integrado de Recursos. Dicha aprobación será por escrito no más tarde de diez (10) días desde que la Autoridad o la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico le notifique al NEPR sobre las emisiones propuestas. Dentro de ese mismo periodo de diez (10) días, el NEPR remitirá a ambos Cuerpos de la Asamblea Legislativa un informe de su evaluación. Transcurrido ese periodo, si el NEPR no ha notificado su aprobación o rechazo de la emisión propuesta, la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico podrá

continuar el proceso de la emisión de bonos. Nada de esto aplicará a las emisiones de bono que promulgada conforme a lo establecido en el capítulo IV de la "Ley para la Revitalización de la Autoridad de Energía Eléctrica" o que sean sujetas a autorización bajo el Título III o Título VI de la Ley PROMESA, Public Law No. 114-87.

(r) Designar y contratar personal especializado, para llevar a cabo sus poderes y deberes;

(s) …

(t) Determinar y requerir el tipo de información estadística y numérica que la compañía de energía responsable de operar el Sistema Eléctrico tendrá que publicar diariamente en su portal de Internet sobre el Centro de Control Energético, para informar constantemente a la ciudadanía sobre asuntos energéticos incluyendo, pero sin limitarse a la demanda pico diaria en Puerto Rico, el despacho diario de energía por compañía de energía o planta, instalación eléctrica, el porciento de generación distribuida, el costo de generación por kWh y cualquier otra información o dato que considere necesario relacionado con el manejo de la red eléctrica y la operación de la transmisión y distribución de energía en Puerto Rico;

(u) Fiscalizar el cumplimiento con cualquier estándar o meta compulsoria conforme a la Cartera de Energía Renovable impuesta por medio de legislación o reglamento;

(v) …

(w) Revisar y aprobar propuestas al reglamento de interconexión y a los requisitos técnicos mínimos ("Minimum Technical Requirements" o "MTRs", por sus siglas en inglés), requisitos técnicos adicionales ("Additional Technical Requirements" o "ATRs", por sus siglas en inglés) y cualquier otro tipo de requisito que se establezca para la interconexión de generadores distribuidos y microredes a la red eléctrica, y fiscalizar el cumplimiento con los mismos;

(x) Establecer estándares o parámetros para instalaciones o plantas eléctricas de compañías generadoras, microredes o cooperativas de energía, que garanticen la eficiencia y confiabilidad del servicio eléctrico o cualquier otro parámetro de eficiencia que sea cónsono con las mejores prácticas de la industria eléctrica que el Negociado de Energía considere necesario y que sea reconocido por entidades gubernamentales o no gubernamentales especializadas en el servicio eléctrico, y fiscalizar el cumplimiento con dichos estándares o parámetros;

(y)…

(z)…

(aa) …

(bb) …

(cc)…

(dd) Revisar y aprobar el margen de reserva óptimo de energía necesario para Puerto Rico  y asegurar el cumplimiento con dicho margen;

(ee) …

(ff) …

(gg) …

(hh) …

(ii) …

(jj) Identificar y establecer alianzas con organismos o asociaciones internacionales especializadas en asuntos de energía y regulación dispuestas a colaborar y asistir al Negociado de Energía en cumplir a cabalidad con sus poderes y funciones; incluyendo y sin limitarse a la utilización del personal de Comisiones de Servicio Público o entidades similares de otras jurisdicciones en los Estados Unidos o en el extranjero a través del National Association of Regulatory Utility Commissioners (NARUC, por sus siglas en inglés) o cualquier otra entidad similar;

(kk) Comparecer ante cualquier entidad privada, organización pública, tribunal, junta, comité, organización administrativa, departamento, oficina o agencia del Gobierno de Puerto Rico o del Gobierno de los Estados Unidos de América en cualquier vista, procedimiento, o materia que afecte o que pueda afectar los objetivos del Negociado de Energía, sus poderes o deberes, los reglamentos que esta promulgue, o los intereses de los clientes de servicio de energía eléctrica;

(ll) …

(mm) Contratar o subcontratar para cualquier fin legítimo que le permita cumplir con la política pública energética, y para lograr realizar tareas especializadas, sin abdicar su función y responsabilidad gubernamental, incluyendo contratar los servicios profesionales de consultores, economistas, abogados, entre otros servicios profesionales, para asistirle en su función reguladora y fiscalizadora;

(nn) Demandar y ser demandada en reclamaciones o causas de acción a nombre propio en el Tribunal de Primera Instancia del Gobierno de Puerto Rico contra cualquier persona natural o jurídica que incumpla o interfiera con los requisitos, fines y objetivos de esta Ley, o en cualquier otro foro administrativo del Gobierno de Puerto Rico. A tales fines, se le reconoce legitimación activa al Negociado para interponer los recursos necesarios, incluyendo y sin limitarse a solicitar un desacato contra cualquier persona natural o jurídica que incumpla los

mandatos contenidos bajo la jurisdicción del Negociado de Energía, ante el foro judicial para asegurar el cabal cumplimiento con la política pública establecida en esta Ley;

(oo) Adoptar reglas, pronunciamientos y reglamentos que sean necesarios para cumplir con sus deberes, emitir órdenes y establecer multas para dar cumplimiento a las facultades que por ley se le conceden, y para la implementación de esta Ley. Los reglamentos se adoptarán de conformidad con la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

(pp) Interponer los recursos, emitir órdenes y confeccionar y otorgar cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de esta Ley y hacer que se cumplan sus reglas, reglamentos, órdenes y determinaciones. Por ejemplo, entre las acciones que el NEPR podrá tomar y los remedios que podrán otorgar estarán los siguientes:

(1) …

(4) …

(5) Contratar o subcontratar con cargo a la persona natural o jurídica responsable para que se lleve a cabo cualquier acto de las disposiciones de esta Ley, de los reglamentos del NEPR, de la Autoridad o su sucesora, o el Contratante de la red de transmisión y distribución, de cualquier orden a una compañía de energía, o de cualquier otra disposición de ley cuya interpretación y cumplimiento esté bajo la jurisdicción del Negociado de Energía y que no se haya realizado conforme dispone el estatuto, reglamento u orden;

(6) …

(7) Requerir la producción e inspeccionar récords, inventarios, documentos e instalaciones físicas de personas, entidades jurídicas y cooperativas de energía sujetas a la jurisdicción del NEPR o del Programa de Política Pública Energética del Departamento de Desarrollo Económico y Comercio;

(qq) …

(rr) Revisar decisiones finales de las compañías de energía con respecto a querellas y solicitudes de investigación de sus clientes. Todas las órdenes que expida y emita el NEPR se expedirán a nombre del Negociado de Energía de Puerto Rico y de la Junta Reglamentadora de Servicio Público de Puerto Rico. Todas las acciones, reglamentaciones y determinaciones del NEPR se guiarán por las leyes aplicables, por el interés público y por el interés de proteger los derechos de los clientes o consumidores. Las disposiciones de esta Ley serán interpretadas

liberalmente para poder alcanzar sus propósitos y dondequiera que algún poder específico o autoridad sea dada al NEPR, la enumeración no se interpretará como que excluye o impide cualquier otro poder o autoridad de otra manera conferida a esta. El NEPR aquí creado tendrá, además de los poderes enumerados en esta Ley, todos los poderes adicionales implícitos e incidentales que sean apropiados y necesarios para efectuar y llevar a cabo, desempeñar y ejercitar todos los poderes antes mencionados y para alcanzar los propósitos de esta Ley.

(ss) El NEPR, en colaboración con el Programa de Política Pública Energética del Departamento de Desarrollo Económico y Comercio y las compañías de energía estudiará y tomará determinaciones sobre la interconexión de energía renovable distribuida y energía renovable a gran escala al sistema de transmisión y distribución, para asegurar el mayor balance y equidad en dicho acceso.

(tt) El NEPR, en colaboración con el Programa de Política Pública Energética del Departamento de Desarrollo Económico y Comercio y la Oficina Independiente de Protección al Consumidor, y los comentarios de personas y organizaciones interesadas, establecerá el marco regulatorio que guíe el desarrollo de reglamentos para comunidades solares y microredes.

(uu) El NEPR, con el insumo de las compañías de energía, determinará la capacidad máxima y demás requisitos de una comunidad solar, usando como guía las recomendaciones de organizaciones tales como IREC y NREL, adaptadas al contexto de Puerto Rico.

(vv) El NEPR realizará un estudio para determinar, establecer y reglamentar metas específicas de almacenamiento de energía que atiendan las necesidades de Puerto Rico.

(ww) Fiscalizar con el cumplimiento de los programas de manejo de vegetación a ser implementados por la Autoridad, su sucesora o el Contratante de la red de transmisión y distribución de acuerdo con las mejores prácticas de la industria para proteger la red.

(xx) Fiscalizar que las compañías de servicio eléctrico adopten medidas de seguridad cibernética para prevenir y manejar efectivamente los ataques cibernéticos que puedan afectar las redes de tecnología de la información y operativa conforme a las prácticas reconocidas de la industria."

Artículo 5.11.- Se enmienda el Artículo 6.4 de la Ley 57-2014, según enmendada para que lea como sigue:

"Artículo 6.4.- Jurisdicción del Negociado de Energía.

(a) El Negociado de Energía tendrá jurisdicción primaria exclusiva sobre los siguientes asuntos:

(1) La aprobación de las tarifas y cargos que cobren las compañías de energía o un productor independiente de energía en relación con cualquier servicio eléctrico, al amparo de lo dispuesto en el Artículo 6.25 de esta Ley, así como los casos y controversias relacionadas con las tarifas que cobren las compañías de energía a sus clientes residenciales, comerciales o industriales, y sobre los casos y controversias relacionadas con las tarifas y cargos de cualquier productor independiente de energía .

(2) Los casos y controversias relacionadas con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica.

(3) Los casos y controversias en las que se plantee el incumplimiento con la política pública energética del Gobierno de Puerto Rico según expresada en la "Ley de Política Pública Energética de Puerto Rico" y el derecho vigente.

(4) Los casos y controversias en las que se plantee el incumplimiento con cualquiera de los mandatos establecidos en la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como la "Ley de la Autoridad de Energía Eléctrica" y con cualquiera de los mandatos establecidos en la "Ley de Política Pública Energética de Puerto Rico", en relación con el servicio eléctrico o en relación con asuntos energéticos.

(5) Los casos y controversias sobre trasbordo de energía eléctrica o interconexión con la red de transmisión y distribución, y toda persona que esté, o interese estar, conectada a la red de energía eléctrica en Puerto Rico o toda persona con un interés directo o indirecto en esos servicios de energía eléctrica.

(6) Los casos y controversias que surjan en relación con contratos entre la Autoridad, su sucesora, o el Contratante de la red de transmisión y distribución, los productores independientes de energía y las compañías de energía, así como sobre los casos y controversias entre productores independientes de energía. Esto incluirá, pero no se limitará, a los contratos de compraventa de energía mediante los cuales un productor independiente de energía se disponga a proveer energía a una compañía de energía para ser distribuida, y a los casos en que se cuestione la razonabilidad de las tarifas de interconexión, o la razonabilidad de los términos y condiciones de un contrato de compra de energía.

(b) El Negociado de Energía tendrá jurisdicción general sobre los siguientes asuntos:

(1) …

(5) …

(c) Querellas por incumplimientos con la política pública energética.

(1) A petición de alguna parte afectada con legitimación activa, y según se establece en esta Ley, el NEPR podrá atender querellas en las que se alegue y reclame por el incumplimiento de una compañía de servicio eléctrico con la política pública energética del Gobierno de Puerto Rico, según expresada en la "Ley de Política Pública Energética de Puerto Rico" y el derecho vigente. De igual forma, el NEPR podrá atender querellas sobre las transacciones o actos jurídicos relacionados con la compra de energía o con la compra de combustible; sobre contratos entre la Autoridad o su sucesora, el Contratante de la red de transmisión y distribución, los productores independientes de energía y las compañías de energía; sobre los casos y controversias entre estos; sobre las tarifas de trasbordo y cargos de interconexión; y en casos y controversias sobre trasbordo de energía eléctrica o interconexión entre la Autoridad, su sucesora o sus subsidiarias, o el Contratante de la red de transmisión y distribución, y toda persona que esté, o interese estar, conectada a la red de energía eléctrica dentro del Gobierno de Puerto Rico o toda persona con un interés directo o indirecto en esos servicios de energía eléctrica.

(2) …

(3) …

(d) …"

Artículo 5.12.- Se enmienda el Artículo 6.6 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.6.- Comisionados.

(a) ...

(b) …

(c) Ningún comisionado podrá entender en un asunto o controversia en el cual sea parte alguna persona natural o jurídica con quien haya tenido una relación contractual, profesional, laboral o fiduciaria durante dos (2) años anteriores a su designación. Tampoco podrán, una vez hayan cesado en sus funciones, representar a persona o entidad alguna ante el Negociado de Energía durante los dos (2) años subsiguientes a la separación del cargo. Toda acción de los comisionados en el desempeño de sus funciones estará sujeta a las restricciones dispuestas en la Ley 1-2012, conocida como "Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico", según enmendada.

(d) Los Comisionados se abstendrán de participar en actividades políticas o relacionadas con partidos políticos, sin menoscabo de su derecho al sufragio. Sin que la siguiente enumeración excluya otras actividades, que por su carácter político le están vedadas, los Comisionados no podrán:

i. Participar en campañas políticas de clase alguna o en reuniones, tertulias, asambleas, convenciones, primarias u otros actos de carácter político-partidista.

ii. Ocupar cargos en organismos o partidos políticos.

iii. Aportar dinero, en forma directa o indirecta, a candidatos, organismos o partidos políticos.

iv. Endosar candidatos para posiciones electivas o de nombramiento gubernamental o líderes políticos.

v. Hacer expresiones, comentarios o manifestaciones públicas sobre asuntos o actos de naturaleza político-partidista.

(e)...

(f) …

(g) Cada comisionado podrá contratar y nombrar un (1) asistente administrativo y un (1) asesor de la confianza de cada comisionado.”

Artículo 5.13.- Se enmienda el Artículo 6.7 de la Ley 57-2014, según enmendada, para que lea como sigue:

“Artículo 6.7.- Poderes y Deberes de los Comisionados.

Los comisionados tendrán los siguientes poderes y funciones:

(a) Actuar como el organismo rector del NEPR;

(b) …

(j) Reclutar y nombrar el personal regular y de confianza necesario para la operación y funcionamiento del NEPR, el cual se regirá por las normas y los reglamentos que promulgue el NEPR, utilizando como guía los criterios dispuestos en el Artículo 6 de la Ley 8-2017, según enmendada, conocida como la “Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico”.  No obstante, el principio de movilidad dispuesto en el Artículo 6.4(4) de la Ley 8-2017, según enmendada, no se aplicará al personal del NEPR. El reclutamiento y nombramiento de personal no estará sujeto a la aprobación de ninguna agencia de la Rama Ejecutiva.  El sistema de personal deberá organizarse de forma tal que, en las cualificaciones y descripción de funciones para los puestos, se fomente el reclutamiento de personal especializado y capacitado mediante un proceso de competencia que permita cumplir los propósitos de esta Ley. Todo proceso de reclutamiento será tramitado con el apoyo del Director Ejecutivo del Negociado;

(k) Reclutar empleados de confianza, cuya cantidad no deberá ser mayor del veinticinco (25) por ciento del número total de los puestos del NEPR. Esta limitación no le será de aplicación a los comisionados, quienes, según esta Ley,

están autorizados a contratar a un (1) asistente administrativo y a una (1) persona de confianza por comisionado como asesor pericial. Los empleados de confianza serán seleccionados tomando en consideración la capacidad, preparación y experiencia profesional requeridas para asegurar un eficaz desempeño de las necesidades del puesto. Ningún empleado del NEPR, ya sea de carrera o de confianza, podrá tener parentesco con el Presidente, miembros asociados o el Director Ejecutivo de la JRSP ni con los Comisionados del NEPR y el Director Ejecutivo del NEPR, dentro de los grados dispuestos en la Ley 1-2012, conocida como "Ley de Ética Gubernamental de 2011", según enmendada. Todo proceso de reclutamiento será tramitado con el apoyo del Director Ejecutivo del Negociado."

Artículo 5.14.- Se enmienda el Artículo 6.8 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.8.- Director Ejecutivo del Negociado de Energía.

(a) Los Comisionados, por mayoría, escogerán un Director Ejecutivo del Negociado a base de su probada experiencia académica y profesional en asuntos energéticos o de administración pública.

(b) El Director Ejecutivo y los miembros de su unidad familiar, conforme a la definición en la Ley 1-2012, según enmendada, conocida como "Ley de Ética Gubernamental de 2011", no podrán tener interés directo o indirecto en, ni relación contractual alguna con, la Autoridad o su sucesora, sus subsidiarias, el Contratante de la red de transmisión y distribución y/o cualquier otra compañía de energía certificada sujeta a la jurisdicción del Negociado de Energía, ni en entidades dentro o fuera de Puerto Rico afiliadas con o interesadas en la Autoridad o su sucesora, sus subsidiarias o Contratante de la red de transmisión y distribución o en dichas compañías. El Director Ejecutivo no podrá, una vez haya cesado en sus funciones, representar a persona o entidad alguna ante la misma en relación con cualquier asunto en el cual haya participado mientras estuvo al servicio del Negociado ni sobre cualquier otro asunto durante los dos (2) años subsiguientes a la separación del cargo. Toda acción del Director Ejecutivo en el desempeño de sus funciones estará sujeta a las restricciones dispuestas en la Ley 1-2012, según enmendada, conocida como "Ley de Ética Gubernamental de 2011".

(c) El Director Ejecutivo tendrá los siguientes deberes:

(1) Coordinar con el Presidente del Negociado de Energía todo lo relacionado al apoyo administrativo y clerical en áreas tales como finanzas, compras, contabilidad, y en cualquier otra gestión administrativa que no conlleve el diseño o implantación de política pública;

(2) …."

Artículo 5.15.- Se enmienda el Artículo 6.11 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.11.- Delegación de facultades.

(a)  ...

(b)  Oficiales examinadores.-

El NEPR tendrá la autoridad para referir o delegar cualquier asunto adjudicativo a oficiales examinadores. El NEPR será quien asignará y distribuirá entre los oficiales examinadores del NEPR las tareas y asuntos delegados por el NEPR, tras lo cual, éstos tendrán el deber de emitir recomendaciones sobre la adjudicación del caso o del incidente procesal objeto de la asignación, referido o delegación del NEPR. Al emitir su decisión, el NEPR tendrá plena discreción para acoger o rechazar las recomendaciones de los oficiales examinadores. Todo oficial examinador que sea designado para presidir una vista o investigación tendrá los poderes que expresamente le delegue el NEPR en la orden de designación. Los oficiales examinadores serán designados y desempeñarán sus funciones según lo dispuesto por la Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

(c)  Jueces administrativos.-

Según se dispone en este inciso, el NEPR tendrá la facultad de delegar a jueces administrativos con plena facultad decisional la adjudicación de asuntos, casos y controversias a nombre del NEPR que puedan ser delegadas conforme a las disposiciones de este inciso. Los jueces administrativos podrán ser empleados de confianza o contratistas del NEPR. El NEPR tendrá la facultad de asignar y distribuir entre los jueces administrativos los asuntos, casos o controversias que sean delegados conforme a lo dispuesto en este inciso. El Negociado de Energía podrá, en el ejercicio de su discreción, delegar a jueces administrativos los casos y controversias relacionadas con la revisión de facturas a los clientes de servicios de energía eléctrica; los casos y controversias sobre el alegado incumplimiento de una compañía de servicio eléctrico con los reglamentos del Negociado de Energía sobre la calidad de los servicios a los clientes; los casos y controversias sobre el alegado incumplimiento de la Autoridad, su sucesora, sus subsidiarias o el Contratante de la red de transmisión y distribución, y una compañía de energía o de un cliente de servicio eléctrico con sus obligaciones en relación con la interconexión de sistemas de generación distribuida o cualquier otro asunto que el NEPR disponga. El Negociado de Energía podrá delegar a sus jueces administrativos cualquier caso o controversia en que los remedios solicitados tengan un costo o valor total de veinticinco mil dólares ($25,000.00) o menos. Los jueces administrativos serán designados y desempeñarán sus funciones según lo dispuesto por la Ley 38-2017 según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

Artículo 5.16.- Se enmienda el Artículo 6.16 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.16.- Presupuestos y cargos por reglamentación.

a) El Negociado de Energía impondrá y cobrará cargos de acuerdo a lo dispuesto en este Artículo, a los fines de producir ingreso suficiente para cubrir gastos operacionales y administrativos del Negociado.

(b) El cargo anual será fijado proporcionalmente por el Negociado de Energía a base de los ingresos brutos generados por las personas bajo su jurisdicción provenientes de la prestación de servicios eléctricos o transporte de energía eléctrica, según determinados por el Negociado de Energía. Estos cargos serán pagados al Negociado de Energía sobre bases trimestrales, de conformidad con el reglamento que esta promulgue. El Negociado de Energía revisará anualmente el cargo que, a tenor con este inciso, se impondrá a las personas bajo su jurisdicción.

(c) La Autoridad de Energía Eléctrica separará anualmente la cantidad de cinco millones ochocientos mil dólares ($5,800,000) de sus ingresos, fondos que serán transferidos a una cuenta especial establecida en el Departamento de Hacienda, para cubrir los gastos operacionales del Negociado de Energía. La Autoridad remitirá anualmente de estos recursos, la cantidad de dos millones novecientos mil dólares ($2,900,000) al Departamento de Hacienda en o antes del 15 de julio. El balance de dos millones novecientos mil dólares ($2,900,000) será remitido al Departamento de Hacienda en o antes del 15 de diciembre de cada año. No obstante, en el Año Fiscal 2014-15, la Autoridad hará el pago del primer plazo del cargo anual, por la cantidad de dos millones novecientos mil dólares ($2,900,000), dentro del término de diez (10) días de aprobarse esta Ley. Además, el Negociado e cobrará a la Autoridad o a la Corporación por los servicios relacionados con las gestiones que realice a petición de la Corporación para la evaluación y la tramitación de una Orden de Reestructuración o Acuerdo de Acreedores, así como de las verificaciones que se realicen con respecto al cumplimiento con el cálculo del Cargo de Transición y el Mecanismo de Ajuste aprobado bajo la Orden de Reestructuración o Acuerdo de Acreedores. A tales efectos, no más tarde de sesenta (60) días luego de recibir la factura del Negociado de Energía, la Autoridad o su sucesora remitirá al Negociado de Energía una cantidad que no excederá de quinientos mil dólares ($500,000) con relación a la revisión por el Negociado de Energía de la petición de la Corporación. Subsiguientemente cada año y no más tarde de sesenta (60) días luego de recibir la factura del Negociado de Energía, la Autoridad remitirá al Negociado de Energía una cantidad que no excederá de cien mil dólares ($100,000) con relación a las verificaciones por el Negociado de Energía del cumplimiento con el cálculo de los Cargos de Transición y el Mecanismo de Ajuste aprobado bajo la Orden de Reestructuración o Acuerdo de Acreedores. La

Autoridad obtendrá los fondos para los pagos al Negociado de Energía de los ingresos provenientes de la partida de subsidios dentro de su tarifa.

(d) Cualquier otra persona o compañía de servicio eléctrico que genere ingresos por la prestación de servicios eléctricos, según definidos en esta Ley o según definidos por el Negociado de Energía pagará cargos al Negociado que no excederán el punto veinticinco por ciento (.25%) de su ingreso bruto anual proveniente de la prestación de dichos servicios en Puerto Rico. Ninguna compañía de servicio eléctrico que haya otorgado con la Autoridad o su sucesora un contrato de compraventa de energía, un contrato de interconexión eléctrica, un contrato de trasbordo de energía eléctrica, o cualquier contrato para la prestación de servicios eléctricos podrá reclamar el reembolso o incluir los gastos correspondientes al cargo anual pagadero al Negociado de Energía en el cómputo de las tarifas, del cargo por capacidad, del cargo por energía o cualquier otro cargo o monto de dinero que dicha compañía de servicio eléctrico cobre a la Autoridad, o su sucesora, al amparo de dicho contrato de compraventa de energía, contrato de interconexión eléctrica o contrato de trasbordo de energía eléctrica, o contrato para la prestación de servicios eléctricos. Esta disposición será de aplicación a toda compañía de energía bajo la jurisdicción del Negociado de Energía, en tanto y en cuanto no se menoscaben obligaciones contractuales con las cogeneradoras existentes que surgen al amparo de contratos vigentes a la fecha de la aprobación de esta Ley.

(e) A partir del Año Fiscal 2019-2020, el presupuesto anual del Negociado de Energía será de veinte millones de dólares ($20,000,000), el cual se computará a base de un cargo regulatorio, a ser determinado por el Negociado, proveniente del ingreso bruto anual de la Autoridad de Energía Eléctrica creada en virtud de la Ley Núm. 83 de 2 de mayo de 1941, y de las Compañías de servicio eléctrico en Puerto Rico. La Autoridad de Energía Eléctrica o cualquier compañía de servicio eléctrico que opere la red de transmisión y distribución vendrá obligada a cobrar de las otras compañías de energía, pagar y transferir el cargo regulatorio al Negociado de Energía de la siguiente forma: un primer pago de diez millones de dólares ($10,000,000) en o antes al 1 de julio de cada año y un segundo pago de diez millones de dólares ($10,000,000) en o antes del 1 de enero de cada año. Cualquier atraso del pago del cargo regulatorio conllevará una penalidad equivalente a la tasa de interés aplicable a obligaciones privadas según establecidas por la Oficina del Comisionado de Instituciones Financieras. Las disposiciones de este Artículo serán de aplicación a toda Compañía de servicio eléctrico bajo la jurisdicción del Negociado de Energía, en tanto y en cuanto no se menoscaben obligaciones contractuales con las cogeneradoras existentes que surgen al amparo de contratos vigentes a la fecha de la aprobación de esta Ley. Ningún contrato otorgado en virtud de la Ley 120-2018 podrá eximir a las compañías contratantes del pago por concepto de regulación, según descrito en este Artículo.

(f) El Secretario de Hacienda ingresará en una cuenta especial denominada "Fondo Restricto Especial del Negociado de Energía", los fondos recaudados en virtud de esta Ley, los cuales podrán ser utilizados única y exclusivamente para sufragar los gastos de operación y funcionamiento del Negociado de Energía y siempre se entenderán *de jure* obligados para esos fines. A partir del Año Fiscal 2019-2020, los fondos recaudados en virtud de esta Ley serán depositados en una cuenta del Negociado de Energía.

(g) Toda persona bajo la jurisdicción del Negociado de Energía someterá la información requerida por esta en la forma y en los formularios que determine esta, de manera que el Negociado de Energía pueda identificar las cantidades de los cargos establecidos en este Artículo.

(h) Las personas bajo la jurisdicción del Negociado de Energía deberán cumplir y satisfacer el pago de los cargos impuestos dentro de un período no mayor de treinta (30) días a partir de la fecha en que se haya hecho la notificación al respecto. Cualquier retraso en el pago de dichos cargos estará sujeto a los intereses y penalidades que determine el Negociado de Energía mediante reglamento. El pago de los cargos deberá hacerse de la forma que el Negociado de Energía especifique en cualquier notificación de cargos.

(i) El presupuesto del Negociado de Energía será independiente del Presupuesto General del Gobierno de Puerto Rico, del presupuesto de cualquier otra entidad, agencia, instrumentalidad o corporación pública del Gobierno de Puerto Rico y no estará sujeto a aprobación por el Ejecutivo o la Asamblea Legislativa. No obstante, el Negociado vendrá obligado a responder y proveer cualquier información solicitada por cualquier agencia del Ejecutivo con autoridad relevante o a cualquier solicitud realizada por la Asamblea Legislativa, y procurará que su presupuesto y gastos sea publicado en su página de Internet y que el mismo sea de libre acceso al público en general."

Artículo 5.17.- Se enmienda el Artículo 6.22 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.22.- Información a presentar ante el Negociado de Energía.

(a) Toda compañía de servicio eléctrico y todo Contratante de la red de transmisión y distribución deberá rendir ante el Negociado de Energía, sujeto a los términos dispuestos por la misma, la siguiente información:

(1) planes que establezcan los parámetros y metas de la compañía para, en un período determinado de tiempo, cumplir con las necesidades de electricidad y política pública del Gobierno de Puerto Rico;

(2) presupuestos operacionales futuros durante el periodo de tiempo que determine el NEPR mediante reglamento;

(3) …

(4) …

(5) …

(6) informes que describan las solicitudes por trasbordo de energía o "wheeling" presentadas a la Autoridad o su sucesora y/o al Contratante de la red de transmisión y distribución y los resultados de las solicitudes, incluyendo el término y porciento de aprobación;

(7) informes anuales que describan la condición y mantenimiento de la red de distribución y transmisión; y

(8) cualquier otra información, dato, documento o informe específico que el NEPR estime necesaria para ejercer sus funciones, según sea aplicable a la compañía de energía."

Artículo 5.18.- Se enmienda el Artículo 6.23 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.23.- Plan Integrado de Recursos.

(a) La compañía de energía responsable de la operación del Sistema Eléctrico, deberá someter al NEPR un plan integrado de recursos (PIR) consistente con el Artículo 1.9 de la Ley de Política Pública Energética de Puerto Rico. En la elaboración del PIR, dicha compañía deberá contar con el insumo de las compañías que operen plantas generadoras.

(b) …

(c) …

(d) Luego de aprobar el Plan Integrado de Recursos, el NEPR deberá supervisar y fiscalizar el cumplimiento con el mismo. El Plan Integrado de Recursos será revisado y actualizado cada tres (3) años en cuyo caso la compañía de energía responsable de la operación del Sistema Eléctrico presentará una propuesta de modificación y actualización del Plan Integrado de Recursos al NEPR. El Negociado revisará y emitirá una determinación final conforme al proceso dispuesto en el Artículo 1.9 de la Ley de Política Pública Energética y los reglamentos que el Negociado adopte para ello. Luego de emitir una determinación final al respecto, el Negociado deberá publicar en su portal de Internet un informe detallando el cumplimiento con el Plan Integrado de Recursos y las modificaciones que se le hayan hecho al mismo luego del proceso de revisión. Disponiéndose, que si hubiese un cambio sustancial en la demanda de energía o en el conjunto de recursos, dicho proceso de revisión deberá ejecutarse antes de los tres (3) años aquí dispuestos para responder y/o mitigar dichos cambios en la demanda de energía o en el conjunto de recursos necesarios para suplir la demanda de energía. La revisión del Plan Integrado de Recursos debe reflejar los cambios en las condiciones del mercado energético, cambios en la tecnología, reglamentaciones ambientales, precios de combustibles, costos de

capital, incorporación de generación a base de fuentes de energía renovable y de componentes en la red eléctrica para cumplir con la Cartera de Energía Renovable, generación distribuida, eficiencia energética y otros factores."

Artículo 5.19.- Se enmienda el Artículo 6.24 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.24.- Poder de Investigación.

(a) El Negociado de Energía visitará de tiempo en tiempo las instalaciones de las compañías de energía certificadas  e investigará los documentos necesarios para verificar su cumplimiento con las órdenes, reglas y reglamentos que establezca el Negociado de Energía. El Negociado de Energía podrá entrar en dichas instalaciones durante horas razonables para llevar a cabo pruebas y auditorías, y podrá situar y utilizar en dichas instalaciones cualquier instrumento necesario para llevar a cabo sus funciones y realizar las mediciones que sean necesarias para asegurar el cumplimiento con las normas establecidas.

(b) El Negociado podrá en cualquier momento o lugar (i) examinar bajo juramento, mediante entrevista o citación formal a todos los funcionarios y empleados de las compañías de energía certificadas  y de la Corporación para la Revitalización de la Autoridad de Energía Eléctrica , (ii) requerir la producción de copias de aquellos récords, documentos, información o datos de las compañías de energía certificadas, así como de la Corporación para la Revitalización de la Autoridad de Energía Eléctrica que el Negociado de Energía estime necesario para cumplir con sus responsabilidades bajo esta Ley, sujeto a cualquier derecho constitucional, estatutario o privilegio aplicable; y (iii) emitir citaciones requiriendo la comparecencia y el testimonio de testigos para obtener la información necesaria para hacer cumplir las disposiciones de esta Ley. Si cualquier persona se rehusare a cumplir con un requerimiento hecho por el Negociado de Energía, este podrá solicitar una orden judicial ante el Tribunal de Primera Instancia para requerir a esa persona a comparecer ante el Negociado de Energía para testificar, producir evidencia, o ambos, con relación al asunto bajo su consideración. Los requerimientos deberán ser notificados de la misma manera en la que estos se notificarían bajo las reglas de procedimiento civil aplicables.

(c) ...

(e)…"

Artículo 5.20.- Se enmienda el Artículo 6.25 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.25.- Revisión de Tarifas de Energía.

(a)   En general.- El Negociado de Energía estará encargado de seguir el proceso aquí dispuesto para revisar y aprobar las propuestas de revisión de

tarifas de las compañías de servicio eléctrico. El Negociado de Energía deberá asegurar que todas las tarifas sean justas y razonables y consistentes con prácticas fiscales y operacionales acertadas que proporcionen un servicio confiable, al menor costo razonable. Los reglamentos del Negociado de Energía para los procesos de revisión de tarifas cumplirán con estos principios.

(b) Procedimiento de Revisión de Tarifas.-

En el caso de la Autoridad, su sucesora, el Contratante de la red de transmisión y distribución, la tarifa vigente a la fecha de aprobación de la Ley de Transformación y ALIVIO Energético seguirá vigente hasta que la misma sea revisada por el Negociado de Energía de conformidad con las disposiciones de la Ley de Transformación y ALIVIO Energético.

El primer proceso de revisión de tarifa de la Autoridad culminará no más tarde de ciento ochenta (180) días luego de que el Negociado de Energía determine mediante resolución que la petición por la Autoridad está completa. Aquellas disposiciones de este Artículo que por su naturaleza sean únicamente aplicables a la Autoridad no serán aplicables a las solicitudes de revisión tarifaria presentadas por las compañías certificadas. Durante cualquier proceso de revisión de tarifa, la compañía de servicio eléctrico solicitante tendrá el peso de la prueba para demostrar que la tarifa eléctrica propuesta es justa y razonable, consistente con prácticas fiscales y operacionales acertadas que proporcionen un servicio seguro y adecuado, al menor costo razonable. La compañía de servicio eléctrico solicitante presentará toda la información solicitada por el Negociado de Energía, que incluirá, pero no necesariamente se limitará, según sea aplicable, a toda la documentación relacionada a:

(1) …

(2) los costos directos e indirectos de generación, transmisión y distribución de energía, incluyendo costos marginales, los costos varados ("stranded costs") y costos atribuibles a la pérdida de energía por hurto o ineficiencia;

(3) …

(4) …

(5) la capacidad de la compañía de servicio eléctrico solicitante para mejorar el servicio que brinda y mejorar sus instalaciones;

(6) la conservación de energía y el uso eficiente de recursos energéticos alternativos y el cumplimiento con la Cartera de Energía Renovable;

(7) …

(8) cualquier otro dato o información que el Negociado de Energía considere necesaria para evaluar y aprobar las tarifas;

(9) la participación ciudadana en el proceso de evaluación de la tarifa.

En el caso de compañías de servicio eléctrico que provean servicios al detal, la tarifa aprobada debe ser desglosada en la factura enviada al consumidor de forma que refleje cada uno de los cargos que componen dicha factura, según los requisitos de la factura transparente dispuestos por el Negociado mediante reglamento, la cual deberá cumplir con los principios dispuestos en el Artículo 1.10 de la Ley de Política Pública Energética de Puerto Rico y la Sección 6 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada. El Negociado aprobará una tarifa que:  (i) permita a las compañías de servicio eléctrico recobrar todos los costos operacionales y de mantenimiento, inversiones de capital, costos de financiamientos, costos dispuestos mediante legislación, así como cualquier otro costo legalmente incurrido en relación a la provisión del servicio eléctrico, y que, salvo aquellos costos que sean requeridos mediante legislación, sean determinados por el Negociado como prudentes y razonables y consistentes con prácticas fiscales y operacionales acertadas que proporcionen un servicio confiable, al menor costo posible; (ii) provea para cubrir los costos de la contribución en lugar de impuestos y otras aportaciones y subsidios requeridos mediante legislación; (iii) permita a las compañías de energía realizar las obras de mantenimiento e inversiones de capital prudentes y necesarias para suplir el servicio eléctrico de conformidad con los parámetros y los estándares de calidad establecidos por el Negociado de Energía; y (v) permanezca vigente durante ciclos de por lo menos tres (3) años, salvo que el Negociado de Energía, *motu proprio*, comience un procedimiento de revisión tarifaria.

En los casos en que la tarifa contemple una cláusula por ajuste por compra de combustible y ajuste por compra de energía, dichas clausulas comprenderán únicamente aquella porción de cargos relacionados directamente a las fluctuaciones por cambio en precios de combustible y la compra de energía respectivamente, o aquella porción variable del precio de combustible y energía que no se incluya en la tarifa básica, según sea el caso. Ningún otro gasto o cargo podrá ser incluido bajo la cláusula de ajuste por compra de combustible o ajuste por compra de energía.

Toda solicitud de modificación a la tarifa aprobada por el Negociado deberá cumplir con el inciso (c) de esta Sección.

…

(c) Modificación a la tarifa.- Todo proceso de solicitud de modificación de una tarifa previamente aprobada por el Negociado de Energía deberá presentarse ante este. La solicitud deberá detallar las razones para la modificación, el efecto de dicha modificación en los ingresos y gastos del solicitante, y cualquier otra

información solicitada por el Negociado de Energía mediante reglamento o resolución. El Negociado de Energía podrá iniciar, *motu proprio*, o ante petición de la Oficina Independiente de Protección al Consumidor o de cualquier otra parte interesada, el proceso de la revisión de tarifas cuando sea en el mejor interés de los consumidores. Cualquier modificación en la tarifa propuesta, ya sea un aumento o una disminución, pasará por un proceso de descubrimiento de prueba y de vistas públicas que llevará a cabo el Negociado de Energía para determinar si el propuesto cambio es justo y razonable y consistente con prácticas fiscales y operacionales acertadas que proporcionen un servicio confiable y adecuado, al menor costo razonable. El Negociado de Energía deberá proveer la oportunidad para la participación de la OIPC, el Programa de Política Pública Energética, ciudadanos y otras partes interesadas en el proceso. El proceso de revisión y emisión de la orden no podrá exceder de ciento ochenta (180) días a partir de la fecha en que el Negociado de Energía determine mediante resolución que la solicitud de revisión de tarifa está completa, disponiéndose, no obstante, que el Negociado de Energía podrá extender mediante resolución dicho término por un periodo adicional que no excederá de sesenta (60) días.

(d) Ajuste temporero.- A petición de una compañía de energía, el Negociado podrá autorizar un ajuste en la tarifa de servicio eléctrico por circunstancias de emergencia o de carácter temporero. Dicha solicitud debe estar acompañada de toda la documentación e información disponible que, a juicio de la compañía de energía solicitante, justifique el ajuste temporero. La determinación preliminar del Negociado de autorizar o rechazar el ajuste temporero propuesto deberá estar debidamente fundamentada y deberá emitirse y publicarse no más de diez (10) días luego de solicitado dicho ajuste. En los casos en que se autorice un ajuste temporero, el Negociado de Energía ordenará a la compañía de energía solicitante a emitir una notificación al público dando aviso del cambio y explicando, en términos generales, las razones que justifican dicho ajuste temporero. En caso de que proceda un ajuste temporero a la tarifa, el Negociado celebrará vistas públicas en un término que no excederá de treinta (30) días desde la fecha de efectividad del ajuste temporero en donde la compañía solicitante y el público en general tendrán la oportunidad de presentar evidencia o testimonio pericial y documental en apoyo a sus respectivas posturas. No más tarde de sesenta (60) días luego de finalizado el proceso de vistas públicas, el Negociado deberá emitir una determinación final en torno a si procede o no el ajuste temporero solicitado. En el caso de que se determine que procede el ajuste temporero, el Negociado fijará la duración y cuantía de este. En el caso de rechazar el ajuste temporero, el Negociado determinará si procede que se ajusten las tarifas de los consumidores para reconciliar cualquier diferencia incurrida durante el periodo en el que estuvo en efecto el ajuste temporero preliminar. El incumplimiento con la celebración de vistas públicas conllevará que se deje sin efecto la validez del ajuste temporero. La vigencia de dicho ajuste nunca excederá

de ciento ochenta (180) días desde autorizada por el Negociado. El ajuste temporero aquí dispuesto no se considerará una tarifa provisional.

(e) Tarifa provisional.- El Negociado de Energía, *motu proprio* o a petición de una compañía certificada solicitante, podrá hacer una evaluación preliminar de una solicitud de revisión tarifaria para determinar si establece una tarifa provisional, dentro de treinta (30) días de radicada una solicitud de modificación de tarifa. El Negociado de Energía tendrá discreción para establecer la tarifa provisional, salvo que el solicitante objete el establecimiento de la tarifa provisional o el monto de la misma, en cuyo caso el Negociado de Energía determinará si procede o no revisar la cantidad de la tarifa provisional o no establecerla. Si el Negociado de Energía establece una tarifa provisional, la misma entrará en vigor a partir de los sesenta (60) días de la fecha de aprobación de la tarifa provisional, a menos que el Negociado de Energía determine, a petición del solicitante, que entre en vigor antes, pero nunca será un periodo menor de treinta (30) días desde la aprobación de la tarifa provisional. Dicha tarifa provisional permanecerá vigente durante el período de tiempo que necesite el Negociado de Energía para evaluar el cambio en tarifa propuesto por el solicitante y hasta la fecha en que la nueva factura esté implementada, cuyo periodo no excederá de sesenta (60) días de su aprobación.

(f) Determinación final del Negociado.- Luego de concluido el proceso de vistas públicas, el Negociado de Energía emitirá su determinación final en torno a la solicitud de revisión tarifaria y estableciendo la tarifa por servicio eléctrico que haya determinado como justa y razonable. Dicha determinación deberá estar debidamente fundamentada y deberá cumplir con todas las salvaguardas del debido proceso de ley aplicables a las determinaciones finales de agencias administrativas. El Negociado publicará y notificará su determinación en su portal de Internet, junto con la tarifa autorizada, debidamente desglosada conforme a los requisitos de la factura transparente. La nueva tarifa aprobada entrará en vigor sesenta (60) días a partir de la fecha de vigencia de la orden del Negociado. El Negociado de Energía podrá extender o reducir dicho término a petición del solicitante del cambio de tarifa, pero el mismo nunca podrá ser menor a treinta (30) días de la fecha de vigencia de la orden del Negociado. Al emitir una orden final luego del proceso de revisión de tarifa, el Negociado de Energía ordenará a la compañía solicitante a ajustar la factura de sus clientes de forma que se acredite o cobre cualquier diferencia entre la tarifa provisional establecida por el Negociado y la tarifa permanente aprobada por el Negociado de Energía.

 (g) Inacción del Negociado de Energía.- Si el Negociado de Energía no toma acción alguna ante una solicitud de revisión de tarifas en un periodo de treinta (30) días contados a partir de su presentación, la tarifa modificada objeto de la solicitud entrará en vigor inmediatamente como una tarifa provisional salvo que el solicitante del cambio de tarifa solicite que no se establezca tarifa

provisional por razones establecidas en su solicitud. El Negociado de Energía continuará los procesos de revisión y emitirá la orden correspondiente dentro del término especificado en este Artículo. Si el Negociado de Energía no aprueba ni rechaza durante un periodo de ciento ochenta (180) días a partir de la fecha en que el Negociado de Energía notifique que determinó mediante resolución que la solicitud está completa, la tarifa propuesta advendrá final. Si el Negociado extiende el referido término de ciento ochenta (180) días, de acuerdo con las disposiciones de este Artículo, y no aprueba ni rechaza la tarifa propuesta antes de que expire el término adicional, la tarifa propuesta advendrá final.

(h) El Negociado de Energía publicará el desglose de toda tarifa o cambio de tarifa aprobado o modificado por ésta en su portal de Internet mensualmente."

Artículo 5.21.- Se añade un Artículo 6.25B a la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.25B.- Mecanismos de Incentivos y penalidades basados en el Desempeño.

Es necesario promover que las compañías de energía inviertan de manera costo efectiva en infraestructura, tecnología, incorporación de generación distribuida, fuentes de energía renovables y servicios que redunden en mejores beneficios para el sistema eléctrico y los consumidores. Con ese fin, el Negociado de Energía establecerá, en o antes del 31 de diciembre de 2019, mediante reglamento, aquellos mecanismos de incentivos y penalidades que consideren el desempeño y cumplimiento de las compañías de servicio eléctrico con las métricas de ejecución que constituyen la política pública energética.

En el proceso de desarrollo de los incentivos y penalidades basados en desempeño, el Negociado de Energía considerará los siguientes criterios, entre otros:

(a) la volatilidad y asequibilidad de las tarifas de servicio eléctrico;

(b) los incentivos económicos y recobro de inversión;

(c) la confiabilidad del servicio eléctrico; el servicio y compromiso al cliente, incluyendo opciones para el manejo de costos de electricidad que tengan disponibles los clientes;

(d) el acceso de los clientes a los sistemas de información de compañías de servicio eléctrico, incluyendo, pero sin limitarse al acceso del público a información sobre el uso agregado de energía producida por los consumidores ("aggregated customer energy") y acceso a información por consumidores individuales sobre su consumo eléctrico;

(e) cumplimiento con la Cartera de Energía Renovable y la rápida integración de recursos de energía renovable, incluyendo la calidad de la interconexión de recursos ubicados en propiedades de consumidores;

(f) cumplimiento con las métricas para alcanzar los estándares de eficiencia energética establecidas en esta Ley;

(g) mantenimiento de la infraestructura.

Entre los mecanismos a ser utilizados, el Negociado podrá considerar utilizar, sin limitarse a, los siguientes:

    i.   Mecanismos de "Decoupling";

    ii.  Regulación Basada en Desempeño ("Performance Based Regulation" o PBR, por sus siglas en inglés);

    iii.  Tarifas por tiempo de uso ("Time of Use");

    iv. Tarifas prepagadas;

    v. Tarifas desagregadas ("Unbundled Rates");

    vi. Tarifas mediante fórmula ("Formula Ratemaking") y mecanismo para revisar las mismas;

    vii. Mecanismos de Reconciliación.

Se exceptúa de esta disposición a las compañías de servicio eléctrico que el Negociado así determine mediante reglamento, incluyendo aquellas organizadas como cooperativas de energía o aquellas otras entidades que el Negociado así determine."

Artículo 5.22.- Se enmienda el Artículo 6.27 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.27.- Revisión de Facturas sobre el Servicio Eléctrico y Normas para la Suspensión del Servicio Eléctrico.

(a) Antes de acudir al Negociado de Energía para solicitar una revisión de factura de servicio eléctrico, toda persona deberá agotar, ante la compañía de energía certificada que le cobró dicha factura, el procedimiento administrativo informal que se establece en este Artículo y en los reglamentos que adopte el Negociado de Energía. En este proceso administrativo informal no aplicarán las disposiciones del Capítulo III de la Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

    (1) …

    (5) …

(b) …

(g) …"

Artículo 5.23.- Se enmienda el Artículo 6.29 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.29.- Eficiencia en la Generación de Energía.

(a) Generación Fósil Altamente Eficiente.- El Negociado de Energía deberá, en un período que no exceda cinco (5) años, contados a partir de la fecha de aprobación de la "Ley de Política Pública Energética de Puerto Rico", asegurarse que la energía eléctrica generada en Puerto Rico a base de combustibles fósiles (gas, o derivados del petróleo, petróleo y otros) será generada en un mínimo de sesenta (60) por ciento de forma altamente eficiente, según el concepto sea definido por el Negociado de Energía. El término "altamente eficiente" deberá incluir como factores esenciales la eficiencia térmica de la planta o instalación eléctrica por el tipo de combustible utilizado, costo de combustible, tecnología, el potencial de reducción en el costo de producir un kilovatio hora (kWh) de la tecnología propuesta, y/o cualquier otro parámetro de la industria que garantice la eficiencia en la generación de energía y de conformidad con el Plan Integrado de Recursos. El porcentaje requerido por este Artículo incluye la energía generada por combustibles fósiles vendida a la Autoridad, su sucesora, o al Contratante de la red de transmisión y distribución bajo los contratos de compra y venta de energía suscritos a la fecha de aprobación de esta Ley. En el caso de los Contratantes que adquieran u operen los activos de generación de la AEE, estos deberán modernizar las plantas o sustituirlas por plantas altamente eficientes, según este término es definido por el Negociado, en un periodo no mayor de cinco (5) años a partir de la firma del Contrato de Alianza o de Venta.  Luego de este periodo inicial aquellos Contratantes que optaron por modernizar las plantas deberán sustituirlas por plantas altamente eficientes en un periodo que no excederá de cinco (5) años a partir de culminado el periodo inicial. Toda planta de generación de nueva construcción o existente, que no sea una que opere exclusivamente con fuentes de energía renovable, deberá tener capacidad para operar a base de dos (2) o más combustibles, donde uno de estos deberá ser gas natural, considerando que a partir de la aprobación de la Ley de Política Pública Energética de Puerto Rico, se prohíbe la concesión de nuevos contratos y/o permisos y la extensión de contratos y/o permisos existentes para el establecimiento o la continuación de generación de energía en Puerto Rico a base de carbón.

(b) Toda instalación generadora de energía de una compañía de energía certificada en Puerto Rico deberá cumplir con los estándares de eficiencia establecidos por el Negociado de Energía y/o con cualquier otro parámetro de la industria que garantice la eficiencia en la generación de energía.

(c) ...

(1)…

(5)…

(d) El Negociado de Energía revisará periódicamente los estándares de eficiencia que establezca, los modificará de ser necesario, y los publicará en su portal de Internet junto con un análisis técnico que los justifique.

(e) El Negociado de Energía aprobará los planes estratégicos que desarrollen las compañías de energía certificadas para cumplir con estos estándares, fiscalizará y adoptará por reglamento aquellas medidas necesarias para el cumplimiento con los mismos."

Artículo 5.24.- Se añade el Artículo 6.29A de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.29A.- Respuesta a la Demanda.

(a) Respuesta a la Demanda- El Negociado de Energía desarrollará, en el término de ciento ochenta (180) días, guías para que las compañías de servicio eléctrico establezcan programas de respuesta a la demanda ("Demand Response" o "Demand Side Management"). Una vez establecidas las guías por el NEPR, las compañías de servicio de energía someterán al Negociado de Energía, en el término de seis (6) meses, una propuesta de los planes de respuesta a la demanda conforme a las guías establecidas. Estos deben contener un calendario definido e incentivos para viabilizar los programas a corto, mediano y largo plazo enfocándose en los beneficios que pueden recibir los consumidores a nivel residencial y comercial por la reducción de consumo de energía durante las horas pico."

Artículo 5.25.- Se añade el Artículo 6.29B de la Ley 57-2014, según enmendada, para que lea como:

"Artículo 6.29B.- Eficiencia Energética.

(a) Eficiencia Energética.- El Negociado de Energía deberá asegurarse que Puerto Rico alcance una meta de treinta por ciento (30%) de eficiencia energética para el 2040. Para ello, el Negociado de Energía establecerá, en un término de ciento ochenta (180) días, un reglamento mediante el cual establezca los mecanismos de eficiencia energética a ser utilizados, incluyendo, sin limitarse a, reemplazar el cien por ciento (100%) del alumbrado público por luces electroluminiscentes ("light emitting diode", o LED, por sus siglas en inglés) o renovables y disponga las metas de cumplimiento anual por sector necesarias para alcanzar la meta dispuesta en esta Ley. El Negociado de Energía podrá establecer programas de eficiencia energética dirigidos a alcanzar la meta establecida en este Artículo. A estos fines, el Negociado de Energía podrá utilizar los servicios de un tercero que maneje los programas de eficiencia energética y le

asista en la fiscalización del cumplimiento con las metas anuales establecidas mediante reglamento."

Artículo 5.26.- Se enmienda el Artículo 6.30 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.30.- Trasbordo de energía eléctrica.

El NEPR de Energía regulará el mecanismo de trasbordo de energía en Puerto Rico tanto a nivel de transmisión como a nivel de distribución. Al regular el servicio de trasbordo, el NEPR establecerá las normas y condiciones para asegurarse de que el trasbordo no afecte de forma alguna (incluidos los problemas técnicos y aumentos de tarifa) a clientes que no participen del servicio de trasbordo. El NEPR reglamentará las normas necesarias para la implementación de un sistema que permita a los negocios exentos descritos en la Sección 2(d)(1)(H) del Artículo 1 de la Ley 73-2008, según enmendada, conocida como la "Ley de Incentivos Económicos para el Desarrollo de Puerto Rico", o disposiciones análogas en leyes de incentivos, así como a compañías de servicio eléctrico, microredes, cooperativas de energía, empresas municipales y comunidades solares, contratar la venta de energía eléctrica a otras entidades mediante el servicio de trasbordo. De igual forma, el NEPR deberá considerar los siguientes factores, entre otros, al regular el servicio de trasbordo:

(a) …

(e) …"

Artículo 5.27.- Se enmienda el Artículo 6.31 de la Ley 57-2014, según enmendada para que lea como sigue:

"Artículo 6.31.- Extensión.

En el ejercicio de sus funciones reguladoras y conocimiento técnico en materia energética, el Negociado de Energía podrá extender por un término adicional no mayor de un (1) año el periodo para modernizar las plantas o sustituirlas por plantas altamente eficientes, establecido en el Artículo 6.29 de esta Ley, para que la energía eléctrica generada en Puerto Rico a base de combustibles fósiles (gas natural, petróleo o derivados del petróleo y otros) sea generada en un mínimo de sesenta (60) por ciento de forma altamente eficiente, siempre y cuando el Negociado determine que ello es necesario para la implementación cabal de la generación altamente eficiente a base de diversos combustibles. "

Artículo 5.28.- Se enmienda el Artículo 6.32 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.32.- Contratos entre Compañías de Servicio Eléctrico.

(a) El Negociado de Energía evaluará y aprobará todos los contratos entre las compañías de servicio eléctrico, incluidos los productores independientes de

energía, antes del otorgamiento de dichos contratos. Esto incluirá, pero no se limitará, a la evaluación y aprobación de los contratos de compraventa de energía mediante los cuales un productor independiente de energía se disponga a proveer energía a la compañía de servicio eléctrico responsable de operar el Sistema Eléctrico. No obstante, cuando un contrato de compra de energía forme parte de una Transacción de la AEE, bastará el Certificado de Cumplimiento de Energía conforme a lo dispuesto en la Ley 120-2018, según enmendada.

(b) Las disposiciones de este Artículo no serán de aplicación a los contratos de compraventa de energía otorgados por la Autoridad previo a la aprobación de esta Ley. No obstante, toda extensión o enmienda a un contrato de compra de energía otorgado previo a la aprobación de la Ley 57-2014, deberá cumplir con la Ley de Política Pública Energética de Puerto Rico y estará sujeta a la aprobación del Negociado de Energía.

(c) El Negociado de Energía adoptará y promulgará un reglamento con los estándares y requisitos con los que cumplirán los contratos de las compañías de servicio eléctrico, incluyendo los contratos entre la Autoridad, su sucesora, o el Contratante de la red de transmisión y distribución y cualquier compañía de servicio eléctrico o cualquier productor independiente de energía; y los términos y condiciones que deberán ser incluidos en todo contrato de compraventa de energía y en todo contrato de interconexión, incluidos los costos razonables de kilovatios hora (kWh) por tipo de tecnología de generación. En el proceso de análisis y formulación de ese reglamento, el Negociado de Energía deberá solicitar y considerar la opinión y los comentarios de  las compañías de energía, del Programa de Política Pública Energética,  de las compañías de energía, de los productores independientes de energía y del público en general. Las guías y estándares que el Negociado de Energía establezca por reglamento tendrán el propósito de asegurar el cumplimiento con los principios de esta Ley, de la Ley de Política Pública Energética de Puerto Rico, de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, conocida como la "Ley de la Autoridad de Energía Eléctrica de Puerto  Rico", y de la política pública del Gobierno  de Puerto Rico.

(d) Al evaluar cada propuesta de contrato entre las compañías de servicio eléctrico, el Negociado de Energía tomará en cuenta lo establecido en el plan integrado de recursos. El Negociado de Energía no aprobará contrato alguno que sea inconsistente con el Plan Integrado de Recursos, especialmente en lo referente a las metas de energía renovable, generación distribuida, conservación y eficiencia que se establezcan tanto en el plan integrado de recursos como en la política pública energética.

(e)  ...

(f) Al evaluar cada propuesta de contrato entre las compañías de servicio eléctrico, el Negociado de Energía verificará que la interconexión no amenace la confiabilidad y seguridad de la red eléctrica y requerirá la eliminación de

cualquier término o condición en la propuesta de contrato que sea contraria o amenace la operación segura y confiable de la red eléctrica. El Negociado de Energía no aprobará contrato alguno cuando exista evidencia técnica que demuestre que el proyecto en cuestión o las condiciones contractuales de un proyecto atentarían contra la confiabilidad y seguridad de la red eléctrica de Puerto Rico.

(g) El Negociado de Energía velará que las tarifas, derechos, rentas o cargos que se paguen a productores independientes de energía sea justa y razonable, y proteja el interés público y el erario. El Negociado de Energía velará, además, que la tarifa de interconexión a la red de transmisión y distribución, incluyendo los cargos por construcción, la tarifa de trasbordo, así como cualquier otro requerimiento aplicable a los productores independientes de energía o a otras compañías de servicio eléctrico que deseen interconectarse al sistema de transmisión y distribución, sea justa y razonable. En este proceso, el Negociado de Energía deberá asegurarse que las tarifas permitan una interconexión que no afecte la confiabilidad del servicio eléctrico y promueva la protección del ambiente, el cumplimiento con los mandatos de ley, y que no impacte adversamente a los clientes.

(h) Al evaluar las propuestas de contrato de compraventa de energía, el Negociado requerirá a la compañía del servicio eléctrico responsable de la operación del Sistema Eléctrico que  presente un "Estudio Suplementario" para el proyecto objeto del contrato propuesto o el análisis técnico correspondiente que sustente el contrato. En caso de que un proyecto no requiera que se haga un "Estudio Suplementario", la compañía de servicio eléctrico responsable de la operación del Sistema Eléctrico emitirá al Negociado de Energía una certificación a esos efectos, en la que expondrá las razones por las cuales las circunstancias y características del proyecto hacen innecesario un "Estudio Suplementario" o una evaluación técnica.

(i) La compañía de servicio eléctrico responsable de la operación del Sistema Eléctrico deberá emitir todo "Estudio Suplementario" dentro de un término de noventa (90) días a partir de la fecha en que la compañía de servicio eléctrico o el productor independiente de energía haya presentado su solicitud de evaluación de interconexión. En todo caso en que la  compañía de servicio eléctrico responsable de la operación del Sistema Eléctrico entienda que es innecesario un "Estudio Suplementario" o cualquier otro análisis técnico,  esta emitirá la certificación con las razones por las cuales las circunstancias y características del proyecto hacen innecesario un "Estudio Suplementario" u otra evaluación técnica, dentro de un término de cuarenta y cinco (45) días a partir de la fecha en que la compañía de servicio eléctrico o el productor independiente de energía haya presentado ante la  compañía de servicio eléctrico responsable de la operación del Sistema Eléctrico su solicitud de evaluación de interconexión. Si la compañía de servicio eléctrico responsable de la operación del Sistema Eléctrico

incumpliera con su obligación de someter al Negociado de Energía el "Estudio Suplementario" o la certificación, según sea el caso, para el proyecto junto con la propuesta de contrato, el Negociado de Energía impondrá a la compañía de servicio eléctrico responsable de la operación del Sistema Eléctrico las sanciones y remedios que estime adecuados y solicitará al Programa de Política Pública Energética que presente un memorando ante el Negociado de Energía en el que evalúe el proyecto y la propuesta de contrato, y emita una recomendación debidamente fundamentada.

(j) Todos los contratos de compraventa de energía que apruebe o en los que el Negociado de Energía emita un Certificado de Cumplimiento de Energía bajo la Ley 120-2018 deberán ser publicados en el portal de Internet del Negociado de Energía."

Artículo 5.29.- Se enmienda el Artículo 6.33 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.33.- Mediación y Arbitraje sobre Asuntos de Energía.

(a) Mediación.- Cualquier persona que esté negociando un acuerdo con la compañía de servicio eléctrico responsable de la operación del Sistema Eléctrico, o con un productor de energía, relacionado con el trasbordo de energía eléctrica, el cargo por capacidad, interconexión, contratos de compraventa de energía o cualquier otro asunto establecido por el Negociado de Energía mediante reglamento, podrá solicitar al Negociado de Energía, en cualquier momento durante la negociación, que intervenga en carácter de mediador y asista en la resolución de las diferencias que surjan durante el curso de la negociación. Este Artículo no será de aplicación a los procesos de negociación de las Transacciones de la AEE autorizadas bajo la Ley 120-2018.

(b) …

(1) …

(2) …

(d)…"

Artículo 5.30.- Se enmienda el Artículo 6.34 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.34.- Construcción y expansión de instalaciones de energía.

(a) En general.- Toda compañía de energía certificada que desee construir o expandir sus instalaciones deberá cumplir con la Ley de Política Pública Energética y presentar al Negociado una notificación de intención sobre el proyecto, conforme con las normas y reglamentos que esta establezca. El Negociado deberá responder a la notificación de intención dentro de ciento ochenta (180) días luego de la presentación.

(b) Criterios de evaluación.- El Negociado evaluará las notificaciones de intención para la construcción de una instalación para generar potencia eléctrica conforme al reglamento que el Negociado establecerá y promulgará para dicho proceso. Al atender las notificaciones de intención, el Negociado evaluará si la referida obra cumple con algún objetivo previamente establecido en el plan integrado de recursos, o si atiende una necesidad imperiosa real de la infraestructura eléctrica de Puerto Rico, en cuyo caso deberán seguirse los procedimientos establecidos para enmendar el Plan Integrado de Recursos. El Negociado emitirá una resolución en la que indicará si dicha obra es necesaria, adecuada y cónsona con el interés público y con la política pública energética. El Negociado no podrá denegar una notificación de intención por razones arbitrarias o discriminatorias.

(c) …"

Artículo 5.31.- Se enmienda el Artículo 6.35 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.35.- Transferencias, adquisiciones, fusiones y consolidaciones de compañías de energía certificadas.

(a) En general.- No se completará la venta, adquisición, fusión o consolidación entre compañías de energía o de sus instalaciones sin que el Negociado de Energía certifique que dicha transacción es cónsona con el plan integrado de recursos y con el mejor interés de Puerto Rico y no implica la captura o control de los servicios eléctricos por una compañía de servicio eléctrico ni la creación de un monopolio sobre los servicios eléctricos por parte de una compañía privada de servicio eléctrico. Ninguna compañía de servicio eléctrico o su subsidiaria o afiliada podrá controlar el cincuenta por ciento (50%) o más de la capacidad de los activos de generación, excepto la Autoridad de Energía Eléctrica cuando se trate de activos de generación legados. El porcentaje máximo que una compañía de servicio eléctrico, su subsidiaria o afiliada podrá controlar de la capacidad de activos de generación podrá ser revisado por el Negociado para impedir el establecimiento de un monopolio en la generación, pero en ningún caso podrá alcanzar el cincuenta por ciento (50%) o más de la capacidad de los activos de generación.

…

(d)…"

Artículo 5.32.- Se enmienda el Artículo 6.36 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.36.- Penalidades por incumplimiento.

(a) El Negociado de Energía podrá imponer multas administrativas por violaciones a esta Ley, a sus reglamentos y a sus órdenes, incurridas por

cualquier persona o compañía de energía sujeta a la jurisdicción de la misma, de hasta un máximo de veinticinco mil dólares ($25,000) por día. Dichas multas nunca excederán del cinco por ciento (5%) de las ventas brutas, del quince por ciento (15%) del ingreso neto o del diez por ciento (10%) de los activos netos de la persona o compañía de energía sancionada. La cantidad que resulte mayor de las antes mencionadas, correspondiente al año contributivo más reciente, será la cantidad multada.

(b) ...

(c) …

(d) Cualquier persona que intencionalmente infrinja cualquier disposición de esta Ley, omita, descuide o rehúse obedecer, observar y cumplir con cualquier regla o decisión del Negociado de Energía incurrirá en delito menos grave y convicta que fuere será sancionada con pena de reclusión que no excederá de seis (6) meses, o con una multa no menor de quinientos dólares ($500) ni mayor de cinco mil dólares ($5,000), a discreción del Negociado de Energía. De mediar reincidencia, la pena establecida aumentará a una multa no menor de diez mil dólares ($10,000) ni mayor de veinte mil dólares ($20,000), a discreción del Negociado de Energía.

(e) El Negociado de Energía podrá acudir a los foros pertinentes para solicitar cualquier remedio, incluyendo el embargo de cuentas, para lograr el cumplimiento de las penalidades impuestas."

Artículo 5.33.- Se enmienda el Artículo 6.37 de la Ley 57-2014, según enmendada para que lea como sigue:

"Artículo 6.37.- Informes Anuales.

Antes del 1ro de marzo de cada año, el NEPR deberá publicar y rendirle al Gobernador y a la Asamblea Legislativa del Gobierno de Puerto Rico el informe requerido por el Artículo 6.3 de esta Ley. Dicho informe deberá contener la siguiente información:

(a) ...

(b) ...

(c) estado de situación sobre los porcientos alcanzados de las métricas de generación distribuida, Cartera de Energía Renovable, eficiencia energética, entre otros y recomendaciones para alcanzar las métricas establecidas en la Ley;

(d) …

(e) …

(f) …

(g) …"

Artículo 5.34.-  Se elimina el contenido del Artículo 6.39 de la Ley 57-2014, según enmendada, y se reserva.

"Artículo 6.39- Reservado"

 Artículo 5.35.-  Se enmienda el Artículo 6.40 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.40.- Creación de la Oficina Independiente de Protección al Consumidor.

(a)   Se crea la Oficina Independiente de Protección al Consumidor, en adelante "Oficina" u "OIPC", para educar, orientar, asistir y representar a los clientes de los servicios bajo la jurisdicción de la Junta Reglamentadora de Servicio Público de Puerto Rico. De conformidad con el Plan de Reorganización de la Junta Reglamentadora de Servicio Público y la Ley 211-2018, la Oficina Independiente de Protección al Consumidor se consolida dentro de la Junta Reglamentadora de Servicio Público. El personal que estuviera adscrito a la Oficina Independiente de Protección al Consumidor en virtud de la "Ley de Transformación y ALIVIO Energético", pasará a formar parte de la Junta Reglamentadora de Servicio Público creada en virtud del Plan de Reorganización de la Junta Reglamentadora de Servicio Público. Cualquier transferencia de personal deberá hacerse siguiendo los parámetros establecidos en la Ley 8-2017, según enmendada.

(b)  La Oficina, recibirá apoyo administrativo de la Junta Reglamentadora de Servicio Público, y trabajará como ente independiente del NEPR, de la Autoridad,  de cualquier compañía de energía certificada en Puerto Rico, del Negociado de Telecomunicaciones y del Negociado de Transporte y otros Servicios Públicos y de cualquier entidad regulada por estos.

(c) ...

(d) La Oficina tendrá un portal de Internet que contendrá información sobre la industria eléctrica, sobre las telecomunicaciones, el transporte, otros servicios públicos y cualquier otra información pertinente a los asuntos bajo su consideración, la cual estará presentada de manera tal que el consumidor promedio pueda entender la información. La Oficina deberá compartir y publicar todo dato e información para que cada consumidor interesado pueda conocer sobre sus derechos."

Artículo 5.36.- Se enmienda el Artículo 6.41 de la Ley 57-2014, según enmendada para que lea como sigue:

"Artículo 6.41.- Organización de la Oficina Independiente de Protección al Consumidor.

(a)  ...

(b) Ningún empleado de la Oficina, ya sea de carrera o de confianza, podrá tener parentesco dentro del cuarto grado de consanguinidad y segundo de afinidad con el Presidente, miembros asociados o el Director Ejecutivo de la JRSP ni con los Comisionados del Negociado de Energía, el Negociado de Telecomunicaciones y el Negociado de Transporte y otros Servicios Públicos.

(c) Ningún empleado de carrera o de confianza de la OIPC y los miembros de su unidad familiar, según definidos en la Ley 1-2012, según enmendada, conocida como "Ley Orgánica de la Oficina de Ética Gubernamental", podrá tener interés directo o indirecto en, ni relación contractual con, la Autoridad y/o cualquier compañía de energía certificadas en Puerto Rico, ni en entidades dentro o fuera de Puerto Rico afiliadas con intereses en la Autoridad o en dichas compañías, o con cualquier compañía relacionada o bajo la jurisdicción del Negociado de Telecomunicaciones y del Negociado de Transporte y otros Servicios Públicos.

(d) …

(e) …"

Artículo 5.37.- Se enmienda el Artículo 6.42 de la Ley 57-2014, según enmendada para que lea como sigue:

"Artículo 6.42.- Poderes y Deberes de la OIPC.

La Oficina tendrá los siguientes poderes y deberes:

(a) Educar, informar, orientar y asistir al cliente sobre sus derechos y responsabilidades en relación con el servicio eléctrico, y con la política pública de ahorro, conservación y eficiencia, los servicios de telecomunicaciones y aquellos bajo la jurisdicción del Negociado de Transporte y otros Servicios Públicos;

(b) Evaluar el impacto que tienen las tarifas, la política pública y cualquier otro asunto que pueda afectar a los clientes de servicio eléctrico, telecomunicaciones y transporte en Puerto Rico;

(c) Ser defensor y portavoz de los intereses de los clientes en todos los asuntos que estén ante el Negociado de Energía, el Negociado de Telecomunicaciones y el Negociado de Transporte y otros Servicios Públicos, o que están siendo trabajados por el Programa de Política Pública Energética adscrito al Departamento de Desarrollo Económico, relacionados con las tarifas y cargos de servicios eléctrico, calidad del servicio eléctrico, los servicios de las compañías de servicio eléctrico a sus clientes, planificación de recursos, política pública y cualquier otro asunto de interés del cliente;

(d) Presentar querellas o recursos legales ante el Negociado de Energía, el Negociado de Telecomunicaciones de Puerto Rico y el Negociado de Transporte y otros Servicios Públicos de Puerto Rico a nombre y en representación de clientes, que no tengan otra representación legal, en relación con controversias

sobre cualquier asunto que afecte el servicio, tarifa o en cualquier otro asunto que afecte los intereses o derechos de los clientes de servicio eléctrico, telecomunicaciones y transporte. Previo a radicar querellas en representación de clientes deberá verificar que el cliente haya cumplido con las disposiciones pertinentes administrativas para su reclamo. Si existiera un conflicto de interés entre distintas clases de clientes con respecto a alguna causa de acción o controversia, la prioridad de la OIPC será representar y defender a los clientes residenciales y comerciales con pequeños negocios;

(e) Participar en el proceso de adopción o modificación de tarifas de los asuntos que afecten a los clientes de servicio eléctrico, telecomunicaciones y transporte.

(f) Efectuar recomendaciones independientes ante los Negociados sobre tarifas, facturas, política pública y cualquier otro asunto que pueda afectar a los clientes de estos servicios en Puerto Rico;

(g) Peticionar y abogar a favor de tarifas justas y razonables para los clientes que representa;

(h) Participar o comparecer como parte interventora en cualquier acción, ante cualquier agencia gubernamental del Gobierno de Puerto Rico o del Gobierno Federal con jurisdicción, relacionada con tarifas, facturas, política pública o a cualquier otro asunto que pueda afectar a los consumidores y/o clientes de servicio eléctrico, de telecomunicaciones y de transporte;

(i) Participar o comparecer como parte peticionaria o como parte interventora en cualquier acción ante el Tribunal General de Justicia o ante los tribunales de la jurisdicción federal, relacionada con tarifas, facturas política pública o a cualquier otro asunto que pueda afectar a los clientes de servicio eléctrico, telecomunicaciones y transporte;

(j) …

(k) Tener acceso a los documentos, expedientes e información a la que tenga acceso el Negociado de Energía, el Negociado de Telecomunicaciones de Puerto Rico, el Negociado de Transporte y otros Servicios Públicos de Puerto Rico, y el Programa de Política Pública Energética adscrito al Departamento de Desarrollo Económico, con excepción de información, documentos y expedientes privilegiados al amparo de las Reglas de Evidencia;

(l) Llevar a cabo por cuenta propia o mediante contrato aquellos estudios, encuestas, investigaciones o testimonios periciales relacionados a materias que afecten el interés de los clientes de servicio eléctrico, telecomunicaciones y transporte;

(m) Revisar y someter comentarios sobre cualquier legislación o reglamentación propuesta que afecte a los clientes de servicio eléctrico, telecomunicaciones y transporte;

(n) …

(o) …

(p) Asistir, asesorar y cooperar con las agencias estatales y federales para proteger y promover los intereses de los clientes de servicio eléctrico, telecomunicaciones y transporte;

(q) Estudiar la operación y las leyes que afectan a los clientes de servicios eléctricos, telecomunicaciones y transporte incluyendo a los pequeños comerciantes, para hacer recomendaciones de enmiendas y proponer nuevos proyectos de ley al Gobernador y a la Legislatura, que persigan los mejores intereses de los clientes;

(r) Organizar y llevar a cabo conferencias o actividades sobre los problemas que afectan a los clientes de energía eléctrica, telecomunicaciones y transporte; y

(s) …"

Artículo 5.38.- Se enmienda el Artículo 6.43 de la Ley 57-2014, según enmendada, para que lea como sigue:

"Artículo 6.43.- Presupuesto de la Oficina.

La Oficina recibirá una asignación presupuestaria anual de un millón doscientos mil (1,200,000) dólares, el cual provendrá proporcionalmente de la cantidad asignada al Negociado de Energía, al Negociado de Telecomunicaciones de Puerto Rico y al Negociado de Transporte y otros Servicios Públicos de Puerto Rico."

Capítulo VI - Enmiendas a la Ley 120-2018

Artículo 6.1.- Se enmienda la Sección 2 de la Ley 120-2018, para que lea como sigue:

"Sección 2.- Definiciones.

Para propósitos de esta Ley, las palabras o términos aquí utilizados tendrán el significado dispuesto en la Ley 29-2009, excepto cuando una palabra o término sea expresamente definido en esta Ley o donde el contexto claramente indique otra cosa. De igual forma, las palabras o términos definidos en esta Sección, cuando son utilizados en la Ley 29-2009, en relación a una Transacción de la AEE, se interpretarán con el significado provisto en esta Ley. Las palabras usadas en el singular incluirán el plural y viceversa. No obstante, las siguientes palabras o términos tendrán los significados que se indican a continuación,

excepto disposición en contrario o donde el contexto claramente indique otra cosa:

(a) ...

…

(d) Certificado de Cumplimiento de Energía: Certificado emitido por la Comisión en toda Transacción de la AEE mediante el cual se acredita que el Contrato Preliminar cumple con el marco regulatorio, la "Ley de Política Pública Energética de Puerto Rico", y el derecho vigente.

(e) Comisión o Negociado: Significa el Negociado de Energía de Puerto Rico, según establecido en virtud del Plan de Reorganización de la Junta Reglamentadora de Servicio Público de Puerto Rico y la Ley 211-2018, que es un ente independiente especializado encargado de reglamentar, supervisar y hacer cumplir la política pública energética del Gobierno de Puerto Rico.  Toda referencia que esta Ley haga a "la Comisión o Comisión de Energía", se entenderá que se refiere al Negociado de Energía de Puerto Rico.

…

…

(i) Empleado Regular o Empleado con Puesto Regular: incluye pero sin limitarse a todo empleado regular, empleado regular especial y empleado regular condicionado, según estos términos son definidos y utilizados en la reglamentación de personal aplicable de la AEE.

(j) Instalación(es): …

(k) Ley 29-2009: …

(l) Ley 83: …

(m) Transacción(es) de la AEE: …"

Artículo 6.2.- Se enmienda la Sección 5 de la Ley 120-2018 para que lea como sigue:

"Sección 5.- Autorización para Transacciones de la AEE.

(a)...

…

(g) Todo contrato relacionado a una Transacción de la AEE requerirá de un Certificado de Cumplimiento de Energía, según definido en esta Ley.  El Comité de Alianza presentará al Negociado el Informe preparado conforme al Artículo 9(g) de la Ley 29-2009 previo a presentar el mismo a las Juntas de Directores de la Autoridad y la AEE. El Negociado evaluará el Informe, la información presentada y el Contrato Preliminar y de

cumplir con la política pública energética y el marco regulatorio, expedirá un Certificado de Cumplimiento de Energía. El Certificado de Cumplimiento de Energía o la resolución denegando su expedición contendrá los fundamentos que motivan su determinación. El Negociado tendrá treinta (30) días desde que le fue presentado el Contrato Preliminar para emitir un Certificado de Cumplimiento, o una resolución denegando su expedición. Cuando coincidan más de un Contrato Preliminar ante la consideración del Negociado, el término de treinta (30) días transcurrirá consecutivamente, considerando el orden que fueron presentados. De no expedirse un Certificado de Cumplimiento o resolución denegatoria dentro de dicho término, la Transacción de la AEE se considerará aprobada por el Negociado y se entenderá que la Transacción de la AEE ha recibido un Certificado de Cumplimiento de Energía. Una vez emitido el Certificado de Cumplimiento de Energía, cualquier enmienda al Contrato Preliminar requerirá de la emisión de un nuevo Certificado de Cumplimiento de Energía. La mera expedición de un Certificado de Cumplimiento de Energía no concede el derecho a reclamar indemnización, reembolso, ni pago alguno por concepto de expectativas surgidas en cualquiera de las etapas, ni por los gastos incurridos durante el proceso de cualificación o presentación de propuestas. Las revisiones al Certificado de Cumplimiento de Energía emitido por el Negociado deberán interponerse ante el Tribunal de Apelaciones, en el término de quince (15) días, contados desde su notificación."

Artículo 6.3.- Se enmienda la Sección 6 de la Ley 120-2018, para que lea como sigue:

"Sección 6.- Inaplicabilidad de Ciertas Disposiciones de Ley.

(a) …

…

(d) Los Contratos otorgados con relación a cualquier Transacción de la AEE podrán proveer exenciones o procedimientos alternos a las siguientes disposiciones estatutarias (y a cualquier disposición reglamentaria o acción relacionada) que el Comité de Alianza determine sean razonables bajo las circunstancias para asegurar la viabilidad de la Transacción de la AEE:

(i) Ley Núm. 109 de 28 de junio de 1962, según enmendada, conocida como la "Ley de Servicio Público de Puerto Rico";

(ii) Cualquier requisito (A) del Plan Integrado de Recursos, según dicho término es definido en la Ley 57-2014, según enmendada; y (B) cualquier disposición estatutaria aplicable a la AEE, incluyendo entre otras aquellas impuestas por virtud de la Ley 83; siempre y

cuando el Comité de Alianza cuente con la autorización del Negociado de Energía mediante el Certificado de Cumplimiento."

Artículo 6.4.- Se enmienda la Sección 7 de la Ley 120-2018, para que lea como sigue:

"Sección 7.- Uso de Pagos Recibidos de Transacciones de la AEE.

Además de lo dispuesto en los Artículos 9(g) (ix) y 17 de la Ley 29-2009, se harán todos los esfuerzos conducentes para que cualquier pago recibido con respecto a una Transacción de la AEE se utilice para proveer una cantidad para retiro temprano para aquellos empleados que cualifiquen para el mismo y contribuir al Sistema de Retiro de la AEE en aras de mejorar el nivel de capitalización del mismo mediante una aportación consistente con lo dispuesto en el subinciso (e) del Artículo 17 de la Ley 29-2009. Dicho sistema no podrá ser suspendido por esta Ley ni por ninguna transacción que en ella se autorice. Este Sistema de Retiro de la AEE podrá ser definido por legislación posterior."

Artículo 6.5.- Se enmienda la Sección 15 de la Ley 120-2018, para que lea como sigue:

"Sección 15.- Disposiciones sobre Empleados de la Autoridad de Energía Eléctrica

Los empleados de la AEE han sido claves en el restablecimiento del sistema eléctrico tras el paso del huracán María. Su conocimiento del sistema es imprescindible para asegurar el éxito de su transformación.

Las disposiciones de esta Ley y cualquier Contrato de Alianza o de Venta o privatización que se lleve a cabo en la AEE de conformidad con esta Ley, no podrán ser utilizadas por el Gobierno de Puerto Rico como fundamento para el despido de ningún empleado con un puesto regular. El personal que compone la AEE que opte por permanecer en el Gobierno de Puerto Rico será asignado de conformidad con los estatutos, reglamentos y normas administrativas aplicables a los mismos. De igual forma, la AEE y el Gobierno de Puerto Rico podrán diseñar y ofrecer planes de transición o renuncias voluntarias incentivadas.

Todo reglamento establecido dará fiel cumplimiento a las disposiciones de la Sección 5.2 de la Ley 8-2017, según enmendada, conocida como "Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico". De igual forma, el concepto de la movilidad y el mecanismo establecido por la Oficina de Administración y Transformación de los Recursos Humanos del Gobierno de Puerto Rico (OATRH) para implementar el movimiento de los empleados públicos, según establecido en la Ley 8-2017, aplicará en la AEE de conformidad con dicha Ley. Los empleados regulares de la AEE que no pasen a trabajar para los Contratantes retendrán sus plazas, o serán transferidos a otras plazas dentro de la AEE u otras Entidades Gubernamentales. A estos efectos, la AEE en conjunto con la OATRH realizará un estudio para

identificar las plazas compatibles con la preparación de los empleados de la AEE, o en su defecto, establecerá planes de readiestramiento para ubicar a los empleados que no pasen a trabajar para los Contratantes de conformidad con lo establecido en la Ley 8-2017.

A todos los empleados que como resultado de esta Ley sean transferidos bajo el concepto de movilidad a otra entidad gubernamental o pasen a ser empleados del o los Contratantes de las Transacciones de la AEE, conservarán todos los derechos adquiridos conforme a las leyes, normas, convenios colectivos y reglamentos que les sean aplicables, así como los privilegios, obligaciones y estatus respecto a cualquier sistema existente de pensión, retiro o fondo de ahorro y préstamo establecidos por ley, a los cuales estuvieren acogidos antes de la aprobación de esta Ley y que sean compatibles con lo dispuesto en la Ley 26-2017, conocida como "Ley de Cumplimiento con el Plan Fiscal". Ningún empleado regular de la AEE quedará sin empleo ni perderá beneficios como resultado de las Transacciones de la AEE."

Capítulo VII - Enmiendas a la Ley 211-2018

Artículo 7.1.- Se enmienda la Sección 7 de la Ley 211-2018, para que lea como sigue:

"Sección 7.- Presupuesto y otros Fondos.

El Presidente de la JRSP, en coordinación con los Comisionados de los Negociados, preparará, administrará, solicitará, gestionará, recibirá, y formulará los presupuestos de los Negociados, así como habrá de determinar el uso y control de equipo, materiales y toda propiedad transferida, respetando siempre la independencia operacional y funcional de los Negociados.

Todos los fondos disponibles, de cualquier naturaleza, que provengan de los presupuestos, poderes y/o de las funciones que realizan los Negociados, y que se le transfieran a la Junta para su administración, se deberán utilizar para cubrir los gastos operacionales de la Junta y cada uno de los Negociados en cumplimiento con los propósitos a los que fueron destinados, sujeto a los términos, restricciones, limitaciones y/o requerimientos que sobre ellos impongan las leyes estatales o federales aplicables. Con excepción del presupuesto del Negociado de Energía, a partir del Año Fiscal 2018-2019 y años subsiguientes, el Presidente, en coordinación con el Director Ejecutivo y los Comisionados de cada Negociado, prepararán el presupuesto anual de los Negociados. El Director Ejecutivo someterá el presupuesto de los Negociados de Telecomunicaciones de Puerto Rico y de Transporte y Otros Servicios Públicos de Puerto Rico a la Oficina de Gerencia y Presupuesto y a la Asamblea Legislativa para la inclusión y aprobación de sus asignaciones presupuestarias."

Capítulo VIII – Enmiendas adicionales y otras disposiciones

Artículo 8.1.- Se enmienda la Sección 4030.17 del Capítulo 3 del Subtítulo D de la Ley 1-2011, según enmendada, para que lea como sigue:

"Sección 4030.17.- Exención para Equipos Solares Eléctricos.

Estarán exentos del Impuesto sobre Ventas y Uso, los equipos solares eléctricos utilizados para producir y/o almacenar energía eléctrica, incluyendo sus accesorios y piezas, siempre que sean necesarios para que éstos puedan cumplir con tal propósito, y el arrendamiento de los mismos, según definido en los Artículos 3(B), (C), (D), (E), (F) y (G) de la Ley 76-1994, según enmendada, conocida como "Ley para Regular los Contratos de Arrendamientos de Bienes Muebles". Para cualificar para esta exención, el distribuidor o fabricante deberá presentar ante el Departamento una certificación declarando que el equipo solar eléctrico o los accesorios y piezas para tales equipos, cumplen con las normas y especificaciones establecidos por la Administración de Asuntos de Energía, así como una certificación declarando que el equipo solar eléctrico está garantizado por cinco (5) años o más."

Artículo 8.2.- Disposición Transitoria Junta de Gobierno AEE

Los miembros actuales de la Junta de Gobierno de la Autoridad, incluyendo aquellos cuyo nombramiento esté pendiente de confirmación en el Senado de Puerto Rico al momento de la aprobación de esta Ley continuarán en funciones hasta que concluyan el término de su nombramiento o generen una vacante por causa de renuncia, muerte, incapacidad o destitución. Los procesos iniciados para elegir al representante del interés de clientes en la Junta realizados por el Departamento de Asuntos del Consumidor (DACO) previo a la aprobación de la Ley 207-2018, continuarán su trámite bajo la jurisdicción del DACO, hasta la elección del representante del interés de los clientes.

Artículo 8.3.- Norma de Interpretación.

Mediante la presente Ley, la Asamblea Legislativa reafirma el acuerdo del Gobierno de Puerto Rico al amparo del Artículo 13 de la Ley 29-2009 con relación a los Contratos de Alianza que sean otorgados en una Transacción de la AEE. Igualmente, mediante la presente Ley, la Asamblea Legislativa reafirma la intención legislativa y política pública del Gobierno de Puerto Rico al amparo de la Sección 3 de la Ley 120-2018 donde se consigna que los Contratos de Alianza o de Venta que sean otorgados en una Transacción de la AEE bajo la Ley 120-2018 estarán revestidos y protegidos con la máxima consideración de nuestro ordenamiento constitucional en lo relacionado con el disfrute de la propiedad, el debido proceso de ley y la no aprobación de leyes que menoscaben las obligaciones contractuales legítimamente pactadas. Por lo cual se establece que nada de lo dispuesto en esta Ley o en cualquier otra ley, reglamento o disposición administrativa del Gobierno de Puerto Rico será interpretado o aplicado de forma tal que se menoscaben, limiten, restrinjan o de otra forma modifiquen los derechos contractuales de un Contratante y los términos y condiciones de un Contrato de

Alianza o Contrato de Venta otorgado como parte de una Transacción de la AEE, de conformidad con esta Ley y con la Ley 120-2018. El Negociado implementará las disposiciones de política pública y principios rectores promulgados en esta Ley de forma tal que sus actuaciones no resulten arbitrarias o caprichosas y las mismas sean conforme a las normas, pautas estándares, criterios y principios inteligibles ya establecidos o delegados en su ley orgánica y en leyes especiales aplicables. Además, las disposiciones de política pública y principios rectores promulgadas en esta Ley no serán fuente de legitimación activa o proveerán una causa de acción judicial, ni proveerán para acción administrativa en otra entidad del Gobierno de Puerto Rico que no sea el Negociado de Energía.

Artículo 8.4.- Separabilidad.

Esta Ley será interpretada de la manera que pueda ser declarada válida al extremo permisible de conformidad con la Constitución de Puerto Rico y de los Estados Unidos. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha sentencia quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas personas o circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta ley en la mayor medida posible, aunque se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a alguna persona o circunstancia. Esta Asamblea Legislativa hubiera aprobado esta Ley sin sujeción a la decisión de separabilidad que un Tribunal pueda emitir.

Artículo 8.5.- Supremacía.

Las disposiciones de esta Ley prevalecerán sobre cualquier otra disposición general o específica de cualquier otra ley o reglamento del Gobierno de Puerto Rico que sea inconsistente con esta Ley.

Artículo 8.6.- Vigencia.

Esta Ley comenzará a regir inmediatamente después de su aprobación.