UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO et al., | (Jointly Administered) |
| Debtors.[1] | |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | No. 17 BK 4780-LTS |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | (Jointly Administered) |
| Debtor. | |

---------------------------------------------------------------x

| | |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Adv. Proc. No. 24-00062-LTS |
| Plaintiffs, | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

      v.

HON. PEDRO PIERLUISI, in his official
capacity as Governor of Puerto Rico,

      Defendant,

      and

SENATE OF PUERTO RICO, through Hon.
José Luis Dalmau, in his official capacity as
President of the Senate of Puerto Rico,

      Intervenor – Defendant.

-----------------------------------------------------------x

## ORDER DENYING PETITION FOR INTERVENTION

### I. INTRODUCTION

This matter is before the Court on the *Petition for Intervention* (Dkt. No. 13 in Adv. Proc. No. 24-00062)[2] (the "Motion") filed by Solar United Neighbors ("SUN") and Sierra Club's Puerto Rico Chapter ("Sierra Club" together with SUN, the "Movants"). Therein, the Movants seek to intervene as defendants as of right pursuant to Federal Rule of Civil Procedure 24(a),[3] or, in the alternative, through permissive intervention under Federal Rule of Civil Procedure 24(b), in this litigation brought by the Oversight Board[4] to nullify Act 10-2014 ("Act 10"). Act 10 limits the

---

[2] All docket entry references are entries in Adv. Proc. No. 24-00062, unless otherwise specified.

[3] Federal Rule of Civil Procedure 24 is made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7024 and section 310 of PROMESA. 48 U.S.C. § 2170.

[4] Capitalized terms not defined herein shall have the meanings given to them in *Response of Financial Oversight and Management Board for Puerto Rico to the Motion to Request Intervention on Behalf of Solar United Neighbors and Sierra Club's Puerto Rico Chapter* (Dkt. No. 26) (the "Response").

2

powers of the Puerto Rico Energy Bureau ("PREB") to modify or regulate the net metering program operated by the Puerto Rico Electric Power Authority ("PREPA"). (See generally Dkt. No. 1 (the "Complaint")). The net metering program allows customers who use solar energy to export electricity to PREPA in exchange for credits against the cost of the electricity they purchase from PREPA. (See Compl. ¶ 7).

The Oversight Board contends that Act 10 must be nullified because it violates PROMESA in that it is inconsistent with the Fiscal Plans of the Commonwealth and PREPA, and because the Governor failed to satisfy the requirements of PROMESA § 204(a) in approving the Act. (See id. ¶¶ 16-18). Thus, it argues, PREB must be free to study, evaluate and modify the net metering program if necessary, and would be prevented from doing so under Act 10. (See id. ¶¶ 2, 9, 11, 14). The Movants, non-profit organizations dedicated to issues related to alternative energy, are proponents of Act 10, and submit that they helped get Act 10 passed through the Legislature. (Mot. ¶¶ 12, 16). They contend that the nullification of Act 10 would negatively impact their activities and their members, including users of solar power (present and future), and hinder the creation of a clean energy system for Puerto Rico. (See id. ¶¶ 16-22).

The Oversight Board, opposes the Movants' request to intervene, but does not oppose granting the Movants leave to file a limited (joint) amicus brief. The Governor has filed a "Limited Objection" (Dkt. No. 25) proposing limits on the scope of any intervention allowed by the Court. After careful consideration of the parties' submissions,[5] and for the reasons detailed

---

[5] The Court has also received and reviewed the Movants' *Omnibus Reply to Responses to Solar United Neighbors and Sierra Club's Puerto Rico Chapter Petition to Intervene* (Dkt. No. 34) (the "Reply").

3

herein, the Court DENIES the Motion, but will allow the Movants to file a joint omnibus amicus brief on any summary judgment motion filed by the parties. Although the Oversight Board has suggested that the Movants file another motion seeking leave to file an amicus brief, the Court does not find that another motion is necessary. (See Resp. ¶ 32, n.9).

## II. BACKGROUND

PREB has been conducting a study of PREPA's net metering program and its costs to PREPA. (Compl. ¶ 7). As the Oversight Board alleges, "[n]et metering programs raise many important and complex considerations, including the costs of energy generation, capacity value, transmission and distribution costs, system losses prevented, and environmental issues." (Id. ¶ 8). It is expected that "[b]ased on the results of its study, the Energy Bureau would be able to make (or not to make) changes to the seventeen-year-old net metering program it deemed appropriate." (Id.).

While the study was ongoing, Act 10 was enacted by the Puerto Rico Legislative Assembly and signed into law by the Governor on January 10, 2024. (Id. ¶ 10). The Act limits the ability of PREB to complete its study and/or to modify the existing net metering programs. (Id. ¶¶ 11-13). On July 26, 2024, the Oversight Board commenced this adversary proceeding against the Governor, the Honorable Pedro Pierluisi-Urrutia, in his official capacity, seeking nullification and an injunction barring the implementation of Act 10 on the grounds, *inter alia*, that it is inconsistent with the applicable Fiscal Plans. (See, e.g., id. ¶¶ 16-18). In addition, the Oversight Board contends that "the Government enacted Act 10 without obtaining a budgetary, financial, and economic analysis" required by PROMESA. (Id. ¶¶ 15, 18).

4

Movant SUN alleges that it is a nonprofit organization that is dedicated to creating a clean energy system for Puerto Rico residents and communities. (Mot. ¶ 10). It represents a constituency of solar energy system owners and future owners in Puerto Rico. (Reply ¶ 13). Specifically, SUN alleges that it organizes bulk purchases or "co-ops" of individually owned rooftop solar energy systems and invests in the development of "Resiliency Hubs" in vulnerable communities. (Mot. ¶ 11). SUN alleges that it is also a lead grantee of a Department of Energy fund related to Puerto Rico's energy resiliency. (Id. ¶¶ 11-12). SUN contends, among other things, that if Act 10 is nullified, 1) its co-ops will see an immediate decline, 2) the Resilience Hubs will have fewer resources, and 3) its capacity to disburse the DOE funds will decrease. (Id. ¶¶ 18-20, 31). SUN alleges that its mission and ability to provide services will be affected if Act 10 is annulled. (Id. ¶¶ 20-22).

Movant Sierra Club alleges that it is a non-profit organization that is dedicated to exploring and protecting nature and the responsible use of the Earth's resources, and thus is concerned with Puerto Rico's use of fossil fuels and Puerto Rico's adoption of alternative sources of energy. (Id. ¶¶ 13-15). Sierra Club alleges that if Act 10 is annulled, Sierra Club's mission and goals would be undermined, and the annulment would be to the detriment of Sierra Club's members who want to install solar energy systems for purposes of net metering. (Id. ¶¶ 17, 21-22, 31). SUN and the Sierra Club represent that they supported Act 10 as it was moving through the legislature in 2023 and as it made its way to the Governor's desk for signature. (Id. ¶¶ 12, 16). The Movants therefore argue that they have vested interests in the outcome of this case. (Id. ¶ 30). They argue further that the Governor, an existing party, does not adequately represent these interests, as he has political constraints which they do not. (Id.

5

¶ 35). The Movants submit that they meet the requirements for intervention as of right under Rule 24(a) and therefore should be allowed to intervene as defendants. (Id. ¶ 35). Alternatively, the Movants allege that they have a claim or defense that shares with the main action a common question of law or fact, and therefore meet the requirements for permissive intervention under Rule 24(b). (Id. ¶¶ 36-37).

The Oversight Board argues that neither Rule 24(a) nor Rule 24(b) intervention is warranted because the Movants have no protectable interest in this litigation and the Movants do not articulate, either in their motion papers or in their attached answer, a clear claim or defense. (Resp. ¶¶ 10, 30). The Complaint's allegations, the Oversight Board argues, are directed solely at the Governor's actions with respect to Act 10, and therefore do not implicate the Movants. (Id. ¶ 30). The Oversight Board adds that, even if the Court were to find that the Movants have a claim or defense, intervention would unduly complicate and derail the case because the Movants each seek full-party status, which includes the right to propound independent discovery, assert new or different objections, and the right to file motions. (Id. ¶ 32).[6]

In his Limited Objection, the Governor submits that, should the Court be inclined to grant the Movants' intervention request, he would not oppose it, provided that the following parameters are established by the Court. (Limited Obj. ¶ 3). The Governor requests that the Movants not be authorized to bring claims, file motions, or take discovery (the Governor however does not oppose the Movants having access to discovery and being heard on party

---

[6] Additionally, the Oversight Board notes that the Movants' "answer" includes a memorandum of law in support of a motion to dismiss and requests, as alternative relief, a stay of the litigation. (Id. ¶ 33).

6

motions). (Id. ¶ 3). The Governor also requests that the Movants have no rights with respect to settlements, appeals, and using "the fact of intervention for any purpose." (Id. ¶ 3). For the following reasons, the Court determines that neither Rule 24(a) nor 24(b) intervention is warranted.

III. DISCUSSION

A. Intervention as of Right Under Rule 24(a)

"To prevail on a motion for intervention as of right, a putative intervenor must demonstrate (1) the timeliness of her motion; (2) a concrete interest in the pending action; (3) 'a realistic threat' that resolution of the pending action will hinder her ability to effectuate that interest; and (4) the absence of adequate representation by any existing party." T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 39 (1st Cir. 2020) (quoting R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009)). "It is black letter law that a failure to satisfy any one of these four requirements sounds the death knell for a motion to intervene as of right." Id. (citing Ungar v. Arafat, 634 F.3d 46, 50-51 (1st Cir. 2011); Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998)). Here, the Movants fail to establish a right to intervene because they lack a concrete protectable interest in the pending action. Additionally, and also relevant to the Court's determination that permissive intervention should not be granted, the Movants have failed to show an absence of adequate representation by the existing defendants.[7]

---

[7] On September 11, 2024, the Court allowed the Senate of Puerto Rico to enter the case on a limited basis as an intervenor defendant. (See Dkt. No. 27). This Order considers both the Governor's and the Senate's defenses in this case.

7

1. <u>The Movants have failed to demonstrate a concrete and direct interest that is certain to be adversely affected by the outcome of this litigation</u>

"While the type of interest sufficient to sustain intervention as of right is not amenable to precise and authoritative definition, a putative intervenor must show at a bare minimum that it has a 'significantly protectable interest.'" <u>Suiza Dairy Inc. v. Rivero Cubano</u>, No. 04-CV-1840-DRD, 2005 WL 8159035, at *3 (D.P.R. Mar. 23, 2005) (quoting <u>Pub. Serv. Co. of N.H.</u>, 136 F.3d at 205). Its claims must bear a sufficiently close relationship to the "dispute between the original litigants" and the interest must be "direct, not contingent." <u>Conservation L. Found. of New England, Inc. v. Mosbacher</u>, 966 F.2d 39, 42 (1st Cir. 1992). Here, the Movants represent that in addition to having an interest in the environmental future of Puerto Rico, they have economic interests in the outcome of this lawsuit. SUN contends it has an interest in the enforcement of the Act 10 because its nullification might result in a decline in co-ops, resources for its Resiliency Hubs, and its capacity to disburse DOE funds. Sierra has members who would like to install solar rooftop systems and it argues that their ability to do so may be hindered if Act 10 is nullified and PREB changes the current benefits to net metering customers. While a putative intervenor's economic interests can serve as the protectable interest, to intervene as a matter of right, such interests cannot be "contingent on the uncertain outcome of later determinations[.]" <u>Mosbacher</u>, 966 F.2d at 43. That is the case here: the interests are contingent on an uncertain outcome of later determinations.

The instant litigation raises the issue of the authority of the Governor (and Legislature) to enact Act 10 and the manner in which it was enacted. This litigation will not resolve the issue whether the net metering program is appropriate, or whether it should be modified. In fact, currently, it is uncertain whether PREB/PREPA will propose any changes. There is no

8

certainty that the Movants' interests in the litigation will be adversely affected by the outcome of the case. Compare Mosbacher, 966 F.2d at 43-44 (court allows fishing groups to intervene in suit by public interest organizations seeking more extensive regulation by governmental agency: if plaintiffs prevail it was agreed that "fishing groups' economic interests will be substantially affected" and that "[t]he fishing groups seeking intervention are the real targets of the suit and are the subjects of the regulatory plan.").

"This is not a case in which ongoing litigation directly threatens an economic right or benefit enjoyed by any would-be intervenor." Patch, 136 F.3d at 205-06 (intervention in suit challenging reorganization plan for electric company denied where "would-be intervenors root their professed economic interest in an as yet unrealized expectancy of lower electric rates."). "[T]he fatally contingent nature of [a]n asserted economic interest" defeats intervention. Id. at 106. The Movants seek to intervene not because they bring anything new to the table with respect to whether Act 10 complies with PROMESA, but because the nullification of the Act may potentially cause them and their members economic harm. This is not enough to establish intervention as of right. See Mass. Food Ass'n v. Sullivan, 184 F.R.D. 217, 224 (D. Mass.), aff'd sub nom. Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560 (1st Cir. 1999) (fact that would-be intervenors members may have a different perspective not grounds for intervention where case involved legal issues and "different sets of facts or different perspectives on the part of the litigants will change little in the arguments before the court.").[8]

---

[8] Additionally, to the extent the Oversight Board is correct that Act 10 is invalid due to being inconsistent with PROMESA, the Movants have no legally protectable interest in what Act 10 provides. See, e.g., Bayou Lawn & Landscape Servs. v. Solis, No. 12-CV-183, 2012 WL 13118567,

9

2. <u>The existing defendants can adequately represent the Movants' interests</u>

The Oversight Board argues that the Governor adequately represents the interests of the Movants and that the Movants and the Governor share the same interest in that their goal is to ensure that Act 10 is implemented and enforced. (Resp. ¶ 25). The Movants argue that they will not be adequately represented by the Governor because the Governor has demonstrated a lack of consistent commitment to legislative mandates involving renewable energy which raises doubts that the Governor will vigorously defend Act 10. (Reply ¶¶ 32-34). Moreover, the Movants argue that the Governor and the Senate are "fighting for their prerogative to govern and legislate pursuant to their constitutional powers" while the Movants are "advocates for the **content of Act 10**." (<u>Id.</u> ¶ 36) (emphasis added). Lastly, the Movants note both that the Governor's pleading sets out only one brief defense, whereas the Movants raise various defenses addressing every point of the Oversight Board's filing and that the Movants raise unique defenses. (<u>Id.</u> ¶ 37).

When a prospective intervenor has the same ultimate goal as a party, "the prospective intervenor faces a presumption of adequacy" of representation, even if it has a more specialized interest. <u>United Nuclear Corp. v. Cannon</u>, 696 F.2d 141, 144 (1st Cir. 1982) (citing to <u>Moosehead Sanitary District v. S.G. Phillips Corp.</u>, 610 F.2d 49 (1st Cir. 1979)). To overcome that presumption, the putative intervenor "ordinarily must demonstrate adversity of interest, collusion, or non-feasance" and "must produce something more than speculation as to the

---

at *4 (N.D. Fla. June 11, 2012) ("Certainly they have no legally protectable interest in the implementation of invalid rules, the question of which is central to this law suit.").

10

purported inadequacy." Moosehead, 610 F.2d at 54.[9] The "'burden of persuasion is ratcheted upward' when the movant seeks to intervene as a defendant alongside a government entity." Victim Rts. L. Ctr. v. Rosenfelt, 988 F.3d 556, 561 (1st Cir. 2021) (quoting Patch, 136 F.3d at 207). See also T-Mobile Ne. LLC, 969 F.3d at 39-40 (affirming district court's determination that the movants failed to make a cognizable showing of inadequacy of representation when they shared same ultimate goal as government-defendant) (and cases cited). The fact that the proposed intervenor's motivation differs from that of the government, or that the proposed intervenor wants to raise different arguments is insufficient to render the government's representation inadequate. See Rosenfelt, 988 F.3d at 562 (and cases cited).

Here, the existing defendants seek to defend Act 10's legality both procedurally and as being consistent with PREPA's sustainable energy goals outlined in the Fiscal Plans and PREPA's Plan of Adjustment. The existing defendants argue that Act 10 is needed to ensure that the residents of Puerto Rico have access to low-priced solar power. (See Dkt. No. 28 (the "Governor's Answer") at 15; see, e.g., Dkt. No. 31, (the "Senate's Answer") ¶¶ 4, 8, 38, 42). Accordingly, the Court finds that the Defendants do in fact support the "content of Act 10" and that the interests of the proposed intervenors are being adequately represented by the governmental entities.

---

[9] Where existing defendants have defended the case vigorously and there is only "a logical possibility of divergence without any indication of actual divergence," this possibility "does not suffice for the purposes of intervention of right." Sullivan, 184 F.R.D. at 223. Here, both the Governor and the Senate have filed substantive pleadings including answers addressing a variety of issues, including those related to PROMESA and the contents of Act 10.

B. <u>Permissive Intervention under Rule 24(b)</u>

The Movants are also seeking permissive intervention under Rule 24(b). The Oversight Board argues, among other things, that permissive intervention should not be granted because the Movants' net metering interests will not provide insights into the discrete legal questions before the Court and because intervention would unduly complicate and derail the case. (Resp. ¶ 32). The Movants respond that they have shown a commitment to the calendar and have no intention to impede the swift resolution of the case. (Reply ¶¶ 39-40). For the following reasons, the Court finds that permissive intervention is not warranted.

Federal Rule of Civil Procedure 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court "enjoys very broad discretion" when weighing intervention under Rule 24(b) and is free to "'consider almost any factor rationally relevant' to the intervention determination." <u>T-Mobile Ne. LLC</u>, 969 at 40-41 (quoting <u>Daggett v. Comm'n on Gov't Ethics & Election Practices</u>, 172 F.3d 104, 113 (1st Cir. 1999)). In the instant case, of particular concern is "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). This consideration compels the conclusion that permissive intervention should be denied.

Where, as here, litigation involves complex and novel issues, the addition of parties is likely to complicate matters, even assuming that the case will be resolved at the summary judgment stage, and without additional discovery. Although the Movants profess a willingness to comply with the court-ordered schedule, their proposed pleadings include a request to stay the litigation and issues tangential to the core issue of whether Act 10 was appropriately

12

enacted. Requiring the Oversight Board to respond to such issues is, by definition, prejudicial. See Daggett, 172 F.3d at 113 (affirming district court's denial of intervention where "the district court made clear that it thought that the addition of still more parties would complicate a case that badly needed to be expedited" even though "applicants say with some force that there would be no disruption or delay[.]"); Pub. Serv. Co. of New Hampshire v. Patch, 173 F.R.D. 17, 29 (D.N.H. 1997), aff'd, 136 F.3d 197 (1st Cir. 1998) (denying both as of right and permissive intervention where defendant sought the same ultimate outcome of the litigation and intervention would add additional layers delaying adjudication).[10] "To introduce an additional party now—one which raises overlapping issues and is seeking the same ultimate result as the [existing defendants]—would prejudice Plaintiff[]." Tarpon Towers II, LLC v. City of Sylvania, 586 F. Supp. 3d 755, 758 (N.D. Ohio 2022) (denying both as of right and permissive intervention where the separate issues and interests raised by the movant where speculative and movant failed to demonstrate how its intervention would assist in the resolution of the case).

### 3. The Movants may file a joint omnibus amicus brief

The Oversight Board argues that, to the extent that the Court believes that it would benefit from briefing by the Movants with respect to the legal and factual issues at the heart of this case, granting leave to the Movants to file an amicus brief would most effectively achieve that goal. (Resp. ¶ 32 n.9). The Movants argue that "[w]hile participation as amicus curiae could provide a platform for SUN and Sierra Club to voice their concerns, it would not afford them the full rights and procedural tools necessary to protect their interests fully, as would

---

[10] In Patch, the court further held that it "might be willing to accept such delays if the efforts of the prospective intervenors could be expected to contribute to the just and equitable resolution of the issues at bar. However, this is not such a case." Id.

13

intervention." (Reply ¶ 45). As detailed above, the Movants have not established that full-party status is necessary to protect their indirect interests in this litigation. Accordingly, the Court will accept a joint omnibus amicus brief from the Movants on any summary judgment motion filed by the parties.

In the First Circuit, the acceptance of amicus briefs is within the sound discretion of the Court as "*amicus* participation may be appropriate in some circumstances and not others." United States v. Keleher, 475 F. Supp. 3d 80, 83 (D.P.R. 2020) (citing Strasser v. Doorley, 432 F.2d 567, 569 (1st Cir. 1970)). In situations like the present, where the Movants may offer different perspectives than the defendants, courts have determined that granting putative intervenors leave to file amicus briefs on any dispositive motion is sufficient. See, e.g., Walgreen Co. v. Feliciano de Melecio, 6 F. App'x 27, 2 (1st Cir. 2001) (affirming district court's intervention denial because "[t]he possibility that different legal arguments will be used does not constitute inadequate representation" and "indeed, appellants were granted permission to submit an amicus brief in which any such variations could be presented."); Mass. Food Ass'n, 197 F.3d at 568 (same); Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 807 F.3d 472, 477-78 (1st Cir. 2015) (same); Verizon New England v. Maine Pub. Utilities Comm'n, 229 F.R.D. 335, 338 (D. Me. 2005) (granting only amicus curiae participation because movants offered no evidence rebutting presumption of adequate intervention where movants' goals diverged somewhat from those of the public utility company defendant). Because the Movants represent individuals who may be affected by this Court's ruling on Act 10 and thereby have "a special interest that justifies [them] having a say" in this proceeding, the Court will grant leave to file an amicus brief. Strasser, 432 F.2d at 569. See also Vázquez Garced v. Fin.

Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 511 F. Supp. 3d 90, 138 n.38 (D.P.R. 2020) (granting amicus motion because movant showed that it has a special interest that justifies granting leave to file an amicus brief on motions for summary judgment). Accordingly, the Movants may file a joint omnibus amicus brief on any summary judgment motion filed by the parties.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED. The Movants, however, may file a joint omnibus amicus brief on any summary judgment motion filed by the parties. The joint omnibus amicus brief may not exceed fifteen (15) pages, exclusive of the cover page, tables of contents and authorities, signature page, exhibits, certificate of service, and other required certifications. The Movants shall use best efforts to avoid duplicating arguments that the Governor and Senate make in any motion for summary judgment that the Governor and Senate file. The brief shall be filed by **October 23, 2024 at 11:59 p.m**. **(Atlantic Standard Time).**

This Order resolves Dkt. No. 13.

SO ORDERED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

DATED: September 25, 2024

15