# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-4780-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant. | Adv. Proc. No. 24-00062-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (III) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**MOTION FOR SUMMARY JUDGMENT OF THE SENATE OF PUERTO RICO**

**TO THE HONORABLE COURT:**

**COMES NOW** Hon. José Luis Dalmau, in his official capacity as the President of the Senate of Puerto Rico (the "Senate"), by and through its undersigned counsel, and respectfully requests as follows:

**INTRODUCTION**

The Senate respectfully submits this Motion for Summary Judgment in response to the complaint filed by the Financial Oversight and Management Board for Puerto Rico ("FOMB").[2] In its complaint, the FOMB seeks to nullify Act 10-2024, a legislative enactment that merely extends the Puerto Rico Energy Bureau's ("PREB") timeline for conducting a study on the Net Metering Program and clarifies the protection of existing net metering customers. The FOMB asserts that Act 10 obstructs PREB's regulatory authority, undermines PREPA's fiscal plan, and violates the provisions of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"). It further equates the enactment of Act 10 to political interference, suggesting that the Legislature's role in crafting energy policy and regulating public utilities, including PREB, compromises the independence of these entities. By seeking to enjoin the Governor of Puerto Rico from implementing and enforcing Act 10 and any other law that is somehow related to the PREB, the FOMB effectively challenges the constitutional authority of the Puerto Rico Legislature – particularly the Senate – to legislate on critical public policy matters such as energy regulation. The Senate moves for summary judgment on the basis that the FOMB's claims are legally unfounded and contrary to the clear statutory language of Act 10, represent an overreach of its

---

[2] In the intervention order issued by this Court, the Senate was required to avoid duplicative filings and proceedings with the Governor. *See* Dkt. No. 27. Although the Senate reached out to the Governor through counsel, at the time of filing this Motion for Summary Judgment, the Senate has not received information as to the matters that will be covered by the Governor in his summary judgment papers, if any. The Senate makes a reservation of rights to supplement this motion if needed upon review of the Governor's filings.

statutory authority under PROMESA, and infringe upon the Senate's constitutionally protected legislative powers. There is no genuine issue of material fact, and the Senate is entitled to judgment as a matter of law.

## BACKGROUND

On October 21, 2022, Senate Bill 1064 ("S.B. 1064") was introduced by Senator Juan Zaragoza-Gómez, at the request of the environmental organization Sierra Club. *See Statement of Uncontested Material Facts* ("SUMF"), ¶ 1. Senators Gretchen Hau, Javier Aponte-Dalmau, Joanne Rodríguez-Veve, Migdalia González-Arroyo, Rubén Soto Rivera, and William Villafañe-Ramos acted as S.B. 1064's co-authors, showing the vast support received by the bill during the legislative process. SUMF, ¶ 4. The bill, which ultimately became Act 10, sought to amend Section 4 of Act 114-2007, known as the "Electric Power Authority Net Metering Program Act." SUMF, ¶ 2. The main purpose of S.B. 1064 was to extend the timeframe for the PREB to conduct a study on the Net Metering Program and distributed energy generation. The extension was requested to ensure that sufficient data could be collected before any formal review of the Net Metering Program could take place. SUMF, ¶¶ 2-3.

After its introduction, S.B. 1064 was referred to the Senate's Committee on Strategic Projects and Energy, chaired by Senator Javier Aponte Dalmau. SUMF, ¶ 5. Following extensive consultation with key stakeholders, including the Solar and Energy Storage Association of Puerto Rico (SESA), LUMA Energy LLC, the PREB, and others, the committee rendered a positive report on June 24, 2023, recommending passage of the bill with amendments. SUMF, ¶¶ 5-6. Notably, the PREB did not oppose S.B. 1064. Instead, the PREB recognized that deferring the study on net metering could benefit the net metering program and distribution. SUMF, ¶ 7. However, because it understood that a benefit could be obtained from having a specific date for conducting the net

metering study, the PREB suggested "to reach consensus as to the date on which the study should be carried out, based on the different contributions, suggestions and recommendations from all sectors, including industry and the Puerto Rican people." SUMF, ¶ 8.

On June 25, 2023, the Senate unanimously approved S.B. 1064, with 26 votes in favor. SUMF, ¶ 9. The bill then moved to the House of Representatives, where it was referred to the House Committee on Economic Development, Planning, Telecommunications, Public-Private Partnerships, and Energy. After a minor amendment and reconsideration process, the House approved the bill on October 24, 2023. SUMF, ¶¶ 10-11. On November 8, 2023, the Senate concurred with the House's amendments, and S.B. 1064 was signed into law by Governor Pedro Pierluisi Urrutia on January 10, 2024, becoming Act 10-2024. SUMF, ¶¶ 12-13. The core purpose of Act 10 was to amend Articles 4 and 9 of Act 114-2007 by deferring the PREB's study of the Net Metering Program until no earlier than January 2030.

The legislative process for S.B. 1064 involved multiple stakeholders, and its passage reflected broad bipartisan support in both chambers of the Puerto Rican Legislature. The sole substantive change introduced by Act 10 was to delay the commencement of the study, ensuring that the Net Metering Program would continue as previously structured until a comprehensive review could be conducted. Despite this, the FOMB filed the lawsuit with the purpose of annulling Act 10 under the argument that it has a negative impact on PREPA's fiscal plan. The truth of the matter, however, is that Act 10 reflects the public policy decisions of the Legislature of Puerto Rico in energy matters and this lawsuit is the FOMB's blatant attempt to unduly interfere with the Legislature's constitutional power to regulate future energy public policy matters. For the reasons set forth below, the Court must dismiss the FOMB's complaint summarily.

## **SUMMARY JUDGMENT STANDARD**

4

Summary judgment is appropriate if there is no genuine issue as to any material facts and the undisputed facts show that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010). "An issue of fact is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party. […] A fact is 'material' if its existence or nonexistence has the potential to change the outcome of the suit." *Borges ex rel. S.M.B.W.*, 605 F.3d at 4-5 (internal quotations omitted). Accordingly, the moving party bears the two-fold burden of showing that "no genuine issue exists as to any material facts," and that the movant is "entitled to judgment as a matter of law." *Vega-Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir. 1997). Once a supported motion has been presented before the court, the opposing party "can shut down the machinery only by showing that a trial-worthy issue exists." *McCarthy v. Northwest Airlines*, 56 F.3d 313, 315 (1st Cir. 1995). To this end, the non-moving party may not rely merely on allegations or denials in its own pleading; rather, it must set out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Gautier Rodriguez v. Mason Technologies, Inc.*, 931 F. Supp. 114, 116 (D.P.R. 1996). The applicable standard favors a summary judgment in favor of the Senate for the following reasons.

## ARGUMENT

### A. The complaint is an undue infringement of the Senate's constitutional powers

The Constitution of Puerto Rico expressly vests legislative power in the Legislative Assembly, comprised of the Senate and the House of Representatives. It states that "[t]he legislative power shall be vested in a Legislative Assembly, which shall consist of two houses, the Senate and the House of Representatives whose members shall be elected by direct vote at each general election." CONST. PR Art. III § 1. In turn, "[e]very bill which is approved by a majority of

5

the total number of members of which each house is composed shall be submitted to the Governor and shall become law if he signs it or if he does not return it, with his objections, to the house in which it originated within ten days (Sundays excepted) counting from the date on which he shall have received it." CONST. PR Art. III § 19. In addition, "the Legislative Assembly [must] create, reorganize and consolidate executive departments and [ ] define their functions." CONST. PR Art. IV § 6. The Constitution of Puerto Rico, thus, provides for a clear separation of powers between the executive and legislative branches. "[T]he separation of powers that stems from the Constitution is not merely a matter of convenience or governmental mechanism," but a fundamental principle of Puerto Rico's democratic principles. *Colón Cortés v. Pesquera*, 150 D.P.R. 724,752 (P.R. 2000); 2000 P.R.-Eng. 424,713 (P.R. Offic. Trans.).

The Legislature created the PREB and the Net Metering Program using the constitutional powers conferred upon it. The PREB was created by the Puerto Rico Legislature in virtue of Act No. 57-2014, as amended, 22 L.P.R.A. §§ 1051-1054 ("Act 57"). Its creation responded to the Legislature's legitimate constitutional exercise of establishing Puerto Rico's public policy on energy issues. The PREB holds such importance to the Legislature's public policy on energy issues that Act 57's Statement of Motives specifically states that:

> [t]his Legislative Assembly understands that there is a compelling need to take immediate action to improve our electrical system through the creation of a specialized regulatory entity with the resources and expertise needed to supervise this effort. **The Energy Commission shall be subject to the Legislative Assembly's strict scrutiny in order to ensure that it fully complies with its duties and responsibilities**. If the Commission properly carries out its mandate, the Legislative Assembly may consider attaching or merging it with other public utilities regulatory commissions already existing in the Island.

Act 57, Statement of Motives (emphasis ours).

6

Similarly, the enactment of Act 10 is a legitimate exercise of the Senate's constitutionally mandated legislative authority. Act 10 maintains unaltered the Puerto Rico Net Metering Program for the time being and places reasonable limits on the PREB regarding the regulation of net metering until 2030. The PREB, as a creature of the Legislative Assembly established by Act 57, exists to implement the public policy defined by the Legislature, particularly in the realm of energy regulation. As the body charged with setting public policy, the Senate retains the constitutional authority to oversee and amend the laws that govern PREB's operations. Any administrative body created by the Legislature, including PREB, is subject to legislative oversight and modification through the enactment of laws. *See* CONST. PR Art. IV § 6 ("The Legislative Assembly [must] create, reorganize and consolidate executive departments and [ ] define their functions."); *see also Muñoz Barrientos v. Estado Libre Asociado de Puerto Rico*, 212 D.P.R. 714, 723 (2023).[3]

The complaint filed by the FOMB directly challenges this constitutionally protected authority by attempting to nullify Act 10. In doing so, the FOMB not only seeks to prevent the Governor from enforcing legislation duly passed by the Legislative Assembly, but also infringes on the Senate's constitutionally mandated power to legislate over public policy issues. Specifically, the FOMB requests an injunction to permanently preclude the Governor from "enacting, implementing, and enforcing laws that restrict or compel action by the Energy Bureau", Dkt. No. 1 at 25, ¶ E, – a request that fundamentally disrupts the Senate's role in overseeing and regulating administrative bodies, such as PREB. To establish – as the FOMB intends – that the PREB becomes an entity untouchable by the Legislature – immune to all oversight except the FOMB's – violates the most basic principles of separation of powers, according to which public

---

[3] "By virtue of [the Constitution], 'the Legislature has delegated to administrative agencies attached to the Executive Branch a number of powers, either through the agency's organic law or through special laws.'" *Muñoz Barrientos v. Estado Libre Asociado de Puerto Rico*, 212 D.P.R. 714, 723 (2023) (Translation ours.)

policy is established by the Legislature through legislation and implemented by the Governor only *after* the Legislature has acted. To put it bluntly, behind the FOMB's supposed interest in protecting the PREB from political influence, what we find is an attempt to stop the Legislature from setting Puerto Rico's public policy on energy issues. One must then question if what the FOMB actually seeks is to control the PREB, so that it acts in accordance with the FOMB's own economic interests, not the public policy developed by the Legislature in response to the needs of Puerto Ricans. However, the FOMB cannot legitimately remove the Legislature from the equation as far as the PREB is concerned, because PREB is a legislative creature over which – by constitutional provision – the Legislature may legislate. *Id*.

Furthermore, the FOMB's characterization of the Senate's legislative actions as "political interference" fails to recognize the legitimate legislative function of the Senate in overseeing public utilities and administrative agencies. In this case, the legislative record shows a serious and pondered analysis, with ample participation of different stakeholders. It also shows that the PREB did not oppose S.B. 1064 and that the Senate considered and included the PREB's comments as part of the legislative process. Thus, the FOMB's characterization of the legislative actions here at stake are completely unfounded. Moreover, the Puerto Rico Constitution makes clear that the Legislature's role in public policy is not only appropriate, but constitutionally mandated. The Legislature's enactment of Act 10 reflects its authority to amend, update, and direct energy policy in Puerto Rico. The relief sought by the FOMB violates the separation of powers doctrine, as the FOMB seeks to remove the Legislature's ability to enact laws that govern PREB, an executive department whose very existence and authority are derived from the Legislature's constitutional power.

8

The FOMB's complaint, if granted, would permanently undermine the Senate's ability to legislate in matters concerning energy policy and public utilities. This includes the ability to amend or alter the regulatory framework governing PREB. Any such action would effectively render the Senate's legislative powers null and create an unconstitutional imbalance between the legislative and executive branches, as it seeks to strip the Senate of its role in defining public policy on energy matters for the Commonwealth. Since the Senate's constitutional authority to legislate, particularly in areas of public policy like energy, is clear and inviolable, the FOMB's attempt to enjoin the Senate from legislating on matters affecting the PREB poses a direct threat to the principle of separation of powers that governs the Commonwealth of Puerto Rico. Therefore, the complaint should be dismissed as an undue infringement of the Senate's constitutional powers.

B. **The changes introduced by Act 10**

Act 10 made only minimal changes to the existing legislative framework established by Act 17-2019 and Act 114-2007, specifically regarding the timeline for conducting a study on the Net Metering Program. Contrary to the claims made by the FOMB, the only substantive modifications involved **extending the timeline** for the study.

Section 3.4 of Act 17-2019 established the foundation for the PREB to conduct a detailed study evaluating the costs and benefits of Puerto Rico's Net Metering Program. This study was required to be completed within five years of the effective date of Act 17-2019 (in April 2024), and would serve as the basis for determining any future changes to the program. The scope of this study, as outlined in Act 17-2019, included evaluating net metering, distributed generation technologies, energy storage systems, and other factors essential to Puerto Rico's energy landscape. *See* Act 17-2019, § 3.4 at Dkt. No. 1-6, Pp. 69-70. Act 10 amended this provision solely by reformulating the timeframe for the study. Specifically, the amendment under Act 10 extended

9

the initiation of the study to no earlier than January 2030. This extension provided additional time for gathering data and analyzing the performance of the net metering system under the existing framework before any formal changes could be considered. The text of Act 10, in relevant part, reads: "[t]he study shall commence no earlier than January 2030, shall be subject to public comment, and shall take into consideration the following factors: energy generation costs, the value of capacity, transmission and distribution costs, the losses prevented in the system, and the environmental compliance costs avoided." *See* Act. 10-2024, § 1 at Dkt. No. 1-7, p. 3.

Thus, the effect of Act 10 was to extend the timeline for initiating a formal review of the Net Metering Program. This extension allows the program to continue as currently structured for an additional period, delaying any significant changes or reconfigurations of the compensation mechanisms and other regulatory aspects of the program. The allegations made by the FOMB that Act 10 somehow introduces material changes to the fiscal or operational framework of Puerto Rico's energy policy are unfounded. Act 10 is a narrowly tailored amendment that merely provides more time for stakeholders to prepare for the review process, while ensuring the continuation of the current Net Metering Program until the study is completed and the PREB issues any new determinations based on its findings. The study and any resulting regulatory modifications remain under the exclusive purview of the PREB, as originally established by Act 17-2019.

By extending the timeline for the study, Act 10 did not introduce any substantive alterations that would affect the economic structure of Puerto Rico's energy policies or the rights of current net metering participants. It ensured that any future changes to the Net Metering Program would be based on a thorough and well-considered review, allowing sufficient time for the PREB to assess the evolving energy landscape. The legislative intent behind Act 10 aligns with the broader energy policy goals articulated in Act 17-2019, which emphasize a transition to renewable energy,

10

sustainability, and resilience. By extending the study's timeline, Act 10 allows the PREB to gather more comprehensive data on the benefits and challenges associated with net metering and distributed generation. This additional time supports informed decision-making, ensuring that future adjustments to the Net Metering Program reflect the evolving energy landscape and the growing importance of renewable energy technologies in Puerto Rico.

In conclusion, the only change introduced by Act 10 was the extension of the study commencement date to 2030. This amendment does not alter the functioning of the Net Metering Program or its fiscal implications. Hence, the FOMB's complaint is based on a mischaracterization of the law's impact. Act 10 preserves the existing framework and provides more time for careful study and analysis. These minimal adjustments do not support the claim that Act 10 imposes any significant financial or operational burdens on the energy system or the fiscal plan, as alleged by the FOMB.

### C. **PROMESA does not authorize the FOMB to interfere with the Senate's non-economic policy**

PROMESA was created as a fiscal oversight mechanism, designed to assist Puerto Rico in restructuring its debt and restoring economic health. The FOMB was established under PROMESA with the specific and limited purpose of addressing the fiscal crisis in Puerto Rico and ensuring fiscal responsibility and access to capital markets. PROMESA § 101 explicitly states that the FOMB's role is to oversee the development of fiscal plans and budgets that are necessary to achieve these financial goals. PROMESA § 201 outlines the specific responsibilities of the FOMB, all of which revolve around the approval of fiscal plans and budgets that aim to ensure the territory's fiscal stability. These responsibilities include ensuring that essential public services are funded, pension systems are supported, and that Puerto Rico can regain access to capital markets. PROMESA § 204 requires the Governor to submit laws to the FOMB for review only if those laws

11

have a significant impact on the budget or fiscal plan. This provision underscores the fact that the FOMB's jurisdiction is limited to fiscal matters, not the overall legislative process or general policymaking by the Puerto Rican Legislature. PROMESA's focus is unambiguously financial in nature, dealing with economic governance, debt restructuring, and fiscal accountability.

Nowhere in the text of PROMESA is the FOMB granted the authority to interfere in non-economic public policy matters that do not directly affect the fiscal stability of Puerto Rico. Indeed, there is no authorization within PROMESA that allows the FOMB to dictate or override legislative decisions that pertain to public policy issues unrelated to the territory's financial recovery. Just the opposite: section 303 of PROMESA expressly reserves the power of Puerto Rico's government to control its territory and territorial instrumentalities. It states that PROMESA "does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory." This section ensures that the Commonwealth government retains control over non-economic matters, preserving its authority to govern without interference from the FOMB in areas outside of fiscal concerns.

This Court addressed the limits of the FOMB's authority in *In re Financial Oversight and Management Board for Puerto Rico*, 583 B.R. 626 (D.P.R. 2017). There, the Court held that the FOMB does not have the power to unilaterally displace a statutorily created management structure, even within a government entity like PREPA, which is directly involved in fiscal matters. This Court made it clear that PROMESA does not grant the FOMB the authority to override Puerto Rican law or assume roles beyond fiscal oversight.

> Based on its careful review of PROMESA, and after consideration of the parties' arguments, the Court finds that there is no express provision within PROMESA and its incorporated Bankruptcy Code provisions, nor any inferential grant of power, that authorizes the

12

> FOMB to impose changes in structure or reporting lines within PREPA by appointing a CTO, or to exercise the authority of a chief executive officer, much less to delegate that authority to an agent of the FOMB. The structure established by Titles I and II, alongside the reservation of territorial power in section 303, requires the FOMB and the territorial government to work together to establish a fiscally responsible path forward that is acceptable to the FOMB. Congress might have chosen to make the FOMB's job easier in the short term by granting it direct control and disabling the Commonwealth government's ability to dissent, but it did not do so. Congress deliberately divided responsibility and authority between the two.

*Id*. at 636. Hence, the FOMB cannot interfere with non-fiscal legislation such as Act 10. The FOMB's authority is constrained by the provisions of PROMESA and it cannot exceed its fiscal mandate to involve itself in matters of public policy or governance unless those matters directly impact the fiscal plan.

Act 10 represents a public policy decision by the Puerto Rico Legislature concerning energy regulation, specifically the timeframe for the PREB to initiate a study of the Net Metering Program. This legislation reflects a policy judgment made by the elected representatives of Puerto Rico regarding how to best regulate and promote renewable energy within the Commonwealth. It is a classic example of non-economic public policy, aimed at regulating the energy sector for broader environmental and societal benefits rather than for the purposes of fiscal management. As such, it lies outside the scope of PROMESA's mandate. The FOMB's complaint seeks to nullify Act 10 on the grounds that it interferes with PREPA's fiscal plan. However, this argument fails because Act 10, by its nature, is a policy decision that primarily concerns energy sustainability and consumer protection, not fiscal matters. Although the FOMB argues that Act 10 could have indirect economic impacts on PREPA's revenues, the potential economic effects of a public policy decision do not transform that decision into a fiscal action under PROMESA. The FOMB's mandate does not extend to controlling or invalidating non-economic public policy decisions of

13

the elected Legislature, particularly when those decisions do not directly impede Puerto Rico's fiscal recovery. The FOMB's attempt to interfere with Act 10 constitutes an overreach of its statutory authority under PROMESA. By challenging legislation that falls within the domain of public policy, the FOMB is stepping outside of its assigned role as a fiscal overseer and attempting to assume powers that belong to the Puerto Rican Legislature. Such interference not only contradicts the express language of PROMESA but also violates the principles of federalism and self-governance preserved in the U.S. Constitution and the Puerto Rican Constitution.

Furthermore, there is no evidence that Act 10 meaningfully interferes with PREPA's fiscal plan. The only substantive modification introduced by Act 10 involves extending the timeframe for PREB's study on the Net Metering Program. Any potential fiscal impacts on PREPA are speculative at best. The law was passed after extensive deliberation and input from multiple stakeholders, including the PREB, and does not violate any certified fiscal plan. In fact, Act 10 aligns with the broader goals of promoting sustainable energy and reducing reliance on costly and polluting energy sources, which can have long-term economic benefits for the island.

In conclusion, PROMESA does not authorize the FOMB to interfere with the Senate's legislative actions when those actions pertain to non-economic policy matters. Act 10 is a valid exercise of the Senate's legislative authority over public policy, and the FOMB's attempt to nullify it represents an overreach of its statutory authority. The FOMB's involvement in non-fiscal matters, particularly those that do not affect the certified fiscal plan, exceeds its statutory authority and violates the principles of self-governance that PROMESA seeks to preserve. The FOMB simply cannot extend its reach beyond its fiscal mandate. *In re Financial Oversight and Management Board for Puerto Rico*, 583 B.R. at 636. Therefore, the FOMB's attempt to invalidate Act 10 should be rejected as an overreach of its statutory authority under PROMESA.

## **CONCLUSION**

For the reasons set forth above, the Senate respectfully submits that the FOMB's complaint is legally unfounded and constitutes an overreach of its statutory authority under PROMESA. Act 10, which merely extends the PREB's timeframe for conducting a study on the Net Metering Program, is a valid exercise of the Legislature's constitutional authority to legislate on matters of public policy, particularly in the area of energy regulation.

PROMESA's purpose is to address Puerto Rico's fiscal crisis. The statute does not grant the FOMB authority to interfere with non-fiscal matters, especially those that fall under the Legislature's power to govern public policy. Act 10 does not alter the fiscal structure of PREPA or the energy sector. Rather, it defers a study to ensure more informed policymaking in the future. The FOMB's attempts to nullify this legislation represent an undue infringement on the Senate's constitutionally protected legislative powers and an improper expansion of the FOMB's authority beyond its fiscal mandate. Furthermore, PROMESA was enacted to promote fiscal responsibility, but it expressly reserves the right of Puerto Rico's government to legislate in non-fiscal areas. By seeking to enjoin Act 10, the FOMB undermines this balance of power and the fundamental principle of separation of powers enshrined in both the Puerto Rican and U.S. Constitutions. The Senate's actions in enacting Act 10 were not only within its authority but also based on sound policy aimed at fostering the long-term sustainability of Puerto Rico's energy system.

Therefore, the Court should grant this motion, dismiss the FOMB's complaint, and uphold the Senate's right to legislate on non-fiscal matters, free from unwarranted interference by the FOMB.

WHEREFORE, the Senate of Puerto Rico respectfully requests that this Court enter summary judgment in its favor and dismiss the complaint filed by the Financial Oversight and Management Board.

### CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record to their registered e-mail addresses. Any non-registered attorneys and/or parties will be served via regular mail.

In San Juan, Puerto Rico this 25th day of September, 2024.

**RESPECTFULLY SUBMITTED.**

**QUIÑONES & ARBONA, PSC**
PO Box 10906
San Juan, Puerto Rico 00922
☎ Tel.787-620-6776
📠 Fax. 787-620-6777

**S/ EDWIN QUIÑONES-RIVERA**
USDC-PR No. 124305
E-mail: equinones@qaclaw.com

*Attorneys for intervenor, Senate of Puerto Rico and its President, Hon. Jose Luis Dalmau Santiago, in his official capacity as President of the Senate of Puerto Rico.*