UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtor.[1] | **PROMESA<br>Title III**<br><br>**No. 17 BK 3283-LTS<br>(Jointly Administered)** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | **PROMESA<br>Title III**<br><br>**No. 17 BK 4780-LTS<br>(Jointly Administered)** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566- LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

|  |  |
|---|---|
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    Plaintiff-Movant,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico; and HON. JOSE LUIS DALMAU, in his official capacity as President of the Senate of Puerto Rico.<br><br>    Defendants-Respondents. | **Adv. Proc. No. 24-00062-LTS** |

**DECLARATION OF ROBERT F. MUJICA, JR. IN SUPPORT OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO BANKRUPTCY RULE 7056**

I, Robert F. Mujica, Jr., hereby declare:

1. I am the Executive Director of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board").  I submit this Declaration based on personal knowledge, except where otherwise indicated, in respect of the Oversight Board's Complaint in the above-captioned adversary proceeding.

## PREPA AND THE ENERGY BUREAU

2. The Puerto Rico Electric Power Authority ("PREPA") is the sole electric utility provider for Puerto Rico.

3. PREPA is plagued by serious financial and operational difficulties, resulting in a poorly functioning electrical system that fails to serve adequately the people of Puerto Rico and impedes the recovery of Puerto Rico's economy.  PREPA's customers pay substantially more for electricity than the average ratepayer in the mainland United States and they experience many more service interruptions than the median stateside customer.

4. The Oversight Board recognizes that Puerto Rico's economic recovery depends on a comprehensive transformation of its energy sector to deliver the safe, reliable, and affordable service that Puerto Rico's residents and businesses deserve.  Accordingly, one of the Oversight Board's key priorities is comprehensive energy sector reform to enable a successful transformation of PREPA.

5. PREPA was designated by the Oversight Board as a covered territorial instrumentality pursuant to PROMESA § 101(d).  A true and correct copy of a document memorializing the Oversight Board's designation of PREPA as a covered territorial instrumentality is attached hereto as Exhibit 1.

6. The Oversight Board certified the most recent fiscal plan for PREPA on June 23, 2023 (the "PREPA Fiscal Plan"), a true and correct copy of which is attached hereto as Exhibit 2.

7. The PREPA Fiscal Plan details PREPA's current challenges, the impact those issues have on the people of Puerto Rico and the Island's economy, and focuses on the rehabilitation of both PREPA's financial position and its operations.

8. As the PREPA Fiscal Plan notes, many of PREPA's challenges are due to the fact that decisions about the management of the Puerto Rican grid have historically been subject to political influence and instability, leading to high management turnover, discontinuity in capital investment plans, electric customer rates that were insufficient to cover operating and maintenance costs, and the mounting costs of debt service. PREPA's politicized decision-making resulted in it issuing more debt to cover current debt service rather than setting rates at a level sufficiently high to support its costs, operating under a fiscal deficit since the early 2000s, and historically underinvesting in its electrical grid, resulting in reliability metrics drastically lower than other electric utilities in the United States.

9. Accordingly, the Oversight Board's fiscal plans for the Commonwealth and PREPA have recognized the importance of PREPA being regulated by an independent, professional, regulator insulated from political interference, and mandate that the work of that regulator, the Puerto Rico Energy Bureau (the "Energy Bureau"), be free from any political influence or interference. True and correct copies of the 2019 PREPA Fiscal Plan, the 2020 PREPA Fiscal Plan, the October 2018 Commonwealth Fiscal Plan, the 2021 Commonwealth Fiscal Plan, the 2023 Commonwealth Fiscal Plan, and the 2024 Commonwealth Fiscal Plan are attached hereto as Exhibits 3 through 8.

## NET METERING

10. PREPA's net metering program provides a method for customers who generate their own electricity to export their excess electricity to PREPA. Currently, the electricity those

4

customers export to PREPA offsets on a one-to-one basis the electricity they consume from PREPA. Customers who export the same or more electricity to the grid than they consume from PREPA are charged only PREPA's monthly service fee; in other words, their consumption or volumetric charges are zero. The structure of the current net metering program has been in place since 2007. Net metering has many positive effects, including reducing pollutants and greenhouse gases emitted from PREPA's fossil fuel based generating units, as well as positive contributions to the achievement of Puerto Rico's renewable energy goals. However, if not calibrated correctly, a net metering system could create greater inequality among customers. For example, it could lead to significant costs shifts, where non-net metering customers (who may not have the funds to obtain solar panels or live in structures such as multiunit dwellings or urban areas that are not conducive to solar energy generation) essentially subsidize the costs of a utility's fixed costs for net metering users. Further, because the cost of energy transmission is recouped by PREPA's volumetric (*i.e.*, usage) charges, those charges are borne disproportionately by non-net metering customers because net metering customers' volumetric charges are discounted by the energy they expert to the system. With these complicated and competing considerations, determining whether to maintain or modify Puerto Rico's current net metering program involves balancing many important, complex financial and policy factors. It is important that the Energy Bureau assess all of these factors and adjust, as necessary, the program to ensure it is structured optimally for PREPA's operations and fiscal health.

11.     Pursuant to Act 17-2019 ("Act 17"), the Energy Bureau was required to study PREPA's net metering program and was empowered to make changes to that program beginning on April 11, 2024.

12.     The PREPA Fiscal Plan recognizes the importance of this study and for the Energy

5

Bureau to implement changes to the net metering program it deems appropriate, if any. Accordingly, the PREPA Fiscal Plan required the Energy Bureau to finalize the Act 17 net metering and distributed generation study, by June 30, 2023 and make changes to the crediting structure it deems appropriate, if any, by April 11, 2024.

13. The Energy Bureau began work to prepare the Act 17 study in 2023, including engaging a consultant.

14. A draft of the study was completed in June 2024. The Energy Bureau authorized the study's publication on June 14, 2024; however, the Energy Bureau did not publish the study pursuant to Act 114, as amended by Act 17—because Act 10, enacted earlier that year, prohibited commencing that study until January 2030—and instead published it pursuant to its "broad delegated powers and duties" under Act 57-2014. A true and correct copy of the Draft Study and the Spanish-language Energy Bureau resolution authorizing its publication are attached hereto as Exhibit 9.

### ACT 10-2024

15. On February 12, 2024, the Oversight Board received a submission (the "Submission") on behalf of the Governor regarding Act 10, which consisted of: (*i*) a Spanish-language copy of Act 10; (*ii*) a document titled "Section 204(a) Certification, Act 10-2024, Enacted on January 10, 2024" prepared by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF," by its Spanish acronym) (the "AAFAF Certification"); (*iii*) Attachment A to the AAFAF Certification (the "OMB Attachment") prepared in Spanish by the Puerto Rico Office of Management and Budget ("OMB"); and (*iv*) Attachment B to the AAFAF Certification (the "Treasury Attachment") prepared in Spanish by the Puerto Rico Department of Treasury ("Treasury Department"). True and correct copies of these documents are attached hereto as

6

Exhibits 10 through 13.

16. In a letter dated June 16, 2023, AAFAF confirmed to the Oversight Board that, per the terms of Executive Order 2019-057 (the "Executive Order"), it does not conduct formal estimates for PROMESA § 204(a) purposes, stating that "Treasury and OMB conduct the cost estimate analysis because those entities (not AAFAF) have the best information and expertise to determine a new law's effects on Government expenditures and revenues." A true and correct copy of the June 16, 2023 Letter is attached hereto as Exhibit 14.

17. The Oversight Board reviewed the Submission and found that it failed to meet the requirements of PROMESA § 204(a).

18. In a letter dated April 10, 2024, the Oversight Board provided AAFAF, the Governor, and the Legislature with its assessment of the Submission and, pursuant to PROMESA § 204(a)(3)(A–B), a notification that the Governor had not provided the required formal estimate and certification. A true and correct copy of the April 10, 2024 Letter is attached hereto as Exhibit 15.

19. In that letter, pursuant to PROMESA § 204(a)(4)(A), the Oversight Board directed the Governor to submit a revised submission, including a formal estimate and a certification in compliance with the requirements of PROMESA § 204(a)(2), by April 19, 2024. The Oversight Board also requested confirmation by April 15, 2024, that the Government would repeal or amend Act 10 and further requested a "concrete plan and timeline for doing so."

20. AAFAF responded to the Oversight Board's April 10, 2024 letter in a letter dated April 15, 2024. In that letter, AAFAF stated it would "assess[] any potential changes to the [Section] 204 Submission, or to Act 10, (if any) that may be warranted in order to implement [Act 10] in a manner not significantly inconsistent with PREPA's Certified Fiscal Plan" and requested

7

the Oversight Board "provide" an unspecified amount of "additional time" to conduct its assessment. A true and correct copy of AAFAF's April 15, 2024 letter is attached hereto as Exhibit 16.

21. The Oversight Board responded to AAFAF's April 15, 2024 letter in a letter dated May 2, 2024, in which it, among other things, reiterated its concerns and noted that AAFAF's letter did not "resolve the issues raised by the Oversight Board" regarding Act 10. In that letter, the Oversight Board requested the Governor "take immediate action and work with the [Legislature] to repeal or amend Act 10 to restore [the Energy Bureau's] full statutory oversight over Puerto Rico's energy system." The Oversight Board requested that such "legislation to repeal or amend" the provisions of Act 10 "be introduced in the Legislature no later than May 7, 2024"—the last day to introduce legislation for consideration in the then-current legislative session—"and enacted no later than June 30, 2024" to "restore [the Energy Bureau's] full statutory oversight over Puerto Rico's energy system." The Oversight Board offered to "work with" the Government to "ensure the issues with Act 10 are fully resolved." A true and correct copy of the May 2, 2024 letter is attached hereto as Exhibit 17.

22. In a letter dated May 7, 2024, AAFAF responded to the Oversight Board, requesting that the Legislature be given "additional time within the current legislative session that ends on June 30, [2024] to consider the Oversight Board's objections, engage in discussions and address potential amendments to Act 10 through the legislative process" and "gather industry feedback" in order to make an "informed decision regarding Act 10." A true and correct copy of AAFAF's May 7, 2024 Letter is attached hereto as Exhibit 18.

23. As of September 25, 2024, no legislation has been passed repealing or amending Act 10.

8

24. As of September 25, 2024, the Governor has made no additional submissions pursuant to PROMESA § 204(a) with regard to Act 10. Accordingly, he has failed to comply with the Oversight Board's direction, given on April 10, 2024 pursuant to PROMESA § 204(a)(4), to provide a compliant formal estimate and certification for Act 10.

### THE OVERSIGHT BOARD'S PROMESA § 108(a)(2) DETERMINATIONS

25. After Act 10's enactment, the Oversight Board and its advisors examined the law.

26. On April 5, 2024, based on its review and analysis, the Oversight Board determined Act 10 impairs or defeats PROMESA's purposes of achieving fiscal responsibility and access to capital markets for multiple independent reasons. A true and correct copy of the Oversight Board's April 5, 2024 Resolution (the "April Resolution") is attached hereto as Exhibit 19.

27. The Oversight Board informed the Governor, Senate President, and Speaker of the House of Representatives of its April 5, 2024 determination and concerns regarding Act 10 in a letter dated April 8, 2024. A true and correct copy of that letter is attached hereto as Exhibit 20.

28. The Oversight Board issued a corrected version of its April 8, 2024 correspondence on April 10, 2024, adding additional detail regarding Act 10's inconsistency with the PREPA and Commonwealth Fiscal Plans and providing the Governor more time to respond.

29. On June 5, 2024, the Oversight Board certified the 2024 Commonwealth Fiscal Plan. Ex. 8.

30. The 2024 Commonwealth Fiscal Plan includes similar provisions to the 2023 Commonwealth Fiscal Plan regarding the need for the Energy Bureau to operate independently and without political interference.

31. On June 21, 2024, the Oversight Board again determined that Act 10 impairs or defeats the purposes of PROMESA for the same reasons set forth in the April Resolution but taking into account the certification of the 2024 Commonwealth Fiscal Plan and the Governor's violations of PROMESA § 204(a), and memorialized its decision in a separate resolution approved that same day (the "<u>June Resolution</u>"). A true and correct copy of the June Resolution is attached hereto as Exhibit 21.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: September 25, 2024 in San Juan, Puerto Rico.

_____
Robert F. Mujica, Jr.