# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br>Case No. 17-BK-4780-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant. | Adv. Proc. No. 24-00062-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (III) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

<u>**THE SENATE'S OPPOSITION TO PLAINTIFF'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

**TO THE HONORABLE COURT:**

**COMES NOW** Hon. José Luis Dalmau, in his official capacity as the President of the Senate of Puerto Rico (the "Senate"), by and through its undersigned counsel, and respectfully requests as follows:

## I.     INTRODUCTION

The Financial Oversight and Management Board for Puerto Rico ("FOMB") filed the instant action against the Governor of Puerto Rico (the "Governor") seeking to nullify Act 10-2024 ("Act 10"). *See* Dkt. No. 1. The Senate was granted permissive intervention and filed its motion for summary judgment, in compliance with this Court's scheduling order. *See* Dkt. No. 42. The FOMB filed its own motion for summary judgment, arguing that Act 10-2024, which extends the timeline for the Puerto Rico Energy Bureau ("PREB") to conduct a study on the net metering program ("Act 10), impairs and defeats the purposes of PROMESA by allegedly conflicting with the Commonwealth's and PREPA's Fiscal Plans. The FOMB claims that the enactment of Act 10 undermines PREPA's financial stability, disrupts the fiscal plan's execution, and was passed without the required fiscal impact certification under PROMESA § 204(a). Based on these arguments, the FOMB seeks to nullify Act 10 under PROMESA § 108(a), asserting that its decision is insulated from judicial review under the *ultra vires* standard. In the alternative, the FOMB contends that its decision should be upheld under the arbitrary and capricious standard. Because the FOMB asserts that there are no material facts in dispute, and that the fiscal consequences of Act 10 are clear and detrimental to the Commonwealth's recovery efforts, it seeks a summary judgment in its favor finding that Act 10 is null.

The FOMB's motion for summary judgment should be denied because there are genuine disputes of material facts, and the FOMB's legal arguments rest on misapplications of statutory authority. First, as the Senate's Response to the FOMB's Statement of Uncontested Material Facts ("Response to SUMF") shows, there are important controversies of fact – specifically as to the consequences of Act 10 and the financial impact of net metering, among others – that exclude the possibility of issuing a summary judgment in this case. Second, the FOMB argues that its § 108(a) determination, which nullifies Act 10, should be reviewed under the *ultra vires* standard, meaning that the Court should determine whether the FOMB exceeded its authority. However, this is a mischaracterization of the issue at hand. PROMESA provides no specific formula for determining when a law "impairs or defeats" its purposes. Therefore, the FOMB's determination is not insulated from judicial review. In fact, the proper standard for review in this case is whether the FOMB's action was arbitrary and capricious, particularly because the FOMB has overreached by interfering in matters outside its statutory authority, including non-fiscal public policy issues, such as energy regulation. *In re Financial Oversight and Management Board for Puerto Rico*, 583 B.R. 626 (D.P.R. 2017). Third, under the applicable arbitrary and capricious standard, a court must determine whether the FOMB has engaged in reasoned decision-making based on evidence. *See In re The Financial Oversight and Management Board for Puerto Rico (Vázquez-Garced v. The Financial Oversight Board for Puerto Rico)*, 511 F.Supp.3d 90, 120 (D.P.R. 2020) ("*Vázquez-Garced III*"). The Senate contends that the FOMB has failed to establish a rational connection between the facts surrounding Act 10 and its decision to sue to invalidate the law. The extension of the period for conducting the net metering study has no significant fiscal impact, yet the FOMB has chosen to sue to nullify the law without providing adequate justification or evidence. Moreover, the FOMB has disregarded the substantial benefits of Act 10 for Puerto Rico's

renewable energy goals. Fourth, PROMESA § 204(a) requires that newly enacted laws be submitted to the FOMB along with a formal estimate of their fiscal impact and a certification of compliance with the fiscal plan. The Governor fulfilled these obligations by submitting the necessary documentation for Act 10. Despite this, the FOMB rejected the Governor's submission, claiming it was incomplete or insufficient. The Senate contends that this rejection was unfounded, as the Governor's submission complied with the procedural requirements of PROMESA. The FOMB's decision to invalidate Act 10 based on alleged certification deficiencies was therefore arbitrary and lacks proper legal basis.

For these reasons, and as further argued below, this Court should deny the FOMB's motion for summary judgment.

## II.    BACKGROUND

On October 21, 2022, Senate Bill 1064 ("S.B. 1064"), which later became Act 10 was presented by Senator Juan Zaragoza-Gómez upon petition of the environmental organization Sierra Club. *See* Senate's Statement of Additional Uncontested Facts in Opposition to FOMB's Motion for Summary Judgment ("Senate's Additional Facts"), ¶ 1. S.B. 1064 purpose was

> [t]o amend Section 4 of Act 114-2007, as amended, known as the 'Electric Power Authority Net Metering Program Act', in order to reformulate the term provided for conducting a study on net metering and distributed energy; so that the Electric Utility may request the Bureau of Energy and the Federal Emergency Management Agency (FEMA), the necessary funds to increase the capacity of the distribution system to integrate photovoltaic systems; and for other purposes.

Senate's Additional Facts ¶2. S.B. 1064 initially proposed to defer the term for the net metering study to be conducted by PREB until distributed renewable energy generation had exceeded 25% of Puerto Rico's energy consumption. Senate's Additional Facts ¶3. The PREB did not oppose

S.B. 1064. Rather, it recognized that deferring the study on net metering until the growth of distributed renewable energy generation reached 25% of Puerto Rico's energy consumption could benefit the net metering program and distribution. Senate's Additional Facts ¶7. Because it understood that a benefit could be obtained from having a specific date for conducting the net metering study, the PREB suggested "to reach consensus as to the date on which the study should be carried out […]." Senate's Additional Facts ¶8.

After final approval by both legislative chambers, S.B. 1064 was signed by the President of the Senate on December 1, 2023, and by the President of the House of Representatives on January 8, 2024. The bill was sent to the Governor of Puerto Rico, Pedro Pierluisi-Urrutia, on January 9, 2024. Governor Pierluisi signed the bill into law on January 10, 2024, officially enacting Act 10. Senate's Additional Facts ¶13. Act 10 "amend[s] Articles 4 and 9 of Act 114-2007, as amended, known as the 'Electric Power Authority Net Metering Program Act', in order to reformulate the term provided to conduct a study on net metering and distributed energy; and for other purposes." Senate's Addition Facts ¶ 14. Act 10 changes the timeframe for the PREB's study on the net metering program, from a due date of April 2024 to a date of January 2030, when it may begin the study. It does not introduce any substantive changes to the operation or regulation of the net metering program itself, nor does it alter the compensation mechanisms for existing customers. Senate's Additional Facts ¶ 15. In legislating Act 10, the Senate considered and included the change requested by the PREB for establishing a specific timeframe for conducting the net metering study. Senate's Additional Facts ¶ 16.

Act 10 only extends the timeframe for the PREB to conduct the net metering study so therefore it is a neutral revenue law, as certified by the Office of Management and Budget ("OMB") and the Treasury Department. Dkt. 48-5 & Dkt. 48-6. After analyzing the OMB's and

the Treasury's certifications of fiscal impact, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF", for its Spanish acronym) submitted to the FOMB a formal Section 204(a) Certification, concluding that

> [a]fter conducting the pertinent analysis and based on the discussion above, in accordance with Section 204(a) of PROMESA, the Government has determined that Act 10 is not significantly inconsistent with the Certified Fiscal Plan. As mentioned above, Act 10 does not represent an adverse impact on the Government's revenues and expenditures and does not impose any additional burdens or responsibilities on PREPA, or any other Government entity like PREB. More importantly, the implementation of Act 10 (in particular, the extension of net metering policy) as compared to PREPA's Certified Fiscal Plan revenue and cost projections is expected to be neutral and will help reach the Renewable Portfolio Standard of 100% by 2050.

*See* Dkt. 1-10, at 7.

Despite the above, the FOMB seeks to annul Act 10 because it alleges that it impairs PROMESA. The FOMB has not provided any real, admissible evidence to support such a conclusion. Instead, its reasoning is speculative, argumentative and misleading. As such, the FOMB has not complied with the standard for summary judgments and is not entitled to one for the following reasons.

### III.    DISCUSSION

**A. <u>A genuine controversy of material facts exists as to whether Act 10 impairs or defeats the purposes of PROMESA</u>**

Contrary to the FOMB's assertion, there are significant and genuine controversies of material facts that preclude the granting of summary judgment in this case. These disputes highlight the differing views between the FOMB and the Senate on several key issues, each of which is crucial to determining whether Act 10 impairs or defeats the purposes of PROMESA.

<u>First</u>, in connection to the alleged interference with the independence of the PREB the FOMB argues that Act 10 undermines PREB's independence by delaying the net metering study

required under Act 17, thus interfering with PREB's authority to regulate energy policy autonomously. The Senate disputes this claim, evidencing that Act 10 merely extends the timeline for the study, without affecting PREB's regulatory autonomy. *See* Response to SUMF ¶¶ 85-88 & 92-97; Senate's Additional Facts ¶¶ 14-15. PREB itself did not oppose the extension and recognized that a more comprehensive study could benefit the energy grid and net metering policy. Senate's Additional Facts ¶¶ 7-8 & 14-16. Moreover, the Senate contends that the amendment aligns with PREB's energy goals under Act 17, as it allows for a more accurate assessment of the renewable energy landscape as Puerto Rico transitions toward its 100% renewable energy target. *See* Response to SUMF ¶¶ 27,28, 59-62, 73, 85, 87, 88, 92-94. Thus, Act 10 supports, rather than impairs, PREB's independence and ability to conduct its work thoroughly and effectively.

Second, in terms of the consequence of the statute, the FOMB claims that Act 10's extension of the net metering study will have negative consequences for PREPA's financial stability, delaying necessary changes to the net metering program that would otherwise address financial concerns. The Senate disputes the FOMB's conclusion, noting that the extension of the study has no immediate financial impact on PREPA or the Commonwealth. *See* Response to SUMF ¶¶ 66, 69, 78-81, 84, 89, 92, 97. The study's delay does not affect the current operation of the net metering program or its financial structure. *See* Senate's Additional Facts ¶ 15. Instead, Act 10 provides PREB with the necessary time to evaluate net metering in a more robust, data-driven manner, ensuring that any future changes are informed by real-world conditions and not rushed to meet arbitrary deadlines.

Third, the FOMB argues that Act 10 violates the Commonwealth and PREPA Fiscal Plans by delaying necessary regulatory reforms and negatively impacting the financial projections for Puerto Rico's energy sector. The Senate maintains that Act 10 does not have a material impact on

the fiscal plans, as it is a revenue-neutral law. *See* Response to SUMF ¶¶ 66, 69, 78-81, 84, 89, 92, 97. The Senate further notes that the OMB and the Treasury certified that Act 10 does not impose any additional financial burdens on PREPA or any other government entity. *See* Response to SUMF ¶¶ 66, 69, 78-81, 84, 89, 92, 97. As such, there is no evidence to support the FOMB's claim that Act 10 impairs the fiscal plans. On the contrary, the Senate contends that by allowing for a more thorough evaluation of net metering, Act 10 supports the long-term financial health of Puerto Rico's energy sector. *See* Response to SUMF ¶¶ 16, 22-24, 53, 54, 59, 92, 94, 102; Senate's Additional Facts ¶¶ 36, 42-50.

Fourth, the FOMB asserts that Act 10 will have financial implications for PREPA and ratepayers by delaying necessary reforms to the net metering program, thus shifting costs onto non-net metering customers. The Senate challenges this argument by pointing to certifications from the OMB and Treasury that confirmed Act 10's revenue-neutral nature. *See* Response to SUMF ¶¶ 66, 69, 78-81, 84, 89, 92, 97. The extension of the study timeline does not affect the current compensation rates for net metering customers or impose any new costs on ratepayers. *See* Response to SUMF ¶ 15; Senate's Additional Facts ¶¶ 66, 69, 78-81, 84, 89, 92, 97. In fact, the Senate argues that the existing net metering policy provides significant benefits to all ratepayers, including avoided energy, capacity, and transmission costs, as outlined in expert testimony submitted by Gabel Associates. *See* Response to SUMF ¶¶ 16, 22-24, 53, 54, 59, 92, 94, 102; Senate's Additional Facts ¶¶ 36, 42-50.  Therefore, any claims of cost shifting or financial harm are speculative and unfounded.

Fifth, the FOMB claims that the Governor failed to comply with the certification requirements under PROMESA § 204(a) by not providing a sufficient fiscal impact analysis for Act 10. The Senate contends that the Governor complied with § 204(a) by submitting the necessary

documentation, including certifications from OMB and Treasury, which confirmed that Act 10 is revenue-neutral and does not conflict with the fiscal plan. *See* Response to SUMF. Additionally, the AAFAF provided further certification, asserting that Act 10 would not have an adverse fiscal impact. *See* Response to SUMF ¶¶ 69, 70, 78-81, 84, 89, 97. The FOMB's rejection of these certifications is baseless and does not provide sufficient grounds to invalidate the law.

Finally, the FOMB suggests that Act 10's delay of the net metering study undermines PREPA's financial stability by preventing necessary reforms to the net metering compensation structure, which it claims disproportionately benefits net metering customers at the expense of non-participating ratepayers. The Senate disputes this characterization, emphasizing that net metering provides significant economic, environmental, and societal benefits that far outweigh any alleged costs. *See* Response to SUMF ¶¶ 16, 22-24, 53, 54, 59, 92, 94, 102; Senate's Additional Facts ¶¶ 36, 42-50. Expert analysis shows that net metering delivers avoided energy costs, capacity savings, and environmental benefits, all of which contribute positively to Puerto Rico's energy grid and economy. *See* Response to SUMF ¶¶ 16, 22-24, 53, 54, 59, 92, 94, 102; Senate's Additional Facts ¶¶ 36, 42-50. By supporting renewable energy development, net metering is a crucial component of Puerto Rico's long-term energy goals, and Act 10 ensures that any future reforms are based on a thorough and accurate understanding of its benefits. *See* Senate's Additional Facts ¶¶ 36, 42-50.

In conclusion, these controversies of material facts demonstrate that Act 10 does not impair or defeat the purposes of PROMESA, as alleged by the FOMB. The Senate has provided substantial evidence showing that Act 10 supports Puerto Rico's renewable energy goals, is revenue-neutral, and complies with all relevant fiscal requirements under PROMESA. Accordingly, summary judgment is inappropriate in this case.

B.  **The FOMB's § 108(a) determination is arbitrary and capricious**

The FOMB's determination that a law impairs or defeats the purposes of PROMESA is subject to review under the arbitrary and capricious standard. This standard of review ensures that agency decisions are based on reasoned analysis and supported by evidence, rather than being based on speculation or conjecture. Under this standard, "the Court must decide whether the Oversight Board's determinations were supported by a rational basis and must affirm the Oversight Board's decisions if they are 'reasoned, and supported by substantial evidence in the record.'" *See In re The Financial Oversight and Management Board for Puerto Rico (Vázquez-Garced v. The Financial Oversight Board for Puerto Rico)*, 511 F.Supp.3d 90, 120 (D.P.R. 2020) ("*Vázquez-Garced III*") (quoting *Trafalgar Capital Assoc., Inc. v. Cuomo*, 159 F.3d 21, 26 (1st Cir. 1998). The Oversight Board's § 108(a) determinations have been upheld by this Court when government actions "impair[ ] the functioning of **financial measures** approved by the Oversight Board in the exercise of powers explicitly conferred upon it by PROMESA." *In re The Financial Oversight and Management Board for Puerto Rico (The Financial Oversight Board for Puerto Rico v. Pierluisi-Urrutia)*, 634 B.R. 187, 204 (D.P.R. 2021) (emphasis ours); *see also In re The Financial Oversight and Management Board for Puerto Rico (Vázquez-Garced v. The Financial Oversight Board for Puerto Rico)*, 616 B.R. 238, 254 (D.P.R. 2020) ("*Vázquez-Garced II*") (finding the FOMB rationally concluded acts violated section 108 when "[t]he record demonstrates that **[the acts] appropriate funding that is not included in certified fiscal plans and budgets, and are significantly inconsistent with the fiscal plans and budgets** certified by the Oversight Board for the Commonwealth").

Here, the record does not support a finding that Act 10 impairs any of the financial measures approved by the FOMB. Rather, as established in section III.A above, there are controversies of material facts as to the reasons provided by the FOMB for its § 108(a)

determination. The FOMB argues that Act 10 impairs PROMESA's purposes inasmuch it: (1) violates the Commonwealth's and PREPA's Fiscal Plans, which purportedly require the PREB to be independent; (2) violates PREPA's Fiscal Plan, which purported to require the PREB to complete the net metering study and implement changes to the net metering structure by April 11, 2024; (3) interferes with its ability to ensure funding of reliable electricity; and (4) the Governor failed to provide a compliant formal estimate and certification for Act 10 under PROMESA § 204(a). However, the evidence submitted as of today by the Senate shows that:

a. Act 10 does not interfere with PREB's independence or authority because it merely extends the timeframe for performing the net metering study, considering the Required Renewable Energy Percentage already established by Act 17. *See* Senate's Additional Facts ¶¶ 14-15; Senate's Response to the SUMF ¶¶ 85-88 & 92-97.

b. The 2023 PREPA Fiscal Plan's requirement that the PREB implement changes to the net metering structure by April 11, 2024 was based on Act 17, which – as previously stated – was contingent on the Commonwealth's meeting the Required Renewable Energy Percentage milestones. Because the Commonwealth did not meet the Required Energy Renewable Percentage for 2024, the date established by Act 17 became irrelevant. *See* Senate's Response to the SUMF ¶¶ 27,28, 59-62, 73, 85, 87, 88, 92-94.

c. Act 10 does not interfere with the FOMB's ability to ensure funding of reliable electricity because it is a revenue neutral law. *See* Senate's Additional Facts ¶¶ 66, 69, 78-81, 84, 89, 92. Furthermore, to the extent this Court understands that net metering is currently under its jurisdiction, this

policy has a positive impact in Puerto Rico's economy. In fact, in Puerto Rico net metering provides an avoided energy cost value of 27¢/kWh, an avoided capacity cost value of 1¢/kWh, an avoided transmission and distribution cost value of 3¢/kWh, and an avoided reliability-related losses cost value of 2¢/kWh, with a direct benefit to the grid and all other ratepayers of 33 cents per kWh, which is 36% greater than the retail rate of 24 cents per kWh. *See* Senate's Additional Facts ¶¶ 36, 42-50; Senate's Response to the SUMF ¶¶ 16, 22-24, 53, 54, 59, 92, 94, 102. In addition, Puerto Rico net metering provided an avoided emissions cost value of 54¢/kWh and an incremental value potential of 16¢/kWh for local economic value added, with indirect benefits of 70¢/kWh of societal benefits. *See* Senate's Additional Facts ¶¶ 46-48.

d. The Governor complied with § 204(a), which requires him to prepare a formal estimate of financial impact of a law if there is any. Because the agencies involved – the OMB and the Treasury – determined that there would be no impact, a formal estimate of that impact is unnecessary. In addition, AAFAF issued a certification that addresses Act 10's revenue neutral character and its compliance with the Fiscal Plan. *See* Senate's Response to the SUMF ¶¶ 69, 70, 78-81, 84, 89, 97.

In this case, the FOMB has failed to demonstrate that its § 108(a) determination meets the arbitrary and capricious standard. First, the FOMB's assertion that the extension of the study period for net metering undermines PREPA's financial stability is unsupported by any evidence. The FOMB has not provided any specific data or analysis to show how the delayed study has any

fiscal impact on the Commonwealth or PREPA. Similarly, the FOMB has only alleged, not established or evidenced how Act 10 interferes with the PREB's independence. Instead, the FOMB's decision is based on speculative assumptions regarding the potential effects of a delayed net metering review. Agency actions lacking a rational connection between the facts found and the decision made are arbitrary and capricious. This lack of reasoned decision-making is a clear example of arbitrary action. *Vázquez-Garced III*, 511 F.Supp.3d at 120. Furthermore, under *Looper Brighter Enterprises v. Raimondo*, 603 U.S. ___, 144 S.Ct. 2244 (2024), this Court is not required to defer to FOMB's own interpretation of PROMESA.

Moreover, the FOMB has disregarded the significant policy benefits of Act 10 for Puerto Rico's long-term renewable energy goals. The extension of the study period allows more time for the PREB to gather comprehensive data before making any changes to the net metering program, ensuring that the Commonwealth's energy policies are based on thorough and accurate information, as required by Act 17. By ignoring these broader societal and environmental considerations, the FOMB's decision to sue to invalidate Act 10 fails to take into account the full context of the law's purpose and impact. Such a narrow focus, without considering other important factors and the greater energy policy behind them, further renders the FOMB's decision arbitrary and capricious.

In sum, the FOMB's § 108(a) determination regarding Act 10 was not based on a reasoned analysis or supported by substantial evidence. This action fails to meet the arbitrary and capricious standard, and thus, the FOMB's motion for summary judgment should be denied.

## C. **The FOMB is not entitled to *ultra vires* review and, even if it were, its § 108(a) determination is *ultra vires***

The FOMB asserts that its actions, particularly its decision to seek to nullify Act 10 under § 108(a) of PROMESA, should be reviewed under the *ultra vires* standard, which limits judicial

review to determining whether it acted within the scope of its statutory authority. The FOMB argues that § 108(a) grants it broad authority to sue to invalidate any law that it deems to "impair or defeat" the purposes of PROMESA, claiming that Act 10 undermines the Commonwealth's and PREPA's fiscal plans by affecting PREPA's financial stability and operational capacity. As such, the FOMB maintains that its decision to invalidate Act 10 is insulated from substantive judicial review, as it falls squarely within its statutory mandate to ensure compliance with the fiscal plan. The FOMB further contends that *ultra vires* review is the appropriate standard because it allows the court to assess whether the FOMB exceeded its statutory powers without delving into the merits of its policy decisions. By asserting that its determination under § 108(a) aligns with its fiscal oversight role, the FOMB seeks to limit the court's inquiry to whether the law in question directly conflicts with the fiscal plans, thus attempting to shield its decision from deeper scrutiny regarding the rationality or reasonableness of its actions.

The FOMB's claim for *ultra vires* review is based on a fundamental misreading of its own statutory authority under PROMESA and a blatant disregard for this Court's caselaw. *See Vázquez-Garced III*, 511 F.Supp.3d at 120-122; *Pierluisi-Urrutia*, 634 B.R. at 204. *Ultra vires* review is a form of __**non-statutory**__ review when an agency acts "in excess of its delegated powers" and "there is no alternative procedure for review of the statutory claim." *Fed. Express Corp. v. U.S.D Dep't of Corn.*, 39 F.4th 756, 763 (D.C. Cir. 2022) (citation omitted). The leading Supreme Court decision on *ultra vires* review is *Leedom v. Kyne*, 358 U.S. 184 (1958), which arose from an interlocutory order __**specifically excluded**__ from judicial review. But the Board does not dispute that PROMESA provides for judicial review of its PROMESA § 108(a) determinations; the question is what __**statutory standard**__ of review governs those determinations. The *ultra vires* cases have no

relevance to this question. Indeed, this Court already denied the FOMB's proposition for
application of the ultra vires standard in the context of § 108(a).

> The Oversight Board argues that the more lenient "ultra vires"
> review is the correct standard by which to judge its determinations
> under § 108(a) and § 204(a). […] As noted above, this Court held in
> *Vázquez Garced III* […], that the arbitrary and capricious standard
> is the appropriate lens through which to assess the Oversight
> Board's determinations under these sections of PROMESA. The
> Court is not persuaded that its determination of the standard was
> erroneous.

*See Pierluisi-Urrutia*, 634 B.R. at n. 10. It is, thus, clear that the FOMB's § 108(a) determination
is not subject to *ultra vires* review.

Furthermore, and just for argument's sake, even if *ultra vires* review were the correct
standard of review, which is not, this Court must still find that the FOMB's determination under §
108(a) that Act 10 impairs or defeats the purposes of PROMESA is *ultra vires*. PROMESA §
108(a) prohibits the Governor or Legislature from enacting, implementing, or enforcing any statute
that would impair or defeat PROMESA, as determined by the FOMB. The FOMB argues that Act
10 impairs PROMESA's purposes inasmuch it: (1) violates the Commonwealth's and PREPA's
Fiscal Plans, which require the PREB to be independent; (2) violates PREPA's Fiscal Plan, which
required the PREB to complete the net metering study and implement changes to the net metering
structure by April 11, 2024; (3) interferes with its ability to ensure funding of reliable electricity;
and (4) the Governor failed to provide a compliant formal estimate and certification for Act 10
under PROMESA § 204(a). However, as sections III.A and III.B above show, there are
controversies of material facts as to these alleged reasons. Thus, the FOMB has not shown that it
has valid legal authority under PROMESA § 108(a) to establish that Act 10 impairs or defeats the
purpose of PROMESA.

To this end, notice that the FOMB was established under PROMESA with the specific and limited purpose of addressing the fiscal crisis in Puerto Rico and ensuring fiscal responsibility and access to capital markets. PROMESA § 101 explicitly states that the FOMB's role is to oversee the development of fiscal plans and budgets that are necessary to achieve these financial goals. PROMESA § 201 outlines the specific responsibilities of the FOMB, all of which revolve around the approval of fiscal plans and budgets that aim to ensure the territory's fiscal stability. These responsibilities include ensuring that essential public services are funded, pension systems are supported, and that Puerto Rico can regain access to capital markets. PROMESA § 204 requires the Governor to submit laws to the FOMB for review only if those laws have a significant impact on the budget or fiscal plan. This provision underscores the fact that the FOMB's jurisdiction is limited to fiscal matters, not the overall legislative process or general policymaking by the Puerto Rican Legislature. PROMESA's focus is unambiguously financial in nature, dealing with economic governance, debt restructuring, and fiscal accountability.

Nowhere in the text of PROMESA is the FOMB granted the authority to interfere in non-economic public policy matters that do not directly affect the fiscal stability of Puerto Rico. Indeed, there is no authorization within PROMESA that allows the FOMB to dictate or override legislative decisions that pertain to public policy issues unrelated to the territory's financial recovery. Just the opposite: PROMESA § 303 expressly reserves the power of Puerto Rico's government to control its territory and territorial instrumentalities. It states that PROMESA "does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory." This section ensures that the Commonwealth government retains control over non-economic

matters, preserving its authority to govern without interference from the FOMB in areas outside of fiscal concerns.

This Court addressed the limits of the FOMB's authority in *In re Financial Oversight and Management Board for Puerto Rico*, 583 B.R. 626 (D.P.R. 2017). There, the Court held that the FOMB does not have the power to unilaterally displace a statutorily created management structure, even within a government entity like PREPA, which is directly involved in fiscal matters. This Court made it clear that PROMESA does not grant the FOMB the authority to override Puerto Rican law or assume roles beyond fiscal oversight.

> The structure established by Titles I and II, alongside the reservation of territorial power in section 303, requires the FOMB and the territorial government to work together to establish a fiscally responsible path forward that is acceptable to the FOMB. Congress might have chosen to make the FOMB's job easier in the short term by granting it direct control and disabling the Commonwealth government's ability to dissent, but it did not do so. Congress deliberately divided responsibility and authority between the two.

*Id*. at 636. Hence, the FOMB cannot interfere with non-fiscal legislation such as Act 10. The FOMB's authority is constrained by the provisions of PROMESA and it cannot exceed its fiscal mandate to involve itself in matters of public policy or governance unless those matters directly impact the fiscal plan.

Act 10 represents a public policy decision by the Puerto Rico Legislature concerning energy regulation, specifically the timeframe for the PREB to initiate a study of the Net Metering Program. This legislation reflects a policy judgment made by the elected representatives of Puerto Rico regarding how to best regulate and promote renewable energy within the Commonwealth. It is a classic example of non-economic public policy, aimed at regulating the energy sector for broader environmental and societal benefits rather than for the purposes of fiscal management. As such, it lies outside the scope of PROMESA's mandate.

In conclusion, PROMESA does not authorize the FOMB to interfere with the Senate's legislative actions when those actions pertain to non-economic policy matters. Act 10 is a valid exercise of the Senate's legislative authority over public policy, and the FOMB's attempt to nullify it represents an overreach of its statutory authority. The FOMB's involvement in non-fiscal matters exceeds its statutory authority and violates the principles of self-governance that PROMESA seeks to preserve. The FOMB simply cannot extend its reach beyond its fiscal mandate. *In re Financial Oversight and Management Board for Puerto Rico*, 583 B.R. at 636. Therefore, the FOMB's determination under § 108(a) (and the resulting attempt to invalidate Act 10) is *ultra vires*, as it is an overreach of its statutory authority under PROMESA. *See Fed. Express Corp.*, 39 F.4th at 764 (a patently misconstruction of the law is an *ultra vires* action).

Hence, this Court must deny the FOMB's Motion for Summary Judgment.

### D.  **The Governor complied with PROMESA § 204(a)**

In its motion for summary judgment, the FOMB argues that the Governor failed to comply with the certification requirements set forth in PROMESA § 204(a) in connection with the enactment of Act 10. According to the FOMB, the Governor did not submit a formal estimate of the law's impact on the fiscal plan, nor did he provide a certification stating that Act 10 would not interfere with the plan's execution. The FOMB claims that this alleged failure to comply with § 204(a) renders the enactment of Act 10 invalid, as the law could potentially conflict with the fiscal plan. Based on this assertion, the FOMB seeks to nullify Act 10 under § 108(a) of PROMESA, arguing that the absence of proper certification undermines the FOMB's ability to fulfill its oversight role in ensuring fiscal responsibility for the Commonwealth. The FOMB's determination that PROMESA § 204(a) was not met is analyzed under the arbitrary and capricious standard.

Under PROMESA § 204, "[t]he Governor shall include with each law submitted to the Oversight Board … [a] formal estimate prepared by an appropriate entity of the territorial government with expertise in budgets and financial management **of the impact, if any**, that the law will have on expenditures and revenues." 48 U.S.C. § 2144(a)(2)(A) (emphasis added). If that entity "finds that the law is not significantly inconsistent with the Fiscal Plan for the fiscal year, it shall issue a certification of such finding." Id. § 2144(a)(2)(B). The evidence on the record shows that the OMB and the Treasury submitted certifications of fiscal impact. *See* Dkt. No. 48-5 & 48-6 (certified translations). Both agencies of the Commonwealth certified that Act 10 does not have fiscal impact. Accordingly, AAFAF issued a formal Section 204(a) Certification in connection to Act 10, attaching the OMB's and the Treasury's certifications if fiscal impact. *See* Dkt. 1-10. Because Act 10 merely extends the timeframe for PREB to perform the net metering study, the agencies involved determined that there would be no fiscal impact and, hence, a formal estimate of that impact was unnecessary under PROMESA § 204. Notice that this section of PROMESA requires the Governor to submit a formal estimate only **if there is a fiscal impact**. Therefore, the FOMB's determination that the Governor failed to comply with PROMESA § 204 because he allegedly did not provide a formal estimate of financial impact is arbitrary and capricious, not based on the record, and contrary to PROMESA's plain text.

Moreover, AAFAF's formal Section 204(a) Certification specifically addressed Act 10's compliance with the Fiscal Plan. The certification states as follows:

> a.   "the implementation of Act 10 – as compared to PREPA's Certified Fiscal Plan revenue and cost projections is expected to be neutral and will help reach Renewable Portfolio Standard of 100% by 2050." *See* Dkt. No. 1-10, at 6.

b.    "PREPA's Certified Fiscal Plan load forecast fully deducts expected DG production from load to calculate Net Utility Sales . . . and there are no projected revenues from DG customers." *Id.*

c.    "PREPA's Certified Fiscal Plan assumes that the existing net metering policy and bill credit structure remains in place." *Id.*

Thus, AAFAF concluded that

> After conducting the pertinent analysis and based on the discussion above, in accordance with Section 204(a) of PROMESA, the Government has determined that Act 10 is not significantly inconsistent with the Certified Fiscal Plan. As mentioned above, Act 10 does not represent an adverse impact on the Government's revenues and expenditures and does not impose any additional burdens or responsibilities on PREPA, or any other Government entity like PREB. More importantly, the implementation of Act 10 (in particular, the extension of net metering policy) as compared to PREPA's Certified Fiscal Plan revenue and cost projections is expected to be neutral and will help reach the Renewable Portfolio Standard of 100% by 2050.

*Id.* at 7. There should be no doubt, then, that AAFAF's Section 204(a) Certification complies with PROMESA. The FOMB's disagreement with AAFAF's conclusion, does not mean that the Governor did not comply with PROMESA § 204(a). Therefore, the FOMB's determination that the Governor failed to comply with PROMESA § 204 because he failed to certify compliance with the fiscal plan is arbitrary and capricious, since it is not based on the record.

Since the Governor complied with all of his obligations under PROMESA § 204(a), the Court must deny the FOMB's motion for summary judgment.

## IV.    CONCLUSION

For the reasons outlined above, the FOMB's motion for summary judgment must be denied. <u>First</u>, the FOMB's assertion that Act 10 impairs or defeats the purposes of PROMESA is based on a mischaracterization of the law and unsupported by any evidence. The factual disputes

regarding the impact of the net metering program and the extension of the study timeline underscore the existence of material issues that cannot be resolved through summary judgment. Second, the FOMB's determination under § 108(a) of PROMESA is arbitrary and capricious, as it lacks a rational connection between the facts and the Board's decision to invalidate Act 10. The FOMB has failed to provide a reasoned analysis or substantial evidence demonstrating how Act 10 disrupts the fiscal plan or PREPA's financial stability. Third, the FOMB is not entitled to *ultra vires* review of its decision to sue to invalidate Act 10. Even if such review were appropriate, its § 108(a) determination would still be *ultra vires*, as the FOMB's authority under PROMESA is confined to fiscal oversight, and Act 10 falls outside the scope of its statutory mandate. Finally, the Governor complied with the procedural requirements of PROMESA § 204(a) by submitting the appropriate fiscal certifications, which confirmed that Act 10 has no fiscal impact. The FOMB's rejection of these certifications is arbitrary, and its decision to sue to nullify Act 10 based on an alleged absence of certification lacks legal and factual support.

WHEREFORE, the Senate of Puerto Rico respectfully requests that this Court denies the motion for summary judgment filed by the Financial Oversight and Management Board.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record to their registered e-mail addresses. Any non-registered attorneys and/or parties will be served via regular mail.

In San Juan, Puerto Rico this 23rd day of October, 2024.

**RESPECTFULLY SUBMITTED.**

**QUIÑONES & ARBONA, PSC**
PO Box 10906
San Juan, Puerto Rico  00922
☎ Tel.787-620-6776
🖨Fax. 787-620-6777

**S/ EDWIN QUIÑONES-RIVERA**
USDC-PR No. 124305
E-mail: equinones@qaclaw.com

*Attorneys for intervenor, Senate of Puerto Rico and its President, Hon. Jose Luis Dalmau Santiago, in his official capacity as President of the Senate of Puerto Rico.*