# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | **PROMESA**<br>**Title III**<br><br><br>**No. 17-BK-3283-LTS**<br><br>**(Jointly Administered)** |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | **PROMESA**<br>**Title III**<br><br><br>**Case No. 17-BK-4780-LTS**<br><br>**(Jointly Administered)** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico; and HON. JOSE LUIS DALMAU, in his official capacity as President of the Senate of Puerto Rico.<br><br>    Defendants. | **Adv. Proc. No. 24-00062-LTS** |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (III) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

HON. JOSE LUIS DALMAU, in his official capacity as President of the Senate of Puerto Rico,

    Defendant-Movant,

v.

THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,

    Plaintiff-Respondent.

**RESPONSE OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO TO STATEMENT OF UNCONTESTED MATERIAL FACTS IN SUPPORT OF DEFENDANT HON. JOSE LUIS DALMAU'S MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF ADDITIONAL FACTS OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO IN OPPOSITION TO HON. JOSE LUIS DALMAU'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE COURT:**

Pursuant to Local Rule 56(c), applicable to this proceeding through Local Bankruptcy Rule 1001-1(d), the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") respectfully submits this Response to the Hon. Jose Luis Dalmau's (the "Senate President") Statement of Uncontested Material Facts in opposition to the Senate President's Motion for Summary Judgment (the "Motion"), as well as a statement of additional facts in opposition to the Senate President's Motion.[2]

**RESPONSE TO STATEMENT OF UNCONTESTED MATERIAL FACTS**

1. On October 21, 2022, Senate Bill 1064 ("S.B. 1064"), which later became Act 10-2024 ("Act 10"), was presented by Senator Juan Zaragoza-Gómez upon petition of the environmental organization Sierra Club. *See Declaration of Yamil Rivera Vélez, Secretary of the Senate*, Exhibit 1 ("Rivera Decl."), ¶ 2; S.B. 1064, Exhibit 2.

---

[2] All capitalized terms used in this document that are not defined herein have the meanings set forth and defined in the *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion for Summary Judgment of the President of the Puerto Rico Senate*.

2

**RESPONSE:** It is admitted that Senator Juan Zaragoza-Gómez introduced Senate Bill 1064 ("S.B. 1064" or the "Bill") and the Bill, as later amended, became Act 10. It is also admitted that the Bill includes text stating the Bill was presented "[a]t the request of the Sierra Club," but this statement is irrelevant to any issue presented in the Motion.

2. S.B. 1064['s] purpose was

> [t]o amend Section 4 of Act 114-2007, as amended, known as the "Electric Power Authority Net Metering Program Act", in order to reformulate the term provided for conducting a study on net metering and distributed energy; so that the Electric Utility may request the Bureau of Energy and the Federal Emergency Management Agency (FEMA), the necessary funds to increase the capacity of the distribution system to integrate photovoltaic systems; and for other purposes.

S.B. 1064, Exhibit 2, at p. 1.

**RESPONSE:** It is admitted that this paragraph correctly quotes, in part, from the Bill. The Oversight Board denies paragraph 2 provides an accurate, complete description of the purpose and contents of the Bill or Act 10 and respectfully refers the Court to the text of the Bill and Act 10 for their complete contents. *See* ECF No. 53-1; ECF No. 48-4.[3]

3. S.B. 1064 proposed to defer the term for the net metering study to be conducted by PREB until distributed renewable energy generation had exceeded 25% of Puerto Rico's energy consumption. S.B. 1064, Exhibit 2, § 1, at Pp. 5-6.

**RESPONSE:** It is admitted that the Bill, as introduced, proposed postponing the date when the net metering study called for in Act 17-2019 could commence, stating the "study should begin when the distributed renewable energy generation has surpassed twenty-five percent (25%) of [Puerto Rico's] energy consumption." ECF No. 53-1 at 6. The Oversight Board denies paragraph

---

[3] All pincite citations refer to ECF, and not internal, pagination.

3 provides an accurate, complete description of the contents of the Bill, and respectfully refers the Court to the text of the Bill for its complete contents. *See generally id.*

4. The following senators became the co-authors of S.B. 1064 along with Mr. Zaragoza-Gómez: Gretchen Hau, Javier Aponte-Dalmau, Joanne Rodríguez-Veve, Migdalia González-Arroyo, Ruben Soto Rivera, and William Villafañe-Ramos. Rivera Decl., Exhibit 1, ¶ 4.

**RESPONSE:** Admitted, but the statement contained in paragraph 4 is irrelevant to any issue presented in the Motion.

5. After the initial presentation, S.B. 1064 was referred to the Senate's Committee on Strategic Projects and Energy, chaired by Senator Javier Aponte Dalmau. The committee rendered a positive report on June 24, 2023, recommending the passage of the bill with amendments. Rivera Decl., Exhibit 1, ¶ 5.

**RESPONSE:** Admitted, but the statements contained in paragraph 5 are irrelevant to any issue presented in the Motion.

6. The following entities appeared before the Senate's Committee on Strategic Projects and Energy to provide their comments to S.B. 1064: Solar and Energy Storage Association of Puerto Rico (SESA); LUMA Energy, LLC; the Puerto Rico Energy Bureau ("PREB"); the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF" by its Spanish acronym); Cambio PR; the Puerto Rico Association of Renewable Energy Consultants and Contractors, Inc. ("ACONER" by its Spanish acronym). Rivera Decl., Exhibit 1, ¶ 6.

**RESPONSE:** Disputed that any entity "appeared" before the Senate Committee on Strategic Projects and Energy (the "Committee") in connection with the Bill. Admitted that PREB (*i.e.*, the "Energy Bureau") and AAFAF (two of the entities listed in paragraph 6) submitted materials to the Committee regarding the Bill, and the Oversight Board respectfully refers the Court to the text of those materials for their full contents. ECF Nos. 53-2–3. Regardless, the statement contained in paragraph 6 is irrelevant to any issue presented in the Motion.

7. The PREB did not oppose S.B. 1064. The PREB recognized that deferring the study on net metering until the growth of distributed renewable energy generation reached 25% of Puerto Rico's energy consumption could benefit the net metering program and distribution. *See Explanatory Memorandum of the PREB*, Exhibit 3, Pp. 7-8.

4

**RESPONSE:** Admitted that in the Energy Bureau's Explanatory Memorandum on the Bill (the "Memorandum") it stated, in part, that "extend[ing]" the deadline for completing the Act 17 Study "until the growth of distributed renewable energy . . . has exceeded twenty-five percent (25%) of [Puerto Rico's] energy consumption, could, in its practical application, benefit the net metering and distribution program." ECF No. 53-3 at 7. Admitted further that the Energy Bureau's Memorandum did not state the Energy Bureau opposed the version of the Bill it reviewed, which was subsequently amended before enactment as Act 10. The Oversight Board denies that paragraph 7 provides an accurate, complete description of the contents of the Memorandum and respectfully refers the Court to the text of the Memorandum for its complete contents. ECF No. 53-3. Regardless, the statements contained in paragraph 7 are irrelevant to any issue presented in the Motion.

8.      Because it understood that a benefit could be obtained from having a specific date for conducting the net metering study, the PREB suggested "to reach consensus as to the date on which the study should be carried out, based on the different contributions, suggestions and recommendations from all sectors, including industry and the Puerto Rican people." *Explanatory Memorandum of the PREB*, Exhibit 3, p. 8.

**RESPONSE:** Admitted that in its Memorandum, the Energy Bureau stated, in part, that "[i]f approved, S.B. 1064, as proposed, would leave to an undetermined date when the Energy Bureau will evaluate and consider the costs and benefits associated with the net metering program," and "suggest[ed] reaching a consensus on the date that the study should be conducted, based on the different contributions, suggestions and recommendations from all sectors, including the industry and the Puerto Rican people." ECF No. 53-3 at 8. The Oversight Board denies paragraph 8 provides an accurate, complete description of the contents of the Memorandum and respectfully refers the Court to the text of the Memorandum for its complete contents. *See generally id.* Regardless, the statement contained in paragraph 8 is irrelevant to any issue presented in the Motion.

5

9. On June 25, 2023, the Senate unanimously approved S.B. 1064 with 26 votes in favor and no votes against. Rivera Decl., Exhibit 1, ¶ 9.

**RESPONSE:** Admitted, but the statement in paragraph 9 is irrelevant to any issue presented in the Motion.

10. S.B. 1064 was sent to the House of Representatives, where it was referred to the House Committee on Economic Development, Planning, Telecommunications, Public-Private Partnerships, and Energy. Rivera Decl., Exhibit 1, ¶ 10.

**RESPONSE:** Admitted, but the statement contained in paragraph 10 is irrelevant to any issue presented in the Motion.

11. On October 24, 2023, the House of Representatives made minor amendments to S.B. 1064 and approved it with 37 votes in favor, no votes against, and 14 representatives absent. Rivera Decl., Exhibit 1, ¶ 11.

**RESPONSE:** Admitted that on October 24, 2023, the House of Representatives approved an amended version of the Bill with 37 votes in favor, no votes against, and 14 representatives absent. Admitted that the amendments to the Bill made by the House of Representatives could be considered "minor."

12. On November 8, 2023, the Senate received the bill with the House's amendments and voted to concur. The vote in the Senate was 25 in favor, no votes against, and two senators absent. Rivera Decl., Exhibit 1, ¶ 12.

**RESPONSE:** Admitted.

13. After final approval by both legislative chambers, S.B. 1064 was signed by the President of the Senate on December 1, 2023, and by the President of the House of Representatives on January 8, 2024. The bill was sent to the Governor of Puerto Rico, Pedro Pierluisi-Urrutia, on January 9, 2024. Governor Pierluisi signed the bill into law on January 10, 2024, officially enacting Act 10. Rivera Decl., Exhibit 1, ¶ 13.

**RESPONSE:** Admitted.

14. Act 10 "amend[s] Articles 4 and 9 of Act 114-2007, as amended, known as the 'Electric Power Authority Net Metering Program Act', in order to reformulate the term provided to conduct a study on net metering and distributed energy; and for other purposes." *See* Act 10 (Certified English Translation), Dkt. 1-7, p. 2 of 12 (Certification).

**RESPONSE:** Admitted that paragraph 14 contains an accurate quote of a portion of ECF No. 1-7 at 2, except that the document quoted uses the word "Sections" instead of "Articles." The Oversight Board denies paragraph 14 provides an accurate, complete description of the contents of Act 10 and respectfully refers the Court to the text of the Act 10 for its complete contents. *See* ECF No. 48-4.

15. Act 10 changes the timeframe for the PREB's study on the net metering program, from a due date of April 2024 to a date of January 2030, when it may begin the study. It does not introduce any substantive changes to the operation or regulation of the net metering program itself, nor does it alter the compensation mechanisms for existing customers. *See* Act 10 (Certified English Translation), Dkt. 1-7, Pp. 6-8 of 12.

**RESPONSE:** Admitted that Act 10 changed the timeframe for the Energy Bureau's net metering study such that instead of the study being completed by April 11, 2024, the Energy Bureau cannot commence the study before January 2030. Denied that Act 10 "does not introduce any substantive changes to the operation or regulation of the net metering program itself, nor does it alter the compensation mechanisms for existing customers." *See* ECF No. 48-4 § 1(a) (imposing restrictions on the Energy Bureau's ability to regulate net metering and requiring extension of net metering terms for net metering customers and certain potential net metering customers). The Oversight Board further denies paragraph 15 provides an accurate, complete description of the contents of Act 10 and respectfully refers the Court to the text of the Act 10 for its complete contents. *See id.*

16. In legislating Act 10, the Senate considered and included the change requested by the PREB for establishing a specific timeframe for conducting the net metering study. *See* Act 10 (Certified English Translation), Dkt. 1-7, § 1, Pp. 6-7 of 12; *Explanatory Memorandum of the PREB*, Exhibit 3, p. 8.

**RESPONSE:** Denied that Act 10 "establish[es] a specific timeframe for conducting the net metering study" and that the Energy Bureau requested such a change. *See* ECF Nos. 48-4 § 1(a) (providing only that the net metering study *cannot commence* before January 2030); ECF

7

No. 53-3 at 8 (Energy Bureau "suggest[ing] reaching consensus on the date that the study should be conducted based on the different contributions, suggestions and recommendations from all sectors, including the industry and the Puerto Rican people"). Further, the statement concerning what the Senate may have "considered" is not supported by the cited evidence. Regardless, the statement contained in paragraph 16 is irrelevant to any issue presented in the Motion.

17. The Senate amended S.B. 1064 to delete the language regarding the financial obligations of the electric services company (LUMA) on feeder improvements, which AAFAF had asserted out in its written comments to the Senate's Committee on Strategic Projects and Energy might not align with the 'Fiscal Neutrality Principle' of PROMESA. *See* Act 10 (Certified English Translation), Dkt. 1-7, § 1, Pp. 6-8 of 12; *Explanatory Memorandum of AAFAF*, Exhibit 4, p. 5; S.B. 1064, Exhibit 2; § 2, at p. 9.

**RESPONSE:** Admitted, but the statement contained in paragraph 17 is irrelevant to any issue presented in the Motion.

18. From filing at the Senate on October 21, 2022, to signature by the Governor on January 10, 2024, the approval process of S.B. 1064 as Law 10-2024, took 14 months and 11 days. *See* S.B. 1064, Exhibit 2; § 2, at p. 9.

**RESPONSE:** Admitted as to the date the Bill was filed and the date Act 10 was signed into law, but denied that the period between those two dates is 14 months and 11 days (it is 14 months and 21 days). Regardless, the statement contained in paragraph 18 is irrelevant to any issue presented in the Motion.

## STATEMENT OF ADDITIONAL MATERIAL FACTS BY THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO

**A. Net Metering in Puerto Rico.**

19. When there is a difference between the compensation paid to net metering customers and the value of service to the utility, it results in a revenue shortfall to the grid operator. ECF No. 49-9 at 85. This shortfall is then collected largely (if not completely) from customers who do not participate in the net metering program. *Id.*

20. Under the net metering program established by Act 114, which remains essentially unchanged, program participants are "entitled to offset the energy they purchase from PREPA with the energy they export to the grid on a one-to-one basis, at the prevailing retail rate." ECF No. 49-2 at 46–47; Senate President's Answer, ECF No. 31 ¶ 37. Act 114 requires PREPA to accept (and credit) electricity exported by net metering producers. ECF No. 48-1 § 5(e)(1); ECF No. 49-9 at 82–83. The net metering program requires PREPA to purchase electricity from net metering customers at all times and regardless of whether it needs the power. ECF No. 49-2 at 59; ECF No. 49-9 at 82–83.

**B. The Fiscal Plans' Requirements Regarding the Energy Bureau's Independence and Net Metering.**

21. The Fiscal Plans require PREPA to be regulated by an independent regulator. ECF No. 47 ¶¶ 42–50; ECF No. 49-2 at 75; ECF No. 49-7 at 157; ECF No. 49-8 at 77.

22. The PREPA Fiscal Plan addresses the net metering program, and notes, among other things, that a "sub-optimal net metering program . . . may have unintended detrimental effects and risks, including an unequitable distribution of costs throughout the system," that because LUMA is required "to purchase the excess energy produced by net metering customers at the prevailing energy rate, the effective cost to ratepayers of the renewable energy generated by net metering customers may be higher than the cost of purchasing that same quantity of electricity from other resources" and that these costs are "then passed on, in whole or in part, to all other remaining customers." ECF No. 49-2 at 59.

23. The PREPA Fiscal Plan requires the Energy Bureau to "finalize the [Act 17] net metering and distributed generation study" by June 30, 2023 and "initiate a process for implementing recommendations and conclusions of the study and updating a net metering compensation and crediting structure, if it deems appropriate," by April 11, 2024, and lists the

9

study and proposed new crediting structure as a regulatory milestone. ECF No. 49-2 at 59–60; *see also id.* at 53.

### C. Senate Bill 1064 and Act 10-2024.

24. The only comments about the Bill made by the Energy Bureau contained in the legislative record of Act 10 are its Memorandum. https://sutra.oslpr.org/osl/esutra/medidareg.aspx?rid=143103; ECF No. 53-3.

25. Act 10 provides the Energy Bureau may not commence the Act 17 Study on net metering until January 2030. ECF No. 48-4 § 1(a); ECF No. 48-3 at 69–71. This provision was not contained in the version of the Bill the Energy Bureau addressed in its Memorandum. *See generally* ECF No. 53-1 (certified translation of SB 1064, not containing this provision).

26. Act 10 provides the Energy Bureau cannot "make any determination related to the net metering program" until "after the study is concluded[.]" ECF No. 48-4 § 1(a).

27. Act 10 provides any changes to the net metering program can only take effect at least "12 months after the Bureau of Energy makes any decision to change the net metering policy." ECF No. 48-4 § 1(a). This provision was not contained in the version of the Bill the Energy Bureau addressed in its Memorandum. *See generally* ECF No. 53-1 (certified translation of SB 1064, not containing this provision).

28. Act 10 provides that any customer with a contract, or who has a distributed generator installed and certified by a licensed professional and has notified the Energy Bureau of the installation at the time the Energy Bureau issues its final determination changing the net metering rate structure must be entitled to enjoy the present 1:1 net metering rate for at least 20 years from the date of such final determination. ECF No. 48-4 § 1(a). This provision was not contained in the version of the Bill the Energy Bureau addressed in its Memorandum. *See*

10

*generally* ECF No. 53-1 (certified translation of SB 1064, not containing this provision). Prior to Act 10, net metering customers and certain potential net metering customers had the right to retain their net metering compensation rate for 20 years from the date of execution of their net metering contract. ECF No. 48-3 at 70–71.

### D. The Governor's Deficient § 204 Submission for Act 10.

29. The Oversight Board found the Governor's submission pursuant to PROMESA § 204(a) for Act 10 (the "Submission") did not contain a compliant formal estimate or certification. ECF No. 47 ¶¶ 64–78; ECF Nos. 48-4–6, 7; ECF Nos. 49-10–13.

30. The Oversight Board notified the Governor and the Legislature of the deficiencies in the Submission, and directed the Governor to correct them. The Governor failed to do so. ECF No. 47 ¶¶ 79–90; ECF Nos. 49-15–18.

### E. The Oversight Board's § 108(a)(2) Determinations.

31. The Oversight Board determined Act 10 impairs or defeats PROMESA's purposes of achieving fiscal responsibility and access to capital markets for reasons set forth in two resolutions. ECF No. 49-19 at 3–4; ECF No. 47 ¶¶ 91–97; ECF Nos. 49-19, 21.

### F. The Energy Bureau Publishes a Draft Study on Net Metering.

32. On June 14, 2024, the Energy Bureau approved a resolution authorizing the publication of a draft study on net metering and distributed energy for Puerto Rico (the "Draft Study"). ECF No. 49 ¶ 14 & ECF No. 49-9; ECF No. 48-9.

33. The Draft Study found that while net metering has been "successful at energizing customer-sided [distributed energy resources]," its "reliance on retail rates" is not economically efficient. ECF No. 49-9 at 20.

11

34. The Draft Study raised questions about how rates "will . . . need to be modified to eliminate cost shift" going forward, and concluded that "Puerto Rico will find [net metering] uns[us]tainable in the long-run" and "[n]ew methods need to be explored and adopted." ECF No. 49-9 at 91–92.

[*Remainder of Page Intentionally Left Blank*]

Dated: October 23, 2024
     San Juan, Puerto Rico

/s/ *Miguel E. Gierbolini*
Miguel E. Gierbolini
U.S.D.C. – P.R. No. 211,901
**GIERBOLINI & CARROLL LAW OFFICES, PSC**
P.O. Box 9022936
San Juan, P.R. 00902-2936
Tel: (787) 620-0685
Email: miguelgierbolini@gmail.com

/s/ *Martin J. Bienenstock*
Martin J. Bienenstock (*pro hac vice*)
Timothy W. Mungovan (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       tmungovan@proskauer.com

/s/ *Guy Brenner*
Guy Brenner (*pro hac vice*)
**PROSKAUER ROSE LLP**
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004
Tel: (202) 416-6800
Fax: (202) 416-6899
Email: gbrenner@proskauer.com

*Attorneys for the Financial Oversight and Management Board in its own right and as representative of the Puerto Rico Electric Power Authority*

13

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Miguel E. Gierbolini*
Miguel E. Gierbolini