## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as a representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>    Debtor. | PROMESA Title III<br><br>Case No. 17-BK-4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant<br><br>and | Adv. Proc. No. 24-00062-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

SENATE OF PUERTO RICO, through Hon. José Luis Dalmau, in his official capacity as President of the Senate of Puerto Rico,

Intervenor – Defendant

**DECLARATION OF MOHAMMAD SALEH YASSIN, ESQ. IN OPPOSITION TO FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S MOTION FOR SUMMARY JUDGMENT UNDER BANKRUPTCY RULE 7056 AND IN SUPPORT OF GOVERNOR PIERLUISI'S REQUEST FOR RELIEF UNDER RULE 56(D)**

I, Mohammad Saleh Yassin, Esq., under 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a counsel in the law firm O'Melveny & Myers LLP, attorneys for Defendant the Hon. Pedro Pierluisi Urrutia, in his official capacity as the Governor of the Commonwealth of Puerto Rico.[2]

2.      I submit this Declaration on behalf of the Governor in opposition to the Board's Motion and in support of the Governor's request for relief under Rule 56(d) of the Federal Rules of Civil Procedure.

3.      Under Rule 56(d), this Declaration sets forth the facts explaining why the Governor "cannot present facts essential to justify [his] opposition" to the Motion.  (Fed. R. Civ. P. 56(d).)  The legal basis to grant the relief the Governor seeks under Rule 56(d) is explained further in the Opposition.

4.       Statements in this Declaration are based on my personal knowledge derived from my representation of the Governor in this and other proceedings, and my review of the current state of the evidence available to the parties.  To the best of my knowledge, I believe the information in this Declaration to be true and correct.

5.      For the reasons set forth below, the Court should defer consideration of the Motion to enable the Governor to obtain the necessary discovery.

## I.      PROCEDURAL HISTORY

6.      On July 26, 2024, the Board filed the Complaint.[3]

7.      On September 11, 2024, the Governor answered the Complaint.[4]

---

[2] Capitalized terms not otherwise defined shall have the same meaning as in the Governor's Opposition to Financial Oversight and Management Board for Puerto Rico's Motion for Summary Judgment Pursuant to Bankruptcy Rule 7056 and Request for Relief Under Rule 56(d) (the "Opposition," filed with this Declaration).  Unless otherwise noted, all emphasis is added and all quotation marks and citations have been omitted.

[3] ECF No. 1.

[4] ECF No. 28.

8.      On September 23, 2024, the Governor served the Discovery Requests on the

Board, and requested a meet-and-confer regarding the requests.

• A true and correct copy of Governor Pierluisi's First Set of Requests for Production of Documents to the Financial Oversight and Management Board for Puerto Rico, served on September 23, 2024, is attached as Exhibit 1.

• A true and correct copy of Governor Pierluisi's First Set of Interrogatories to the Financial Oversight and Management Board for Puerto Rico, served on September 23, 2024, is attached as Exhibit 2.

9.      On September 25, 2024, the Board moved for summary judgment.[5]

10.     On September 30, 2024, the Board's counsel wrote the Governor's counsel,

refusing to engage in discovery on the grounds that (i) the parties have not yet conducted a Rule

26(f) conference; (ii) discovery allegedly is unnecessary to resolve the Motion; and (iii) engaging

in discovery would supposedly impose a significant burden on the Board.  A true and correct

copy of the September 30, 2024 letter from Guy Brenner (counsel to the Board) to the

Governor's counsel, refusing to respond to the Discovery Requests, is attached as Exhibit 3.

11.     On October 8, 2024, the Governor's counsel responded to Mr. Brenner's

September 30 letter, pointing out that voluntary discovery is particularly appropriate in this case

because the requested documents and information go to the heart of the issues in this case, which

are also the central issues presented by the Board's motion.  The Governor's counsel reiterated

the request that the Board's counsel meet and confer regarding the Discovery Requests.  A true

and correct copy of the Governor's counsel's October 8, 2024 letter is attached as Exhibit 4.

12.     On October 15, 2024, Mr. Brenner responded to the Governor's counsel's

October 8 letter, and repeated the Board's argument that discovery is unnecessary and would

impose a significant burden.  The Board's counsel refused to respond to the Discovery Requests

---

[5] ECF No. 45.

and stated that he believed there was no reason to meet and confer.  Attached as Exhibit 5 is a

true and correct copy of Mr. Brenner's October 15, 2024 letter.

13.    To date, the Board has refused to respond to the Discovery Requests.

## II.    ADDITIONAL FACTS GERMANE TO THE RULE 56(D) INQUIRY

### A.    Authoritativeness and Timeliness

14.    I am one of the Governor's lead counsel and I have personal knowledge of the

allegations, factual matters at issue, and discussions and correspondence between the parties.  By

seeking relief in his Opposition, the Governor has invoked Rule 56(d) as soon as practicable after

the Board filed the Motion.

### B.    Good Cause

15.    The Governor served the Discovery Requests *before* the Board filed the Motion in

an attempt to obtain targeted discovery on an expedited basis, voluntarily, and without burdening

the Court with motion practice.  (*See supra* ¶¶ 8–9.)

16.    The Court has not yet held a case status conference or set discovery deadlines,

and the Governor is well within the acceptable time frame for serving discovery requests.

### C.    Utility and Materiality

17.    The Discovery Requests seek documents and testimony that go to the heart of the

claims at issue in the Motion, including:

- Board analyses and meetings regarding the consistency of Act 10 with the Commonwealth Fiscal Plan or the PREPA Fiscal Plan (RFP Nos. 2, 6, 8; ROG Nos. 2, 3, 4, 6, 8).

- Evidence concerning the Board's assumptions in the PREPA Fiscal Plan regarding the net-metering program, including projections of the program's operations and fiscal impact (RFP Nos. 3, 5; ROG Nos. 11, 12, 13, 14, 15).

- Documents supporting the Board's determination that Act 10 impairs or defeats the purposes of PROMESA (RFP No. 7; ROG No. 7).

5

18.     The documents and information sought in the Discovery Requests are material and are likely to influence the Motion's outcome.  Under arbitrary-and-capricious review, the Board must support its determinations with substantial evidence in the record.  The Board's refusal to produce the evidence, if any, on which it relied in making determinations regarding Act 10 hampers the Governor's ability to evaluate whether the Board's determinations were adequately supported and thus oppose the Motion.

19.     There is a plausible basis for believing that additional facts exist and can be retrieved within a reasonable time, because the Board (i) must have some evidentiary basis for its determinations; (ii) refers to certain consultations with its "financial[] and other advisors," (*see* Mujica Decl. Ex. 19 at 4 and Ex. 21 at 4); (iii) has never denied that relevant documents exist; and (iv) to the contrary, claims that producing the discovery sought would impose a significant "burden" on the Board.  (*See* Exs. 3 and 5.)

20.     To date, the Board has produced no evidence underlying its assertions that "the [] Board and its advisors examined [Act 10]" (SOUF ¶ 91) and that it determined to take certain actions "after consultation with [its] legal, financial, and other advisors."  (Mujica Decl. Ex. 15 at 12.)  The Board contends that it made its determinations "based on its review and analysis" (SOUF ¶ 92), but it has refused to produce that analysis.

## III.    ADDITIONAL EXHIBITS ATTACHED IN SUPPORT OF DECLARATION

21.      I also submit this declaration to place before the Court a true and correct copy of the June 24, 2023 Revised Draft of Senate Bill 1064, available on the legislative docket for Act 10-2024, attached as Exhibit 6.

22.     In addition, I submit a true and correct copy of an excerpt from the Single Legislative Procedure System for Puerto Rico's website describing the legislative history of Act 10-2024, attached as Exhibit 7.

6

I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge, information, and belief.

Dated: October 23, 2024
     London, United Kingdom

/s/ _____

Mohammad Saleh Yassin

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as a representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>Case No. 17-BK-4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant | Adv. Proc. No. 24-00062-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and

SENATE OF PUERTO RICO, through Hon. José Luis
Dalmau, in his official capacity as President of the Senate
of Puerto Rico,

Intervenor – Defendant

**THE GOVERNOR'S FIRST SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO**

Hon. Pedro R. Pierluisi, in his official capacity as the Governor of the Commonwealth of

Puerto Rico (the "Governor"), hereby requests that the Financial Oversight and Management

Board for Puerto Rico produce for inspection and copying the documents and things called for

by the Requests listed below within the time provided for in the applicable rules.

**DEFINITIONS**

1.     "Act 10" refers to Act 10-2024, enacted on January 10, 2024.

2.     The "Commonwealth" means the Commonwealth of Puerto Rico.

3.     The "Commonwealth Fiscal Plans" means the 2023 and 2024 Commonwealth

Fiscal Plans certified on April 3, 2023, and June 5, 2024, respectively.

4.     "Communication" shall mean any oral, written or electronic transmission of

information, including, without limitation, meetings, discussions, conversations, telephone calls,

e-mail messages, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences,

seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks, or

other media of any kind.

5.     The "Complaint" means the complaint filed by the Oversight Board regarding Act

10 on July 26, 2024, in Adv. Proc. No. 24-00062-LTS.

2

6.      The "Compliance Certification" means the Act 10-2024 compliance certification
provided to the Oversight Board under PROMESA section 204(a) by the Government on
February 12, 2024.

7.      "Document" shall be synonymous in meaning and equal in scope to the usage of
this term in Federal Rule of Civil Procedure 34(a), including electronic or computerized data
compilations.  A draft or non-identical copy is a separate document within the meaning of this
term.

8.      The "Government" means the elected government of the Commonwealth of
Puerto Rico and excludes the Oversight Board.

9.      The "Oversight Board" means the Financial Oversight and Management Board
for Puerto Rico, including each of its present and former members, employees, officers, agents,
affiliates, representatives, accountants, experts, consultants, and/or any other person acting on
their behalf.

10.     "PREB" refers to the Puerto Rico Energy Bureau.

11.     "PREPA" refers to the Puerto Rico Electric Power Authority.

12.     The "PREPA Fiscal Plan" means the 2023 fiscal plan for PREPA certified by the
Oversight Board under PROMESA section 201(e)(2) on June 23, 2023.

13.     Reference to a corporation, partnership, limited partnership, limited liability
company, unincorporated association, joint venture, government entity, or other fictitious person
shall be deemed to include each and all of its present or former subsidiaries, predecessors and
successors, and, with respect to each of these entities, its present or former officers, directors,
shareholders, employees, partners, members, general partners, limited partners, agents,
representatives, accountants, experts, consultants, and any other person acting on their behalf.

14.     References to the singular include the plural, and references to the plural include the singular as needed to construe the Requests in their broadest permissible form.

15.     The terms "all," "any," "each," and "every" shall each be construed as both "each" and "every" to bring within the scope of each Request or Requests all responses which might otherwise be construed to be outside of its or their scope.

16.     The masculine form of a noun or pronoun includes the feminine form to construe the Requests in their broadest permissible form.

17.     Each request shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.  Any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.

## INSTRUCTIONS

18.     These Requests apply to all documents in your possession, custody or control, including documents in the possession, custody or control of your members, employees, attorneys, agents, accountants and advisors.  A document is deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you: (1) own such document in whole or in part; (2) have a right, by contract, statute or otherwise, to use, inspect, examine or copy such document on any terms; (3) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (4) as a practical matter, have been able to use, inspect, examine, or copy such document when you sought to do so.

19.     As the term "possession" pertains to e-mail, the term includes, but is not limited to, e-mail contained in your electronic e-mail directories containing (a) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such

4

subdirectories; (b) "sent" e-mails, including all subdirectories irrespective of the title of such

subdirectories; and (c) "received" e-mails, including all subdirectories irrespective of the title of

such subdirectories.

20.     In responding to each Request, you are to review and search all relevant files of

appropriate entities and persons.

21.     All document Requests shall be deemed to include Requests for any and all

transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the

documents.

22.     You are to produce the original and all non-identical copies, including all drafts,

of each document requested.  If you are not able to produce the original of any document, please

produce the best available copy and all non-identical copies, including drafts.

23.     Any document requested shall be produced as it is kept in the ordinary course of

business.  The name of the file from which it was produced, the identity of the person from

whose file it was produced, and the identity of the current custodian of that file each shall be set

forth.  All documents requested herein shall be produced electronically as tagged image file

format ("TIFF") or portable document format ("PDF") files, except that all spreadsheets and

accounting and financial data, including those created with Excel software, shall be produced in

their native form.

24.     If you seek to withhold any document, thing, or information on the basis that it is

entitled to some privilege or other limitation of discovery, you shall produce as much of the

document concerned as to which no claim of privilege is made.  With respect to documents or

portions of documents for which a claim of privilege or limitation is made, you are instructed to

provide a numerical list of the document(s) and thing(s) for which a privilege or limitation of

discovery is claimed that (1) identifies the nature of the privilege (including work product) asserted and, if the privilege is governed by state law, indicate the state of the privilege rule invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (i) the type of document, e.g., letter or memorandum; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support the privilege claimed; (iv) the date of the document; (v) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment also is withheld from production.

25.     Each Definition, Instruction, and Request herein shall be construed independently and not with reference to any other Definition, Instruction or Request for the purposes of limitation.

26.     If any meaning of any term in any Request herein is unclear to you, without waiver of the Governor's right to seek a full and complete response to the Request, you shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Request according to the assumed meaning.

27.     If you interpose an objection to a Request, you should clearly indicate to which part or portion of the Request the objection is directed and provide all documents to which objection is not made as if such part or portion were propounded as a separate Request.

28.     Each Request shall be deemed continuing so as to require prompt supplementation if you obtain, generate, or discover additional documents.  If, after responding, you obtain or become aware of any additional documents responsive to these Requests, production of such additional documents shall be made forthwith as required by Rule 7026 of the Federal Rules of Bankruptcy Procedure and Rule 26(e) of the Federal Rules of Civil Procedure.

### REQUESTS

1.     All Documents and Communications underlying, supporting, or concerning the Oversight Board's contention that the Compliance Certification failed to satisfy the requirements of PROMESA section 204(a), including any related analysis or evaluation performed by outside experts or consultants.

2.     All Documents and Communications underlying, supporting, constituting or concerning any economic or financial analyses or evaluations of (i) the effect of Act 10 on the Commonwealth's and/or PREPA's revenues or expenditures or (ii) the consistency of Act 10 with the Commonwealth Fiscal Plan and/or the PREPA Fiscal Plan, including any such analysis or evaluation performed by outside experts or consultants.

3.     All Documents and Communications underlying, supporting, constituting or concerning any analyses or evaluations regarding the preparation of the PREPA Fiscal Plan, specifically with respect to the net metering program and any estimated effects of the program on the Commonwealth's and/or PREPA's revenues and expenses.

4.     All Documents and Communications underlying, supporting, constituting or concerning any analyses or evaluations regarding the PREPA Fiscal Plan's requirement that PREB study net metering and establish a new net metering compensation and crediting structure.

7

5.      All Documents and Communications underlying, supporting, constituting or concerning any analyses or evaluations concerning the PREPA Fiscal Plan's assumption that the net metering program will remain unchanged for the duration of the PREPA Fiscal Plan.

6.      All Documents and Communications underlying, supporting, or concerning the Oversight Board's determination that Act 10 "undermines or eliminates the economic improvements the Fiscal Plans are designed to promote," as alleged in paragraph 17 of the Complaint, including any related analysis or evaluation performed by outside experts or consultants.

7.      All Documents and Communications underlying, supporting, or concerning the Oversight Board's determination that Act 10 "impairs or defeats PROMESA's purposes of achieving fiscal responsibility and access to capital markets" under PROMESA section 108(a)(2), as alleged in paragraph 67 of the Complaint, including any related analysis or evaluation performed by outside experts or consultants.

8.      All Documents relating to the Oversight Board's process for reviewing the Government's certifications for newly enacted laws under PROMESA section 204(a), including but not limited to any policies, procedures, templates, or forms.

9.      All Documents distributed, discussed, reviewed, or considered at any meeting of the Oversight Board that concern Act 10.

10.      All minutes of Oversight Board meetings at which Act 10, PROMESA section 201(b), PROMESA section 204(a), or PROMESA section 108(a) were discussed.

*Remainder of Page Intentionally Left Blank*

8

Dated: September 23, 2024
San Juan, Puerto Rico

Respectfully,

**O'MELVENY & MYERS LLP**

*/s/ William J. Sushon*
John J. Rapisardi
William J. Sushon
(Admitted *Pro Hac Vice*)
1301 Avenue of the Americas,
17th Floor,
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
        wsushon@omm.com

-and-

Peter Friedman
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: pfriedman@omm.com

*Attorneys for Governor Pedro R. Pierluisi*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
Ignacio J. Labarca-Morales
USDC No. 303307
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Telephone: (787) 705-2171
Facsimile: (787) 936-7494
Email: lmarini@mpmlawpr.com
        cvelaz@mpmlawpr.com
        ilabarca@mpmlawpr.com

*Attorneys for Governor Pedro R. Pierluisi*

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as a representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>     Debtor. | PROMESA Title III<br><br>Case No. 17-BK-4780-LTS |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant | Adv. Proc. No. 24-00062-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and

SENATE OF PUERTO RICO, through Hon. José Luis
Dalmau, in his official capacity as President of the Senate
of Puerto Rico,

Intervenor – Defendant

## THE GOVERNOR'S FIRST SET OF INTERROGATORIES TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO

Hon. Pedro R. Pierluisi, in his official capacity as the Governor of the Commonwealth of Puerto Rico (the "Governor"), hereby requests that the Financial Oversight and Management Board for Puerto Rico answer the following interrogatories separately and fully, in writing, under oath and within the time provided for in the applicable rules:

### INSTRUCTIONS AND DEFINITIONS

1.      If You refuse to answer any portion of any Interrogatory on the grounds that it requests disclosure of information that is privileged on any grounds or is otherwise improper as to form or substance, You must answer so much of the Interrogatory as is believed proper as to form and substance, and further specifically and separately state the basis for Your contention that the remainder of the Interrogatory is improper, including at least a general indication of the nature of the information if it is claimed to be privileged.

2.      You are to answer each Interrogatory separately and fully, unless objected to, in which event the reasons for the objections should be specifically and separately stated, and You should answer to the extent the Interrogatory is not objectionable.  Where You cannot provide a complete answer to an Interrogatory, the Interrogatory should be answered to the extent possible and a statement made explaining why only a partial answer is given.

2

3.      To the extent that you contend that any responsive information is subject to third party confidentiality obligations, you must identify the documents or information being withheld under any such claims along with the identity of the relevant third party and nature of the confidentiality obligation, immediately seek permission from any such third party to produce relevant information, and provide a list of the third parties.

4.      If You object to or disagree with any of the definitions set forth in these Interrogatories, or if you do not understand any term used in these Interrogatories, explain in detail the nature of your disagreement with the definition, or lack of understanding of the term, and provide your definition of the term.

5.      "Act 10" refers to Act 10-2024, enacted on January 10, 2024.

6.      The "Commonwealth" means the Commonwealth of Puerto Rico.

7.      The "Commonwealth Fiscal Plans" means the 2023 and 2024 Commonwealth Fiscal Plans certified on April 3, 2023, and June 5, 2024, respectively.

8.      The "Complaint" means the complaint filed by the Oversight Board regarding Act 10 on July 26, 2024, in Adv. Proc. No. 24-00062-LTS.

9.      The "Compliance Certification" means the Act 10-2024 compliance certification provided to the Oversight Board under PROMESA section 204(a) by the Government on February 12, 2024.

10.     "Document" shall be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a), including electronic or computerized data compilations.  A draft or non-identical copy is a separate document within the meaning of this term.

11.    The "Government" means the elected government of the Commonwealth of Puerto Rico and excludes the Oversight Board.

12.    "Identify" means: (1) when used in reference to a natural person, to state the person's full name, title, present (or last known) address, telephone number, occupation, present business affiliation or employer, business address, and exact duties and responsibilities of such individual; (2) when used with respect to any legal entity (such as a corporation, company, or person other than a natural person), to state the entity's name, the place of incorporation or organization, the principal place of business, and the nature of the business conducted by that legal entity; and (3) when used with respect to any Document, to state the Document's title and subject matter, form (e.g., letter, memorandum, email, etc.), document production number range, date, author(s), addressee(s), recipient(s), and name of its present custodian.

13.    The "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico, including each of its present and former members, employees, officers, agents, representatives, accountants, experts, consultants, and any other person acting on their behalf.

14.    The term "Person" means any natural person or any business, legal, or governmental entity or association.

15.    "PREB" refers to the Puerto Rico Energy Bureau.

16.    "PREPA" refers to the Puerto Rico Electric Power Authority.

17.    The "PREPA Fiscal Plan" means the 2023 fiscal plan for PREPA certified by the Oversight Board under PROMESA section 201(e)(2) on June 23, 2023.

18.    The terms "You" and "Your," mean the Oversight Board.

19.    Reference to a corporation, partnership, limited partnership, limited liability company, unincorporated association, joint venture, government entity, or other fictitious person

4

shall be deemed to include each and all of its present or former subsidiaries, predecessors and successors, and, with respect to each of the aforesaid entities, its present or former officers, directors, shareholders, employees, partners, members, general partners, limited partners, agents, representatives, accountants, experts, consultants, and any other person acting on their behalf.

20.     References to the singular include the plural, and references to the plural include the singular as needed to construe the Requests in their broadest permissible form.

21.     The terms "all," "any," "each," and "every" shall each be construed as both "each" and "every" to bring within the scope of each Request or Requests all responses which might otherwise be construed to be outside of its or their scope.

22.     The terms "or" and "and" shall be read in the conjunctive and in the disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these requests.

23.     The masculine form of a noun or pronoun includes the feminine form to construe the Requests in their broadest permissible form.

24.     Any request propounded in the present tense shall also be read as if propounded in the past tense and vice versa.

## INTERROGATORIES

**INTERROGATORY NO. 1.**

Describe all facts supporting Your contention that the Compliance Certification failed to satisfy the requirements of PROMESA section 204(a).

**INTERROGATORY NO. 2**

Describe any investigation or analysis You performed to determine that the Compliance Certification was allegedly insufficient under PROMESA section 204(a).

**INTERROGATORY NO. 3**

Identify any experts, consultants, advisors, or other professionals You engaged to review (i) any economic or financial analyses or evaluations of any estimated effects of Act 10 on PREPA's and/or the Commonwealth's revenues or expenditures or (ii) the consistency of Act 10 with the Commonwealth Fiscal Plan or the PREPA Fiscal Plan, and describe the purpose and scope of their engagement.

**INTERROGATORY NO. 4**

To the extent not described in response to Interrogatory No. 3, describe any economic or financial analysis You performed to analyze or determine (i) any estimated effects of Act 10 on PREPA's and/or the Commonwealth's revenues or expenditures or (ii) the consistency of Act 10 with the Commonwealth Fiscal Plan or the PREPA Fiscal Plan.

**INTERROGATORY NO. 5**

Describe all facts supporting the Complaint's allegation in paragraph 17 that Act 10 "undermines or eliminates the economic improvements the Fiscal Plans are designed to promote," including but not limited to identifying all Documents on which You relied and describing any analysis You performed to support this allegation.

**INTERROGATORY NO. 6**

Identify and describe any experts, consultants, advisors, and/or other professionals You engaged or on which You relied to analyze or determine whether Act 10 "undermines or eliminates the economic improvements the Fiscal Plans are designed to promote," as alleged in in paragraph 17 of the Complaint.

**INTERROGATORY NO. 7**

Describe all facts supporting the Complaint's allegation in paragraph 67 that Act 10 "impairs or defeats PROMESA's purposes of achieving fiscal responsibility and access to capital markets" under PROMESA section 108(a)(2), including but not limited to identifying all documents on which You relied and describing any analysis You performed to support this allegation.

**INTERROGATORY NO. 8**

Identify and describe Your process, policies, or procedures for review, analysis, or assessment of the elected Government's certification of newly enacted legislation under PROMESA section 204(a), and any such review, analysis and/or assessment You performed concerning Act 10.

**INTERROGATORY NO. 9**

Identify any experts, consultants, advisors, or other professionals You engaged to review, analyze, or assess the Compliance Certification under PROMESA section 204(a).

**INTERROGATORY NO. 10**

Describe all facts supporting the Complaint's allegation in paragraph 1 that Act 10 "bars the Energy Bureau from independently regulating Puerto Rico's electric sector."

**INTERROGATORY NO. 11**

Describe any investigation or analysis You performed in connection with the preparation of the PREPA Fiscal Plan concerning the net metering program and its estimated effects on the Commonwealth's and/or PREPA's projected revenues and expenses.

**INTERROGATORY NO. 12**

Describe any investigation or analysis You performed regarding the PREPA Fiscal Plan's requirement that PREB study net metering and establish a new net metering compensation and crediting structure.

**INTERROGATORY NO. 13**

Describe any internal meetings or discussions You had regarding the PREPA Fiscal Plan's requirement that PREB study net metering and establish a new net metering compensation and crediting structure.

**INTERROGATORY NO. 14**

Describe any investigation or analysis You performed concerning the PREPA Fiscal Plan's assumption that the net metering program will remain unchanged for the duration of the PREPA Fiscal Plan.

**INTERROGATORY NO. 15**

Describe any internal meetings or discussions You had regarding the PREPA Fiscal Plan's assumption that the net metering program will remain unchanged for the duration of the PREPA Fiscal Plan.

*Remainder of Page Intentionally Left Blank*

Dated: September 23, 2024
San Juan, Puerto Rico

Respectfully,

**O'MELVENY & MYERS LLP**

*/s/ William J. Sushon*
John J. Rapisardi
William J. Sushon
(Admitted *Pro Hac Vice*)
1301 Avenue of the Americas,
17th Floor,
New York, NY 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: jrapisardi@omm.com
        wsushon@omm.com

-and-

Peter Friedman
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: pfriedman@omm.com

*Attorneys for Governor Pedro R. Pierluisi*

**MARINI PIETRANTONI MUÑIZ LLC**

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
Ignacio J. Labarca-Morales
USDC No. 303307
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00918
Telephone: (787) 705-2171
Facsimile: (787) 936-7494
Email: lmarini@mpmlawpr.com
        cvelaz@mpmlawpr.com
        ilabarca@mpmlawpr.com

*Attorneys for Governor Pedro R. Pierluisi*

# EXHIBIT 3



Proskauer Rose LLP   O1001 Pennsylvania Avenue, NW Suite 600 South   Washington, DC 20004-2533

September 30, 2024

By Email

Simon Hedlin, Esq.
Peter Friedman, Esq.
John J. Rapisardi, Esq.
William J. Sushon, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036

Guy G. Brenner
Partner
d +1.202.416.6830
f 202.416.6899
gbrenner@proskauer.com
www.proskauer.com

Re: *Fin. Oversight & Mgmt Bd. for P.R. v. Pierluisi*, Adv. Proc. No. 24-00062 (D.P.R.)

Dear Counsel:

We write in response to Mr. Hedlin's email dated September 23, 2024, regarding the above-referenced adversary proceeding and attaching: (1) Governor Pierluisi's First Set of Requests for Production of Documents to the Financial Oversight and Management Board for Puerto Rico; and (2) Governor Pierluisi's First Set of Interrogatories to the Financial Oversight and Management Board for Puerto Rico (collectively, the "Discovery Requests").  The Discovery Requests are procedurally improper and untimely and, as a result, do not necessitate a response by the Oversight Board at this time.

First, the Discovery Requests were not properly served pursuant to Rule 26 of the Federal Rules of Civil Procedure ("FRCP"), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7026.  FRCP 26(d)(1) prohibits any party from seeking discovery from any source before participating in a scheduling conference pursuant to FRCP 26(f).  Prior to the Rule 26(f) conference, discovery requests are premature.  *See, e.g., Hernández-Castrodad v. Steidel-Figueroa*, 2022 WL 715553, *3 (D.P.R. Mar. 9, 2022) (citing Rule 26(d)(1) in granting a party's motion to quash a subpoena served before a Rule 26(f) conference).  Because the parties here have not conducted such a conference, the Discovery Requests are untimely.

Second, propounding discovery at this point is inconsistent with the current case schedule set forth in the Court's *Order Setting Expedited Schedule*, dated August 9, 2024 [ECF No. 6] (the "Scheduling Order").  The Scheduling Order adopts the schedule jointly proposed by the parties. *See Urgent Joint Motion for an Order Setting Expedited Briefing Schedule* [ECF No. 7]. Consistent with the parties' joint proposal, the Scheduling Order provides deadlines for expedited motions for summary judgment but does not include expedited discovery deadlines.  Accordingly, discovery at this time, particularly given that the parties are in the midst of summary judgment briefing, would be inconsistent with the parties' agreement and you have provided no explanation

**Proskauer»**

September 30, 2024
Page 2

for why you believe discovery is necessary.[1] *See Order Denying Motions Related to Governor's Request for Discovery* [Adv. Proc. 22-00063, ECF No. 64] at 4 (denying the Governor's request for discovery in the midst of summary judgment briefing in litigation over Act 41-2022, because, among other reasons, conducting discovery during pending motions practice was "not an efficient use of the parties' time or judicial resources.").

Finally, there is no need for discovery to resolve the Oversight Board's motion for summary judgment. The Oversight Board's *Motion for Summary Judgment Pursuant to Bankruptcy Rule 7056* sets forth the undisputed material facts necessary to resolve the claims in this proceeding. *See* ECF No. 46. Pursuant to the Scheduling Order, the Governor's response to the motion is due October 23, 2024, and can address there any material facts you allege are disputed.[2]

In light of these objections, the Oversight Board does not intend to respond to the Discovery Requests.[3]

Sincerely,

Guy G. Brenner

---

[1] The Governor was aware of the claims raised by the Oversight Board in its complaint prior to agreeing to the expedited schedule and, unlike in the Act 41-2022 adversary proceeding, did not seek accelerated discovery in connection with the expedited scheduling order. *See Urgent Motion for Limited Expedited Discovery* [Adv. Proc. 22-00063, ECF No. 51]. Further, your current Discovery Requests could not be based on any of the materials or arguments submitted with the Oversight Board's pending motion for summary judgment as the discovery was served 2 days before the Oversight Board filed its motion. Indeed, your Discovery Requests do not seek expedited responses, which means that if the Discovery Requests were proper, the Oversight Board's responses would be due on October 23, 2024, the same day as the Governor's opposition to the Oversight Board's summary judgment motion is due. Accordingly, it is evident the Governor does not require discovery at this time (much less, to respond the pending summary judgment motion) and engaging in discovery now would only serve to impose unnecessary burdens on the Oversight Board while it is engaged in summary judgment motion practice.

[2] To be clear, the Oversight Board does not believe that any discovery is necessary for the resolution of its pending motion for summary judgment. Of course, to the extent you believe discovery is necessary in order to present facts essential to oppose the pending motion for summary judgment, you can—as you have done in prior litigation—file a motion pursuant to Fed. R. Civ. P. 56.

[3] For the reasons set forth above, we do not believe a meet and confer, as proposed in Mr. Hedlin's email, on the Discovery Requests is necessary. If you feel otherwise, please let us know.

# EXHIBIT 4

**O'Melveny**

O'Melveny & Myers LLP          T: +1 212 326 2000
1301 Avenue of the Americas    F: +1 212 326 2061
Suite 1700                     omm.com
New York, NY 10019-6022

October 8, 2024                               **William J. Sushon**
                                              D: +1 212 728 5693
**VIA E-MAIL**                                wsushon@omm.com

Guy G. Brenner
Proskauer Rose LLP
1001 Pennsylvania Avenue, NW
Suite 600 South
Washington, DC 20004-2533

Re:    *Fin. Oversight & Mgmt Bd. for P.R. v. Pierluisi*, Adv. Proc. No. 24-00062 (D.P.R.)

Dear Guy:

This responds to your September 30, 2024 letter (the "Sept. 30, 2024 Letter") regarding the
Governor's discovery requests.

Contrary to your assertion, these requests seek documents and information that go to the heart
of the issues presented by the Oversight Board's summary judgment motion—whether the
Board's actions were arbitrary or capricious.  The requests are narrowly tailored to discover
information regarding core issues in this case.  For example:

- RFP 6 seeks documents "underlying, supporting, or concerning the Oversight Board's
  determination that Act 10 'undermines or eliminates the economic improvements the
  Fiscal Plans are designed to promote,' as alleged in paragraph 17 of the Complaint."

- ROG 8 requests that the Board describes its "process, policies, or procedures for review,
  analysis, or assessment of the elected Government's certification of newly enacted
  legislation under PROMESA section 204(a), and any such review, analysis and/or
  assessment [] performed concerning Act 10."

Limited discovery such as this, that goes to "core issues" of the case, is permissible even in the
face of a pending motion to dismiss.[1]

Further, conducting limited discovery now would be the most efficient way to proceed with this
case.  Rather than prolonging this litigation through multiple rounds of summary judgment
motions, conducting discovery now can allow the parties to resolve these issues once and for
all, saving significant time and expense for the parties and the Court.

---

[1]     *See Udeen v. Subaru of Am., Inc.*, 378 F. Supp. 3d 330, 333 (D.N.J. 2019).

O'Melveny

---

The Board's unadorned objection to the "burdens"[2] of this discovery is unavailing.  Given the discovery requests' narrow focus on key facts, the requests "will not place an undue burden" on the Board,[3] nor would they be "unduly time consuming or expensive."[4]

Nor does it matter that "the parties are in the midst of summary judgment briefing," given that the Board concedes that the Governor served his discovery requests *before* the Board moved for summary judgment.[5]

We also disagree with your contention that the discovery requests "were not properly served."[6] Courts order discovery for good cause even if a Rule 26(f) conference has not yet been conducted.[7]  "Good cause exists if the request for expedited discovery is reasonable . . . in light of all of the surrounding circumstances."[8]  In light of the narrow scope of the Governor's requests and the absence of any undue burden on the Board, we believe that the requests are reasonable.

Please let us know your availability this week to meet and confer.

 Very truly yours,


*/s/ William J. Sushon*


William J. Sushon

---

[2]     Sept. 30, 2024 Letter at 2 n.1.

[3]     *See Jimenez v. Nielsen*, 326 F.R.D. 357, 362 (D. Mass. 2018) (ordering discovery despite pending dispositive motion and holding that the discovery "will not place an undue burden on respondents" because its scope was "limited").

[4]     *See Udeen*, 378 F. Supp. 3d at 333 (holding that "since the discovery will focus on core issues, the requested discovery should be readily available" and not "unduly time consuming or expensive").

[5]     *Compare* Sept. 30, 2024 Letter at 1 *with* Sept. 30, 2024 Letter at 2 n.1.

[6]     *Id.* at 1.

[7]     *See, e.g.*, *Jimenez*, 326 F.R.D. at 361.

[8]     *Id.* (quotation marks and alterations omitted).  *See also Stern v. Cosby*, 246 F.R.D. 453, 457 (S.D.N.Y. 2007) ("More recently, courts have applied a more flexible standard of 'reasonableness' and 'good cause' . . . I agree that the more flexible approach is the better approach.").

# EXHIBIT 5

**Proskauer»**  Proskauer Rose LLP   O1001 Pennsylvania Avenue, NW Suite 600 South   Washington, DC 20004-2533

October 15, 2024

By Email

William J. Sushon, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, NY  10036

Guy G. Brenner
Partner
d +1.202.416.6830
f 202.416.6899
gbrenner@proskauer.com
www.proskauer.com

Re: *Fin. Oversight & Mgmt. Bd. for P.R. v. Pierluisi*, Adv. Proc. No. 24-00062 (D.P.R.)

Dear Bill:

We write in response to your letter dated October 8, 2024, regarding the above-referenced adversary proceeding and the discovery requests sent to the Oversight Board on September 23, 2024 (the "Discovery Requests").[1]

As we explained in our letter dated September 30, 2024, the Discovery Requests are not timely, are inconsistent with the scheduling order entered in this adversary proceeding, and the discovery sought therein is not necessary at this time.  Your letter attempts to respond to some of these points, but does not establish that your Discovery Requests are procedurally proper or justified at this time.

Primarily, your letter fails adequately to address the fact you attempted to initiate discovery in advance of a Federal Rules of Civil Procedure ("FRCP") 26(f) scheduling conference, in violation of the FRCP.  You state you "disagree with [our] contention that the discovery requests 'were not properly served,'" but provide no support for that position.  Rather, you note "[c]ourts order discovery for good cause even if a Rule 26(f) conference has not yet been conducted."  But that argument simply confirms our position.  A court order is one basis[2] for deviating from the requirements of Rule 26, but no such order has been requested, let alone entered.[3]

---

[1] In your letter, you requested our availability for a meet and confer on the Discovery Requests.  On October 10, 2024, I wrote to acknowledge receipt of your letter.  In my email, I noted that we were preparing a written response, but due to the Jewish holiday would likely not provide the response until this week.  I invited counsel for the Governor to advise if it was important to speak before receiving our response.  I did not receive a response to my email.

[2] FRCP 26(d)(1) provides that no discovery is permitted before Rule 26(f) conference, "except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  None of those exceptions apply or have been met here.

[3] For this reason, your reliance on *Jimenez v. Nielsen*, 326 F.R.D. 357, 362 (D. Mass. 2018) is misplaced.  In that matter the party seeking discovery filed a motion for leave to seek discovery, which was granted in part because the court found good cause existed to permit limited discovery due in part to a pending motion for a temporary restraining order.  The other case you cite, *Udeen v. Subaru of Am., Inc.*, 378 F. Supp. 3d 330, 333 (D.N.J. 2019), is also inapposite.  While the *Udeen* court did permit limited discovery while a motion to dismiss was pending, the court permitted limited



William J. Sushon, Esq.
October 15, 2024
Page 2

With respect to your contention that "good cause" exists for expedited discovery, we disagree. Good cause for expedited discovery requires some compelling reason why discovery cannot wait. Even the case you cite notes "without a risk of irreparable harm, expedited discovery is unwarranted."[4] You do not contend any such risk exists, and your explanation for why discovery is needed now is not persuasive.

Specifically, you contend that:

> conducting limited discovery now would be the most efficient way to proceed with this case. Rather than prolonging this litigation through multiple rounds of summary judgment motions, conducting discovery now can allow the parties to resolve these issues once and for all, saving significant time and expense for the parties and the Court.

But this position ignores the fact that the parties agreed summary judgment briefing would proceed in advance of discovery and proposed such a schedule to the Court, which the Court adopted. Indeed, the parties' joint submission was premised on the understanding this case can be resolved most efficiently through expedited summary judgment prior to expending time and resources on unnecessary discovery.[5] Your letter does not explain what caused your assessment to change.[6]

Further undermining your justification is that summary judgment briefing is well underway.[7] Opening briefs were filed on September 25, 2024, and opposition briefs are due next week. As such, it is unclear how engaging in discovery now could avoid "multiple rounds of summary

---

discovery, in part, because there was a risk that evidence might be lost if there was a protracted delay, which the court expected in connection with the motion to dismiss. In contrast, here there is no risk of destruction of evidence.

[4] *Jiminez*, 326 F.R.D. at 361.

[5] If that were not the case, we would have expected the Governor to have sought discovery as part of the initial scheduling order, as he did in the Act 41-2022 adversary proceeding. *See* Adv. Proc. 22-00063, ECF No. 15 at ¶ 5(c).

[6] As noted in my prior letter, the Oversight Board's summary judgment motion cannot be the basis for any change in position, as the Discovery Requests were improperly served two days prior to the motion's filing and sought responses the same day summary judgment opposition briefs are due. You do not contend otherwise in your letter. The Oversight Board maintains that no discovery is necessary to decide its summary judgment motion, as was the case in every other case the Oversight Board has been forced to initiate to challenge Puerto Rico laws.

[7] You dismiss our concerns about the burden the Discovery Requests would impose, contending they are "unadorned objections." Putting aside the accuracy of your characterization of the Discovery Requests as "narrowly tailored," the fact remains you emailed the requests two days before the Oversight Board's summary judgment brief was due and responding to them would have overlapped with the Oversight Board's time to prepare a response to the Senate President's motion for summary judgment. It is self-evident the burden the Discovery Requests impose, particularly given that the Governor: (1) waited to provide them to the Oversight Board until right before the summary judgment briefing deadline; and (2) has provided no cogent basis for why discovery is needed now.

**Proskauer »**

William J. Sushon, Esq.
October 15, 2024
Page 3

judgment motions" and how efficiency could be served by engaging in discovery at this time, as you contend.

Accordingly, we suggest, if efficiency is the motivation for your Discovery Requests,[8] we continue with the schedule currently in effect. Summary judgment briefing will be completed in less than a month. If the Court rules in the Oversight Board's or the Senate President's favor, then discovery should be unnecessary. If the Court denies both summary judgment motions, the parties can engage in appropriate discovery at that time, informed by the Court's decision.

Simply put, the Oversight Board continues to object to the Discovery Requests and will not respond to them. If you still believe a meet and confer would be productive, please contact me and we will schedule a meeting.

Sincerely,

Guy G. Brenner

Cc:    Simon Hedlin, Esq.
       Peter Friedman, Esq.
       John J. Rapisardi, Esq.
       Martin Bienenstock, Esq.
       Timothy Mungovan, Esq.
       Michael Firestein, Esq.
       Margaret Dale, Esq.

---

[8] We note that if efficiency was the true basis for the Discovery Requests, we would have expected an effort to pause summary judgment briefing at the time the requests were improperly served. That idea has not even suggested. Indeed, undermining any "good cause" for expediting discovery is the lack of diligence shown by the Governor in this matter. The case schedule in this adversary proceeding was established on August 9, 2024. [ECF No. 6] The Governor did not attempt to serve discovery until September 23, 2024, two days before summary judgment briefs were due. After the Oversight Board objected to the Discovery Requests, the Governor did not—and still has not—filed a motion for discovery or to pause the summary judgment briefing schedule. Further, when I suggested the meet and confer requested in your letter wait until this week unless it was important to speak last week, I received no response. This approach demonstrates there is no true urgency for discovery and undermines any arguments that "good cause" for expedited discovery exists.

# EXHIBIT 6

(ENTIRILLADO ELECTRONICO)

## ESTADO LIBRE ASOCIADO DE PUERTO RICO

19na. Asamblea                                                                4ta. Sesión
      Legislativa                                                                  Ordinaria

## SENADO DE PUERTO RICO

# P. del S. 1064

21 de octubre de 2022

Presentado por el señor *Zaragoza Gómez* (Por petición de Sierra Club)

*Coautora la señora Hau*

*Referido a la Comisión de Proyectos Estratégicos y Energía*

**LEY**

Para enmendar el Artículo 4 de la Ley 114-2007, según enmendada, conocida como "Ley
del Programa de Medición Neta en la Autoridad de Energía Eléctrica", a los fines
de reformular el término provisto para realizar un estudio sobre medición neta y
energía distribuida; para que la Compañía de Servicio Eléctrico pueda solicitar al
Negociado de Energía y al Federal Emergency Management Agency (FEMA, por
sus siglas en inglés), los fondos necesarios para aumentar la capacidad del sistema
de distribución para integrar sistemas fotovoltaicos distribuidos; y para otros fines.

## EXPOSICIÓN DE MOTIVOS

La Ley 17-2019, según enmendada, conocida como la "Ley de Política Pública
Energética", estableció la política pública que creó los parámetros guías para que el
sistema energético de Puerto Rico sea un sistema energético resiliente, confiable,
robusto, con tarifas justas y razonables. Por otro lado, el programa de medición neta
establecido por la Ley 114-2007, según enmendada, creó el programa de medición neta,
con el propósito de incentivar que clientes residenciales y comerciales instalen equipos
fotovoltaicos.   Mediante el programa de medición neta, el cliente recibiría una
compensación por el exceso de electricidad que genere su equipo y por esta ser a través

de un crédito, sólo pagaría por la electricidad neta que le suministre la Autoridad de Energía Eléctrica (en adelante, "AEE") o la Compañía de Servicio Eléctrico (en adelante, "CSE").

En los informes trimensuales que LUMA está obligado a entregar con el Negociado de Energía, se observa ~~como~~ cómo, en los últimos años, la generación de energía solar distribuida ha alcanzado más de 370 MW y cada mes se están conectando más de 2,000 sistemas a la red eléctrica. Estos sistemas tienen el potencial de aportar alrededor de 52,000 GWh mensualmente. Esta dinámica refleja la gran importancia y valor que nuestra ciudadanía le otorga a la generación de energía solar, particularmente en una coyuntura donde existe una red eléctrica debilitada, poco confiable y mal operada.

La energía solar en techos provee resiliencia y autosuficiencia para decenas de miles de consumidores, mientras contribuye a la reducción de la inversión del erario en la compra de combustibles fósiles importados, y cuyos costos dependen de las fluctuaciones tanto de la relación entre oferta y demanda, así como de la especulación en los mercados financieros. Esta reducción en la compra de combustibles fósiles también redunda en un beneficio económico a las diversas clases de consumidores que aún dependen del sistema de generación que provee la AEE, AES y Ecoeléctrica, y de transmisión y distribución que actualmente opera LUMA Energy (en adelante, "LUMA").

Para las diversas clases de consumidores (ciudadanía, comercios, ONGs y empresas, entre otras) que pueden invertir en la instalación de sistemas fotovoltaicos, estos sistemas se han convertido en una alternativa viable y esencial para mitigar los problemas de inestabilidad y altos costos de un sistema eléctrico sustentado por la quema de combustibles fósiles. Para las personas que dependen de equipos médicos para manejar condiciones de salud crónicas y mantener cierta calidad de vida, los

sistemas de respaldo de energía sostenidos por sistemas de placas solares con baterías, pueden literalmente salvar sus vidas.

La organización CAMBIO, en colaboración con la IEEFA, en su Estudio de Integración de Recurso Solar Distribuido en Puerto Rico, realizó un modelaje que muestra la viabilidad de alcanzar a 75% energía renovable distribuida dentro de 15 años y que esta transformación resultaría en un sistema más resiliente, confiable y asequible. Este modelaje también demuestra que no tendría que haber cambios operacionales o mejoras a la red para mantener la confiabilidad del sistema hasta que la cantidad de energía renovable distribuida alcance al menos 25% del consumo energético del país.

La medición neta es clave para que los consumidores tengan el derecho de aprovecharse de energía limpia y local para ser autosuficiente y al mismo tiempo provee beneficios a la red eléctrica.

El rápido crecimiento de equipos que generan energía solar en techos durante los últimos años es cónsono con la política pública energética.  Lamentablemente, este crecimiento ha sido mayormente impulsado por las necesidades energéticas de las diversas clases de consumidores, por la inestabilidad y altos costos de nuestro sistema energético, y por el estímulo de compensar a los prosumidores de energía mediante el programa de medición neta. El programa de medición neta tiene un rol clave en la implementación de los objetivos de política pública establecidos en la Ley 17-2019, incluyendo "facilitar la interconexión de energía distribuida a la red eléctrica" y "viabilizar que el consumidor de servicio de energía pueda convertirse en prosumidor". Al momento, no existen otros incentivos disponibles a los diversos grupos de consumidores que optan por instalar sistemas solares.

~~No obstante, en el Plan Fiscal de la AEE de 2022, la Junta de Supervisión y Administración Financiera señala que el programa de medición neta podría ser demasiado generoso en el incentivo que provee a los prosumidores y enfatiza el estudio del programa requerido por la Ley como oportunidad para reformarlo. Por tanto, *Se*~~ se

debe tener meridianamente claro que reducir el crédito que reciben los prosumidores por la energía que sus sistemas generan se puede interpretar como otro esfuerzo para imponer un "impuesto al sol", lo cual ha sido y debe ser rechazado contundentemente. Este tipo de imposición abonaría a la *al* deterioro del atropellado mercado que intenta crecer y retrasaría la recuperación económica del país.

Esta Asamblea Legislativa fomenta el desarrollo continuo de políticas que evalúan e implementan distintas alternativas de energías renovables. Por ende, cualquier esfuerzo para debilitar el programa de medición neta sería contraproducente para el país. Son demasiados los factores que inducen en el deficiente sistema eléctrico que el gobierno ofrece y la confiabilidad de la red eléctrica ha empeorado desde que se contrató a LUMA. Así las cosas, prácticamente, la única alternativa que le ha quedado a los diversos grupos de consumidores es la instalación de sistemas solares, con y sin sistemas de baterías. Por lo que, sería muy injusto socavar la capacidad de éstos para instalar sistemas fotovoltaicos en una coyuntura de alta inestabilidad del sistema, precios elevados de combustibles, entre otros.

De manera similar, la Ley 114-2007, según enmendada, obliga a que los clientes de medición neta, costeen cualquier mejora al sistema de distribución que sea necesario para aumentar la capacidad de la red de manera que se pueda integrar más sistemas fotovoltaicos. Esto, es contrario a la meta de empoderar a los consumidores para que generen su propia energía y a la vez no reconoce los beneficios positivos que los sistemas fotovoltaicos proveen a la red, no solo en términos de ahorro en combustible fósil importado sino que contribuye a hacer más resiliente a la red. El adjudicar a los clientes este tipo de responsabilidad representa la imposición de una injusta carga económica a estos, cuando debería ser responsabilidad del operador del sistema de distribución. Esta práctica, resulta particularmente innecesaria en una coyuntura en la que existen disponibles sobre $14 mil millones de dólares en fondos federales para reconstruir y modernizar la red de servicio energético.

De manera que es nuestra responsabilidad fomentar la transformación de nuestro sistema eléctrico e impulsar toda iniciativa que pretenda evitar: la dependencia excesiva de combustibles fósiles, la contaminación ambiental y que incrementen los efectos del cambio climático.  Cada día son más las jurisdicciones que se desplazan a la producción de energía a través de fuentes renovables y por ende se crean mayores programas que lo incentiva. Es por esto, que es ineludible que se promueva la reconstrucción y modernización de nuestra red eléctrica y que se utilicen los fondos federales asignados para esto correctamente.  Así las cosas, es necesario que nos aseguremos, que una porción sustancial de estos fondos federales sean utilizados, para aumentar la capacidad de la red a través de sistemas que generen electricidad mediante fuentes renovables de energía y para que estos se interconecten con la red de transmisión y distribución.  Sin que esto represente un aumento en los costos del cliente o de la implementación de nuevos impuestos.

Cónsono con la anterior, esta Asamblea Legislativa considera meritorio enmendar la Ley 114-2007, según enmendada, para que la letra de la ley sea cónsona con la intención legislativa, de que los clientes que instalen sus sistemas fotovoltaicos sean compensados justamente por la energía que aportan a la red eléctrica.

**DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:**

1    Sección 1.- Se enmienda el Artículo 4 de la Ley 114-2007, según enmendada,

2    conocida como la "Ley del Programa de Medición Neta en la Autoridad de Energía

3    Eléctrica" para que lea como sigue:

4    "Artículo 4.- Tarifa aplicable.

5    a) Estudio sobre Medición Neta y energía distribuida. — Se ordena al Negociado de

6    Energía a realizar un estudio mediante un procedimiento formal independiente, con

7    participación de partes interesadas y el público en general, en el cual evaluará y

1    considerará los costos y beneficios asociados a: (1) el programa de medición neta, (2)

2    las tecnologías de generación distribuida, (3) la energía solar a menor escala, y (4) los

3    sistemas de almacenamiento de energía. Dicho estudio deberá *comenzar* ~~*cuando la*~~

4    ~~*generación de energía renovable distribuida haya sobrepasado el veinticinco por ciento (25%)*~~

5    ~~*del consumo energético del país. El estudio*~~ *no antes de enero de 2030,* **[concluirse no más**

6    **tarde de cinco (5) años después de la entrada en vigor de la Ley de Política Pública**

7    **Energética,]** estará sujeto a comentario público y tomará en consideración los

8    siguientes factores: los costos de generación de energía, el valor de la capacidad, los

9    costos de transmisión y distribución, las pérdidas evitadas en el sistema, y los costos

10    evitados de cumplimiento ambiental, entre otros factores que el Negociado

11    determine relevantes y apropiados. Luego de *concluirse dicho estudio,* ~~*que la generación*~~

12    ~~*de energía renovable distribuida haya sobrepasado el veinticinco por ciento (25%) del*~~

13    ~~*consumo energético del país,*~~ **[un periodo de cinco (5) años a partir de la aprobación**

14    **de la Ley de Política Pública Energética,]** el Negociado podrá tomar cualquier

15    determinación relacionada con el programa de medición neta tomando en

16    consideración los resultados de dicho estudio~~.~~ *, siempre y cuando la política actual de*

17    *medición neta continúe mientras se lleva a cabo el estudio, y por un periodo no menos de 12*

18    *meses después de que el Negociado de Energía  tome cualquier decisión de cambiar la política*

19    *de medición neta.* Una vez que los resultados de dicho estudio sean integrados al

20    programa o tarifa de medición neta, el estudio permanecerá en efecto por no menos

21    de tres (3) años y hasta que el Negociado, motu proprio o a petición de parte,

22    determine que procede iniciar un procedimiento formal de revisión de este estudio.

1    b) Determinación sobre tarifa aplicable. — [**Durante el mencionado periodo**] ~~de~~

2    ~~crecimiento de energía renovable distribuida y hasta que esta generación no haya sobrepasado~~

3    ~~el veinticinco por ciento (25%) del consumo energético del país,~~ _En caso de que_ [**de cinco (5)**

4    **años,**] [**y hasta que**] el Negociado de Energía [**no establezca los**] _opte por establecer_

5    _nuevos_ valores correspondientes de la energía distribuida y de los sistemas de

6    almacenaje de energía conforme al estudio descrito en el inciso anterior, el crédito

7    por energía exportada por clientes de medición neta será igual al valor de dicha

8    energía conforme a la tarifa aplicable al cliente, y cualquier cargo aplicable a clientes

9    de medición neta estará basado en su consumo neto~~.~~_, por un período de al menos 12_

10   _meses adicionales antes de aplicarse por el Negociado de Energía cualquier cambio en dichos_

11   _valores._ [**Una vez**] ~~la energía renovable distribuida haya alcanzado un nivel mínimo del~~

12   ~~veinticinco por ciento del consumo energético del país,~~ [**transcurrido el término de cinco**

13   **(5) años antes dispuesto,**] ~~la~~ _La_ tarifa aplicable a los clientes de medición neta,

14   incluyendo la tarifa o mecanismo mediante el cual se compensará al cliente por la

15   energía suplida a la red eléctrica, será determinado exclusivamente por el

16   Negociado de Energía como parte del procedimiento de revisión de tarifas por

17   servicio eléctrico dispuesto en la Ley 57-2014, o mediante un procedimiento

18   administrativo separado, cuando así lo entienda necesario o conveniente. Cualquier

19   determinación con relación al programa de medición neta entrará en vigor en el

20   término dispuesto por el Negociado. Todo cliente que, en la fecha en la que el

21   Negociado emita su determinación final, posea contrato de medición neta o que

22   haya notificado al Negociado de la certificación del generador distribuido instalado

1    por el ingeniero licenciado y colegiado o por el perito electricista licenciado y

2    colegiado, será automáticamente considerado como cliente de medición neta con

3    derecho adquirido ("grandfathered") bajo la tarifa en efecto antes de la

4    determinación final del Negociado. En tales casos, el cliente de medición neta tendrá

5    derecho a la tarifa o mecanismo de compensación en efecto en aquel momento por

6    un término que no será menor de veinte (20) años, contados a partir de la fecha de

7    [**la firma del contrato de**] _dicha determinación final relacionada con la_ medición neta.

8    No obstante, el cliente de medición neta tendrá el derecho y la opción de elegir

9    acogerse a la nueva tarifa o mecanismo de compensación aprobado por el

10   Negociado.

11   c) . . .

12   …"

13   Sección 2.- Se enmienda en inciso (c) del Artículo 9 de la Ley 114-2007, según

14   enmendada, conocida como la "Ley del Programa de Medición Neta en la Autoridad de

15   Energía Eléctrica para que lea como sigue:

16       "Artículo 9. – Política Pública de Interconexión.

17   …

18   (a) …

19   (b) …

20   (c) Que el alimentador ("feeder") sobrepase su capacidad, no constituirá un

21   impedimento para la interconexión de sistemas fotovoltaicos o de energía renovable

22   con capacidad de generación que no sobrepase los 25 kilovatios. En estos casos, las

1    mejoras y/o cambios necesarios al alimentador serán por cuenta de la *compañía*

2    *solicitante.* ~~Compañía de Servicio Eléctrico.~~ **[compañía solicitante.]**  *La Compañía de*

3    *~~Servicio Eléctrico podrá solicitar al Negociado de Energía, a la Agencia Federal para el~~*

4    *~~Manejo de Emergencias (FEMA, por sus siglas en inglés) y a cualquier otra agencia federal,~~*

5    *~~los fondos con el propósito de aumentar la capacidad del sistema de distribución y de la~~*

6    *~~interconexión de sistemas de generación fotovoltaica o renovable distribuidos.~~*

7    (d) …

8    …"

9    Sección 3.- Cláusula de Cumplimiento

10    Se autoriza al Negociado de Energía a aprobar o enmendar los Reglamentos que

11    sean necesarios para cumplir con el propósito de esta ley.

12    Sección 4.- Separabilidad.

13    Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo,

14    disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley

15    fuera anulada o declarada inconstitucional, la resolución, dictamen o sentencia a tal

16    efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto

17    de dicha sentencia quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra,

18    letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o

19    parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la

20    aplicación a una persona o a una circunstancia de cualquier cláusula, párrafo,

21    subpárrafo, oración palabra, letra, artículo, disposición, sección, subsección, título,

22    capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada

1   inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni

2   invalidará la aplicación del remanente de esta Ley a aquellas personas o circunstancias

3   en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta

4   Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación

5   de esta Ley en la mayor medida posible, aunque se deje sin efecto, anule, invalide,

6   perjudique o declare inconstitucional alguna de sus partes, o aunque se deje sin efecto,

7   invalide o declare inconstitucional su aplicación a alguna persona o circunstancia. Esta

8   Asamblea Legislativa hubiera aprobado esta Ley sin importar la determinación de

9   separabilidad que el Tribunal pueda hacer.

10   Sección 5.- Vigencia

11   Esta Ley comenzará a regir inmediatamente después de su aprobación.

# EXHIBIT 7

 Sistema Único de Trámite
Legislativo
Oficina de Servicios Legislativos



| PRONTUARIO DE LEYES |
|---|

**Ley  10 del  10 de enero de 2024**
**Fecha Efectividad:** 10 de enero de 2024
**Ley Núm. 10-2024**
**Título:** Para enmendar los Artículos 4 y 9 de la Ley 114-2007, según enmendada, conocida como "Ley del Programa de Medición Neta en la Autoridad de Energía Eléctrica", a los fines de reformular el término provisto para realizar un estudio sobre medición neta y energía distribuida; y para otros fines.

**Autor(es):**

- Sen. Juan Zaragoza Gómez

- Sen. Gretchen M. Hau

- Sen. Javier Aponte Dalmau

- Sen. Joanne Rodríguez Veve

- Sen. Migdalia González Arroyo

- Sen. Rubén Soto Rivera

- Sen. William Villafañe Ramos

**Tema:**
**Subtema:**

**Código que enmienda:**
**Regla que enmienda:**
**Plan de Reorganización:**

**Enmienda(s):**

- Enmienda Ley 114 del 16 de agosto de 2007
  (e) artículo 4. (e) inciso c del artículo 9.



**Documento(s):**

- Act (English version) 📄 A-10-2024.pdf

---

**Medida:** PS1064
**Trámites:**

- 10/21/2022 📄    Radicado

- 10/24/2022    Aparece en Primera Lectura del Senado

- 10/24/2022    Referido a Comisión(es)

- 06/24/2023 📄    1er Informe Comisión rendido con enmiendas

- 06/24/2023 📄    Entirillado del Informe

- 06/24/2023    Remitido a la Comisión de Reglas y Calendario del Senado

- 06/25/2023    En el Calendario de Ordenes Especiales del Senado

- 06/25/2023    Aprobado con enmiendas del informe

- 06/25/2023 📄    Aprobado por el Senado en Votación Final

- 06/25/2023 📄    Texto de Aprobación Final enviado a la Cámara

- 06/28/2023    Aparece en Primera Lectura de la Cámara

- 06/28/2023    Referido a Comisión(es)

- 10/10/2023    Descargado en Cámara

- 10/10/2023    En el Calendario de Ordenes Especiales de la Cámara

- 10/10/2023    Aprobado sin enmiendas



- 10/10/2023 📄 Derrotada por Cámara en Votación Final

- 10/10/2023    Se solicita reconsideración de la Votación Final

- 10/17/2023 📄 Aprobado por Cámara en Votación Final Reconsiderado)

- 10/24/2023    Se solicita reconsideración de la medida

- 10/24/2023    En el Calendario de Ordenes Especiales de la Cámara

- 10/24/2023    Aprobado con enmiendas en sala

- 10/24/2023 📄 Se reconsideró

- 11/08/2023 📄 Cuerpo de Origen concurre con enmiendas

- 11/08/2023 📄 Se dispone que sea enrolado

- 12/01/2023    Firmado por el Presidente del Senado

- 01/08/2024    Firmado por el Presidente de la Cámara

- 01/09/2024    Enviado al Gobernador

- 01/10/2024 📄 Ley Núm. 10-2024

## Notas importantes:

**Sistema Único de Trámite Legislativo**
Oficina de Servicios Legislativos de Puerto Rico
Tel.787-721-5200 | www.oslpr.org | tramite@oslpr.org

Portal Oficial de la Oficina de Servicios Legislativos de Puerto Rico
Derechos Reservados © 2018 | Advertencias Legales

