# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-4780-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant | Adv. Proc. No. 24-00062-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (III) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and

SENATE OF PUERTO RICO, through Hon. José Luis Dalmau,
in his official capacity as President of the Senate of Puerto Rico,

Intervenor - Defendant

## MOTION FOR LEAVE TO FILE AMICUS CURIAE BY DIVERSE ENTITIES IN SUPPORT OF THE GOVERNOR'S OPPOSITION TO FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S MOTION FOR SUMMARY JUDGEMENT AND THE SENATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

**TO THE HONORABLE COURT:**

**COME NOW** Puerto Rico Solar Energy Industries Association Corp, ("Solar & Energy Storage Association" or "SESA-PR"), Puerto Rico Conservation Trust *("Para La Naturaleza"*), Mechanical Contractors Association of PR, Earthspark International Corp., Grid Alternatives, Acadia Center, IREC Puerto Rico, Solar Energy Industries Association ("SEIA"), Power Solar, Bright Ops, Carpe Diem Developers PR, Freedom Forever, SolarEdge Technologies Inc., Enphase Energy Inc., Bright Panel Solar, Teksol Integration Group, Inc., Astrawatt Solar and EDPR North America ("EDPR NA DG"), a diverse group of non-profit organizations and for-profit entities (hereinafter, "the Diverse Entities" or "*Amici Curiae*"), through the undersigned legal counsel, and respectfully submit this Motion for Leave to file an *Amicus Curiae* brief in relation to and in support of the motions "Governor's Opposition to Financial Oversight and Management Board For Puerto Rico's Motion for Summary Judgement" and the "Senate's Opposition to Plaintiff's Motion for Summary Judgement",  to emphasize and add information useful to the Honorable Court regarding the urgent need to uphold Act 10-2024, which extends true net metering until

2030. The proposed *Amicus Curiae* brief is attached as Exhibit A to the present motion ("Proposed Brief"). A Proposed Order granting the Motion for Leave by Diverse Entities is also attached as Exhibit B to the present motion ('Proposed Order").

1.     Rule 29 of the Federal Rules of Appellate Procedure allows for a party to file a brief only by leave of the court, Fed. R. App. P. 29. Although there are rules governing the participation of amicus curiae on appeal, there is no provision in the Federal Rules of Civil Procedure "as to the conditions under which a trial court should permit amicus appearances and the restrictions, if any, that should attend its appearance." *Alliance of Auto. Mfrs. v. Gwadowsky*, 297 F.Supp.2d 305, 306 (D.Me.2003). Nevertheless, "the district court retains 'the inherent authority' to appoint amicus curiae 'to assist it in a proceeding.'" *Id*. An *amicus* brief is particularly appropriate "in scenarios where 'the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *Tropical Chill Corp. v. Urrutia*, No. CV 21-1411 (RAM), 2021 WL 4713064, at *1 (D.P.R. Oct. 8, 2021).

2.     In compliance with the applicable rule, the Diverse Entities herein, through undersigned counsel, respectfully request that the Court grant them leave to file an *Amicus Curiae* brief in relation and support of the above-captioned motions by the Governor and Senate of Puerto Rico. The Diverse Entities joining the Proposed Brief as *amici* emphasize and add information useful to the Honorable Court regarding the urgent need to uphold Act 10-2024, which extends true net metering until 2030.

3.     Annulment of Act 10 of 2024, a Puerto Rico law that secures net metering policy until 2030, endangers the individual and collective lifesaving energy resilience for Puerto Ricans, particularly for Low and Moderate Income (LMI) populations, some of the most

vulnerable in society. Annulment of Act 10 would also hinder Puerto Rico's path to fulfill its renewable energy legally mandated goals and would cause great economic harm and job losses.

**WHEREFORE**, the Diverse Entities very respectfully request that the Court allow submittal of their *Amicus Curiae* brief in relation and support of the Governor's and Senate's motions opposing summary judgement.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this October 30th, 2024.

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties. A courtesy copy of this Motion will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in Third Amended Standing Order.

**JRJ CONSULTANTS
& LEGAL ADVISORS , LLC**
Attorney for *Amici Curiae*

Edificio Centro de Seguros
701 Ave. Ponce de León
Suite 406
San Juan, PR 00907
787-396-6511

By: *s/ Javier Rúa-Jovet*
Javier Rúa-Jovet
USDC-PR Bar No. 216907
Email: jrj@conecta.pr

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-4780-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant | Adv. Proc. No. 24-00062-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (III) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and

SENATE OF PUERTO RICO, through Hon. José Luis Dalmau,
in his official capacity as President of the Senate of Puerto Rico,


Intervenor - Defendant

---

**AMICUS CURIAE BY DIVERSE ENTITIES IN SUPPORT OF THE
GOVERNOR'S OPPOSITION TO FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO'S MOTION FOR
SUMMARY JUDGEMENT AND THE SENATE'S OPPOSITION TO
PLAINTIFF'S
MOTION FOR SUMMARY JUDGEMENT**

**TO THE HONORABLE COURT:**

   **COME NOW** Puerto Rico Solar Energy Industries Association Corp, ("Solar & Energy

Storage Association" or "SESA-PR"), Puerto Rico Conservation Trust ("Para La

Naturaleza"), Mechanical Contractors Association of PR, Earthspark International Corp.,

Grid Alternatives, Acadia Center, IREC Puerto Rico, Solar Energy Industries Association

("SEIA"), Power Solar, Bright Ops, Carpe Diem Developers PR, Freedom Forever,

SolarEdge Technologies Inc., Enphase Energy Inc., Bright Panel Solar, Teksol Integration

Group, Inc., Astrawatt Solar and EDPR North America ("EDPR NA DG"), a diverse group

of non-profit organizations and for-profit entities (hereinafter, "the Diverse Entities" or

"*Amici Curiae*"), through the undersigned legal counsel, and respectfully submit this

*Amicus Curiae* brief in relation to and in support of the motions "Governor's Opposition to

Financial Oversight and Management Board For Puerto Rico's Motion for Summary

Judgement" and the "Senate's Opposition to Plaintiff's Motion for Summary Judgement",

to emphasize and add information useful to the Honorable Court regarding the urgent need
to uphold Act 10-2024, which extends true net metering until 2030.

## I.    INTRODUCTION

1. Net metering is the policy that allows electricity delivered to the grid from a net metering
   solar customer be compensated on a one-to-one basis. Every unit of electricity generated
   by the net metering customer and delivered to the grid (typically expressed in kilowatt-
   hours, kWh) is subtracted from the amount of electricity they consume from the grid, for
   billing purposes. This is frequently described as 'the meter running backward', in reference
   to how analog meters used to behave. Net metering creates the bill savings that allow
   households and businesses to afford solar and batteries in Puerto Rico.

2. As the record shows, Senate Bill 1064, which eventually became Act 10 of 2024, was
   petitioned by the Sierra Club, an environmental organization, to secure continuance of net
   metering in Puerto Rico. Before being signed into law on January 10, 2024, the bill went
   through a thorough, bicameral, 14+ month legislative process, with testimony from
   multiple governmental and non-governmental stakeholders, including environmental
   groups, trade associations, the Puerto Rico Energy Bureau (PREB or Energy Bureau), the
   Puerto Rico Fiscal Agency and Financial Advisory Authority, and others.  Said process
   and testimony led to important amendments, and the bill garnered unanimous votes across
   five political parties and independent legislators in both houses of Puerto Rico's Legislative
   Assembly.

3. Act 10 of 2024 shifts, from 2024 to 2030, the date of a Puerto Rico Energy Bureau study
   that evaluates the costs & benefits of distributed solar & storage. Said study must be
   performed with multistakeholder participation and input, and no Energy Bureau decision

affecting net metering policy can be made before that study is concluded.  Act 10 also

establishes a 12-month implementation period for any net metering policy change made by

the Energy Bureau.

4.  Act 10 of 2024's Statement of Motives reveals the legislative intent of this law. In pertinent

part, the Statement of Motives states:

> "[…] Rooftop solar energy provides resilience and self-sufficiency for tens
> of thousands of consumers, while contributing to the reduction of the
> treasury's investment in the purchase of imported fossil fuels, the costs of
> which depend on fluctuations in the relationship between supply and
> demand, as well as speculation in the financial markets.  This reduction in
> the purchase of fossil fuels also results in an economic benefit to the various
> classes of consumers who still depend on the generation system provided
> by PREPA, AES and Ecoeléctrica, and the transmission and distribution
> system currently operated by LUMA Energy (hereinafter, "LUMA"). For
> the diverse classes of consumers (citizens, businesses, NGOs and
> companies, among others) that can invest in the installation of photovoltaic
> systems, these systems have become a viable and essential alternative to
> mitigate the problems of instability and high costs of an electrical system
> sustained by the burning of fossil fuels. For people who depend on medical
> equipment to manage chronic health conditions and maintain a certain
> quality of life, back-up power systems supported by solar panels with
> batteries can literally save their lives.
>
> […] Net metering is key for consumers to have the right to take advantage
> of clean, local energy to be self-sufficient and at the same time provide
> benefits to the grid. […] The net metering program has a key role in
> implementing the public policy objectives established in Act 17-2019,
> including "facilitating the interconnection of distributed energy to the
> electric grid" and "making it viable for the energy service consumer to
> become a prosumer". […]
>
> […] Therefore, it is our responsibility to promote the transformation of our
> electricity system and to promote any initiative that seeks to avoid:
> overdependence on fossil fuels, environmental pollution and an increase in
> the effects of climate change. More and more jurisdictions are shifting to
> the production of energy through renewable sources and, as a result, more
> programs are being created to incentivize it. […]". *Certified Translation*,
> Act 10 of 2024, Dkt. No. 1-Exhibit 7, at Pp. 5-6 of 12. [Emphasis provided.]

5. As expressed above, the Puerto Rico Legislature, via Act 10 of 2024, reaffirmed its responsibility "to promote any initiative that seeks to avoid overdependence on fossil fuels, environmental pollution and an increase in the effects of climate change" and unanimously esteemed that said law served that policy purpose by protecting current net metering policy until 2030.

6. This Court must also account for the fact that when the Legislature set the initial date of April 2024 as a potential sunset date for net metering, one central premise then was that according to Act 17, by 2024 Puerto Rico was supposed to be well on path to 40% renewable energy; in other words, on path to substantially weaning itself out of fossil fuel dependence. But compliance with Puerto Rico's legally required renewable energy targets, as mandated by Act 17, has not occurred as no new renewables have come online since 2019, with the shining exception of net metered solar.

7. Five years after Act 17, Puerto Rico is still extremely dependent on imported, dirty, polluting and expensive fossil fuels for electricity generation.[2]  Furthermore, seven years since Hurricane Maria, major island-wide power outages still punish us, despite the island having been spared from hurricanes this year, at least thus far.  Widespread rolling blackouts due to persistent central generation shortfalls and sub-par grid conditions remain an imminent threat to the health, safety and economic well-being of the Commonwealth's nearly 3.3 million residents.

---

[2] U.S. Energy Information Administration, *Puerto Rico Profile*,  https://www.eia.gov/state/print.php?sid=RQ. Note: this resource concludes current 94% dependence on fossil fuels. However, it does not account for the growth of distributed solar, which would add about 9% of new additional renewable generation over the utility scale renewables reported therein.

8. Net metered solar has arisen as the only success amid this sea of non-compliance. Today, Puerto Rico boasts over 130,000 net metered solar systems, and that number grows by more than 3,000 every month.[3]  And since Hurricane María, these systems have almost universally been installed with energy storage, with batteries. With these batteries, solar systems are silent, clean, fumeless generators that protect human life and livelihoods during blackouts.

9. Net metering is the policy that has enabled this remarkable success, so it is natural and reasonable that the Puerto Rico Legislature moved to safeguard it until 2030, via Act 10. Without stable, true net metering policy, the rate of new solar and battery installations would dramatically crash, as has been the case elsewhere, like in California.[4]  As will be shown in detail in section IV below, net metering is the policy that has allowed Puerto Rican families and businesses of all stripes -almost 60% of whom are households of low, moderate incomes (LMI) and of middle incomes- to affordably install rooftop solar with batteries. Puerto Rico's Legislature naturally moved to secure its most successful pro-renewables policy.

10. Again, current true net metering is the only local policy that has resulted in post Hurricane María solar energy deployment in the island, hence the action by the Legislature to protect it.  The over 130,000 net metered solar systems installed add up to more than 900 MW of solar power, generating approximately 1.5 terawatt-hours of electricity per year, nearly 10% of the island's entire electricity consumption annually.  This is 900 MW of clean,

---

[3]  Puerto Rico Energy Bureau, *IN RE: Informes de Progreso de Interconexión de la Autoridad de Energía Eléctrica*, https://energia.pr.gov/numero_orden/nepr-mi-2019-0016.

[4] California Solar and Storage Association, *Significant Loss of Solar Jobs in Every Part of California Following CPUC Cuts to Solar Incentives*, 12/19/2023, https://calssa.org/press-releases/2023/12/22/significant-loss-of-solar-jobs-in-every-part-of-california-following-cpuc-cuts-to-solar-incentives.

sustainable energy that is helping reduce the frequency of daytime blackouts caused by utility generation shortfalls. 900 MW of solar that has also resulted in over 2 gigawatt-hours (GWh) of energy storage -yes 2 GWh - keeping the lights on for protected families, and that is also starting to mitigate evening blackouts for all. 900 MW which grows every month by over 20 MW (and that also adds over 50 MWh of energy storage) to the tune of over 3,200 systems every month. 900 MW without which Puerto Rico would not have moved an inch towards its legally mandated goals of 40% renewable energy by 2025 and 100% by 2050, as established in Act 17 of 2019. Current net metering policy, as embodied by Act 10 of 2024, had to be protected in order for Puerto Rico to at least keep moving in the pro-renewables direction mandated by Act 17 of 2019.

11. Moreover, there is substantial evidence, as is discussed in detail in section III below, that net metering is not a cost, but an economic benefit. Net metering benefits all Puerto Ricans -those with solar, as well as those without it- both economically and environmentally. Due to reduced daytime blackouts, net metering also provides many financial benefits to the utility – including one that may be unique to Puerto Rico. Because of the terrible conditions of the power grid, when daytime blackouts are avoided because of the 900 MW of solar, the utility is able to keep selling kWh of electricity that it would otherwise not have been able to in a blackout, adding financially to its revenues.

12. Net metering policy instability, on the other hand, would cause new solar and storage installations to drop dramatically, particularly harming those that need it most in low, moderate income (LMI) and middle-income households.

## II.  REQUIREMENTS TO ALLOW AN AMICUS CURIAE BRIEF

13. Rule 29 of the Federal Rules of Appellate Procedure allows for a party to file a brief only by leave of the court, Fed. R. App. P. 29. Although there are rules governing the participation of amici curiae on appeal, there is no provision in the Federal Rules of Civil Procedure "as to the conditions under which a trial court should permit amicus appearances and the restrictions, if any, that should attend its appearance." *Alliance of Auto. Mfrs.* v. *Gwadowsky*, 297 F.Supp.2d 305, 306 (D.Me.2003). Nevertheless, "the district court retains 'the inherent authority' to appoint amicus curiae 'to assist it in a proceeding.'" *Id.* (quoting *Resort Timeshare Resales*, Inc. v. *Stuart*, 764 F.Supp. 1495, 1500–01 (D.Me.1991)). An amicus is not a party and "does not represent the parties but participates only for the benefit of the court." *Resort Timeshare*, 764 F.Supp. at 1501. The acceptance of amicus briefs is within the sound discretion of the courts. *Strasser* v. *Doorley*, 432 F.2d 567, 569 (1st Cir. 1970); *All. of Auto. Mfrs. v. Gwadowsky*, 297 F. Supp. 2d 305, 307 (D. Me. 2003).

14. The following criteria have been established regarding the decision to allow the filing of amicus briefs: "whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." Ed R. Haden & Kelly Fitzgerald Pate, *The Role of Amicus Briefs*, 70 Ala. Law. 114, 116 (2009) (citing *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003)). These would more likely be met, according to the court, when "a party is inadequately represented; or ... the would-be amicus has a direct interest in another case that may be materially affected by a decision in this case; or ...  the amicus has a unique perspective or specific information that can assist the court beyond what the parties can provide." *Id.* (citing *Voices for Choices* v. *Illinois Bell Tel*. Co., 339 F.3d 542, 545 (7th Cir. 2003)) (emphasis ours).

15. In the case of *Neonatology Assocs. P.A.* v. *Comm'r*, 293 F.3d 128, 131 (3d Cir. 2002), Judge Alito took a more liberal stand regarding amicus briefs. When examining Rule 29 of the Federal Rules of Appellate Procedure, he noted that within Rule 29 are the requirements of "(a) an adequate interest, (b) desirability, and (c) relevance." Justice Alito explained that under modern practice an amicus is required to have an interest in the case, instead of being impartial. *Id.* He rejected the argument that a restrictive approach to allowing amicus briefs is more protective of the court's time and lessens its workload. The open approach to amicus briefs provides that "motions for leave to file amicus briefs [should be granted] unless it is obvious that the proposed briefs do not meet Rule 29's criteria as broadly interpreted." *Neonatology Assocs.*, 293 F.3d at 133.

16. We urge this Court to follow the more liberal approach championed by now Justice Alito and grant the present request since the Amici's participation will allow the Court to consider the pertinent issues around the critical importance of upholding Act 10 of 2024, maintaining its full force and effect. The appearing Diverse Entities have a unique perspective, different from the parties of the case, that will aid this Court in analyzing Act 10 and the policies behind it.

### III. ECONOMIC BENEFITS OF NET METERING AND ACT 10

17. Besides the self-evident lifesaving individual resilience and savings created by net metered solar, the policy creates substantial economic benefits for all. Specifically, it has been established that the "direct benefit" to the grid and all other ratepayers created by net metered solar is 33 cents per kWh, which is 36% greater than the current retail rate of 24 cents per kWh. Therefore, economic benefits flow to all other customers from the excess

solar power produced by net metered solar customers.[5] This fact should, in itself, be sufficient to quell any belief or myth in any net metering-borne negative fiscal impact. Furthermore, if broader social benefits are also factored-in, for example, reductions in air pollution, related significant health benefits, as well as local economic activity and job-creation from net metering induced investments in solar and batteries, that "result[s] in an additional benefit of 70 cents per kWh on top of the direct ratepayer benefits", a total value created of over $1.03 per kWh for all ratepayers.[6]

## IV. SOCIAL EQUITY BENEFITS OF NET METERING AND ACT 10

18. There is a high rate of solar adoption by lower-income groups in Puerto Rico. The rates of lower-income households installing solar in Puerto Rico are 27% to 37% higher than U.S. national averages. Thus, eliminating or reducing net metering would significantly reduce the adoption of solar and storage, disproportionately and regressively harming the most vulnerable families and communities associated to these income brackets. [7]

19. The following table shows existing distributed solar installations by HUD defined revenue thresholds:

---

[5] Gabel & Associates, *Value of Net Metered Solar Energy in Puerto Rico*, 4/16/2024, https://gabelassociates.com/wp-content/uploads/2024/04/Gabel-Associates-Puerto-Rico-Value-of-Solar-NM-English-04.16.24.pdf.

[6] *Id*.

[7] Solar and Energy Storage Association of Puerto Rico, "*Impacts of the Devaluation of Net Metering Policy in Puerto Rico*", 7/11/2024, https://www.sesapr.org/_files/ugd/a17184_020e00cfa1eb4a5ba82a5b2e71842743.pdf.

| Income Categories | Income thresholds | Percentage |
|---|---|---|
| Very low | Up to 30% AMI | 0.10% |
| Very low and low | Up to 50% AMI | 11.00% |
| Very low, low and moderate | Up to 80% AMI | 27.90% |
| Very low, low, moderate and medium | Up to 120% AMI | 58.50% |
| All | | 100.00% |

20. As the table shows, in Puerto Rico, the vast majority (58.5%) of existing net metering systems are located in households classified as LMI and middle-income.[8]  As such, the analysis concludes that elimination or devaluation of net metering would cause between 69,000 and 197,000 fewer families in total to adopt solar energy by 2030 in Puerto Rico, 144,000 of them in lower income categories, according to different scenarios studied of devaluation of solar kWhr exports.[9]

**V. NET METERING IS VITAL TO DOE'S *ACCESO SOLAR***

21. The U.S. Department of Energy (DOE) has taken significant steps to enhance energy resilience in Puerto Rico, particularly for low and moderate-income households, as well as individuals with disabilities. Through the Puerto Rico Energy Resilience Fund (PR-ERF), which was launched on February 21, 2023, the DOE aims to facilitate the installation of solar photovoltaic (PV) and battery storage systems, thereby addressing the energy burden

---

[8] *Id.*

[9] *Id.*

faced by these vulnerable communities in the aftermath of natural disasters and ongoing energy challenges.[10]

22. Central to the PR-ERF is the *Programa Acceso Solar* (Solar Access Program), which aims to deploy 30,000 residential solar and battery systems in LMI households across Puerto Rico, while lowering the energy burden of beneficiaries.[11] Availability of net metering is a critical element of this program, as per its own terms:

> "Beneficiaries are required to enroll in the net metering program, which allows excess electricity from the solar system to be sold back to the grid. This will further reduce the household's energy bill in the form of a credit from LUMA. The Solar Company will assist the Beneficiary with the net metering enrollment process."[12]

23. Net metering, as protected by Act 10, allows this DOE program to maximize the impact of available federal funding, enhancing the economic viability of solar installations, and stretching the 'bang for the buck' of federal taxpayer dollars. Furthermore, according to the DOE's Low-Income Energy Affordability Data (LEAD) Tool,[13] low-income households in Puerto Rico experience amongst the highest energy burdens in the United

---

[10]https://www.energy.gov/gdo/puerto-rico-energy-resilience-fund. The PR-ERF is part of a broader initiative that includes a $1 billion allocation from Congress aimed at improving the resilience of Puerto Rico's electric grid. The fund is particularly focused on supporting residential and community-based energy resilience investments, which encompass solar PV and battery storage deployments.

[11]The U.S. Department of Energy defines "energy burden" as the percentage of gross household income spent on energy costs. This includes expenses related to electricity, gas, and other home heating fuels. The definition emphasizes that low-income households typically experience a higher energy burden compared to non-low-income households, often resulting in difficult choices between paying energy bills and other essential expenses like food and medicine. DOE, *Low-Income Household Energy Burden Varies Among States — Efficiency Can Help In All of Them*, https://www.energy.gov/sites/prod/files/2019/01/f58/WIP-Energy-Burden_final.pdf.

[12]Beneficiary Agreement & Technical Requirements Summary, *Programa Acceso Solar*, https://www.energy.gov/sites/default/files/2024-08/Programa%20Acceso%20Solar%20System%20Terms%20and%20Technology%20Specifications%20Summary.pdf.

[13]Low-income Energy Affordability Data (LEAD) Tool, https://www.energy.gov/scep/slsc/articles/low-income-energy-affordability-data-lead-tool.

States.[14]   This disparity highlights the unique challenges faced by low-income families in Puerto Rico regarding energy affordability and access. By facilitating access to affordable solar energy, *Acceso Solar* leverages net metering to help bridge this gap for 30,000 households. With true net metering, the households that benefit from these installations see immediate reductions in their energy bills, allowing them to reinvest those savings into other essential needs. And the ongoing savings from reduced utility bills mean that net metered households have more disposable income over time, a powerful poverty reduction tool.

24. In sum, any attack on the net metering policy stability created by Act 10 of 2024 also undermines the success of the critical *Acceso Solar* DOE program, particularly its goal of 30,000 solar plus storage installations that lower the energy burden of LMI households.

## VI. GRAVE ECONOMIC CONSEQUENCES OF FAILING TO UPHOLD ACT 10

25. Net metering has created over 200 local businesses, over 10,000 good paying local jobs, and $3.25 billion into Puerto Rico's economy. Act 10 postpones the risk of net metering devaluation until 2030 because any such devaluation would cause between $2 billion and $5.7 billion in cumulative economic losses for Puerto Rico. A devaluation of net metering would result in 398 to 1,137 fewer megawatts of distributed solar and 1,061 to 3,032 fewer MWh of installed battery storage by 2030.  Related job losses because of this crash would be between 2,800 and 8,000.[15]  The Legislature and the Governor acted wisely to avoid these scenarios via the adoption of Act 10.

---

[14]Ma, Ookie, Krystal Laymon, Megan Day, Ricardo Oliveira, Jon Weers, and Aaron Vimont. 2019*, Low-Income Energy Affordability Data (LEAD) Tool Methodology*. Golden, CO: National Renewable Energy Laboratory. NREL/TP-6A20-74249, https://www.nrel.gov/docs/fy19osti/74249.pdf.

[15] *Supra*, note 7.

## VII. CONCLUSION AND RECOMMENDATIONS

26. We the *Amici Curiae*, in support of the both the Governor's and the Senate's motions in Opposition to Plaintiff's Motion Summary for Judgement respectfully advise this Court to consider the information provided in this brief.

27. The Court must consider the essential role of net metering for individual and collective lifesaving energy resilience for Puerto Ricans, as shown above.

28. Furthermore, the Court must consider the essential role of net metering, particularly for LMI populations, which are the most vulnerable in society.

29. In addition, as part of its analysis, this Court must not ignore the essential role of net metering in achieving Puerto Rico's renewable energy legally mandated goals.

30. The Court must also consider the essential role of net metering as a success in sustainable economic development.

31. Finally, the Court must require that the FOMB supports policies that foster solar energy growth, including withdrawal of the present lawsuit.

32. In closing, we stand united in our commitment to ensuring that Puerto Rico can achieve its renewable energy legally mandated objectives without obstacles and are grateful for the opportunity to advise this Honorable Court about the critical importance of continuation of Act 10 of 2024 to ensure the aforementioned ends.

**WHEREFORE**, the Diverse Entities stand united and are grateful for the opportunity to support the Governor's and the Senate's motions in Opposition to Plaintiff's Motion Summary for Judgement and to advise this Honorable Court as *amici* about the critical importance of continuation of Act 10 of 2024.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this October 30th, 2024.

## CERTIFICATE OF SERVICE

I hereby certify that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants and Standard Parties. A courtesy copy of this *amicu*s will be delivered to the Court by email to SwainDPRCorresp@nysd.uscourts.gov as provided in Third Amended Standing Order.

**JRJ CONSULTANTS
& LEGAL ADVISORS, LLC**
*Attorney for Amici Curiae*

Edificio Centro de Seguros
701 Ave. Ponce de León
Suite 406
San Juan, PR 00907
787-396-6511

By*: s/ Javier Rúa-Jovet*
Javier Rúa-Jovet
USDC-PR Bar No. 216907
Email: jrj@conecta.pr

15

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors. [1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br>Case No. 17-BK-4780-LTS<br><br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>Plaintiff,<br><br>v.<br><br>HON. PEDRO PIERLUISI, in his official capacity as Governor of Puerto Rico,<br><br>Defendant | Adv. Proc. No. 24-00062-LTS |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17- BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (III) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17- BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

and

SENATE OF PUERTO RICO, through Hon. José Luis Dalmau,
in his official capacity as President of the Senate of Puerto Rico,

Intervenor - Defendant

### [PROPOSED ORDER] GRANTING MOTION FOR LEAVE TO FILE AMICUS CURIAE BY DIVERSE ENTITIES IN SUPPORT OF THE GOVERNOR'S OPPOSITION TO FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO'S MOTION FOR SUMMARY JUDGEMENT AND THE SENATE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

Upon reviews of the *Motion for Leave to File Amicus Curiae* by Diverse Entities (Docket Entry No. ___ in Case No. 24-00062, the "Motion"), and that no other or further notice is required, it is HEREBY ORDERED THAT:

1. Leave to file the Proposed Brief, as amici curiae, is hereby granted to the Diverse Entities.

2. This Order resolves Docket Entry No. ____ .

SO ORDERED.

Date: _____

/s/ Laura Taylor Swain

LAURA TAYLOR SWAIN

UNITED STATES DISTRICT JUDGE